UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, *as Personal*
*Representative of the Estate of Naibel*
*Benavides Leon, deceased,*

      Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.,*

      Defendant.

_____/

Case No. 22-cv-22607-BLOOM

DILLON ANGULO,

      Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.,*

      Defendants.

_____/

# SEALED MOTION

## PLAINTIFF, DILLON ANGULO'S VERIFIED PETITION TO APPROVE CONTIGENCY FEE CONTRACT AND TO SEAL FILE

Plaintiff, DILLON ANGULO, requests that this Court approve his Contingency Fee Contract, under the Rules regulating the Florida Bar, Chapter 4, Rules of Professional Conduct 4-1.5, Fees and Costs for Legal Services, (f)(4)(B)(ii), and then to Seal these proceedings within the File for the reasons set forth below:

1.     This action stems from an incident wherein Plaintiff suffered life threatening and life altering personal injuries when, while standing outside of and adjacent to his lawfully parked motor

Page **1** of 5

vehicle, a Tesla vehicle designed and manufactured by Defendant was driving on Autopilot and collided with Plaintiff's vehicle in an extremely high-speed collision, causing the vehicles to violently slam into Plaintiff's body. Plaintiff has brought this action sounding in products liability, alleging inter alia that design and manufacturing defects in the subject Tesla vehicle – and particularly the autonomous driving functions of the vehicle - caused the collision at issue.

2.     On or about August 16, 2022, Plaintiff's lawsuit was filed in this District and with this Honorable Court. A copy of the Complaint, which is 13 pages, is attached hereto as Exhibit "A" and incorporated by reference.  Defendant, TESLA, INC., has been served and has answered Plaintiff's Complaint, and has denied all of Plaintiff's pertinent allegations.

3.     Prior to filing the above-described lawsuit, Petitioner entered into a standard Contingency Fee Contract with his attorneys, Adam Boumel, Esq. of the Rousso, Boumel Law Firm, and Karl Sturge, Esq.

4.     Subsequent to filing the above-described lawsuit, Petitioner and his counsel decided to engage two additional outside attorneys – Donald Slavik and Elise Sanguinetti - to assist in the prosecution of this action against Defendant.

5.     Before entering into a revised Contingency Fee Contract with these new attorneys, Petitioner was informed by counsel that given the time, effort, and complexities involved with prosecuting the action, that counsel would only be willing to undertake his case if the contract provided for a straight 40% contingent fee. Petitioner was also informed that such a fee would be in excess of the fee percentages set forth in Rule 4-1.5(f)(4)(B)(i). Because Petitioner desired to have Donald Slavik, Esq. and Elise Sanguinetti, together with Adam Boumel Esq. and Karl Sturge, Esq., represent him in this matter, he signed the Contract to Represent under the above terms, which is attached hereto as Exhibit "B" and incorporated by reference.

6.     A comparison of the fees between the Contract entered into and fees established under Rule 4-1.5 (f)(4)(B)(i) are shown below:

| Fee under Rule 4-1.5(f)(4)(B)(i) without prior court approval | Fee under the Proposed Contract to Represent |
|---|---|
| 40% of any recovery up to $1 million; plus 30% of any portion of the recovery between $1 million and $2million; plus 20% of any portion of the recovery exceeding $2million. | 40% of any recovery up to $1 million; plus 40% of any portion of the recovery between $1 million and $2million; plus 40% of any portion of the recovery exceeding $2million. |

7.     Pursuant to Rule 4-1.5(f)(4)(B)(ii), Petitioner now seeks to have this Court approve the Contract to Represent so that he may have the attorneys of his choosing represent him in his products liability action.

8.     Pursuant to Rule 4-1.5(f)(4)(B)(ii), the factors that should be considered by the Court in approving this fee contract include the "time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly." Typically, products liability cases are highly specialized cases defended vigorously by law firms specializing in products liability case,  they take years to litigate to trial, and involve extremely nuanced and laborious technical discovery and analysis. In this case, dealing with the autonomous driving functions of the most famous autonomous motor vehicle manufacturer on the planet, it is anticipated that the complexity and difficulty of the case will dwarf most other products liability cases.

