**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No.: 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.

      Defendant.

_____/

DILLON ANGULO,                   Case 1:22-22607-KMM

      Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.

      Defendant.

_____/

## DEFENDANT, TESLA, INC.'S RESPONSE TO PLAINTIFFS' JOINT MOTION FOR LEAVE TO AMEND COMPLAINT

Defendant Tesla, Inc. ("Tesla"), by its undersigned counsel, responds to Plaintiffs' Joint Motion for Leave to Amend Complaint (Dkt. 129 or the Motion), and for the reasons stated below, respectfully requests that this Honorable Court DENY the Motion:

1

## BACKGROUND

This automotive product liability case arises out of a crash that occurred on April 25, 2019 (the "Subject Crash"). Decedent Naibel Benavides and Plaintiff Dillon Angulo, pedestrians, were struck when non-party George McGee negligently drove his 2019 Tesla Model S (the "Model S") through a "T" intersection in Key Largo, Florida by ignoring a visible stop sign and overhead red flashing stop light. While still at the crash scene, Mr. McGee admitted to police that he drove his Model S through the intersection without stopping because he was distracted from his driving responsibilities while looking for his cell phone that he dropped while driving. He had the Autopilot[1] features of his Model S engaged while driving but he overrode the Traffic Aware Cruise Control feature by depressing the accelerator pedal to go faster—over the posted speed limit. Importantly, Autopilot in the subject Model S was designed for use on the highway and would not do anything in response

---

[1] The subject Model S was configured with a suite of advanced driver assistance systems (ADAS) that Tesla calls "Autopilot." It includes Traffic Aware Cruise Control (TACC), which controls the vehicle's speed; Autosteer, which controls steering within the lane; Automatic Emergency Braking; and Forward Collision Warning. Engaging Autopilot does not make the Tesla Model S a "self-driving car." Instead, and consistent with the Society of Automotive Engineers (SAE) definitions of ADAS technology, Autopilot is a Level 2 system, which requires the driver to be in control at all times:



*See* Society of Automotive Engineers, *Standard J3016 Levels of Driving Automation* (May 3, 2021), https://www.sae.org/blog/sae-j3016-update (last visited Sep. 18, 2023)

28563220v1

to traffic signs or other traffic control devices present at this intersection. Instead, Mr. McGee was solely responsible for driving the Subject Tesla and for complying with all traffic control devices- and he understood this at the time of the crash. In Short, he failed to do so and this caused a high-speed collision between the Model S and another vehicle that was legally parked near the intersection.  Consequently, the parked vehicle struck Ms. Benavides and Mr. Angulo, who were standing nearby. This resulted in Ms. Benavides death and injuries to Mr. Angulo.  Over the past two and a half years since *this*[2] case was filed, Tesla has diligently conducted discovery – including service of nine sets of discovery and depositions of key fact witnesses. In that time, nothing has been uncovered which changes the crash facts that give rise to this case.

On August 25, 2023 Plaintiffs filed their Joint Motion for Leave to Amend Complaint, attaching Plaintiffs' proposed Amended Complaint as Exhibit A.  *See* Dkt. 129 and Exhibit A to same.   Plaintiffs' Proposed Amended Complaint would add the following new claims: Negligent Misrepresentation (Count IV)[3]; Fraudulent Misrepresentation (Count V); Fraudulent Concealment (Count VI); and Intentional False Advertising under Fla Stat §817.44 (Count VII). *See* Dkt. 129- Plaintiffs' Joint Motion for Leave to Amend Complaint at pgs. 47-55.  Plaintiffs' Motion should be

---

[2] Before suing Tesla, both Plaintiffs sued Mr. McGee separately and alleged that his negligence caused the subject crash and their damages. Both Plaintiffs settled with Mr. McGee before suing Tesla.
[3] This allegation is new for Plaintiff Neima Benavides, but not for Plaintiff Dillon Angulo.

denied because (1) it is late – filed nearly a year after this Court's October 28, 2022 deadline to amend pleadings; (2) the basis allegedly giving rise to Plaintiffs' proposed amendment is not "new." Instead, it was known by or available to Plaintiffs well before the Court's deadline; (3) Plaintiffs' proposed amendment would be futile because the new claims that Plaintiffs' hope to add to their case fail to state claims by these Plaintiffs upon which relief may be based; and (4) Plaintiffs' Amendment would unfairly prejudice Tesla, unduly prolong this litigation, and waste the resources and time of the Parties and this Court.

