UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, as Personal
Representative of the Estate of
NAIBEL BENAVIDES LEON, deceased,

    Plaintiff,

v.

TESLA, INC. a/k/a TESLA FLORIDA,
INC.,

    Defendant.
_____/

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONE TO
PLAINTIFF'S JOINT MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiffs Neima Benavides and Dillon Angulo, by and through undersigned counsel, reply to Defendant's Response to Plaintiff's Joint Motion for Leave to Amend Complaint [DE137] and state as follows:

    **I.    DEFENDANT IMPROPERLY ASKS THIS COURT TO CONSIDER MATTERS OUTSIDE THE FOUR CORNERS OF THE PROPOSED AMENDED COMPLAINT.**

Right out of the gate, Defendant presents this Court with its version of the accident, eschewing its duty to direct its arguments to the allegations of the proposed amended complaint, which must be taken as true. As explained in *Fischer v. Trivita Inc.*, 2020 WL 13349091, at *4 (M.D. Fla. July 30, 2020), "futility arguments are analyzed under the same standards as motions to dismiss." When a defendant claims the plaintiff's proposed amended complaint fails to state a claim, Rule 12(b)(6) applies. *Id.* Under the 12(b)(6) analyses, the Court must accept the factual allegations in the proposed Amended Complaint as true and construe them in a light most favorable to Plaintiff." *Fischer*, *Id.*, quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir.

2009). Finally, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Defendant violates this rule in its "Background" section and again in submitting deposition testimony of the car's driver, George McGee ("McGee"), on pages 14 and 15 of its response. The Court must disregard this extraneous information while considering Plaintiffs' motion.

## II. PLAINTIFFS' MOTION IS NOT UNTIMELY.

While acknowledging that there are two Plaintiffs in this case, Defendant's response focuses only on the litigation conduct of Benavides when accusing the Plaintiffs of undue delay. The Court's focus should instead be on Plaintiff Angulo's litigation conduct, because Angulo should not suffer prejudice as a result of his case being consolidated with Benavides'.

Further, at the outset of her suit, Benavides made it clear that her intention all along had been to await the results of NHTSA's investigation into Tesla's Autopilot system. However, she had to file suit because the statute of limitations was going to run. In order to avoid unnecessary judicial labor and cost by the parties, Benavides sought to stay this matter pending the outcome of NHTSA's investigation, which Tesla opposed. While the Court denied Benavides' efforts to stay the case, it cannot be said that her actions were done for the purposes of delay or were not in good faith.

Plaintiff Angulo filed suit on August 16, 2022. On August 30, 2022, this Court consolidated the two actions. [DE50] The same day, the Court entered a Scheduling Order setting the amendment deadline on October 28, 2022, four months prior to the discovery cut-off of February 21, 2023, and seven months prior to the trial date of June 5, 2023. Angulo filed a motion for continuance, noting that at the time of consolidation, the discovery deadline was less than six months away. [DE72] The Court granted the continuance, resetting the trial for March 11, 2024 and moving the discovery cut-off to November 14, 2023. [DE91] The Court's Amended Scheduling Order did not reset the amendment deadline. However, Plaintiffs' filed their Motion for Leave to Amend on August 25, 2023, three-months before the current discovery cut-off and

six and half months before the trial period. Thus the filing of the motion occurred only slightly later with respect to the cutoff and trial date than the court had allowed in its August 30, 2022 Scheduling Order. [DE50]

Conspicuously absent from Defendant's response is the fact that, to date, Tesla has fought discovery tooth and nail. After objecting to almost every production item sought by plaintiffs, the Magistrate on June 14, 2023 ordered production of numerous documents. [DE119] The order required those documents to be produced once a protective order was entered, which occurred on July 28, 2023. [DE126] As of this writing, Tesla has not complied with the order. While Tesla provided a response to Plaintiffs' Third Request for Production, it has yet to provide any of the documents referenced in its response. Plaintiffs' intention was to utilize discovery documents in crafting their Joint Amended Complaint. When discovery was not forthcoming, despite the Magistrate's Order, Plaintiffs elected to make do with the information they did have in their possession in order to amend their complaint, so as to avoid the very accusation of undue delay that Tesla now levels against us. [1]

