## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, *as Personal*
*Representative of the Estate of Naibel*
*Benavides Leon, deceased*,

      Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

      Defendant.

_____/

### Case No. 22-cv-22607-BLOOM

DILLON ANGULO,

      Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

      Defendants.

_____/

### <u>MOTION FOR HEARING</u>

PLEASE TAKE NOTICE that a hearing in the above-styled action has been set as follows:

<u>Date</u>:         Thursday, January 18th, 2024

<u>Time</u>:         1:30 PM

<u>Magistrate</u>:   The Honorable Edwin G. Torres

<u>Place</u>:        James Lawrence King Federal Justice Building

                     99 NE 4th Street, Tenth Floor, Courtroom 5

                     Miami, FL 33132

                     If Via Zoom (link to be provided)

<u>Substance of discovery matter to be heard</u>:

    1.  Plaintiffs' request for, and Tesla's objection to, the depositions of (1) Ryan

McCarthy and (2) Ashok Elluswamy. Both of these individuals are current employees and/or representatives of Tesla.

2. Tesla's failure to provide materials responsive to Plaintiff's Second RFP #4 (the video segments used to create Labels identifying stationary vehicles in developing Autopilot). Per prior Order (see, DE 119 #4), Tesla was supposed to provide Bates Stamps from the related California litigation but is now indicating that these materials were not produced in that action.

3. Tesla's failure to produce the D16 report regarding this crash in native / OCR format. The document was previously ordered to be produced (see, DE 119 #5), but the format was not specified in the Order.

4. Tesla's objection to Plaintiff's Third Request for Production # 13.

5. Tesla's objection to Plaintiff's Third Request for Production # 16.

## CERTIFICATE OF CONFERRING WITH COUNSEL PURSUANT TO RULE 7.1(a)(3)

Pursuant to Local Rule 7.1 (a)(3), the undersigned counsel has conferred with counsel for Tesla, Inc., in a good faith effort to resolve the issues raised in this motion, to no avail.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of December 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

Respectfully Submitted,

THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669

By:    **/s/ *Adam T. Boumel, Esq.***
Adam T. Boumel, Esq.
Florida Bar No.: 0110727
Direct email: adam@roussolawfirm.com
Service emails:
Pleadings@roussolawfirm.com
Assistant@roussolawfirm.com

COMPOSITE EXHIBIT "A"

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, *as Personal*
*Representative of the Estate of Naibel*
*Benavides Leon, deceased*,

      Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

      Defendant.

_____/

### Case No. 22-cv-22607-BLOOM

DILLON ANGULO,

      Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

      Defendants.

_____/

### PLAINTIFF, DILLON ANGULO'S
### <u>SECOND REQUEST FOR PRODUCTION TO DEFENDANT, TESLA, INC.</u>

      PLEASE TAKE NOTICE that the following Second Request for Production of Documents are propounded to Defendant Tesla, Inc., by Plaintiff, Dillon Angulo, pursuant to Fed. R. Civ. P. 34. Responses to these requests should be provided to The Rousso, Boumel Law Firm, or to the Slavik Law Firm, LLC, 3001 S. Lincoln Ave., Ste. C-1, Steamboat Springs, CO 80487, within thirty (30) days from service of this request.

### <u>INSTRUCTIONS</u>

      In order for Plaintiff to evaluate the alleged defects in this case, certain information is required. When DOCUMENTS are produced, the DOCUMENTS shall be produced in an identified, organized manner that corresponds with the organization of this Request for Production (including all individual requests and subparts). When DOCUMENTS are produced and the DOCUMENTS would not, standing alone, be self-explanatory, the production of DOCUMENTS shall be supplemented and accompanied by explanation.

Page **1** of **8**

Please repeat the applicable request verbatim above each response.  After TESLA's response to each request, identify the source of the information and indicate the last date the information was gathered.

If TESLA refuses to respond to any request in whole or in part on the basis of attorney-client, attorney work product, or other privilege, and TESLA does not submit one or more requested DOCUMENTS or items of information in response to this Request for Production, Plaintiff requests that TESLA provide a privilege log identifying each document or item withheld, and stating the date, subject or title, the name and position of the person(s) from, and the person(s) to whom it was sent, and the name and position of any other recipient (to include all carbon copies or blind carbon copies), the nature of that information or material, and the basis for the claim of privilege and why that privilege applies.

## **DEFINITIONS**

**DOCUMENT(S)** is used in the broadest sense of the word and shall mean all original written, printed, typed, recorded, or graphic matter whatsoever, however produced or reproduced, of every kind, nature, and description, and all non-identical copies of both sides thereof, including, but not limited to, papers, letters, memoranda, correspondence, communications, electronic mail (e-mail) messages (existing in hard copy and/or in electronic storage), faxes, mailgrams, telegrams, cables, telex messages, notes, annotations, working papers, drafts, minutes, records, audio and video recordings, data, databases, other information bases, summaries, charts, tables, graphics, other visual displays, photographs, statements, interviews, opinions, reports, newspaper articles, studies, analyses, evaluations, interpretations, contracts, agreements, jottings, agendas, bulletin, notices, announcements, instructions, blueprints, drawings, as-builts, changes, manuals, publications, work schedules, journals, statistical data, desk, portable and computer calendars, appointment books, diaries, travel reports, lists, tabulations, computer printouts, data processing program libraries, data processing inputs and outputs, microfilms, microfiches, statements for services, resolutions, financial statements, governmental records, business records, personnel records, work orders, pleadings, discovery in any form, affidavits, motions, responses to discovery, all transcripts, administrative filings and all mechanical, magnetic, photographic and electronic records or recordings of any kind, including any storage media associated with computers, including, but not limited to, information on hard drives, floppy disks, backup tapes, and zip drives, electronic communications, including but not limited to, the Internet and shall include any. drafts or revisions pertaining to any of the foregoing, all other things similar to any of the foregoing, however denominated by TESLA, any other data compilations from which information can be obtained, translated, if necessary, into a usable form and any other documents. For purposes of this request, any document which contains any note, comment, addition, deletion, insertion, annotation, or otherwise comprises a non-identical copy of another document shall be treated as a separate document subject to production. In all cases where original and any non-identical copies are not available, "document(s)" also means any identical copies of the original and all non-identical copies thereof. Any document, record, graph, chart, film or photograph originally produced in color must be provided in color. Furnish all documents whether verified by TESLA or not. If a document is not in the English language, provide both the original document and an English translation of the document.

**ELECTRONICALLY STORED INFORMATION** [**ESI**] should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, optically or otherwise stored as:

a. Digital communications (*e.g.*, Slack, e-mail, voice mail, instant messaging, internal chat features, text messages, and any other similar communication);
b. E-Mail Server Stores (*e.g.*, Lotus Domino .NSF or Microsoft Exchange .EDB);
c. Word processed documents (*e.g.*, Word or WordPerfect files and drafts);
d. Spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets);
e. Digital modeling and/or testing (*e.g.*, CAD, CATIA, AUTODESK ALIAS, DELMIA, any form of Finite Element Analysis, whether public or proprietary);
f. Accounting Application Data (*e.g.*, QuickBooks, Money, Peachtree data);
g. Image and Facsimile Files (*e.g.*, .PDF, .TIFF, .PNG, .JPG, .GIF images);
h. Sound Recordings (*e.g.*, .WAV and .MP3 files);
i. Video and Animation (*e.g.*, .AVI and .MOV files);
j. Databases (*e.g.*, Access, Oracle, SQL Server data, SAP);
k. Contact and Relationship Management Data (*e.g.*, Outlook, ACT!);
l. Calendar and Diary Application Data (*e.g.*, Outlook PST, blog entries);
m. Online Access Data (*e.g.*, Temporary Internet Files, History, Cookies);
n. Presentations (*e.g.*, PowerPoint, Corel Presentations)
o. Network Access and Server Activity Logs;
p. Project Management Application Data;
q. Backup and Archival Files (*e.g.*, Veritas, Zip, .GHO);
r. JIRA Issue Tickets
s. MATLAB, SIMULINK and other model-based development programs and files
t. Agile Development Software and files
u. Python, Git and other source control platform files
v. "Toolbox" and other TESLA proprietary databases
w. Event Data Recorder [EDR] files (see 49 C.F.R. 563 for regulations about the contents of the event data recorder)
x. TESLA vehicle "Log Files", including any applications such as Periscope used to collect, store, or analyze TESLA vehicle performance, including but not limited to collisions, engagement of ADS features, and/or any DMS features.
y. Autopilot D-16 Reports.

**DATA STORAGE SYSTEM:** means all TESLA systems for storing data of any nature about the day-to-day operation of the SUBJECT VEHICLES including, but not limited to, ESI, telemetry data transmitted from the SUBJECT VEHICLES to TESLA servers either in real-time or on a periodic basis, or due to an event, such a crash or airbag deployment, as well as video and still-frame camera images, continuously recorded signals and alerts (Log files or CarLog files), text logs stored within the Media Control Unit, data and images recorded in the Restraint Control Module, Toolbox 3 Diagnostic data, and all other data the SUBJECT VEHICLES record or transmit.

