## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No.: 21-cv-21940-BLOOM/TORRES

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

     Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

     Defendant.

_____/

DILLON ANGULO,             Case 1:22-22607-KMM

     Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.

     Defendant.

_____/

### TESLA'S BRIEF IN RESPONSE TO
### PLAINTIFFS' DISCOVERY ISSUES

Tesla, Inc. (Tesla), by and through its undersigned counsel, submits the

following Brief as permitted by this Court's Order of December 20. 2023 [Dkt. 164]

and in response to the discovery issues raised by "Plaintiffs' Motion for Hearing"

[Dkt 162], and states as follows:

<u>**BACKGROUND**</u>

**A.     The Incident**

This automotive product liability case arises out of a crash that occurred on the night of April 25, 2019 (the "Subject Crash"). On that night, Decedent Naibel Benavides and Plaintiff Dillon Angulo, pedestrians, were struck when non-party George McGee negligently drove his 2019 Tesla Model S (the "Model S") through a "T" intersection in Key Largo, Florida by ignoring a clearly visible stop sign, an overhead red flashing stop light and other clearly visible traffic control signs at the intersection. The photograph below depicts the scene and the collection of clearly visible traffic control devices ignored by Mr. McGee seconds before the crash.



Within minutes of the crash and while still at the crash scene, Mr. McGee admitted to police that he drove his Model S through the intersection without

2

stopping because he was distracted from his driving responsibilities while looking for his cell phone that he dropped while driving. McGee's Model S was equipped with Autopilot[1] features that he decided to engage during the course of his travel toward the crash scene but he overrode the Traffic Aware Cruise Control feature by depressing the accelerator pedal to go faster—*over* the posted speed limit as he approached the stop sign.  See also Ex. A - Homicide Report at 23 (explaining that the vehicle's diagnostic log data revealed McGee had overridden Autosteer and Traffic Aware Cruise Control  by pressing accelerator) see also Ex. B - Deposition of Florida Highway Patrol Investigating Officer Corporal Riso at 71:17-72:25 (noting McGee's violation of the posted 45 mph speed limit leading up to and at the time of impact).

Importantly, Autopilot in the subject Model S was designed for use on the highway and would not do anything in response to traffic signs or other traffic

---

[1] The subject Model S was configured with a suite of advanced driver assistance systems (ADAS) that Tesla calls "Autopilot." It includes Traffic Aware Cruise Control (TACC), which controls the vehicle's speed; Autosteer, which controls steering within the lane; Automatic Emergency Braking; and Forward Collision Warning. Engaging Autopilot does not make the Tesla Model S a "self-driving car." Instead, and consistent with the Society of Automotive Engineers (SAE) definitions of ADAS technology, Autopilot is a Level 2 system, which requires the driver to be in control at all times:



*See* Society of Automotive Engineers, *Standard J3016 Levels of Driving Automation* (May 3, 2021), https://www.sae.org/blog/sae-j3016-update (last visited Sep. 18, 2023)

29002274v2

control devices present at this intersection. See e.g. Ex. C Representative Copy of Owner's Manual for Subject Vehicle at pg. 82 (instructing users not use Traffic Aware Cruise Control on city streets or on roads where traffic conditions are constantly changing); see also id at pg. 89 (warning that Autosteer is intended for use only on highways and limited-access roads).  Instead, Mr. McGee was solely responsible for driving the Subject Tesla and for complying with all traffic control devices- and he understood this at the time of the crash. See Ex. B - Deposition of Corporal Riso at 88:12-90 (McGee was legally responsible for, but failed to maintain control of vehicle, be aware and respond to hazards and traffic control devices, and comply with speed limit); see also Ex. D - Deposition of McGee at 112:18-113:15. In short, he failed to do so and this caused a high-speed collision between the Model S and another vehicle that was legally parked near the intersection.  Plaintiffs know and do not dispute these facts about the real cause of this crash. *See also* [**D.E. 1**] Neima Benavides Complaint at ¶13-14.[2]  Consequently, the parked vehicle struck Ms. Benavides and Mr. Angulo, who were standing nearby. *See id* at ¶16. This resulted in Ms. Benavides death and injuries to Mr. Angulo.  *See id.*

---

[2] Plaintiff Angulo and the Estate (parents) of Ms. Benavides, who tragically died in the crash, first sued McGee and settled with him before ever pursuing a claim against Tesla. The Benavides lawsuit alleges the Tesla driver McGee "carelessly and/or recklessly" "drove through the intersection…ignoring the controlling stop sign and traffic signal." Tesla driver McGee didn't blame Tesla, didn't sue Tesla, didn't try to get Tesla to pay on his behalf.  He took responsibility for his negligence.

