## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-21940-BLOOM/TORRES

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.

      Defendant.

_____/

   DILLON ANGULO,                     Case 1:22-22607-KMM

      Plaintiff,

v.

 TESLA, INC. a/k/a Tesla Florida, Inc.

      Defendant.

_____/

## TESLA'S RESPONSE TO PLAINTIFFS' JOINT MOTION TO EXTEND AMENDMENT DEADLINE FOR LEAVE TO AMEND COMPLAINT

      Tesla, Inc ("Tesla"), through its undersigned counsel, responds in opposition to Plaintiffs' Joint Motion to Extend Amendment Deadline and for Leave to Consolidate and Amend Complaint ("Motion to Extend"), and requests this Court

1

**deny** Plaintiffs' Motion in its entirety.  In support of its Opposition, Tesla states the following:

## <u>BACKGROUND</u>

This automotive product liability case arises out of a crash that occurred on April 25, 2019. Decedent Naibel Benavides and Plaintiff Dillon Angulo, pedestrians, were struck when non-party George McGee negligently drove his 2019 Tesla Model S (the "Model S") through a "T" intersection in Key Largo, Florida by ignoring a visible stop sign and overhead red flashing stop light. While still at the crash scene, Mr. McGee admitted to police that he drove his Model S through the intersection without stopping because he was distracted, looking for his cell phone that he dropped while driving. He had the Autopilot[1] features of his Model S engaged while driving, but – based on the road he was on – Autopilot capped the vehicle speed at 45 mph, so he overrode Traffic Aware Cruise Control by pressing the accelerator pedal to go faster and over the posted speed limit.  *See* Ex. A- Florida Highway

---

[1] The subject Model S was configured with a suite of advanced driver assistance systems (ADAS) that Tesla calls "Autopilot." Relevant here, it includes Traffic Aware Cruise Control (TACC), which controls the vehicle's speed, and Autosteer, which controls steering within the lane. Engaging Autopilot does not make the Model S a "self-driving car." Instead, and consistent with the Society of Automotive Engineers (SAE) definitions of ADAS technology, Autopilot is a Level 2 system, which requires the driver to be in control at all times:



*See* Society of Automotive Engineers, *Standard J3016 Levels of Driving Automation* (May 3, 2021), https://www.sae.org/blog/sae-j3016-update (last visited Sep. 18, 2023)

Patrol Homicide Investigative Report at pg. 23; *see also* Ex. B- Representative Copy of Owner's Manual for 2019 Model S at pp. 87.  Also, immediately before the impact, he disengaged Autosteer by manually braking and turning the steering wheel.  *See* Ex. C- Electronic Data for Subject Vehicle at pg. 7; *see also* Ex. D - Transcript of audio recording from Monroe County Sheriff at 2:12-14 and 4:9-20; *see also* Ex. B - Representative Copy of Owner's Manual for 2019 Model S at pp. 92-3.  Importantly, Autopilot in the subject Model S was designed for use on the highway and not intended to detect traffic signs or other traffic control devices like those present at this intersection. In other words, Mr. McGee's car had never stopped on its own for a stop sign, was not designed to do that, and was not represented that it could do that.  Instead, Mr. McGee was solely responsible for driving his vehicle and for complying with all traffic control devices – and he understood this at the time of the crash. In short, he was negligent and he caused a high-speed collision between the Model S and another vehicle parked near the intersection, which vehicle then struck Ms. Benavides and Mr. Angulo who were standing nearby, resulting in Ms. Benavides's death and injuries to Mr. Angulo.

Over the past two and a half years since *this*[2] case was filed, Tesla has diligently conducted discovery – including service of several sets of discovery and

---

[2] Before suing Tesla, both Plaintiffs sued Mr. McGee separately and alleged that his negligence caused the crash and their damages. Both Plaintiffs settled with Mr. McGee and then sued Tesla.

depositions of key fact witnesses.  In that time, nothing has been uncovered which changes the crash facts that give rise to why Plaintiffs rightly blamed Mr. McGee in the first instance and should have stopped there. And, contrary to Plaintiffs' arguments, no new evidence has been discovered to justify their second untimely request to amend their Complaints.

