UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-21940-BLOOM/Otazo-Reyes**

NEIMA BENAVIDES, *as Personal Representative of the Estate of Naibel Benavides Leon, deceased*,

    Plaintiff,

v.

TESLA, INC., *a/k/a Tesla Florida, Inc.*,

    Defendant.
_____/

**Case No. 22-cv-22607-BLOOM**

DILLON ANGULO,

    Plaintiff,

v.

TESLA, INC., *a/k/a Tesla Florida, Inc.*,

    Defendant.
_____/

**PLAINTIFFS' SUPPLEMENTAL PROFFER REGARDING CONTINUING DISCOVERY ISSUES IN SUPPORT OF
THE PARTIES' JOINT MOTION TO EXTEND DISCOVERY DEADLINES (D.E. 175)**

Plaintiffs, jointly through their undersigned counsel, hereby provide this supplementary proffer of the continuing discovery issues faced by Plaintiffs, in support of the Parties' Joint Motion to Extend Discovery Deadlines (D.E. 175), as follows:

**I.    Summary of Proffer**

On January 18, 2024, the Parties, collectively, submitted the Joint Motion to Extend Discovery Deadlines. In that Motion, the parties explained that, despite diligent efforts on all sides

to complete discovery, additional discovery time was needed. And indeed, when that Motion was submitted, the Parties had been working together diligently and cooperatively on discovery issues. In fact, every Friday so far this year, the parties have met and conferred to coordinate discovery.

Unfortunately, in the Parties' most recent meet and confer conducted on Friday, January 26, 2024, much of the progress that the Parties were able to achieve was substantially set back when Defendant Tesla advised that it would no longer be producing critically important materials which it previously agreed to produce and has left Plaintiffs confused about Tesla's wiliness to provide other critically important data.

Moreover, in response to Plaintiffs' 30(b)(6) Notice of Taking Deposition of Tesla's Designated Corporate Representative(s), Tesla responded by objecting in full to at least seven (7) of the areas of inquiry, and indicating that Tesla would not answer any questions related to the critical areas of Autopilot use restrictions ("geofencing') and issues concerning Beta testing of Autopilot by its customers, which discovery (and NHTSA's recent recall) have shown were both directly at issue in this case.

While Plaintiffs are currently adhering to the proper procedures to seek intervention from the Honorable Magistrate in charge of addressing discovery matters, because these developing issues are creating hardships for Plaintiffs and delaying the progression of discovery, Plaintiffs bring this issue before this Honorable Court because these matters bear directly on the parties pending Motion to Extend Discovery Deadlines.

## II.   Tesla's recent revocation of prior agreement to provide the Subject Vehicle's data for this crash

To understand the most recent back-and-forth, its history most clearly tells the story.

Tesla's Car Log data:

Tesla vehicles are unique in that they continuously record data from thousands of signals

in increments of a thousandth of a second. These signals recorded all manner of information, from the mundane (radio settings) to the critical (speed of travel, percent application of accelerator, obstacle detection, etc.). The information was written to an SD card located behind the Media Control Unit (MCU) and periodically uploaded to Tesla's cloud servers for use by the company. After this event, Tesla then picked data from certain signals and compiled "car log files" or simply "Log Files". These comprise time-stamped data gleaned from sensors, devices, microprocessors and associated systems throughout the vehicle. Tesla has reported that there are more than two thousand different types of data that can be recorded.

Tesla vehicles also record video images from the cameras the vehicle uses to navigate roads and video imagery of how the vehicle processes the images – in other words, animated video showing exactly how the vehicle responded to its environment and how it translated that environment into the vehicle's "decision-making" process. Combined, the data from the vehicle's signals along with the images from the cameras can create a very accurate re-enactment of a crash. This video evidence along with the Log File data are part of the discovery dispute at issue and will be discussed further below.

