Neil M. Kliebenstein (#226060)
Hannah L. Mohrman (#263186)
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA  95110-1364
Telephone: (408) 279-5393
Facsimile:   (408) 279-5845
Neil.Kliebenstein@bowmanandbrooke.com
Hannah.mohrman@bowmanandbrooke.com

Attorneys for Defendant
Tesla, Inc.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JUSTINE HSU, an individual,<br><br>           Plaintiff,<br><br>vs.<br><br>TESLA, INC. fka TESLA MOTORS, INC.;<br>DOES 1 through 100, Inclusive,<br><br>           Defendants. | Case No. 20STCV18473<br><br>[*Assigned for All Purposes to the Honorable Judge John Kralike, Dept. B*]<br><br>**DECLARATION OF ELOY RUBIO BLANCO IN SUPPORT OF TESLA'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE), AND PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSE TO SPECIAL INTERROGATORIES (SET ONE)**<br><br>**[Filed concurrently with Tesla's Opposition to Plaintiff's Motion to Compel Further Response to Request for Production (Set One), and Opposition to Plaintiff's Motion to Compel Further Response to Special Interrogatories (Set One); Tesla's Oppositions to Separate Statements; Declaration of Neil Kliebenstein; Declaration of Amrita Ajmani; and [Proposed] Orders]**<br><br>Date: April 8, 2022<br>Time: 8:30 a.m.<br>Dept:  B<br><br>Trial Date: October 25, 2022 |

/ / /

-1-

I, Eloy Rubio Blanco, declare as follows:

1.      My current title is Senior Product Support Engineer at Tesla, Inc. ("Tesla"). I have personal knowledge of the matters set forth herein, except where otherwise stated, and I could and would testify competently thereto, if called upon to do so. I make this Declaration in support of Tesla's Opposition to Plaintiffs' Motion to Compel Further Response to Request for Production of Documents, Set No. One.

2.      In my capacity as Senior Product Support Engineer, my work is focused on field performance and product liability, and I am generally familiar with the process for retrieving Diagnostic Log Data (Carlogs) over-the-air ("OTA") or from the Tesla vehicle's SD card, ingesting the data through Tesla's proprietary software to produce a translation of the data into usable and understandable format that is opened in an Excel spreadsheet.

3.      I am generally familiar with plaintiff's discovery requests that are the subject of Plaintiff's Motion to Compel Further Responses to Requests for Production (Set One) and Motion to Compel Further Response to Special Interrogatories (Set One), including how the Carlog data from the plaintiff's 2016 Tesla Model S, VIN 57JSA1E136F143596 ("Subject Vehicle") was retrieved from the vehicle's SD card (as opposed to OTA), and subsequently uploaded to Tesla's software, translated into .csv file format, then exported to an Excel spreadsheet.

4.      I understand that in this litigation, Tesla provided plaintiff with a copy of the contents of the SD card that was retrieved from the Subject Vehicle at a joint vehicle inspection on November 16, 2020. Tesla then produced, subject to the protective order entered in this case, an Excel spreadsheet containing data for 109 signals, including alerts, covering the drive cycle leading up to the accident.

5.      Generally, when I am performing an incident analysis, I analyze Carlog data received OTA, which is a copy of data that is on the vehicle's SD card.  This OTA data is ingested into Tesla's servers and then processed or translated through an internal platform, Periscope. I then choose the data signals—one at a time—in Periscope that, in my engineering judgment and experience, are relevant to the customer's concerns and/or

1   incident as described to me via whichever channel I received the escalation (e.g., Legal

2   Department, Toolbox, etc.).  I cannot export a single output of all available signals from

3   Periscope or any other source.  I know, from my experience as a Tesla engineer, which

4   signals to choose for a given incident review in my scope.  Likewise, engineers in other areas

5   or with other focuses routinely access different signals for their purposes.

6   6.      Tesla receives Carlog data either OTA or via direct access to an SD card, as

7   occurred in this case when the vehicle was unable to transmit the data OTA when the

8   collision occurred.  The data is first recorded to the SD card and a copy of that data is sent

9   OTA.  This Carlog data exists in non-standard file formats, e.g., .hex, .acq, .tsv, .dat, or .tgz.

10  7.      The Carlog data in its native form would not be accessible to Plaintiff, or any

11  other average user, without expert knowledge and experience in programming. In fact, I do

12  not know how to manually translate the data without accessing it through Periscope and I do

13  not know anyone else at Tesla who can interpret the data from the raw files without use of

14  some proprietary tool.

15  8.      The raw Carlog data is maintained by Tesla for a limited period of time (per

16  Tesla's privacy policy) and accessed via its Periscope program. Signals are selected one at

17  a time, they are translated into .csv file format, then exported into Excel; when formatting

18  changes are made to share externally—none of which changes or affects the translated

19  data—the saved format is in .xlsx file format.  This process is the "translation" of the raw

20  Carlog data.  Part of this translation entails Tesla's use of an Excel spreadsheet that lists the

21  selected signals across the top of the spreadsheet as column headers.

