**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-21940-BLOOM/Otazo-Reyes**

NEIMA BENAVIDES, *as Personal*
*Representative of the Estate of Naibel*
*Benavides Leon, deceased*,

      Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

      Defendant.

_____/

**Case No. 22-cv-22607-BLOOM**

DILLON ANGULO,

      Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

      Defendants.

_____/

## MOTION FOR HEARING

    Plaintiffs, Neima Benavides and Dillon Angulo, by and through their undersigned counsel, hereby move this Honorable Court for a hearing on Discovery related issues and states as follows:

    HEARING DETAILS:

Date:          Thursday, February 22nd, 2024

Time:          1:30 PM

Magistrate:    The Honorable Edwin G. Torres

Place:         James Lawrence King Federal Justice Building

                   99 NE 4th Street, Tenth Floor, Courtroom 5

                   Miami, FL 33132

                   If Via Zoom (link to be provided)

Substance of discovery matter to be heard:

1. Tesla's objection to Plaintiff's Third Request for Production #s 13 and 16.

2. Tesla's objection to Plaintiff's Fourth Request for Production # 30.

3. Tesla's objection to Plaintiff's Fifth Request for Production #s 31, 32, 33, 34 and 35

4. Tesla's refusal to provide deposition dates for its employees Chris Tapia, Akash Patel and Peter Scheutzow

5. Tesla's failure to produce documentary evidence and information regarding this crash and its driver's driving history with the subject vehicle, including but not limited to:

   a. Tesla's failure to produce all relevant car log data for the drive cycle at issue, which should have been produced in Rule 26 disclosures, as well as in response to Plaintiffs' Second Request for Production #s 1 and 7.

   b. Tesla's false representation that it did not possess, and continuing failure to provide a full and complete, glossary or index of log signals in response to Plaintiff's Second Request for Production #8.

   c. Tesla's failure to produce, and revocation of prior agreement to produce, Annotated Videos for this crash, which should have been produced in Rule 26 disclosures as well as in response to Plaintiffs' Fifth Request for Production #s 31 and 35 (included in § 4 above).

6. Tesla's broad scope-based objections to Plaintiff's Notice of Taking Deposition of Tesla's Rule 30(b)(6) Corporate representative deposition.

** Plaintiffs have read this Honorable Court's Order Setting Discovery Procedures (DE 159), and have also reviewed New World Network Ltd. v. M/V Norwegian Sea, 2007 WL 1068124, at *2-3 (S.D. Fla. 2007), which this Court cited to with approval in its Order. Accordingly, Plaintiffs understand that this Court is suggesting that Plaintiffs should only raise this issue after the deposition(s) has been completed. Notwithstanding, in good faith and an abundance of caution, Plaintiff believes that this Court may want to make at least a partial ruling before the deposition, as Tesla has already indicated that it will not be presenting a witness to testify on broad categories of discoverable and at-issue topics, such as the issue of Geofencing which was a main component of NHTSA's recent recall.

**CERTIFICATE OF CONFERRING WITH COUNSEL PURSUANT TO RULE 7.1(a)(3)**

Pursuant to Local Rule 7.1 (a)(3), the undersigned counsel has conferred with counsel for Tesla, Inc., in a good faith effort to resolve the issues raised in this motion, to no avail.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of February 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

Respectfully Submitted,

THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669

By:    **/s/ _Adam T. Boumel, Esq._**
Adam T. Boumel, Esq.
Florida Bar No.: 0110727
Direct email: adam@roussolawfirm.com
Service emails:
Pleadings@roussolawfirm.com
Assistant@roussolawfirm.com

EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-21940-BLOOM/Otazo-Reyes**

NEIMA BENAVIDES, *as Personal*
*Representative of the Estate of Naibel*
*Benavides Leon, deceased*,

      Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

      Defendant.

_____/

**Case No. 22-cv-22607-BLOOM**

DILLON ANGULO,

      Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

      Defendants.

_____/

**DEFENDANT, TESLA, INC. RESPONSE TO PLAINTIFF, DILLON ANGULO'S**
**SECOND REQUEST FOR PRODUCTION**

      Tesla, Inc. ("Tesla") responds to Plaintiff Dillon Angulo's Second Request for Production, and responds as follow:

**Objections Common to all Requests**

1. Tesla incorporates these general objections into each of its responses to Plaintiff's Requests for Production:

2. Tesla has not yet completed discovery, investigation, or preparation for trial. Accordingly, its responses are based on information presently available and given without prejudice to Tesla's right to further supplement or modify based upon the discovery of additional or different information.

1

Tesla reserves the right to supplement responses to these Requests up to the time of trial, as the investigation of the facts and circumstances of this case is ongoing.

3. Tesla reserves all objections and questions as to the competency, relevance, materiality, privilege, propriety, admissibility, and all other objections on any grounds that would require the exclusion of any information from evidence if the same were sought to be admitted at trial.

4. Tesla objects to Plaintiff's "Definitions" and "Instructions" to the extent they purport to impose obligations or expectations of Tesla that are above and beyond any requirements imposed under the Federal of Civil Procedure. This includes "Definitions" and "Instructions" that purport to require Tesla obtain information or documents from entities other than Tesla.

5. Tesla objects to Plaintiff's "Definitions" to the extent they do not comport with plain language definitions or descriptions of these terms. To the extent Tesla objects with Plaintiff's "Definitions," phrases or terms that have not been defined by Plaintiff, Tesla will define its understanding of the word or phrase in its responses, to the extent possible.

6. Tesla objects to these Requests to the extent they seek information protected by the attorney-client, work product doctrine, and/or consulting expert privileges. If Tesla determines that information it has agreed to produce in response to these requests are covered by one of these privileges, Tesla will identify that information on a privilege log.

7. Tesla objects to these Requests to the extent that they are not limited to a reasonable period of time, the same or substantially similar model vehicle as the subject vehicle, or component at issue as identified in Plaintiff's Petition. The determination of scope and the documents produced in response to these requests are for the purposes of discovery only and not an admission on behalf of Tesla regarding admissibility or responsiveness to the allegations made in this case.

8. Tesla does not interpret Plaintiff's Requests to ask for information about (1) correspondence between Tesla and its attorneys, (2) communications between Tesla, its lawyers or its representatives about the investigation or defense of any claims or lawsuits, including Plaintiff's claims after Tesla learned that a claim would be made, (3) notes or other work product of Tesla's lawyers, (4) other documents or things created by or for Tesla's lawyers, and (5) documents or things prepared by consulting experts about this or any suit, claim, or anticipated claim. If Plaintiff intends any Request for the production of these privileged items, Tesla objects to providing any such information because it is protected from discovery pursuant to attorney-client privilege and/or the attorney work product privilege.

9. Some of the documents or information described in Tesla's responses to Plaintiff's Requests may contain information proprietary to Tesla such as financial, technical, or commercially sensitive information, and/or trade secrets. Disclosure of such information might be severely injurious and damaging to Tesla, placing it at a competitive disadvantage within the industry; therefore, these documents and information will only be produced pursuant to the entry of an appropriate Confidentiality Protective Order.

## REQUESTS FOR PRODUCTION

**REQUEST NUMBER. 1**:  Produce all DOCUMENTS and ESI data contained in any TESLA DATA STORAGE SYSTEM or in the SUBJECT VEHICLE regarding the operation of the SUBJECT VEHICLE including the SUBJECT SYSTEM within ten minutes of the SUBJECT INCIDENT, including, but not limited to, telemetry data transmitted from the vehicle to TESLA servers either in real-time or on a periodic basis, or due to an event, such a crash or airbag deployment, as well as video and still-frame camera images, continuously recorded signals and alerts, Log files or CarLog files, D-16 Reports, text logs stored within the Media Control Unit, images from any in-cabin driver-facing camera, data and images recorded in the Restraint Control Module, Toolbox 3 Diagnostic data, and all other data the SUBJECT VEHICLE recorded or transmitted not already produced to date.

**RESPONSE**:  Tesla objects to Request 1 because it is vague, overly broad, unduly burdensome, and not reasonably proportionate to the needs of the case.  Tesla also object to this Request because it is so overly broad that it calls for the production of information protected by the Attorney Client and Work Product Doctrine Privileges.

Subject to and notwithstanding these objections, Tesla refers Plaintiff to Tesla's Response and Objection to Request 1 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and other "D Class Telemetry Records" from the subject vehicle and accident.  Tesla also refers Plaintiff to its Objections and Response to Request 1 of Plaintiff Dillon Angulo's First Requests for Production, wherein it agreed to produce "copies of video clips in its possession that were recorded by cameras on the subject Model S on the date of the subject collision."   Tesla also states that it is not currently in possession of the Media Control Unit for the Subject vehicle, which is – upon information and belief – in the possession of Florida Highway Patrol.  Tesla has served a subpoena on George McGee – the owner and driver of the Tesla who admittedly caused the crash at issue in this case at the time of the crash – to obtain and produce this component. Mr. McGee has not responded to this subpoena.

**REQUEST NUMBER. 2**:  All DOCUMENTS, ESI, or other material provided to the U.S. Department of Transportation, National Highway Traffic Safety Administration (NHTSA) in response to the letter dated 31 August 2021 addressed to Eddie Gates, Director, Field Quality for TESLA, Inc., from Gregory Magno, Chief, Vehicle Defects Division – D, Office of Defects Investigation. [Exhibit A]

**RESPONSE**: Tesla objects to Request 2 because it is duplicative of Request 5 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice).  Subject to and notwithstanding this objection, Tesla refers to its Response and Objection to Request 5 from Plaintiff Dillon Angulo's *Duces Tecum* Notice of Deposition of Tesla Representative and incorporates it herein.

**REQUEST NUMBER. 3**:  All DOCUMENTS, ESI, or other material provided to the U.S. Department of Transportation, National Highway Traffic Safety Administration (NHTSA) in response to the letter dated 18 August 2022 addressed to Eddie Gates, Director, Field Quality for TESLA, Inc., from Stephen A. Ridella, Ph.D., Director, Office of Defects Investigation. [Exhibit B]

**RESPONSE**: Tesla objects to Request 3 because it is duplicative of Request 6 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice).  Subject to and notwithstanding this objection, Tesla refers to its Responses and Objections to Requests 5 and 6 from Plaintiff Dillon Angulo's *Duces Tecum* Notice of Deposition of Tesla Representative, and incorporates it herein.

**REQUEST NUMBER. 4**:  Produce all video segments used to create LABELS identifying stationary vehicles in developing all versions of Tesla's Automated Driving Systems, including Autopilot and Full Self Driving.

**RESPONSE**:   Tesla objects to this Request because it is overly-broad, unduly burdensome, and not proportional to the needs of this case or important or necessary to resolution of this case.  This Request amounts to an impermissible "fishing expedition," and is not limited in scope to the Subject model, model year vehicle, or configuration of Autopilot hardware, or software and firmware involved in this case.

Furthermore, the record clearly shows that the subject incident was not caused by Autopilot's alleged failure to detect traffic signals or a stationary object.  Instead, as the driver of the Subject Vehicle, a vehicle equipped with SAE Level 2 advanced driver assistance systems, has admitted *several times*, he caused the crash because he was distracted by his cell phone that he bent over to pick up, and as a result, he failed to stop for a red flashing light and stop sign at the "T" intersection where the crash occurred. *See* the transcript of Mr. McGee's admission to Police recorded by a Police body camera previously produced to Plaintiff; *see also* the Deposition Transcript of Corporal David Riso at pg. 67:10-68:19.  Plaintiff Benavides essentially admitted

the same in her allegations in a Complaint separately filed against Tesla driver George McGee.

**REQUEST NUMBER. 5**:  Produce all D16 Reports from vehicles manufactured with Hardware version 2.0 and later in a Model S or X which came into contact with a vehicle ahead of it, stationary or moving.

