# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,　　　　　　　　　　　　　　　　Case No. 22-22607-KMM

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

### TESLA, INC.'S BRIEF CONCERNING MARCH 7 DISCOVERY HEARING

Tesla, Inc. ("Tesla"), through its undersigned counsel, submits its Brief Concerning March 7 Discovery Hearing in Opposition to Plaintiffs' Motion for Hearing (D.E. 177) and Plaintiffs' Supplemental Proffer Regarding Continued Discovery Issues in Support of the Parties' Joint Motion to Extend Discovery Deadlines (D.E. 176) ("Supplemental Proffer") in advance of the

Court's March 7, 2024 hearing on these pleadings. For the reasons stated below, Tesla requests that this Court **DENY** the relief requested in both briefs in their entirety.[1]

## Introduction

This case arises out of an April 25, 2019 two-vehicle collision. Non-party George McGee negligently drove his 2019 Tesla Model S ("the Vehicle") through a "T" intersection in Key Largo, Florida by ignoring a visible stop sign and overhead red flashing stop light. As a result of McGee's negligence, he slammed into a Chevrolet Tahoe legally parked at the end of the road, which subsequently struck Decedent Naibel Benavides and Plaintiff Dillon Angulo. As a result of the crash – and after settling lawsuits against McGee – Plaintiffs filed the instant cases against Tesla, alleging product liability claims. Tesla denies all allegations against it.

## Customer Friendly Set of Diagnostic Log Data

Tesla has agreed to produce any available "customer friendly" data for the Vehicle.

## "Complete Glossary" of Signals

Plaintiffs' Counsel insists that a "complete glossary" of signals exists for the 2019 Model S because he has obtained what he inaccurately labels as a "complete glossary" of signals for another Tesla vehicle in an unrelated case – *Huang v. Tesla*.[2] Plaintiffs grossly misstate Tesla's representations regarding the list of signals produced in *Huang*, and Plaintiffs' allegations contradict the materials attached to their own Supplemental Proffer and demonstrate a lack of understanding of the substantive distinctions between Tesla models, hardware versions and software versions.

---

[1] While Tesla originally joined Plaintiffs' Motion to Extend Discovery Deadlines (D.E. 175), Plaintiffs' Supplemental Proffer filed in support of the Motion is essentially a motion to compel which Plaintiffs indicated will be the subject of the March 7 hearing. Tesla adamantly opposes the claims asserted in the motion to compel, thinly veiled as a "Supplemental Proffer" to circumvent the Court's rules prohibiting the filing of discovery motions. *See* (D.E. 184)

[2] Additionally, by filing a list of Tesla's proprietary signals as an exhibit to Plaintiffs' Joint Supplemental Proffer, Plaintiffs' Counsel is in direct violation of the Protective Order he signed onto in *Huang v. Tesla*.

As Tesla has communicated to Plaintiffs' Counsel repeatedly in this case and in others, Tesla vehicles collect different signals depending on the model, model year, hardware, and software version of the vehicle. Further, what signals are logged during a particular drive cycle or day vary based on how the vehicle is operated (e.g., if no one opens the left rear door, that signal will not be logged). Indeed, the 2017 Tesla Model X (a sports utility vehicle) in the *Huang* case is substantially different from the 2019 Model S (a sedan) in the instant case. Regardless, a "complete glossary" of signals for an individual vehicle does not exist. Ironically, the explanation of the non-existence of a "dictionary of signals" is discussed *comprehensively* in the Declaration of Tesla engineer Eloy Rubio Blanco which was filed in an unrelated matter, and which Plaintiffs attached as an exhibit to their Supplemental Proffer.[3] *See* (D.E. 176-3). Mr. Rubio explained:

> 14. Translation of the entirety of the log data on the Subject Vehicle, including the more than 2,000 data signals, and the description of all of the signals, would be extremely time consuming, and in my experience, I would estimate it would take upwards of several weeks, if not months. I understand it has never been done. It would require Tesla to create a list of a very broad set of data, which would necessitate Tesla querying each component owner, or team of engineers, who uses the data, and get the information for each of the 2,000-plus signals. In addition, signals have changed over time; signals have been added and deprecated with firmware updates (which occur approximately every month) and hardware changes, and some differ between our vehicles (Models S/X/3/Y). I understand this is part of the reason Tesla does not maintain some comprehensive list or current dictionary of signals.

