UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,                                                  Case No. 22-22607-KMM

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

**TESLA, INC.'S EXPEDITED[1] MOTION TO STRIKE PORTIONS OF PLAINTIFFS'
CONSOLIDATED AND AMENDED COMPLAINT FOR VIOLATION OF
ORDER (D.E. 198) AND MARCH 1 RULINGS CONCERNING SAME**

Tesla, Inc., through undersigned counsel, moves the Court to strike portions of Plaintiffs' Consolidated and Amended Complaint because they violate the Court's Order Granting and Denying in Part Plaintiffs' Motion for Leave to Consolidate and Amend Complaint (D.E. 198). In direct contravention of the Court's Order, the Amended Complaint *more than doubles* both the defect theories and the proposed alternative designs and contains numerous references to the recall

---

[1] Pursuant to Fed. R. Civ. P. 15(a)(3), Tesla's Answer to Plaintiffs' Consolidated and Amended Complaint is currently due on March 25. Therefore, Tesla designed the instant Motion as "expedited" in order to obtain a ruling prior to the deadline to answer the Complaint.

previously declared by the Court to be a subsequent remedial measure. *See* (D.E. 205).[2] Plaintiffs wrongly interpreted the Court's Order as giving them carte blanche to add multiple new theories to the case. What has been filed is not an amendment, but rather is a whole new lawsuit.  In support of its motion, Tesla states the following:

### BACKGROUND AND RELIEF REQUESTED

On March 1, 2024, the Court heard oral argument on Plaintiffs' second motion for leave to amend their complaint (D.E. 165).  At the hearing, the Court granted in part and denied in part Plaintiffs' motion and made the following rulings:

1. Plaintiffs' request to add claims for intentional misrepresentation, fraudulent concealment, and intentional false advertising is denied.  *See* Ex. A -Transcript from March 1 Hearing at 38:18-39: 14.

2. Tesla Recall 23V-838 ("the recall") is an inadmissible subsequent remedial measure.  *See id* at 32:6-17.

3. Plaintiffs are permitted to "amend the complaint by interlineation in terms of including the punitive damages claim" and "buttress the facts" supporting the *previously pending* claims.  *Id* at 41:6-17.

On March 11, 2024, Plaintiffs filed a Consolidated and Amended Complaint, which contains *hundreds* of new paragraphs including multiple new and different defect allegations and proposed alternative designs.[3]  *See* D.E. 205.

---

[2] Tesla has attached as Exhibit B a copy of Plaintiffs' Amended Complaint with annotations to highlight the new allegations that are relevant to this Motion to Strike.

[3] In fact, the original Complaints were 8 (Benavides) and 13 (Angulo) pages long, while the Amended Complaint is 60 pages long.

### I.  Allegations Regarding The Recall Should Be Stricken

At the March 1 hearing, the Court unequivocally stated, "for the purposes of additional facts, I think it['s] been made clear - - and I do agree that *the recall is a subsequent remedial measure*." Ex_- Transcript from March 1 Hearing at 42:23-25.  In blatant disregard of this finding, the Amended Complaint contains *over* twenty references to the recall.  *See* Ex. B – Plaintiffs' Consolidated and Amended Complaint at ¶¶ 23-34, 37-38, 60-61, 63, 65, 90, 111, 112, 175, 183-184.  By including the recall in the Amended Complaint, Plaintiffs are attempting to force Tesla to respond to extensive discovery demands regarding a piece of evidence has already been deemed inadmissible at trial.  For example, Plaintiffs identified the following as topics for the upcoming deposition of Tesla's 30(b)(6) witness:

1. Updates to AUTOPILOT and/or DMS After the SUBJECT INCIDENT:

   a. the identification and substance of all DOCUMENTS and/or ESI and communications exchanged with any regulatory authorities, including but not limited to the National Highway Traffic Safety Administration [NHTSA] and the National Transportation Safety Board [NTSB], related to NHTSA's Part 573 Safety Recall Report 23V-838;

   b. the identification and substance of all DOCUMENTS and/or ESI and communications exchanged with any regulatory authorities, including but not limited to the NHTSA and the NTSB, related to any investigations of TESLA's AUTOPILOT, AUTOSTEER, and DMS;

   c. descriptions of all AUTOPILOT and/or DMS related SOFTWARE/FIRMWARE VERSION(S) updates issued to TESLA vehicles after NHTSA's Part 573 Safety Recall Report 23V-838;

   d. for all AUTOPILOT and/or DMS related SOFTWARE/FIRMWARE VERSION(S) updates issued to TESLA vehicles after NHTSA's Part 573 Safety Recall Report 23V-838, identification of:

      i. how those updates changed vehicle operation and/or performance;

      ii. whether the updates could have been made before the SUBJECT INCIDENT;

