EXHIBIT "D"

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-21940-BLOOM/Otazo-Reyes

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

      Defendant.

_____/


DILLON ANGULO,                  Case 1:22-22607-KMM

      Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.

      Defendant.

_____/


## TESLA, INC.'S RESPONSE TO PLAINTIFF ANGULO'S FIFTH DOCUMENT REQUEST

Tesla, Inc. ("Tesla"), through its undersigned counsel, responds to Plaintiff

Dillon Angulo's Fifth Request for Production, and states as follows:

## GENERAL OBJECTIONS

1. Tesla objects to Plaintiff's instruction requesting Tesla to "identify the source of the information and indicate the last date the information was gathered" as it imposes a burden on Tesla beyond Fed. R. Civ. P. 26 and 34.

2. Tesla objects to Plaintiff's definition of "SUBJECT SYSTEM" as beyond the scope of discovery in this case under Fed. R. Civ. P. 26. The only "system" allegedly at issue in this case would be those that the subject vehicle was equipped with as of April 25, 2019. Thus, the inclusion of "'Full Self Driving' packages" and "any other related systems…off the SUBJECT VEHICLE" are irrelevant and outside the scope of discovery of this case. Further, discovery into such non-equipped systems is not proportionate to the needs of this case where the Plaintiff(s) did not elect to purchase access to such systems.

3. Tesla objects to Plaintiff's use and definitions of the phrases "Automated Driving System [ADS]" and "SUBJECT SYSTEM" because those phrases and definitions do not accurately define the advance driver assistance system (ADAS) in the 2019 Tesla Model S called "Autopilot" in that Plaintiff fails to include or inaccurately minimizes the driver as part of the Autopilot system. Thus, Plaintiff's definitions are an unfair attempt to redefine Autopilot in a way that is intentionally misleading. Autopilot includes Traffic Aware Cruise Control (TACC), which controls the vehicle's speed; Autosteer, which controls steering within the lane;

Automatic Emergency Braking; and Forward Collision Warning. However, Autopilot does not make the 2019 Tesla Model S a "self-driving car." Instead, Autopilot as a system was designed to include an alert and attentive driver who is in control of the vehicle at all times and the driver is advised by Tesla of Autopilot's limitations and the need to maintain control and responsibility for the vehicle at all times before Autopilot is initially engaged in the vehicle. The design of Autopilot with the driver included as an integral part of the system is consistent with the Society of Automotive Engineers (SAE) definitions of ADAS technology, Autopilot is a Level 2 system, which requires the driver to be in control at all times and constantly supervise the support features:



See, Society of Automotive Engineers, Standard J3016 Levels of Driving Automation (May 3, 2021), https://www.sae.org/blog/sae-j3016-update (last visited Sep. 18, 2023).

4. Tesla objects to the definition of "TESLA" as overly broad and not proportionate to the needs of this case under FED. R. CIV. P. 26 specifically as it pertains to past employees, independent contractors, suppliers, and "attorneys and

law firms." Further, Tesla objects to the inclusion of "attorneys and law firms" in

the definition of "TESLA" as it inherently would require the potential disclosure of

attorney-client privileged or attorney work-product protected information.

## REQUESTS FOR PRODUCTION

**REQUEST NUMBER 31.:**  A complete copy in native format (.csv or .xlsx) of the
"Customer Friendly" version of the Log File for the Subject Vehicle from the time
it was purchased by George McGee through the time of the SUBJECT INCIDENT.

**RESPONSE**:  Tesla has already produced Car Log data from the subject Model S

related to the subject incident and Tesla refers Plaintiffs to that data in response to

this Request. Beyond this, Tesla objects to this request as overly broad, unduly

burdensome and not limited in scope to a time that is reasonably related to the subject

incident. Instead, this Requests demands that Tesla produce Car Log data for four

months of driving before the subject incident. Thus, the temporal scope of this

Request is not proportional to the needs of the case and not necessary to resolution

of the case.

Subject to and without waiving these objections, Tesla will produce the data

that the vehicle owner—Mr. McGee—could obtain himself were he to submit a data

access request via his Tesla account, i.e., the "Customer Friendly" version of data

reflecting occupant interactions with the vehicle that is in Tesla's possession.

**REQUEST NUMBER 32.:**  Tesla documents and ESI describing or specifying  the

area within one mile of the location of the Subject Incident that show all "no drive zones" where Autopilot was not able to be engaged or operate at the time of the Subject Incident.

**RESPONSE**: Tesla objects to this Request because the phrase "no drive zone" is vague, ambiguous, undefined by Plaintiffs and open to varying interpretations rendering it overbroad and unduly burdensome.

Subject to and without waiving these objections, with respect to the road leading up to the accident site, Plaintiffs already have the data from the subject Model S demonstrating that Autopilot was in use and did not log any "unavailable" intervals in the approximate mile leading up to the crash. To the extent Plaintiffs are demanding that Tesla also advise how or whether Autopilot would function on other roads in the area, or in the wooded areas adjacent to the roads, the Request seeks documents not relevant to this case or reasonably calculated to lead to the discovery of admissible evidence. Further, Tesla objects to the extent such analysis would require the premature production of expert witness information.

