# EXHIBIT E

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:22-cv-22607-KMM

DILLON ANGULO,

        Plaintiff,

v.

TESLA, INC. a/k/a TESLA FLORIDA, INC.

        Defendant.
_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dillon Angulo, by and through his undersigned counsel, sues Defendant, Tesla Inc. a/k/a Tesla Florida Inc., and alleges and states as follows:

### JURISDICTION, VENUE AND PARTIES

1. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

2. Plaintiff, Dillon Angulo, is a resident of and is domiciled in the State of Florida.

3. At all material times, Defendant, Tesla Inc. a/k/a Tesla Florida Inc. (hereinafter, "Tesla") is and was a foreign corporation licensed and authorized to do business in the State of Florida.

4. At all times hereinafter mentioned and at the time of the incident complained of, Defendant, Tesla, had an office for the transaction of its customary business in Miami-Dade County, Florida, had agents and other representatives in Miami-Dade County, and

was actually doing business in Miami-Dade County, Florida, by virtue of its shipping to and sale of automobiles in Miami-Dade County, Florida.

5. At all times hereinafter and at the time of the incident complained of, Defendant, Tesla, was in the business of designing, testing, inspecting, manufacturing, distributing, selling, maintaining, repairing and otherwise placing into the stream of commerce, and causing same to come into the State of Florida, certain automobiles, including a certain specific automobile designated and described as a 2019 Tesla Model S, VIN: 5YJSA1E24KF302997 (Hereinafter described as the "Vehicle").

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because this action is between citizens of different state and the amount in controversy, exclusive of interest, attorneys' fees and costs, exceeds $75,000.00

## FACTS COMMON TO ALL CLAIMS

7. On or about April 25, 2019, the Vehicle was owned by George McGee.

8. At all material times, the Vehicle was equipped with what Tesla calls "Autopilot", a suite of features and functions meant to assist drivers in driving and operating Tesla's vehicles.

9. At all material times, the Autopilot functions of the Vehicle included, but were not limited to automatic steering, forward collision warning and emergency braking.

10. At all material times, George McGee purchased the vehicle in large part because of the Autopilot functions advertised by Tesla. More specifically, McGee purchased the subject Tesla Vehicle because he wanted a vehicle that would provide him with ample assistance while driving, and based on marketing and advertisements believed that Tesla's subject vehicle would provide such ample driving assistance.

11. On or about April 25, 2019, George McGee was operating and/or driving the Vehicle eastbound on CR-905A, also known as Card Sound Road, in Key Largo, Monroe County, Florida, and was approaching the 3-way T-intersection with County Road 905.

12. At the subject intersection, Card Sound Road ends, and drivers eastbound on Card Sound Road must first come to a stop at a stop sign before turning either left onto northbound County Road 905 or right onto southbound County Road 905.

13. At the subject intersection, in addition to the aforementioned stop sign, there is also an overhead flashing red light and yellow caution signs which alert all drivers on eastbound Card Sound Road of the end of the roadway and the need to stop and then turn onto County Road 905.

14. At that time and place, George McGee, had activated the Autopilot functions in his Tesla and was relying on its ability to properly steer and navigate the Vehicle, to detect obstacles in the roadway ahead of the Vehicle, and to reduce speed and/or come to a complete stop when such obstacles were detected.

15. Because he was relying on the Vehicle's Autopilot systems, George McGee took his eyes off the road to look at his phone as he was approaching the T-intersection at CR-905A.

16. At that same time and place, Plaintiff, Dillon Angulo, had been driving a Chevrolet Tahoe owned by his mother and had lawfully parked that vehicle on the shoulder of the road on the eastbound side of County Road 905, directly across from the end of eastbound Card Sound Road.

17. After parking, Plaintiff, Dillon Angulo, and his companion, Naibel Benavides Leon, were standing outside of Plaintiff's Chevrolet Tahoe, directly next to same.

18. At that time, the Autopilot of George McGee's vehicle failed to detect the end of Card Sound Road (including a failure to detect the various traffic control devices) and further failed to detect the substantial profile of the Chevrolet Tahoe at any point, despite the fact that the vehicle and all of the referenced traffic signals, signs and warnings were directly in front of and in the path of the Vehicle.

19. As a result, the Vehicle continued eastbound through the intersection without initiating the brakes and the Vehicle struck Plaintiff's Chevrolet Tahoe at almost 70 miles per hour, causing it to violently rotate and strike Plaintiff and Ms. Naibel Benavides Leon, causing debilitating injuries to Plaintiff and killing Ms. Benavides Leon.

