UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

Case No. 22-22607-KMM

## TESLA, INC.'S MOTION FOR PROTECTIVE ORDER

Tesla, Inc. ("Tesla"), through undersigned counsel, moves for a protective order prohibiting the depositions of Lars Moravy and Ashok Elluswamy because: 1) they are "apex" witnesses and 2) the topics for the depositions consist of (i) a voluntary recall that was released over four years after the crash that gives rise to this this case and which the Court previously determined is an inadmissible subsequent remedial measure and (ii) Automatic Emergency Braking which was previously discussed at length by two Tesla corporate representatives and about which Messrs. Moravy and Elluswamy do not have unique personal knowledge. In support Tesla states as follows:

## I. BACKGROUND

### A. The Incident

This case arises out of an April 25, 2019 two-vehicle collision. Non-party George McGee negligently drove his 2019 Tesla Model S through a "T" intersection in Key Largo, Florida by ignoring a visible stop sign, an overhead red flashing stop light and yellow end-of-road signs. Although he had engaged his vehicle's driver assist feature that provides lane-centering and adaptive speed control, referred to in Tesla vehicles as Autopilot, McGee was pressing the accelerator throughout the time period leading up to the crash. Autopilot tried to restrict McGee's speed, but he insisted on exceeding the speed limit. Knowing that his car would not stop for stop signs and knowing - because it was his commute - there was a stop sign and intersection approaching, he nonetheless got on his phone and neglected the road ahead allowing his Model S to slam into a Chevrolet Tahoe legally parked at the end of the road. The Tahoe subsequently struck Decedent Naibel Benavides and Plaintiff Dillon Angulo. As a result of the crash – and after settling lawsuits against McGee – Plaintiffs filed the instant cases against Tesla, alleging product liability claims. Tesla denies all allegations against it.

### B. Relevant Procedural History and Discovery

Since this case began over three years ago the parties have completed extensive fact discovery concerning the crash, the 2019 Model S, and Plaintiffs' defect allegations. This includes the exchange of more than twenty sets of written discovery, depositions of two Tesla corporate representatives, and fact depositions of investigating officer Corporal Riso, Tesla driver George McGee, Plaintiffs and multiple damages witnesses. Specifically, the two Tesla engineers gave a combined total of **over twenty-two (22) hours** of corporate representative testimony regarding Autopilot, Automatic Emergency Braking and related topics.

Trial is scheduled to begin November 4, 2024. Expert reports are to be exchanged on June 24, 2024. The deadline for fact discovery is June 28, 2024. As Judge Bloom indicated during a March 1, 2024 hearing, "…the unfortunate incident occurred in April of 2019, and this case was filed in May of 2021. Here we are now some time later and this Court has amended, amended, and amended the scheduling order…The discovery shall be completed by June 28th. And that gives a month before the parties file dispositive motions. And to that extent, the calendar call, the dispositive motions deadline, as well as the trial in ECF 156, will remain in place. And that is the Court's ruling." *See* Ex. A - Transcript of March 1, 2024 hearing at 39:5-9 and 20-25. Knowing these deadlines exist, Plaintiffs chose to wait until May 22, 2024 to serve the Notices of Deposition at issue.

Based on conversations with Plaintiffs' counsel and the *duces tecum* in the Notices of Taking Deposition, it is apparent that Plaintiffs seek to question these witnesses about 1) Tesla's Automatic Emergency Braking ("AEB") system and 2) Recall 23V-838, and the related investigation that precipitated the voluntary recall (Preliminary Evaluation 22-020) and assessment that followed the recall (RQ-24009). *See* Exs. B and C - Notices of Depositions of Moravy and Elluswamy.

C. **The Court's Prior Ruling That Recall 23V-838 Is A Subsequent Remedial Measure**

In 2021, the National Highway Traffic Safety Administration ("NHTSA") opened an investigation regarding Tesla's Autopilot Advanced Driver Assistance System and its driver monitoring systems, PE21-020 and EA22-002. On December 12, 2023, more than 4 years after the subject crash, Tesla issued a voluntary recall, 23V-828, in order to end that investigation. In May 2024, NHTSA indeed closed the investigation, though it opened an inquiry to monitor the

3

effectiveness of the recall remedies deployed by Tesla. At a hearing on March 1, 2024, the Court ruled the recall is an inadmissible subsequent remedial measure:

> THE COURT: …I think it's been made clear -- and I do agree that the recall is a subsequent remedial measure.

