UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-21940-BLOOM/Torres**

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

Case No. 22-22607-KMM

### PLAINTIFFS' RESPONSE TO TESLA, INC'S MOTION FOR PROTECTIVE ORDER

### Introduction

    Plaintiffs appreciate Tesla's attempt at using its crystal ball to determine what it believes Plaintiffs will elicit from the deposition testimony of Tesla's director of engineering (Mr. Moravy) and director of Autopilot (Mr. Elluswamy). However, Tesla's counsel, much like its CEO Elon Musk, misses the mark when it tries to predict the future (of discovery or the functionality of Autopilot). Plaintiffs have sought the relevant testimony of two engineering executives who have each been employed by Tesla for over a decade. It is believed that each possess unique personal

1

knowledge about Tesla's final decision-making with respect to the development of its Autopilot system in the years leading up to the production of the driver, Mr. McGee's vehicle and the preventable collision that forms the basis of this action.

Let's also be clear: plaintiffs are not seeking to depose these gentlemen on a whim or to harass them. Rather, plaintiffs seek to understand their direct decision-making as leaders of both the Autopilot and engineering groups at Tesla. To-date, it is believed that Mr. Elluswamy has only been deposed approximately three times[1] (and one of those depositions was an employment matter involving theft of trade secrets) and Mr. Moravy has never been deposed in his role as director of engineering in an Autopilot failure case. Dec. of Schreiber at ¶ 2. Thus, Tesla's claims that allowing these depositions to proceed will "create an unworkable precedent designed to harass and burden Tesla" and to "disrupt Messrs. Moravy and Elluswamy's ability to meet their [professional] obligations" is simply unfounded.

A.  **Factual History**

Tesla, and its CEO Elon Musk, have built a company for the past decade around the promise that it represented the future of driving — a phrase that for many years Tesla proudly emblazoned on its website. Much of that promise was centered on Autopilot, a system of features that could steer, brake, and accelerate the company's sleek electric vehicles on highways. Over and over, Mr. Musk declared that truly autonomous driving was nearly at hand — the day when a Tesla could drive itself — and that the capability would be whisked to drivers over the air in software updates.

---

[1] It's also worth noting that plaintiffs are unaware of Tesla ever claiming, as they are here, that Mr. Elluswamy was an "apex" deponent in any prior proceeding. He has voluntarily submitted to deposition in two autopilot defect cases, *Huang v. Tesla* and *Banner v. Tesla*.

Unlike every other company working on self-driving vehicles, Tesla has insisted that autonomy could be achieved solely with cameras tracking their surroundings. But many Tesla engineers questioned whether it was safe enough to rely on cameras without the benefit of other sensing devices — and whether Tesla was promising drivers too much about Autopilot's capabilities.

Those questions were at the heart of investigations by the National Highway Traffic Safety Administration (NHTSA) and the National Transportation Safety Board (NTSB) after dozens of Teslas on Autopilot drove into emergency vehicles, cross-traffic semitrucks or other obstacles in their path of travel. In 2016, three years before the subject collision Mr. Musk declared "The basic news is that all Tesla vehicles leaving the factory have all the hardware necessary for Level 5 autonomy." See https://www.youtube.com/watch?v=-vjGEEF_p5E (last visited June 19, 2024). It is anticipated that both Mr. Elluswamy and Mr. Moravy – and members of their teams working on the project – were concerned about these statements since the Society of Automotive Engineers defines Level 5 as full driving automation. In addition, it is anticipated that both Mr. Elluswamy and Mr. Moravy — as well as former members of the Autopilot team — have questioned Tesla's practice of constant modifications to Autopilot technology pushed out to drivers through software updates, as doing so creates unintended hazards when buyers – like Mr. McGee in this case - are never quite sure what the system can and cannot do.

For over a decade, Tesla's hardware choices have also raised safety questions. Within Tesla, including both Mr. Elluswamy and Mr. Moravy's teams, some argued for pairing cameras with radar and other sensors that worked better in heavy rain and snow, bright sunshine and other difficult conditions. For several years, Autopilot incorporated radar, and for a time Tesla worked on developing its own radar technology. However, it has been reported that Mr. Musk repeatedly

told members of the Autopilot team, including Mr. Elluswamy, that humans could drive with only two eyes and that this meant cars should be able to drive with cameras alone. Other companies developing driver-assistance systems and fully autonomous cars thought cameras were not enough. Google, for example, outfitted its self-driving test cars with expensive lidar devices as big as buckets mounted on the roof. See https://waymo.com (last visited on June 19, 2024). Cameras, by contrast, were cheap and small, which made them appealing to Tesla for its sleek cars. Radar, which uses radio waves and has been around for decades, was cheaper than lidar, a less common technology. But some engineers – presumably including Mr. Elluswamy and Mr. Moravy - backed Mr. Musk's cameras-only approach on the basis radar was not always accurate and that it was difficult to reconcile radar data with information from cameras. Tesla officially phased out radar on its vehicles in 2021. Mr. McGee's 2019 Model S used some radar technology but relied more heavily on cameras. This decision-making process and why McGee's vehicle was unable to appreciate that it was approaching a t-intersection, failed to brake or slow, and only provided a warning to take over the vehicle approximately one second before impact are all relevant issues to be explored with these witnesses.

