UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-21940-BLOOM/TORRES**

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

Case No. 22-22607-KMM

**DECLARATION OF BRETT J. SCHREIBER IN SUPPORT OF PLAINTIFFS'
RESPONSE TO TESLA, INC'S MOTION FOR PROTECTIVE ORDER**

I, Brett J. Schreiber, declare as follows:

    1.    I am an attorney admitted pro hac vice in the United States District Court for the Southern District of Florida and I am one of the attorneys for the Plaintiffs, Estate of Naibel Benavides Leon and Dillon Angulo. If called as a witness in this matter, I could and would testify to the following facts of which I have personal knowledge:

    2.    To-date, it is believed that Mr. Elluswamy has only been deposed approximately three times (and one of those depositions was an employment matter involving theft of trade secrets) and Mr. Moravy has never been deposed in his role as director of engineering in an

1

Autopilot failure case.

3. One of Tesla's corporate representatives, Mr. Phatak, was deposed for fourteen hours, over two days, since his deposition was cross-noticed in three different pending Autopilot failure cases- *Huang v. Telsa, Monet v. Tesla*, and this matter. In fact, in over 380 pages of deposition testimony, counsel for plaintiffs in this matter asked relevant questions for approximately 50 pages.

4. While it is true that another corporate representative, Mr. Blanco, was deposed in this matter for seven hours, he remains the *only* Telsa employee deposed specifically on liability issues in this case to-date.

5. To-date Tesla has never identified *any* other employees its Rule 26 disclosures other than its corporate representatives.

6. There have only been three liability depositions completed to-date (i.e. Tesla's Corporate Representative in this matter, an investigating officer and the former defendant driver).

7. Plaintiffs indicated a willingness to depose Mr. Scheutzow in addition to Messrs. Elluswamy and Moravy but not in lieu of.

8. Tesla had never identified Mr. Scheutzow as an employee with relevant information in its disclosures or discovery responses.

9. From review of Mr. Scheutzow's deposition testimony in the *Huang v. Tesla* matter, he was only hired to work at Tesla in June 2018, approximately nine months before the subject collision

10. Mr. Scheutzow testified that he had no involvement in Autopilot design, marketing or decision-making prior to mid-2018 and thus his testimony, while arguably relevant on some issues, does not address Tesla's design and development of Autopilot in the years prior nor its response to federal investigations into this technology that long pre-dated his tenure at the company.

11. These depositions were properly noticed a month in advance of the discovery cut off and well before expert disclosures.

12. Both Messrs. Elluswamy and Moravy possess direct personal knowledge as critical decision-makers – alongside Mr. Musk – in the development and implementation of Autopilot and the companies' response to federal investigations regarding the same over the past eight years.

13. Ashok Elluswamy was initially in charge of what was known as the "Driver Assistance Group," which later changed its name to the Autopilot Group.

14. As Tesla approached the introduction of Autopilot 2.0, a similar hardware system to what existed in Mr. McGee's Model S, most of the Autopilot team dropped their normal duties to work on a video meant to show just how autonomous the system could be. But the final video did not provide a full picture of how the car operated during the filming.

15. The route taken by the car had been charted ahead of time by software that created a three-dimensional digital map, a feature unavailable to drivers using the commercial version of Autopilot.

16. At one point during the filming of the video, the car hit a roadside barrier on Tesla property while using Autopilot and had to be repaired.

17. It is believed that at various points in the filming Mr. Elluswamy was located in the backseat of the Tesla.

18. The video has continued to be used to promote Autopilot's capabilities, and it is still on Tesla's website. See https://www.tesla.com/videos/full-self-driving-hardware-all-tesla-cars last visited on June 19, 2024.

19. During the unveiling of Autopilot 2.0, which coincided with the videos' release, Tesla's CEO said new Tesla cars now included the cameras, computing power, and all other hardware they would need for "full self driving" — suggesting a truly autonomous operation.

20. It is anticipated that both Messrs. Elluswamy and Moravy were taken aback by such statements and likely knew that the company was promising a functionality that was not possible.

21. Furthermore, it is believed that Mr. Elluswamy received reports from and was directly involved with the quality assurance and integration team lead by former employee CJ Moore.

22. The integration team led driver attentiveness and engagement features – a critical issue in this case considering Mr. McGee's foreseeable misuse of the technology.

23. Mr. Elluswamy's team oversaw the development of the vehicle's vision system which would have included its ability to see three dimensional objects (like the stationary Benavides/Angulo vehicle) and to detect and understand driveable space as it approached a t-intersection (like the subject intersection at Card Sound Road) while operating under Navigation on Autopilot.

24. It is anticipated that Mr. Elluswamy was involved in Tesla's response to the federal investigations into Autopilot that began with the NTSB in 2016 and concluded with the NHTSA recall and pending recall query that is currently on-going. Tesla refused to allow its corporate representative, Mr. Blanco, to testify to these issues.

25. Mr. Elluswamy's knowledge of the risk of Tesla drivers becoming over complacent, Tesla's outlier status in marketing this technology as something more advanced than it was, and the company's continued rush to development and release of these technologies in 'beta' fashion speak directly to the risk-benefit test of strict product liability.

26. Lars Moravy may be one of the most long-standing employees of Tesla. He tenure with the company began in 2010.

27. It is believed that Mr. Moravy has led, among other things, teams involved in vehicle testing. This would presumably involve testing of the automation and driver monitoring systems as well as the forward collision warnings and automatic emergency braking. All of these issues are directly relevant to the product liability claims in this matter and Mr. Moravy's role in overseeing the testing of these critical systems is directly relevant.

