UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-21940-BLOOM/Otazo-Reyes**

NEIMA BENAVIDES, *as Personal Representative of the Estate of Naibel Benavides Leon, deceased*,

    Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

    Defendant.
_____/

**Case No. 22-cv-22607-BLOOM**

DILLON ANGULO,

    Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

    Defendants.
_____/

**PLAINTIFFS' NOTICE OF RECEIPT OF PREVIOUSLY SUBPOENAED EVIDENCE, AND CORRESPONDING REQUEST FOR TESLA TO AUTHORIZE ACCESS TO DATA**

Plaintiffs, Neima Benavides and Dillon Angulo, by and through their undersigned counsel, hereby provide notice that they have located the crashed Tesla's MCU (microcontroller) and incorporated SD data storage card(s) (collectively, the "MCU").

**INTRODUCTION**

The MCU, which is essentially the vehicle's "black box," was long believed to be lost, as the Florida Highway Patrol, which had taken possession of it after the accident, had long represented that they no longer had it. Unfortunately, the data on the MCU is proprietary, and only Tesla can download it and make it usable

by plaintiff's experts. However, despite being under the Magistrate's order to produce this data, Tesla is now refusing to do so. For the reasons set forth below, we are asking that the Court compel Tesla to download and produce the complete crash data available on the MCU, so that our experts can review it, and, if necessary, supplement their opinions on the same time line the court has just authorized to allow them to evaluate the NHTSA data produced in response to Plaintiff's Twelfth request for production.

## **CHRONOLOGY OF ATTEMPTS TO PROCURE THE MCU**

1. In the immediate aftermath of this collision, the MCU was seized from the vehicle by FHP pursuant to its investigation of the crash.

2. On November 15, 2021, Tesla retook possession of the vehicle from FHP. See, evidence collection sheet attached here as "Exhibit A".

3. Shortly thereafter, in November of 2021 (at which time only the Estate's case was pending), the subject Tesla was jointly inspected by the parties at a Tesla service center in Coral Gables. The Estate hired Andres Navarro of engineering firm Kimley Horn, who attended the inspection with a second engineer in anticipation of accomplishing a download of all data from the MCU, which was the sole purpose of the inspection. The inspection was also attended by Todd Poses, counsel for Plaintiffs, former Tesla counsel Henry Salas, as well as experts hired by Tesla. At that time, counsel for both parties learned for the first time that MCU had not been returned to the vehicle and was thus not in Tesla's possession.

4. Immediately thereafter, Mr. Poses contacted FHP homicide detective Corporal Riso, who had taken over as lead investigator for the collision. Corporal Riso informed Mr. Poses that it was his assumption that FHP was no longer in possession of and/or storing the MCU, since by that time FHP's investigation had concluded and charges were not filed against the Tesla driver, Mr. McGhee. In reliance on Mr. Riso's representation, Plaintiffs took no further action for a period of time.

5. Then, in May of 2023, the parties conferred about renewing attempts to locate the MCU at issue, and

Tesla indicated that it would take lead role in same. To that extent, Tesla asked for permission to attach Plaintiffs' counsels' signatures to a Joint Subpoena to FHP seeking the parts at issue. See, email communications attached as "Exhibit B" and the Joint Subpoena attached as "Exhibit C".

6. Notably, as of May of 2023, Tesla had yet to produce a single line of vehicle log data to Plaintiff.

7. In November of 2023, after Plaintiff finally received Tesla's log data and discovered that it was incomplete and missing critical data points, Plaintiffs contacted Tesla to inquire as to the status of FHP's response to the Joint Subpoena. In response, Tesla's counsel responded that they were working on it and would get back to Plaintiffs. See email chain attached as "Exhibit B". Ultimately, Plaintiffs never received any further response from Tesla, and never received any Return of Service or subpoena response from FHP establishing that Tesla had ever actually served the subpoena.

8. On March 7, 2024, Plaintiffs brought Tesla's seemingly incomplete data production before Judge Torres, who ordered Tesla to produce both the data requested by Plaintiffs and a glossary explaining what each signal was. (see, hearing transcript from March 7, 2024, pages 75-103, attached here as "Exhibit D").

9. On May 15, 2024, having received no response from Tesla regarding their FHP subpoena, Plaintiffs took the liberty of serving FHP with the subpoena. See, Return of Service attached as "Exhibit E".

10. On May 22, 2024, Plaintiffs received FHP's subpoena response indicating that "the Department has determined that no responsive records exist". See, FHP subpoena response attached as "Exhibit F" (note that the document attached by FHP in their subpoena response is the evidence collection sheet attached as "Exhibit A").