9.     In support of this petition, Petitioner attests to the following:

a.     He understands he has the right to have the fee limitations listed in Article 1, Section 26 of the Florida Constitution applied to his case and he knowingly waives that right so that he may have the attorneys of his choosing represent him in this lawsuit;

b.     He understands he has the right to have the fee limitations listed in Rule 4-1.5(f)(4)(B) applied to his case and he knowingly  waives that right so that he may have the attorneys of his choosing represent him in this lawsuit;

c.     He understands that he is seeking approval of a straight 40% contingency attorneys'

fee of the gross amount of any recovery with litigation costs deducted thereafter; and

d.      He understands that court approval of the Contract to Represent shall not bar later inquiries into whether the attorneys' fee actually claimed or charged is clearly excessive.

10.     Rule 4-1.5(f)(4)(B)(ii) provides that a trial court *shall* approve a Petition for Approval of an Attorney Fee Contract where it is shown that the client understands the rights that are being waived and the contents of the contract. *See also, In re Charles Buggs, Deceased, by and through Lita Rengifo, Personal Representative*, 122 So. 3d 519, (Fla 1st DCA 2013)(plain language of rule required trial court to approve the petition as long as it found that client understood the rights that she was waiving and the terms of the fee contract).

11.     Lastly, the Comments to Rule 4-1.5(f)(4)(B)(ii) provide that the proceedings before the trial court and the trial court's decision on a petition to approve a contingency fee are to be confidential and not subject to discovery by any parties to the action or by any other individual or entity except The Florida Bar. Accordingly, Petitioner has filed this Petition under seal and asks this Court to seal all portions of the file pertaining to this Petition indefinitely once the Court has ruled.

WHEREFORE, for the reasons stated herein, Petitioner requests that this Court Approve the Contingency Fee Contract under the Rules regulating the Florida Bar, Chapter 4, Rules of Professional Conduct 4-1.5, Fees and Costs for Legal Services, (f)(4)(B)(ii), and to then Seal all portions of the file pertaining to this Petition.

UNDER PENALTY OF PERJURY, I hereby declare that I have read the foregoing Petition and that the facts stated in it are true to the best of my information and belief.

Dated this ⬤⬤ day of     20     , 2023

BY: _____
        Dillon Anglo

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on Dillon Angulo via hand delivery and email to xttrr2@gmail.com, on Elise Sanguinetti, Esq., at elise@aswtlawyers.com, on Donald Slavik, Esq., at dslavik@slavik.us, and on Karl Sturge, Esq., at Karls1340@bellsouth.net.

THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669

By: /s/ *Adam T. Boumel, Esq.*
Adam T. Boumel, Esq.
Florida Bar No.: 0110727
Direct email: adam@roussolawfirm.com
Service emails:
Pleadings@roussolawfirm.com
Frank@roussolawfirm.com

# EXHIBIT "A"

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:22-cv-22607-KMM

DILLON ANGULO,

        Plaintiff,

v.

TESLA, INC. a/k/a TESLA FLORIDA, INC.

        Defendant.

_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dillon Angulo, by and through his undersigned counsel, sues Defendant, Tesla Inc. a/k/a Tesla Florida Inc., and alleges and states as follows:

## JURISDICTION, VENUE AND PARTIES

1. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

2. Plaintiff, Dillon Angulo, is a resident of and is domiciled in the State of Florida.

3. At all material times, Defendant, Tesla Inc. a/k/a Tesla Florida Inc. (hereinafter, "Tesla") is and was a foreign corporation licensed and authorized to do business in the State of Florida.

4. At all times hereinafter mentioned and at the time of the incident complained of, Defendant, Tesla, had an office for the transaction of its customary business in Miami-Dade County, Florida, had agents and other representatives in Miami-Dade County, and

was actually doing business in Miami-Dade County, Florida, by virtue of its shipping to
and sale of automobiles in Miami-Dade County, Florida.