## **ARGUMENT**

Federal Rule of Civil Procedure 15 provides that after a responsive pleading is served, "a party may amend its pleading with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend a party's pleading should be granted when justice so requires. *Id.* However, district courts have discretion to deny leave where substantial reason justifies denial. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999).

The factors in determining whether justice requires allowing an amendment under Rule 15(a) are: (1) Undue Delay; (2) Bad faith or dilatory motive; (3) Futility of Amendment; and (4) Prejudice to the opposing party. Id. In *Foman v. Davis*, the Supreme Court ruled that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to

test his claim on the merits." 371 U.S. 178, 182 (1962) (emphasis added)). Conversely, denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *See also Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (affirming district court's denial of Plaintiffs' leave to amend complaint because the three new claims asserted would have been subject to dismissal as a matter of law).

### A.  Plaintiffs Should Not Be Permitted to Amend Eleven Months *After the Court's Deadline*

This Court's Order Consolidating Cases and Amending Scheduling Order (Dkt. 50) established a deadline of October 28, 2022. Plaintiffs' Motion for Leave to Amend – filed on August 25, 2023 – comes nearly a year after this deadline. Further, this attempt to amend comes after *nearly three years* of litigation, during which Plaintiffs conducted no discovery or deliberately obstructed Tesla's attempts to conduct discovery. While Tesla sought to diligently conduct discovery, Plaintiffs continuously sought continuances and actively avoided responding substantively to Tesla's discovery. *See* Dkt. 39- Order Denying Plaintiff Benavides' Motion for Stay; *see also Dkt. 68-* Tesla's Motion to Enforce Order Regarding Discovery Responses; *see also* Dkt. 72- Plaintiff Angulo's Motion to Continue Trial. Indeed,

neither Plaintiff started conducting discovery until *two years after this litigation commenced*.[4]

Additionally, Plaintiffs provide no indication of what "new" factual revelation necessitated this amendment after the Court's deadline; if ever. However, a simple review of Plaintiffs' Proposed Amended Complaint – which adds only claims related to fraud and misrepresentation– makes clear that the information cited by Plaintiffs as the basis for the amendment was known by or available to Plaintiffs long before the Court's deadline to amend their Complaint. *See* Dkt. 129 at pgs. 75-97; *see also id* at pg. 15 (where Plaintiffs argue that "*long before* this tragic incident, advocates and federal agencies have repeatedly demanded the Federal Trade Commission act on Tesla's apparent false advertising of its automated driving systems"). As Plaintiffs note in their Proposed Amended Complaint – Tesla has faced allegations of misrepresentation related to Autopilot as far back as 2018 – *prior to the instant crash*. *See* Dkt. 129 at pgs. 16-17. Tesla vehemently denies those allegations. Still, Plaintiffs are pointing to information that existed over 5 years ago and calling it "new." Indeed, a substantial majority of the "new" material cited in Plaintiffs' proposed Amended Complaint existed years before Plaintiffs moved to amend. *See* Dkt. 129, generally. This begs the question: Why have Plaintiffs waited until the

---

[4] Notably, Plaintiff Angulo was involved in litigation with driver George McGee as early as 2019, yet his first discovery on Tesla (subpoena or otherwise) was served in February of 2023. *See* Plaintiff Dillon Angulo's Complaint in *Angulo v. McGee*, Case No. 19-CA-000501-P (Attached as Ex. A).

third year of this litigation – nearly one year after the Court's deadline – to move to add claims based on information available to them well before that deadline passed. Moreover, the allegations that underlie Plaintiffs' proposed new claims do not relate to these Plaintiffs. Instead, they relate directly to Mr. McGee, who was deposed in March 2022 and who both Plaintiffs sued or made claims against before suing Tesla. In short, Plaintiffs failed to act sooner because THEY failed to act. They are too late. They have no excuse for their tardiness and their Motion should be denied.