Federal law is clear that delay alone is not a basis to deny leave to amend. In *Moore v. City of Paducah,* 790 F.2d 557, 561–62 (6th Cir. 1986), the Court held "Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself, to disallow an amendment of a pleading." *Moore* relied on the Eighth Circuit's decision in *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690 (8th Cir.1981), which held:

> The [district] court placed great reliance on the two and one-half year delay between
> the filing of the complaint and plaintiffs' request for leave to amend. However, it is

---

[1] Given the complexity of this case and the considerable amount of time spent litigating issues like the protective order, the parties have already agreed to further extend the trial setting to June of 2024 or later, pending the Court's approval. Assuming the Court does approve, this would place the filing of Plaintiffs' Motion to Amend, at a minimum, a full 10-months prior to the trial date, considerably outside the timeframe set forth in the Court's original Scheduling Order. We acknowledge and appreciate opposing counsel's willingness to work with us on trial dates, but this collegiality undeniably undermines both Defendant's accusation of undue delay and claims of prejudice.

3
**EATON & WOLK PL**

> well-settled that delay alone is not a sufficient reason for denying leave. The delay must have resulted in prejudice to the party opposing the motion.

*Buder* at 694 (internal citations omitted). The Court further relied on *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.1980), which held, "Delay alone [], without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."

Tesla complains that "the information cited by Plaintiffs as a basis for the amendment was known by or available to Plaintiffs long before the Court's deadline to amend." (Response at 6) However, this argument is not accompanied by a citation to authority because this is not a basis to disallow amendment. As explained in *Seneca Ins. Co., Inc. v. Hanover Ins. Co.,* 2017 WL 10434402, at *7–8 (C.D. Cal. Aug. 30, 2017), "without a showing of some other basis for denying leave to amend, such as undue prejudice or bad faith, 'courts have generally granted leave to litigants even though they should have anticipated 'the facts and theories raised by the amendment' at an earlier stage in the litigation, and cannot otherwise justify their delay in seeking leave to amend.'" In short, delay alone is not a basis to disallow amendment. The Defendant must show either futility or prejudice.[2] As we will demonstrate below, Defendant cannot establish either element.

### III. AMENDMENT SHOULD NOT BE DENIED FOR FUTILITY.

Defendant claims that Plaintiffs should not be allowed to amend to add counts for negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment and false advertising because they fail to state claims.[3] With respect to the first three counts, Defendant argues that the counts do not state a cause of action because they fail to allege that the *Plaintiffs* relied to their detriment on Tesla's misrepresentations or omissions.

---

[2] Defendant has not alleged bad faith.

[3] As Tesla notes, Angulo's complaint currently contains a claim for negligent misrepresentation. Tesla has already answered that count. It will remain a claim of this case regardless of how the Court rules on this motion, at least through summary judgment. This fact severely undermines Tesla's claim of prejudice, which will be discussed further below.

Plaintiffs concede the absence of this allegation, but it is not necessary under our theory of liability. Plaintiffs' claim that Tesla's misrepresentations and omissions (which are set forth with sufficient specificity to satisfy Rule 9(b) in paragraphs 19 through 29 of the proposed amended complaint) were made to consumers like McGee. McGee detrimentally relied on these misrepresentations and omissions, using autopilot in a manner that proximately caused the crash, Dillon Angulo's injuries, and Naibel Benavides Leon's death.

It is indisputable that had McGee been injured in this accident, he would have been able to maintain each of these claims against Tesla. The question before this Court is whether a plaintiff injured as a result of third-party McGee's reliance can maintain the same claims against Tesla. Florida law is silent on the issue, notwithstanding Tesla's representations. The Florida cases cited by Tesla in its response only set forth the elements of the various causes of action. None of them involve a plaintiff attempting to bring a claim for injuries sustained as a result of a third-party's reliance on the defendant's fraudulent misrepresentations. Accordingly, none of them can bar Plaintiffs' attempt to do so here.