**SUBJECT INCIDENT:** The crash that occurred on or about April 25, 2019, at approximately 9:14 PM, , in Monroe County, Florida, as further detailed and referenced in Plaintiffs' Complaints.

**SUBJECT VEHICLE:** The 2019 TESLA MODEL S bearing Florida license plate number LFYB88, Vehicle Identification Number 5YJSA1E24KF302997.

**AUTOMATED DRIVING SYSTEM [ADS]** includes:

    a. any feature of a TESLA vehicle that involves the use of cameras, sensors, radar, and/or other technology used to determine the vehicle's location and to identify, classify, and position other roadway users and objects;

    b. software and software algorithms that analyze data inputs in real time to determine the appropriate vehicle response;

    c. Level 2 Advanced Driver Assist Systems [ADAS];

    d. "LEVEL 2" means the same as and is coterminous with the definition of "Level or Category 2 - Partial Driving Automation" in SAE J3016 Taxonomy and Definitions for Terms Related to Driving Automation Systems for On-Road Motor Vehicles § 5.3 (April 2021) (i.e., a driver support feature on the vehicle that can control both steering and braking/accelerating simultaneously under some circumstances);

    e. **DDT**: Dynamic Driving Task or all of the real-time operational (lateral and longitudinal movement of vehicle) and tactical (planning component) functions required to operate a vehicle in on-road traffic, excluding the strategic functions such as trip scheduling and selection of destinations and waypoints, and including without limitation:

        i. Lateral vehicle motion control via steering (operational);

        ii. Longitudinal vehicle motion control via acceleration and deceleration (operational);

        iii. Monitoring the driving environment via object and event detection, recognition, classification, and response preparation (operational and tactical);

        iv. Object and event response execution (operational and tactical);

        v. Maneuver planning (tactical); and

        vi. Enhancing conspicuity via lighting, signaling and gesturing, etc. (tactical).

    f. **RTOS:** Real Time Operating System.

**OEDR:** Includes object and event detection and response or the subtasks of the DDT that include monitoring the driving environment (detecting, recognizing, and classifying objects and events and preparing to respond as needed) and executing an appropriate response to such objects and events (i.e., as needed to complete the DDT and/or DDT fallback).

    a. the design and performance of sensors, software algorithms, and other technology used to analyze and respond to the vehicle's environment;

    b. the operational design domain of the various components of TESLA's ADS; and

    c. the evolution of the system over time through software updates.

**AUTOMATIC EMERGENCY BRAKING (AEB):** the TESLA AUTOMATIC EMERGENCY BRAKING system on SUBJECT VEHICLES, including the SUBJECT VEHICLE, designed to determine the distance from a detected object traveling in front of it. When a frontal collision is considered unavoidable, AUTOMATIC EMERGENCY BRAKING is designed to apply the brakes to reduce the vehicle's speed and therefore, the severity of the impact.

**SUBJECT SYSTEM:** suite of software, hardware, data, and any other related systems on or off the SUBJECT VEHICLE that contributes to the conferral of any ADS, DDT, or OEDR capabilities, including but not limited to any "Autopilot" or "Full Self Driving" packages, and all automated features such as, Traffic Aware Cruise Control, Lane Keeping Assist (Autosteer), and AUTOMATIC EMERGENCY BRAKING.

**TESLA:** TESLA, Inc., all of its past and present OFFICERs and EMPLOYEEs, whether assigned to its principal offices or any of its field or other locations, including all of its divisions, subsidiaries (whether or not incorporated) and affiliated enterprises and all of their headquarters, regional, zone and other offices and their EMPLOYEES, and all AGENTS, contractors, consultants, attorneys and law firms and other persons engaged directly or indirectly (e.g., EMPLOYEE of a consultant) by or under the control of TESLA (including all business units and persons previously referred to), who are or, on or after January 1st, 2011 were, involved in any way with any of the following related to the alleged defect in the SUBJECT VEHICLES:

>    a.   Design, engineering, analysis, modification or production (e.g. quality control);
>    b.   Testing, assessment or evaluation;
>    c.   Consideration, or recognition of potential or actual defects, reporting, record-keeping and information management (e.g., complaints, field reports, warranty information, part sales), analysis, claims, or lawsuits; or
>    d.   Communication to, from or intended for zone representatives, FLEETs, dealers, or other field locations, including but not limited to people who have the capacity to obtain information from dealers.

**AGENT:** means an individual, such as a representative, who is authorized to act for or in place of another.

**EMPLOYEE**: means a person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance.

**OFFICER:** means a person who holds an office of trust, authority, or command, such as a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer.

**LABELS**: The extensive data designed to improve TESLA'S neural networks powering its suite of automated driving systems, including Autopilot and Full Self Driving features is made up of images collected by TESLA vehicles being driven on public roads. LABELS refers to the information in those images that TESLA employees tagged with identifiers, such as vehicles, lanes, street signs, pedestrians, etc.

## REQUESTS FOR PRODUCTION

**REQUEST NUMBER. 1.**   Produce all DOCUMENTS and ESI data contained in any TESLA DATA STORAGE SYSTEM or in the SUBJECT VEHICLE regarding the operation of the SUBJECT VEHICLE including the SUBJECT SYSTEM within ten minutes of the SUBJECT INCIDENT, including, but not limited to, telemetry data transmitted from the vehicle to TESLA servers either in real-time or on a periodic basis, or due to an event, such a crash or airbag deployment, as well as video and still-frame camera images, continuously recorded signals and alerts, Log files or CarLog files, D-16 Reports, text logs stored within the Media Control Unit, images from any in-cabin driver-facing camera, data and images recorded in the Restraint Control Module, Toolbox 3 Diagnostic data, and all other data the SUBJECT VEHICLE recorded or transmitted not already produced to date.

**REQUEST NUMBER. 2.**   All DOCUMENTS, ESI, or other material provided to the U.S. Department of Transportation, National Highway Traffic Safety Administration (NHTSA) in response to the letter dated 31 August 2021 addressed to Eddie Gates, Director, Field Quality for TESLA, Inc., from Gregory Magno, Chief, Vehicle Defects Division – D, Office of Defects Investigation. [Exhibit A]

**REQUEST NUMBER. 3.**   All DOCUMENTS, ESI, or other material provided to the U.S. Department of Transportation, National Highway Traffic Safety Administration (NHTSA) in response to the letter dated 18 August 2022 addressed to Eddie Gates, Director, Field Quality for TESLA, Inc., from Stephen A. Ridella, Ph.D., Director, Office of Defects Investigation. [Exhibit B]

**REQUEST NUMBER. 4.**   Produce all video segments used to create LABELS identifying stationary vehicles in developing all versions of Tesla's Automated Driving Systems, including Autopilot and Full Self Driving.

**REQUEST NUMBER. 5.**   Produce all D16 Reports from vehicles manufactured with Hardware version 2.0 and later in a Model S or X which came into contact with a vehicle ahead of it, stationary or moving.

**REQUEST NUMBER. 6.**   Produce the D16 Report for the SUBJECT INCIDENT.

**REQUEST NUMBER. 7.**   All CarLog data regarding the SUBJECT VEHICLE within 10 minutes of the SUBJECT INCIDENT in both native format (.hex, .dat, .acq, .cfg, .tsv, and .txt files) and converted to engineering units.

**REQUEST NUMBER. 8.**   A full and complete glossary or index (including any related Confluence pages) defining and/or explaining the column headings and log signals in the CarLog data.

**REQUEST NUMBER. 9.**   All video captured, saved, and/or uploaded by the onboard cameras in the SUBJECT VEHICLE within 10 minutes of the SUBJECT INCIDENT along with the

associated augmented vision overlay and control signals as well as all data, graphs, and information available to Tesla engineers through either the TCLIPS tool or APViz tool.

**REQUEST NUMBER. 10.**   All documents that record testing of speeds and roadways on which a Tesla vehicle might sense a vehicle, motorcycle, pedestrian, or bicycle ahead and that document a response by any Tesla ADS, OEDR, AEB, RTOS, or other automated driving system.

**REQUEST NUMBER. 11.**   Documents that define the mission case requirements of Tesla's ADS, including Autopilot, and any automated systems used to achieve any level of automated driving in the field.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on <u>March 15, 2023,</u> a true and correct copy of the foregoing was served via email to all counsel identified in the below service list.

THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669

By:   ___/s/ ***Adam T. Boumel, Esq.***___
Adam T. Boumel, Esq.
Florida Bar No.: 0110727

## SERVICE LIST

**Cole, Scott & Kissane, P.A.**
9150 S. Dadeland Blvd, Suite 1400
Miami, Florida 33156
**Attn: Henry Salas, Esq.**
henry.salas@csklegal.com
leisy.martinez@csklegal.com
*Counsel for Defendant, Tesla, Inc.*

**Bowman and Brooke LLP**
41000 Woodward Ave., Suite 200E
Bloomfield Hills, Michigan 48304
**Attn: Thomas P. Branigan, Esq.**
**Attn: Drew P. Branigan, Esq.**
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com
*Counsel for Defendant, Tesla, Inc.*

**Aria Sanguinetti Wang & Torrijos, LLP**
2200 Powell Street, Suite 740
Emeryville, CA 94608
**Attn: Elise R. Sanguinetti, Esq.**
elise@aswtlawyers.com
ncservice@aswtlawyers.com
*Co-Counsel for both Plaintiffs.*

**Poses & Poses, P.A.**
169 East Flagler Street, Suite 1600
Miami, Florida 33156
**Attn: Todd Poses, Esq.**
tposes@posesandposes.com
Maria@posesandposes.com
*Counsel for Plaintiff, Neima Benavides*

**Slavik Law Firm, LLC**
30001 S. Lincoln Ave, Suite C-1
Steamboat Springs, CO 80487
**Attn: Donald Slavik, Esq.**
dslavik@slavik.us
dcaudle@slavik.us
*Co-Counsel for both Plaintiffs.*

**Eaton & Wolk PL**
2665 South Bayshore Dr., Suite 609
Miami, FL 33133
**Attn: Doug Eaton, Esq.**
deaton@eatonwolk.com
*Co-Counsel for both Plaintiffs.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-21940-BLOOM/Otazo-Reyes**

NEIMA BENAVIDES, *as Personal*
*Representative of the Estate of Naibel*
*Benavides Leon, deceased*,

      Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

     Defendant.

_____/

**Case No. 22-cv-22607-BLOOM**

DILLON ANGULO,

     Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

     Defendants.

_____/

**DEFENDANT, TESLA, INC. RESPONSE TO PLAINTIFF, DILLON ANGULO'S**
**SECOND REQUEST FOR PRODUCTION**

     Tesla, Inc. ("Tesla") responds to Plaintiff Dillon Angulo's Second Request for Production, and responds as follow:

**Objections Common to all Requests**

1. Tesla incorporates these general objections into each of its responses to Plaintiff's Requests for Production:

2. Tesla has not yet completed discovery, investigation, or preparation for trial.  Accordingly, its responses are based on information presently available and given without prejudice to Tesla's right to further supplement or modify based upon the discovery of additional or different information.

1

Tesla reserves the right to supplement responses to these Requests up to the time of trial, as the investigation of the facts and circumstances of this case is ongoing.

3. Tesla reserves all objections and questions as to the competency, relevance, materiality, privilege, propriety, admissibility, and all other objections on any grounds that would require the exclusion of any information from evidence if the same were sought to be admitted at trial.

4. Tesla objects to Plaintiff's "Definitions" and "Instructions" to the extent they purport to impose obligations or expectations of Tesla that are above and beyond any requirements imposed under the Federal of Civil Procedure. This includes "Definitions" and "Instructions" that purport to require Tesla obtain information or documents from entities other than Tesla.

5. Tesla objects to Plaintiff's "Definitions" to the extent they do not comport with plain language definitions or descriptions of these terms. To the extent Tesla objects with Plaintiff's "Definitions," phrases or terms that have not been defined by Plaintiff, Tesla will define its understanding of the word or phrase in its responses, to the extent possible.

6. Tesla objects to these Requests to the extent they seek information protected by the attorney-client, work product doctrine, and/or consulting expert privileges. If Tesla determines that information it has agreed to produce in response to these requests are covered by one of these privileges, Tesla will identify that information on a privilege log.

7. Tesla objects to these Requests to the extent that they are not limited to a reasonable period of time, the same or substantially similar model vehicle as the subject vehicle, or component at issue as identified in Plaintiff's Petition. The determination of scope and the documents produced in response to these requests are for the purposes of discovery only and not an admission on behalf of Tesla regarding admissibility or responsiveness to the allegations made in this case.

27667231v1
27667231v2

8.  Tesla does not interpret Plaintiff's Requests to ask for information about (1) correspondence between Tesla and its attorneys, (2) communications between Tesla, its lawyers or its representatives about the investigation or defense of any claims or lawsuits, including Plaintiff's claims after Tesla learned that a claim would be made, (3) notes or other work product of Tesla's lawyers, (4) other documents or things created by or for Tesla's lawyers, and (5) documents or things prepared by consulting experts about this or any suit, claim, or anticipated claim. If Plaintiff intends any Request for the production of these privileged items, Tesla objects to providing any such information because it is protected from discovery pursuant to attorney-client privilege and/or the attorney work product privilege.

9.  Some of the documents or information described in Tesla's responses to Plaintiff's Requests may contain information proprietary to Tesla such as financial, technical, or commercially sensitive information, and/or trade secrets. Disclosure of such information might be severely injurious and damaging to Tesla, placing it at a competitive disadvantage within the industry; therefore, these documents and information will only be produced pursuant to the entry of an appropriate Confidentiality Protective Order.

## REQUESTS FOR PRODUCTION

**REQUEST NUMBER. 1**:  Produce all DOCUMENTS and ESI data contained in any TESLA DATA STORAGE SYSTEM or in the SUBJECT VEHICLE regarding the operation of the SUBJECT VEHICLE including the SUBJECT SYSTEM within ten minutes of the SUBJECT INCIDENT, including, but not limited to, telemetry data transmitted from the vehicle to TESLA servers either in real-time or on a periodic basis, or due to an event, such a crash or airbag deployment, as well as video and still-frame camera images, continuously recorded signals and alerts, Log files or CarLog files, D-16 Reports, text logs stored within the Media Control Unit, images from any in-cabin driver-facing camera, data and images recorded in the Restraint Control Module, Toolbox 3 Diagnostic data, and all other data the SUBJECT VEHICLE recorded or transmitted not already produced to date.

**RESPONSE**:  Tesla objects to Request 1 because it is vague, overly broad, unduly burdensome, and not reasonably proportionate to the needs of the case.  Tesla also object to this Request because it is so overly broad that it calls for the production of information protected by the Attorney Client and Work Product Doctrine Privileges.

Subject to and notwithstanding these objections, Tesla refers Plaintiff to Tesla's Response and Objection to Request 1 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and other "D Class Telemetry Records" from the subject vehicle and accident.  Tesla also refers Plaintiff to its Objections and Response to Request 1 of Plaintiff Dillon Angulo's First Requests for Production, wherein it agreed to produce "copies of video clips in its possession that were recorded by cameras on the subject Model S on the date of the subject collision."   Tesla also states that it is not currently in possession of the Media Control Unit for the Subject vehicle, which is – upon information and belief – in the possession of Florida Highway Patrol.  Tesla has served a subpoena on George McGee – the owner and driver of the Tesla who admittedly caused the crash at issue in this case at the time of the crash – to obtain and produce this component. Mr. McGee has not responded to this subpoena.

**REQUEST NUMBER. 2**:  All DOCUMENTS, ESI, or other material provided to the U.S. Department of Transportation, National Highway Traffic Safety Administration (NHTSA) in response to the letter dated 31 August 2021 addressed to Eddie Gates, Director, Field Quality for TESLA, Inc., from Gregory Magno, Chief, Vehicle Defects Division – D, Office of Defects Investigation. [Exhibit A]

**RESPONSE**: Tesla objects to Request 2 because it is duplicative of Request 5 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice).  Subject to and notwithstanding this objection, Tesla refers to its Response and Objection to Request 5 from Plaintiff Dillon Angulo's *Duces Tecum* Notice of Deposition of Tesla Representative and incorporates it herein.

**REQUEST NUMBER. 3**:  All DOCUMENTS, ESI, or other material provided to the U.S. Department of Transportation, National Highway Traffic Safety Administration (NHTSA) in response to the letter dated 18 August 2022 addressed to Eddie Gates, Director, Field Quality for TESLA, Inc., from Stephen A. Ridella, Ph.D., Director, Office of Defects Investigation. [Exhibit B]

**RESPONSE**: Tesla objects to Request 3 because it is duplicative of Request 6 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice).  Subject to and notwithstanding this objection, Tesla refers to its Responses and Objections to Requests 5 and 6 from Plaintiff Dillon Angulo's *Duces Tecum* Notice of Deposition of Tesla Representative, and incorporates it herein.

**REQUEST NUMBER. 4**:  Produce all video segments used to create LABELS identifying stationary vehicles in developing all versions of Tesla's Automated Driving Systems, including Autopilot and Full Self Driving.

**RESPONSE**:   Tesla objects to this Request because it is overly-broad, unduly burdensome, and not proportional to the needs of this case or important or necessary to resolution of this case.  This Request amounts to an impermissible "fishing expedition," and is not limited in scope to the Subject model, model year vehicle, or configuration of Autopilot hardware, or software and firmware involved in this case.

Furthermore, the record clearly shows that the subject incident was not caused by Autopilot's alleged failure to detect traffic signals or a stationary object.  Instead, as the driver of the Subject Vehicle, a vehicle equipped with SAE Level 2 advanced driver assistance systems, has admitted *several times*, he caused the crash because he was distracted by his cell phone that he bent over to pick up, and as a result, he failed to stop for a red flashing light and stop sign at the "T" intersection where the crash occurred. *See* the transcript of Mr. McGee's admission to Police recorded by a Police body camera previously produced to Plaintiff; *see also* the Deposition Transcript of Corporal David Riso at pg. 67:10-68:19.  Plaintiff Benavides essentially admitted

the same in her allegations in a Complaint separately filed against Tesla driver George McGee.