**B.**	**Plaintiff's Discovery to Tesla**

The Hearing noticed for January 18, 2024 concerns several distinct discovery issues:

1.	Plaintiffs' request to depose Tesla in-house Counsel Ryan McCarthy and Autopilot Engineer Ashok Elluswamy[3]

2.	Plaintiff's Request for video segments used to create labels

3.	Plaintiff's request for the production of Bates No___ in a different format than has already been provided

4.	Tesla's objections to Request 13 of Dillon Angulo's Third Request for Production

5.	Tesla's objections to Request 16 of Dillon Angulo's Third Request for Production

For the reasons stated below, this Court should deny Plaintiffs' Motion regarding items 1, 4, and 5, and States and issues raised by items 2-3 are moot as Tesla has already agreed to comply with Plaintiffs' requests.

---

[3] Plaintiffs have served no notice for these depositions. Instead, on November 9, 2023, Plaintiffs informally requested *via* email that Tesla present its in-house Counsel Ryan McCarthy and Ashok Elluswamy for deposition.  Plaintiffs claim their purported basis for deposing in-house Counsel McCarthy is that Mr. McCarthy made factual statements about the Model S to members of Florida Highway Patrol during its investigation of the Subject Crash.

29002274v2

## <u>LAW AND ARGUMENT</u>

Tesla responds separately to each Item identified in Plaintiffs' Motion for Hearing [D.E. 162] below:

### 1.    <u>Plaintiffs' Requests for Depositions</u>

Plaintiffs' informal request to depose Tesla's in-house Counsel Ryan McCarthy and Autopilot Engineering Director Ashok Elluswamy for deposition should be denied.  Plaintiffs have presented no legal and no legitimate factual basis to support their extraordinary and gamesman-like demand that Tesla present a member of its in-house legal staff for a deposition in this case. Plaintiffs' purported basis for this demand – that Mr. McCarthy made factual statements about the Model S in response to questions about the car posed by the Florida Highway Patrol – does meet the high burden a Party who demands the deposition of opposing Counsel must meet before such an extraordinary deposition may occur.  Plaintiffs' Counsel have not specified the reason for requesting the deposition of Mr. Elluswamy, but they know that Mr. Elluswamy has already been deposed extensively about his role in and knowledge about the design and function of Autopilot.  This Court should deny Plaintiffs' Motion concerning these depositions because the Motion is procedurally premature under Fed. R's. Civ. P. 30(b)(1) and 37(a)(3)(B) as Plaintiffs have yet to formally served notices, but also because of the substantive reasons provided below:

a.   **Tesla In-House Counsel**

Federal courts in this District generally disfavor depositions of a party's in-house Counsel and permit them in only limited circumstances. *See Covington v. Walgreen Co.*, No. 1:11-CV-22900, 2012 WL 2120776, at *3 (S.D. Fla. June 11, 2012). Such requests inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case. *West Peninsular Title Co. v. Palm Beach County* 132 F.R.D. 301, 302 (S.D. Fla. 1990). Even innocent inquiries at deposition often implicate work product or attorney-client privileges. *Id.* Consequently, courts should exercise great care before permitting the deposition of a party's attorney. *Id* (quoting *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D. N.C. 1987).

As this Court knows, Courts in the Southern District of Florida generally hold that to allow the deposition of a party's attorney, the movant must show the following:

(1)   the deposition is the only practical means of obtaining the information;

(2)   the information sought will not invade the realm of the attorney's work product or interfere with the attorney-client privilege;

(3)   the information sought is relevant and crucial to the preparation of the case; and

(4)   the movant's needs outweigh the dangers of deposing a party's attorney.

7

*Covington v. Walgreen Co.*, No. 1:11-CV-22900, 2012 WL 2120776, at *3 (S.D. Fla. June 11, 2012); *see also Klayrnan v. Freedom's Watch, Inc.*, No. Q7–22433–CIV, 2007 WL 4414803, at *3–4 (S.D.Fla. Dec. 14, 2007); *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* No. 04–80090–CIV–COHN, 2007 WL 433084, at *3–4 (S.D.Fla. Feb. 2, 2007); *see also W. Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301, 302 (S.D.Fla. 1990). Plaintiffs have not even attempted to establish and cannot establish any of the factors required by courts in this District.

   i. *A deposition of Mr. McCarthy is not the only practical means of obtaining the information*