## PROCEDURAL HISTORY

As this Court is aware, the deadline to amend pleadings for this case lapsed well over a year ago on October 28, 2022.  *See* (D.E. 50).  Regardless, on December 29, 2023, Plaintiffs filed their Joint Motion to Extend Amendment Deadline and for Leave to Consolidate and Amend their Complaint ("Motion to Extend"), attaching Plaintiffs' proposed Amended Complaint as Exhibit 2.  *See* (D.E. 165) and Exhibit 2 to same).  While Plaintiffs' Motion is titled a motion to extend the date to amend, it is – in reality – Plaintiffs' second untimely motion to amend their Complaints, and so Tesla is compelled to respond to it as such.  Plaintiffs first attempted to move for leave to amend in August, 2023.  As this Court recognized in its Order denying that Motion, Plaintiffs "fail[ed] to identify *any* newly discovered information that justifies the new claims set forth in the proposed Amended Complaint."  *See* (D.E. 143) at pg. 5.  Plaintiffs further failed to explain "why their *eleven-month delay in filing the Motion* is excused... [and] have failed to show that they diligently attempted to comply with the Court's deadline to amend pleadings."  *Id* at pp. 5-6

(emphasis added).  Plaintiffs now seek to file the same Amended Complaint[3] in their second late Motion, despite no new factual revelations or evidence to support the same claims they sought to add the last time around.

Plaintiffs' purported reason for this second untimely Motion is an investigation by the National Highway Traffic Safety Administration (NHTSA) - "PE 021-020" – started over two years ago and related to Tesla's Autopilot technology that Plaintiffs admit that have been keenly aware of "[f]rom the outset of this lawsuit."  (D.E. 165) at pg. 1.  In fact, Plaintiff Benavides relied on this investigation as a reason to postpone trial nearly two years ago.  Specifically, Plaintiffs reference a December 12, 2023 voluntary recall initiated by Tesla to conclude NHTSA's investigation as "newly disclosed evidence."  *See* Ex. E -  Part 573 Safety Recall Report for Recall 23V-838.  As Plaintiffs know, this investigation was opened in *August of 2021* to assess – in part "the technologies and methods used to monitor, assist, and enforce the driver's engagement with the dynamic driving task during Autopilot operation."  *See* Ex. F – Department of Transportation Office of Defects Investigation Resume for PE21-020 at pg 1.  However, the issues discussed in this investigation and the recently announced voluntary recall largely mirror the allegations contained in Plaintiffs' Complaints filed long ago.  *See* (D.E.

---

[3] Plaintiffs' Proposed Amended Complaint would add the following new claims: Negligent Misrepresentation (Count 4); Intentional Misrepresentation (Count 5); Common Law Fraudulent Concealment (Count 6); Intentional False Advertising under Fla Stat §817.44 (Count 7); and punitive damages.  *See* (D.E. 165-2)- Plaintiffs' Proposed Amend Complaint at ¶¶114-1839.

1) at ¶ 23; *see also* Ex. G - Angulo Complaint at ¶26.  Additionally, all of the purportedly relevant facts discussed in the "Background" section of Plaintiffs' Motion to Extend a timeline of "relevant facts" span between 2015 and June, 2022 (*four months* before the deadline to Amend). Thus, the only truly "new" thing Plaintiffs have presented to this Court through this second untimely Motion is the Motion itself.

This Motion should be denied because (1) it is late – filed *more than a year* after this Court's October 28, 2022 deadline to amend pleadings; (2) the allegedly "new" basis is not new, rather it was known by or available to Plaintiffs well before the Court's deadline; (3) Plaintiffs' proposed amendment would be futile because the new claims Plaintiffs hope to add fail to state claims by these Plaintiffs upon which relief may be based; (4) Plaintiffs cannot meet the high legal requirements for the addition of punitive damages under Florida law; and (5) Plaintiffs' Amendment would unfairly prejudice Tesla, unduly prolong this litigation, and waste the resources and time of the Parties and this Court.

## LAW AND ARGUMENT

Federal Rule of Civil Procedure 15 provides that after a responsive pleading is served, "a party may amend its pleading with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend a party's pleading should be granted when justice so requires. *Id*.  However, district courts have

discretion to deny leave where substantial reason justifies denial.  *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999).

The factors in determining whether justice requires allowing an amendment under Rule 15(a) are: (1) Undue Delay; (2) Bad faith or dilatory motive; (3) Futility of Amendment; and (4) Prejudice to the opposing party.  Id.  In *Foman v. Davis*, the Supreme Court ruled that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." 371 U.S. 178, 182 (1962) (emphasis added)). Conversely, denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.  *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *See also Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (affirming district court's denial of Plaintiffs' leave to amend complaint because the three new claims asserted would have been subject to dismissal as a matter of law).