### The Data Tesla Possesses

Upon a request from an owner, or in this case, a party to a lawsuit, Tesla will send some video and a subset of the data in a .csv or .xlsx data spreadsheet format, the "Car Logs". Tesla produces different versions of these Car Logs depending on the nature of the incident. So far in this case Tesla alone has chosen what data it would disclose. Arguably, all the data related to the operation of the subject vehicle, its steering, braking, acceleration, Autopilot status, etc., should have been included in Tesla's initial Rule 26 disclosures in this case. Nevertheless, Plaintiffs specifically asked for this data, all of it, including a complete Log File, an index of log signals,

and much more on **March 14, 2023**. [See Exhibit 1: Plaintiffs' Requests for Production, Set 2, Nos. 1, 7 and 8] In that set of discovery Plaintiffs specifically asked for:

> **REQUEST NUMBER 1:** Produce all DOCUMENTS and ESI data contained in any TESLA DATA STORAGE SYSTEM or in the SUBJECT VEHICLE regarding the operation of the SUBJECT VEHICLE including the SUBJECT SYSTEM within ten minutes of the SUBJECT INCIDENT, including, but not limited to, telemetry data transmitted from the vehicle to TESLA servers either in real-time or on a periodic basis, or due to an event, such a crash or airbag deployment, as well as video and still-frame camera images, continuously recorded signals and alerts, Log files or CarLog files, D-16 Reports, text logs stored within the Media Control Unit, images from any in-cabin driver-facing camera, data and images recorded in the Restraint Control Module, Toolbox 3 Diagnostic data, and all other data the SUBJECT VEHICLE recorded or transmitted.
>
> **REQUEST NUMBER 7:** All CarLog data regarding the SUBJECT VEHICLE within 10 minutes of the SUBJECT INCIDENT in both native format (.hex, .dat, .acq, .cfg, .tsv, and .txt files) and converted to engineering units.
>
> **REQUEST NUMBER 8:** A full and complete glossary or index (including any related Confluence pages) defining and/or explaining the column headings and log signals in the CarLog data.

Tesla produced some of the video on March 9, 2023. However, helpful as it might be, this video alone is a small fraction of the data available. Tesla did not produce a Car Log file of any kind until June 7, 2023, when it produced three versions. [Exhibits 2, 3, and 4: BENAVIDES-00000001, 2, and 3][1]. Each spreadsheet is made up of columns with headings referring to data from one of the over 2,000 signals available to Tesla. While each version of these Car Log spreadsheets contains the vehicle identification number and a time stamp, the rest of the columns differ somewhat. The rows reflect events, with each row representing roughly a thousandth of a second change in time.

The Log Files Tesla produced in this case range from 19 columns to 94 columns. However, the Log File containing 94 columns of data [Exhibit 3, BENAVIDES-00000002] included 4

---

[1] Because these documents are covered by a confidentiality order, Plaintiff will produce these documents for the Court to review in camera or file them under seal should the Court so request.

columns related to the passenger doors (no passenger was present), at least 5 columns related to the car's key fob, at least 14 columns related to the air conditioner, 4 columns related to radio usage statistics, and numerous other sets of data that have nothing to do with this case. [*Id.*]

Narrowed down, all three Log Files combined only provide about 30 useful columns of information relevant to this event. Again, this is a tiny subset of the over 2,000 signals available to Tesla. Instead of providing the entire catalog of available data from these signals, Tesla filters the information placed into the Car Log file with no oversight or input from Plaintiffs or an independent source to ensure Tesla's compliance with discovery rules. While most of the 2,000 signals provide truly irrelevant data, such as referenced above, hundreds of signals report data that may be critical to understanding what happened in this crash.

Following Tesla's production of these first three Log Files, Plaintiffs continued to press Tesla to produce a more thorough spreadsheet containing more relevant data. On August 11, 2023, Tesla produced a fourth Log File containing 30 columns of data [Exhibit 5: BENAVIDES-00000006][2], providing basically the same data that had been produced earlier. None of these Log Files contained more than around 24 hours of data, and others as little as one hour 13 minutes.