22  9.      The data accessible through Periscope can also be exported from Tesla's

23  server where the data lives to a "customer friendly" version of the Carlog data from the

24  Subject Vehicle. I understand this is the data set that is generally provided by Tesla in

25  response to a customer request under GDPR or CCPA.  To generate the customer friendly

26  data set, we generated a script that automatically translates certain of the raw Carlog signal

27  headings as we use them internally into something that is intended to be self-explanatory for

28  the customer reviewing the data.  Instead of being processed through Periscope, the data is

-3-

queried and collected from the server and translated through a macro that outputs the customer friendly version.  The customer-friendly data set Tesla provides to customers upon appropriate data access request includes only that data reflecting occupant interactions with the vehicle such as braking, steering, speed, door opening, seat belts, Autosteer/Cruise Control status.  It does not include alerts or all the same 109 signals Tesla produced at TESLA_000000001.  It is, however, the same data that is available through Periscope, just produced through a different process.  Further, in order to provide the same data set as Tesla has already produced in the Excel spreadsheet, Bates No. TESLA_000000001, in a "plaintiff friendly" format, Tesla would have to engage an engineer to explain them as there is no script to automatically translate the signals selected in this case. I am not aware of a list that exists with this information in it, i.e., some "dictionary" that translates all the signals or explains their parameters, etc.

10.    Tesla has produced the 109 data points of Carlog data in this case in the same Excel format I and other of Tesla's engineers use for analysis. I also understand this is the same format our legal counsel gives the data to outside experts retained in connection with litigation.

11.    The raw Carlog data generally retrieved from a vehicle can include more than 2,000 signals and alerts, and includes a broad and varied set of data as these signals are recording data every second or even several times per second.  This broad set of data includes data on, for example, right blinker status, left rear seat belt status, battery management system information, headlamp status, and a multitude of other signals that are internal to the vehicle and reflect one of the dozens of on-board ECUs/modules communicating with each other.

12.    The column headers for the Excel are abbreviations for the data channels, or signal names.  These are the abbreviations that appear when the data is translated and exported to Excel.  I am not aware of a list that includes all of the available data signals applicable to a 2016 Model S configured with Hardware 1.0.  I am also not aware of a list

-4-

DECLARATION OF ELOY RUBIO BLANCO IN SUPPORT OF TESLA'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO REQUEST
FOR PRODUCTION (SET ONE) AND PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO
SPECIAL INTERROGATORIES (SET ONE)   26030002

that describes what each of the data signals mean.  I, however, am aware, from my experience as a Tesla engineer, what these abbreviations mean.

13.     I understand that many of these abbreviations are available by way of articles in Toolbox.  Toolbox is a diagnostic resource primarily used by Tesla's service technicians in connection with diagnosing repair issues. I would have to search signal by signal for any applicable article and then ensure that the content of the article was applicable to this vehicle at the time of the accident for accuracy.

14.     Translation of the entirety of the log data on the Subject Vehicle, including the more than 2,000 data signals, and the description of all of the signals, would be extremely time consuming, and in my experience, I would estimate it would take upwards of several weeks, if not months.  I understand it has never been done. It would require Tesla to create a list of a very broad set of data, which would necessitate Tesla querying each component owner, or team of engineers, who uses the data, and get the information for each of the 2,000-plus signals. In addition, signals have changed over time; signals have been added and deprecated with firmware updates (which occur approximately every month) and hardware changes, and some differ between our vehicles (Models S/X/3/Y).  I understand this is part of the reason Tesla does not maintain some comprehensive list or current dictionary of signals.

15.     In this case, such translation and production would consist of an incredibly large amount of irrelevant data.  Indeed, the SD card holds roughly 4-12 months' worth of driving data.  Only a fraction of that data would potentially be relevant in this case.  In my review of the Carlog data produced in this case, the data that was provided was arguably relevant to the issues in this case.   Indeed, when I testified as Tesla's corporate representative regarding the Autopilot driver assistance feature equipped on plaintiff's vehicle on March 18, 2022, plaintiff's counsel Mr. Slavik asked me a number of questions about the data Tesla produced and what it means.  I believe I answered all of his questions.

16.     The Carlog data produced in this matter includes much of the same data

-5-

DECLARATION OF ELOY RUBIO BLANCO IN SUPPORT OF TESLA'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO REQUEST
FOR PRODUCTION (SET ONE) AND PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO
SPECIAL INTERROGATORIES (SET ONE)   26030002

signals that Tesla's engineers typically use to analyze Autopilot (Hardware 1) or airbag performance, and the same data that Tesla routinely provides to law enforcement agencies and NHTSA for their use in analyzing crashes involving Tesla' vehicles.