**RESPONSE**: Tesla objects to Request 5 because it is overly-broad, unduly burdensome, and not proportionate to the needs of the case.  This Request amounts to an impermissible "fishing expedition," and is not limited in scope to the Subject model, model year vehicle, or configuration of Autopilot hardware, software and firmware involved in this case, to collisions allegedly caused by the defect Plaintiff alleges to exist in the Subject Vehicle or to accident circumstances that are substantially similar to the circumstances of the subject accident.  In addition, because D16 reports do not include information as to the nature of a collision, i.e., whether the Tesla "came into contact with a vehicle ahead of it, stationary or moving," searching D16 reports for documents responsive to this request is burdensome, oppressive and would require Tesla consult numerous sources, including legal work product, to identify crashes within the broad scope of this request and then determine if Tesla is in possession of a D16 report from said crash.  The burden of such an exercise is grossly disproportionate to the potential probative value, if any, of this evidence.

Subject to and notwithstanding these objections, Tesla refers Plaintiff to Tesla's Response and Objections to Request 1 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and other "D Class Telemetry Records" from the subject vehicle and accident.

**REQUEST NUMBER. 6**:  Produce the D16 Report for the SUBJECT INCIDENT.

**RESPONSE**:  Tesla refers Plaintiff to Tesla's Response and Objections to Request 1 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and other "D Class Telemetry Records" from the subject vehicle and

accident.

**REQUEST NUMBER. 7**:  All CarLog data regarding the SUBJECT VEHICLE within 10 minutes of the SUBJECT INCIDENT in both native format (.hex, .dat, .acq, .cfg, .tsv, and .txt files) and converted to engineering units.

**RESPONSE**:  Tesla objects to Request 7 because it is duplicative of Request for Production 1 of Plaintiff's Second Requests for Production.  Subject to and notwithstanding this objection, Tesla refers Plaintiff to Tesla's Response and Objections to Request 1 from Plaintiff's FRCP 30(b)(6) Notice of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and other "D Class Telemetry Records" from the subject vehicle and accident.

**REQUEST NUMBER. 8**:   A full and complete glossary or index (including any related Confluence pages) defining and/or explaining the column headings and log signals in the CarLog data.

**RESPONSE**: Tesla objects to Request 8 because it is overly-broad, unduly burdensome, and not proportionate to the needs of the case.  Additionally, Plaintiff's request that Tesla "defin[e] and/or explain[] the column headings and log signals in the CarLog data" is not an appropriate request for documents under Fed. R. Civ. P. 34.

Subject to and notwithstanding these objections, Tesla searched for and did not locate a "full and complete glossary or index...defining and/or explaining the column headings and log signals in the CarLog data" because none exists.

**REQUEST NUMBER. 9**:  All video captured, saved, and/or uploaded by the onboard cameras in the SUBJECT VEHICLE within 10 minutes of the SUBJECT INCIDENT along with the associated augmented vision overlay and control signals as well as all data, graphs, and information available to Tesla engineers through either the TCLIPS tool or APViz tool.

**RESPONSE**:  Tesla objects to Request 9 because it is duplicative of Request 1 of Plaintiff's First Requests for Production, needlessly cumulative, and harassing.  Subject to and Notwithstanding these objections, Tesla has already produced "copies of video clips in its possession that were

7

recorded by cameras on the subject Model S on the date of the subject collision."  Tesla also refers

Plaintiff to Tesla's Response and Objections to Request 1 from Plaintiff's FRCP 30(b)(6) Notice

of Video Recorded Deposition (the Notice), wherein it agreed to search for and produce D16 and

other "D Class Telemetry Records" from the subject vehicle and accident.

**REQUEST NUMBER. 10**:  All documents that record testing of speeds and roadways on which
a Tesla vehicle might sense a vehicle, motorcycle, pedestrian, or bicycle ahead and that  document
a response by any Tesla ADS, OEDR, AEB, RTOS, or other automated driving system.

**RESPONSE**: Tesla objects to Request 10 because it is overly-broad, unduly burdensome, and not

proportional to the needs of this case or important or necessary to resolution of this case.

Subject to and notwithstanding these objections, Tesla will search for and produce – if

found and subject to the entry of an appropriate protective order documents related to the validation

of Automatic Emergency Braking for the 2019 Tesla Model S with Hardware 2.5.

**REQUEST NUMBER. 11**: Documents that define the mission case requirements of Tesla's
ADS, including Autopilot, and any automated systems used to achieve any level of automated
driving in the field.

**RESPONSE**: Tesla objects to Request 11 because the phrase "mission case requirements" is

vague, undefined, and subject to varying interpretations.  Tesla also objects to Request 11 because

it is overly-broad, unduly burdensome, and not proportionate to the needs of the case.  This Request

amounts to an impermissible "fishing expedition," and is not limited in scope to the Subject model,

model year vehicle, or configuration of Autopilot hardware, software and firmware involved in

this case, or to the Autopilot features Plaintiff alleges to be defective in this case.

Subject to and notwithstanding these objections, Tesla refers to its website for information about

Autopilot and Full Self Driving-Capability development, Tesla's Vehicle Safety Report and

Tesla's annual Impact Reports.

Date:  May 3rd, 2023

Respectfully submitted,

By:  /s/ Henry Salas_____
      HENRY SALAS (815268)
      COLE SCOTT & KISSANE
      9150 S Dadeland Blvd Ste 1400
      Miami, FL 33156-7855
      Office: 786-268-6419
      Fax: 305-373-2294
      henry.salas@csklegal.com

      - and –

      THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
      DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
      BOWMAN AND BROOKE LLP
      101 W. Big Beaver Road
      Suite 1100
      Troy, MI  48084
      248.205.3300 / 248.205.3399 fax
      thomas.branigan@bowmanandbrooke.com
      drew.branigan@bowmanandbrooke.com

      ***Attorneys for Defendant TESLA, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on May 3rd, 2023, a true and correct copy of the foregoing paper was served via email to the following:

| | |
|---|---|
| THE ROUSSO, BOUMEL LAW FIRM, PLLC.<br>9350 South Dixie Highway<br>Suite 1520<br>Miami, Florida 33156<br>(305) 670-6669<br>Adam T. Boumel, Esq.<br>Florida Bar No.: 0110727<br>***Counsel for Plaintiff Dillon Angulo*** | Poses & Poses, P.A.<br>169 East Flagler Street, Suite 1600<br>Miami, Florida 33156<br>Attn: Todd Poses, Esq.<br>tposes@posesandposes.com<br>Maria@posesandposes.com<br>***Counsel for Plaintiff, Neima Benavides*** |
| Slavik Law Firm, LLC<br>30001 S. Lincoln Ave, Suite C-1<br>Steamboat Springs, CO 80487<br>Attn: Donald Slavik, Esq.<br>dslavik@slavik.us<br>dcaudle@slavik.us<br>***Co-Counsel for both Plaintiffs.*** | Aria Sanguinetti Wang & Torrijos, LLP<br>2200 Powell Street, Suite 740<br>Emeryville, CA 94608<br>Attn: Elise R. Sanguinetti, Esq.<br>elise@aswtlawyers.com<br>ncservice@aswtlawyers.com<br>***Co-Counsel for both Plaintiffs.*** |
| Eaton & Wolk PL<br>2665 South Bayshore Dr., Suite 609<br>Miami, FL 33133<br>Attn: Doug Eaton, Esq.<br>deaton@eatonwolk.com<br>***Co-Counsel for both Plaintiffs.*** | |

Respectfully submitted,

By:  /s/ Henry Salas
HENRY SALAS (815268)
COLE SCOTT & KISSANE
9150 S Dadeland Blvd Ste 1400
Miami, FL 33156-7855
Office: 786-268-6419
Fax: 305-373-2294
henry.salas@csklegal.com

- and –

THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
BOWMAN AND BROOKE LLP

10

27667231v1
27667231v2

101 W. Big Beaver Road
Suite 1100
Troy, MI  48084
248.205.3300 / 248.205.3399 fax
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**_Attorneys for Defendant TESLA, Inc._**

27667231v1
27667231v2

EXHIBIT "B"

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.

      Defendant.

_____/

DILLON ANGULO,                            Case 1:22-22607-KMM

      Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.

      Defendant.

_____/

## DEFENDANT, TESLA, INC.'S RESPONSES TO PLAINTIFF, DILLON ANGULO'S THIRD REQUEST FOR PRODUCTION TO DEFENDANT, TESLA, INC.

Tesla, Inc. ("Tesla") responds to Plaintiff Dillon Angulo's Third Request for Production and responds as follows:

## Objections Common to all Requests

Tesla incorporates these common objections into each of its responses to Plaintiff's Requests for Production:

1

1. Tesla has not yet completed discovery, investigation, or preparation for trial.  Accordingly, its responses are based on information presently available and given without prejudice to Tesla's right to further supplement or modify based upon the discovery of additional or different information. Tesla reserves the right to supplement responses to these Requests up to the time of trial, as the investigation of the facts and circumstances of this case is ongoing.

2. Tesla reserves all objections and questions as to the competency, relevance, materiality, privilege, propriety, admissibility, and all other objections on any grounds that would require the exclusion of any information from evidence if the same were sought to be admitted at trial.

3. Tesla objects to Plaintiff's "Definitions" and "Instructions" to the extent they purport to impose obligations or expectations of Tesla that are above and beyond any requirements imposed under the Federal of Civil Procedure. This includes "Definitions" and "Instructions" that purport to require Tesla to obtain information or documents from entities other than Tesla.

4. Tesla objects to Plaintiff's "Definitions" to the extent they do not comport with plain language definitions or descriptions of these terms. To the extent Tesla objects with Plaintiff's "Definitions," phrases or terms that have not been defined by Plaintiff, Tesla will define its understanding of the word or phrase in its responses, to the extent possible.

5. Tesla objects to these Requests to the extent they seek information protected by the attorney-client, work product doctrine, and/or consulting expert privileges. If Tesla determines that information it has agreed to produce in response to these requests are covered by one of these privileges, Tesla will identify that information on a privilege log.

6. Tesla objects to these Requests to the extent that they are not limited to a reasonable period of time, the same or similar model vehicle as the subject vehicle, or component(s) or system(s) at issue as identified in Plaintiff's Complaint. The determination of scope and the documents

2

produced in response to these Requests are for the purposes of discovery only and not an admission on behalf of Tesla regarding admissibility or responsiveness to the allegations made in this case.

7.  Tesla does not interpret Plaintiff's Requests to ask for information about (1) correspondence between Tesla and its attorneys, (2) communications between Tesla, its lawyers or its representatives about the investigation or defense of any claims or lawsuits, including Plaintiff's claims after Tesla learned that a claim would be made, (3) notes or other work product of Tesla's lawyers, (4) other documents or things created by or for Tesla's lawyers, and (5) documents or things prepared by consulting experts about this or any suit, claim, or anticipated claim. If Plaintiff intends any Request for the production of these privileged items, Tesla objects to providing any such information because it is protected from discovery pursuant to attorney-client privilege and/or the attorney work product privilege.

## REQUESTS FOR PRODUCTION

**REQUEST NUMBER 12:**  Produce a copy of the complete unredacted Confluence DOCUMENT represented by Bates No. TESLA-00093134 produced in *Huang v Tesla,* Case Number 19CV346663, in the Superior Court of the State of California, County of Santa Clara, (Huang), Note that TESLA- 00093134 is only a partial document, and that this REQUEST is for the complete OCR'd document.

**RESPONSE:**  Tesla will agree to produce a copy of Bates No. TESLA-00093134 produced in *Huang v Tesla*, Case 19CV346663, in the Superior Court of the State of California, County of Santa Clara subject to the extant Confidentiality Protective Order and with personally identifiable information redacted.