*See also id* at 11-15, 16-18. Simply put, Tesla cannot produce a document that does not exist.

### "Annotated" Videos

---

[3] Plaintiffs' Counsel is an attorney of record in the *Hsu* matter in which the Declaration was filed, and, in addition, he has access to the discovery production in *Huang*. *Huang* is another case involving product defect allegations about Tesla's Autopilot technology, and it involves a document production by Tesla of roughly 200,000 documents concerning Autopilot design, development, and testing, employee emails, software tickets, video clips, and machine learning images, as well as deposition testimony by more than ten Tesla employees and former employees with knowledge about Autopilot.

"Annotated" videos (which Tesla refers to as "augmented" videos) from the cameras on the Model S involved in this crash before and during the crash do not exist. Tesla has produced copies of all video clips recorded by the Vehicle's cameras on the date of the crash. (TESLA-00000001-00000008). As Tesla understands it, Plaintiffs are now requesting that Tesla take the video clips from the day of the crash and attempt to run them through its proprietary computer vision program to overlay various types of information onto the raw video so that Plaintiffs can then use those augmented videos for some unknown purpose. Tesla's vision program attempts to make predictions of what the vehicle's hardware and software detected during an incident, based on the firmware operating on the vehicle at the time. However, Tesla does not process every crash video through the vision programming in the ordinary course of business and is not in possession of an augmented video for this crash. Plaintiffs' Counsel has seen augmented video produced in another matter however, that crash occurred more recently and the video was processed through newer vision software that Tesla was not using when this crash occurred, and Tesla had the augmented clip such that it could be made available to that plaintiff.[4] That is not the case here. Tesla does not have an obligation to create new documents or materials for the purpose of production in discovery. *See* Fed. R. Civ. P. 34(a)(1); *see also Nazer v. Five Bucks Drinkery LLC*, 8:16 CV-2259, 2018 WL 1583640, at *2 (M.D. Fla. Apr. 2, 2018) (Federal Rule 34 "does not require a party to create new documents for production"); *see also Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-CIV, 2009 WL 291160, at *3 (S.D. Fla. Feb. 5, 2009).[5]

**Fed. R. Civ. P. 30(b)(6) Notice of Deposition**

---

[4] Importantly, he has *not* seen it in every matter he is litigating because it does not exist for all incidents.
[5] Tesla is not relying on augmented clips from this crash to defend itself because it does not have any. Consequently, the work Plaintiffs want Tesla to do amounts to expert work, including generating computer predictions of detections using firmware from four years ago. There is no basis for this demand.

As an initial matter, Plaintiffs' reliance on Florida law concerning the scope of discovery is misplaced. The Eleventh Judicial Circuit has unequivocally held that federal procedural law governs in federal diversity actions. *See ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1299 (11th Cir. 2018). Despite Plaintiffs' rather confusing arguments, the issue is not whether Plaintiffs have met the standard of pleading. Rather, it is whether the discovery sought is relevant to the claims alleged and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

Plaintiffs' proposed scope of testimony outlined in their Supplemental Proffer is overly broad, exceeding the claims they have made in this case and therefore disproportionate to the needs of the case, and inconsistent with the Federal Rules. Plaintiffs argue that they are entitled to discovery relating to "any aspect of Tesla's Autopilot System." However, Plaintiffs have not alleged that "any aspect" or every aspect of Tesla's Autopilot System caused the crash or is defective. Instead, Plaintiffs made very specific defect allegations in their Complaints, namely that the vehicle (1) the failed to detect and avoid the collision with an object ahead and (2) failed to adequately monitor McGee and "determine driver engagement." *See,* Plaintiff Benavides Complaint at ¶¶20, 23-24, and 25; *see also* Plaintiff Angulo Complaint at ¶¶38 and 43. Both Complaints are laser focused on these two issues. For example, the *Benavides* Complaint alleged:

20.  … the Vehicle *failed to detect the substantial profile of Chevrolet Tahoe parked directly in front of the Vehicle's path*….