3

      iii. The names, job titles, and if no longer employed, all known contact information for all TESLA employees and representatives who were involved in designing, programing, evaluating, and/or testing the updates;

  e. for all AUTOPILOT and/or DMS related SOFTWARE/FIRMWARE VERSION(S) updates issued by TESLA after NHTSA's Part 573 Safety Recall Report 23V-838, identification of why those updates were made, including:

      i. the recommendations and input of all TESLA employees and representatives in the decision to recall the vehicles;

      ii. the identification and substance of all DOCUMENTS and/or ESI and correspondence reflecting the decision to recall the vehicles;

      iii. the names, job titles, and if no longer employed, all known contact information for all TESLA employees and representatives who were involved in the decision to recall the vehicles;

      iv. the substance of involvement of each TESLA employee and representative in the decision to recall the vehicles, and the dates of said involvement.

  f. the description of updates to AUTOPILOT and/or DMS related SOFTWARE/FIRMWARE VERSION(S) after the SUBJECT INCIDENT and prior to NHTSA's Part 573 Safety Recall Report 23V-838;

  g. for the AUTOPILOT and/or DMS related SOFTWARE/FIRMWARE VERSION(S) updates after the SUBJECT INCIDENT and prior to NHTSA's Part 573 Safety Recall Report 23V-838, identification of:

      i. a description of how those updates changed the performance and or operation of the vehicles;

      ii. whether the updates could have been made before the SUBJECT INCIDENT;

      iii. names, job titles, and if no longer employed, all known contact information for all TESLA employees and representatives who were involved in the design, evaluation, and/or testing of the updates;

      iv. the recommendations and input of all TESLA employees and representatives in the decision-making process to allow the updates to be issued to TESLA customers;

      v. the identification and substance of all DOCUMENTS and/or ESI and correspondence reflecting the decision to update the software;

      vi. the names the names, job titles, and if no longer employed, all known contact information for all TESLA employees and representatives who were involved in the decision to update the software;

      vii. the substance of involvement of each TESLA employee and representative in the decision to update the software, and the dates of said involvement.

*   *   *

5. Driver Monitoring System (DMS) Development for AUTOPILOT/AUTOSTEER not already covered in depositions of Akshay Phatak taken July 20 and August 2, 2023 – subtopics include:

    f. all actions taken and being taken in response to the NHTSA's Part 573 Safety Recall Report 23V-838, and findings that AUTOPILOT features may not have sufficient controls to prevent driver misuse;

Ex. C – Plaintiffs' March 12 Amended Notice of Deposition of Tesla Representative.

Additionally, Plaintiffs are pursuing written discovery about NHTSA's investigation and the related recall:

> **INTERROGATORY NO. 7**: DESCRIBE all TESLA AUTOPILOT/AUTOSTEER updates sent to TESLA vehicles subject to the December 15, 2023, NHTSA Part 573 Safety Recall Report.
>
> **INTERROGATORY NO. 8**: DESCRIBE all TESLA AUTOPILOT/AUTOSTEER updates sent to vehicles after December 5, 2023.

Ex. D – Plaintiff Angulo's First Set of Interrogatories to Tesla.

Tesla will be severely prejudiced if it is forced to respond to extensive discovery requests about the recall. Additionally, Plaintiffs have already indicated they intend to seek Court intervention regarding Tesla's responses to written discovery relating to the recall which will result in a waste of judicial resources on inadmissible evidence. Given that the recall has already been ruled a subsequent remedial measure in this case, Plaintiffs' attempt to include the recall in the Amended Complaint should be prohibited and all references to the recall should be stricken.

## II. New Defect Theories and Alternative Designs Should be Stricken

In the Amended Complaint, Plaintiffs *more than doubled* both their defect theories and their proposed alternative designs. *See* Ex. B at ¶¶ 113, 121(f), (g), (h), (i), 122, 124(c) (d), (e), (g), and (h), 140(e), 169, 180(a), (b), (k) (q) (r), and (s). The new defect allegations (highlighted below) are *completely* distinct from and additional to Plaintiffs' pre-existing allegations.