Beyond that, Tesla refers Plaintiffs to the Owner's Manual for the subject Model S which provides information about the type of roadways Autopilot is intended to be used on and information about driver responsibility while using Autopilot driver assistance features and conditions that may limit or change the performance of Autopilot. Further, and assuming Plaintiffs' use of the phrase "no drive zone" refers to the Operational Design Domain, Autopilot is an SAE Level 2

system for which there is no requirement of an Operational Design Domain.  Instead,

the driver of a Level 2 system is responsible for the safe operation of the vehicle at

all times and is responsible for deciding whether and when to engage the feature

provided certain prerequisites for engagement are met (e.g., clear lane lines).

**REQUEST NUMBER 33.:**    Tesla documents and ESI describing other incidents
involving a Tesla with Autopilot engaged where the Tesla vehicle and/or driver failed
to safely negotiate or drive through a "T" intersection, resulting in the Tesla vehicle
leaving the roadway.

**RESPONSE**:    Tesla objects to Request 33 because it is overly broad, unduly

burdensome, and not proportional to the needs of the case.  Specifically, this request

amounts to an impermissible "fishing expedition," and is not limited in scope to the

Subject model, model year vehicle, or configuration of Autopilot hardware, software

and firmware involved in this case, to collisions allegedly caused by the defect

Plaintiff alleges to exist in the Subject Vehicle or to accident circumstances that are

substantially similar to the circumstances of the subject accident.  Tesla also objects

to this Request because it is so overly broad as to include information protected by

the attorney-client privilege or "work product" doctrine.

Subject to and without waiving these objections, Tesla refers Plaintiff to its

production of materials that Tesla exchanged with NHTSA in response to Requests

2 and 3 of Plaintiff Dillon Angulo's Second Requests for Production.  This includes

data concerning Tesla crashes with stationary vehicles.   Beyond that, as Plaintiffs

know, there were no Tesla vehicles sold to consumers at the time of the crash that

controlled for traffic signals or could make right/left turns such as required at a T-intersection.   Thus, the Request is argumentative in referring to any incident involving Autopilot use as one where the "Tesla vehicle…failed to safely negotiate or drive through a 'T' intersection" when Autopilot did not and could not perform such a task. Unless the driver took over steering and made the right/left turn, then the vehicle would do as advertised and as it did here: proceed straight.  Tesla objects to searching for other instances of drivers failing to intervene particularly when this driver, Mr. McGee, readily and repeatedly admitted he knew the vehicle was not autonomous and he would have to intervene.

**REQUEST NUMBER 34.:**   Tesla documents and ESI describing other incidents involving a Tesla vehicle with Autopilot engaged, where a vehicle departed the roadway in whole or in part because of the geometric presentation of the roadway.

**RESPONSE**: Tesla objects to Request 34 because the phrase "geometric presentation of the roadway" is vague, ambiguous, undefined by Plaintiffs and open to varying interpretations. Tesla also objects to this Request because it is not proportional to the needs of the case and not necessary to resolution of the case. Specifically, this request amounts to an impermissible "fishing expedition," and is not limited in scope to the Subject model, model year vehicle, or configuration of Autopilot hardware, software and firmware involved in this case, to collisions allegedly caused by the defect Plaintiff alleges to exist in the Subject Vehicle or to accident circumstances that are substantially similar to the circumstances of the

7

subject accident.  Tesla also objects to this Request because it is so overly broad as to include the premature disclosure of expert witness information and is thus protected by the "work product" doctrine.

**REQUEST NUMBER 35.:**  Tesla documents and ESI, including video, that show what the Subject Vehicle was detecting and processing in the ten minutes leading up to and including the Subject Incident. Such documents and ESI include images processed with APViz software and associated Snapshot data.

**RESPONSE**:

Tesla has already produced Car Log data from the subject Model S related to the subject incident and Tesla refers Plaintiffs to that data in response to this Request. Plaintiffs also possess or have access to a video from the subject Model S that shows the path of the Model S before and during the crash because of the driver's admitted negligence. Tesla does not have additional video from the vehicle beyond the video that has been produced.  Beyond this, Tesla objects to this Request because it is vague, overly broad, and not proportionate to the needs of the case.

8

Date:  January 3, 2024     Respectfully submitted,

By:  /s/ *Henry Salas*
     HENRY SALAS (815268)
     COLE SCOTT & KISSANE
     9150 S Dadeland Blvd Ste 1400
     Miami, FL 33156-7855
     Office: 786-268-6419
     Fax: 305-373-2294
     henry.salas@csklegal.com

        - and –

     THOMAS P. BRANIGAN *(Admitted Pro Hac Vice)*
     DREW P. BRANIGAN *(Admitted Pro Hac Vice)*
     BOWMAN AND BROOKE LLP
     Columbia Center
     101 W. Big Beaver Road
     Suite 1100
     Troy, MI  48084
     248.205.3300 / 248.205.3399 fax
     thomas.branigan@bowmanandbrooke.com
     drew.branigan@bowmanandbrooke.com

     ***Attorneys for Defendant TESLA, Inc.***

28879999v3

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2024, I electronically file the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

ADAM T. BOUMEL, ESQ.
Florida Bar No.: 0110727
DARREN J. ROUSSO, ESQ.
Florida Bar No.: 97410
THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669
Adam@roussolawfirm.com
SERVICE EMAILS:
pleadings@roussolawfirm.com
(primary)
Frank@roussolawfirm.com
(secondary)

*Attorneys for Plaintiff Dillon Angulo*

Todd Poses, Esquire
Florida Bar No.: 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street Suite 1600
Miami, Florida 33131
(305) 577-0200 Tel
(305) 371-3550 Fax
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

Respectfully submitted,

By: /s/ *Henry Salas*

28879999v3