## COUNT 1 – STRICT PRODUCTS LIABILITY

### (Negligent design)

20. Plaintiff re-alleges paragraphs 1-19 as if fully set forth herein.

21. At all material times, Defendant, TESLA, was engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, and advertising vehicles, including the Vehicle equipped with Tesla's Autopilot systems suite.

22. Tesla's vehicles, including the Vehicle, contained design defects when the vehicles were introduced into the stream of commerce by Tesla.

23. Tesla's vehicles, including the Vehicle, contained design defects when the vehicles were introduced into the stream of commerce by Tesla.

24. Tesla's vehicles, including the Vehicle, were defective and unsafe for their intended use. Due to the design defects, the Vehicle failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

25. At all material times, Tesla knew that consumers would use and drive their vehicles as the driver Mr. McGee did on April 25, 2019. Tesla manufactured, designed, assembled, tested, inspected, marketed, distributed, and sold their vehicles, including the Vehicle, and their component parts including Tesla's Autopilot system and suite of driver assistance features technology with defects in design which made them dangerous, hazardous, and unsafe for their intended and reasonably foreseeable use.

26. The design defects in the Vehicle and Tesla's Autopilot system suite of technology included defective and unsafe characteristics such as, but not limited to:

    a. the failure to adequately monitor and determine driver-engagement;

    b. the failure to adequately detect and respond to obstacles in the Vehicle's path of travel;

    c. the failure to adequately detect and respond to the end of a roadway; and

    d. and the failure to adequately detect and respond to traffic control devices.

27. Tesla failed to meet the expectations of the reasonable consumer by placing on the market the Vehicle which failed to incorporate an Autopilot system that included safety components which would keep the vehicle only in designated travel lanes, reasonably match vehicle speed to traffic conditions, keep the vehicle within its lane, and provide active automatic collision avoidance and automatic emergency braking in a manner which detected objects the car might impact and applied the brakes so as to avoid impact with such objects.

28. Subsequent to subject collision, TESLA equipped subsequent Tesla Model S with additional technology programs and systems and safety components and passenger protection components that did, in fact, provide active automatic collision avoidance and automatic emergency braking in order to detect objects the car might impact, and apply the brakes accordingly to avoid impact with such objects. The inclusion of these features on the Tesla Model S after the subject collision, had they been installed on the Vehicle prior to the collision, would have entirely avoided and prevented the collision and the debilitating injuries suffered by Plaintiff.

29. By reason of the omission of the above-described safety systems, features and components from the Vehicle, on and prior to the date of the subject collision, the Vehicle was defective in its design, in that the auto pilot systems of the vehicle would not, and did not perform in a manner as safely as an ordinary consumer would expect when the vehicle was subjected to foreseeable accident or driving conditions.

30. The risk of danger in the design of the Vehicle outweighed any benefits of the design, and especially where safer alternative designs were available at the time of manufacture. Such reasonably safer alternative designs include, but are not limited to, the following:

   a. Driver-facing cameras that would monitor the driver's eyes and/or head position as a way to determine driver engagement and awareness;

   b. LIDAR, or any other reasonable alternative system that may or may not include the use of radar technology for the detection of obstacles and surroundings of a Tesla vehicle; and

   c. Recoding of Tesla's proprietary software for its Autopilot technology and suite of driver assistance features, specifically, the Traffic Aware Cruise Control feature.

31. Therefore, the Vehicle, and all of Tesla's vehicles that are equipped with Tesla's Autopilot system suite of technology presented and continue to present a substantial and unreasonable risk of serious injuries to drivers of Tesla vehicles and the public

32. The defects in the design of all Tesla vehicles equipped with Tesla's Autopilot system, including the Vehicle at issue, was a substantial factor in causing the subject collision and Plaintiff's injuries and damages as alleged herein.

33. As a direct and proximate result of the design defects of the Vehicle, Plaintiff, Dillon Angulo, suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings and wages in the past as well as loss of and/or reduction of earning capacity in the future. The losses are either permanent or continuing, and Plaintiff, Dillon Angulo, will suffer the losses in the future.

WHEREFORE, Plaintiff, Dillon Angulo, demands judgment against the Defendant, Tesla Inc., a/k/a Tesla Florida Inc., for compensatory damages together with post- judgment interest and taxable costs incurred in this action.