*See* Ex. A- Transcript of March 1 Hearing at 42:23-25.

### D. The Witnesses and Tesla's Offer to Compromise

In support of Tesla's Motion, Messrs. Moravy and Elluswamy have executed sworn declarations demonstrating their status as "apex" witnesses and the undue burden and harassment they and Tesla would be subjected to should they be deposed.

Plaintiffs also noticed the deposition of Eddie Gates, Tesla's Director of Field Reliability, and the signatory to correspondence with NHTSA relating to the recall. Since the recall is irrelevant to this crash—the remedies have nothing to do with this crash and would not have made a difference in this crash—and is inadmissible as a subsequent remedial measure, Tesla objects to this deposition as a waste of resources. However, in an effort to meet and confer and reach compromise to avoid the necessity of this Motion, Tesla requested Plaintiffs withdraw their notices for Messrs. Moravy and Elluswamy in exchange for Tesla's agreement to produce Mr. Gates as well as another non-apex Autopilot engineer directly involved in Autopilot design and development, knowledgeable about the Automatic Emergency Braking crash mitigation feature, and involved in the recall investigation. Before filing this Motion, Tesla discussed this offer with Plaintiffs' counsel. As of the time of this filing, Plaintiff's counsel has not accepted. Thus, while Tesla stands by its willingness to produce Mr. Gates at a mutually agreeable date and time, Tesla requests the Court grant this Motion to protect the apex witnesses from having to testify in light of their sworn declarations.

### 1. Lars Moravy

Lars Moravy is the Vice President of Vehicle Engineering. Dec. of Moravy at ¶ 2. In that role, Mr. Moravy oversees a global team of over 2,000 engineers, technicians, and analysts in charge of Tesla vehicle hardware design, vehicle test and validation, including but not limited to body, interiors, exteriors, lighting, chassis, battery structures, thermal, etc., and development, launch, automation, manufacturing and sustaining as well as all supporting product data management and engineering tools. *Id* at ¶ 3. Mr. Moravy reports directly to Tesla CEO Elon Musk. *Id*.

Mr. Moravy attests that he received updates about the investigation and the decisions related to whether and how Tesla would respond to NHTSA's inquiries, "but I was not directly involved in the communications with NHTSA or the determination of remedies that were made part of Tesla's voluntary recall action" and therefore he does "not have unique, personal knowledge…that others would not have." *Id* at ¶ 5. Similarly, he does not have unique, personal knowledge about Tesla's Autopilot system because he "rel[ies] on members of the Autopilot team to manage deployment of Tesla's Autopilot features and to oversee Tesla's continuous efforts to improve and enhance Autopilot." *Id* at ¶ 6.

### 2. Ashok Elluswamy

Ashok Elluswamy is the Director of Autopilot Software at Tesla. *See* Ex. D - Dec. of Ashok Elluswamy at ¶ 2. Mr. Elluswamy oversees a team that focuses on – among other things – creation of large-scale automatic ground truth pipelines to train neural networks with massive amounts of diverse, high-quality data. *See id* at ¶ 3. Mr. Elluswamy reports directly to Tesla CEO Elon Musk. *Id* at ¶ 3.

Mr. Elluswamy does not have unique, personal knowledge about the recall that other Tesla employees would not have due to the nature of the collaborative effort. *Id* at ¶ 5. Further, he was "rarely directly involved in the communications with NHTSA" while others on his and other teams were primarily responsible for those communications and developing and deploying the remedies that closed the investigation. *Id*. Similarly, while his and his team's work relates to AEB, among many other things, he does not possess unique or superior knowledge about Autopilot or AEB. *Id* at ¶ 7. This is because the design, development, testing, and release of these systems and their features is the product of a team of numerous engineers, technicians, and analysts that follows a process driven by consensus decision-making. *Id*.

Tesla is, of course, a large, global company with vehicle factories in the United States, Germany and China. It designs, develops, manufactures, and sells and leases high-performance fully electric vehicles and energy generation and storage systems, and offers services related to its products. Tesla currently employs about 130,000 people worldwide. Id. at ¶ 2. Neither Mr. Moravy or Mr. Elluswamy have unique information that other employees at Tesla would not have. Further, dragging them away from their daily obligations at Tesla—where they manage teams of thousands of people—to prepare for and testify at a deposition would cause substantial burden and hardship to each witness and Tesla collectively:

> Given my obligations and responsibilities, it would be a substantial burden and hardship to be deposed in this matter. Indeed, if I were required to testify in even a percentage of the cases involving Tesla, it would be extremely disruptive to my responsibilities to Tesla.