Additionally, both Mr. Elluswamy and Mr. Moravy were in leadership positions and presumably in discussions led by Mr. Musk who decided on the term "Autopilot" to describe the suite of autonomous features. It is believed that some members of the autopilot and engineering teams – lead by Mr. Elluswamy and Mr. Moravy - objected to the name as misleading, favoring "Copilot" and other options.

.   **B.   Procedural History and Discovery**

Tesla repeatedly references the two corporate representative depositions that have been completed to-date as a basis for its protective order. What Tesla omits is that one of its corporate

4

representatives, Mr. Phatak, was deposed for fourteen hours, over two days, since his deposition was cross-noticed in three different pending Autopilot failure cases – *Huang v. Tesla, Monet v. Tesla* and this matter. Dec. of Schreiber at ¶ 3. In fact, in over 380 pages of deposition testimony, counsel for the plaintiffs in this matter asked relevant questions for approximately 50 pages. *Id*.

While it is true that another corporate representative, Mr. Blanco, was deposed in this matter for seven hours, he remains the *only* Tesla employee deposed specifically on liability issues in this case to-date. Dec. of Schreiber at ¶ 4. Further, while Tesla goes to great lengths to argue that some other phantom employees within the company may have more direct first-hand knowledge of the relevant issues, the truth is that to-date Tesla has never identified *any* other employees its Rule 26 disclosures other than its corporate representatives. Dec. of Schreiber at ¶ 5. Additionally, Tesla can't argue that the depositions of these two engineers run afoul of the ten deposition limit set by *Fed. Rules of Civ. Proc.* 30(a)(2)(A) since there have only been three liability depositions completed to-date (i.e. Tesla's Corporate Representative in this matter, an investigating officer and the former defendant driver). Dec. of Schreiber at ¶ 6.

Lastly, Tesla makes reference to a purported compromise offer made to plaintiffs to withdraw the deposition notices of Messrs. Elluswamy and Moravy in exchange for producing a senior program manager Mr. Scheutzow. Plaintiffs indicated a willingness to depose Mr. Scheutzow in addition to Messrs. Elluswamy and Moravy but not in lieu of. Dec. of Schreiber at ¶ 7. First, Tesla had never identified Mr. Scheutzow as an employee with relevant information in its disclosures or discovery responses. Dec. of Schreiber at ¶ 8. Second, from review of Mr. Scheutzow's deposition testimony in the *Huang v. Tesla* matter he was only hired to work at Tesla in June 2018, approximately nine months before the subject collision. Dec. of Schreiber at ¶ 9. Mr. Scheutzow testified that he had no involvement in Autopilot design, marketing or decision-making

prior to mid-2018 and thus his testimony, while arguably relevant on some issues, does not address Tesla's design and development of Autopilot in the years prior nor its response to federal investigations into this technology that long pre-dated his tenure at the company. Dec. of Schreiber at ¶ 10.

Finally, it is worth noting that these depositions were properly noticed a month in advance of the discovery cut off and well before expert disclosures. Dec. of Schreiber at ¶ 11. However, similar to the deposition of former NTSB chairman, Mr. Sumwalt, who plaintiffs sought to depose over a month ago, Tesla routinely objects to such discovery, forcing the parties to entangle this Court and resulting in inevitable delay. Thus, while Tesla gnashes its teeth about delay the truth is Tesla's refusal to allow relevant depositions to be completed in the regular course is the primary culprit.

## Argument

Before moving onto what the balance of this response is about, plaintiffs will touch briefly on what will *not* be addressed: the law on apex depositions. Tesla accurately references relevant decisional authority on these issues. However, what Tesla fails to appreciate is that both Messrs. Elluswamy and Moravy do possess direct personal knowledge as critical decision-makers – alongside Mr. Musk – in the development and implementation of Autopilot and the companies' response to federal investigations regarding the same over the past eight years. Dec. of Schreiber at ¶ 12.

### Mr. Elluswamy's Direct Knowledge

Ashok Elluswamy was initially in charge of what was known as the "Driver Assistance Group". Dec. of Schreiber at ¶ 13. It only later changed its name to the "Autopilot Group." *Id*. As Tesla approached the introduction of Autopilot 2.0, a similar hardware system to what existed in

Mr. McGee's Model S, most of the Autopilot team dropped their normal duties to work on a video meant to show just how autonomous the system could be. But the final video did not provide a full picture of how the car operated during the filming[2]. Dec. of Schreiber at ¶ 14.