28. As part of the federal investigations going back to the NTSB in 2016 and through NHTSA to the present it is believed that Mr. Moravy was intimately involved in Tesla's decision-making.

29. Attached as Exhibit A are true and correct copies of the Amended Notice of Taking Remote Deposition of Ashok Elluswamy and Request for Production, which was served on Tesla

on May 22, 2024. The Amended Notice is the operative notice, not the Notice of Deposition of Mr. Elluswamy and Request for Production that is included in Tesla's moving papers. That notice was served on Telsa on May 21, 2024, prior to the Amended Notice being served.

30. Attached as Exhibit B are true and correct copies of the Amended Notice of Taking Remote Deposition of Lars Moravy and Request for Production, which was served on Tela on May 22, 2024. The Amended Notice is the operative notice, not the Notice of Taking Remote Deposition of Lars Moravy and Request for Production that is included in Tesla's moving papers. That notice was served on Tesla on May 21, 2024, prior to the Amended Notice being served.

31. Testimony that has been given in the *Huang v. Tesla* matter is subject to confidentiality/protective order designations. In order to comply with the protective

order in *Huang*, Plaintiffs' Response to Tesla's Motion for Protective Order, as well as this declaration and its exhibits, will be filed conditionally under seal.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 21st day of June 2024, at San Diego, California.

By: */s/ Brett J. Schreiber, Esq*

BRETT J. SCHREBER

Attorney for Plaintiff Benavides

SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Tel: (619) 771-3473
*/s/ Brett J. Schreiber, Esq.*
Brett J. Schreiber, Esq.
California Bar No. 239707
(Admitted *Pro Hac Vice 05/07/2024*)
*Attorney for Plaintiff Benavides*
bschreiber@singletonschreiber.com
SERVICE EMAILS:
bschreiber@singletonschreiber.com
vas@singletonschreiber.com

cbirnbaum@singletonschreiber.com
eelms@singletonschreiber.com


*/s/Todd Poses*
Todd Poses
FBN: 75922
POSES LAW GROUP, P.A.
169 East Flagler Street, Suite 1600
Miami, Florida 33131
Tel: (305) 577-0200
tposes@poseslawgroup.com
maria@poseslawgroup.com
shelly@poseslawgroup.com
*Attorney for Plaintiff Benavides*

THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
Tel: (305) 670-6669
 **/s/ *Adam T. Boumel, Esq.***
Adam T. Boumel, Esq.
Florida Bar No.: 0110727
Adam@roussolawfirm.com
SERVICE EMAILS:
pleadings@roussolawfirm.com (primary)
 assistant@roussolawfirm.com
*Attorney for Plaintiff Angulo*

6

**CERTIFICATE OF SERVICE**

  We hereby certify that on June 21, 2024, the foregoing document was served electronically to all counsel of record listed as follows:

| | |
|---|---|
| **Adam T. Boumel, Esq.**<br>Florida Bar No. 0110727<br>**Darren J. Rousso, Esq.**<br>Florida Bar No. 97410<br>THE ROUSSO, BOUMEL LAW FIRM, PLLC<br>9350 South Dixie Highway<br>Suite 1520<br>Miami, FL 33156<br>Tel. 305-670-6669<br>Adam@roussolawfirm.com<br>darren@roussolawfirm.com<br>pleadings@roussolawfirm.com<br>*Attorneys for Plaintiff Dillon Angulo* | **Todd Poses, Esq.**<br>Florida Bar No. 0075922 POSES & POSES, P.A.<br>Alfred I. Dupont Building<br>169 East Flagler Street, Suite 1600<br>Miami, FL 33131<br>Tel.  305-577-0200<br>Fax: 305-371-3550<br>tposes@posesandposes.com<br>maria@posesandposes.com<br>*Attorneys for Plaintiff Neima Benavides* |
| **Whitney V. Cruz, Esq.**<br>Florida Bar No. 800821<br>**BOWMAN AND BROOKE LLP**<br>Two Alhambra Plaza, Suite 800<br>Coral Gables, FL 33134<br>Tel. 305-995-5600 / Fax: 305-995-6100<br>whitney.cruz@bowmanandbrooke.com<br>*Attorneys for Defendant Tesla, Inc.* | **Douglas F. Eaton, Esq.** Florida Bar No. 0129577 EATON & WOLK PL<br>2665 South Bayshore Drive, Suite 609<br>Miami, FL 33133<br>Tel. 305-249-1640<br>Fax: 786-350-3079<br>deaton@eatonwolk.com<br>cgarcia@eatonwolk.com<br>lhuete@eatonwolk.com<br>*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides* |
| **THOMAS P. BRANIGAN**<br>(Admitted *Pro Hac Vice*)<br>**DREW P. BRANIGAN**<br>(Admitted *Pro Hac Vice*)<br>**BOWMAN AND BROOKE LLP**<br>101 W. Big Beaver Road, Suite 1100<br>Troy, MI 48084<br>Tel. 248-205-3300 / Fax: 248-205-3399<br>thomas.branigan@bowmanandbrooke.com<br>drew.branigan@bowmanandbrooke.com<br><br>*Attorneys for Defendant Tesla, Inc.* | |