11. The next day, on May 23, 2024, the parties were back in front of Judge Torres, once again discussing the log data. In that hearing, Tesla's counsel explained as follows:

> "What we have given them, which is what the Court ordered, which is what we have already given them – all the data for –that we had for the hour after the crash. Sorry, the hour before the crash…what I can tell you is that we have given them all the data that we currently have for the last drive cycle. There isn't anything that we are holding back. The other piece that I wanted to

get out, which is also in the email to them, but I just want to be upfront, because we are Court-ordered – so, I want the Court to know, excuse me, exactly what the lay of the land is – there is an SD card – I don't know if the Court is familiar with what is an SD card. There is an SD car inside – it is called the MCU, but is basically the screen inside the Tesla. We are currently storing the vehicle. However, long ago, I don't know when, shortly after the crash, as part of their investigation, law enforcement removed the MCU that had the SD card in it…**I don't know whether [FHP] [is] still storing the MCU and whether they still have the SD card that was in the MCU, if we can extract data from the SD card. It may be that there is more data for the last drive cycle on the SD card**…We told plaintiffs, we called the police to find out if it is there, but of course, they can do this, too. There is nothing stopping them from going and extracting the data. **And we are happy to interpret them. You have to give the data to Tesla to interpret**, but anyone can extract the data from the SD card….but I just want to be upfront with the Court about what the data is because **there was a court order**.

Hearing transcript from May 23, 2024, attached as "Exhibit G". Full argument on this issue contained on pages 29-44, excerpted statements from Tesla's counsel taken from pages 31-35. Emphasis added.

12.     On May 31st, Plaintiffs took the deposition testimony of Telsa's Rule 30(b)(6) designated corporate representative, Mr. Rubio Blanco. Mr. Blanco made it clear that he could not answer a number of questions about the crash without the data contained on the SD card that Tesla now refuses to provide to Plaintiffs:

> Q: What type of targets was a – the subject vehicle able to identify when operating under autopilot traveling on the Class 5 roadway it was traveling upon in the 30 seconds prior to this collision?
>
> [objection and clarification that the question was intended to include "targets" for purposes of Automatic Emergency Breaking and Forward Collision Warning]
>
> > A: I wouldn't be able to know. We have – **we don't have sufficient data in order to evaluate what the vehicle was seeing 30 seconds prior to the intersection**, so I wouldn't be able to know what targets the vehicle had.
>
> [Blanco, 179:2-21].
>
> ---------------------------------------
>
> Q: If you had – we'll talk more when we get to data, and log data, in a little bit. But if you had longer video clips, longer than the five or seven seconds that has been produced by Tesla, would you be able to analyze through augmented visual overlay what the vehicle was seeing,

> what targets it was identifying in, let's say, the 10 or 20 or 30 seconds before this incident?
>
> [objection]
>
>> A: My understanding is that that will not be possible.
>
> Q: Why and what do you base that understanding on?
>
>> A: Well, in **order to run an augmented video or simulation, the – the system requires to have a series of – of – of data from the actual vehicle that – that wasn't received by Tesla [via over the air upload] in this – this collision**.
>
> [Blanco, 180:7-23]
>
> -------------------------------------------
>
> Q: I asked you a question, sir, which was: Based on upon what we see here, knowing that this vehicle exit[ed] this roadway in less than 2 ½ seconds, as a corporate representative on drivable space, was this vehicle at this time, based upon GPS coordinates, based upon the fact that it have [sic] navigation, the fact that it's on a map, the fact that it knows it's approaching a T-intersection – was this vehicle incapable of at this time of recognizing that the drivable space was going to end in less than 500 feet or in less than 2 ½ seconds?
>
> [Objections]
>
>> **A**: Again, I can't answer the question because I'm not able to stimulate in my head what the vehicle was seeing at that time, and **we have insufficient data in order to perform that evaluation at this time.**
>
> [Blanco, 273:9-23]
>
> [All cited testimony attached as "Exhibit H"]

13. In light of Mr. Blanco's testimony, and despite being told by both FHP and by Tesla that the MCU was no longer in FHP's possession, Plaintiffs, in a last ditch effort to locate the MCU, subpoenaed former FHP Officer Rosario-Flores for deposition. Officer Rosario-Flores was the lead FHP investigator for a short period of time in the immediate aftermath of the collision, before the investigation was taken over by Corporal Riso.