5.     At all times hereinafter and at the time of the incident complained of, Defendant, Tesla,
was in the business of designing, testing, inspecting, manufacturing, distributing, selling,
maintaining, repairing and otherwise placing into the stream of commerce, and causing
same to come into the State of Florida, certain automobiles, including a certain specific
automobile designated and described as a 2019 Tesla Model S, VIN:
5YJSA1E24KF302997 (Hereinafter described as the "Vehicle").

6.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because this action is
between citizens of different state and the amount in controversy, exclusive of interest,
attorneys' fees and costs, exceeds $75,000.00

## FACTS COMMON TO ALL CLAIMS

7.     On or about April 25, 2019, the Vehicle was owned by George McGee.

8.     At all material times, the Vehicle was equipped with what Tesla calls "Autopilot", a suite
of features and functions meant to assist drivers in driving and operating Tesla's vehicles.

9.     At all material times, the Autopilot functions of the Vehicle included, but were not
limited to automatic steering, forward collision warning and emergency braking.

10.    At all material times, George McGee purchased the vehicle in large part because of the
Autopilot functions advertised by Tesla. More specifically, McGee purchased the subject
Tesla Vehicle because he wanted a vehicle that would provide him with ample assistance
while driving, and based on marketing and advertisements believed that Tesla's subject
vehicle would provide such ample driving assistance.

11. On or about April 25, 2019, George McGee was operating and/or driving the Vehicle eastbound on CR-905A, also known as Card Sound Road, in Key Largo, Monroe County, Florida, and was approaching the 3-way T-intersection with County Road 905.

12. At the subject intersection, Card Sound Road ends, and drivers eastbound on Card Sound Road must first come to a stop at a stop sign before turning either left onto northbound County Road 905 or right onto southbound County Road 905.

13. At the subject intersection, in addition to the aforementioned stop sign, there is also an overhead flashing red light and yellow caution signs which alert all drivers on eastbound Card Sound Road of the end of the roadway and the need to stop and then turn onto County Road 905.

14. At that time and place, George McGee, had activated the Autopilot functions in his Tesla and was relying on its ability to properly steer and navigate the Vehicle, to detect obstacles in the roadway ahead of the Vehicle, and to reduce speed and/or come to a complete stop when such obstacles were detected.

15. Because he was relying on the Vehicle's Autopilot systems, George McGee took his eyes off the road to look at his phone as he was approaching the T-intersection at CR-905A.

16. At that same time and place, Plaintiff, Dillon Angulo, had been driving a Chevrolet Tahoe owned by his mother and had lawfully parked that vehicle on the shoulder of the road on the eastbound side of County Road 905, directly across from the end of eastbound Card Sound Road.

17. After parking, Plaintiff, Dillon Angulo, and his companion, Naibel Benavides Leon, were standing outside of Plaintiff's Chevrolet Tahoe, directly next to same.

18.  At that time, the Autopilot of George McGee's vehicle failed to detect the end of Card Sound Road (including a failure to detect the various traffic control devices) and further failed to detect the substantial profile of the Chevrolet Tahoe at any point, despite the fact that the vehicle and all of the referenced traffic signals, signs and warnings were directly in front of and in the path of the Vehicle.

19.  As a result, the Vehicle continued eastbound through the intersection without initiating the brakes and the Vehicle struck Plaintiff's Chevrolet Tahoe at almost 70 miles per hour, causing it to violently rotate and strike Plaintiff and Ms. Naibel Benavides Leon, causing debilitating injuries to Plaintiff and killing Ms. Benavides Leon.

## COUNT 1 – STRICT PRODUCTS LIABILITY

### (Negligent design)

20.  Plaintiff re-alleges paragraphs 1-19 as if fully set forth herein.

21.  At all material times, Defendant, TESLA, was engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, and advertising vehicles, including the Vehicle equipped with Tesla's Autopilot systems suite.