**B.     Plaintiffs' Proposed Amendments are Futile Because The New Allegations Lack Merit**

This Court should also deny the Motion because the amendments proposed by Plaintiff are futile.  The thrust of Plaintiffs' Proposed Amended Complaint is the addition of several claims related to Tesla's alleged fraud and misrepresentation – not aimed at or involving them – but *against non-party George McGee*.  However, Plaintiffs lack standing to assert these claims, and their attempt to step into the shoes of McGee in order to assert claims on his behalf is improper and not permitted by law including Florida substantive law.

As this Court knows, to bring a cognizable claim in federal court, a plaintiff "must satisfy three requirements to have standing under Article III of the United States Constitution: (1) 'injury in fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.'" *Houston v. Marod Supermarkets, Inc.*,

733 F.3d 1323, 1328 (11th Cir. 2013) (*quoting Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)). Specifically, "a plaintiff **cannot raise the claims of third parties**; cannot claim standing based on a generalized grievance; and must raise a claim within the zone of interest covered by a statutory conferral of standing." *Id.* (*citing Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203–10 (11th Cir. 1991) (emphasis added). Plaintiffs' proposed new claims fail to meet these legal requirements. Instead, Plaintiffs' proposed new claim raise allegations of: (1) Negligent Misrepresentation *to consumers* of Tesla products (i.e. driver George McGee); (2) Fraudulent Misrepresentation *to George Brian McGee*; (3) Fraudulent Concealment *from "customers such as [George Brian] McGee;* and (4) Intentional False Advertisement t*o George Brian McGee*. *See* Dkt. 129 at Counts 4-7.

A closer analysis of the specific elements of each of Plaintiffs' new claims make it clear that Plaintiffs hope this Court will allow them to improperly step into Mr. McGee's shoes to assert claims for which they do not have standing:

*Negligent Misrepresentation* (Count IV)

Under Florida law, claims of negligent misrepresentation require a showing that the injury resulted *from the plaintiff acting in justifiable reliance upon the misrepresentation*. *See Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1347 (M.D. Fla. 2010); citing *Baggett v. Electricians Local 915 Credit Union*, 620 So.2d 784, 786

(Fla. 2d DCA 1993) (emphasis added).  As the District Court of Appeal of Florida,

Fourth District explained in *Hillcrest Pac. Corp. v. Yamamura*:

> The last element of a misrepresentation, in order that it
> may be the ground for any relief, affirmative or defensive,
> in equity or at law, is its materiality. The statement of facts
> of which it consists must not only ***be relied upon as an
> inducement to some action, but it must also be so
> material to the interests of the party thus relying and
> acting upon it***, that he is pecuniarily prejudiced by its
> falsity, is placed in a worse position than he otherwise
> would have been.

727 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 4th 1999).

Here, Plaintiffs confusingly allege that *they* were injured because of non- party

George McGee's reliance on unspecified statements made by Tesla.  Plaintiffs do

not allege that *they* acted in reliance on statements made by Tesla *to* them.  This

simply does not comport with the principles of negligent misrepresentation under

Florida law.

> *Fraudulent Misrepresentation* (Count V)

Similar to negligent misrepresentation, fraudulent misrepresentation under

Florida law requires – among other things – "consequent injury *by the party acting

in reliance on the representation*."  *Hearn v. Int'l Bus. Machs.*, 588 Fed.Appx. 954,

956–57 (11th Cir. 2014) (emphasis added).  Plaintiffs' again attempt to improperly

step into the shoes of McGee to assert claims they do not have standing to make.

*See* Dkt. 129 at pgs. 50-51 (alleging that Tesla made misrepresentations to *McGee*,

and induced *McGee* into false sense of security about the capabilities of the Subject Vehicle).

Additionally, Tesla owes no duty to the Plaintiffs – members of the general public – under Plaintiffs' allegations.  Under Florida law, "a defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud when there is a duty to disclose."  *TransPetrol, Ltd. v. Radulovic*, 764 So.2d 878, 880 (Fla. Dist. Ct. App. 4th 2000).  "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id* (quoting *State v. Mark Marks, P.A.*, 654 So.2d 1184, 1189 (Fla. Dist. Ct. App. 4th 1995).  Plaintiffs do not even allege that Tesla owed *Plaintiffs* any duty, and consequently fail to state a cognizable claim for fraud under Florida law.  Instead – Plaintiffs' allegations focus solely on Tesla's alleged representations to a third party.