While Florida courts have not addressed this question, Federal courts have. In *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), the Supreme Court recognized the viability of the claims Plaintiffs seek to bring here. In *Bridge,* the defendants argued, as Tesla does here, that "[u]nder well-settled common-law principles, proximate cause is established for fraud claims only where the plaintiff can demonstrate that he relied on the misrepresentation." *Bridge* at 655. The defendants suggested that as a result, "a plaintiff asserting a civil RICO claim predicated on mail fraud cannot satisfy the proximate cause requirement unless he can establish that his injuries resulted from his reliance on the defendant's fraudulent misrepresentation." *Id.*

The Supreme Court rejected this argument for two independent reasons, the second of which is applicable here. First, it held that reliance was not an element of a Civil RICO claim based on mail fraud. *Id*. Second, the Court held that:

> While it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it. The Restatement provision cited by petitioners certainly does not support that proposition. It provides only that the plaintiff's loss must be a foreseeable result of *someone's* reliance on the misrepresentation. It does not say that only those who rely on the misrepresentation can suffer a legally cognizable injury. And any such notion would be contradicted by the long line of cases in which courts have permitted a plaintiff directly injured by a fraudulent misrepresentation to recover even though it was a third party, and not the plaintiff, who relied on the defendant's misrepresentation. Indeed, so well established is the defendant's liability in such circumstances that the *Restatement (Second) of Torts* sets forth as a "[g]eneral [p]rinciple" that "[o]ne who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances." § 870.
>
> As an illustration, the Restatement provides the example of a defendant who "seeks to promote his own interests by telling a known falsehood to *or about* the plaintiff or his product." *Id.,* Comment *h* (emphasis added). And the Restatement specifically recognizes "a cause of action" in favor of the injured party where the defendant "defrauds another for the purpose of causing pecuniary harm to a third person." *Id*., § 435A, Comment *a*. Petitioners' contention that proximate cause has traditionally incorporated a first-party reliance requirement for claims based on fraud cannot be reconciled with these authorities.
>
> Nor is first-party reliance necessary to ensure that there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles articulated in *Holmes* and *Anza*. Again, this is a case in point. Respondents' alleged injury—the loss of valuable liens—is the direct result of petitioners' fraud. It was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves that other bidders would obtain fewer liens. And here, unlike in *Holmes* and *Anza,* there are no independent factors that account for respondents' injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue.

*Bridge* at 655-658.

The two footnotes to this excerpted section provide additional support for our argument. First, the Court responded to defendants' invocation of Comment *a* to 3 *Restatement (Second) of Torts* § 548A (1976), which provided that "[c]ausation, in relation to losses incurred by reason of a misrepresentation, is a matter of the recipient's reliance in fact upon the misrepresentation in taking some action or in refraining from it." The Court responded that the comment did "not support [defendant's] argument," explaining "of course, a misrepresentation can cause harm only

if a recipient of the misrepresentation relies on it. But that does not mean that the only injuries proximately caused by the misrepresentation are those suffered by the recipient." *Bridge* at 656, FN6.

The Court further responded to the defendants' dismissal of the "long line of cases" referenced in the excerpt in which courts allowed a plaintiff injured by fraudulent misrepresentation to recover even though it was a third-party who relied on the misrepresentation. *Bridge* at 656. The Court explained that these cases were "not cited as evidence that common law fraud can be established without showing first party reliance." *Bridge* at 657, FN7. Instead, they "show that a fraudulent misrepresentation can proximately cause actionable *injury even to those who do not rely on the misrepresentation*." *Id.* (emphasis supplied) [4]

Applying the holding of *Bridge* to the facts of this case, Plaintiffs' physical injuries are the direct result of Defendant's misrepresentations and omissions. It was not just foreseeable that Tesla drivers would ignore the dictates of Tesla's operating manual and become overly reliant on Tesla's autopilot features. Tesla knew that this was occurring and knew that it was leading to accidents. Yet Tesla took no further action to protect its drivers from their own human nature. Here, as in *Bridge,* there were no independent factors that account for Plaintiff's injury. The accident was indisputably caused by McGee's reliance on the autopilot feature. It will be for the jury to determine who is to blame for that reliance, McGee, Tesla, or both.