**REQUEST NUMBER. 5**:  Produce all D16 Reports from vehicles manufactured with Hardware version 2.0 and later in a Model S or X which came into contact with a vehicle ahead of it, stationary or moving.

**RESPONSE**: Tesla objects to Request 5 because it is overly-broad, unduly burdensome, and not proportionate to the needs of the case.  This Request amounts to an impermissible "fishing expedition," and is not limited in scope to the Subject model, model year vehicle, or configuration of Autopilot hardware, software and firmware involved in this case, to collisions allegedly caused by the defect Plaintiff alleges to exist in the Subject Vehicle or to accident circumstances that are substantially similar to the circumstances of the subject accident.  In addition, because D16 reports do not include information as to the nature of a collision, i.e., whether the Tesla "came into contact with a vehicle ahead of it, stationary or moving," searching D16 reports for documents responsive to this request is burdensome, oppressive and would require Tesla consult numerous sources, including legal work product, to identify crashes within the broad scope of this request and then determine if Tesla is in possession of a D16 report from said crash.  The burden of such an exercise is grossly disproportionate to the potential probative value, if any, of this evidence.

Subject to and notwithstanding these objections, Tesla refers Plaintiff to Tesla's Response and Objections to Request 1 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and other "D Class Telemetry Records" from the subject vehicle and accident.

**REQUEST NUMBER. 6**:  Produce the D16 Report for the SUBJECT INCIDENT.

**RESPONSE**:  Tesla refers Plaintiff to Tesla's Response and Objections to Request 1 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and other "D Class Telemetry Records" from the subject vehicle and

27667231v1
27667231v2

accident.

**REQUEST NUMBER. 7**:  All CarLog data regarding the SUBJECT VEHICLE within 10 minutes of the SUBJECT INCIDENT in both native format (.hex, .dat, .acq, .cfg, .tsv, and .txt files) and converted to engineering units.

**RESPONSE**:  Tesla objects to Request 7 because it is duplicative of Request for Production 1 of Plaintiff's Second Requests for Production.  Subject to and notwithstanding this objection, Tesla refers Plaintiff to Tesla's Response and Objections to Request 1 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and other "D Class Telemetry Records" from the subject vehicle and accident.

**REQUEST NUMBER. 8**:   A full and complete glossary or index (including any related Confluence pages) defining and/or explaining the column headings and log signals in the CarLog data.

**RESPONSE**: Tesla objects to Request 8 because it is overly-broad, unduly burdensome, and not proportionate to the needs of the case.  Additionally, Plaintiff's request that Tesla "defin[e] and/or explain[] the column headings and log signals in the CarLog data" is not an appropriate request for documents under Fed. R. Civ. P. 34.

Subject to and notwithstanding these objections, Tesla searched for and did not locate a "full and complete glossary or index...defining and/or explaining the column headings and log signals in the CarLog data" because none exists.

**REQUEST NUMBER. 9**: All video captured, saved, and/or uploaded by the onboard cameras in the SUBJECT VEHICLE within 10 minutes of the SUBJECT INCIDENT along with the associated augmented vision overlay and control signals as well as all data, graphs, and information available to Tesla engineers through either the TCLIPS tool or APViz tool.

**RESPONSE**:  Tesla objects to Request 9 because it is duplicative of Request 1 of Plaintiff's First Requests for Production, needlessly cumulative, and harassing.  Subject to and Notwithstanding these objections, Tesla has already produced "copies of video clips in its possession that were

7

recorded by cameras on the subject Model S on the date of the subject collision."  Tesla also refers

Plaintiff to Tesla's Response and Objections to Request 1 from Plaintiff's FRCP 30(b)(6) Notice

of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and

other "D Class Telemetry Records" from the subject vehicle and accident.

**REQUEST NUMBER. 10**:  All documents that record testing of speeds and roadways on which a Tesla vehicle might sense a vehicle, motorcycle, pedestrian, or bicycle ahead and that  document a response by any Tesla ADS, OEDR, AEB, RTOS, or other automated driving system.

**RESPONSE**: Tesla objects to Request 10 because it is overly-broad, unduly burdensome, and not

proportional to the needs of this case or important or necessary to resolution of this case.

Subject to and notwithstanding these objections, Tesla will search for and produce – if

found and subject to the entry of an appropriate protective order documents related to the validation

of Automatic Emergency Braking for the 2019 Tesla Model S with Hardware 2.5.

**REQUEST NUMBER. 11**: Documents that define the mission case requirements of Tesla's ADS, including Autopilot, and any automated systems used to achieve any level of automated driving in the field.

**RESPONSE**: Tesla objects to Request 11 because the phrase "mission case requirements" is

vague, undefined, and subject to varying interpretations.  Tesla also objects to Request 11 because

it is overly-broad, unduly burdensome, and not proportionate to the needs of the case.  This Request

amounts to an impermissible "fishing expedition," and is not limited in scope to the Subject model,

model year vehicle, or configuration of Autopilot hardware, software and firmware involved in

this case, or to the Autopilot features Plaintiff alleges to be defective in this case.

Subject to and notwithstanding these objections, Tesla refers to its website for information about

Autopilot and Full Self Driving-Capability development, Tesla's Vehicle Safety Report and

Tesla's annual Impact Reports.

Date:  May 3rd, 2023

Respectfully submitted,

By:  /s/ Henry Salas_____
       HENRY SALAS (815268)
       COLE SCOTT & KISSANE
       9150 S Dadeland Blvd Ste 1400
       Miami, FL 33156-7855
       Office: 786-268-6419
       Fax: 305-373-2294
       henry.salas@csklegal.com

       - and –

       THOMAS  P.  BRANIGAN *(Admitted  Pro  Hac Vice)*
       DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
       BOWMAN AND BROOKE LLP
       101 W. Big Beaver Road
       Suite 1100
       Troy, MI  48084
       248.205.3300 / 248.205.3399 fax
       thomas.branigan@bowmanandbrooke.com
       drew.branigan@bowmanandbrooke.com

       ***Attorneys for Defendant TESLA, Inc.***

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3rd, 2023,  a true and correct copy of the foregoing paper was

served via email to the following:

| | |
|---|---|
| THE ROUSSO, BOUMEL LAW FIRM, PLLC.<br>9350 South Dixie Highway<br>Suite 1520<br>Miami, Florida 33156<br>(305) 670-6669<br>Adam T. Boumel, Esq.<br>Florida Bar No.: 0110727<br>***Counsel for Plaintiff Dillon Angulo*** | Poses & Poses, P.A.<br>169 East Flagler Street, Suite 1600<br>Miami, Florida 33156<br>Attn: Todd Poses, Esq.<br>tposes@posesandposes.com<br>Maria@posesandposes.com<br>***Counsel for Plaintiff, Neima Benavides*** |
| Slavik Law Firm, LLC<br>30001 S. Lincoln Ave, Suite C-1<br>Steamboat Springs, CO 80487<br>Attn: Donald Slavik, Esq.<br>dslavik@slavik.us<br>dcaudle@slavik.us<br>***Co-Counsel for both Plaintiffs.*** | Aria Sanguinetti Wang & Torrijos, LLP<br>2200 Powell Street, Suite 740<br>Emeryville, CA 94608<br>Attn: Elise R. Sanguinetti, Esq.<br>elise@aswtlawyers.com<br>ncservice@aswtlawyers.com<br>***Co-Counsel for both Plaintiffs.*** |
| Eaton & Wolk PL<br>2665 South Bayshore Dr., Suite 609<br>Miami, FL 33133<br>Attn: Doug Eaton, Esq.<br>deaton@eatonwolk.com<br>***Co-Counsel for both Plaintiffs.*** | |

Respectfully submitted,

By:  /s/ Henry Salas

HENRY SALAS (815268)
COLE SCOTT & KISSANE
9150 S Dadeland Blvd Ste 1400
Miami, FL 33156-7855
Office: 786-268-6419
Fax: 305-373-2294
henry.salas@csklegal.com

- and –

THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
BOWMAN AND BROOKE LLP

10

101 W. Big Beaver Road
Suite 1100
Troy, MI  48084
248.205.3300 / 248.205.3399 fax
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**_Attorneys for Defendant TESLA, Inc._**

11

COMPOSITE EXHIBIT "B"

# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

## Case No. 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, *as Personal*
*Representative of the Estate of Naibel*
*Benavides Leon, deceased*,

      Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

      Defendant.

_____/

## Case No. 22-cv-22607-BLOOM

DILLON ANGULO,

      Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

      Defendants.