   Plaintiffs' purported reason for deposing Mr. McCarthy is because he communicated with Florida Highway Patrol ("FHP") and is named in the FHP report for the subject crash. However, Mr. McCarthy did not witness the subject crash. Instead, his involvement here arose in response to questions raised by the FHP. He does not independently possess information that cannot be found elsewhere – in the publicly available FHP report for example or from another witness – like the investigating FHP officer who was already deposed nearly two years ago. This is evident from the FHP report which indicates that Mr. McCarthy did only the following:

   1. Discussed the process of obtaining data and crash video from Tesla, including whether a subpoena to Tesla would be necessary;

2.      Provided data and video from the Subject Crash, as well as the owner's manual for the subject vehicle in response to formal request.

3.      Answered factual questions about the owner's manual, the data provided to Florida Highway Patrol, McGee's use of Autopilot on the date of the crash, and the subject vehicle's capabilities and operation.

*See* Ex. E - FHP Investigator's Case Activity Summary at pg. 4; *see also* Ex. B - Deposition of D. Riso at 107:18-120:12, 122:23-124:10.  All of the information described above and that Tesla provided to the FHP through Mr. McCarthy is already in Plaintiffs' possession.  In fact, Plaintiffs already spent several hours questioning the author of the FHP report – Corporal Riso -- about this information and Mr. McCarthy's role in providing the information to the FHP.  *See* Ex. B Deposition of D. Riso at 103:10-111:23, 118:3-120:2, 122:23-124:5, 127:25-12812, 135:10-137:17.  Despite this, in the two years since Corporal Riso's deposition, Plaintiffs have made no further any into this subject matter.

ii.     *The deposition will encroach on privilege and work product*

Without doubt a deposition of Tesla's in house Counsel will encroach on Tesla's Attorney-Client and Work Product Doctrine privileges.   Besides providing the information described above to the FHP, Mr. McCarthy is Tesla's in house counsel responsible for managing this and other product liability cases filed against Tesla. It is inconceivable that questions designed to invade these privileges would

9

not arise in a deposition of one of Tesla's Lawyers and Plaintiffs' Counsel have said nothing to suggest otherwise. Courts across in this District and in other circuits have observed that such depositions tend to involve "forays into the area most protected by the work product doctrine – that involving an attorney's mental impressions or opinions." *See, Covington, supra* and also *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). Additionally, Plaintiffs have provided no assurances that their questions will be narrowly tailored to avoid the realm of privilege or work product. Absent a protocol or notice, neither of which Plaintiffs' have proffered, and the latter of which is required by Fed. R. Civ. P. 30 – this Court should not overlook the significant problems raised by Plaintiffs' extraordinary and unnecessary request. In short, there is simply no legitimate reason for Plaintiffs to create the privilege problems a deposition of Mr. McCarthy will surely present.

iii.    *The information sought is not crucial to Plaintiffs' case, and is duplicative of three years of discovery*

Plaintiffs Counsel's own conduct and the timing of this request reveals how unnecessary Mr. McCarthy's potential testimony is to their case and their real motive for demanding the deposition now. The FHP report raised by Plaintiffs' Counsel as their reason for demanding Mr. McCarthy's deposition has been available to Plaintiffs' Counsel since 2019. Discovery in this case has been underway for over 2 years and, curiously, the first witness from Tesla that Plaintiffs' Counsel request for deposition is *Tesla's in house Counsel*. This begs the question: Are Plaintiffs'

Counsel interested in acquiring new discovery, or are they simply trying to harass Tesla and Mr. McCarthy by demanding his deposition after this case has been pending since May 2021? We think the answer to this question is obvious.

> iv.   *The dangers of deposing Tesla's Counsel outweigh Plaintiffs' needs for deposition*

As already stated above, Plaintiffs' "need" to depose Mr. McCarthy, if any, is significantly outweighed by the burden and dangers of deposing Tesla's in-house counsel.  As numerous other Courts have observed, depositions of opposing counsel tend to disrupt the adversarial system, lower the standards of the profession, unduly add to the costs and time spent in litigation, personally burden the attorney in question, and create a chilling effect between the attorney and client. *See e.g. N.F.A. Corp v. Riverview Narro Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D. N.C. 1987).  These risks are increasingly present where Plaintiffs' Counsel have failed to provide adequate notice of a deposition, demand to depose opposing Counsel about information they already have or that has been available to them for over two years. Additionally, Plaintiffs have not demonstrated that new and relevant information will be discovered by deposing Mr. McCarthy – let alone information that is possessed *only* by Mr. McCarthy which they must show. This Court should deny this request.