A.   **Plaintiffs' Renewed Attempt to Amend is Still Untimely**

*1. Plaintiffs' Undue Delay and Lack of Diligence*

Plaintiffs' latest attempt to amend their Complaints is *fourteen* months late. This case is two and a half years old, and the date to amend pleadings expired on October 28, 2022.  *See* (D.E. 50).  As discussed in detail in Tesla's opposition to Plaintiffs' first Motion for Leave, Plaintiffs' untimely attempt to amend is a result

of their own lack of diligence and attempts to stall or avoid engaging in discovery. *See* (D.E. 137) at pg. 5.  Notably, Plaintiffs should have and could have moved to extend the amendment deadline before it expired.[4]  Tesla's voluntary recall and its timing (December of 2023) is no excuse for Plaintiffs' delay and failure to raise this issue sooner and in a timely way.

> 2.  *Plaintiffs Present no new and Previously Undiscovered or Unknown Facts Warranting Their Request for Leave or Amendment of Deadline*

The purported basis for Plaintiffs' second request for leave to extend is Tesla's recent voluntary recall related to P.E. 21-020.  *See* (D.E. 165) at pp. 2-3.  However, the NHTSA Investigation and Tesla's Voluntary Recall are not "newly" discovered evidence or any reason for this Court to excuse Plaintiffs' failure to act.  Plaintiffs concede that they have known about the NHTSA investigation that culminated in the recall *"[f]rom the outset of this lawsuit*."  *See* (D.E. 165) at pg. 1.  Additionally, neither Tesla's response to NHTSA's investigation (significant portions of which have been produced to Plaintiffs), nor NHTSA's "findings"[5] nor Tesla's voluntary recall decision provide truly *new and previously undiscovered* evidence warranting leave to amend.   Instead, Plaintiffs have been intimately familiar with these facts since the outset of this litigation, or certainly no later than March 2022 when Plaintiff

---

[4] On November 1, 2023 – *after* this Court denied Plaintiffs' first Motion for Leave to Amend – the Parties jointly moved to amend the schedule.  Yet, Plaintiffs made no request to extend the deadline to amend the pleadings – which had expired a year prior.

[5] NHTSA acknowledges that Tesla does not agree with its findings in resolving the PE21-020 investigation.  *See* Ex. E - Part 573 Safety Recall Report at pg. 4.

Benavides moved to "stay" this case *because* of this investigation See (D.E. 24) – Plaintiff's Motion to Stay. At paragraphs 5-6 in Plaintiff's Motion to Stay, Plaintiff claimed the following:

> Per the "Summary Information" section of the investigation overview, NHTSA "will access the technology and methods used to monitor, assist, and enforce the driver's engagement with the dynamic driving task in autopilot operation . . . [and] will additionally assess the object and event detection and response ("OEDR') of vehicles when engaged in autopilot mode, and operational design demand in which the autopilot mode is functional." (Exhibit 1). On the NHTSA team is Mary Cummings, Plaintiff's former expert in this case, who had to withdraw once she was tapped for the federal investigation. Ostensibly, this investigation will reveal the existence, or lack thereof, of the defect in the autopilot system that led to the crash in the instant case." Yet, in their latest untimely Motion, Plaintiffs pretend that they only recently discovered the NHTSA investigation, its basis, the impact it may have on their case (now pending for years) such that a late amendment of this Complaints should be permitted.

*Id* at ¶¶5-6.

The NHTSA investigation and Tesla's voluntary recall address "the technologies and methods used to monitor, assist, and enforce the driver's engagement with the dynamic driving task during Autopilot operation."   Ex. F Department of Transportation ODI's Resume for PE21-020 at pg 1; *see also* Ex. E - Part 573 Safety Recall Report at pg. 3.  However, a common theme to the defect allegations already found in the Complaints filed by both Plaintiffs is – similarly –  the inadequacy of the "driver monitoring system" feature of Tesla's Autopilot system. *See* (D.E. 1)- Benavides Complaint filed in *April 2021*, at ¶ 23;  *see also*  Ex. G - Dillon Angulo

Complaint at ¶26.  Plaintiffs fail to explain how Tesla's voluntary recall reveals any "new" information since this Court denied their first Motion for Leave to Amend.[6] Further, the recall itself would not have changed anything about this crash so it is nothing more than a red herring.