**A Glossary of Signals**

Throughout this time, Tesla maintained that no discovery existed relevant to Plaintiffs' Request for Production Number 8, for a "full and complete glossary or index (including any related Confluence pages) defining and/or explaining the column headings and log signals in the Car Log data." [See Exhibit 1]. Tesla's response to this request on May 4, 2023, included the following: "Subject to and notwithstanding these objections, Tesla searched for and did not locate a "full and complete glossary or index...defining and/or explaining the column headings and log signals in the

---

[2] Because this document is covered by a confidentiality order, Plaintiff will produce this documents for the Court to review in camera or file it under seal should the Court so request.

CarLog data" **because none exists**." [See Exhibit 6, p. 7, emphasis added] While curious, this response came as no surprise to Plaintiffs, who at that time had no knowledge to the contrary. In fact, a Tesla corporate representative had testified as such in another case involving some of Plaintiffs' lawyers in April of 2022.[3]

However, over the summer of 2023, some of Plaintiffs' counsel became aware of a document produced in another lawsuit involving Tesla: a partial document which appeared to be a catalog of signals that Tesla had said didn't exist in their response to Request Number 8 referenced above. [Exhibit 6]. Once Plaintiffs revealed the existence of the document, Tesla refused to allow Plaintiffs to use that document in this case to request specific Car Log data from that catalog of signals because the document was subject to a Protective Order in the other lawsuit.

Consequently, Plaintiffs served their Request Number 12 on August 15, 2023, [Exhibit 8] which asked Tesla to:

> Produce a copy of the complete unredacted Confluence DOCUMENT represented by Bates No. TESLA-00093134 produced in *Huang v Tesla,* Case Number 19CV346663, in the Superior Court of the State of California, County of Santa Clara, (Huang), Note that TESLA-00093134 is only a partial document, and that this REQUEST is for the complete OCR'd document.

---

[3] In *Hsu v. Tesla*, Superior Court of the State of California, County of Los Angeles, Case No. 20STCV18473, Tesla provided the Declaration of Eloy Rubio Blanco in Support of Tesla's Opposition to Plaintiff's Motion to Compel Further Response to Request for production of Documents (Set One), and Plaintiff's Motion to Compel Further Response to Special Interrogatory, Set One, filed April 8, 2022 (Exhibit 6). In this Declaration, Elio Rubio Blanco testified:
"[T]here is no script to automatically translate the signals selected in this case. I am not aware of a list that exists with this information in it, i.e., some "dictionary" that translates all the signals or explains their parameters, etc." (Blanco Decl. ¶ 9) "The raw Carlog data generally retrieved from a vehicle can include more than 2,000 signals and alerts, and includes a broad and varied set of data as these signals are recording data every second or even several times per second." (Blanco Decl. 11) "I am [] not aware of a list that describes what each of the data signals mean. I, however, am aware, from my experience as a Tesla engineer, what these abbreviations mean." (Blanco Decl. 12.) **"Tesla does not maintain some comprehensive list or current dictionary of signals."** (Blanco Decl. 14)" (emphasis added) [see Exhibit 7].

On October 25, 2023, Tesla produced BENAVIDES-00001244, [Exhibit 9][4] a partial list of about 1,700 of the 2,000 signals Tesla has testified are available to produce data to determine with great precision what the vehicle was doing at any given second. This is the sort of document which Tesla told Plaintiffs did not exist and which Tesla's corporate representative previously testified did not exist. [Exhibits 6 and 7] On January 10, 2024, after combing the over 1,700 individual (and often cryptic) signals, Plaintiffs requested a Log File covering the final drive cycle of the vehicle containing data from several hundred of these signals that seemed relevant, at least as relevant as the AM Radio Statistics data Tesla had provided in BENAVIDES-00000002. [See Exhibit 10, Plaintiffs' Requests for Production, Set 6, Request Number 52 at column BV]. Subsequently, on January 22, 2023, Plaintiffs complied with Tesla's request to simplify Plaintiffs' query by naming broad categories of signals, rather than the individual signals. [See Exhibit 11, Plaintiffs' Requests for Production, Set 7, Request Number 53]. Later, on January 26, 2023, Tesla said it would not produce such a Log File because such a file does not exist and Tesla would have to create one, which Tesla claims would be overburdensome. [See Exhibit 16: emailed confirmation of meet and confer on January 26, 2024]