17.     The Subject Vehicle is equipped with Autopilot Hardware ("HW") 1.0.  HW 1.0 is a completely different system than HW 2.0, 2.5 and 3.0, and these later hardware systems are not remedial. HW 2.0 and later were part of continuous development of autonomous driving technology.

18.     Tesla vehicles with HW 1.0, like the subject 2016 Tesla Model S, are not "substantially similar" to Tesla vehicles with HW 2.0, 2.5 and 3.0.  For instance, HW 1.0 vehicles utilize a singular front-facing camera designed and manufactured by a supplier, MobilEye, whereas the latter hardware versions utilize a Tesla-designed/manufactured set of eight cameras.  Likewise, Hardware 2.5 and 3.0 function Autopilot based on fleet learning as developed on Tesla's neural net whereas HW 1.0 did not feed into or receive information from the neural net, i.e., the neural net did not inform Autopilot performance on HW 1.0 vehicles.

19.     HW 1.0 refers to the camera, radar and ultrasonic sensors in the vehicle – components of the Autopilot; not the airbag system. These components are not applicable to how the airbag deploys.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 24th day of March 2022, at Palo Alto, California.

_____
Eloy Rubio Blanco

DECLARATION OF ELOY RUBIO BLANCO IN SUPPORT OF TESLA'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION (SET ONE) AND PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO SPECIAL INTERROGATORIES (SET ONE)   26030002

1 | <u>Justine Hsu v. Tesla, Inc., et al.</u>
Case No. 20STCV18473

2

3 | <u>PROOF OF SERVICE</u>

4 |     I am over 18 years of age, not a party to this action and employed in San Jose,

5 | California at 1741 Technology Drive, Suite 200, San Jose, California  95110-1355.

6 |     On March 25, 2022, I served the foregoing documents described as DECLARATION OF

7 | ELOY RUBIO BLANCO IN SUPPORT OF TESLA'S OPPOSITION TO PLAINTIFF'S MOTION

8 | TO COMPEL FURTHER RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS

9 | (SET ONE), AND PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSE TO SPECIAL

10 | INTERROGATORIES (SET ONE)  on all interested parties, or through their attorneys of record,

11 | in the manner noted, addressed as follows:

12 | Attorneys for Plaintiff
<u>Justine Hsu</u>

13 | Alison S. Gokal
Gokal Law Group, Inc.

14 | 26080 Towne Centre Drive
Foothill Ranch, CA 92610

15 | 949.753.9100
Fax: 866.610.9381

16 | alison@gokallaw.com
Anum Arshad anum@gokallaw.com

17 | Mary Calamba Mary@gokallaw.com
Holly Thomas holly@gokallaw.com

18 |

19 | Donald H. Slavik (Pro Hac Vice)
SLAVIK LAW FIRM LLC

20 | 3001 S. Lincoln Avenue, Suite C-1
Steamboat Springs, CO 80487-2147

21 | Direct: 949.269.4284
Cell: 414.899.1197

22 | 970.457.1011
Fax: 267.878.7697

23 | dslavik@slavik.us
apawlak@slavik.us
dcaudle@slavik.us

24 |

25 | \_\_\_ VIA FIRST CLASS MAIL.  I caused such envelope to be deposited in the mail at San Jose, California, in a sealed envelope with postage fully prepaid thereof.  I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with

26 | the United States Postal Service.  The mail is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of the party served,

27 | service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

28 |

1  ___ VIA OVERNIGHT DELIVERY SERVICE.     The documents were enveloped, properly labeled, and caused to be deposited into an overnight delivery (Federal Express, United Parcel

2  Service, etc.) receptacle or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or a package designated by the

3  express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed

4  in the case and served on that person; otherwise, at that person's place of residence.

5  XX__ VIA EMAIL.     The document was served on the above party in this action by causing a true copy of said document to be transmitted by email pursuant to Emergency Rule 12 of

6  Appendix I of the California Rules of Court.

7  ___     BY ELECTRONIC SERVICE.  The document was served electronically and the transmission was reported as complete and without error.

8

   __ VIA FACSIMILE TRANSMISSION.     The document was served on the above party in

9  this action by causing a true copy of said document to be transmitted by facsimile to the number listed adjacent to the name on this Proof of Service.  The transmission was reported as

10 complete and without error.

11 ____ VIA PERSONAL SERVICE.  I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

12
        I declare under penalty of perjury under the laws of the State of California that the

13
   foregoing is true and correct, and that this declaration was executed on March 25, 2022, at San

14
   Jose, California.

15

16

17                                                                              Ann Scoleri

18

19

20

21

22

23

24

25

26

27

28