**REQUEST NUMBER 13:**  Produce applicable DOCUMENTS and ESI that reflect by model and model year, the number of SUBJECT VEHICLES TESLA has sold or leased or operation in the United States.

**RESPONSE:**  Tesla objects to this Request because it is overly broad and not proportional to the needs of this case. Subject to and without waiving these objections, see Tesla's Response to Request 14.

3

**REQUEST NUMBER 14:**   In its letter dated August 31, 2021, the National Highway Traffic Safety Administration [NHTSA], and NHTSA's subsequent letter dated August 18, 2022, NHTSA requested the latest known vehicle mileage and commensurate date for each of the SUBJECT VEHICLES; produce copies of the DOCUMENTS TESLA supplied to NHTSA in response to these requests.

**RESPONSE:**   Tesla objects to this Request because it is overly broad not proportionate to the needs of the case. Subject to and notwithstanding these objections Tesla is already in the process of producing – subject to the extant Confidentiality Protective Order and with Personal Identifiable Information pertaining to persons other than Plaintiff redacted -- a copy of its response to NHTSA Preliminary Evaluation (PE) 21-020 "limited to those related to Tesla vehicle crashes into stationary vehicles" pursuant to the Court's Order of June 14, 2023. Tesla refers Plaintiff to that production.


**REQUEST NUMBER 15:**   Produce all DOCUMENTS and ESI used to create the most recent Tesla Vehicle Safety Report (https://www.tesla.com/VehicleSafetyReport).

**RESPONSE:**   Tesla objects to this Request because it is overly broad and not proportional to the needs of the case. This Request is substantially similar to and, thus, duplicative of Request 8 in Plaintiffs' March 2, 2023 Notice of Video Recorded Deposition of Defendant Tesla Inc Pursuant to Fed. R. Civ. P. 30(b)(6) (30(b)(6) Notice"). See Tesla's Response and Objections to Plaintiff's 30(b)(6) Notice dated April 10, 2023. Additionally, Tesla's methodology behind its Vehicle Safety Report publicly available at https://www.tesla.com/VehicleSafetyReport and Plaintiff's Counsel has already deposed Tesla's corporate representative witness about Tesla's methodology and the data that Tesla relied up in preparing its Vehicle Safety Report.  Tesla objects to producing information about other crash events without limitation, as well as the data underlying the total miles driven with or without Autopilot, as such information is inordinately voluminous and a potential invasion of privacy of third parties.  Plaintiffs have not and cannot demonstrate the alleged need to discover information about nominal vehicle operation.  Further, they have not and

cannot demonstrate the alleged need to discover information about any and all crashes that occur

with or without Autopilot engaged.   To the extent plaintiffs demand information about

substantially similar collisions, Tesla will address such requests appropriately and within reason.

This request seeks disclosure of voluminous reports of substantially dissimilar collisions, such as

Tesla vehicles operating on Autopilot getting rear-ended or broadsided by other vehicles.  As such,

the Request represents an unreasonably burdensome and overbroad demand that is not relevant or

reasonably calculated to lead to the discovery of admissible evidence.


**REQUEST NUMBER 16:**  Produce all DOCUMENTS and ESI containing summaries of data such as reflected in TESLA-00012025, produced in *Harcourt, et al v. Tesla,* Case Number 19CV358488, (hereinafter "Harcourt") in the Superior Court of the State of California, County of Santa Clara. Plaintiffs are hereby requesting all of these summaries up to and including TESLA's latest update to its Vehicle Safety Report.

**RESPONSE:**  Tesla objects to this Request because it represents Plaintiffs' counsel's violation of

the Protective Order entered in the Harcourt matter, which prohibits sharing documents with

parties and counsel in this matter.


**REQUEST NUMBER 17:**  Produce DOCUMENTS and ESI reflecting the miles traveled by SUBJECT VEHICLES with an ADS active.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not

proportionate to the needs of the case, and harassing.  Subject to and without waiving these

objections, see Tesla's Response to Request 15.


**REQUEST NUMBER 18:**  Produce DOCUMENTS and ESI reflecting the miles traveled by SUBJECT VEHICLES in MANUAL DRIVING.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.

**REQUEST NUMBER 19:**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.

**REQUEST NUMBER 20:**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated within 5 seconds before impact.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.

**REQUEST NUMBER 21:**  Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated more than 5 seconds before impact.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing.  In addition, it seeks documents not maintained in the ordinary course of business and which would necessitate analysis of every reported/received crash to determine whether a driver assist feature was engaged at all before an incident occurred, and if so, when it was disengaged, since such metrics are not tracked or reported as described in the methodology for Tesla's Vehicle Safety Report.  Subject to and without waiving these objections, see Tesla's Response to Request 15.

**REQUEST NUMBER 22:** Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle was being driven using MANUAL DRIVING.

**RESPONSE:** Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.

**REQUEST NUMBER 23:** Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated within 5 seconds before impact with a pedestrian or a stationary vehicle.

**RESPONSE:** Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. The scope of this Request is also covered by and within the scope of Request 20, thus, this Request is duplicative. Subject to and without waiving these objections, see Tesla's Response to Requests 15 and 20.

**REQUEST NUMBER 24:** Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle's ADS was deactivated more than 5 seconds before impact with a pedestrian or a stationary vehicle.

**RESPONSE:** Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. The scope of this Request is also covered by and within the scope of Request 21, thus, this Request is duplicative. Subject to and without waiving these objections, see Tesla's Response to Requests 15 and 21.

**REQUEST NUMBER 25:** Produce DOCUMENTS and ESI reflecting the number of CRASHES involving SUBJECT VEHICLES in which the vehicle was being driven using MANUAL DRIVING before impact with a pedestrian or a stationary vehicle.

**RESPONSE:** Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. The scope of this Request is also covered by and within the scope of Request 22, thus, this Request is duplicative. Subject to and without waiving these objections, see Tesla's Response to Request 15.

**REQUEST NUMBER 26:**   Produce DOCUMENTS and ESI reflecting the number of COLLISIONS with vehicles, objects, or people involving SUBJECT VEHICLES that included property damage and/or injuries and in which there was no CRASH ALERT indicating an airbag or other active restraint deployed.

**RESPONSE:**   Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.   In addition, unless "property damage and/or injuries" are independently reported to Tesla by third parties, Tesla does not have any information as to whether a particular incident or group of incidents involved alleged "property damage and/or injuries", thus the Request seeks documents that are not in Tesla's possession, custody or control.

**REQUEST NUMBER 27:**   Produce DOCUMENTS and ESI reflecting the number of COLLISIONS with vehicles, objects, or people involving SUBJECT VEHICLES that included property damage and/or injuries concerning which TESLA has no information as to whether ADS was activated within 10 seconds of impact.

**RESPONSE:**   Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Subject to and without waiving these objections, see Tesla's Response to Request 15.   In addition, unless "property damage and/or injuries" are independently reported to Tesla by third parties, Tesla does not have any information as to whether a particular incident or group of incidents involved alleged "property damage and/or injuries", thus the Request seeks documents that are not in Tesla's possession, custody or control. Beyond that, the Request is harassing and burdensome insofar as it demands information for incidents limited to those about which the Request states Tesla "has no information."

**REQUEST NUMBER 28:**  Produce DOCUMENTS and ESI reflecting instances in which the SUBJECT SYSTEM, including OEDR, AEB, Pedal Misapplication Mitigation, Obstacle-Aware Acceleration in the SUBJECT VEHICLES prevented COLLISIONS with vehicles, objects, or people.

**RESPONSE:**  Tesla objects to this Request because it is overly broad, unduly burdensome, not proportionate to the needs of the case, and harassing. Tesla further objects to the scope of and

8

definition of "SUBJECT SYSTEM" by Plaintiffs because it does not accurately define the advance driver assistance system (ADAS) in the Tesla Model S called "Autopilot" in that it fails to include the driver as part of the system. Thus, Plaintiff's definition is an incorrect attempt to redefine Autopilot in a way that is incomplete and intentionally misleading. As Plaintiff Counsel know or should know, as a system Autopilot includes Traffic Aware Cruise Control (TACC), which controls the vehicle's speed; Autosteer, which controls steering within the lane; Automatic Emergency Braking; and Forward Collision Warning. However, Autopilot does not make the Model S a "self-driving car." Instead, Autopilot as a system was designed to include an alert and attentive driver who is in control of the vehicle at all times and the driver is advised by Tesla of Autopilot's limitations and the need to maintain control and responsibility for the vehicle at all times before Autopilot is initially engaged. The design of Autopilot with the driver included as an integral part of the system is consistent with the Society of Automotive Engineers (SAE) definitions of ADAS technology, Autopilot is a Level 2 system, which requires the driver to be in control at all times:



*See* Society of Automotive Engineers, Standard J3016 Levels of Driving Automation (May 3, 2021), https://www.sae.org/blog/sae-j3016-update.   Subject to and without waiving these objections, see Tesla's Response to Request 15.  Tesla also refers to the Owner's Manual for information about the various driver assist features and collision avoidance measures available on Tesla vehicles.  Beyond that, the Request is harassing and burdensome insofar as it demands

information for incidents limited to those about which the Request states there was no collision. While Tesla may be aware of some such instances, it is not possible to collect the universe of "near misses" since Tesla does not collect data for all driving, nor does it collect data in such a manner amenable to culling out all instances where the collision avoidance features prevent crashes.

**REQUEST NUMBER 29:** Produce all DOCUMENTS and ESI concerning the preservation, loss, destruction, or deletion of any DOCUMENTS and/or ESI concerning the SUBJECT VEHICLE, or the claims asserted in Plaintiff's complaint.

**RESPONSE:** Tesla objects to this Request because it is a request for "discovery on discovery," overly broad, not proportionate to the needs of the case and not relevant to Plaintiff's claims. "Preservation, loss, destruction, or deletion" of documents or data is not an allegation in Plaintiff's Complaint and not at issue in this case that is important to resolution of the case. Additionally, this request for "Discovery on Discovery" is inappropriate where there is no evidence of spoliation or other wrongdoing. *See Culliver v. BP Expl. & Prod., Inc.*, No. 3:21CV4942-MCR-HTC, 2022 WL 19568966, at *3 (N.D. Fla. Nov. 29, 2022).

Date: September 28, 2023                Respectfully submitted,

By: /s/   Henry Salas
    HENRY SALAS (815268)
    COLE SCOTT & KISSANE
    9150 S Dadeland Boulevard, Suite 1400
    Miami, FL 33156-7855
    Office: 786.268.6419
    Fax: 305.373.2294
    henry.salas@csklegal.com

     - and –

    THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
    DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
    BOWMAN AND BROOKE LLP
    101 West Big Beaver Road, Suite 1100

10

Troy, MI 48084
Office: 248.205.3300
Fax: 248.205.3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**Attorneys for Defendant TESLA, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2023, I electronically file the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

ADAM T. BOUMEL, ESQ.
Florida Bar No.: 0110727
DARREN J. ROUSSO, ESQ.
Florida Bar No.: 97410
THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway, Suite 1520
Miami, FL 33156
305.670.6669 Tel
adam@roussolawfirm.com
SERVICE EMAILS:
pleadings@roussolawfirm.com (primary)
Frank@roussolawfirm.com (secondary)

**Attorneys for Plaintiff Dillon Angulo**

TODD POSES, ESQ.
Florida Bar No.: 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, Florida 33131
305.577.0200 Tel
305.371.3550 Fax
tposes@posesandposes.com
maria@posesandposes.com

**Attorneys for Plaintiff Neima Benavides**

Respectfully submitted,

By: _s/ Henry Salas_____

28600970v2

EXHIBIT "C"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
FLORIDA

Case No.: 21-cv-21940-BLOOM/Otero-Reyes

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

      Defendant.