\*   \*   \*

23.  The design defects in the Vehicle and Tesla's Autopilot system suite of technology included defective and unsafe characteristics such as *the failure to adequately monitor and determine driver-engagement*…

24.  The design defects in Tesla's Model X [*sic*] vehicle also includes additional defective and unsafe characteristics, such as the *failure to adequately determine stationary objects in front of the vehicle…specifically its forward obstacle detection and computer processing and camera visioning system*

5

> *failed to detect a side profile of a Chevrolet Tahoe parked directly in front of the Vehicle's path.*

Ex. A- Benavides Complaint at ¶20 and 23-24. (emphasis added). Similarly, the *Angulo* Complaint includes the following allegations:

> 38. An ordinary consumer would not have recognized the potential risks and dangers inherent in the operation and use of a Tesla vehicle with Autopilot engaged, including the fact that a *Tesla vehicle would be unable to recognize the end of a roadway, the presence of a stop sign, the presence of flashing red overhead lights, the presence of yellow caution traffic signs, and/or the presence of a stationary vehicle parked directly in front of its path.*
>
> \* \* \*
>
> 43.
>    a. Defects in the Vehicle caused the vehicle to *fail to adequately monitor and determine driver-engagement;*
>
>    b. Defects in the Vehicle caused the Vehicle to *fail to adequately detect and respond to obstacles in the Vehicle's path of travel;*
>
>    c. Defects in the Vehicle caused the Vehicle to *fail to adequately detect and respond to the end of a roadway;*
>
>    d. Defects in the vehicle caused the Vehicle to *fail to adequately detect and respond to traffic control devices in the Vehicle's path of travel;*

Ex. B - Dylan Angulo Complaint at ¶38 and 43 (emphasis added).

Thus, Plaintiffs' argument that they are entitled to discovery concerning "the defectiveness of <u>*any aspect*</u> of Tesla's Autopilot system" is neither consistent with the Federal Rules, nor their own allegations. *See* Dkt. 176 at pg. 12 (emphasis added). This Court's opinion in *Runton v. Brookdale Senior Living, Inc.* is instructive:

> **As the Eleventh Circuit has made clear,** even under Rule 26's relevancy requirement, the court "has the authority to confine discovery to the claims and defenses asserted in the pleadings" and **"the Parties [] have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."**

No. 17-60664-CIV, 2018 WL 1083493, at *6 (S.D. Fla. Feb. 27, 2018) (quoting *Liese v. Indian River Ct. Hosp. Dist.*, 701 F.3d 334, 335 (11th Cir. 2012). Plaintiffs' recent efforts to conduct discovery regarding unrelated topics such as the "restriction of Autopilot use," "Geofencing," and "Beta testing" have nothing to do with this case.[6] Particularly at this stage of the litigation, after years of opportunity to develop discovery and their defect theories[7], this demand to now broaden the scope of discovery from their allegations to "anything and everything Autopilot" is desperate and counterproductive.

## Tesla's Objections to Angulo's Requests for Production

### No. 13 of Angulo's Third Request for Production

No. 13 of Angulo's Third RFP asks Tesla to produce "applicable documents" that reflect by model and model year the number of vehicles Tesla has sold or leased "or operation" [*sic*] in the United States. Information regarding the number of vehicles sold bears no relation whatsoever to Plaintiffs' claims that the Vehicle's Autosteer and Automatic Emergency Braking failed to detect and avoid a collision with the Chevrolet Tahoe. Notwithstanding, Plaintiffs' Counsel Don Slavik and his expert already have access to publicly available sales data responsive to this Request. *See* Ex. C – Tesla's Responses to Angulo's Third Request for Production.