121. The design defects in the Vehicle and Tesla's Autopilot system suite of technology (the "system") included defective and unsafe characteristics such as, but not limited to:

    f. the failure to include adequate warnings if the system encounters conditions making it unsafe to use the system;

    g. deactivation of the automatic emergency braking system when the accelerator is depressed and failure to adequately warn the driver of same;

    h. the failure to ensure adequate takeover time for the driver in the event of a system failure; and

    i. the failure to restrict the ability of drivers to use Autopilot in areas outside which Tesla designed the system to operate safely, also known as "geofencing".

    \* \* \*

122. Tesla failed to meet the expectations of the reasonable consumer by placing on the market the Vehicle which failed to incorporate an Autopilot system that included safety components which would keep the vehicle only in designated travel lanes, reasonably match vehicle speed to traffic conditions, keep the vehicle within its lane, prevent use of Autopilot features where they were not designed to be used safely, and provide effective active automatic collision avoidance and automatic emergency braking to detect and avoid collisions with in-path objects.

    \* \* \*

124. Additionally, the risk of danger in the design of the Vehicle outweighed any benefits of the design, and especially where safer alternative designs were available at the time of manufacture. Such reasonably safer alternative designs include, but are not limited to, the following:

    c. Effective driver alert systems that would notify the driver if road conditions rendered the use of Autopilot features unsafe;

    d.  Effective driver alert systems that would notify the driver of any impending obstacles in the Vehicle's path, including but not limited to hazard lights, stopped vehicles, and pedestrians;

    e.  Effective restrictions blocking the availability of Autopilot features in unsafe conditions, using methods such as geofencing;

    g.  Effective driver alert systems that would timely notify the driver if the Autopilot system was in any way impaired or malfunctioning; and

    h.  Effective driver alert systems that would timely notify the driver of an imminent need to take over the steering and braking functions of the vehicle if necessary to avoid a collision.

*   *   *

140.  At all material times, the Vehicle contained manufacturing defects which rendered the Vehicle unreasonably dangerous, in that:

    e.  Defects in the Vehicle caused the Autopilot systems to fail without giving the driver adequate warning or notice that the driver needed to take over control of the Vehicle.

*   *   *

169.  The Autopilot system failed to ensure McGee was attentive and failed to effectively notify him of the need to engage braking, deceleration, or steering to prevent the fatal collision.

*   *   *

180.  At all times material hereto, Defendant Tesla engaged in intentional misconduct or gross negligence in the following manner:

    a.  Failing to geofence the Autopilot system and allowing the Autopilot system to be used outside of Tesla's stated operational design domain (ODD) on non- controlled access roadways with cross-traffic;

    b.  Allowing the Autopilot system to be used in excess of the posted speed limit on non-controlled access roadways with crossroads and cross-traffic;

    k.  Failing to adequately train senior Tesla engineers and employees on basic information such as ODD and the need for consideration of human factors when designing and implanting its Autopilot system;

    q.  Failing to provide adequate supervision and quality assurance of subcontractors involved with the Autopilot system;

    r. ==Denying that misuse of its Autopilot system is a potential hazard;==

    s. ==Failing to alert drivers while engaged in Autopilot that the Tesla vehicle is no longer in Tesla's designated ODD;==

Ex. B at 121, 122, 124, 140, 169, and 180. For example, "geofencing" (see para. 121, sub para. I) is a term related to where, i.e. on which roads, the various features of the Autopilot system can be used. This is completely unrelated to the defect allegations the parties have been litigating for the past three years – i.e. either Autosteer or Automatic Emergency Braking features should have detected the flashing red traffic light ahead and should have detected the stationary Tahoe in front the Tesla and slowed or stopped the Tesla to avoid the crash.

  This case has been pending for *three years*, the majority of which Plaintiffs were largely inactive. As the Court noted during the March 1 hearing, "[h]ere we are some time later and this Court has amended, amended, and amended the scheduling order." Ex. A – March 1 Hearing Transcript at 39:5-9. Despite these admonitions, Plaintiffs are attempting to completely change the landscape of this litigation with their new theories. This blatantly falls outside of the Court's ruling, which permitted amendment by interlineation and *factual allegations* that buttress Plaintiffs' *existing* claims.