## COUNT 2 – STRICT PRODUCTS LIABILITY

### (Failure to Warn)

34. Plaintiff re-alleges paragraphs 1-19 as if fully set forth herein.

35. At all material times, Defendant, Tesla, was engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, and advertising vehicles, including the Vehicle equipped with Tesla's Autopilot systems suite.

36. On April 25, 2019, George McGee was driving the vehicle in a reasonably foreseeable manner, with Tesla's Autopilot ss Autopilot systems engaged, when the Vehicle failed to detect the end of Card Sound Road, the presence of numerous traffic control devices, and the substantial profile of the Chevrolet Tahoe, all of which was directly in front of the Vehicles path. As a result of these failures, Tesla's vehicle proceeded through the intersection, struck the Chevrolet Tahoe, and caused substantial injuries to Plaintiff.

37. At all material times, Tesla knew that consumers would use and drive their Autopilot equipped vehicles in the same manner that Brian McGee did in the time leading up to the collision at issue.

38. An ordinary consumer would not have recognized the potential risks and dangers inherent in the operation and use of a Tesla vehicle with Autopilot engaged, including the fact that a Tesla vehicle would be unable to recognize the end of a roadway, the presence of a stop sign, the presence of flashing red overhead lights, the presence of yellow caution traffic signs, and/or the presence of a stationary vehicle parked directly in front of its path.

39. At all times, Tesla failed to warn of the dangers inherent in the use of the Autopilot functions when used in a reasonably foreseeable manner.

40. As a direct and proximate result of the Tesla's failure to warn of the design defects and dangers of its Autopilot functions, Plaintiff, Dillon Angulo, suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings and wages in the past as well as loss of and/or reduction of earning capacity in the future. The losses are either permanent or continuing, and Plaintiff, Dillon Angulo, will suffer the losses in the future.

WHEREFORE, Plaintiff, Dillon Angulo, demands judgment against the Defendant, Tesla Inc., a/k/a Tesla Florida Inc., for compensatory damages together with post- judgment interest and taxable costs incurred in this action.

### COUNT 3 – STRICT PRODUCTS LIABILITY
### (Negligent Manufacture)

41. Plaintiff re-alleges paragraphs 1-19 as if fully set forth herein.

42. At all material times, Defendant, Tesla, was engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, and advertising vehicles, including the Vehicle equipped with Tesla's Autopilot systems suite.

43. At all material times, the subject Vehicle contained manufacturing defects which rendered the Vehicle unreasonably dangerous, in that:

   a. Defects in the Vehicle caused the vehicle to fail to adequately monitor and determine driver-engagement;

   b. Defects in the Vehicle caused the Vehicle to fail to adequately detect and respond to obstacles in the Vehicle's path of travel;

   c. Defects in the Vehicle caused the Vehicle to fail to adequately detect and respond to the end of a roadway;

   d. Defects in the vehicle caused the Vehicle to fail to adequately detect and respond to traffic control devices in the Vehicle's path of travel;

   e. Defects in the vehicle caused the Vehicle to accelerate without driver input;

   f. Defects in the vehicle caused the Autopilot systems to turn off and/or disengage without driver input.

44. At all material times, the manufacturing defects in the subject Vehicle were present before it left control of Tesla, at the time that Tesla placed the Vehicle into the stream of commerce, and at the time of the subject collision at issue.

45. As a direct and proximate result of the subject Vehicle's manufacturing defects, Plaintiff, Dillon Angulo, suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings and wages in the past as well as loss of and/or reduction of earning capacity in the future. The losses are either permanent or continuing, and Plaintiff, Dillon Angulo, will suffer the losses in the future.

WHEREFORE, Plaintiff, Dillon Angulo, demands judgment against the Defendant, Tesla Inc., a/k/a Tesla Florida Inc., for compensatory damages together with post- judgment interest and taxable costs incurred in this action.

## COUNT 4 – NEGLIGENT MISREPRESENTATION

46. Plaintiff re-alleges paragraphs 1-19 as if fully set forth herein.

47. At all material times, Defendant, Tesla, was engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, and advertising vehicles, including the Vehicle equipped with Tesla's Autopilot systems suite.

48. At all material times, Defendant, Tesla, had a duty to represent to the public and general, and its consumers specifically, including but not limited to Brian McGee, the true capabilities and just as importantly the true limitations of the Autopilot functions.