*See* Exs. E and D - Decs. of Moravy and Elluswamy at ¶ 4.

Plaintiffs have already obtained **over twenty-two (22)** hours of testimony from Tesla's corporate representatives, plus Tesla agreed to make Mr. Gates available and even offered another not-noticed senior Autopilot engineer for deposition, suggesting Plaintiffs' purpose in demanding

6

these high-level Director and VP employees of Tesla is to harass them and Tesla. This is particularly true with regard to Mr. Moravy who is not responsible for Autopilot design, development or deployment and has no information about this case or the defect claims in it. And, relative to Mr. Elluswamy, there is nothing he would or could say that others have not said already or that counsel could not get from the other witnesses offered.

## MEMORANDUM OF LAW

Discovery is intended to be part of the "just, speedy, and inexpensive" determination of disputes. *See in re 3M Combat Arms Earplug Products Liability Litigation*, No. 3:19-MD-02885, 2023 WL 8609280, at *2 (N.D. Fla. Aug. 29, 2023); *see also* Fed. R. Civ. P. 1. The Federal Rules of Civil Procedure provide trial courts broad discretion in determining the scope and limitations of discovery. *Id*; *see also West v. City of Albany, Georgia*, 830 Fed.Appx. 588, 592 (11th Cir. 2020) (Fed. R. Civ. P. 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required). In the instant case, there is no cause to allow Plaintiffs to depose the requested apex employees.

II.     **STANDARD FOR A PROTECTIVE ORDER**

    A.     **Federal Rule of Civil Procedure 26(c)**

A court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" related to a particular discovery request. Fed. R. Civ. P. 26(c). Where good cause is shown, a protective order is appropriate if the interests of the moving party outweigh the interests of the party seeking discovery. *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir.1989). A court's determination is reviewable for abuse of discretion. *Id*.

### B. Apex Doctrine

In the Eleventh Circuit, "[c]ourts generally restrict parties from deposing high-ranking officials, commonly referred to as 'apex depositions,' because executives are particularly vulnerable to numerous, repetitive, harassing, and abusive depositions by virtue of their position." *Hickey v. North Broward Hosp. Dis.*, No. 14-CV-60542-BLOOM, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014). Specifically, this doctrine applies to employees who are so high up that they are not familiar with the day-to-day operations – only the big picture. *See Chick -Fil-A, Inc. v. CFT Development, LLC*, No. 5:07-CV-501-OC-10GRJ, 2009 WL 928226, at *1 (M.D. Fla. Apr. 3, 2009); *see also Sher v. Raytheon Co.*, No. 8:08-CV-889-T-33AEP, 2010 WL 11507786, at *1 (M.D. Fla. Mar. 10, 2010) ("It may [also] be appropriate to enter orders limiting depositions of senior management and other 'high level decisionmakers who are removed from the daily subjects of litigation'").

Under this doctrine, "[A] party seeking to depose a high ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) (quoting *Hickey v. North Broward Hosp. Dist.*, No. 14-CV-60542, 2014 WL 7495780 at *2 (S.D. Fla. Dec. 17, 2014). While the party seeking a protective order normally bears the burden of showing good cause under Fed. R. Civ. P. 26(c), a party seeking the deposition of the high-ranking official has the burden to show that the deposition is necessary. *Id.*

**II.     PER THE COURT'S PRIOR RULING AND UNDER ESTABLISHED DISCOVERY RULES, TESLA IS ENTITLED TO A PROTECTIVE ORDER**

**A. The Recall Is An Improper Basis For Depositions As The Court Has Ruled The Recall Is A Subsequent Remedial Measure**

It is undisputable that the Court ruled the recall is a subsequent remedial measure. *See* Ex. A - Transcript of March 1 Hearing at 42:23-25. Plaintiffs have failed to demonstrate that discovery relating to the recall will lead to the discovery of any relevant admissible evidence. Because there is no permissible use for evidence relating to the recall and related investigations, which occurred years after the crash, this Court should preclude Plaintiffs from deposing Messrs. Moravy and Elluswamy on these issues.