The route taken by the car had been charted ahead of time by software that created a three-dimensional digital map, a feature unavailable to drivers using the commercial version of Autopilot. Dec. of Schreiber at ¶ 15. At one point during the filming of the video, the car hit a roadside barrier on Tesla property while using Autopilot and had to be repaired. Dec. of Schreiber at ¶ 16. In fact, it is believed that at various points in the filming Mr. Elluswamy was located in the backseat of the Tesla. Dec. of Schreiber at ¶ 17. The video has continued to be used to promote Autopilot's capabilities, and it is still on Tesla's website. See https://www.tesla.com/videos/full-self-driving-hardware-all-tesla-cars last visited on June 19, 2024. Dec. of Schreiber at ¶ 18. During the unveiling of Autopilot 2.0, which coincided with the videos' release, Tesla's CEO said new Tesla cars now included the cameras, computing power and all other hardware they would need for "full self driving" — suggesting a truly autonomous operation. Dec. of Schreiber at ¶ 19. It is anticipated that both Messrs. Elluswamy and Moravy were taken aback by such statements and likely knew that the company was promising a functionality that was not possible. Dec. of Schreiber at ¶ 20.

Furthermore, it is believed that Mr. Elluswamy received reports from and was directly involved with the quality assurance and integration team lead by former employee CJ Moore[3].

---

[2] As part of the document request to Mr. Elluswamy's deposition plaintiffs have sought all unedited video clips from that day's filming.

[3] Many members of the integration team now report to Mr. Elluswamy. Mr. Moore left the company shortly after it became public that he'd stated "Elon's tweet does not match engineering reality." See https://jalopnik.com/elon-s-tweet-does-not-match-engineering-reality-tesla-1846844978 last visited June 19, 2024.

Dec. of Schreiber at ¶ 21. The integration team led driver attentiveness and engagement features – a critical issue in this case considering Mr. McGee's foreseeable misuse of the technology. Dec. of Schreiber at ¶ 22. Additionally, Mr. Elluswamy's team oversaw the development of the vehicle's vision system which would have included its ability to see three dimensional objects (like the stationary Benavides/Angulo vehicle) and to detect and understand driveable space as its approached a t-intersection (like the subject intersection at Card Sound Road) while operating under Navigation on Autopilot. Dec. of Schreiber at ¶ 23.

Finally, it is anticipated that Mr. Elluswamy was involved in Tesla's response to the federal investigations into Autopilot that began with the NTSB in 2016 and concluded with the NHTSA recall and pending recall query that is currently on-going. Dec. of Schreiber at ¶ 24. Despite Tesla's argument to the contrary, it refused to allow its corporate representative, Mr. Blanco, to testify to these issues. *Id*. It seems quite implausible that Mr. Elluswamy, along with Mr. Moravy, Mr. Musk, and other leadership within Tesla were not directly involved in the decision-making in how to respond to these long-standing investigations into Autopilot technology. Put simply, Mr. Elluswamy's knowledge of the risk of Tesla drivers becoming over complacent, Tesla's outlier status in marketing this technology as something more advanced than it was, and the company's continued rush to development and release of these technologies in 'beta' fashion speak directly to the risk-benefit test of strict product liability. Dec. of Schreiber at ¶ 25.

**Mr. Moravy's Direct Knowledge**

Lars Moravy may be one of the most long-standing employees of Tesla. He tenure with the company began in 2010. Dec. of Schreiber at ¶ 26. It is believed that Mr. Moravy has lead, among other things, teams involved in vehicle testing. This would presumably involve testing of

8

the automation and driver monitoring systems as well as the forward collision warnings and automatic emergency braking. Dec. of Schreiber at ¶ 27. All of these issues are directly relevant to the product liability claims in this matter and Mr. Moravy's role in overseeing the testing of these critical systems is directly relevant. *Id*. Whether Mr. Moravy was sitting on the test track or personally wired the crash test dummies is irrelevant. What matters is what his direct decision-making – alongside senior leadership – was in response to testing and development of the very systems that ultimately caused the subject collision. Further, as part of the federal investigations going back to the NTSB in 2016 and through NHTSA to the present it is believed that Mr. Moravy was intimately involved in Tesla's decision-making. Dec. of Schreiber at ¶ 28. Like Mr. Elluswamy, Mr. Moravy's declaration makes a point of stating that he was not "directly involved in the communication with NHTSA" and that is true as far as it goes. Tesla's lawyers were "directly involved" in drafting those communications but there is no doubt that the director of engineering and the director of Autopilot were "directly involved" in making those decisions and formulating all responses.