14. After Plaintiffs efforts to subpoena Officer Rosario-Flores failed, Plaintiffs were able to finally reach him by email on July 31, and he agreed to sit for a deposition on August 8, 2024.

15. At his deposition, Officer Rosario-Flores advised the parties that there was a possibility that the items could be stored at FHP's Troop E evidence room, and supplied the parties with the address of that location. (Deposition not yet transcribed).

16. That deposition occurred on a Thursday. On Monday morning, August 12, 2024, the undersigned directed his associate to drive to FHP's office and make contact with the evidence custodian there. The undersigned's associate returned and provided the undersigned with contact information for Ms. Amy Bloom, in the office of FHP's general counsel. After a long discussion with Ms. Bloom, she advised that FHP was in possession of the MCU, and that FHP would be willing to release the evidence to the parties, provided that both parties agreed to and jointly signed off on the return of the evidence. Immediately thereafter, the undersigned personally drove to FHP's office, spoke with the evidence custodian at length, and was provided with the inventory sheet attached as "Exhibit I", confirming, beyond all odds, that FHP was still in possession of the MCU.

17. Immediately thereafter, that same day, Plaintiffs provided the inventory sheet to Tesla, advised that the MCU had been found, and attempted to begin immediate coordination of the required joint efforts to retrieve the MCU and download the data from same.

18. In response, Tesla indicated that it objected to any such attempts and would not cooperate with Plaintiff's efforts.

## ARGUMENT

The data contained in the MCU provides the most complete picture of the events leading up to this tragic accident. To the extent that this data would be exculpatory for Tesla, one would presume that Tesla would be rushing to pick the MCU up, download the data, and deliver it to their experts. That Tesla is instead standing in the way of Plaintiff's efforts to do the same suggests that Tesla believes the data will be prejudicial to it, so it is using the belated reappearance of the MCU to avoid this prejudice.

Some of the most critical evidence in this case is and always has been the data recorded by the subject Tesla involved in this crash. As confirmed by Mr. Blanco, the only data produced by Tesla in this case thus far is incomplete and inadequate to allow the parties to understand what this vehicle was "seeing", processing, and commanding in the moments leading up to this collision. As this Court is aware, one of Plaintiffs' primary allegations in this case is that Tesla's Autopilot system failed to detect or respond to a parked vehicle in its path of travel. The current log data shows that prior to colliding with the parked car, the subject vehicle never provided its driver with a forward collision warning and never engaged the car's brakes. But because the current log data is incomplete, the parties don't yet know the following: Did Tesla's system ever detect the parked car in its path? If so, at what distance? How did it label / identify the car? And what commands / actions did it fire in response? Alternatively, was the system completely blind to the parked car in its path? If that's the case, why? In essence, the parties still do not know what Autopilot was "seeing" and doing in the moments leading up to the collision.

This missing data has been a point of contention for some time now. Multiple hearings have been conducted on the issue. Plaintiffs have pointed out to the Court that the data produced by Tesla does not contain any information for known data points of "***AEB [automatic emergency brake] not activating reason***", "***which radar target is associated to the vision objection for [Forward Collision Monitoring]***", "***the cross checks in the forward collision monitor***", "***Enable Forward Collision Warning***", "***Enable Autonomous Emergency Brakes***", "***Enable Automatic Emergency Steering***". (See, pages from Bates Stamped document #s 1244 - 1303, attached as "Exhibit J"). Moreover, the lack of Real Time Data Values precludes the ability to create an Augmented Video of the accident that Tesla has produced in other cases. Video captured from the vehicle's cameras is augmented with data from the vehicle, showing a real time depiction of exactly what the vehicle was "seeing", identifying / processing, and commanding in the seconds leading up to this collision. (see, Blanco, 180:7 – 182:2; see also, Augmented Video of a different crash attached as "Exhibit K"; see lastly, a less technical example of Augmented Video through the following video, posted by Tesla on its website in 2016 (before this crash) https://www.tesla.com/videos/autopilot-self-driving-hardware-neighborhood-long).

In court proceedings and in its corporate representative's deposition, Tesla maintained that it did not have this data because the data that *was* uploaded over the air from the vehicle to Tesla's headquarters following this crash was not the complete data available in the MCU. The parties have long known that the additional data could be accessed through the vehicle's MCU, but the MCU had long been missing – they were removed from the vehicle by FHP very soon after the collision – and the parties were unable to locate same despite what Plaintiffs believed were joint efforts.