22.  Tesla's vehicles, including the Vehicle, contained design defects when the vehicles were introduced into the stream of commerce by Tesla.

23.  Tesla's vehicles, including the Vehicle, contained design defects when the vehicles were introduced into the stream of commerce by Tesla.

24.  Tesla's vehicles, including the Vehicle, were defective and unsafe for their intended use. Due to the design defects, the Vehicle failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

25.  At all material times, Tesla knew that consumers would use and drive their vehicles as the driver Mr. McGee did on April 25, 2019. Tesla manufactured, designed, assembled, tested, inspected, marketed, distributed, and sold their vehicles, including the Vehicle, and their component parts including Tesla's Autopilot system and suite of driver assistance features technology with defects in design which made them dangerous, hazardous, and unsafe for their intended and reasonably foreseeable use.

26.  The design defects in the Vehicle and Tesla's Autopilot system suite of technology included defective and unsafe characteristics such as, but not limited to:

   a.  the failure to adequately monitor and determine driver-engagement;

   b.  the failure to adequately detect and respond to obstacles in the Vehicle's path of travel;

   c.  the failure to adequately detect and respond to the end of a roadway; and

   d.  and the failure to adequately detect and respond to traffic control devices.

27.  Tesla failed to meet the expectations of the reasonable consumer by placing on the market the Vehicle which failed to incorporate an Autopilot system that included safety components which would keep the vehicle only in designated travel lanes, reasonably match vehicle speed to traffic conditions, keep the vehicle within its lane, and provide active automatic collision avoidance and automatic emergency braking in a manner which detected objects the car might impact and applied the brakes so as to avoid impact with such objects.

28. Subsequent to subject collision, TESLA equipped subsequent Tesla Model S with additional technology programs and systems and safety components and passenger protection components that did, in fact, provide active automatic collision avoidance and automatic emergency braking in order to detect objects the car might impact, and apply the brakes accordingly to avoid impact with such objects. The inclusion of these features on the Tesla Model S after the subject collision, had they been installed on the Vehicle prior to the collision, would have entirely avoided and prevented the collision and the debilitating injuries suffered by Plaintiff.

29. By reason of the omission of the above -described safety systems, features and components from the Vehicle, on and prior to the date of the subject collision, the Vehicle was defective in its design, in that the auto pilot systems of the vehicle would not, and did not perform in a manner as safely as an ordinary consumer would expect when the vehicle was subjected to foreseeable accident or driving conditions.

30. The risk of danger in the design of the Vehicle outweighed any benefits of the design, and especially where safer alternative designs were available at the time of manufacture. Such reasonably safer alternative designs include, but are not limited to, the following:

   a. Driver-facing cameras that would monitor the driver's eyes and/or head position as a way to determine driver engagement and awareness;

   b. LIDAR, or any other reasonable alternative system that may or may not include the use of radar technology for the detection of obstacles and surroundings of a Tesla vehicle; and

   c. Recoding of Tesla's proprietary software for its Autopilot technology and suite of driver assistance features, specifically, the Traffic Aware Cruise Control feature.

31. Therefore, the Vehicle, and all of Tesla's vehicles that are equipped with Tesla's Autopilot system suite of technology presented and continue to present a substantial and unreasonable risk of serious injuries to drivers of Tesla vehicles and the public

32. The defects in the design of all Tesla vehicles equipped with Tesla's Autopilot system, including the Vehicle at issue, was a substantial factor in causing the subject collision and Plaintiff's injuries and damages as alleged herein.

33. As a direct and proximate result of the design defects of the Vehicle, Plaintiff, Dillon Angulo, suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings and wages in the past as well as loss of and/or reduction of earning capacity in the future. The losses are either permanent or continuing, and Plaintiff, Dillon Angulo, will suffer the losses in the future.

WHEREFORE, Plaintiff, Dillon Angulo, demands judgment against the Defendant, Tesla Inc., a/k/a Tesla Florida Inc., for compensatory damages together with post- judgment interest and taxable costs incurred in this action.