        *Fraudulent Concealment* (Count VI)

In Count VI of their Proposed Amended Complaint, Plaintiffs allege that "Tesla had a duty to disclose the full limitations of its vehicles' safety features and autopilot ***to its consumers***." *See Dkt*. 129 at pg. 52.  Under Florida law, a plaintiff must establish the following to establish a *prima facie* case of fraudulent concealment:

    (1) the defendant concealed or failed to disclose a material fact;

(2) the defendant knew or should have known the material fact should be disclosed;

(3) the defendant knew his concealment of or failure to disclose the material fact would ***induce the plaintiffs to act***;

(4) the ***defendant had a duty*** to disclose the material fact; and

(5) the ***plaintiffs*** detrimentally relied on the misinformation.

*See Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013) (internal citations omitted).

Through their own pleadings, Plaintiffs again fail to allege that Tesla owed *Plaintiffs* a duty to disclose such information *to them*. *See Dkt*. 129 at pgs. 52-53. Plaintiffs do not allege that Tesla made statements *to the Plaintiffs*, or that Tesla *induced the Plaintiffs* to do something that caused their injuries. *See id.* Instead, Plaintiffs again attempt to assert claims on behalf of non-party McGee. *See id*. Such

11

allegations do not properly state a cause of action for fraudulent concealment under Florida law.[5]

*Intentional False Advertising under Fla Stat §817.44* (Count VII)

The allegations contained in Plaintiffs' proposed cause of action for Intentional False Advertising under Fla. Stat. Florida Statute §817.44 also fail to state a proper cause of action.  Section 817.44 specifically prohibits:

> Offer[ing] for sale or to issue invitations for offers for the sale of any property . . . or any services . . .  by placing or causing to be placed . . . an advertisement describing such property or services as part of a plan or scheme with the intent not to sell such property or services so advertised, or with the intent not to sell such property or services at

---

[5] Plaintiffs' newly proposed Fraud and Misrepresentation claims also do not comply with FRCP 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (emphasis added). This heightened pleading requirement applies to actions for negligent misrepresentation brought pursuant to Florida law. *Linville v. Ginn Real Estate Co.*, 697 F.Supp.2d 1302, 1306 (M.D. Fla. 2010). To satisfy Rule 9(b), a complaint must allege facts regarding the "time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). In short, Plaintiffs' generalized allegations fail to address (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

the price at which it was represented in the
advertisement…

Fla. Stat. Ann. §817.44.

Plaintiffs fail to assert an applicable claim under this statute because they do
not allege that Tesla advertised the subject vehicle for sale (1) with the intent not to
sell it; or (2) with the intent to sell it at a price other than as advertised.  *See* Dkt. 129
at pgs. 53-54.  Courts have strictly construed the applicability of this statute to only
prohibit the advertisement of sale *where the advertiser has no intent to sell, or has
no intent to sell at the advertised price*.  *See Samuels v. King Motor Co. of Fort
Lauderdale*, 782 So. 2d 489, 497 (Fla. Dist. Ct. App. 4th 2001) (dismissing Section
817.44 claim where Plaintiffs' allegations of *misleading* advertising did not bear any
relationship to advertising *with no intent to sell or sell for the advertised price*).  As
the court in *Samuels v. King Motor Co. of Fort Lauderdale* explained, "according to
the Florida Court of Appeals, the definition of 'misleading advertising' of the type
alleged in this case and found elsewhere in Florida statutory law has no application
to section 817.44's prohibition on "false advertising." *Id*.  Therefore, Plaintiffs' new
Count of Intentional False Advertising in Violation of Florida Statutes §§ 817.40

and 817.44 similarly fails to state a cause of action upon which relief may be based in this case.