---

[4] *See also In re Neurontin Mktg., Sales Practices & Products Liab. Litig.,* 618 F. Supp. 2d 96, 110 (D. Mass. 2009) ("a consumer injured by a fraudulent misrepresentation to his doctor has a claim based on third party reliance."); and *In re Orthopedic Bone Screw Liab. Litig.,* 159 F.3d 817, 828–29 (3d Cir. 1998), *rev'd on other grounds, Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001) ("As we have earlier noted, § 310 of the *Restatement (Second) of Torts* suggests that when someone makes a fraudulent misrepresentation for the purpose of inducing action by A which, if taken by A, will involve an unreasonable risk of injury to B, B may recover for resulting physical injury even though he was unaware of the fraudulent misrepresentation.")

### IV.   PLAINTIFFS' COUNT 7 FOR FALSE ADVERTISING STATES A CAUSE OF ACTION.

Plaintiffs' Count 7 contains two claims under Fla. Stat. § 817.40. The first, set forth in paragraph 150, is a claim for misleading advertising as defined in Fla. Stat. § 817.40 and Fla. Stat. § 817.41.. The second claim, set forth in paragraph 151, is for intentional false advertising under Fla. Stat. § 817.44.

Defendant does not challenge Plaintiffs' claim for misleading advertising under Fla. Stat. § 817.41. Defendant's challenge to Plaintiffs' claim for intentional false advertising is based on *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001). But *Samuels* is readily distinguishable on its facts. The wrongdoing alleged in *Samuels* was the disposition of the plaintiff's trade-in vehicle prior to the formation of a binding contract. The Court explained:

> Here, the Plaintiffs did not allege that the misleading statement was made with the purpose of selling or disposing of any property. Rather, according to the implications inherent in the allegations, King Motor made the alleged misleading statement for the purpose of inducing the Plaintiffs to give possession of their trade-in vehicle to them.

*Samuels* at 496.

Here, Plaintiffs allege that Tesla "offered its vehicles equipped with its autopilot system for sale" through "an advertisement describing the vehicles and the autopilot's system" knowing that it was were not selling vehicles with the autopilot system described in paragraphs 19 to 26. [DE129 at 54, ¶151] Selling a product that did not function as advertised is actionable under "Florida's 'bait and switch' intentional false advertising statute, § 817.44, Fla. Stat." *Argentine v. Bank of Am. Corp.,* 2015 WL 3547141, at *3 (M.D. Fla. June 8, 2015).

### V.   TESLA WILL NOT BE PREJUDICED BY THE ADDITION OF THESE COUNTS.

As noted above, Plaintiff Angulo has already pled negligent misrepresentation in his complaint, a claim which will remain part of this action at least through summary judgment. Tesla can hardly claim prejudice from having to litigate that claim on behalf of both Plaintiffs as opposed to only one. Killing two birds with one stone was the very basis for consolidation of these claims.

Allowing Benavides to join in the negligent misrepresentation claim will not add to Tesla's labors in any fashion.

Similarly, Tesla has not explained how the addition of the fraud and false advertising claims to Angulo's already existing negligent misrepresentation claim will increase its labor. Each of these four counts rely on the same predicate facts alleged in ¶¶ 19 through 33. Tesla will have to contest these facts whether or not Counts 5,6, and 7 are added.

Tesla's complaint of prejudice is essentially that the addition of more counts will result in more labor for Tesla. But this is not a basis for finding of prejudice in the amendment context. As the court in *Seneca Ins. Co., Inc., supra,* at *8, explains, "If the very addition of claims were prejudicial, no party could seek leave to amend its complaint to add new causes of action—the additional claims would certainly always require additional time and expense to the detriment of the party opposing amendment." Tesla bears the burden of demonstrating undue prejudice from this proposed amendment, and Tesla has not met that burden.

### VI. TESLA'S RESPONSE DOES NOT CHALLENGE THE AMENDED FACTUAL ALLEGATIONS OR DAMAGE CLAUSES.

Tesla's claims of futility are limited to Counts 5-7 for Angulo and Counts 4-7 for Benavides. Even if the Court were to find for Tesla on each of these counts, the amended complaint would still contain the far more detailed factual allegations, Angulo's negligent misrepresentation count, and Plaintiffs' claim for punitive damages. Thus, at a minimum, Plaintiffs' amended complaint should be adopted from ¶¶1 through 113 for both Plaintiffs, from ¶¶114 through 129 for Angulo, and ¶¶155 through 169 for both Plaintiffs.