_____/

## PLAINTIFF, DILLON ANGULO'S
## THIRD REQUEST FOR PRODUCTION TO DEFENDANT, TESLA, INC.

     PLEASE TAKE NOTICE that the following Third Request for Production of Documents are propounded to Defendant Tesla, Inc., by Plaintiff, Dillon Angulo, pursuant to Fed. R. Civ. P. 34. Responses to these requests should be provided to The Rousso, Boumel Law Firm, or to the Slavik Law Firm, LLC, 3001 S. Lincoln Ave., Ste. C-1, Steamboat Springs, CO 80487, within thirty (30) days from service of this request.

## INSTRUCTIONS

     In order for Plaintiff to evaluate the alleged defects in this case, certain information is required. When DOCUMENTS are produced, the DOCUMENTS shall be OCR'd and produced in an identified, organized manner that corresponds with the organization of this Request for Production.

Please repeat the applicable request verbatim above each response.  After TESLA's response to each request, identify the source of the information and indicate the last date the information was gathered.

If a DOCUMENT or ESI uses a program other than Word, Excel, or other such generally available application, provide an executable installation link to the applicable program. Only produce complete DOCUMENTS. Production of incomplete DOCUMENTS will result in unnecessary discovery, disputes, and motions, wasting time and Court resources.

If TESLA refuses to respond to any request in whole or in part on the basis of attorney-client, attorney work product, or other privilege, and TESLA does not submit one or more requested DOCUMENTS or items of information in response to this Request for Production, Plaintiff requests that TESLA provide a privilege log identifying each document or item withheld, and stating the date, subject or title, the name and position of the person(s) from, and the person(s) to whom it was sent, and the name and position of any other recipient (to include all carbon copies or blind carbon copies), the nature of that information or material, and the basis for the claim of privilege and why that privilege applies.

## **DEFINITIONS**

**DOCUMENT(S)** is used in the broadest sense of the word and shall mean all original written, printed, typed, recorded, or graphic matter whatsoever, however produced or reproduced, of every kind, nature, and description, and all non-identical copies of both sides thereof, including, but not limited to, papers, letters, memoranda, correspondence, communications, electronic mail (e-mail) messages (existing in hard copy and/or in electronic storage), faxes, mailgrams, telegrams, cables, telex messages, notes, annotations, working papers, drafts, minutes, records, audio and video recordings, data, databases, other information bases, summaries, charts, tables, graphics, other visual displays, photographs, statements, interviews, opinions, reports, newspaper articles, studies, analyses, evaluations, interpretations, contracts, agreements, jottings, agendas, bulletin, notices, announcements, instructions, blueprints, drawings, as-builts, changes, manuals, publications, work schedules, journals, statistical data, desk, portable and computer calendars, appointment books, diaries, travel reports, lists, tabulations, computer printouts, data processing program libraries, data processing inputs and outputs, microfilms, microfiches, statements for services, resolutions, financial statements, governmental records, business records, personnel records, work orders, pleadings, discovery in any form, affidavits, motions, responses to discovery, all transcripts, administrative filings and all mechanical, magnetic, photographic and electronic records or recordings of any kind, including any storage media associated with computers, including, but not limited to, information on hard drives, floppy disks, backup tapes, and zip drives, electronic communications, including but not limited to, the Internet and shall include any. drafts or revisions pertaining to any of the foregoing, all other things similar to any of the foregoing, however denominated by TESLA, any other data compilations from which information can be obtained, translated, if necessary, into a usable form and any other documents. For purposes of this request, any document which contains any note, comment, addition, deletion, insertion, annotation, or otherwise comprises a non-identical copy of another document shall be treated as a separate document subject to production. In all cases where original and any non-identical copies are not available, "document(s)" also means any identical copies of the original and all nonidentical copies thereof. Any document, record, graph, chart, film or photograph originally produced in color must

be provided in color. Furnish all documents whether verified by TESLA or not. If a document is not in the English language, provide both the original document and an English translation of the document.

**ELECTRONICALLY STORED INFORMATION** [**ESI**] should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, optically or otherwise possessed by TESLA or contained in TESLA's DATA STORAGE SYSTEM as:

    a. Digital communications (*e.g.*, Slack, e-mail, voice mail, instant messaging, internal chat features, text messages, and any other similar communication);

    b. E-Mail Server Stores (*e.g.*, Lotus Domino .NSF or Microsoft Exchange .EDB);

    c. Word processed documents (*e.g.*, Word or WordPerfect files and drafts);

    d. Spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets);

    e. Digital modeling and/or testing (*e.g.*, CAD, CATIA, AUTODESK ALIAS, DELMIA, any form of Finite Element Analysis, whether public or proprietary);

    f. Accounting Application Data (*e.g.*, QuickBooks, Money, Peachtree data);

    g. Image and Facsimile Files (*e.g.*, .PDF, .TIFF, .PNG, .JPG, .GIF images);

    h. Sound Recordings (*e.g.*, .WAV and .MP3 files);

    i. Video and Animation (*e.g.*, .AVI and .MOV files);

    j. Databases (*e.g.*, Access, Oracle, SQL Server data, SAP);

    k. Contact and Relationship Management Data (*e.g.*, Outlook, ACT!);

    l. Calendar and Diary Application Data (*e.g.*, Outlook PST, blog entries);

    m. Online Access Data (*e.g.*, Temporary Internet Files, History, Cookies);

    n. Presentations (*e.g.*, PowerPoint, Corel Presentations)

    o. Network Access and Server Activity Logs;

    p. Project Management Application Data;

    q. Backup and Archival Files (*e.g.*, Veritas, Zip, .GHO)

    r. JIRA Issue Tickets

    s. MATLAB, SIMULINK and other model-based development programs and files

    t. Agile Development Software and files

    u. Python, Git and other source control platform files

    v. "Toolbox" and other TESLA proprietary databases

    w. Event Data Recorder [EDR] files (see 49 C.F.R. 563 for regulations about the contents of the event data recorder)

    x. TESLA vehicle "Log Files", including any applications such as Periscope used to collect, store, or analyze TESLA vehicle performance, including but not limited to collisions, engagement of ADS features, and/or any DMS features.

    y. Autopilot D-16 Reports.

    z. Confluence data.

**DATA STORAGE SYSTEM:** means all TESLA systems for storing data of any nature about the day-to-day operation of the SUBJECT VEHICLES including, but not limited to, ESI, telemetry data transmitted from the SUBJECT VEHICLES to TESLA servers either in realtime or on a periodic basis, or due to an event, such a crash or airbag deployment, as well as video and still-frame camera images, continuously recorded signals and alerts (Log files or CarLog files), text logs stored within the Media Control Unit, data and images recorded in the Restraint Control Module, Toolbox 3 Diagnostic data, and all other data the SUBJECT VEHICLES record or transmit.

**SUBJECT INCIDENT:** The crash that occurred on or about April 25, 2019, at approximately 9:14 PM, in Monroe County, Florida, as further detailed and referenced in Plaintiffs' Complaints.

**SUBJECT VEHICLE:**  The 2019 TESLA MODEL S bearing Florida license plate number LFYB88, Vehicle Identification Number 5YJSA1E24KF302997.

**AUTOMATED DRIVING SYSTEM** [**ADS**] includes:
    a.    any feature of a TESLA vehicle that involves the use of cameras, sensors, radar, and/or other technology used to determine the vehicle's location and to identify, classify, and position other roadway users and objects; this includes but is not limited to TESLA'S Autopilot, Autosteer, or Full Self Driving systems.
    b.    software and software algorithms that analyze data inputs in real time to determine the appropriate vehicle response;
    c.    Level 2 Advanced Driver Assist Systems [ADAS];
    d.    "LEVEL 2" means the same as and is coterminous with the definition of "Level or Category 2 - Partial Driving Automation" in SAE J3016 Taxonomy and Definitions for Terms Related to Driving Automation Systems for On-Road Motor Vehicles § 5.3 (April 2021) (i.e., a driver support feature on the vehicle that can control both steering and braking/accelerating simultaneously under some circumstances).

**DDT**: Dynamic Driving Task or all the real-time operational (lateral and longitudinal movement of vehicle) and tactical (planning component) functions required to operate a vehicle in on-road traffic, excluding the strategic functions such as trip scheduling and selection of destinations and waypoints, and including without limitation:
    i.    Lateral vehicle motion control via steering (operational);
    ii.    Longitudinal vehicle motion control via acceleration and deceleration (operational);
    iii.    Monitoring the driving environment via object and event detection, recognition, classification, and response preparation (operational and tactical);
    iv.    Object and event response execution (operational and tactical);
    v.    Maneuver planning (tactical); and
    vi.    Enhancing conspicuity via lighting, signaling and gesturing, etc. (tactical).

**OEDR:** Includes object and event detection and response or the subtasks of the DDT that include monitoring the driving environment (detecting, recognizing, and classifying objects and events and preparing to respond as needed) and executing an appropriate response to such objects and events (i.e., as needed to complete the DDT and/or DDT fallback).

    a.    the design and performance of sensors, software algorithms, and other technology used to analyze and respond to the vehicle's environment;
    b.    the operational design domain of the various components of TESLA's ADS; and
    c.    the evolution of the system over time through software updates.