29002274v2

### b.     Tesla Autopilot Director of Engineering Ashok Elluswamy

As this Court is aware, a court must limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *See Schwimmer v. 24 Hour Fitness United States, Inc.*, No. 14-CV-62387, 2015 WL 3529616, at *1 (S.D. Fla. June 2, 2015) (Quoting Fed. R. Civ. P. 26(b)(2)(C)(1). Mr. Elluswamy is currently one of only two Directors of Autopilot Engineering at Tesla.  He has been deposed twice and testified in trial once for other product liability case concerning Tesla's Autopilot System.  Notably, Plaintiffs' Counsel Donald Slavik has access to Mr. Elluswamy's 232 page deposition and exhibits from the *Huang v. Tesla* case and he was involved in the trial wherein Mr. Elluswamy testified (*Hsu v. Tesla*).  Thus, Mr. Slavik already knows, Mr. Elluswamy provided extensive and detailed testimony about Autopilot during that deposition and during trial. After receiving Plaintiffs' Counsel's email request that Mr. Elluswamy sit for a third deposition, Tesla's Counsel informed Plaintiffs' Counsel of Tesla's objection to their request and Plaintiffs' Counsel Mr. Slavik responded with a request for a copy of Mr. Elluswamy's deposition from *Molander v. Tesla.* Although the *Molander* case does not involve a Model S, Tesla will agree to provide a copy of the transcript subject to the extant Confidentiality Protective Order.  But there is still no reason to unduly burden Mr. Elluswamy, his engineering team and Tesla by requiring him to

12

be deposed yet again in this case and Plaintiffs' demand for his deposition here is not proportional to the needs of the case or important to resolution of this case as required by FRCP 26 and Plaintiffs' demand should be denied.

### 2.     Plaintiff's Request for Video Segments Creating Labels

In response to Request 4 of Plaintiff Angulo's Second Request for Production, Tesla agreed to search for material responsive to this Request that it believed was produced in *Huang v. Tesla* and already accessible to Plaintiffs' counsel. *See* D.E. 119 at ¶4.   After conducting that search, counsel for Tesla discovered that this material was not produced in the *Huang* matter.   However, Tesla will search for and produce if found and subject to the extant Confidentiality Protective Order relevant video tags, defined to mean video tags that address the conditions that were present for this crash. Production of video tags for any crash involving any Tesla vehicle is not proportional to the needs of this case and not necessary to resolution of the case as required by FRCP 26.

### 3.     Plaintiffs' Request for Production of BENAVIDES00000007 in Different Format

In Response to Request 1 of Plaintiffs' Notice of Fed. R. Civ. P. Deposition of PMK from Tesla, Tesla produced a copy of the requested "D-16" Report for the subject crash as Bates No. BENAVIDES00000007.   Plaintiffs subsequently requested that Tesla produce a copy of this document in a .txt file.  Tesla has agreed

to do so if such a format exists, and is currently searching to determine whether it possesses this document in the requested format.[4]

**4.     Plaintiffs' Request for Documents Concerning all Model Year 2014-2023 Vehicles Manufactured for Sale or Lease in the United States with Driver Assist Features.**

Request 13 of Plaintiff Angulo's Second Requests for Production asks Tesla to produce "applicable documents and ESI" that reflect the number of "Subject Vehicles" Tesla has "sold or leased or [*sic*] operation in the United States. Plaintiff defines "Subject Vehicles" as "all Tesla vehicles, model years **2014-2023**" equipped with advanced driver assist features. In essence, Plaintiff seeks information on all vehicles Tesla manufactured over the course of a decade. This Request is plainly overly-broad and disproportionate to the needs of the case.

As this Court noted in its June 28, 2023 Order Concerning Plaintiffs' discovery requests [Dkt 123], the relevant vehicles for this case are 2019 Model S Tesla vehicles with Autopilot Hardware Version 3 and Software Version 9.0. Plaintiff has neither demonstrated that these vehicles (*all* Tesla's manufactured between 2014-2023) are substantially similar to the product at issue, nor that the information requested is relevant to Plaintiffs' claims. Even at the discovery stage, a party seeking information concerning other incidents or products must show that the circumstances surrounding the other accidents or products must be "similar

---

[4] As this Court is aware, the producing party is obligated only to produce documents as they are kept in the usual course of business. *See* Fed. R. Civ. P. 34(b)(2)(E)(i)

29002274v2

enough" that discovery concerning those incidents is reasonably calculated to lead to the uncovering of substantially similar occurrences. *See Cerrato v. NutriBullett LLC*, Case No 8:16-cv-3077-T-24JsSS, 2017 WL 3608266 at *2 (M.D. Fla. Aug. 22, 2017). *See also*, Ree v. Royal Caribbean Cruises, Ltd, 315 F.R.D. 682, 686 (S.D. Fla. 2016).