Tesla denies Plaintiffs' defect allegations and the basis that Plaintiffs rely on to support them is also not "new" no matter how much Plaintiffs strain to paint them as "new."   Like they did in their first untimely Motion for Leave to Amend – Plaintiffs' "Background" in their second untimely Motion raises statements or facts in existence *well before the* October 28, 2022 deadline to amend.  *See* (D.E. 165) at pg. 1 (conceding Plaintiffs' knowledge of PE21-020 "from the outset of this lawsuit"); *see also id* at pg. 2 (alleging that Tesla was aware of the alleged defect *as of May, 2016*); *see also id* at pp. 5-6 (detailing a history of Tesla's alleged misrepresentations *occurring between 2015-2016*).   It is evident from Plaintiffs' Motion that the alleged facts forming the basis for their new allegations have existed *well before* the October 2022 deadline to amend pleadings.  Plaintiffs' claim that "… no amount of diligence on Plaintiffs' part could have discovered the recent NHTSA findings or Tesla's response to them …" ((D.E. 165) at pg. 8) is, to put it mildly, a

---

[6] Additionally, Tesla's general position about the investigation and the actual cause of Autopilot crashes – negligent and reckless conduct by Tesla drivers using Autopilot, despite Tesla's numerous and clear instructions about proper use of Autopilot and the potential consequences of misuse – has been publicly known since that time if not before then.  This has been part of Tesla's defense of this case and explanation about the tragic crash giving rise to this case since it Answered Plaintiff Benavides' Complaint. *See* (D.E. 3); *See also* Ex. B - Representative copy of Tesla's Owner's Manual at pp 80, 82, 89, and 102.  (advising driver to always watch the road in front of them and be prepared to corrective action at all times, even when Autopilot features are engaged).

canard.  As this Court recognized in its Order denying Plaintiffs' first untimely Motion for leave, Plaintiffs have failed to act with diligence. The same is true here. This Motion should be denied.

### B. Plaintiffs' Proposed Amendments are Futile Because The New Allegations Lack Merit

This Court should also deny the Motion because the amendments proposed by Plaintiffs are futile.  The thrust of Plaintiffs' Proposed Amended Complaint is the addition of several claims related to Tesla's alleged "fraud" and "misrepresentation" – not aimed at or involving them – but *against non-party George McGee*.  However, Plaintiffs lack standing to assert these claims, and their attempt to step into the shoes of McGee in order to assert claims on his behalf is improper and not permitted by law including Florida substantive law.

As this Court knows, to bring a cognizable claim in federal court, a plaintiff "must satisfy three requirements to have standing under Article III of the United States Constitution: (1) 'injury in fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (*quoting Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)). Specifically, "a plaintiff *cannot raise the claims of third parties*; cannot claim standing based on a generalized grievance; and must raise a claim within the zone of interest covered by a statutory conferral of standing." *Id.* (*citing*

*Cone Corp. v. Fla. Dep't of Transp.,* 921 F.2d 1190, 1203–10 (11th Cir. 1991) (emphasis added).   Plaintiffs' proposed new claims fail to meet these legal requirements. Instead, Plaintiffs' proposed new claims raise allegations of: (1) Negligent Misrepresentation *to consumers* of Tesla products (i.e. driver George McGee); (2) Fraudulent Misrepresentation *to George Brian McGee*; (3) Fraudulent Concealment *from "customers such as [George Brian] McGee;* and (4) Intentional False Advertisement t*o George Brian McGee. See* (D.E. 129) at Counts 4-7.

A closer analysis of the specific elements of each of Plaintiffs' new claims makes it clear that Plaintiffs hope this Court will allow them to improperly step into Mr. McGee's shoes to assert claims for which they do not have standing:

*<u>Negligent Misrepresentation</u>* (Count 4)

Under Florida law, claims of negligent misrepresentation require a showing that the injury resulted *from the plaintiff acting in justifiable reliance upon the misrepresentation. See Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1347 (M.D. Fla. 2010); citing *Baggett v. Electricians Local 915 Credit Union*, 620 So.2d 784, 786 (Fla. 2d DCA 1993) (emphasis added).  As the District Court of Appeal of Florida, Fourth District explained in *Hillcrest Pac. Corp. v. Yamamura*:

> The last element of a misrepresentation, in order that it may be the ground for any relief, affirmative or defensive, in equity or at law, is its materiality. The statement of facts of which it consists must not only **be relied upon as an inducement to some action, but it must also be so material to the interests of the party thus relying and**

> *acting upon it*, that he is pecuniarily prejudiced by its falsity, is placed in a worse position than he otherwise would have been.

727 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 4th 1999).

Here, Plaintiffs confusingly allege that *they* were injured because of their baseless claim about non-party McGee's reliance on unspecified statements made by Tesla. Plaintiffs do not allege that *they* acted in reliance on statements made by Tesla *to* them. This simply does not comport with the principles of negligent misrepresentation under Florida law.