### A "Customer Friendly" Car Log

The "Customer Friendly" Car Log is a compilation of approximately 20-40 of the most basic data that shows only a few aspects of the vehicle's and driver's behavior. In an effort to clarify both what happened in this event, and to understand how the subject Tesla vehicle owner had previously used his vehicle and developed trust in its Advanced Driver Assist Systems, Plaintiffs requested that Tesla produce the Customer Friendly Log File for the lifetime history of the vehicle from its purchase date, which was only approximately four (4) months prior to this

---

[4] Because this document is covered by a confidentiality order, Plaintiff will produce this documents for the Court to review in camera or file it under seal should the Court so request.

Page **7** of **16**

collision. The far more detailed Log File discussed above was for the last drive cycle ending in the crash at issue.

III. **Tesla's recent revocation of agreement to provide "Customer Friendly" car log data for the approximately four (4) months prior to the collision**

**Procedural history of requests and the Parties' attempts to confer on the issue:**

Again, arguably, all factual data relevant to this event should have been produced in Tesla's initial Rule 26 disclosure. However, over time, Plaintiffs' awareness of Tesla's data and Tesla's capacity to collect and store the data has increased. Plaintiffs have sought different sets of data as the need for them has become more apparent.

Accordingly, Plaintiffs requested the full history of the "Customer Friendly" data on November 16, 2023 [Exhibit 12, Plaintiffs' Request for Production, Set 5, No. 31]. This data would show how the Tesla owner came to trust Tesla's Autopilot enough to take his eyes off the road immediately prior to the crash. The following transpired:

- On January 3, 2024, Tesla responded to the Request by indicating that it would produce "the data that the vehicle owner – Mr. McGee – could obtain himself were he to submit a data request via his Tesla account." [See Exhibit 13: Tesla's Response to Plaintiff's Request for Production, Set 5].
- In a meet and confer on January 12, 2024, Plaintiffs' counsel asked when the log would be produced.  Counsel for Tesla indicated that he would check with his client and get back to Plaintiffs' counsel [See Exhibit 14, emailed confirmation of meet and confer on January 12, 2024].
- In a meet and confer on January 19, 2024, Plaintiffs again inquired as to when the log would be produced.  Tesla's counsel again indicated that he would check with his client and get back to Plaintiffs' counsel [See Exhibit 15, emailed confirmation of meet and confer on January 19, 2024].
- On Friday, January 26, 2024, the Parties conducted another meet and confer in which counsel for Tesla advised that Tesla would not agree to produce the Customer Friendly Car Log from

Page **8** of **16**

the date of the subject vehicle's purchase. Like the issue with the more detailed Log File, discussed above, and the Annotated Video, discussed below, counsel for Tesla stated that their position was because the Customer Friendly Car Log does not exist for the requested time frame. When Plaintiffs inquired as to whether there was a time frame that Tesla *did* have and/or would agree to produce, Tesla's counsel was unable to provide any information on the issue. [See Exhibit 16: emailed confirmation of meet and confer on January 26, 2024]. Plaintiffs are confused and awaiting clarification from Tesla to understand exactly what Tesla does have and what they will willingly produce. However, limiting the scope of production based on what the customer could obtain is non-responsive and the continued failure to inform Plaintiffs as to exactly what Tesla is willing to produce is further evidence of needless delay.