_____/


DILLON ANGULO,             Case 1:22-22607-KMM

      Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.

      Defendant.

_____/


## TESLA, INC.'S RESPONSE TO PLAINTIFF ANGULO'S FOURTH DOCUMENT REQUEST

     Tesla, Inc. ("Tesla"), through its undersigned counsel, responds to Plaintiff

Angulo's Fourth Requests for Production and states as follows:

## GENERAL OBJECTIONS

1. Tesla objects to Plaintiff's Instructions and Definitions to the extent they attempt to impose a requirement or burden on Tesla beyond the requirements of Fed. R. Civ. P. 26, 33 or any other applicable Fed. R. Civ. P or Local Rule.

## REQUESTS FOR PRODUCTION

**REQUEST NUMBER 30:** Produce copies of the following documents produced in *Harcourt v. Tesla,* case number 19CV358488, in the Superior Court of the State of California, for the County of Santa Clara:

TESLA-00009807-814
TESLA-00009840-843
TESLA-00009892-895
TESLA-00009943-945
TESLA-00010222-224
TESLA-00010229-230
TESLA-00010242-243
TESLA-00010306-308
TESLA-00010311-319
TESLA-00010371-377
TESLA-00010449-451
TESLA-00010461-466
TESLA-00010497-500
TESLA-00010518-523
TESLA-00010654-655
TESLA-00010723-730
TESLA-00011261-262
TESLA-00011266-270
TESLA-00011606-635
TESLA-00011640-641
TESLA-00011647-648
TESLA-00011652-659
TESLA-00011664-682
TESLA-00011691-699

TESLA-00011732-740
TESLA-00011750-756
TESLA-00011770-775
TESLA-00011780-781
TESLA-00011784
TESLA-00011802-806
TESLA-00011809-811
TESLA-00011814-815
TESLA-00011824-845
TESLA-00011870-875
TESLA-00011891-898
TESLA-00011913-915
TESLA-00011917-918
TESLA-00011921-923
TESLA-00011978-981
TESLA-00011987-991
TESLA-00012008-025
TESLA-00012035-037
TESLA-00012042-044
TESLA-00012053-055
TESLA-00012062-079
TESLA-00012080
TESLA-00012082-094
TESLA-00012100-105
TESLA-00012108-132
TESLA-00012151-169
TESLA-00013581-589
TESLA-00013602
TESLA-00013625
TESLA-00013631-635
TESLA-00013640-641
TESLA-00013713-716
TESLA-00014864-868
TESLA-00015821
TESLA-00017232-237
TESLA-00017248
TESLA-00017343
TESLA-00017353-355

TESLA-00017358-359

**RESPONSE**: Tesla objects to this Request because it represents Plaintiffs' counsel's violation of the Protective Order entered in the *Harcourt* matter, which prohibits sharing documents with parties and counsel in this matter.

**Date:** January 3, 2024              Respectfully submitted,

By: /s/ *Henry Salas*
    HENRY SALAS (815268)
    COLE SCOTT & KISSANE
    9150 S Dadeland Blvd Ste 1400
    Miami, FL 33156-7855
    Office: 786-268-6419
    Fax: 305-373-2294
    henry.salas@csklegal.com

      - and –

    THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
    DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
    BOWMAN AND BROOKE LLP
    Columbia Center
    101 W. Big Beaver Road
    Suite 1100
    Troy, MI  48084
    248.205.3300 / 248.205.3399 fax
    thomas.branigan@bowmanandbrooke.com
    drew.branigan@bowmanandbrooke.com

    ***Attorneys for Defendant TESLA, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2024, I electronically file the foregoing paper with the Court via CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| ADAM T. BOUMEL, ESQ.<br>Florida Bar No.: 0110727<br>THE ROUSSO, BOUMEL LAW FIRM, PLLC.<br>9350 South Dixie Highway<br>Suite 1520<br>Miami, Florida 33156<br>(305) 670-6669<br>Adam@roussolawfirm.com<br>SERVICE EMAILS:<br>pleadings@roussolawfirm.com (primary) Frank@roussolawfirm.com (secondary) | DARREN J. ROUSSO, ESQ.<br>Florida Bar No.: 97410<br>THE ROUSSO BOUMEL LAW FIRM PLLC<br>9350 South Dixie Highway<br>Suite 1520<br>Mimi, FL 33156<br>305-670-6669<br>Darren@roussolawfirm.com<br>SERVICE EMAILS:<br>pleadings@roussolawfirm.com<br>Frank@roussolawfirm.com |
| ***Attorneys for Plaintiff*** | ***Attorneys for Plaintiff*** |

Respectfully submitted,

By: /s/ *Henry Salas*

    HENRY SALAS (815268)
    COLE SCOTT & KISSANE
    9150 S Dadeland Blvd Ste 1400
    Miami, FL 33156-7855
    Office: 786-268-6419
    Fax: 305-373-2294
    henry.salas@csklegal.com

    - and –

    THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
    DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
    BOWMAN AND BROOKE LLP
    Columbia Center
    101 W. Big Beaver Road
    Suite 1100
    Troy, MI  48084
    248.205.3300 / 248.205.3399 fax
    thomas.branigan@bowmanandbrooke.com
    drew.branigan@bowmanandbrooke.com

    ***Attorneys for Defendant TESLA, Inc.***

EXHIBIT "D"

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

      Defendant.

_____/

DILLON ANGULO,                  Case 1:22-22607-KMM

      Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.

      Defendant.

_____/

## TESLA, INC.'S RESPONSE TO PLAINTIFF ANGULO'S FIFTH DOCUMENT REQUEST

      Tesla, Inc. ("Tesla"), through its undersigned counsel, responds to Plaintiff

Dillon Angulo's Fifth Request for Production, and states as follows:

## GENERAL OBJECTIONS

1. Tesla objects to Plaintiff's instruction requesting Tesla to "identify the source of the information and indicate the last date the information was gathered" as it imposes a burden on Tesla beyond Fed. R. Civ. P. 26 and 34.

2. Tesla objects to Plaintiff's definition of "SUBJECT SYSTEM" as beyond the scope of discovery in this case under Fed. R. Civ. P. 26. The only "system" allegedly at issue in this case would be those that the subject vehicle was equipped with as of April 25, 2019. Thus, the inclusion of "'Full Self Driving' packages" and "any other related systems…off the SUBJECT VEHICLE" are irrelevant and outside the scope of discovery of this case. Further, discovery into such non-equipped systems is not proportionate to the needs of this case where the Plaintiff(s) did not elect to purchase access to such systems.

3. Tesla objects to Plaintiff's use and definitions of the phrases "Automated Driving System [ADS]" and "SUBJECT SYSTEM" because those phrases and definitions do not accurately define the advance driver assistance system (ADAS) in the 2019 Tesla Model S called "Autopilot" in that Plaintiff fails to include or inaccurately minimizes the driver as part of the Autopilot system. Thus, Plaintiff's definitions are an unfair attempt to redefine Autopilot in a way that is intentionally misleading. Autopilot includes Traffic Aware Cruise Control (TACC), which controls the vehicle's speed; Autosteer, which controls steering within the lane;

2

Automatic Emergency Braking; and Forward Collision Warning. However, Autopilot does not make the 2019 Tesla Model S a "self-driving car." Instead, Autopilot as a system was designed to include an alert and attentive driver who is in control of the vehicle at all times and the driver is advised by Tesla of Autopilot's limitations and the need to maintain control and responsibility for the vehicle at all times before Autopilot is initially engaged in the vehicle. The design of Autopilot with the driver included as an integral part of the system is consistent with the Society of Automotive Engineers (SAE) definitions of ADAS technology, Autopilot is a Level 2 system, which requires the driver to be in control at all times and constantly supervise the support features:



See, Society of Automotive Engineers, Standard J3016 Levels of Driving Automation (May 3, 2021), https://www.sae.org/blog/sae-j3016-update (last visited Sep. 18, 2023).

4. Tesla objects to the definition of "TESLA" as overly broad and not proportionate to the needs of this case under FED. R. CIV. P. 26 specifically as it pertains to past employees, independent contractors, suppliers, and "attorneys and

law firms." Further, Tesla objects to the inclusion of "attorneys and law firms" in the definition of "TESLA" as it inherently would require the potential disclosure of attorney-client privileged or attorney work-product protected information.

## REQUESTS FOR PRODUCTION

**REQUEST NUMBER 31.:**  A complete copy in native format (.csv or .xlsx) of the "Customer Friendly" version of the Log File for the Subject Vehicle from the time it was purchased by George McGee through the time of the SUBJECT INCIDENT.

**RESPONSE**:  Tesla has already produced Car Log data from the subject Model S related to the subject incident and Tesla refers Plaintiffs to that data in response to this Request. Beyond this, Tesla objects to this request as overly broad, unduly burdensome and not limited in scope to a time that is reasonably related to the subject incident. Instead, this Requests demands that Tesla produce Car Log data for four months of driving before the subject incident. Thus, the temporal scope of this Request is not proportional to the needs of the case and not necessary to resolution of the case.

Subject to and without waiving these objections, Tesla will produce the data that the vehicle owner—Mr. McGee—could obtain himself were he to submit a data access request via his Tesla account, i.e., the "Customer Friendly" version of data reflecting occupant interactions with the vehicle that is in Tesla's possession.

**REQUEST NUMBER 32.:**  Tesla documents and ESI describing or specifying  the

4

area within one mile of the location of the Subject Incident that show all "no drive zones" where Autopilot was not able to be engaged or operate at the time of the Subject Incident.

**RESPONSE**: Tesla objects to this Request because the phrase "no drive zone" is vague, ambiguous, undefined by Plaintiffs and open to varying interpretations rendering it overbroad and unduly burdensome.

Subject to and without waiving these objections, with respect to the road leading up to the accident site, Plaintiffs already have the data from the subject Model S demonstrating that Autopilot was in use and did not log any "unavailable" intervals in the approximate mile leading up to the crash. To the extent Plaintiffs are demanding that Tesla also advise how or whether Autopilot would function on other roads in the area, or in the wooded areas adjacent to the roads, the Request seeks documents not relevant to this case or reasonably calculated to lead to the discovery of admissible evidence. Further, Tesla objects to the extent such analysis would require the premature production of expert witness information.

Beyond that, Tesla refers Plaintiffs to the Owner's Manual for the subject Model S which provides information about the type of roadways Autopilot is intended to be used on and information about driver responsibility while using Autopilot driver assistance features and conditions that may limit or change the performance of Autopilot. Further, and assuming Plaintiffs' use of the phrase "no drive zone" refers to the Operational Design Domain, Autopilot is an SAE Level 2

system for which there is no requirement of an Operational Design Domain.  Instead, the driver of a Level 2 system is responsible for the safe operation of the vehicle at all times and is responsible for deciding whether and when to engage the feature provided certain prerequisites for engagement are met (e.g., clear lane lines).

**REQUEST NUMBER 33.:**    Tesla documents and ESI describing other incidents involving a Tesla with Autopilot engaged where the Tesla vehicle and/or driver failed to safely negotiate or drive through a "T" intersection, resulting in the Tesla vehicle leaving the roadway.

**RESPONSE**:    Tesla objects to Request 33 because it is overly broad, unduly burdensome, and not proportional to the needs of the case.  Specifically, this request amounts to an impermissible "fishing expedition," and is not limited in scope to the Subject model, model year vehicle, or configuration of Autopilot hardware, software and firmware involved in this case, to collisions allegedly caused by the defect Plaintiff alleges to exist in the Subject Vehicle or to accident circumstances that are substantially similar to the circumstances of the subject accident.  Tesla also objects to this Request because it is so overly broad as to include information protected by the attorney-client privilege or "work product" doctrine.