### No. 16 of Angulo's Third RFP and No. 30 of Angulo's Fourth RFP

No. 16 of Angulo's Third RFP asks Tesla to produce documents from the *Harcourt, et al v. Tesla* case. *See* Ex C and Ex D - Tesla's Response to Fourth Request for Production. Angulo's request for documents from *Harcourt* is a violation of the Protective Order entered in that case. Plaintiffs' Counsel is intimately aware of this as he is a signatory to the Protective Order in

---

[6] Additionally, Plaintiffs' Joint Motion for Leave to add these very claims was already **denied for lack of diligence**, and failure to demonstrate new facts warranting any amendment. *See* (D.E. 143) at pp. 4-6.
[7] It is worth noting that Mr. Angulo's counsel has actually tried an Autopilot crash case against Tesla so any feigned need to learn more about the driver assist feature is specious.

7

*Harcourt*. Specifically, that Order permits, in relevant part, sharing with attorneys of record in lawsuits "involving a claim that a 2016-2019 Tesla *Model X vehicle has a defect that causes uncommanded acceleration, or lacks sufficient barriers to prevent an operator from accidentally powering up the vehicle or shifting from Park to Drive.* See Ex. E - Protective Order entered in *Harcourt* at Section III (emphasis added). As indicated from the scope of this sharing provision, the *Harcourt* case is not an Autopilot case. Angulo's request for these documents constitutes two additional attempts by Mr. Slavik to circumvent the sharing provision of the *Harcourt* Protective Order. Maintaining the confidentiality of proprietary information is a necessity in the highly competitive automotive industry in general, which is why this and other courts have entered Protective Orders with stringent guidelines regarding sharing. Therefore, this Court should not take lightly Plaintiffs Counsel's attempt to circumvent a Protective Order in another case that does not involve Autopilot.

No. 32 of Angulo's Fifth Request for Production

No. 32 asks Tesla to produce documents describing "the area within one mile of the location of the Subject Incident that show all 'no drive zones' where Autopilot could not be engaged or operate at the time of the Incident." Plaintiffs already have data indicating that Autopilot was in use and did not log any "unavailable" intervals in the relevant time and space – one mile leading up to the crash. There are various factors that contribute to whether Autopilot is available to be engaged or not, so the only evidence from this vehicle with this driver's driving behavior shows that Autopilot was available and he engaged it and it remained engaged.[8] Therefore, Tesla's response to this Request remains, "none." To the extent Plaintiffs demand

---

[8] Had the driver or circumstances rendered Autopilot unavailable such that Autopilot was forced to disengage and the driver issued a "take over immediately" alert, that would be in the logs produced, and it is not.

8

more, they are asking for something that does not exist, namely some map of "no drive zones" independent of what the driver may be doing that makes Autopilot unavailable. *See* Ex. F – Tesla's Responses to Angulo's Fifth Request for Production.

Request 33 of Angulo's Fifth Request for Production

No. 33 asks Tesla to produce documents describing other incidents where Autopilot was engaged and the vehicle and/or driver "failed to safely negotiate or drive through a 'T' intersection, resulting in the Tesla vehicle leaving the roadway." Tesla objected because the Request was not limited in scope to the subject model, model year, or configuration of Autopilot hardware, software, and firmware involved in this case, or to collisions allegedly caused by the defect Plaintiffs allege to exist, or to crash circumstances substantially similar to the circumstances of the subject crash). Additionally, pursuant to this Court's prior Order defining the scope of other incidents, Tesla previously produced materials related to incidents in which Tesla vehicles crashed into stationary vehicles. *See* (D.E. 119) at ¶3. *See* Ex. F.