  Furthermore, changing the defect theories in the case unfairly creates a moving target for Tesla to defend with only two months until expert reports are due, at least one 30(b)(6) witness to prepare for deposition and hundreds of discovery requests to answer, meet and confer on, and defend in discovery hearings. The pages upon pages of substantive and highly technical additional defect theories would undoubtedly prolong litigation by opening discovery to **brand new claims.** For example, Plaintiffs are set to depose a Tesla 30(b)(6) witness in response to a deposition notice that identifies over 150 discrete subtopics – many of which were wholly irrelevant until Plaintiffs filed their Amended Complaint. *See* Ex. C – Plaintiffs' March 12 Amended Notice of Deposition

of Tesla Representative.[4] Plaintiffs have also attempted to conduct written discovery on these topics, including several discovery requests concerning geofencing and use restriction – which were also not referenced in the original Complaints. *See* Exs. E and F: RFP 32 of Angulo's Fifth Set of RFP, and Requests 38, 47, and 50 of Angulo's Sixth Set of RFP; *see also* Ex. C – Plaintiffs' March 12 Amended Notice of Deposition of Tesla Representative *Duces Tecum* Request 5 (documents concerning testing of Autopilot use restriction). Additionally, while Tesla has not yet had the opportunity to fully consider this issue, the new allegations in the Amended Complaint may even require Tesla to retain new experts. This Court should not permit Plaintiffs to benefit from their blatant disregard of and attempt to circumvent the Court's rulings at Tesla's expense.

## CONCLUSION

**WHEREFORE**, for the reasons stated above, Tesla moves this Court to Strike Paragraphs 23-34, 37-38, 60-61, 63, 65, 90, 111, 112, 113, 121(f), (g), (h), and (i), 122, 124(c), (d), (e), (g), and (h), 140(e), 169, 175, 180(a), (b), (k) (q) (r), and (s), and 183-184 of Plaintiffs' Consolidated and Amended Complaint (D.E. 205).[5]

## Local Rule 7.1(a)(3) Certification

Pursuant to S.D.FL. Local Rule 7.1(a)(3), counsel for Plaintiffs and Tesla conferred regarding the issues expressed in this Motion on March 7 and 15. Plaintiffs oppose the relief sought.

---

[4] Topics which were irrelevant prior to the additions of new claims to the Complaint are highlighted.

[5] In the alternative, Tesla moves the Court to grant it an additional fourteen (14) days to Answer the Amended Complaint, making Tesla's Answer due on April 8.

Date:  March 19, 2024                                Respectfully submitted,

                                                          *s/ Whitney V. Cruz*
**WHITNEY V. CRUZ**
Florida Bar No. 800821
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

- and –

**HENRY SALAS**
Florida Bar No. 815268
**COLE SCOTT & KISSANE**
9150 S Dadeland Blvd, Suite 1400
Miami, FL 33156-7855
Tel. 305-350-5300
Fax: 305-373-2294
henry.salas@csklegal.com

*Attorneys for Defendant TESLA, Inc.*

## CERTIFICATE OF SERVICE

We hereby certify that on March 19, 2024, I electronically filed the foregoing document with the Court via CM/ECF system which will send notification of such filing to the following:

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
**Darren J. Rousso, Esq.**
Florida Bar No. 97410
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
Adam@roussolawfirm.com
pleadings@roussolawfirm.com
*Attorneys for Plaintiff Dillon Angulo*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel. 305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com
*Attorneys for Plaintiff Neima Benavides*

**Elise R. Sanguinetti, Esq.**
Admitted *Pro Hac Vice*
ARIA SANGUINETTI WANG & TORRIJOS, LLP
2200 Powell Street, Suite 740
Emeryville, CA 94608
Tel. 510-629-4877
Fax: 510-291-9742
elise@aswtlawyers.com
ncservice@aswtlawyers.com
*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com
*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Donald H. Slavik, Esq.**
Admitted *Pro Hac Vice*
**David W. Terry, Esq.**
Admitted *Pro Hac Vice*
**Nicole L. Judge, Esq.**
Admitted *Pro Hac Vice*
SLAVIK LAW FIRM, LLC
3001 South Lincoln Avenue, Suite C-1
Steamboat Springs, CO 80487
Tel. 970-457-1011
Fax: 267-878-7697
dslavik@slavik.us
dterry@slavik.us
njudge@slavik.us
dcaudle@slavik.us
*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

                                                            s/ *Whitney V. Cruz*_____
                                                               Whitney V. Cruz