49. At all material times, Defendant, Tesla, falsely advertised, marketed, and represented that its Autopilot had capabilities far beyond those which it had.

50. For instance, just by terming the name of its product "Autopilot", Tesla created the false impression and understanding among consumers that its vehicles could drive automatically and autonomously, with reduced driver input or without any driver input. This impression, carefully crafted by Tesla to increase its sales and brand identity, was false in that the Autopilot systems are not autonomous and in fact require substantial and constant input from drivers.

51. Additionally, Tesla distributed marketing and advertising materials intended to underscore the false autonomous functionality of its Autopilot systems, such as (but not limited to) an advertisement video that showed a Tesla vehicle, equipped with Autopilot, successfully navigating through city streets without a driver behind the wheel. This video was, in fact, a heavily orchestrated marketing video, with the vehicle at issue having been programmed with detailed three-dimensional digital maps not available to drivers using the commercially available version of Autopilot. Moreover, the vehicle in the video actually crashed during the filing of that video, an event never disclosed by Tesla.

52. At all times, the actions of Tesla in misrepresenting the true capabilities and corresponding limitations of the Autopilot systems created a false expectation among consumers and Tesla drivers as to the extent that they could rely upon Autopilot.

53. These false expectations caused and still cause Tesla drivers, such as Brian McGee, to be far too inattentive in their own driving and instead to put far too much reliance on Tesla's Autopilot functions to safely navigate any hazards on the road.

54. As a direct result of these false expectations which were cultivated and created by Tesla, on the date of this subject collision, Brian McGee was far less vigilant and attentive while driving than he otherwise would have, and placed far too much reliance on Autopilot to safely navigate and operate the subject Vehicle, which caused the subject collision and Plaintiff's injuries.

55. At all material times, Brian McGee was operating the subject Vehicle in a manner that was reasonably foreseeable to Tesla in that Tesla knew or should have known the reliance that driver's including McGee place on the Autopilot system given the nature of the marketing and advertising that Tesla disseminated to the public at large.

56. As a direct and proximate result of the negligent acts or omissions of Tesla, Plaintiff, Dillon Angulo, suffered serious bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings and wages in the past as well as loss of and/or reduction of earning capacity in the future. The losses are either permanent or continuing, and Plaintiff, Dillon Angulo, will suffer the losses in the future.

WHEREFORE, Plaintiff, Dillon Angulo, demands judgment against the Defendant, Tesla Inc., a/k/a Tesla Florida Inc., for compensatory damages together with post- judgment interest and taxable costs incurred in this action.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by Jury on all issues so triable.

Dated this 16th day of August, 2022

Respectfully submitted,

        THE ROUSSO, BOUMEL LAW FIRM, PLLC.
        9350 South Dixie Highway
        Suite 1520
        Miami, Florida 33156
        (305) 670-6669

By:  */s/ Darren J. Rousso, Esq.*
    Darren J. Rousso, Esq.
    Florida Bar No.: 97410
    Darren@roussolawfirm.com
    SERVICE EMAILS:
    pleadings@roussolawfirm.com
    Frank@roussolawfirm.com


By:  */s/ Adam T. Boumel, Esq.*
    Adam T. Boumel, Esq.
    Florida Bar No.: 0110727
    Adam@roussolawfirm.com
    SERVICE EMAILS:
    pleadings@roussolawfirm.com (primary)
    Frank@roussolawfirm.com (secondary)

Case 1:22-cv-22607-KMM   Document 1-1   Entered on FLSD Docket 08/16/2022   Page 1 of 1

JS 44 (Rev. 10/20) FLSD Revised 02/12/2021

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: **Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**
DILLON ANGULO

**DEFENDANTS**
TESLA, INC., a/k/a TESLA FLORIDA, INC.

**(b)** County of Residence of First Listed Plaintiff MONROE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant BROWARD
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
The Rousso Boumel Law Firm, PLLC

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ■ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff)* and One Box for Defendant) *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ■ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ■ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*   Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act (TCPA) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ■ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

■ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (See VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation Transfer
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Multidistrict Litigation – Direct File
☐ 9 Remanded from Appellate Court

**VI. RELATED/ RE-FILED CASE(S)**
(See instructions): a) Re-filed Case ☐YES ■NO   b) Related Cases ☐YES ☐NO
JUDGE:                                                       DOCKET NUMBER:

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ■ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
DATE 8/16/22
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY : RECEIPT #          AMOUNT          IFP          JUDGE          MAG JUDGE