**A. Tesla Is Entitled To A Protective Order Under Fed. R. Civ. P. 26(C) Preventing The Requested Discovery**

The requested depositions are unnecessary, duplicative, prejudicial, and harassing, and therefore, Tesla is entitled to a protective order that the discovery not be had. *See* Fed. R. Civ. P. 26. Tesla has already presented *two* corporate representatives, produced thousands of pages of documents, and answered nearly twenty sets of discovery – largely on the issues inquired about in the instant Notices of Taking deposition. Prior to the Court's finding that the recall is an inadmissible subsequent remedial measure, Tesla produced over a thousand pages of documents it exchanged with NHTSA as part of PE21-020, which precipitated the recall. *See* (D.E. 119). In the face of this, Plaintiffs have offered no explanation as to what additional information Messrs. Moravy or Elluswamy (or Gates, for that matter) possess that cannot already be found in discovery already conducted - let alone from other lower-level employees. On the other hand – and as illustrated in-depth below – pulling these high-level employees away from their work to prepare for and attend depositions would be wasteful and harassing.

The requests for these depositions come less than a month before the fact discovery deadline in a case that has *been pending for three years.* Plaintiffs have known about NHTSA's inquiry since at least 2022, when Plaintiff Benavides moved unsuccessfully to stay the case pending the conclusion of PE21-020. *See* (D.E. 39) - Order Denying Plaintiff's Motion to Stay. At this point in litigation, the parties should be completing expert discovery and then preparing for trial, not focusing on additional discovery that could have been requested years ago. As the Court indicated during the Parties' March 1 Hearing – at some point this case must end. *See* Ex. A - Transcript of March 1, 2024 Hearing at 39:5-25. Plaintiffs were hopeful that the recall would prove the case for them, as they argued when they tried to stay the case in 2022, but nothing could be further from reality. The recall did not identify any defect in the Autopilot software, it only identified instances of *driver misuse* of Autopilot that could mitigated through over-the-air software updates, and those updates would not have changed the outcome in this case. Plaintiffs' first impressions of this crash were the correct ones – Mr. McGee was negligent, he caused this crash, and he bore responsibility for it. That is what they knew when they sued him and settled with him for a confidential but evidently a sizable figure. If they insist on trying now to shift blame from him to Tesla, let them do it, this November at trial. Stop the delay, the campaign to prolong discovery, and the harassment; it is time for them to try to prove their case. Tesla anticipates the same result as the other Autopilot cases that have gone to trial: a complete defense verdict.

### B. Tesla Is Entitled To A Protective Order Under The Apex Doctrine

Plaintiffs noticed the depositions of a Tesla Vice President and two Directors – all clearly apex witnesses under the Apex Doctrine. Yet Plaintiffs have failed to provide grounds upon which the Court should order this extraordinary step. Under the Apex doctrine, "[A] party seeking to depose a high-ranking corporate officer must first establish that the executive: (1) has unique, non-

repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) (quoting *Hickey v. North Broward Hosp. Dist.*, No. 14-CV-60542, 2014 WL 7495780 at *2 (S.D. Fla. Dec. 17, 2014).

### 1. Plaintiff Cannot Establish That The Witnesses Have "Unique, Non-repetitive, Firsthand Knowledge Of The Facts At Issue."

Despite the clear admissions of negligence by the driver of the Tesla who admitted that he caused the crash, in this lawsuit Plaintiffs allege a product liability claim -- that a design defect in the Tesla's Autopilot system prevented it from detecting and preventing an impact with a stationary vehicle and that the system failed to adequately monitor the driver's engagement, namely failed to detect that the driver bent down to pick up his cell phone and did not have his eyes on the road. *See* (D.E. 205) - Consolidated and Amended Complaint at ¶ 121(a-d). It would be extraordinarily unusual for employees at the levels of Messrs. Moravy and Elluswamy to be ordered to submit to deposition in an individual case such as this. Plaintiffs have not, and cannot, present any evidence that these individuals have unique personal knowledge that others would not have. For instance, despite the hours of testimony from Tesla's corporate representatives, there are no instances of either of them saying "I don't know, you would need to ask" one of these witnesses.