## Conclusion

Messrs. Elluswamy and Moravy have relevant direct knowledge regarding the product liability claims in this case – both as it relates to the development of the technology and Tesla's response to federal investigations regarding the same.  Tesla's argument that deposing these gentlemen causes some great interruption to their business is entirely unfounded since you can count on one hand how many times they have been deposed despite years of litigation and little to no effort by Tesla previously to prevent such depositions from proceeding. Rather, while the depositions of Messrs. Elluswamy and Moravy may be "damaging" to Tesla, that is not synonymous with "prejudicial".  Based upon the foregoing, plaintiffs respectfully request that

9

Tesla's motion for protective order be denied and these depositions be allowed to proceed with all deliberate speed after the discovery cut-off of June 28, 2024.

Dated: June 21, 2024

Respectfully submitted,

SINGLETON SCHREIBER, LLP

591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Tel: (619) 771-3473
**/s/ Brett J. Schreiber, Esq.**
Brett J. Schreiber, Esq.
California Bar No. 239707
(Admitted *Pro Hac Vice 05/07/2024*)
*Attorney for Plaintiff Benavides*
bschreiber@singletonschreiber.com
SERVICE EMAILS:
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
eelms@singletonschreiber.com


**/s/Todd Poses**
Todd Poses
FBN: 75922
POSES LAW GROUP, P.A.
169 East Flagler Street, Suite 1600
Miami, Florida 33131
Tel: (305) 577-0200
tposes@poseslawgroup.com
maria@poseslawgroup.com
shelly@poseslawgroup.com
*Attorney for Plaintiff Benavides*


THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
Tel: (305) 670-6669

                                          **/s/** ***Adam T. Boumel, Esq.***
                                          Adam T. Boumel, Esq.
                                          Florida Bar No.: 0110727
                                          Adam@roussolawfirm.com
                                          SERVICE EMAILS:
                                          pleadings@roussolawfirm.com (primary)
                                          assistant@roussolawfirm.com
                                          *Attorney for Plaintiff Angulo*

## CERTIFICATE OF SERVICE

We hereby certify that on June 21, 2024, the foregoing document was served electronically to all counsel of record listed as follows:

| | |
|---|---|
| **Adam T. Boumel, Esq.** <br> Florida Bar No. 0110727 <br> **Darren J. Rousso, Esq.** <br> Florida Bar No. 97410 <br> THE ROUSSO, BOUMEL LAW FIRM, PLLC <br> 9350 South Dixie Highway <br> Suite 1520 <br> Miami, FL 33156 <br> Tel. 305-670-6669 <br> Adam@roussolawfirm.com <br> darren@roussolawfirm.com <br> pleadings@roussolawfirm.com <br> *Attorneys for Plaintiff Dillon Angulo* | **Todd Poses, Esq.** <br> Florida Bar No. 0075922 POSES & POSES, P.A. <br> Alfred I. Dupont Building <br> 169 East Flagler Street, Suite 1600 <br> Miami, FL 33131 <br> Tel.  305-577-0200 <br> Fax: 305-371-3550 <br> tposes@posesandposes.com <br> maria@posesandposes.com <br> *Attorneys for Plaintiff Neima Benavides* |
| **Whitney V. Cruz, Esq.** <br> Florida Bar No. 800821 <br> **BOWMAN AND BROOKE LLP** <br> Two Alhambra Plaza, Suite 800 <br> Coral Gables, FL 33134 <br> Tel. 305-995-5600 / Fax: 305-995-6100 <br> whitney.cruz@bowmanandbrooke.com <br> *Attorneys for Defendant Tesla, Inc.* | **Douglas F. Eaton, Esq.** Florida Bar No. 0129577 EATON & WOLK PL <br> 2665 South Bayshore Drive, Suite 609 <br> Miami, FL 33133 <br> Tel. 305-249-1640 <br> Fax: 786-350-3079 <br> deaton@eatonwolk.com <br> cgarcia@eatonwolk.com <br> lhuete@eatonwolk.com <br> *Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides* |
| **THOMAS P. BRANIGAN** | |

| | |
|---|---|
| (Admitted *Pro Hac Vice*)<br>**DREW P. BRANIGAN**<br>(Admitted *Pro Hac Vice*)<br>**BOWMAN AND BROOKE LLP**<br>101 W. Big Beaver Road, Suite 1100<br>Troy, MI 48084<br>Tel. 248-205-3300 / Fax: 248-205-3399<br>thomas.branigan@bowmanandbrooke.com<br>drew.branigan@bowmanandbrooke.com<br><br>*Attorneys for Defendant*<br>*Tesla, Inc*. | |