As they have done in response to previous motions, Tesla will likely accuse Plaintiffs of a lack of diligence in obtaining the MCU. But Plaintiffs attempted to obtain the MCU as early as November 2021, and were told by FHP that it was not in their possession. Plaintiffs were entitled to rely on both Tesla's representations that they were attempting to locate the MCU, and FHP's repeated representations that it not have the MCU. Plaintiff's efforts that finally located the MCU went above and beyond the diligence required of parties to locate evidence.

Having finally located the MCU, Plaintiffs reasonably expected that Tesla would fulfill its obligation under Judge Torres' order to provide this data, especially in light of their statement to Judge Torres that Telsa "would be happy to interpret [the data]" for Plaintiffs if the data was located. Instead, Tesla wouldn't even provide the FHP with the joint approval the FHP requires to release the MCU to one of the parties. In hindsight, it is not clear whether Tesla was ever actually attempting to locate the MCU because it apparently never served the joint subpoena Plaintiffs had agreed to sign on to. It is clear that Tesla would prefer that the jury in this case not be able to see the complete data documenting the final seconds before this crash. The Court should not allow Tesla to defy Judge Torres' order and prevent Plaintiff's experts from reviewing this critical data.

Tesla's position becomes even more indefensible after the Court granted Tesla's motion to extend the pre trial motion deadline through September 30th. [DE 264, 267] Tesla noted in the meet and confer certification in its motion that "[w]hile Plaintiffs' counsel agrees to the deadlines outlined in this Motion, Plaintiffs do not agree the motion is 'unopposed.'" This is because we had asked Tesla to include the issue of the newly located

MCU in its motion and Telsa declined. It is Plaintiffs' position that not only should Plaintiffs' experts be allowed to supplement their opinions with the documents Tesla just produced related to the NHTSA investigation, they should also be allowed to supplement their opinions with the complete accident data contained on the newly located MCU. In good faith, Plaintiffs believe that the download and review of this data could take place within the same time frame as the relief requested by Tesla, thus enabling this case to move forward on the November trial docket as currently scheduled. Of course, given the importance of this newly discovered evidence and the need for all experts in the case to consider and incorporate the complete crash data into their opinions, should the Court believe it appropriate, Plaintiffs would obviously not be opposed to a short continuance of trial – a request that Plaintiffs recently made and were denied – which would seem to be an appropriate course of action given both the newly produced Tesla documents and the newly discovered crash data. Certainly, Courts have recognized that the discovery of new evidence constitutes "good cause" under rule 16(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 16(b)(4) to extend deadlines in a scheduling order. *See Allstate Ins. Co. v. Regions Bank*, CIV.A. 14-0067-WS-C, 2014 WL 4162264, at *3 (S.D. Ala. Aug. 19, 2014) ("It cannot reasonably be disputed that newly discovered evidence can supply the necessary good cause under Rule 16(b)(4) to enlarge an expired deadline.")

Accordingly, Plaintiff files this Motion to advise the Court of these critically important ongoing developments, and to request that the Court compel Tesla to cooperate in the joint efforts required to retrieve, download, and interpret this critical, foundational data which goes to the heart of a main disputed issue in this case.

## **PRAYER FOR RELIEF**

In accordance with the above, Plaintiffs request that the Court order that Tesla:

1) Provide an expedited response to this motion;

2) Provide the necessary authorization to allow the FHP to release the MCU to Tesla;

3)  Compel Tesla to download and produce *all* of the crash data to the Plaintiffs in usable format, as ordered by Magistrate Judge Torres on March 7, 2024;

4)  Produce the Augmented Video of the accident in the format available on Tesla's web site;

5)  Allow the Parties' experts' sufficient time to review the data and supplement their opinions as necessary, and allow for discovery of those supplemented opinions; and

6)  If the Court finds good cause to do so, briefly continue the trial date to allow sufficient time to complete the above.

**CERTIFICATE OF CONFERRING WITH COUNSEL PURSUANT TO RULE 7.1(a)(3)**

Pursuant to Local Rule 7.1 (a)(3), the undersigned counsel has conferred with counsel for Tesla, Inc., in a good faith effort to resolve the issues raised in this motion. Tesla opposes the relief requested herein.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of August, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
(305) 670-6669

By:   /s/ *Adam T. Boumel, Esq.*
Adam T. Boumel, Esq.
Florida Bar No.: 0110727
Direct email: adam@roussolawfirm.com
Service emails:
Pleadings@roussolawfirm.com
assistant@roussolawfirm.com