## COUNT 2 – STRICT PRODUCTS LIABILITY

### (Failure to Warn)

34. Plaintiff re-alleges paragraphs 1-19 as if fully set forth herein.

35. At all material times, Defendant, Tesla, was engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, and advertising vehicles, including the Vehicle equipped with Tesla's Autopilot systems suite.

36.  On April 25, 2019, George McGee was driving the vehicle in a reasonably foreseeable manner, with Tesla's Autopilot ss Autopilot systems engaged, when the Vehicle failed to detect the end of Card Sound Road, the presence of numerous traffic control devices, and the substantial profile of the Chevrolet Tahoe, all of which was directly in front of the Vehicles path. As a result of these failures, Tesla's vehicle proceeded through the intersection, struck the Chevrolet Tahoe, and caused substantial injuries to Plaintiff.

37.  At all material times, Tesla knew that consumers would use and drive their Autopilot equipped vehicles in the same manner that Brian McGee did in the time leading up to the collision at issue.

38.  An ordinary consumer would not have recognized the potential risks and dangers inherent in the operation and use of a Tesla vehicle with Autopilot engaged, including the fact that a Tesla vehicle would be unable to recognize the end of a roadway, the presence of a stop sign, the presence of flashing red overhead lights, the presence of yellow caution traffic signs, and/or the presence of a stationary vehicle parked directly in front of its path.

39.  At all times, Tesla failed to warn of the dangers inherent in the use of the Autopilot functions when used in a reasonably foreseeable manner.

40.  As a direct and proximate result of the Tesla's failure to warn of the design defects and dangers of its Autopilot functions, Plaintiff, Dillon Angulo, suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings and wages in the past as well as loss of and/or reduction of earning capacity in the future. The losses are either permanent or continuing, and Plaintiff, Dillon Angulo, will suffer the losses in the future.

WHEREFORE, Plaintiff, Dillon Angulo, demands judgment against the Defendant, Tesla Inc., a/k/a Tesla Florida Inc., for compensatory damages together with post- judgment interest and taxable costs incurred in this action.

## COUNT 3 – STRICT PRODUCTS LIABILITY

### (Negligent Manufacture)

41.   Plaintiff re-alleges paragraphs 1-19 as if fully set forth herein.

42.   At all material times, Defendant, Tesla, was engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, and advertising vehicles, including the Vehicle equipped with Tesla's Autopilot systems suite.

43.   At all material times, the subject Vehicle contained manufacturing defects which rendered the Vehicle unreasonably dangerous, in that:

   a.   Defects in the Vehicle caused the vehicle to fail to adequately monitor and determine driver-engagement;

   b.   Defects in the Vehicle caused the Vehicle to fail to adequately detect and respond to obstacles in the Vehicle's path of travel;

   c.   Defects in the Vehicle caused the Vehicle to fail to adequately detect and respond to the end of a roadway;

   d.   Defects in the vehicle caused the Vehicle to fail to adequately detect and respond to traffic control devices in the Vehicle's path of travel;

   e.   Defects in the vehicle caused the Vehicle to accelerate without driver input;

   f.   Defects in the vehicle caused the Autopilot systems to turn off and/or disengage without driver input.

44. At all material times, the manufacturing defects in the subject Vehicle were present before it left control of Tesla, at the time that Tesla placed the Vehicle into the stream of commerce, and at the time of the subject collision at issue.

45. As a direct and proximate result of the subject Vehicle's manufacturing defects, Plaintiff, Dillon Angulo, suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings and wages in the past as well as loss of and/or reduction of earning capacity in the future. The losses are either permanent or continuing, and Plaintiff, Dillon Angulo, will suffer the losses in the future.

WHEREFORE, Plaintiff, Dillon Angulo, demands judgment against the Defendant, Tesla Inc., a/k/a Tesla Florida Inc., for compensatory damages together with post- judgment interest and taxable costs incurred in this action.