Further, it is clear from the deposition testimony of Mr. McGee *a year and a half ago* that he was not influenced by any statements made by Tesla or Elon Musk in purchasing or operating his Model S:

> Q. Did you pay attention to anything that [Mr. Musk] said or did about his -- specifically about the Tesla before you bought it?
> A. **No, sir . . .** I don't really like the politics part of it, so kind of stayed away from him and everybody on the other side
>
>         *           *           *
>
> Okay.· How about in interviews or articles that you've read or anything like that where Mr. Musk himself would say things or -- or, you know, release statements about the autopilot and  features?
> A.· ·**No, sir.· Again, I don't know if I've ever heard him speak,** believe it or not, other than I watched the introduction of the sports car and the semi truck.· He spoke of those, but I kind of stay out of it.
> Q.· ·**All right.· So that had no affect on your purchasing of the vehicle?**
> A.· ·**No sir.· No, sir.**
> Q.· ·**Or the use of the vehicle?**
> A.· ·**No, sir.**
>
>         *           *           *
>
> Q.  **Before you made your decision to buy the vehicle, did you go to a Tesla store, talk to a sales representative, sales consultant?**
> A.  **No, sir.**
> Q.  **Did you go to a Tesla store and test drive one?**
> A.  **No, sir.**
> Q.  **Did you contact Tesla in California and make any request for information?**
> A.  **No, sir.**

14

Ex. B- Deposition of George McGee at 233:12-18; 233:22-234:12; and 28:20-29:5 (emphasis added).   Plaintiffs' new allegations are at odds with the facts of this case.[6] As Mr. McGee further testified, he fully understood that his Model S would not independently stop for stop signs or other traffic control devices:

> A.  I wasn't aware of kind of how far along they were, but **I was certainly aware that they couldn't do the complete traffic** -- I don't the terminology [*sic*], but I wasn't looking for stoplights and things.  I just -- again, I don't think – I suspecting. I don't recall.· **But I don't think I really assumed that it would stop at stop signs and stoplights and those sorts of things, no.**
>
> Q.  **Before the crash occurred, you knew that was your job to detect and react properly to a stop sign or red flashing light, correct?**
> A.  **Yes.**
> Q.  **Was not the car's job, right?**
> A.  **Yes.**
> Q.  **Wasn't Tesla's job; it was your job?**
> A.  **Yes, sir.**

Ex. B- Deposition of George Brian McGee at 112:18-113:15 (emphasis added). Consequently, even if Plaintiffs had standing to assert their new claims, there is no factual basis to support the elements of these claims, and they would be dismissible as a matter of law.  *See* Fed. R. Civ. P. 56(a).

---

[6] Additionally, Guillermo Benavides – Decedent's father – recently testified that he had never read or heard any statements *from Tesla or Mr. Musk* about Tesla vehicles or Autopilot prior to the crash. *See* Ex. C- Deposition of Guillermo Benavides at 36:13-39:3.

**C.    Plaintiffs' Amendment – if Permitted, Would Prejudice Tesla and Needlessly Consume Resources of the Parties and this Court**

Permitting Plaintiffs to amend their complaint two and a half years after litigation arising out of the Subject Crash began would prejudice Tesla in several ways.  First, it would reward Plaintiffs, who have sought to delay this litigation for multiple years – causing Tesla to expend additional money to defend itself.  Notably, Plaintiff Neima Benavides routinely ignored Tesla's efforts to conduct discovery about her lawsuit over the span of an entire year.  *See* Dkt. 68- Motion to Enforce Order Regarding Plaintiffs' Discovery Responses.  Both Plaintiffs have already sought at least one continuance each in this litigation, and Neima Benavides moved unsuccessfully to stay litigation, pending the conclusion of NHTSA's Preliminary Evaluation 21-020.  *See* Dkt. 39- Order Denying Plaintiffs' Motion to Stay. Suffice it to say that several delays caused by the Plaintiffs have been costly and detrimental to Tesla and its defense.  Nevertheless, as Tesla has stated repeatedly in this case, the underlying facts of this case have not changed through nearly three years of discovery.  This accident facts that underlie this case show that Autopilot was overridden at the time of the crash due to McGee's manual operation of the car.  Further, McGee has *admitted from the start* that he was distracted from driving by dropping his phone in the seconds leading up to the crash.  *See* Ex. D- Transcript of

Audio Recording from Body, Dash, and Rear Seat Interior Cameras from Monroe County Sheriff at 2:12-14, 4:6-20.