With respect to the claim for punitive damages, Florida law is clear that Plaintiffs' operative products liability claims are sufficient to support a claim for punitive damages - "the legal standard for establishing entitlement to punitive damages does not vary depending on the underlying legal theory." *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1232 (Fla. 2016).

While a claim for punitive damages is not a separate and distinct cause of action, it is a separate and distinct *claim*. It has its own elements and its own burden of proof. In *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006), the Supreme Court that "a finding of entitlement to punitive damages is not dependent on a finding that a plaintiff suffered a specific injury." *Engle* at 1262. As a result, "an award of compensatory damages need not precede a determination of entitlement to punitive damages." *Id.*

*Soffer* and *Engle* make clear that a finding of liability on any underlying claim is the key that unlocks the door to the *right* to obtain punitive damages, but there is no *further* link between any specific claim, injury, or damages and the punitive damage claim. A plaintiff who has prevailed on any of their underlying claims must still independently prove their entitlement to punitive damages, as follows:

> [W]e remand for a new trial limited to the issue of whether punitive damages should be imposed for the negligence and strict liability claims and, if so, the amount thereof. We emphasize that Soffer still must satisfy the statutory requirements to demonstrate entitlement to punitive damages under these theories, including that the trier of fact must find, based on clear and convincing evidence, that R.J. Reynolds was "personally guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. This requires a determination that R.J. Reynolds either (1) had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the decedent would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage; or (2) engaged in conduct that was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct. Id.

*Soffer* at 1233–34.

Thus even if amendment to add the fraud claims is disallowed, and even if summary judgment is granted on Angulo's negligent misrepresentation claim, the allegations regarding to Tesla's misrepresentations would still be relevant to establishing Plaintiffs' claim for punitive damages based on Tesla's intentional misconduct. [DE129 at 57, ¶162]

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order granting Plaintiffs' Joint Motion for Leave to Amend in its entirety. Alternatively, Plaintiffs respectfully

request the Court enter an Order Granting Plaintiffs' Joint Motion for Leave to Amend in Part, striking only those Counts the Court deems insufficient to state a cause of action.

Respectfully submitted,

By: /s/ Douglas F. Eaton
DOUGLAS F. EATON
FBN: 129577
**EATON & WOLK, PL**
*Co-counsel for Plaintiff*
2665 S. Bayshore Drive, Suite 609
Miami, Florida 33133
Telephone: 305-249-1640
Email: deaton@eatonwolk.com
cgarcia@eatonwolk.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was filed on **October 10, 2023**, using the CM/ECF filing system and served via e-mail to: **HENRY SALAS, ESQ.,** Cole, Scott & Kissane, *Attorneys for Defendant Tesla, Inc.*, 9150 S. Dadeland Blvd., Suite 1400, Miami, FL 33156; henry.salas@csklegal.com; **TODD POSES, ESQ.,** Poses & Poses, P.A., *Co-counsel for Plaintiff*, 169 E. Flagler Street, Suite 1600, Miami, FL 33130; tposes@posesandposes.com; maria@posesandposes.com; **DREW P. BRANIGAN, ESQ.** and **THOMAS P. BRANIGAN, ESQ.,** Bowman & Brooke, LLP., *Co-counsel for Defendant*, 41000 Woodward Avenue, Suite 200 East, Bloomfield Hills, MI 48304; drew.branigan@bowmanandbrooke.com and thomas.branigan@bowmanandbrooke.com; and **ADAM T. BOUMEL, ESQ., DARREN J. ROUSSO, ESQ.,** The Rousso, Boumel Law Firm, PLLC, *Attorneys for Dillon Angulo*, 9350 So. Dixie Hwy., Suite 1520, Miami, FL 33156; adam@roussolawfirm.com; pleadings@roussolawfirm.com; frank@roussolawfirm.com.

By: <u>/s/  Douglas F. Eaton</u><br>
DOUGLAS F. EATON<br>
FBN: 129577