**COLLISION AVOIDENCE**: Refers to the FORWARD COLLISION WARNING, AUTOMATIC EMERGENCY BRAKING, and OBSTACLE-AWARE ACCELERATION features described in the SUBJECT VEHICLE's Owner's Manual.

**AUTOMATIC EMERGENCY BRAKING (AEB):** the TESLA AUTOMATIC EMERGENCY BRAKING system on SUBJECT VEHICLES, including the SUBJECT VEHICLE, designed to determine the distance from a detected object traveling in front of it. When a frontal collision is considered unavoidable, AUTOMATIC EMERGENCY BRAKING is designed to apply the brakes to reduce the vehicle's speed and therefore, the severity of the impact.

**SUBJECT SYSTEM:** suite of software, hardware, data, and any other related systems on or off the SUBJECT VEHICLE that contributes to the conferral of any ADS, DDT, or OEDR capabilities, including but not limited to any "Autopilot" or "Full Self Driving" packages, and all automated features such as, Traffic Aware Cruise Control, Lane Keeping Assist (Autosteer), and

**SUBJECT VEHICLES:** All TESLA vehicles, model years 2014 - 2023, equipped with the SUBJECT SYSTEM at any time, and manufactured for sale or lease in the United States, including, but not limited to, the District of Columbia, and current U.S. territories and possessions.

**CRASHES:** refers to TESLA vehicle "crashes in which the incident alert indicated an airbag or other active restraint deployed." (The same definition TESLA uses in its Vehicle Safety Report, https://www.tesla.com/VehicleSafetyReport ).

**MANUAL DRIVING**: meaning exactly what it does in the "Methodology" paragraph contained in TESLA's Vehicle Safety Report, https://www.tesla.com/VehicleSafetyReport), a SUBJECT VEHICLE traveling without active ADS.

**CRASH ALERT**: meaning exactly what it does in the "Methodology" paragraph contained in TESLA's Vehicle Safety Report, https://www.tesla.com/VehicleSafetyReport), where it states "We also receive a crash alert anytime a crash is reported to us from the fleet."

**INCIDENT ALERT**: meaning exactly what it does in the "Methodology" paragraph contained in TESLA's Vehicle Safety Report, https://www.tesla.com/VehicleSafetyReport), where it states "crashes in which the incident alert indicated an airbag or other active restraint deployed."

**COLLISION:** the coming together of two or more things with such force that both or all are damaged, or their progress is severely impeded. ("Collision." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/collision. Accessed 12 Aug. 2023.)

**TESLA:** TESLA, Inc., all of its past and present OFFICERs and EMPLOYEEs, whether assigned to its principal offices or any of its field or other locations, including all of its divisions, subsidiaries (whether or not incorporated) and affiliated enterprises and all of their headquarters, regional, zone and other offices and their EMPLOYEES, and all AGENTS, contractors, consultants, attorneys and law firms and other persons engaged directly or indirectly (e.g., EMPLOYEE of a consultant) by or under the control of TESLA (including all business units and persons previously referred to), who are or, on or after January 1st, 2011 were, involved in any way with any of the following related to the alleged defect in the SUBJECT VEHICLES:

    a.      Design, engineering, analysis, modification or production (e.g. quality control);

    b.      Testing, assessment or evaluation;

    c.      Consideration, or recognition of potential or actual defects, reporting, recordkeeping and information management (e.g., complaints, field reports, warranty information, part sales), analysis, claims, or lawsuits; or

    d.      Communication to, from or intended for zone representatives, FLEETs, dealers, or other field locations, including but not limited to people who have the capacity to obtain information from dealers.

**AGENT:** means an individual, such as a representative, who is authorized to act for or in place of another.

**EMPLOYEE**: means a person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance.

**OFFICER:** means a person who holds an office of trust, authority, or command, such as a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer.

## REQUESTS FOR PRODUCTION

**REQUEST NUMBER 12.** Produce a copy of the complete unredacted Confluence DOCUMENT represented by Bates No. TESLA-00093134 produced in *Huang v Tesla,* Case Number 19CV346663, in the Superior Court of the State of California, County of Santa Clara, (Huang), Note that TESLA-00093134 is only a partial document, and that this REQUEST is for the complete OCR'd document.

**REQUEST NUMBER 13.** Produce applicable DOCUMENTS and ESI that reflect by model and model year, the number of SUBJECT VEHICLES TESLA has sold or leased or operation in the United States.

**REQUEST NUMBER 14.** In its letter dated August 31, 2021, the National Highway Traffic Safety Administration [NHTSA], and NHTSA's subsequent letter dated August 18, 2022, NHTSA requested the latest known vehicle mileage and commensurate date for each of the SUBJECT VEHICLES; produce copies of the DOCUMENTS TESLA supplied to NHTSA in response to these requests.

**REQUEST NUMBER 15.** Produce all DOCUMENTS and ESI used to create the most recent Tesla Vehicle Safety Report (https://www.tesla.com/VehicleSafetyReport).

**REQUEST NUMBER 16.** Produce all DOCUMENTS and ESI containing summaries of data such as reflected in TESLA-00012025, produced in *Harcourt, et al v. Tesla,* Case Number 19CV358488, (hereinafter "Harcourt") in the Superior Court of the State of California, County of Santa Clara. Plaintiffs are hereby requesting all of these summaries up to and including TESLA's latest update to its Vehicle Safety Report.

**REQUEST NUMBER 17.** Produce DOCUMENTS and ESI reflecting the miles traveled by SUBJECT VEHICLES with an ADS active.

**REQUEST NUMBER 18.**  Produce DOCUMENTS and ESI reflecting the miles traveled by SUBJECT VEHICLES in MANUAL DRIVING.

**REQUEST NUMBER 19.**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES.

**REQUEST NUMBER 20.**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated within 5 seconds before impact.

**REQUEST NUMBER 21.**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated more than 5 seconds before impact.

**REQUEST NUMBE 22.**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle was being driven using MANUAL DRIVING.

**REQUEST NUMBER 23.**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated within 5 seconds before impact with a pedestrian or a stationary vehicle.

**REQUEST NUMBER 24**.  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated more than 5 seconds before impact with a pedestrian or a stationary vehicle.

**REQUEST NUMBER 25**.  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle was being driven using MANUAL DRIVING before impact with a pedestrian or a stationary vehicle.

**REQUEST NUMBER 26.**  Produce DOCUMENTS and ESI reflecting the number of COLLISIONS with vehicles, objects, or people involving SUBJECT VEHICLES that included property damage and/or injuries and in which there was no CRASH ALERT indicating an airbag or other active restraint deployed.

**REQUEST NUMBER 27**.  Produce DOCUMENTS and ESI reflecting the number of COLLISIONS with vehicles, objects, or people involving SUBJECT VEHICLES that included property damage and/or injuries concerning which TESLA has no information as to whether ADS was activated within 10 seconds of impact.

**REQUEST NUMBER 28**.  Produce DOCUMENTS and ESI reflecting instances in which the SUBJECT SYSTEM, including OEDR, AEB, Pedal Misapplication Mitigation, Obstacle-Aware Acceleration in the SUBJECT VEHICLES prevented COLLISIONS with vehicles, objects, or people.

**REQUEST NUMBER 29**.  Produce all DOCUMENTS and ESI concerning the preservation, loss, destruction, or deletion of any DOCUMENTS and/or ESI concerning the SUBJECT VEHICLE, or the claims asserted in Plaintiff's complaint.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2023 a true and correct copy of the foregoing was served via email to all counsel identified in the below service list.

> SLAVIK LAW FIRM LLC.
> 3001 South Lincoln Avenue
> Suite C-1
> Steamboat Springs, CO 80487
> (970) 457-1011

By:   /s/ ***Donald H. Slavik.***
> Donald H. Slavik, Esq.
> *Admitted Pro Hac Vice 02/02/2023*

## SERVICE LIST

**Cole, Scott & Kissane, P.A.**
9150 S. Dadeland Blvd, Suite 1400
Miami, Florida 33156
**Attn: Henry Salas, Esq.**
henry.salas@csklegal.com
leisy.martinez@csklegal.com
*Counsel for Defendant, Tesla, Inc.*

**Bowman and Brooke LLP**
41000 Woodward Ave., Suite 200E
Bloomfield Hills, Michigan 48304
**Attn: Thomas P. Branigan, Esq.**
**Attn: Drew P. Branigan, Esq.**
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com
*Counsel for Defendant, Tesla, Inc.*

**Aria Sanguinetti Wang & Torrijos, LLP**
2200 Powell Street, Suite 740
Emeryville, CA 94608
**Attn: Elise R. Sanguinetti, Esq.**
elise@aswtlawyers.com
ncservice@aswtlawyers.com
*Co-Counsel for both Plaintiffs.*

**Poses & Poses, P.A.**
169 East Flagler Street, Suite 1600
Miami, Florida 33156
**Attn: Todd Poses, Esq.**
tposes@posesandposes.com
Maria@posesandposes.com
*Counsel for Plaintiff, Neima Benavides*

**The Rousso, Boumel Law Firm, PLLC**.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
**Attn: Adam T. Boumel**
adam@roussolawfirm.com
*Counsel for Plaintiff, Angulo*

**Eaton & Wolk PL**
2665 South Bayshore Dr., Suite 609
Miami, FL 33133 **Attn: Doug Eaton,**
**Esq.**  deaton@eatonwolk.com
*Co-Counsel for both Plaintiffs.*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.