Here, Plaintiffs demand information across different models of vehicles manufactured over a decade – with the only purported similarity being that they possesses driver assistance features (i.e. Autopilot). What Plaintiffs also fail to appreciate is that Autopilot is and has been an evolving technology over time meaning that Tesla vehicles are not all "substantially similar" simply because they may have Autopilot. This Court understood this when it limited the scope of discovery in its June 28, 2023 Order.

### 5.    Request 16 of Dillon Angulo's Third Requests for Production

Request 16 in Plaintiff Angulo's Third Request for Production and Tesla's Response are set out below:

**REQUEST NUMBER 16:** Produce all DOCUMENTS and ESI containing summaries of data *such as* reflected in TESLA-00012025, produced in *Harcourt, et al v. Tesla,* Case Number 19CV358488, (hereinafter "Harcourt") in the Superior Court of the State of California, County of Santa Clara. Plaintiffs are hereby requesting all of these summaries up to and including TESLA's latest update to its Vehicle Safety Report.

**RESPONSE:** Tesla objects to this Request because it represents Plaintiffs' counsel's violation of the Protective Order entered in the Harcourt matter, which prohibits sharing documents with parties and counsel in this matter.

This request should be denied because Plaintiffs' Counsel's reference to and use of documents from the *Harcourt v. Tesla*[5] case is a violation of the Confidentiality Protective Order (CPO) in *Harcourt*. As Plaintiffs' Counsel, Donald Slavik knows, since he is Plaintiff's Counsel in *Harcourt* and signed the CPO in that case, *Harcourt* does not involve a Model S like the vehicle involved here and Harcourt is not a case in which "Autopilot" has been alleged to be defective; like the defect claims here. Instead, as the *Harcourt* CPO (attached as Exhibit F) makes clear, *Harcourt* involves a Tesla Model X with allegations that the Model X in that case experienced an uncommanded acceleration or lacked sufficient barriers to prevent an operator from accidentally powering up the vehicle or shifting from Park to Drive. *Id.* at paragraph 17(i). Plaintiffs here have made no such allegation about Mr. McGee's Model S – this case is not alleged to be about and just is not about an "uncommanded acceleration" of the Model S. Thus, Plaintiffs' use of or reference to protected documents or data from the *Harcourt* case involving substantially different defect claims and issues and a different Tesla vehicle is a violation of the Harcourt CPO, paragraph 17(i). For these reasons, this Court can and should deny this request.

## **CONCLUSION**

---

[5] *Harcourt v. Tesla*, California Superior Court for the County of Santa Clara, Civil Action 19CV358488.

16

**WHEREFORE**, Tesla requests that this Court DENY Plaintiffs' Motion in its entirety.

Respectfully submitted,

By: /s/*Henry Salas*_____
HENRY SALAS (815268)
COLE SCOTT & KISSANE
9150 S Dadeland Blvd Ste 1400
Miami, FL 33156-7855
Office: 305-350-5300/Fax: 305-373-2294
henry.salas@csklegal.com

- and –

THOMAS P. BRANIGAN (Admitted Pro Hac Vice)
DREW P. BRANIGAN (Admitted Pro Hac Vice)
BOWMAN AND BROOKE LLP
101 W. Big Beaver Road, Suite 1100
Troy, MI  48084
248.205.3300 / 248.205.3399 fax
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

Attorneys for Defendant TESLA, Inc.

29002274v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2024, I electronically file the foregoing

paper with the Clerk of the Court using the ECF system which will send notification

of such filing to the following:

ADAM T. BOUMEL, ESQ. Florida
Bar No.: 0110727
DARREN J. ROUSSO, ESQ.
Florida Bar No.: 97410
THE ROUSSO, BOUMEL LAW
FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669
Adam@roussolawfirm.com
SERVICE EMAILS:
pleadings@roussolawfirm.com
(primary) Frank@roussolawfirm.com
(secondary)

*Attorneys for Plaintiff Dillon Angulo*

Todd Poses, Esquire
Florida Bar No.: 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street Suite 1600
Miami, Florida 33131
(305) 577-0200 Tel
(305) 371-3550 Fax
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima
Benavides*

Respectfully submitted,

By:   <u>s/Henry Salas</u>

29002274v2