<u>Intentional Misrepresentation</u> (Count 5)

Similar to negligent misrepresentation, intentional or fraudulent misrepresentation under Florida law requires – among other things – "consequent injury *by the party acting in reliance on the representation*." *Hearn v. Int'l Bus. Machs.*, 588 Fed.Appx. 954, 956–57 (11th Cir. 2014) (emphasis added). Plaintiffs again attempt to improperly step into the shoes of McGee to assert claims they do not have standing to make. *See* (D.E. 129) at pgs. 50-51 (alleging that Tesla made misrepresentations to *McGee*, and induced *McGee* into false sense of security about the capabilities of the Subject Vehicle).

It is worth emphasizing that Plaintiffs here entered no commercial transaction and had no commercial relationship with Tesla. Instead, they were pedestrians on the side of a road. Additionally, Tesla owes no duty to the Plaintiffs – members of

the general public – under Plaintiffs' allegations.  Under Florida law, "a defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud when there is a duty to disclose."  *TransPetrol, Ltd. v. Radulovic*, 764 So.2d 878, 880 (Fla. Dist. Ct. App. 4th 2000).  "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id* (quoting *State v. Mark Marks, P.A.*, 654 So.2d 1184, 1189 (Fla. Dist. Ct. App. 4th 1995).  Plaintiffs do not even allege that there was a fiduciary or other relationship of trust or confidence between them and Tesla nor do they allege that Tesla owed *Plaintiffs* any duty.  Consequently, Plaintiffs fail to state a cognizable claim for fraud under Florida law. Instead – Plaintiffs' allegations focus solely on Tesla's alleged representations to a third party.

### *Fraudulent Concealment* (Count 6)

In Count VI of their Proposed Amended Complaint, Plaintiffs allege that Tesla owed a duty to and withheld facts from *non-party George McGee*. *See* (D.E. 165-2) at ¶¶164-67.  Under Florida law, a plaintiff must establish the following to establish a *prima facie* case of fraudulent concealment:

> (1) the defendant concealed or failed to disclose a material fact;
> (2) the defendant knew or should have known the material fact should be disclosed;
> (3) the defendant knew his concealment of or failure to disclose the material fact would ***induce the plaintiffs to act***;
> (4) the ***defendant had a duty*** to disclose the material fact; and

(5) the ***plaintiffs*** detrimentally relied on the misinformation.

*See Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013) (internal citations omitted).

Through their own pleadings, Plaintiffs again fail to allege that Tesla owed *Plaintiffs* a duty to disclose such information *to them*. *See* (D.E. 165-2) at ¶¶162-67. Plaintiffs do not allege that Tesla made statements *to the Plaintiffs*, or that Tesla *induced the Plaintiffs* to do something that caused their injuries. *See id.* Instead, Plaintiffs again attempt to assert claims on behalf of non-party McGee. *See id.* Such allegations do not properly state a cause of action for fraudulent concealment under Florida law.[7]

### *Intentional False Advertising Under Fla Stat §817.44* (Count 7)

Plaintiffs' allegations about intentional false advertising under Fla. Stat. Florida Statute §817.44 also fail to state a cause of action.   Section 817.44 specifically prohibits:

> Offer[ing] for sale or to issue invitations for offers for the sale of any property . . . or any services . . .  by placing or causing to be placed . . . an advertisement describing such

---

[7] Plaintiffs' newly proposed Fraud and Misrepresentation claims also do not comply with FRCP 9(b).  "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (emphasis added). This heightened pleading requirement applies to actions for negligent misrepresentation brought pursuant to Florida law. *Linville v. Ginn Real Estate Co.*, 697 F.Supp.2d 1302, 1306 (M.D. Fla. 2010). To satisfy Rule 9(b), a complaint must allege facts regarding the "time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). In short, Plaintiffs' generalized allegations fail to address each of these specificity requirements.

> property or services as part of a plan or scheme with the
> intent not to sell such property or services so advertised,
> or with the intent not to sell such property or services at
> the price at which it was represented in the
> advertisement…

Fla. Stat. Ann. §817.44.

Plaintiffs do not allege that Tesla advertised the Model S to them or anyone

else (1) with the intent not to sell it; or (2) with the intent to sell it at a price other

than as advertised. *See* (D.E. 165-2) at ¶¶169-171.  Courts have strictly construed

the applicability of this statute to only prohibit the advertisement of sale *where the*

*advertiser has no intent to sell, or has no intent to sell at the advertised price*. *See*

*Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 497 (Fla. Dist. Ct.

App. 4th 2001) (dismissing Section 817.44 claim where Plaintiffs' allegations of

*misleading* advertising did not bear any relationship to advertising *with no intent to*

*sell or sell for the advertised price*).   Therefore, Plaintiffs' new Count of Intentional

False Advertising in Violation of Florida Statutes §§ 817.40 and 817.44 similarly

fails to state a cause of action upon which relief may be based in this case.