**Affidavit from expert Missy Cummings attesting to the need for the historical car log data:**

The request for the historical car log data was derived from one of Plaintiffs' experts, Dr. Missy Cummings. Notably, Dr. Cummings has served as an expert in other Tesla Autopilot cases. In the affidavit [Exhibit 17], Dr. Cummings attests to the fact that (1) she requests the historical car log data to help fully develop her opinions, and (2) that she knows that such historical car log exists because it has been produced by Tesla in other cases in which Dr. Cummings is an expert.

**IV.   Tesla's revocation of prior agreement to provide the Annotated Video for this crash**

**Summary of what an Annotated Video is:**

The Annotated Video is important evidence comprised of dash cam footage from the Tesla overlaid with information from the vehicle's recorded data. This results in a video that shows what the subject vehicle was processing, and the actions it took as a result, in real time during the moments leading to the crash. Again, arguably, this extremely relevant, factual information, that only Tesla possesses, and should have been provided in Tesla's initial disclosures. This data was certainly relevant to the list of data requested by Plaintiffs on March 14, 2023, in their Request for Production, Set 2, Request Number 1. [Exhibit 1]. The fact that Plaintiffs didn't know that Tesla called this piece of evidence an "Annotated Video" until late fall of 2023 in no way obviates

Page **9** of **16**

Tesla's duty to disclose it.

<u>Procedural history of requests and the Parties' attempts to confer on the issue:</u>

- Despite having fully requested all video components in March of 2023, Plaintiffs again requested this information on November 16, 2023 [Exhibit 12, Request No. 35].
- On January 3, 2024, Tesla responded to the Request by objecting on the basis that the request was "overly broad and not proportionate to the needs of the case". [Exhibit 13]
- On Friday, January 12, 2024, the Parties engaged in a meet and confer, wherein Tesla indicated that it would only agree to the production if a more narrowed time frame was established. Plaintiffs had requested ten (10) minutes leading up to and including the subject collision. Tesla indicated that five (5) minutes was a more appropriate time frame to which it would agree. [Exhibit 14]
- On Monday, January 15, 2024, the Plaintiffs' counsel emailed counsel for Tesla, summarizing all the various agreements that were reached in the meet and confer, and indicating that Plaintiffs would agree to the five (5) minutes of Annotated Video suggested by Tesla, without prejudice for Plaintiffs to ask for more if needed. [See Exhibit 14: emailed confirmation of meet and confer on January 15, 2024 (the section relevant to this Motion is highlighted in yellow for convenience)].
- On Friday, January 19, 2024, the Parties again conducted a lengthy meet and confer, wherein the Parties agreed on Plaintiffs' proposal that the initial production would be for five (5) minutes of the Annotated Video, with no prejudice to Plaintiffs seeking more at a later time. [See Exhibit 15]
- On Monday, January 22, 2024, the undersigned counsel again emailed counsel for Tesla to memorialize the various agreements reached. With respect to the Annotated Video, it was noted that "[w]e have mutually agreed to an initial production of 5 minutes leading up to and including our crash, without prejudice to our requesting additional time if needed". [Exhibit 15] That same day, January 22, 2024, counsel for Tesla replied confirming the accuracy of the agreement that was made.
- On Friday, January 26, 2024, the Parties conducted another meet and confer in which counsel for Tesla advised for the first time that Tesla would not longer be agreeing to produce the Annotated Video. [Exhibit 16] Counsel for Tesla stated that the change in position was because

"the Annotated Video does not currently exist". Implicit in this representation is an understanding that the Annotated Video must be created (perhaps with the push of a few buttons) by Tesla's proprietary software, and that Tesla is no longer agreeing to create this despite being in sole possession of the software and data needed to do so and having already agreed to do so.

**Affidavit from expert Missy Cummings attesting to the need for the Annotated Video and Tesla's production of such Annotated Videos in other pending Autopilot cases:**

The request for the Annotated Video was derived from one of Plaintiffs' experts, Dr. Missy Cummings. In her affidavit [Exhibit 17] Dr. Cummings attests to the fact that (1) she wants the Annotated Video to help fully develop her opinions, and (2) that she knows that such Annotated Video exists because it has been produced by Tesla in other cases in which Dr. Cummings is an expert.