Subject to and without waiving these objections, Tesla refers Plaintiff to its production of materials that Tesla exchanged with NHTSA in response to Requests 2 and 3 of Plaintiff Dillon Angulo's Second Requests for Production.  This includes data concerning Tesla crashes with stationary vehicles.   Beyond that, as Plaintiffs know, there were no Tesla vehicles sold to consumers at the time of the crash that

controlled for traffic signals or could make right/left turns such as required at a T-intersection.   Thus, the Request is argumentative in referring to any incident involving Autopilot use as one where the "Tesla vehicle…failed to safely negotiate or drive through a 'T' intersection" when Autopilot did not and could not perform such a task. Unless the driver took over steering and made the right/left turn, then the vehicle would do as advertised and as it did here: proceed straight.  Tesla objects to searching for other instances of drivers failing to intervene particularly when this driver, Mr. McGee, readily and repeatedly admitted he knew the vehicle was not autonomous and he would have to intervene.

**REQUEST NUMBER 34.:**   Tesla documents and ESI describing other incidents involving a Tesla vehicle with Autopilot engaged, where a vehicle departed the roadway in whole or in part because of the geometric presentation of the roadway.

**RESPONSE**: Tesla objects to Request 34 because the phrase "geometric presentation of the roadway" is vague, ambiguous, undefined by Plaintiffs and open to varying interpretations. Tesla also objects to this Request because it is not proportional to the needs of the case and not necessary to resolution of the case. Specifically, this request amounts to an impermissible "fishing expedition," and is not limited in scope to the Subject model, model year vehicle, or configuration of Autopilot hardware, software and firmware involved in this case, to collisions allegedly caused by the defect Plaintiff alleges to exist in the Subject Vehicle or to accident circumstances that are substantially similar to the circumstances of the

subject accident.  Tesla also objects to this Request because it is so overly broad as to include the premature disclosure of expert witness information and is thus protected by the "work product" doctrine.

**REQUEST NUMBER 35.:**  Tesla documents and ESI, including video, that show what the Subject Vehicle was detecting and processing in the ten minutes leading up to and including the Subject Incident. Such documents and ESI include images processed with APViz software and associated Snapshot data.

**RESPONSE**:

Tesla has already produced Car Log data from the subject Model S related to the subject incident and Tesla refers Plaintiffs to that data in response to this Request. Plaintiffs also possess or have access to a video from the subject Model S that shows the path of the Model S before and during the crash because of the driver's admitted negligence. Tesla does not have additional video from the vehicle beyond the video that has been produced.  Beyond this, Tesla objects to this Request because it is vague, overly broad, and not proportionate to the needs of the case.

Date:  January 3, 2024      Respectfully submitted,

By:  /s/ Henry Salas _____
HENRY SALAS (815268)
COLE SCOTT & KISSANE
9150 S Dadeland Blvd Ste 1400
Miami, FL 33156-7855
Office: 786-268-6419
Fax: 305-373-2294
henry.salas@csklegal.com

- and –

THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
BOWMAN AND BROOKE LLP
Columbia Center
101 W. Big Beaver Road
Suite 1100
Troy, MI  48084
248.205.3300 / 248.205.3399 fax
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

*Attorneys for Defendant TESLA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2024, I electronically file the foregoing

paper with the Clerk of the Court using the ECF system which will send notification

of such filing to the following:

ADAM T. BOUMEL, ESQ.
Florida Bar No.: 0110727
DARREN J. ROUSSO, ESQ.
Florida Bar No.: 97410
THE ROUSSO, BOUMEL LAW FIRM,
PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669
Adam@roussolawfirm.com
SERVICE EMAILS:
pleadings@roussolawfirm.com
(primary)
Frank@roussolawfirm.com
(secondary)

***Attorneys for Plaintiff Dillon Angulo***

Todd Poses, Esquire
Florida Bar No.: 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street Suite
1600
Miami, Florida 33131
(305) 577-0200 Tel
(305) 371-3550 Fax
tposes@posesandposes.com
maria@posesandposes.com

***Attorneys for Plaintiff Neima
Benavides***

Respectfully submitted,

By: /s/ *Henry Salas*

EXHIBIT "E"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-21940-BLOOM/Otazo-Reyes**

NEIMA BENAVIDES, *as Personal*
*Representative of the Estate of Naibel*
*Benavides Leon, deceased*,

        Plaintiff,

v.

TESLA, INC., *a/k/a Tesla Florida, Inc.*,

        Defendant

_____/

**Case No. 22-cv-22607-BLOOM**

DILLON ANGULO,

        Plaintiff,

v.

TESLA, INC., *a/k/a Tesla Florida, Inc.*,

        Defendant

_____/

**PLAINTIFFS' NOTICE OF DEPOSITION PURSUANT TO FED.R.CIV.P. 30(b)(6)**

TO:    TESLA, INC., DEFENDANT [Tesla], AND ITS ATTORNEYS:

       **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), the stenographic video-recorded deposition of a Tesla representative or representatives with knowledge about the subject matters listed below will be taken before a qualified Notary Public via zoom, on **February 26, 2024, at 10:00 a.m., PCT**, and thereafter by adjournment until the same shall be completed. A remote online notary public will administer the oath remotely. Prior

to the deposition, the Court Reporting agency will provide the necessary information to access the remote electronic platform.

Notice is hereby given that the video is intended for use at trial.

Pursuant to Federal Rule of Civil Procedure 30(b)(6) Tesla is **required** to designate and fully prepare one or more officers, directors, managing agents or other persons who consent to testify on behalf of Tesla, and whom Tesla will fully prepare to testify regarding the following designated matters and as to such information that is known or reasonably available to Tesla's organization.  TESLA, INC., pursuant to FRCP 30(b)(6), shall designate and produce at deposition those of its officers, directors, managing agents, employees, or agents, who are most qualified to testify on its behalf as to the matters identified in the AREAS OF INQUIRY below.

## <u>DEFINITIONS</u>

<u>**DOCUMENT(S)**</u> is used in the broadest sense of the word and shall mean all original written, printed, typed, recorded, or graphic matter whatsoever, however produced or reproduced, of every kind, nature, and description, and all non-identical copies of both sides thereof, including, but not limited to, papers, letters, memoranda, correspondence, communications, electronic mail (e-mail) messages (existing in hard copy and/or in electronic storage), faxes, mailgrams, telegrams, cables, telex messages, notes, annotations, working papers, drafts, minutes, records, audio and video recordings, data, databases, other information bases, summaries, charts, tables, graphics, other visual displays, photographs, statements, interviews, opinions, reports, newspaper articles, studies, analyses, evaluations, interpretations, contracts, agreements, jottings, agendas, bulletin, notices, announcements, instructions, blueprints, drawings, as-builts, changes, manuals, publications, work schedules, journals, statistical data, desk, portable and computer calendars, appointment books, diaries, travel reports, lists, tabulations, computer printouts, data processing program libraries, data processing inputs and outputs, microfilms, microfiches, statements for services, resolutions, financial statements, governmental records, business records, personnel records, work orders, pleadings, discovery in any form, affidavits, motions, responses to discovery, all transcripts, administrative filings and all mechanical, magnetic, photographic and electronic records or recordings of any kind, including any storage media associated with computers, including, but not limited to, information on hard drives, floppy disks, backup tapes, and zip drives, electronic communications, including but not limited to, the Internet and shall include any drafts or revisions pertaining to any of the foregoing, all other things similar to any of the foregoing, however denominated by TESLA, any other data compilations from which information can be obtained, translated, if necessary, into a usable form and any other documents. For purposes of this request, any document which contains any note, comment, addition, deletion, insertion, annotation, or otherwise comprises a non-identical copy of another

document shall be treated as a separate document subject to production. In all cases where original and any non-identical copies are not available, "document(s)" also means any identical copies of the original and all nonidentical copies thereof. Any document, record, graph, chart, film or photograph originally produced in color must be provided in color. Furnish all documents whether verified by TESLA or not. If a document is not in the English language, provide both the original document and an English translation of the document.

**ELECTRONICALLY STORED INFORMATION (ESI)** should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, optically or otherwise possessed by TESLA or contained in TESLA's DATA STORAGE SYSTEM as:

a.    Digital communications (*e.g.*, Slack, e-mail, voice mail, instant messaging, internal chat features, text messages, and any other similar communication);

b.    E-Mail Server Stores (*e.g.*, Lotus Domino.NSF or Microsoft Exchange .EDB);

c.    Word processed documents (*e.g.*, Word or WordPerfect files and drafts);

d.    Spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets);

e.    Digital modeling and/or testing (*e.g.*, CAD, CATIA, AUTODESK ALIAS, DELMIA, any form of Finite Element Analysis, whether public or proprietary);

f.    Accounting Application Data (*e.g.*, QuickBooks, Money, Peachtree data);

g.    Image and Facsimile Files (*e.g.*, .PDF, .TIFF, .PNG, .JPG, .GIF images);

h.    Sound Recordings (*e.g.*, .WAV and .MP3 files);

i.    Video and Animation (*e.g.*, .AVI and .MOV files);

j.    Databases (*e.g.*, Access, Oracle, SQL Server data, SAP);

k.    Contact and Relationship Management Data (*e.g.*, Outlook, ACT!);

l.    Calendar and Diary Application Data (*e.g.*, Outlook PST, blog entries);

m.    Online Access Data (*e.g.*, Temporary Internet Files, History, Cookies);

n.    Presentations (*e.g.*, PowerPoint, Corel Presentations);

o.    Network Access and Server Activity Logs;

p.    Project Management Application Data;

q.    Backup and Archival Files (*e.g.*, Veritas, Zip, .GHO);

r.    JIRA Issue Tickets;

s.    MATLAB, SIMULINK and other model-based development programs and files;

t.    Agile Development Software and files;

u.    Python, Git and other source control platform files;

v.    "Toolbox" and other TESLA proprietary databases;

w.    Event Data Recorder (EDR) files (see 49 C.F.R. 563 for regulations about the contents of the event data recorder);

x.    TESLA vehicle "Log Files", including any applications such as Periscope used to collect, store, or analyze TESLA vehicle performance, including but not limited to collisions, engagement of ADS features, and/or any DMS features;

y.    Autopilot D-16 Reports;

z.    Confluence data;

aa.   FleetNet data.

**SUBJECT INCIDENT:** The crash that occurred on or about April 25, 2019, at approximately 9:14 PM, in Monroe County, Florida, as further detailed and referenced in Plaintiffs' Complaints.

**SUBJECT VEHICLE:** The 2019 TESLA MODEL S bearing Florida license plate number LFYB88, Vehicle Identification Number 5YJSA1E24KF302997.

**ANGULO VEHICLE:** The 2010 Chevrolet Tahoe, Vehicle Identification Number 1GNMCBE35AR246876 owned by Dillon Angulo's mother, Dawn Darlene Angulo, which was involved in the SUBJECT INCIDENT.

**AUTOPILOT:** Includes all AUTOPILOT related safety features, and convenience features as described in the Owner's Manual applicable to the SUBJECT VEHICLE.

**AUTOSTEER:** Includes all AUTOSTEER related features as described in the Owner's Manual applicable to the SUBJECT VEHICLE.

**COLLISION AVOIDANCE:** Refers to the COLLISION-AVOIDANCE ASSIST features as described in the Owner's Manual applicable to the SUBJECT VEHICLE.

**SPEED ASSIST:** Refers to the SPEED ASSIST features as described in the Owner's Manual applicable to the SUBJECT VEHICLE.

**AUTOMATIC EMERGENCY BRAKING (AEB):** Refers to the TESLA AUTOMATIC EMERGENCY BRAKING system on the SUBJECT VEHICLE as described in the Owner's Manual applicable to the SUBJECT VEHICLE.