No. 34 of Angulo's Fifth Request for Production

No. 34 asks Tesla to produce documents "describing other incidents involving a Tesla vehicle with Autopilot engaged, where a vehicle departed the roadway in whole or in part because of the geometric presentation of the roadway." Tesla objected because the request is not limited in scope to the model, software, firmware, or Autopilot hardware configuration, all of which can render incidents substantially different from one another. This request is also without any temporal limitation and would include crashes that occurred prior to the subject crash.[9] Further, and as Tesla explained in its response, the phrase "geometric presentation of the roadway" was undefined and open to varying interpretations. Additionally, Plaintiffs do not allege that the design of the

---

[9] Additionally, as noted above, pursuant to this Court's prior Order defining the scope of other incidents, Tesla previously produced materials related to incidents in which Tesla vehicles crashed into stationary vehicles. *See* (D.E. 119) at ¶3.

9

roadway caused or contributed to this crash. This Request suffers from the same insurmountable challenge to collecting potentially responsive materials outlined in regards to No. 32, above. *See* Ex. F.

No. 35 of Angulo's Fifth Request for Production

No. 35 asks Tesla to produce documents "that show what the Subject Vehicle was detecting and processing in the ten minutes leading up to and including the Subject Incident." While Tesla disagrees with the temporal scope of this request, in its response, Tesla referred Plaintiff to the Diagnostic Log Data previously produced in this case, which contains signals from the sensors for the vehicle's Autopilot suite of features. While additional Diagnostic Log Data exists, Tesla's production includes the data that its engineers have determined relevant to crash investigations of any type, so Tesla believes its production is complete and Tesla is unaware of any other data which would be responsive to this request, as Tesla understands it.[10] *See* Ex. F.

**Plaintiffs' Notices of Taking Depositions of Tesla Employees**

Plaintiffs also noticed fact depositions of three Tesla employees. However, given the vast scope of Plaintiffs' 30(b)(6) deposition notice, and the large volume of deposition testimony about Autopilot already accessible to Plaintiffs' Counsel via access to discovery from *Huang,* Tesla suggested that it would be most prudent to depose the 30(b)(6) witness and then re-assess the requests for the depositions of additional Tesla employees. Tesla is confident that the 30(b)(6) deposition will eliminate the need for additional depositions.

---

[10] While the Parties discussed the possibility of the production of any available video recorded by the vehicle's cameras during the few minutes leading up the crash, Tesla has since confirmed no such video exists – Tesla has produced everything it has.

Date:  February 29, 2024                    Respectfully submitted,

                                                             *s/ Whitney V. Cruz*
**WHITNEY V. CRUZ**
Florida Bar No. 800821
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

- and –

**HENRY SALAS**
Florida Bar No. 815268
**COLE SCOTT & KISSANE**
9150 S Dadeland Blvd, Suite 1400
Miami, FL 33156-7855
Tel. 305-350-5300
Fax: 305-373-2294
henry.salas@csklegal.com

*Attorneys for Defendant TESLA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
**Darren J. Rousso, Esq.**
Florida Bar No. 97410
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
Adam@roussolawfirm.com
pleadings@roussolawfirm.com

*Attorneys for Plaintiff Dillon Angulo*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel. 305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

**Elise R. Sanguinetti, Esq.**
Admitted *Pro Hac Vice*
ARIA SANGUINETTI WANG & TORRIJOS, LLP
2200 Powell Street, Suite 740
Emeryville, CA 94608
Tel. 510-629-4877
Fax: 510-291-9742
elise@aswtlawyers.com
ncservice@aswtlawyers.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Donald H. Slavik, Esq.**
Admitted *Pro Hac Vice*
**David W. Terry, Esq.**
Admitted *Pro Hac Vice*
**Nicole L. Judge, Esq.**
Admitted *Pro Hac Vice*
SLAVIK LAW FIRM, LLC
3001 South Lincoln Avenue, Suite C-1
Steamboat Springs, CO 80487
Tel. 970-457-1011
Fax: 267-878-7697
dslavik@slavik.us
dterry@slavik.us
njudge@slavik.us
dcaudle@slavik.us

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*


                                                      s/ *Whitney V. Cruz*
                                                         Whitney V. Cruz