On the contrary, Messrs. Moravy and Elluswamy each declared that both the design and evaluation of Autopilot, as well as Tesla's responses to NHTSA's investigations and the subsequent recall were collaborative efforts. Each were tangentially associated with the investigation but not directly involved, and thus they declared under oath that they have no unique or superior personal knowledge that others at Tesla would not have. *See* Exs. E and D - Decs. of

Moravy and Elluswamy. Indeed, they are in the top echelon at Tesla, so much so that they are part of the short list of employees who *report directly* to CEO Elon Musk. Tesla executives like Lars Moravy – who alone manages more than 2,000 employees – simply do not have the time to be aware of the daily operations of the employees under them. Nor do they have any firsthand knowledge of this litigation other than what has been passed on to them by attorneys and other Tesla employees. *Id* at ¶ 8. As Courts in the Eleventh Circuit unanimously recognize, it makes no sense for such employees to be dragged to deposition to testify about facts they learn secondhand from employees who work under them.

Requiring Tesla's executives and directors to sit for deposition will set an unworkable precedent designed to harass and burden Tesla, and significantly and negatively disrupt Messrs. Moravy and Elluswamy's ability to meet their obligations to consumers, stockholders, and Tesla's employees, and to engage in the other activities that are integral to their positions.

Leaving aside the problem of multiple depositions, a litigant's insistence on deposing a corporate officer lacking unique or superior knowledge suggests the improper use of discovery as a "tactical tool." *See Elkins v. Syken*, 672 So. 2d 517, 522 (Fla. 1996) (Discovery process was "never intended to be used as a tactical tool to harass an adversary . . . ."). In that circumstance, the litigant likely is motivated not by "a reasonably founded hope that the process will reveal relevant evidence," but the desire to transform the apex deposition into "an *in terrorem* increment of the settlement value[.]" *Performance Sales & Mktg., LLC v. Lowe's Cos., Inc.*, No. 5:07-CV-00140-RLV, 2012 WL 4061680, at *4 (W.D.N.C. Sept. 14, 2012) (citations and quotation omitted).

### 2. Plaintiff Cannot Establish That "Other Less Intrusive Means Of Discovery, Such As Interrogatories And Depositions Of Other Employees, Have Been Exhausted Without Success."

While Tesla strongly believes the ***over twenty-two hours*** of corporate representative deposition testimony coupled with the hundreds of discovery responses and voluminous document productions by Tesla provide more than enough information for Plaintiffs to prosecute their case, there are undoubtedly less intrusive means of discovery which Plaintiffs have not exhausted. In fact, they have not taken even one fact witness deposition of a Tesla employee. Notably, in December 2023, Plaintiffs requested the depositions of three other Tesla engineers, none of which are apex witnesses, but each knowledgeable about various aspects of Autopilot. At a hearing on April 4, 2024, Plaintiffs' counsel reiterated their request to depose these three witnesses. The Court reminded the parties of the ten (10) deposition limit under the Federal Rules and encouraged Plaintiffs to go forward with these depositions should they need additional information. Plaintiffs never bothered to follow up. Instead, they skipped over these knowledgeable witnesses to go to the top of the company. This is harassment, pure and simple. If not, then it is simply counsel's effort to delay trial, again (and again), in search of evidence they have not found despite all the materials, responses, witnesses and documents Tesla has provided to date.

### CONCLUSION

Tesla has shown that the depositions of Lars Moravy and Ashok Elluswamy would be prejudicial to Tesla. Plaintiffs are unable to show how or why discovery related to an inadmissible subsequent remedial measure is relevant. Plaintiffs are unable to show that the three witnesses have unique, personal knowledge of the issues identified by Plaintiffs. Plaintiffs have not nearly exhausted other less intrusive means of discovery. Tesla's executives and directors should not be forced to sit for deposition under these circumstances. Based on the foregoing, Tesla respectfully

requests this Court issue a protective order precluding the depositions of Messrs. Moravy and Elluswamy.

| | |
|---|---|
| Date:  June 13, 2024 | Respectfully submitted, |

s/ *Whitney v. Cruz*
**WHITNEY V. CRUZ**
Florida Bar No. 800821
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

*Attorneys for Defendant TESLA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
adam@roussolawfirm.com
assistant@roussolawfirm.com
pleadings@roussolawfirm.com

*Attorneys for Plaintiff Dillon Angulo*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel. 305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHRIEBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

 

s/ *Whitney V. Cruz*
    Whitney V. Cruz