## COUNT 4 – NEGLIGENT MISREPRESENTATION

46. Plaintiff re-alleges paragraphs 1-19 as if fully set forth herein.

47. At all material times, Defendant, Tesla, was engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, and advertising vehicles, including the Vehicle equipped with Tesla's Autopilot systems suite.

48. At all material times, Defendant, Tesla, had a duty to represent to the public and general, and its consumers specifically, including but not limited to Brian McGee, the true capabilities and just as importantly the true limitations of the Autopilot functions.

49.     At all material times, Defendant, Tesla, falsely advertised, marketed, and represented that its Autopilot had capabilities far beyond those which it had.

50.     For instance, just by terming the name of its product "Autopilot", Tesla created the false impression and understanding among consumers that its vehicles could drive automatically and autonomously, with reduced driver input or without any driver input. This impression, carefully crafted by Tesla to increase its sales and brand identity, was false in that the Autopilot systems are not autonomous and in fact require substantial and constant input from drivers.

51.     Additionally, Tesla distributed marketing and advertising materials intended to underscore the false autonomous functionality of its Autopilot systems, such as (but not limited to) an advertisement video that showed a Tesla vehicle, equipped with Autopilot, successfully navigating through city streets without a driver behind the wheel. This video was, in fact, a heavily orchestrated marketing video, with the vehicle at issue having been programmed with detailed three-dimensional digital maps not available to drivers using the commercially available version of Autopilot. Moreover, the vehicle in the video actually crashed during the filing of that video, an event never disclosed by Tesla.

52.     At all times, the actions of Tesla in misrepresenting the true capabilities and corresponding limitations of the Autopilot systems created a false expectation among consumers and Tesla drivers as to the extent that they could rely upon Autopilot.

53.     These false expectations caused and still cause Tesla drivers, such as Brian McGee, to be far too inattentive in their own driving and instead to put far too much reliance on Tesla's Autopilot functions to safely navigate any hazards on the road.

54.   As a direct result of these false expectations which were cultivated and created by Tesla, on the date of this subject collision, Brian McGee was far less vigilant and attentive while driving than he otherwise would have, and placed far too much reliance on Autopilot to safely navigate and operate the subject Vehicle, which caused the subject collision and Plaintiff's injuries.

55.   At all material times, Brian McGee was operating the subject Vehicle in a manner that was reasonably foreseeable to Tesla in that Tesla knew or should have known the reliance that driver's including McGee place on the Autopilot system given the nature of the marketing and advertising that Tesla disseminated to the public at large.

56.   As a direct and proximate result of the negligent acts or omissions of Tesla, Plaintiff, Dillon Angulo, suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings and wages in the past as well as loss of and/or reduction of earning capacity in the future. The losses are either permanent or continuing, and Plaintiff, Dillon Angulo, will suffer the losses in the future.

WHEREFORE, Plaintiff, Dillon Angulo, demands judgment against the Defendant, Tesla Inc., a/k/a Tesla Florida Inc., for compensatory damages together with post- judgment interest and taxable costs incurred in this action.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by Jury on all issues so triable.

Dated this 16th day of August, 2022

Respectfully submitted,

THE ROUSSO; BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669

By:     */s/ Darren J. Rousso, Esq.*
        Darren J. Rousso, Esq.
        Florida Bar No.: 97410
        Darren@roussolawfirm.com
        SERVICE EMAILS:
        pleadings@roussolawfirm.com
        Frank@roussolawfirm.com

By:     */s/ Adam T. Boumel, Esq.*
        Adam T. Boumel, Esq.
        Florida Bar No.: 0110727
        Adam@roussolawfirm.com
        SERVICE EMAILS:
        pleadings@roussolawfirm.com (primary)
        Frank@roussolawfirm.com (secondary)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, *as Personal*
*Representative of the Estate of Naibel*
*Benavides Leon, deceased,*

      Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

      Defendant.

_____/

### Case No. 22-cv-22607-BLOOM

DILLON ANGULO,

      Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

      Defendants.