Second, Permitting Plaintiffs to file their Proposed Amended Complaint would force Tesla to expend even more money defending itself against claims that should be dismissed on the pleadings. As discussed in depth above, Plaintiffs' new allegations fail to assert legally cognizable claims. This Court need not spend its time and resources – or those of the other Parties – permitting discovery on these causes of action that can readily be disposed of as a matter of law. Further, in his own words and contrary to Plaintiffs' claims – George McGee testified that (1) he understood he was responsible for operating the Subject Vehicle at the time of the crash; and (2) he was under no impression – at the time of the crash– that the vehicle would stop for traffic devices:

> Q.  Do you agree that it was always your responsibility as the driver, while using autopilot, to stay alert?
> MR. BRANIGAN:  You're looking at your lawyer.
> MR. MCGEE:  Yes, sir, I am. To make sure I can answer.
> MR. LIRO: Unless I -- unless I tell you not to answer, you can answer.
> A.  Okay. Yes, sir. Yes, sir.
> Q. Do you agree that it was always your responsibility as the driver of the vehicle, even with autopilot activated, to drive safely and be in control of the vehicle at all times?
> A. Yes, sir.

\*       \*       \*

Q. All right. And **you understood before this crash** occurred that the Tesla was not designed to identify and respond to any of those traffic control devices, right?

MR. POSES: Objection to form.

A.  I wasn't aware of kind of how far along they were, but **I was certainly aware that they couldn't do the complete traffic** -- I don't the terminology [*sic*], but I wasn't looking for stoplights and things.  I just -- again, I don't think – I suspecting. I don't recall.· **But I don't think I really assumed that it would stop at stop signs and stoplights and those sorts of things, no.**

Q. **Before the crash occurred, you knew that was your job to detect and react properly to a stop sign or red flashing light, correct?**
A. **Yes.**
Q. **Was not the car's job, right?**
A. **Yes.**
Q. **Wasn't Tesla's job; it was your job?**
A. **Yes, sir.**

Ex. B- Deposition of George Brian McGee at 93:6-20, 112:18-113:15 (emphasis added).

Plaintiffs attempt to add a new dimension to their lawsuit after years of litigation have occurred will add unnecessary expense to this Court and to Tesla and cause undue delay to the conclusion of this litigation.  Consequently, to advance judicial economy and serve the interests of justice, this Court can and should DENY Plaintiffs' Motion for Leave to Amend their Complaint.

18

## <u>CONCLUSION</u>

WHEREFORE, Defendant Tesla, Inc. respectfully requests that this Court enter an Order DENYING Plaintiffs' Joint Motion for Leave to Amend Complaint.

Date: September 18, 2023          Respectfully submitted,

By:   Henry Salas               
    HENRY SALAS (815268)
    COLE SCOTT & KISSANE
    9150 S Dadeland Boulevard, Suite 1400
    Miami, FL 33156-7855
    Office: 786.268.6419
    Fax: 305.373.2294
    henry.salas@csklegal.com

     - and –

    THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
    DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
    BOWMAN AND BROOKE LLP
    101 West Big Beaver Road, Suite 1100
    Troy, MI 48084
    Office: 248.205.3300
    Fax: 248.205.3399
    thomas.branigan@bowmanandbrooke.com
    drew.branigan@bowmanandbrooke.com

    ***Attorneys for Defendant TESLA, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on  September 18th, 2023, I electronically file the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

ADAM T. BOUMEL, ESQ.
Florida Bar No.: 0110727
DARREN J. ROUSSO, ESQ.
Florida Bar No.: 97410
THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway, Suite 1520
Miami, FL 33156
305.670.6669 Tel
adam@roussolawfirm.com
SERVICE EMAILS:
pleadings@roussolawfirm.com
(primary)
Frank@roussolawfirm.com
(secondary)

*Attorneys for Plaintiff Dillon Angulo*

TODD POSES, ESQ.
Florida Bar No.: 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, Florida 33131
305.577.0200 Tel
305.371.3550 Fax
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

Respectfully submitted,

By: Henry Salas____

28563220v1