      Defendant.

_____/

DILLON ANGULO,                        Case 1:22-22607-KMM

      Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.

      Defendant.

_____/

## DEFENDANT, TESLA, INC.'S RESPONSES TO PLAINTIFF, DILLON ANGULO'S THIRD REQUEST FOR PRODUCTION TO DEFENDANT, TESLA, INC.

      Tesla, Inc. ("Tesla") responds to Plaintiff Dillon Angulo's Third Request for Production and responds as follows:

### Objections Common to all Requests

      Tesla incorporates these common objections into each of its responses to Plaintiff's Requests for Production:

1

1. Tesla has not yet completed discovery, investigation, or preparation for trial. Accordingly, its responses are based on information presently available and given without prejudice to Tesla's right to further supplement or modify based upon the discovery of additional or different information. Tesla reserves the right to supplement responses to these Requests up to the time of trial, as the investigation of the facts and circumstances of this case is ongoing.

2. Tesla reserves all objections and questions as to the competency, relevance, materiality, privilege, propriety, admissibility, and all other objections on any grounds that would require the exclusion of any information from evidence if the same were sought to be admitted at trial.

3. Tesla objects to Plaintiff's "Definitions" and "Instructions" to the extent they purport to impose obligations or expectations of Tesla that are above and beyond any requirements imposed under the Federal of Civil Procedure. This includes "Definitions" and "Instructions" that purport to require Tesla to obtain information or documents from entities other than Tesla.

4. Tesla objects to Plaintiff's "Definitions" to the extent they do not comport with plain language definitions or descriptions of these terms. To the extent Tesla objects with Plaintiff's "Definitions," phrases or terms that have not been defined by Plaintiff, Tesla will define its understanding of the word or phrase in its responses, to the extent possible.

5. Tesla objects to these Requests to the extent they seek information protected by the attorney-client, work product doctrine, and/or consulting expert privileges. If Tesla determines that information it has agreed to produce in response to these requests are covered by one of these privileges, Tesla will identify that information on a privilege log.

6. Tesla objects to these Requests to the extent that they are not limited to a reasonable period of time, the same or similar model vehicle as the subject vehicle, or component(s) or system(s) at issue as identified in Plaintiff's Complaint. The determination of scope and the documents

2

produced in response to these Requests are for the purposes of discovery only and not an admission on behalf of Tesla regarding admissibility or responsiveness to the allegations made in this case.

7. Tesla does not interpret Plaintiff's Requests to ask for information about (1) correspondence between Tesla and its attorneys, (2) communications between Tesla, its lawyers or its representatives about the investigation or defense of any claims or lawsuits, including Plaintiff's claims after Tesla learned that a claim would be made, (3) notes or other work product of Tesla's lawyers, (4) other documents or things created by or for Tesla's lawyers, and (5) documents or things prepared by consulting experts about this or any suit, claim, or anticipated claim. If Plaintiff intends any Request for the production of these privileged items, Tesla objects to providing any such information because it is protected from discovery pursuant to attorney-client privilege and/or the attorney work product privilege.

## REQUESTS FOR PRODUCTION

**REQUEST NUMBER 12:** Produce a copy of the complete unredacted Confluence DOCUMENT represented by Bates No. TESLA-00093134 produced in *Huang v Tesla,* Case Number 19CV346663, in the Superior Court of the State of California, County of Santa Clara, (Huang), Note that TESLA- 00093134 is only a partial document, and that this REQUEST is for the complete OCR'd document.

**RESPONSE:** Tesla will agree to produce a copy of Bates No. TESLA-00093134 produced in *Huang v Tesla*, Case 19CV346663, in the Superior Court of the State of California, County of Santa Clara subject to the extant Confidentiality Protective Order and with personally identifiable information redacted.

**REQUEST NUMBER 13:** Produce applicable DOCUMENTS and ESI that reflect by model and model year, the number of SUBJECT VEHICLES TESLA has sold or leased or operation in the United States.

**RESPONSE:** Tesla objects to this Request because it is overly broad and not proportional to the needs of this case. Subject to and without waiving these objections, see Tesla's Response to Request 14.

3

**REQUEST NUMBER 14:**  In its letter dated August 31, 2021, the National Highway Traffic Safety Administration [NHTSA], and NHTSA's subsequent letter dated August 18, 2022, NHTSA requested the latest known vehicle mileage and commensurate date for each of the SUBJECT VEHICLES; produce copies of the DOCUMENTS TESLA supplied to NHTSA in response to these requests.

**RESPONSE:**  Tesla objects to this Request because it is overly broad not proportionate to the needs of the case. Subject to and notwithstanding these objections Tesla is already in the process of producing – subject to the extant Confidentiality Protective Order and with Personal Identifiable Information pertaining to persons other than Plaintiff redacted -- a copy of its response to NHTSA Preliminary Evaluation (PE) 21-020 "limited to those related to Tesla vehicle crashes into stationary vehicles" pursuant to the Court's Order of June 14, 2023. Tesla refers Plaintiff to that production.


**REQUEST NUMBER 15:**  Produce all DOCUMENTS and ESI used to create the most recent Tesla Vehicle Safety Report (https://www.tesla.com/VehicleSafetyReport).

**RESPONSE:**  Tesla objects to this Request because it is overly broad and not proportional to the needs of the case. This Request is substantially similar to and, thus, duplicative of Request 8 in Plaintiffs' March 2, 2023 Notice of Video Recorded Deposition of Defendant Tesla Inc Pursuant to Fed. R. Civ. P. 30(b)(6) (30(b)(6) Notice"). See Tesla's Response and Objections to Plaintiff's 30(b)(6) Notice dated April 10, 2023. Additionally, Tesla's methodology behind its Vehicle Safety Report publicly available at https://www.tesla.com/VehicleSafetyReport and Plaintiff's Counsel has already deposed Tesla's corporate representative witness about Tesla's methodology and the data that Tesla relied up in preparing its Vehicle Safety Report.  Tesla objects to producing information about other crash events without limitation, as well as the data underlying the total miles driven with or without Autopilot, as such information is inordinately voluminous and a potential invasion of privacy of third parties.  Plaintiffs have not and cannot demonstrate the alleged need to discover information about nominal vehicle operation.  Further, they have not and

cannot demonstrate the alleged need to discover information about any and all crashes that occur

with or without Autopilot engaged.   To the extent plaintiffs demand information about

substantially similar collisions, Tesla will address such requests appropriately and within reason.

This request seeks disclosure of voluminous reports of substantially dissimilar collisions, such as

Tesla vehicles operating on Autopilot getting rear-ended or broadsided by other vehicles.  As such,

the Request represents an unreasonably burdensome and overbroad demand that is not relevant or

reasonably calculated to lead to the discovery of admissible evidence.


**REQUEST NUMBER 16:**  Produce all DOCUMENTS and ESI containing summaries of data such as reflected in TESLA-00012025, produced in *Harcourt, et al v. Tesla,* Case Number 19CV358488, (hereinafter "Harcourt") in the Superior Court of the State of California, County of Santa Clara. Plaintiffs are hereby requesting all of these summaries up to and including TESLA's latest update to its Vehicle Safety Report.

**RESPONSE:**  Tesla objects to this Request because it represents Plaintiffs' counsel's violation of

the Protective Order entered in the Harcourt matter, which prohibits sharing documents with

parties and counsel in this matter.


**REQUEST NUMBER 17:**  Produce DOCUMENTS and ESI reflecting the miles traveled by SUBJECT VEHICLES with an ADS active.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not

proportionate to the needs of the case, and harassing.  Subject to and without waiving these

objections, see Tesla's Response to Request 15.


**REQUEST NUMBER 18:**  Produce DOCUMENTS and ESI reflecting the miles traveled by SUBJECT VEHICLES in MANUAL DRIVING.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.


**REQUEST NUMBER 19:**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.

**REQUEST NUMBER 20:**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated within 5 seconds before impact.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.

**REQUEST NUMBER 21:**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated more than 5 seconds before impact.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing.  In addition, it seeks documents not maintained in the ordinary course of business and which would necessitate analysis of every reported/received crash to determine whether a driver assist feature was engaged at all before an incident occurred, and if so, when it was disengaged, since such metrics are not tracked or reported as described in the methodology for Tesla's Vehicle Safety Report.  Subject to and without waiving these objections, see Tesla's Response to Request 15.

28600970v2

**REQUEST NUMBER 22:** Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle was being driven using MANUAL DRIVING.

**RESPONSE:** Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.

**REQUEST NUMBER 23:** Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated within 5 seconds before impact with a pedestrian or a stationary vehicle.

**RESPONSE:** Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. The scope of this Request is also covered by and within the scope of Request 20, thus, this Request is duplicative. Subject to and without waiving these objections, see Tesla's Response to Requests 15 and 20.