Further, it is clear from the deposition testimony of Tesla purchaser and driver

Mr. McGee obtained *a year and a half ago* that he was <u>not</u> influenced by any

statements made by Tesla or Elon Musk in purchasing or operating his Model S:

> Q. Did you pay attention to anything that [Mr. Musk] said
> or did about his -- specifically about the Tesla before you
> bought it?

A.   **No, sir . . .** I don't really like the politics part of it, so kind of stayed away from him and everybody on the other side

    *    *    *

Okay.· How about in interviews or articles that you've read or anything like that where Mr. Musk himself would say things or -- or, you know, release statements about the autopilot and  features?

A.· ·**No, sir.· Again, I don't know if I've ever heard him speak,** believe it or not, other than I watched the introduction of the sports car and the semi truck.· He spoke of those, but I kind of stay out of it.

Q.· ·**All right.· So that had no affect on your purchasing of the vehicle?**

A.· ·**No sir.· No, sir.**

Q.· ·**Or the use of the vehicle?**

A.· ·**No, sir.**

    *    *    *

Q.  **Before you made your decision to buy the vehicle, did you go to a Tesla store, talk to a sales representative, sales consultant?**

A.  No, sir.

Q.  **Did you go to a Tesla store and test drive one?**

A.  No, sir.

Q.  **Did you contact Tesla in California and make any request for information?**

A.  No, sir.

Ex. H - Deposition of McGee at 233:12-18; 233:22-234:12; and 28:20-29:5

(emphasis added).   Plaintiffs' new allegations are at odds with the facts of this case.[8]

As Mr. McGee further testified, he fully understood that his Model S would not

independently stop for stop signs or other traffic control devices:

---

[8] Additionally, Guillermo Benavides – Decedent's father – recently testified that he had never read or heard any statements *from Tesla or Mr. Musk* about Tesla vehicles or Autopilot prior to the crash. *See* Ex. I - Deposition of Guillermo Benavides at 36:13-39:3.

A.  I wasn't aware of kind of how far along they were, but **I was certainly aware that they couldn't do the complete traffic** -- I don't the terminology [*sic*], but I wasn't looking for stoplights and things.  I just -- again, I don't think – I suspecting. I don't recall.· **But I don't think I really assumed that it would stop at stop signs and stoplights and those sorts of things, no.**

Q. **Before the crash occurred, you knew that was your job to detect and react properly to a stop sign or red flashing light, correct?**
A. **Yes.**
Q. **Was not the car's job, right?**
A. **Yes.**
Q. **Wasn't Tesla's job; it was your job?**
A. **Yes, sir.**

Ex. H - Deposition of George Brian McGee at 112:18-113:15 (emphasis added).

Consequently, even if Plaintiffs had standing to assert their new claims, there is no factual basis to support the elements of these claims, and they would be dismissible as a matter of law.  *See* Fed. R. Civ. P. 56(a).

Even if these Plaintiffs had a legal basis to make claims of fraud, misrepresentation or false advertising – which they clearly do not have on the record of this case -- nothing stopped them from raising those claims in a timely way. And nothing about the elements of those claims depends upon information found only in the now resolved NHTSA investigation or Tesla's decision to conduct a voluntary recall.

*Plaintiffs Fail to Satisfy the Extremely High Degree of Culpability Required by Florida Law to Render Punitive Damages Appropriate*

18

In 1999, the Florida Legislature amended section 768.72 to codify the Florida's stringenttest for punitive damages and to "raise the common law standard of culpability required to hold the defendant liable for punitive damages." Fla. H.R. Comm. on Judiciary, Final Analysis, H.B. 775, Ch. 99-225, at 17. The Legislature recognized punitive damages are not intended to compensate an injured plaintiff for damages suffered, but instead represent a windfall to that plaintiff.  In order to be entitled to an award of punitive damages, the complaining party must show the defendant was guilty of intentional misconduct or gross negligence, which are defined as follows:

> (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

> (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

§ 768.72(2) (a) and (b), Fla. Stat.