**V.    Tesla's continued delay in producing all materials, including those which have been court-ordered**

Throughout the pendency of this action, almost every time Tesla has indicated its willingness to produce materials, the production comes weeks if not months after Tesla's official responses are filed. This delay is exemplified by the fact that on November 15, 2023, Tesla was ordered by this Honorable Court to produce "all of the documents containing the underlying data supporting the Tesla Vehicle Safety Report issued from October 2018 through the second quarter of 2019". [See D.E. 154] When Plaintiffs followed up in a meet and confer on January 12, 2024, Tesla indicated that such documents would be produced no later than the week ending January 19, 2024. Tesla delivered 323 documents on January 29, 2024. Again, Plaintiffs use this only as an example, as the root issue is Tesla's delay at almost every opportunity in producing relevant and responsive documents. All this is not to blame Tesla's counsel, who we believe have worked professionally and in good faith.

**VI.   Tesla's broad objections to providing corporate representative testimony on clearly**

**relevant issues**

In recent weeks, the Parties have conferred on Plaintiffs' request that Tesla produce one or more Rule 30(b)(6) corporate representatives to testify regarding a host of different subjects at issue in this case. Tesla has objected to numerous areas of inquiry and refuses to produce a witness to testify regarding subjects involving the restriction of Autopilot to certain areas ("geofencing"), or to the fact that the subject vehicle's Autopilot system was in Beta. Tesla claims these subject matters fall outside of claims alleged in Plaintiffs' Complaints.

In a case such as this, which was filed in Florida state court and removed on diversity grounds, "[t]o determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334, 23 Fla. L. Weekly Fed. C 619 (11th Cir. 2011). Therefore, Florida Rules of Civil Procedure Rule 1.110(b) provides the standards applicable to this case. And Florida Rule of Civil Procedure 1.110(b) "requires only "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief[.]"" *Solar Eclipse Inv. Fund VII v. T-Mobile U.S., Inc.*, 20-25257-Civ-GAYLES/TORRES (S.D. Fla. Feb 16, 2021).

Plaintiffs meet this standard regarding claims alleging the defectiveness of any aspect Tesla's Autopilot system. The National Highway Traffic Safety Administration [NHTSA] recently issued NHTSA's Part 573 Safety Recall Report 23V-838. [Exhibit 18] In this Report, NHTSA described the defect at issue as involving components of Tesla's Autopilot system regardless of Model, Model Year, software, or hardware version. [Exhibit 18, p. 3] Plaintiffs' pleadings more than satisfy Rule 1.110(b).

The Angulo Complaint [Exhibit 19] contains the following (emphasis added):

**COUNT 1 – STRICT PRODUCTS LIABILITY (Negligent design)**

23. At all material times, **Tesla knew that consumers would use and drive their vehicles as the driver Mr. McGee did on April 25, 2019. Tesla manufactured, designed, assembled, tested, inspected, marketed, distributed, and sold their vehicles, including the Vehicle, and their component parts including Tesla's Autopilot system and suite of driver assistance features technology with defects in design which made them dangerous, hazardous, and unsafe for their intended and reasonably foreseeable use.**

24. The design defects in the Vehicle and Tesla's **Autopilot system suite of technology included defective and unsafe characteristics such as, but not limited to**: . . .

25. **Tesla failed to meet the expectations of the reasonable consumer by placing on the market the Vehicle which failed to incorporate an Autopilot system that included safety components which would keep the vehicle only in designated travel lanes**, reasonably **match vehicle speed to traffic conditions, keep the vehicle within its lane, and provide active automatic collision avoidance**. . .