**SIGNAL(s):** Refers to data such as appears in the "signal name" column of Bates Numbers BENAVIDES-00001244-00001319 produced by TESLA in this case, as well as sources of data such as appears in TESLA diagnostic log data files, CarLogs, log information captured by Event Data Recorders, or other DOCUMENTS or ESI regarding vehicle and/or occupant performance or behavior captured, stored, or transmitted to or from the SUBJECT VEHICLE and/or TESLA regarding the SUBJECT VEHICLE including but not limited to all signals related to: ALERT_, ACC_, AP_, APP_, APS_, BCCEN_, BDY_, BDY_BCCEN_, BCFALCD_, BDY_BCFALCD_, BCFALCP_, BDY_BCFALCP_, BCFDM_, BDY_BCFDM_, BCRDM_, BCRPM_, BCRM_, BCFRONT_, BDY_BCFRONT_, BCFPM_, BCFDM_, BCREAR_, BDY_BCREAR_, BCS2C_, BDY_BCS2C_, BCS2L_, BDY_BCS2L_, CH_DAS_, CH_DTR, CH_EPAS_, CH_ESP_, CHG, CHGPH1_, CHGPH2_, CHGPH3_, CH_GTW_, CHGVI_, CHGS_, CHGSVI_, CH_RCM_, CH_TSL_RND_, CH_VSL_, CP_, CMP_, DAS_, DCDC_, DDM_, DI_, DIS_, EAS_, EFUSE_, EPAS_, EPAS3P_, EPB_, EPBM_, ESP_, ETH_MCU_, IBST_, MSM_, GTW_, HVP_, IBST_, LRR_, MCU_, MSM_, OCS_, OCS1P_, PM_, PT_BMS_, PT_DI_, PT_DIS_, PDM_, PM_, PT_PM_, PT_, PTC_, RADC_, RCM_, RCCM_, SCCM_, SDM_, SEC_, SUN_, TAS_, THC_, TSL_, TOOL_, TPMS_, UI_, VCFRONT_, VCLEFT_, VCSEC_, VECTOR_, VSL_.

**DRIVER MONITORING SYSTEM (DMS):** This includes:

a.    any feature of a TESLA vehicle that involves the use of cameras, sensors, radar, and/or other technology used to determine whether the driver of a TESLA vehicle is looking at the road ahead, and/or engaged in the driving process consistent with that of a reasonable driver under the circumstances;

b.    technology and strategies to ensure appropriate driver engagement;

c.    any feature on a TESLA vehicle that automatically disengages any automated functions depending on the level of driver engagement;

d.    any feature on a TESLA vehicle that warns the driver if the driver shows signs of insufficient engagement in the driving process that might be unreasonable under the circumstances;

e.    any feature that warns or notifies persons outside the TESLA vehicle that the TESLA vehicle is being operated using some form of AUTOPILOT.

**AUTOPILOT USE RESTRICTIONS:** The conditions under which a given driver assist system or feature thereof is specifically designed to function, including, but not limited to, environmental, geographical, and time-of-day restrictions, and/or the requisite presence or absence of certain traffic or roadway characteristics.

**LEVEL 2 ADVANCED DRIVER ASSIST SYSTEMS (ADAS):** "LEVEL 2" means the same as and is coterminous with the definition of "Level or Category 2 - Partial Driving Automation" in SAE J3016 Taxonomy and Definitions for Terms Related to Driving Automation Systems for On-Road Motor Vehicles § 5.3 (April 2021) (i.e., a driver support feature on the vehicle that can control both steering and braking/accelerating simultaneously under some circumstances).

**DRIVABLE SPACE:** Refers to the area where a vehicle operating with ADAS can safely operate while using a driver support feature on the vehicle that can control both steering and braking/accelerating simultaneously and is used to inform driving decisions such as obstacle avoidance and trajectory planning.

**TESLA:** TESLA, Inc., all of its past and present OFFICERs and EMPLOYEEs, whether assigned to its principal offices or any of its field or other locations, including all of its divisions, subsidiaries (whether or not incorporated) and affiliated enterprises and all of their headquarters, regional, zone and other offices and their EMPLOYEES, and all AGENTS, contractors, consultants, attorneys and law firms and other persons engaged directly or indirectly (e.g., EMPLOYEE of a consultant) by or under the control of TESLA (including all business units and persons previously referred to), who are or, on or after January 1, 2011 were, involved in any way with any of the following related to the alleged defect in the SUBJECT VEHICLES:

a.    Design, engineering, analysis, modification or production (e.g. quality control);

b.    Testing, assessment or evaluation;

c.    Consideration or recognition of potential or actual defects, reporting, recordkeeping and information management (e.g., complaints, field reports, warranty information, part sales), analysis, claims, or lawsuits; or

d.      Communication to, from, or intended for zone representatives, FLEETs, dealers, or other field locations, including but not limited to people who have the capacity to obtain information from dealers.

## AREAS OF INQUIRY

**1.      Updates to AUTOPILOT and/or DMS After the SUBJECT INCIDENT:**

a.      the identification and substance of all DOCUMENTS and/or ESI and communications exchanged with any regulatory authorities, including but not limited to NHTSA and the NTSB, related to NHTSA's Part 573 Safety Recall Report 23V-838;

b.      the identification and substance of all DOCUMENTS and/or ESI and communications exchanged with any regulatory authorities, including but not limited to the NHTSA and the NTSB, related to any investigations of TESLA's AUTOPILOT, AUTOSTEER, and DMS;

c.      descriptions of all AUTOPILOT and/or DMS related Software or Firmware updates issued to TESLA vehicles **after NHTSA's Part 573 Safety Recall Report 23V-838;**

d.      for all AUTOPILOT and/or DMS related Software or Firmware updates issued to TESLA vehicles **after NHTSA's Part 573 Safety Recall Report 23V-838**, identification of:

  i.    how those updates changed vehicle operation and/or performance;
  ii.   whether the updates could have been made before the SUBJECT INCIDENT;
  iii.  The names, job titles, and if no longer employed, all known contact information for all TESLA employees and representatives who were involved in designing, programing, evaluating, and/or testing the updates;

e.      for all AUTOPILOT and/or DMS related Software or Firmware updates issued by TESLA **after NHTSA's Part 573 Safety Recall Report 23V-838**, identification of why those updates were made, including:

  i.    the recommendations and input of all TESLA employees and representatives in the decision to recall the vehicles;
  ii.   the identification and substance of all DOCUMENTS and/or ESI and correspondence reflecting the decision to recall the vehicles;
  iii.  the names, job titles, and if no longer employed, all known contact information for all TESLA employees and representatives who were involved in the decision to recall the vehicles;
  iv.   the substance of involvement of each TESLA employee and representative in the decision to recall the vehicles, and the dates of said involvement.

     f.     the description of updates to AUTOPILOT and/or DMS related Software or Firmware **after the SUBJECT INCIDENT and prior to NHTSA's Part 573 Safety Recall Report 23V-838**;

     g.     for the AUTOPILOT and/or DMS related Software or Firmware updates **after the SUBJECT INCIDENT and prior to NHTSA's Part 573 Safety Recall Report 23V-838**, identification of:

          i.     a description of how those updates changed the performance and or operation of the vehicles;

         ii.     whether the updates could have been made before the SUBJECT INCIDENT;

       iii.     names, job titles, and if no longer employed, all known contact information for all TESLA employees and representatives who were involved in the design, evaluation, and/or testing of the updates;

       iv.     the recommendations and input of all TESLA employees and representatives in the decision-making process to allow the updates to be issued to TESLA customers;

        v.     the identification and substance of all DOCUMENTS and/or ESI and correspondence reflecting the decision to update the software;

       vi.     the names, job titles, and if no longer employed, all known contact information for all TESLA employees and representatives who were involved in the decision to update the software;

      vii.     the substance of involvement of each TESLA employee and representative in the decision to update the software, and the dates of said involvement.

**2.**     **Design of and Updates to AUTOPILOT and/or DMS related systems before the SUBJECT INCIDENT.**

     a.     descriptions of all TESLA AUTOPILOT and/or DMS related Software or Firmware updates sent to the SUBJECT VEHICLE;

     b.     descriptions of all information that accompanied TESLA AUTOPILOT and/or DMS related Software or Firmware updates sent to the SUBJECT VEHICLE;

     c.     for all updates regarding AUTOPILOT and/or DMS related Software or Firmware sent to the SUBJECT VEHICLE, identification of:

          i.     a description of how those updates changed the operation and/or performance of the SUBJECT VEHICLE;

         ii.     the names, job titles, and if no longer employed all known contact information for all TESLA employees and representatives who were involved in the design, programing, evaluation, and/or testing of these Software or Firmware updates;

       iii.     the criteria used to determine that updates to Software or Firmware would perform as intended;

<ol type="i" start="4">
<li>the criteria used to determine that updates to Software or Firmware did perform as intended after its release to customers;</li>
<li>the recommendations and input of all TESLA employees and representatives in the decision-making process regarding whether the updates were safe to be issued to customers;</li>
<li>the identification and substance of all DOCUMENTS and/or ESI and correspondence reflecting that decision-making process;</li>
<li>the substance of involvement of each TESLA employee and representative in that decision-making process, and the dates of said involvement;</li>
</ol>

d.    the identification of all studies, testing, experiments, and any other research and development activities TESLA relied on in deciding to make AUTOPILOT and its related functions available for use by TESLA customers;

e.    all engineering and testing of TESLA's AUTOPILOT and/or DMS systems before any of these features were available to any purchasers of TESLA vehicles;

f.    the recommendations and input of TESLA employees in the decision-making process to allow these features to be available to customers;

g.    the identification and substance of all DOCUMENTS and/or ESI and correspondence reflecting this decision-making process;

h.    the names, job titles, and if no longer employed, all known contact information for all TESLA employees and representatives who were involved in this decision-making process;

i.    the substance of involvement of each TESLA employee and representative in this decision-making process, and their dates of involvement.

**3.    Beta Testing – subtopics include:**

a.    the meaning of TESLA's statement in the Owner's Manual for the SUBJECT VEHICLE that "AUTOSTEER is a BETA feature";

b.    the reasons why AUTOPILOT/AUTOSTEER and its related functions were made available for use by customers while in Beta;

c.    the identification and substance of all DOCUMENTS AND/OR ESI and/or ESI and correspondence reflecting TESLA's decision to make AUTOPILOT/AUTOSTEER and related functions available for use while in Beta.