_____/

## PLAINTIFF, DILLON ANGULO'S MOTION TO FILE PETITIONS UNDER SEAL

Plaintiff, DILLON ANGULO, pursuant to Local Rule 5.4(b) and the Rules Regulating the Florida Bar 4-1.5, Fees and Costs for Legal Services, (f)(4)(B)(ii) and (f)(4)(D)(iii), and then to Seal these proceedings within the File for the reasons set forth below:

1.      This action stems from an incident wherein Plaintiff suffered life threatening and life altering personal injuries when, while standing outside of and adjacent to his lawfully parked motor vehicle, a Tesla vehicle designed and manufactured by Defendant was driving on Autopilot and collided with Plaintiff's vehicle in an extremely high-speed collision, causing the vehicles to

violently slam into Plaintiff's body. Plaintiff has brought this action sounding in products liability, alleging inter alia that design and manufacturing defects in the subject Tesla vehicle – and particularly the autonomous driving functions of the vehicle - caused the collision at issue.

2.    Plaintiff hereby moves for leave to file two separate Petitions under seal, as follows:

   a. Plaintiff's Petition to Approve Contingency Fee Contract and to Seal File, made pursuant to Rule 4-1.5(f)(4)(B)(ii) of the Rules Regulating the Florida Bar ; and

   b. Counsel's Petition to Authorize Fee Division, made pursuant to Rule 4-1.5(f)(4)(D)(iii) of the Rules Regulating the Florida Bar.

3.    Both of the above cited rules specifically provide that the Petitions at issue are to be filed under seal.

4.    Accordingly, Plaintiff and his counsel pray that this Honorable Court grant this Instant Motion and enter an Order providing that both Petitions and all related documents and Orders be filed and kept under seal indefinitely.

WHEREFORE, Plaintiff prays this Court grant this Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669

By:    /s/ *Adam T. Boumel, Esq.*
Adam T. Boumel, Esq.
Florida Bar No.: 0110727
Direct email: adam@roussolawfirm.com
Service emails:
Pleadings@roussolawfirm.com
Frank@roussolawfirm.com

# EXHIBIT "B"



# ROUSSO / BOUMEL
## ATTORNEYS AT LAW

9350 South Dixie Hwy
Suite 1520
Miami, FL 33156

Telephone: (305) 670-6669
Facsimile: (305) 670-6663
www.roussoboumellawfirm.com

## REVISED CONTINGENCY FEE RETAINER AGREEMENT

I, <u>Dillon Angulo</u>, the undersigned client ("Client"), do hereby retain and employ (1) The Rousso, Boumel Law Firm, PLLC, (2) Elise R. Sanguinetti, Esq. of Arias, Sanguinetti, Wang & Torrijos, LLP, (3) Donald Slavik, Esq., of Slavik Law, and (4) Karl Sturge, Esq. (collectively, the "Attorneys") to represent Client in claim(s) for damages against <u>Tesla, Inc.</u> (or any subsidiary or affiliate thereof) resulting from a <u>motor vehicle collision / product failure</u> which occurred on <u>April 25, 2019</u>. Client and the Attorneys hereby further agree as follows:

1. **Attorneys' Fees – Contingent on Recovery**

   As compensation for the Attorneys' professional services, Client agrees to pay the Attorneys from the gross proceeds of any recovery either the amount awarded by the court or **40% of any and all proceeds recovered**, whichever is greater. The fees will be apportioned by and among the Attorneys as follows:

   - 40% of the total attorneys' fees to Elise R. Sanguinetti, Esq of Arias Sanguinetti Wang & Torrijos, LLP and Donald H. Slavik, Esq of Slavik Law;

   - 45% of the total attorneys' fees to The Rousso, Boumel Law Firm, PLLC; and

   - 15% of the total attorneys' fees to Karl Sturge, Esq.

   In addition to the above, after any notice of appeal is filed or if formal post-judgement action is required, Client shall pay the Attorneys an additional 5% of any and all proceeds recovered (for a total of 45%). Client agrees and understands that the Attorneys have obligation to Client under this agreement to file an appeal or to conduct post-judgment action, and further that Attorneys may hire, at their discretion, other attorneys to handle such issue.