**REQUEST NUMBER 24:** Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated more than 5 seconds before impact with a pedestrian or a stationary vehicle.

**RESPONSE:** Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. The scope of this Request is also covered by and within the scope of Request 21, thus, this Request is duplicative. Subject to and without waiving these objections, see Tesla's Response to Requests 15 and 21.

**REQUEST NUMBER 25:** Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle was being driven using MANUAL DRIVING before impact with a pedestrian or a stationary vehicle.

**RESPONSE:** Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. The scope of this Request is also covered by and within the scope of Request 22, thus, this Request is duplicative. Subject to and without waiving these objections, see Tesla's Response to Request 15.

28600970v2

**REQUEST NUMBER 26:**   Produce DOCUMENTS and ESI reflecting the number of COLLISIONS with vehicles, objects, or people involving SUBJECT VEHICLES that included property damage and/or injuries and in which there was no CRASH ALERT indicating an airbag or other active restraint deployed.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not

proportionate to the needs of the case, and harassing. Subject to and without waiving these

objections, see Tesla's Response to Request 15.  In addition, unless "property damage and/or

injuries" are independently reported to Tesla by third parties, Tesla does not have any information

as to whether a particular incident or group of incidents involved alleged "property damage and/or

injuries", thus the Request seeks documents that are not in Tesla's possession, custody or control.

**REQUEST NUMBER 27:**   Produce DOCUMENTS and ESI reflecting the number of COLLISIONS with vehicles, objects, or people involving SUBJECT VEHICLES that included property damage and/or injuries concerning which TESLA has no information as to whether ADS was activated within 10 seconds of impact.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not

proportionate to the needs of the case, and harassing. Subject to and without waiving these

objections, see Tesla's Response to Request 15.  In addition, unless "property damage and/or

injuries" are independently reported to Tesla by third parties, Tesla does not have any information

as to whether a particular incident or group of incidents involved alleged "property damage and/or

injuries", thus the Request seeks documents that are not in Tesla's possession, custody or control.

Beyond that, the Request is harassing and burdensome insofar as it demands information for

incidents limited to those about which the Request states Tesla "has no information."

**REQUEST NUMBER 28:**  Produce DOCUMENTS and ESI reflecting instances in which the SUBJECT SYSTEM, including OEDR, AEB, Pedal Misapplication Mitigation, Obstacle-Aware Acceleration in the SUBJECT VEHICLES prevented COLLISIONS with vehicles, objects, or people.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not

proportionate to the needs of the case, and harassing. Tesla further objects to the scope of and

8

definition of "SUBJECT SYSTEM" by Plaintiffs because it does not accurately define the advance driver assistance system (ADAS) in the Tesla Model S called "Autopilot" in that it fails to include the driver as part of the system. Thus, Plaintiff's definition is an incorrect attempt to redefine Autopilot in a way that is incomplete and intentionally misleading. As Plaintiff Counsel know or should know, as a system Autopilot includes Traffic Aware Cruise Control (TACC), which controls the vehicle's speed; Autosteer, which controls steering within the lane; Automatic Emergency Braking; and Forward Collision Warning. However, Autopilot does not make the Model S a "self-driving car." Instead, Autopilot as a system was designed to include an alert and attentive driver who is in control of the vehicle at all times and the driver is advised by Tesla of Autopilot's limitations and the need to maintain control and responsibility for the vehicle at all times before Autopilot is initially engaged. The design of Autopilot with the driver included as an integral part of the system is consistent with the Society of Automotive Engineers (SAE) definitions of ADAS technology, Autopilot is a Level 2 system, which requires the driver to be in control at all times:



See Society of Automotive Engineers, Standard J3016 Levels of Driving Automation (May 3, 2021), https://www.sae.org/blog/sae-j3016-update.   Subject to and without waiving these objections, see Tesla's Response to Request 15.   Tesla also refers to the Owner's Manual for information about the various driver assist features and collision avoidance measures available on Tesla vehicles.   Beyond that, the Request is harassing and burdensome insofar as it demands

information for incidents limited to those about which the Request states there was no collision. While Tesla may be aware of some such instances, it is not possible to collect the universe of "near misses" since Tesla does not collect data for all driving, nor does it collect data in such a manner amenable to culling out all instances where the collision avoidance features prevent crashes.

**REQUEST NUMBER 29:**  Produce all DOCUMENTS and ESI concerning the preservation, loss, destruction, or deletion of any DOCUMENTS and/or ESI concerning the SUBJECT VEHICLE, or the claims asserted in Plaintiff's complaint.

**RESPONSE:**  Tesla objects to this Request because it is a request for "discovery on discovery," overly broad, not proportionate to the needs of the case and not relevant to Plaintiff's claims. "Preservation, loss, destruction, or deletion" of documents or data is not an allegation in Plaintiff's Complaint and not at issue in this case that is important to resolution of the case.  Additionally, this request for "Discovery on Discovery" is inappropriate where there is no evidence of spoliation or other wrongdoing.  *See Culliver v. BP Expl. & Prod., Inc.*, No. 3:21CV4942-MCR-HTC, 2022 WL 19568966, at *3 (N.D. Fla. Nov. 29, 2022).

Date: September 28, 2023          Respectfully submitted,

By: /s/  Henry Salas_____
    HENRY SALAS (815268)
    COLE SCOTT & KISSANE
    9150 S Dadeland Boulevard, Suite 1400
    Miami, FL 33156-7855
    Office: 786.268.6419
    Fax: 305.373.2294
    henry.salas@csklegal.com

     - and –

    THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
    DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
    BOWMAN AND BROOKE LLP
    101 West Big Beaver Road, Suite 1100

Troy, MI 48084
Office: 248.205.3300
Fax: 248.205.3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**Attorneys for Defendant TESLA, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2023, I electronically file the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

ADAM T. BOUMEL, ESQ.
Florida Bar No.: 0110727
DARREN J. ROUSSO, ESQ.
Florida Bar No.: 97410
THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway, Suite 1520
Miami, FL 33156
305.670.6669 Tel
adam@roussolawfirm.com
SERVICE EMAILS:
pleadings@roussolawfirm.com (primary)
Frank@roussolawfirm.com (secondary)

**Attorneys for Plaintiff Dillon Angulo**

TODD POSES, ESQ.
Florida Bar No.: 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, Florida 33131
305.577.0200 Tel
305.371.3550 Fax
tposes@posesandposes.com
maria@posesandposes.com

**Attorneys for Plaintiff Neima Benavides**

Respectfully submitted,

By: _s/  Henry Salas_____

11

EXHIBIT "C"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 21-CV-21940-BLOOM/OTAZO-REYES

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,
     Plaintiff,
v.

TESLA, INC., a/k/a Tesla Florida, Inc.,
     Defendant.
                                   /

DILLON ANGULO,                           Case 22-CV-22607-BLOOM
     Plaintiff,
v.

TESLA, INC., a/k/a Tesla Florida, Inc.,
     Defendant.
                                   /

**<u>ORDER</u>**

THIS CAUSE came before the Court upon Plaintiffs Neima Benavides and Dillon Angulo's (collectively, "Plaintiffs") Amended Notice of Hearing [D.E. 115]. The undersigned held a hearing on this matter on June 14, 2023. In accordance with the undersigned's rulings at the hearing, it is

ORDERED AND ADJUDGED that Plaintiffs' motion to compel document production in response to Plaintiffs' Second Request for Production is GRANTED IN PART as follows:

1. By **June 21, 2023**, the parties shall submit a proposed joint protective order. If the parties cannot agree on a proposed protective order by that time, they shall submit competing orders for the undersigned's consideration.

2. With respect to Plaintiffs' Second Request for Production No. 1, Defendant Tesla, Inc. a/k/a Tesla Florida, Inc.'s (hereafter, "Tesla") has agreed to produce the

1

"engineering set" portion of the relevant car log data subject to the forthcoming protective order.

3. With respect to Plaintiffs' Second Request for Production Nos. 2 and 3, Tesla shall produce documents previously provided to the National Highway Traffic Safety Administration ("NHTSA"), limited to those related to Tesla vehicle crashes into stationary vehicles. This ruling is without prejudice to Plaintiffs seeking additional NHTSA documents upon a showing of a proper predicate.

4. With respect to Plaintiffs' Second Request for Production No. 4, Tesla has agreed to provide to Plaintiffs the Bates numbers of the responsive documents from the related litigation in California subject to the forthcoming protective order.

5. With respect to Plaintiffs' Second Request for Production No. 6, Tesla has agreed to produce the requested responsive documents.

6. With respect to Plaintiffs' Second Request for Production No. 9, Tesla has agreed to produce the interior video captured by the onboard cameras in the subject vehicle to the extent that such video is available.

It is further ORDERED AND ADJUDGED that Plaintiffs' motion to compel document production in response to Plaintiffs' Notice of Taking Deposition Duces Tecum is GRANTED in accordance with the ruling in Paragraph 3 above.

**DONE AND ORDERED** in Chambers at Miami, Florida, on this <u>14th</u> day of June, 2023.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Beth Bloom
Counsel of record