"Intentional misconduct" reflects the repeated statements by the Florida Supreme Court prior to the statute that the defendant's acts must be in the nature of intentional conduct, similar to manslaughter:

> The character of negligence necessarily to sustain an award of punitive damages must be of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of the persons exposed to its

dangerous effects, or there is that entire want of care which would raise the presumption of conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

*White Constr. Co. v. Dupont,* 455 So. 2d 1026, 1028-29 (Fla. 1984), *receded from on other grounds by Murphy v. Int'l Robotics Sys., Inc.,* 766 So. 2d 1010, 1027-31 (Fla. 2000) (citations omitted). *See Valladares,* 197 So. 3d at 11 ("this Court has recognized that the required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter"). "[P]unitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights and safety of others." *Owens-Corning Fiberglas Corp. v. Ballard,* 749 So. 2d 483,486 (Fla. 1999); *see also Am. Cyanamid Co. v. Roy,* 498 So. 2d 859, 861 (Fla. 1986) (finding punitive damages are only proper where the defendants conduct "enters the realm of wanton intentionality, exaggerated recklessness, or such an extreme degree of negligence as to parallel an intentional and reprehensible act"). Similarly, "gross negligence" as defined by statute is consistent with the established law subjecting defendants to liability for acts "evincing reckless disregard of human life . .. or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or

which shows wantonness or recklessness . . . . " *White Constr. Co.,* 455 So. 2d at 1029.

In cases involving an alleged automobile product defect, the Florida Supreme Court has rigorously applied this stringent standard to strike down punitive damages claims. For example, in *Chrysler Corp. v. Wolmer,* 499 So. 2d 823, 825 (Fla. 1986), the court noted that in order for a plaintiff to recover punitive damages, the plaintiff must prove that, by designing and marketing the particular vehicle, the defendant "exhibited a reckless disregard for human life equivalent to manslaughter." The court found that although the manufacturer had knowledge of testing in which there was fuel leakage, it did not have actual knowledge that it was marketing a product that was inherently dangerous. *Id.* at 826. Additionally, the evidence was uncontroverted that the defendant tested its product and that the fuel system in the vehicle satisfied performance standards in its compliance testing. *Id.* As such, the court held that the punitive damages claim should not have been submitted to the jury. *Id.; see also Jeep Corp. v. Walker,* 528 So. 2d 1203, 1206 (Fla. 4th DCA 1988) (absent evidence that "Jeep was deliberately attempting to maim or kill [the plaintiff]," there was an insufficient basis upon which to award punitive damages).

In short, Plaintiffs' request to amend their Complaints to add a request for punitive damages fundamentally fails to meet the high burden imposed on them under Florida statute and their untimely request to add punitive damages should be

denied. First, Plaintiffs fail to even cite the applicable legal standard that applies to punitive damages under Florida law; § 768.72(2) (a) and (b), Fla. Stat. Instead, Plaintiffs cite Georgia law to support their request. Plaintiffs rely on *Wasdin v. Cheetah Transp., LLC*, 5:05 CV 340 DF, 2006 WL 3534969 (M.D. Ga. Dec. 7, 2006), interpreting Georgia's law related to punitive damages (O.C.G.A. § 51-12-5.1) to support their argument that leave to amend to include a claim for punitive damages is appropriate. Nothing in Plaintiffs' Motion related to their generalized request to add punitive damages to this case comes even remotely close to alleging that Tesla engaged in intentional conduct, similar to criminal manslaughter as required by Florida law.[9]

## C.   Plaintiffs' Amendment – if Permitted, Would Prejudice Tesla and Needlessly Consume Resources of the Parties and this Court

Permitting Plaintiffs to amend their complaint two and a half years after litigation arising out of the Subject Crash began would prejudice Tesla in several ways.  First, it would reward Plaintiffs, who have sought to delay this litigation for multiple years – causing Tesla to expend additional money to defend itself.  Notably, Plaintiff Neima Benavides routinely ignored Tesla's efforts to conduct discovery about her lawsuit over the span of an entire year.  (*See* D.E. 68)- Motion to Enforce

---

[9] Plaintiffs' reference to an Order allowing amendment to add punitive damages in the unrelated case, *Banner v. Tesla,* (15th Judicial Circuit, Palm Beach County, Florida, Case 2019-CA-009962) also fails to support their untimely and otherwise naked request to add punitive damage here. Plaintiffs are correct that the Order from the State Court in *Banner* is currently on appeal, further indicia that the Order has no binding effect on this Court and nothing about that Order or the *Banner* case support addition of punitive damages here.