30. **The risk of danger in the design of the Vehicle outweighed any benefits of the design, and especially where safer alternative designs were available at the time of manufacture**. Such reasonably safer alternative designs include, **but are not limited to**, the following:

    2. **LIDAR, or any other reasonable alternative system that may or may not include the use of radar technology for the detection of obstacles and surroundings of a Tesla vehicle**; and

31. **Therefore, the Vehicle, and all of Tesla's vehicles that are equipped with Tesla's Autopilot system suite of technology presented and continue to present a substantial and unreasonable risk of serious injuries to drivers of Tesla vehicles and the public.**

32. **The defects in the design of all Tesla vehicles equipped with Tesla's Autopilot system, including the Vehicle at issue, was a substantial factor in causing the subject collision and Plaintiff's injuries and damages as alleged herein.**

33. **As a direct and proximate result of the design defects of the Vehicle, Plaintiff, Dillon Angulo, suffered serious bodily injury** . . .

Likewise, the Benavides Complaint [Exhibit 20] states (emphasis added):

### COUNT I STRICT LIABILITY

19. **Tesla's vehicles, including the Vehicle, were defective and unsafe for their intended use. Due to the design defects, the Vehicle failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner**. . .

21. **Tesla knew that consumers would use and drive their vehicles as the driver did on April 25, 2019**. . .

22. Tesla manufactured, designed, assembled, tested, inspected, marketed, distributed, and sold their vehicles, including the Vehicle, and their component parts **including Tesla's Autopilot system and suite of driver assistance features technology with defects in design which made them dangerous, hazardous, and unsafe for their intended and reasonably foreseeable use**. . .

25. Tesla failed to meet the expectations of the reasonable consumer by placing on the market a Tesla Model X (sic) vehicle which **failed to incorporate an autopilot system that included safety components which would keep the vehicle only in designated travel lanes, reasonably match vehicle speed to traffic conditions, keep the vehicle within its lane,** and . . .

   3. **The risk of danger in the design of Tesla's Model S vehicle outweighed any benefits of the design, and especially where safer alternative designs were available at the time of manufacture.** Such reasonably safer alternative designs include, **but are not limited to**. . .

      b. **LIDAR, or any other reasonable alternative system that may or may not include the use of radar technology for the detection of obstacles and surroundings of a Tesla vehicle; . . .**

29. Therefore, **the Vehicle, and all of Tesla's vehicles that are equipped with Tesla's Autopilot system suite of technology, presented and continue to present a substantial and unreasonable risk of serious injuries to drivers of Tesla vehicles and the public.**
30. The **defects in the design of all Tesla vehicles equipped with Tesla's Autopilot system was a substantial factor in causes [sic] NAIBEL BENAVIDES LEON'S death**, as well as Plaintiff's damages as alleged herein.

Plaintiffs alleged that Tesla's Autopilot system was defective; NHTSA found that Tesla's Autopilot system was defective; this is the end of it. All aspects of the defectiveness of Autopilot are sufficiently plead in Plaintiffs' Complaints under Rule 1.110(b). Tesla's objection to providing discovery on these issues only creates further significant unwarranted delay and prejudice to Plaintiffs.

## VII.  Prayer for Relief

Plaintiffs pray this Honorable Court grant the Parties' Joint Motion for Continuance. Plaintiffs further note that should these issues persist, Plaintiffs will likely need to see additional extensions and potentially continuance of trial in the near future.

## VIII.  Request for Oral Argument

Plaintiffs respectfully request that this Honorable Court entertain oral arguments on this issue. Because the issues before the Court implicate the ability of Plaintiffs to prepare for trial in this case, and thus ultimately may impact the current trial setting, in good faith Plaintiffs' counsel believe that oral arguments would be helpful for case management purposes. Plaintiffs estimate that between 30 minutes to one hour would be required for such hearing.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this January 29, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

By: */s/ Douglas F. Eaton*
DOUGLAS F. EATON
FBN: 129577
**EATON & WOLK, PL**
*Co-counsel for Plaintiff*
2665 S. Bayshore Drive, Suite 609
Miami, Florida 33133
Telephone: 305-249-1640
Email: deaton@eatonwolk.com
cgarcia@eatonwolk.com

Adam T. Boumel, Esq.
THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669