**4.    TESLA's AUTOPILOT USE RESTRICTIONS, including but not limited to Geofencing of AUTOSTEER [not already covered in depositions of Akshay Phatak taken July 20 and August 2, 2023] -- subtopics include:**

a.  TESLA's capability to implement AUTOPILOT USE RESTRICTIONS during operation of AUTOPILOT and its related features on roads with cross-traffic and in locations that are outside of that which TESLA intended AUTOPILOT to be used by customers;

b.  all actions taken and being taken regarding AUTOPILOT USE RESTRICTIONS during operation of AUTOPILOT on roads and in locations that are outside the places where TESLA intended AUTOPILOT and its related features to be used by customers;

c.  TESLA's evaluation and/or analysis of fleet data relating to AUTOPILOT's use in places where TESLA intended AUTOPILOT and its related features not to be used by customers;

d.  standards, best practices and research relied upon by TESLA in development of its AUTOPILOT USE RESTRICTIONS, and/or the determination of places where TESLA intended AUTOPILOT and its related features not to be used by customers;

e.  TESLA's evaluation of and consideration of data, research and studies regarding driver complacency with ADAS, factors that influence driver take-over time when ADAS are in use, and impact of ADAS on driver situational awareness and attention to safe driving tasks;

f.  all actions taken by TESLA regarding NTSB Safety Recommendations H- 17-041 and H-17-042;

g.  the descriptions referred to on Bates No. BENAVIDES-00001319 regarding FleetNet's Telemetry Record Definitions;

h.  all actions taken by TESLA involving AUTOPILOT USE RESTRICTIONS in response to the May 7, 2016, incident involving Joshua Brown;

i.  all actions taken by TESLA involving AUTOPILOT USE RESTRICTIONS in response to the March 23, 2018, incident involving Walter Huang;

j.  the identification of all warnings and instructions (including the substance of the warning/ instruction, the manner in which it was provided, and the dates provided) that TESLA provided to the drivers and purchasers of its vehicles regarding what streets and roadways AUTOPILOT and its related functions were intended by TESLA to be operated on, and conversely what streets and roadways AUTOPILOT and its related functions TESLA intended for them not be operated on;

    k.      for each warning and/or instruction identified in response to the above area of inquiry:

        i.    the purpose for such warning and/or instruction;

       ii.    the identification of all studies, testing, experiments, and any other research and development activities utilized in making the decision to provide such warning and/or instruction;

     iii.    the recommendations and input of TESLA employees, representatives and consultants in the decision to provide such warning or instruction;

     iv.    the identification and substance of all DOCUMENTS and/or ESI and correspondence reflecting the decision to provide such warning and/or instruction;

      v.    the names, job titles, and if no longer employed all known contact information for all TESLA employees and representatives who were involved in the decision-making process regarding such warning or instruction;

     vi.    the substance of involvement of each TESLA employee and representative in the decision-making process regarding such warning or instruction, and the dates of said involvement;

    l.      the identification of all warnings and instructions (including the substance of the warning/ instruction, the way it was provided, and the dates provided) that TESLA provided specifically to George Brian McGee regarding what streets and roadways TESLA intended AUTOPILOT and its related functions to be operated on, and conversely what streets and roadways TESLA intended AUTOPILOT and its related functions not to be operated on.

**5.**    **Driver Monitoring System (DMS) Development for AUTOPILOT/AUTOSTEER not already covered in depositions of Akshay Phatak taken July 20 and August 2, 2023] -- subtopics include:**

    a.      description of any DMS on the SUBJECT VEHICLE;

    b.      reasons why a particular DMS detection method was selected;

    c.      alternative DMS detection methods considered;

    d.      alternative DMS detection methods evaluated;

    e.      dates and details of any changes to the DMS scheme and warnings between 2012 and the present (including identification of changes made, reasons for changes and dates of changes across all versions of AUTOPILOT/AUTOSTEER software);

f.    all actions taken and being taken in response to the NHTSA's Part 573 Safety Recall Report 23V-838, and findings that AUTOPILOT features may not have sufficient controls to prevent driver misuse;

g.    knowledge that warnings could be repeatedly ignored by the driver without causing AUTOPILOT/AUTOSTEER to disengage;

h.    TESLA's evaluation and/or analysis of fleet data relating to its DMS;

i.    standards, best practices and research relied upon by TESLA in development of its DMS;

j.    TESLA's evaluation of and consideration of data, research and studies regarding driver complacency with ADAS, factors that influence driver take-over time when ADAS are in use, and impact of ADAS on driver situational awareness, and attention to safe driving;

k.    actions taken by TESLA since NTSB Safety Recommendations H- 17-041 and H-17-042 regarding TESLA's DMS systems;

l.    actions taken by TESLA after the May 7, 2016, incident involving Joshua Brown regarding TESLA's DMS systems;

m.    actions taken by TESLA after the March 23, 2018, incident involving Walter Huang regarding TESLA's DMS systems;

n.    actions taken by TESLA after the March 1, 2019, incident involving Jeremy Banner regarding TESLA's DMS systems;

o.    the identification of all warnings and instructions (including the substance of the warning/instruction, the manner in which it was provided, and the dates provided) that TESLA provided to the drivers and purchasers of its vehicles regarding driver attentiveness and/or driver complacency while using AUTOPILOT and its related functions;

p.    for each warning and/or instruction identified in response to the above area of inquiry:

    i.    the reason and purpose for such warning and/or instruction;
    ii.    the identification of all studies, testing, experiments, and any other research and development activities utilized in making the decision to provide such warning and/or instruction;
    iii.    the recommendations and input of all TESLA employees, representatives, and consultants in the decision to provide such warning or instruction;

    iv.  the identification and substance of all DOCUMENTS and/or ESI and correspondence reflecting the decision to provide said warning or instruction;

    v.  the names, job titles, and if no longer employed all known contact information for all TESLA employees and representatives who were involved in the decision-making process to provide said warning or instruction;

    vi.  the substance of involvement of each TESLA employee and representative in the decision-making process, and their dates of involvement in the decision-making process to provide said warning or instruction;

q.    the identification of all warnings and instructions (including the substance of the warning/instruction, the manner in which it was provided, and the dates provided) that TESLA provided specifically to George Brian McGee regarding driver attentiveness and/or driver complacency while utilizing AUTOPILOT and its related functions in the SUBJECT VEHICLE.

**6.    AUTOMATIC EMERGENCY BRAKING (AEB) – subtopics include:**

a.    the reasons why AEB failed to stop or slow the SUBJECT VEHICLE in the SUBJECT INCIDENT;

b.    the decision-making process involved in designing AEB to operate the way it did in the SUBJECT VEHICLE at or around the time of the SUBJECT INCIDENT;

c.    TESLA's evaluation and/or analysis of fleet data relating to its AEB;

d.    standards, best practices and research relied upon by TESLA in development of its AEB;

e.    all actions taken by TESLA since NTSB Safety Recommendations H-17-041 and H-17-042 regarding its AEB systems;

f.    all actions taken by TESLA in response to the May 7, 2016, incident involving Joshua Brown regarding its AEB systems; and

g.    all actions taken by TESLA in response to the March 23, 2018, incident involving Walter Huang regarding its AEB systems;

h.    actions taken by TESLA after the March 1, 2019, incident involving Jeremy Banner regarding TESLA's DMS systems.

**7.    Specifics of McGee's car: the Delivery Process – subtopics include:**

a.    identification of the substance and all terms of any contracts and sales DOCUMENTS and/or ESI entered between George Brian McGee and TESLA;

b. identification of the substance and all line items of George Brian McGee's mobile and online ordering summary for the SUBJECT VEHICLE;

c. identification of the substance of all line items on the window sticker or any substantially similar document related to the SUBJECT VEHICLE;

d. identification of the full name of all standard AUTOPILOT related functions and features which the SUBJECT VEHICLE was originally equipped with;

e. identification of the full name of all AUTOPILOT related functions and features which were added as options for the SUBJECT VEHICLE at the time of sale to George Brian McGee;

f. identification of all interactions by and between George Brian McGee and any TESLA employees or representatives;

g. identification of the details of the car delivery process for George Brian McGee regarding the SUBJECT VEHICLE;

h. identification of all training, instruction, and/or education provided by TESLA to George Brian McGee related to the operation of the SUBJECT VEHICLE.

**8. Specifics of All Warnings Provided to Mr. McGee – subtopics include:**

a. identification of the nature and substance of all instructions and warnings provided by TESLA to George Brian McGee regarding the operation of AUTOPILOT;

b. identification of the way TESLA provided an owner's manual to George Brian McGee and how TESLA expected he would access the Owner's Manual in order to find information on how to safely use AUTOPILOT and its related features;

c. identification of each instance wherein George Brian McGee accessed the owners' manual, including the dates and the specific subjects that he accessed.

**9. Tesla's Interpretation of Car Log, Diagnostic Log Data, SIGNALS, and Other Data Relating to the Subject Vehicle –  subtopics include:**

a. data and ESI, including Car Log files, Diagnostic Log Data, SIGNALS, and other data regarding the operation of AUTOPILOT and its various components, including but not limited to AUTOSTEER, during the drive cycle involving the SUBJECT INCIDENT;

b. data and ESI, including Car Log files, Diagnostic Log Data, SIGNALS, and other data concerning the operation of all DMSs during the drive cycle involving the SUBJECT INCIDENT;

c.    data and ESI, including Car Log files, Diagnostic Log Data, SIGNALS, and other data concerning the operation of AEB in the SUBJECT VEHICLE during the ten seconds leading up to and including the SUBJECT INCIDENT; and

d.    all DOCUMENTS and ESI concerning the SUBJECT VEHICLE, not including attorney work product or attorney client communications.

**10.    Bates No. BENAVIDES-00001244 – Catalog of Signal Names – subtopics include:**

a.    identification of the meaning of various SIGNALS listed in Bates No. BENAVIDES-00001244;

b.    comparison of the names of various SIGNALS listed in Bates No. BENAVIDES-00001244 with Log Files, or "Diagnostic Log Data", TESLA has produced regarding the SUBJECT VEHICLE;

c.    identification of SIGNALS available for compiling Log Files, or "Diagnostic Log Data", regarding the SUBJECT VEHICLE;

d.    identification of all DOCUMENTS and/or ESI and any other material listing all SIGNALS and video files that are recorded to any data source regarding the SUBJECT VEHICLE, including definitions of each signal;

e.    identification of any different SIGNALS currently being used to create Log Files, or Diagnostic Log Data, that were not in use by TESLA regarding the SUBJECT VEHICLE;

f.    the timing of when certain SIGNALS used to create Log Files, or Diagnostic Log Data, became available for use by TESLA.

**11.    Real Time Data Value System (RTDV) – subtopics include:**

a.    identification of any RTDV system used by TESLA;

b.    the purpose and function of any such RTDV system used by TESLA;

c.    description of the data generated by any RTDV system used by TESLA;

d.    the identities of TESLA employees most familiar with any RTDV system used by TESLA;

e.    the identity and location of DOCUMENTS and/or ESI reflecting data from any RTDV system used by TESLA;

f.    the identity and location of DOCUMENTS and/or ESI reflecting data from any RTDV system used by TESLA regarding the SUBJECT VEHICLE;

g.     description of any TESLA RTDV system involved with the SUBJECT VEHICLE;

h.     description of any data regarding any RTDV system TESLA possesses or has possessed regarding the SUBJECT VEHICLE;

i.     identification of persons involved in the collection, interpretation, evaluation, or calculations of any RTDV system regarding the SUBJECT VEHICLE.

**12.     FleetNet (see BENAVIDES-00001244) – subtopics include:**

a.     identification of any FleetNet system used by TESLA;

b.     the purpose and function of any such FleetNet system used by TESLA;

c.     description of the data generated by any FleetNet system used by TESLA;

d.     the identities of TESLA employees most familiar with any FleetNet system used by TESLA;

e.     the identity and location of DOCUMENTS and/or ESI reflecting data from any FleetNet system used by TESLA;

f.     the identity and location of DOCUMENTS and/or ESI reflecting data from any FleetNet system used by TESLA regarding the SUBJECT VEHICLE;

g.     description of any TESLA FleetNet system involved with the SUBJECT VEHICLE;

h.     description of any data regarding any FleetNet system TESLA possesses or has possessed regarding the SUBJECT VEHICLE;

i.     identification of persons involved in the collection, interpretation, evaluation, or calculations of any FleetNet system regarding the SUBJECT VEHICLE.

**13.     Marketing and Advertisements – subtopics include:**

a.     identification of the substance and specifics of each advertisement, press campaign, or other public statement made by TESLA relating to the functionality and capabilities of AUTOPILOT and its related functions made at any time prior to the date of the SUBJECT INCIDENT;

b.     identification of the TESLA employees who participated in generating the content of each such advertisement, press campaign, or other public statement made by TESLA relating to the functionality and capabilities of AUTOPILOT and its related functions made at any time prior to the date of the SUBJECT INCIDENT.