   <u>It is understood that the undersigned counsel, the attorneys of my choice, are seeking attorneys' fees outside of the standard fee limitations set forth by the Florida Supreme Court. I have a complete understanding of my rights and the terms of the proposed contract, and willingly agree to same. As a result, I agree to petition the Circuit Court for the</u>

Page **1** of **3**

approval of this contingent contract, and to participate, if necessary, in achieving approval of this contract.  If this contingent contract is not approved, the contingency fee shall be governed by the Rules and Regulations of the Florida Bar in effect on the date of signing this contract.

**IF NO RECOVERY IS MADE FOR OR ON BEHALF OF CLIENT, CLIENT SHALL NOT PAY ATTORNEYS' FEES FOR ANY OF THE PROFESSIONAL SERVICES RENDERED IN REFERENCE TO THIS MATTER.**

2. **Litigation Costs and Expenses**

Client shall be solely responsible for funding all costs and expenses which Attorneys, in their own judgement and discretion, deem reasonable in pursuing Clients claims. All parties understand and agree that in some instances Attorneys may make an initial payment of such costs or expenses and then request reimbursement from Client, and in other instances Attorneys may ask that Client directly pay such costs and expenses. Client agrees to timely remit any such requests for reimbursement or direct payments of any costs or expenses upon Attorneys' request.  Similarly, Attorneys shall provide all invoices and billing statements for any such costs and expenses upon Client's request. Notwithstanding the foregoing, Client's responsibility for funding these costs and expenses are capped at a maximum amount of $150,000.00, and anything above and beyond that amount is the responsibility of Attorneys.  If there is a recovery made on Client's claims, Attorneys will be entitled to recoup from such recovery the amount of costs and expenses which Attorneys contributed. Any costs or expenses which are the responsibility of Attorneys (i.e. any costs or expenses in excess of $150,000.00) are the sole responsibility of Attorneys, and if no recovery is made on Client's claim, Client shall not be responsible for reimbursing Attorneys for such costs or expenses.

3. **Miscellaneous**

- Client agrees that the decision to file or institute and appeal shall rest with the Attorney.

- Before signing this contract, Client has received and read the "Statement of Client's Rights" and understands each of the rights set forth therein. Client has further signed the statement and received a signed copy to keep for reference while being represented by the undersigned attorney.

- This contract may be cancelled by written notification to the attorney at any time within three (3) business days of the date the contract was signed, as shown below, and if cancelled, the client is not obligated to pay any fees to the attorney for the work performed during that time.  If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amount as he has reasonably advanced on behalf of the client.

Page **2** of **3**

- Client and Attorneys understand and agree that this Revised Retainer Agreement completely supersedes the previous Retainer Agreement and Addendum Retainer Agreement, and to the extent that there are any conflicts between same, the terms of this instant Revised Retainer Agreement is controlling.

- Client and Attorneys understand and agree that "Proceeds received" means all money received, including all attorney's fees and costs obtained in a settlement or awarded by a Court for any reason, including those obtained as a result of proposals for settlement or sanctions.

- Client and Attorneys understand and agree that all Attorney fees are computed by applying the percentages above to the gross recovery before deductions of costs (whether taxable or not), before payment of medical bills, or liens of any kind.

- Client and Attorneys understand and agree that all Attorneys are jointly responsible for handling this matter.

By: _____  1/20/23
Client Dillon Angulo                        (Date)

By: _____  1/13/23
Adam Boumel Esq.                            (Date)
The Rousso, Boumel Law Firm PLLC

By: _____  1/10/2023
Elise Sanguinetti, Esq.                     (Date)
Arias Sanguinetti Wang & Torrijos, LLP

By: _____  1/9/2023
Donald Slavik, Esq.                         (Date)
Slavik Law

By: _____  1/23/23
Kell Sturge, Esq.                           (Date)

Page 3 of 3