Order Regarding Plaintiffs' Discovery Responses. Both Plaintiffs have already sought at least one continuance each in this litigation, and Neima Benavides moved unsuccessfully to stay litigation, pending the conclusion of NHTSA's Preliminary Evaluation 21-020. *See* (D.E. 39)- Order Denying Plaintiffs' Motion to Stay. Suffice it to say that several delays caused by the Plaintiffs have been costly and detrimental to Tesla and its defense. Nevertheless, as Tesla has stated repeatedly in this case, the underlying facts of this case have not changed through nearly three years of discovery. Autopilot was overridden at the time of the crash due to McGee's manual operation of the car. Further, McGee has *admitted from the start* that he was distracted from driving by dropping his phone in the seconds leading up to the crash. *See* Ex. D- Transcript of Audio Recording from Body, Dash, and Rear Seat Interior Cameras from Monroe County Sheriff at 2:12-14, 4:6-19. In his own words and contrary to Plaintiffs' claims – George McGee testified that (1) he understood he was responsible for operating the Subject Vehicle at the time of the crash; and (2) he was under no impression – at the time of the crash– that the vehicle would stop for traffic devices. Ex. H - Deposition of George Brian McGee at 93:6-20, 112:18-113:15.

Second, Permitting Plaintiffs to file their Proposed Amended Complaints would force Tesla to expend even more money defending itself against claims that should be dismissed on the pleadings because Plaintiffs' new allegations fail to assert

legally cognizable claims.  Indeed, as this Court is well aware, Plaintiffs first Motion for leave to amend was denied for failing to introduce "any newly discovered information that justified the new claims set forth in the proposed complaint, " and failing to excuse their *eleven month* delay in complying with the deadline to amend pleadings  (D.E. 143) at pg. 5.  Tesla is now forced to expend time and resources to oppose a nearly identical motion.

Plaintiffs' attempt to add a new dimension to their lawsuit after years of litigation have occurred will add unnecessary expense to this Court and to Tesla and cause unfair prejudice to Tesla's ability to prepare for trial in the face of rapidly approaching deadlines.   Plaintiffs incorrectly state: "Tesla currently has more time following a motion to amend to prepare a defense regarding all of Plaintiffs' proposed new claims than at any other stage of this litigation. Experts have yet to be named, fact witness depositions are being scheduled but most have not occurred, and written discovery is ongoing." While it is correct that this Court recently extended the schedule in this case largely to accommodate Plaintiffs' Counsel's conflicts with the prior trial date of June 2024, Plaintiffs' incorrect and self-serving statement ignores the realities of this case as currently scheduled and the unfair prejudice to Tesla raised by their untimely request.

Under the current schedule, expert discovery is about to start with expert reports due on March 8, 2024 and expert discovery required to be completed by April

5, 2024. Given these fast-approaching deadlines for critical evidence and witness disclosures, the unfair prejudice to Tesla resulting from late addition of multiple new claims and a request for punitive damages should be obvious. At a minimum, Counsel for Tesla and Tesla would be required to scramble to add witnesses, including experts, not contemplated before now and those experts would need to be retained and exposed to a substantial amount of technical information to allow them submit reports compliant with FRCP 26 in less than 60 days. There is simply no reason to subject Tesla to this unfair prejudice given the history of Plaintiffs' lack of diligence, despite prior knowledge, and the futile nature of Plaintiffs' proposed claims. Consequently, to advance judicial economy and serve the interests of justice, this Court can and should DENY Plaintiffs' Motion for Leave to Amend their Complaint.

## <u>CONCLUSION</u>

WHEREFORE, Defendant Tesla, Inc. respectfully requests that this Court enter an Order DENYING Plaintiffs' Joint Motion in its entirety.

Date: January 12, 2024.

Respectfully submitted,

By: _/s/ *Henry Salas*_____
    HENRY SALAS (815268)
    COLE SCOTT & KISSANE
    9150 S Dadeland Boulevard, Suite 1400
    Miami, FL 33156-7855
    Office: 786.268.6419
    Fax: 305.373.2294

25

| | henry.salas@csklegal.com |
|---|---|
| - and – | |

THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
BOWMAN AND BROOKE LLP
101 West Big Beaver Road, Suite 1100
Troy, MI 48084
Office: 248.205.3300
Fax: 248.205.3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com
***Attorneys for Defendant TESLA, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on January 12th, 2024, I electronically file the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

ADAM T. BOUMEL, ESQ.
Florida Bar No.: 0110727
DARREN J. ROUSSO, ESQ.
Florida Bar No.: 97410
THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway, Suite 1520
Miami, FL 33156
305.670.6669 Tel
adam@roussolawfirm.com
SERVICE EMAILS:
pleadings@roussolawfirm.com
(primary)
Frank@roussolawfirm.com
(secondary)
***Attorneys for Plaintiff Dillon Angulo***

TODD POSES, ESQ.
Florida Bar No.: 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, Florida 33131
305.577.0200 Tel
305.371.3550 Fax
tposes@posesandposes.com
maria@posesandposes.com
***Attorneys for Plaintiff Neima Benavides***

Respectfully submitted,

By:  _/s/ *Henry Salas*_____

27