14. **Vehicle Safety Report – And Relative Safety of AUTOPILOT Compared with Manual Driving and Other Vehicles [not already covered in depositions of Akshay Phatak taken July 20 and August 2, 2023] – subtopics include:**

    a.    identification of all persons involved with compiling, interpreting and promulgating the Vehicle Safety Report (VSR);

    b.    identification of the data used by TESLA to calculate the number of crashes per miles driven for TESLA vehicles from 2012 to the present;

    c.    identification of the data used by TESLA to calculate the number of crashes per miles driven for all non-TESLA vehicles;

    d.    the reasons why TESLA chose to start using D16 Reports as its basis for calculating VSR data;

    e.    identification of the methods TESLA used prior to the third quarter of 2018 to evaluate the relative safety of driving using AUTOPILOT compared to driving manually;

    f.    identification of all people involved in compiling data regarding the relative safety of driving using AUTOPILOT compared with driving manually prior to the third quarter of 2018;

    g.    correlation of crash statistics with Software/Firmware releases

    h.    estimates of numbers of crashes of TESLA vehicles in which airbags or seat restraint pretensioners did not activate and the basis for such estimates;

    i.    the relative safety of TESLA vehicles being driven with AUTOPILOT active compared to TESLA vehicles being driven manually;

    j.    the relative safety of TESLA vehicles being driven with AUTOPILOT active compared to non-TESLA vehicles;

    k.    the relative safety of TESLA vehicles being driven with AUTOPILOT active compared to non-TESLA vehicles being driven with some type of ADAS activated.

15. **TESLA's Investigations into Other AUTOPILOT Crashes – subtopics include:**

    a.    the identification of all other crashes known by or investigated by TESLA wherein it was found or alleged that the crash occurred with AUTOPILOT or its related functions active within five seconds of the crash. For each such crash, the identification of:

        i.   all facts known by TESLA regarding how the crash occurred;

       ii.   the detailed nature of the allegations related to the involvement of AUTOPILOT;

     iii.   the full names of the person(s) involved;

     iv.   the full names of all lawyers involved in making such claims or allegations;

      v.   the detailed findings of TESLA's investigation.

b.     The identification of all other crashes known by or investigated by TESLA wherein it was found or alleged that the crash occurred while AUTOPILOT/AUTOSTEER was engaged on a non-limited access roadway. For each such crash, the identification of:

        i.   all facts known by TESLA regarding how the crash occurred;

       ii.   the detailed nature of the allegations related to the involvement of AUTOPILOT/AUTOSTEER;

     iii.   the full names of the person(s) involved;

     iv.   the full names of all lawyers involved in making such claims or allegations;

      v.   the detailed findings of TESLA's investigation.

c.     The identification of all other crashes known by or investigated by TESLA wherein it was found or alleged that the crash occurred while a TESLA driver was not adequately paying attention while engaging AUTOPILOT/AUTOSTEER. For each such crash, the identification of:

        i.   all facts known by TESLA regarding how the crash occurred;

       ii.   the detailed nature of the allegations related to the involvement of AUTOPILOT/AUTOSTEER;

     iii.   the full names of the person(s) involved;

     iv.   the full names of all lawyers involved in making such claims or allegations;

      v.   the detailed findings of TESLA's investigation.

**16.    International Issues – subtopics include:**

a.     identification and description of international regulations regarding the use, availability and name of AUTOPILOT;

b.     communications and DOCUMENTS AND/OR ESI and/or ESI exchanged between TESLA and any international regulatory authorities pertaining to AUTOPILOT;

c.     regulations involving driver monitoring, driver alerts, and geofencing.

17. **TESLA and Ryan McCarthy's Involvement in Any Government-related Investigation of this Incident – subtopics include:**

    a.    why TESLA and Ryan McCarthy involved themselves in the Florida Highway Patrol investigation of the SUBJECT INCIDENT;

    b.    all facts related to any involvement by TESLA or Ryan McCarthy with any investigation of the SUBJECT INCIDENT;

    c.    the identities of all people, besides TESLA legal counsel, or TESLA employees, who TESLA or Ryan McCarthy communicated with concerning the facts involved regarding the SUBJECT INCIDENT;

    d.    the dates of all communication between TESLA or Ryan McCarthy and any person, not including TESLA employees or legal counsel, which involved the investigation of the SUBJECT INCIDENT;

    e.    the factual substance of all communications by TESLA and/or Ryan McCarthy with anyone concerning the facts involved in the SUBJECT INCIDENT – this does not include attorney-client communications.

18. **Issues Related to DRIVABLE SPACE – subtopics include:**

    a.    where the DRIVABLE SPACE was in the area within one-quarter mile of the intersection involved in the SUBJECT INCIDENT;

    b.    how the SUBJECT VEHICLE calculated the DRIVABLE SPACE at the intersection;

    c.    what the SUBJECT VEHICLE was programmed to do in relation to the DRIVABLE SPACE at the intersection;

    d.    TESLA's decision-making process for determining how to program the SUBJECT VEHICLE and the AUTOPILOT/AUTOSTEER system regarding DRIVABLE SPACE;

    e.    the identity of all TESLA employees who participated in the decision-making process for determining how to program the SUBJECT VEHICLE and the AUTOPILOT/AUTOSTEER system regarding DRIVABLE SPACE;

    f.    TESLA's decision-making process for deciding not to use offline high-definition maps combined with online high-precision localization and/or lidar sensing to determine DRIVABLE SPACE;

    g.    issues related to annotated videos of the last five (5) minutes leading to the SUBJECT INCIDENT, such as:

  i. what information they processed;

  ii. why the videos processed this information;

  iii. what TESLA intended for the car to do in response to the information processed.

## DESCRIPTION OF MATERIALS TO BE PRODUCED

  Deponent is required to bring to his/her deposition the materials or categories of materials described below:

### GENERAL REQUESTS PERTAINING TO ALL SUBJECTS

**REQUEST FOR PRODUCTION NO. 1:** All DOCUMENTS and/or ESI read or reviewed in any fashion (including documents that were read to the witness without having been seen by the witness) in preparation for giving testimony in this action (if the DOCUMENTS were previously produced by any Defendant, the witness could identify the numbers on the DOCUMENTS reviewed rather than producing a hard copy).

**REQUEST FOR PRODUCTION NO. 2:** All DOCUMENTS and/or ESI read or reviewed in any fashion (including documents that were read to the witness without having been seen by the witness) that have refreshed the recollection of the witness relative to any testimony in this action (if the DOCUMENTS were previously produced by any Defendant, the witness could identify the numbers on the DOCUMENTS reviewed rather than producing a hard copy).

**REQUEST FOR PRODUCTION NO. 3:** All DOCUMENTS and/or ESI that name any of the Plaintiffs, George McGee, or the SUBJECT VEHICLE, not including attorney client privileged or attorney work product information.

### REQUESTS RELATED TO DMS

**REQUEST FOR PRODUCTION NO. 4:** All DOCUMENTS and/or ESI that reflect the design, development, and testing of the DMS for TESLA's vehicles that operate when an AUTOPILOT system is activated, including but not limited to DOCUMENTS that reflect

deliberation regarding the DMSs available for use when AUTOPILOT and its related systems such as Autosteer and Traffic Aware Cruise Control are operating.

## REQUESTS RELATED TO AUTOPILOT GEOFENCING

**REQUEST FOR PRODUCTION NO. 5:**   All DOCUMENTS and/or ESI that reflect the design, development, and testing of the AUTOPILOT USE RESTRICTIONS for TESLA's AUTOPILOT system, including but not limited to DOCUMENTS that reflect deliberation regarding the AUTOPILOT USE RESTRICTIONS during use of AUTOPILOT and its related systems such as Autosteer and Traffic Aware Cruise Control.

## REQUESTS RELATED TO AEB

**REQUEST FOR PRODUCTION NO. 6:**   All DOCUMENTS and/or ESI that reflect the design, development, and testing of the AEB system used in the SUBJECT VEHICLE, including but not limited to DOCUMENTS and/or ESI that reflect deliberations regarding the types of sensors used, number of sensors used, capabilities of the sensors, specifications of the sensors, desired performance of the sensors, and operational parameters of AEB.

## REQUESTS RELATED TO SUBJECT VEHICLE DATA

**REQUEST FOR PRODUCTION NO. 7:**   All DOCUMENTS and/or ESI relating to and including SIGNALS and other data stored on and/or transmitted from the SUBJECT VEHICLE between November 30, 2018, and May 31, 2019, including all data uploaded to TESLA, all visualization data, diagnostic log data, all Mission Planner data, all Road Estimator data, all Path Planner data, all visualization data, all control data, all real time data values, and including but not limited to any and all data that can be utilized by Kibana or LECT.

**REQUEST FOR PRODUCTION NO. 8:**   DOCUMENTS and/or ESI describing the Real Time Data Values "RTDV" system.

**REQUEST FOR PRODUCTION NO. 9:**   DOCUMENTS and/or ESI containing any Real Time Data Values "RTDV" system information regarding the SUBJECT VEHICLE.

**REQUEST FOR PRODUCTION NO. 10:**   DOCUMENTS and/or ESI regarding the SUBJECT VEHICLE having to do with FleetNet.

**REQUEST FOR PRODUCTION NO. 11:**   FleetNet Telemetry Record Definitions referred to on Bates No. BENAVIDES-00001319.

DATED January 24, 2024.

SLAVIK LAW FIRM LLC
3001 South Lincoln Ave., Ste. C-1
Steamboat Springs, CO 80487
(970) 457-1011
By:   **/s/ _Donald H. Slavik._**
Donald H. Slavik, Esq.
_Admitted Pro Hac Vice 02/02/2023_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2024, a true and correct copy of the foregoing was served via email to all counsel identified in the below service list.

By:     <u>/s/ ***Donald H. Slavik.***</u>
                Donald H. Slavik, Esq.

| | |
|---|---|
| **Cole, Scott & Kissane, PA**<br>9150 S. Dadeland Blvd., Ste. 1400<br>Miami, FL 33156<br>**Attn: Henry Salas, Esq.**<br>henry.salas@csklegal.com<br>leisy.martinez@csklegal.com<br>*Counsel for Defendant, Tesla, Inc.* | **Eaton & Wolk PL**<br>2665 South Bayshore Dr., Ste. 609<br>Miami, FL 33133<br>**Attn: Doug Eaton, Esq.**<br>deaton@eatonwolk.com<br>*Co-Counsel for both Plaintiffs* |
| **Bowman and Brooke LLP**<br>41000 Woodward Ave., Ste. 200E<br>Bloomfield Hills, MI 48304<br>**Attn: Thomas P. Branigan, Esq.**<br>**Attn: Drew P. Branigan, Esq.**<br>thomas.branigan@bowmanandbrooke.com<br>drew.branigan@bowmanandbrooke.com<br>*Counsel for Defendant, Tesla, Inc.* | |
| **Arias Sanguinetti Wang & Torrijos, LLP**<br>2200 Powell Street, Ste. 740<br>Emeryville, CA 94608<br>**Attn: Elise R. Sanguinetti, Esq.**<br>elise@aswtlawyers.com<br>ncservice@aswtlawyers.com<br>*Co-Counsel for both Plaintiffs* | |
| **Poses & Poses, PA**<br>169 East Flagler Street, Ste. 1600<br>Miami, FL 33156<br>**Attn: Todd Poses, Esq.**<br>tposes@posesandposes.com<br>Maria@posesandposes.com<br>*Counsel for Plaintiff, Neima Benavides* | |
| **The Rousso, Boumel Law Firm, PLLC**<br>9350 South Dixie Highway, Ste. 1520<br>Miami, FL 33156<br>**Attn: Adam T. Boumel, Esq.**<br>adam@roussolawfirm.com<br>*Counsel for Plaintiff, Dillon Angulo* | |