# EXHIBIT G

```
1                  UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
2                         MIAMI DIVISION
                     CASE NO. 21-21940 BLOOM
3


4   NEIMA BENAVIDES, et al,                Miami, Florida

5        Plaintiffs,                       May 23, 2024

6           vs.                            TRANSCRIPTION FROM
                                           RECORDING
7   TESLA, INC.,

8        Defendant.                        Pages 1 to

9   _____


10                  PLAINTIFF'S MOTION TO COMPEL
11            BEFORE THE HONORABLE EDWIN G. TORRES
                 UNITED STATES MAGISTRATE JUDGE
12
    APPEARANCES:
13
    FOR THE PLAINTIFF:        DOUGLAS EATON, ESQ.
14                            POSES LAW GROUP
                              169 East Flagler Street
15                            #1600
                              Miami, FL  33131
16

17                            TODD POSES, ESQ.
                              POSES LAW GROUP
18                            169 East Flagler Street
                              #1600
19                            Miami, FL  33131
                              Shelly@poseslawgroup.com
20

21  FOR THE DEFENDANT:        WHITLEY V. CRUZ, ESQ.
                              Bowman & Brooke
22                            Two Alhambra Plaza
                              Suite 800
23                            Coral Gables, FL 33134

24

25
```

1

2
                STENOGRAPHICALLY REPORTED BY:
3
                                SHARON VELAZCO, RPR, FPR
4                               Official Court Reporter
                                United States District Court
5                               400 North Miami Avenue
                                Miami, Florida 33128
6

7

8                           —       —       —

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following is a transcription from a recording.)

2          THE COURTROOM DEPUTY:  The United States District Court

3    for the Southern District of Florida is now in session.  The

4    Honorable Chief Magistrate Judge Edwin G. Torres presiding;

5    calling case of Neima Benavides versus Tesla, Incorporated,

6    Case Number 21-21940, civil, Judge Bloom.

7          Counsel, please state your appearances for the record,

8    starting with the plaintiff.

9          MR. EATON:  Good afternoon, your Honor.  Doug Eaton and

10   Todd Poses on behalf of the plaintiff -- plaintiffs.

11         MS. CRUZ:  Whitley Cruz on behalf of Tesla, Inc.

12         THE COURT:  Good afternoon, everybody.

13         This is a discovery hearing in connection with the case

14   -- that I believe was requested by the plaintiff, right?

15         MR. EATON:  Right.

16         THE COURT:  Let's see, our current fact cut-off is June

17   28th.  So, the light is at the end of the tunnel; motions due

18   July 31st, and trial November 4th.

19         Okay.  Mr. Eaton, what is it that you wish to present?

20         MR. EATON:  I think that -- I am not sure I understood

21   the procedural posture.  My understanding was there was an

22   objection to a deposition of a fact witness that we wish to

23   take that Tesla is lodging, and so we set it for hearing.  So,

24   I guess it is their objection to the deposition of Robert

25   Sumwalt, who is the former director of the NTSB.

1          I will let Ms. Cruz make her argument.

2          THE COURT:  Ms. Cruz, are you moving for protective

3   order, basically?

4          MS. CRUZ:  I guess you could say that.  There is no

5   notice.  So, they just told us that "We want to take this

6   person's deposition," and we said, "Well, that's not proper

7   under the federal rules."

8          And, they said, "Okay, we will notice it."

9          But, I am happy to argue first.

10         THE COURT:  Well, do you want to not argue it?  I --

11         MS. CRUZ:  No --

12         THE COURT:  I am perfectly fine, just -- if you want to

13   just --

14         MS. CRUZ:  You can just say no, they can't take the

15   depo, and we can go home.

16         THE COURT:  Well, why would I do that?

17         I have no argument.

18         MS. CRUZ:  So, plaintiffs are attempting to take the

19   deposition of a gentleman named Robert Sumwalt.

20         THE COURT:  How do you spell that?

21         MS. CRUZ:  S-U-M-W-A-L-T.

22         THE COURT:  Okay.

23         MS. CRUZ:  And, Mr. Sumwalt is the former chair of the

24   board of the National Transportation Safety Board, so, the

25   NTSB.

1        THE COURT:  Okay.

2        MS. CRUZ:  The NTSB is the federal agency that is

3   charged with investigation -- with investigating primarily

4   aviation accidents, but also investigates other types of

5   transportation accidents, including some motor vehicle crashes.

6        THE COURT:  Okay.

7        MS. CRUZ:  Just to give you a little bit of background

8   about someone who would be the chair of the board, there

9   were -- I believe they are appointed by the president, and then

10  voted in by Congress, I believe is the procedure.

11        NTSB's primary mission is twofold:  It is to determine

12  the probable cause of transportation accidents and incidents;

13  and, to formulate safety recommendations to improve

14  transportation safety.

15        That is from the NTSB's 2014 annual report to Congress.

16        And, the applicable black letter law here, which we

17  provided to the Court, and I have another copy, if your Honor

18  needs it, is 49 C.F.R. part 835, and that is entitled Testimony

19  of Board Employees.

20        And, this law defines the scope of testimony that is

21  permitted both in civil and criminal matters for board

22  employees.

23        So, C.F.R. part 835 -- again, it is called Testimony of

24  Board Employees -- and 835.1 prescribe the policies and

25  procedures regarding the testimony.

1        And, that's when the testimony arrives out of

2   accidents, and testimony is in official capacity, and it is

3   related to an accident investigation that the NTSB has

4   conducted.

5        49 C.F.R. Section 835.3 states the scope of permissible

6   testimony.  And, part D states that board employees may only

7   testify as to the factual information they obtain during the

8   course of an investigation, including factual evaluations

9   embodied in their factual accident reports.

10        So, the federal law imposes strict limitations on when

11   former and current board employees can testify in civil

12   matters.  And, it prevents them from testifying about anything

13   other than an investigation that they, themselves, did, that

14   investigator of the NTSB did.

15        The NTSB did not investigate this crash.  There was no

16   NTSB investigation of this crash.  That is undisputed.  And,

17   that is the key; with no investigation, there is no testimony

18   that Mr. Sumwalt could provide that are within the bounds of 49

19   C.F.R. part 835.

20        We met and conferred with plaintiff's counsel on this

21   issue a few weeks ago.  They told us that they wanted to talk

22   to Mr. Sumwalt, depose Mr. Sumwalt about safety recommendations

23   that the NTSB made to NTSA, and other manufacturers -- sorry,

24   to Tesla and other manufacturers, but obviously, with the focus

25   on Tesla.

1          And, if you look at 835.3C, it says, "Consistent with
2    the principles cited in Section 835.1 in this section, current
3    board employees are not authorized to testify regarding other
4    employees' reports, other types of board documents, including
5    but not limited to safety recommendations."
6          So, there is black letter law.
7          I am kind of like not sure -- we are here -- you know,
8    sometimes, usually when we are here, we are talking about
9    something relevant, is something -- you know, there is really
10   something for the Court to look at case law, interpret and
11   decide whose interpretation is correct.  This is black letter
12   law.  This is federal law that specifically defines the scope.
13   And, not only is there not even an investigation -- so, there
14   is nothing for Mr. Sumwalt to testify about.
15         They have told us what they want to talk to Mr. Sumwalt
16   about, and what they want to talk to him about, that testimony
17   would be specifically prohibited by the rules.
18         THE COURT:  But, what standing do you have to raise
19   this issue?
20         Do you represent Mr. Sumwalt?
21         MS. CRUZ:  No, we don't, but --
22         THE COURT:  Okay.  So, in other words, how do I
23   adjudicate this without Mr. Sumwalt's presence, or the
24   Department of Justice's presence?
25         MS. CRUZ:  Well, I don't think Mr. Sumwalt's presence

1    is necessary, because it is -- if you read on in the purpose of

2    the rules, it says that the purpose of the rules is not to --

3    835.3A, this is to -- the rules, Congress's strong desire to

4    keep the board free of entanglement of such suits, and serve to

5    ensure that the board does not exert an undue influence on

6    litigation.

7         THE COURT:  And does this apply to a former board

8    member?

9         MS. CRUZ:  Yes.  There is a section that is also in the

10   black letter law, it is 835.7, and it pertains to testimony of

11   former board employees.  It says it is not necessary to contact

12   the board if you want to depose a former employee.  However,

13   the scope of permissible testimony continues to be constrained

14   by all the limitations set forth in sections 835.3 and 835.4.

15        So, it is not up to Mr. Sumwalt whether he wants to

16   give the testimony or not.  In other words, he can't just do

17   whatever he wants.  He, they are going to --

18        THE COURT:  Well, that may be true, but you certainly

19   can't define it.  It is the Department of Transportation or the

20   Department of Justice, right, who would be able to stand up and

21   defend the C.F.R. to the extent they deemed it applicable.  Or,

22   or they didn't want to waive it.  They may want to waive it.

23        MS. CRUZ:  I guess I don't agree with that because the

24   National Transportation Board can't waive these rules.

25        THE COURT:  Who says?

```
 1            MS. CRUZ:  But these rules weren't written by the
 2   National Transportation Board.  So, how could they waive them?
 3            THE COURT:  I thought you said it was the C.F.R.  It is
 4   the Department of Transportation rule.
 5            MS. CRUZ:  But Congress --
 6            THE COURT:  But C.F.R. is a Department of
 7   Transportation administrative regulation, right?
 8            Isn't that what you are reading from?
 9            MS. CRUZ:  But, Congress talks about their purposes for
10   enforcing these rules.
11            THE COURT:  I understand that.  But, is that in the
12   statute, or is that in the rule?
13            I thought you said it was in the regulations.  I
14   thought that's what you quoted from.
15            MS. CRUZ:  This is from 835.3A.
16            THE COURT:  Okay.  So, that is the C.F.R.  So, it is a
17   DOT regulation.  Right?
18            MS. CRUZ:  Correct.
19            THE COURT:  Right.  In other words, you may be
20   absolutely right, that ultimately, the plaintiff can't do what
21   the plaintiff was trying to do.  But, the question I have is
22   well, how do I resolve that when I don't have either Department
23   of Transportation or Mr. Sumwalt participating?
24            In other words, you are raising a legal argument on
25   their behalf that you don't have any standing to raise it,
```

1    unless the statute gives you one.  But, I don't know of one.

2            So, isn't it premature for me to kind of rule on this?

3            Because what if they decide they don't want to enforce

4    it?

5            They are going to let Mr. Sumwalt talk about whatever,

6    number one, and, number two, we don't know what Mr. Sumwalt is

7    prepared to do anyway.  He may decline because he may look at

8    that and say, "I don't have to testify because I don't have any

9    knowledge that falls within the purview of the regulation."

10            MS. CRUZ:  Well, they say that they have talked to him,

11    and that he is willing to testify.

12            THE COURT:  Oh, okay.  Well, that's a different story.

13    In other words, his conclusion is that he is not precluded from

14    doing so.  Right?

15            MS. CRUZ:  Well, I don't know about that.  But --

16            THE COURT:  He is the one bound by it.  To the extent

17    that anybody is bound, he is bound.  Right?

18            And so, obviously, that is a matter for him and the

19    Department of Transportation, I would imagine.  But, I can't

20    resolve a dispute when I don't have the people with standing to

21    raise it.  Right?

22            Because clearly, Tesla doesn't have standing to enforce

23    that C.F.R.  It potentially is waivable.  It is a matter for

24    the Department of Transportation and the Attorney General; and,

25    it depends on what he is going to say.  Right?

1        So, I don't understand how -- what relief I can grant

2   you that you have standing to get, at this point, other than

3   requiring that, you know, a relevance of a potential provision

4   of law that Mr. Sumwalt or that the plaintiff informed the

5   Department of Transportation of the existence of the subpoena,

6   I guess I could do that.  Right?

7        But, what else can I do, at this point, is what I'm

8   asking.

9        MS. CRUZ:  Right.  So, just so I understand the Court's

10  -- and I haven't looked into the standing piece, so I really

11  can't respond to that.  I understand what the Court is saying.

12  So, I just want to make sure I have a better understanding of

13  what the Court is saying on where we go from here --

14       THE COURT:  Um-hmm.

15       MS. CRUZ:  -- if they issue the subpoena.

16       THE COURT:  Right, and nothing precludes you from

17  sending the subpoena to general counsel at the Department of

18  Transportation.  You are an interested citizen.

19       MS. CRUZ:  Right, right.

20       THE COURT:  So, number one, they should notice, because

21  he is a former -- if he is constrained by federal law in any

22  way, that they, they, the plaintiff and Mr. Sumwalt should

23  inform the Department of Transportation.

24       But, the Department of Transportation may be perfectly

25  fine with whatever he is prepared to testify to.  That is their

```
 1   prerogative.  And, if you want to inform the Department of

 2   Transportation, be my guest.

 3           MS. CRUZ:  Right.

 4           THE COURT:  You have every right to.

 5           MS. CRUZ:  Sure.

 6           THE COURT:  So, other than that, and requiring that

 7   there be some period of time between the subpoena and the

 8   deposition.

 9           MS. CRUZ:  Um-hmm.

10           THE COURT:  So, 14 days.  How about that?  So --

11           MS. CRUZ:  Well, I don't know if that is enough time to

12   get us -- I mean, it is enough time for us to send an email.

13           THE COURT:  Of course.

14           MS. CRUZ:  Which I assume the address is publicly

15   available.  But now, we are putting a time constraint that we

16   have no control over.  I mean, I ask for a little bit, at least

17   21 days for --

18           THE COURT:  For that?

19           I am coming on, on June 28th.  So, really, -- but don't

20   worry.  The government -- when the government wants to stop a

21   deposition, as I know firsthand, they will.  They will walk

22   straight up and file a motion.  And, assuming a motion is filed

23   by the government or Mr. Sumwalt, I will stay the deposition,

24   so, you don't have to worry about that.

25           MS. CRUZ:  Okay.
```

```
1          THE COURT:  So, as long as they have notice of it and

2   there is a 14-day time period, I have no problem with it

3   because they are the ones who have standing to raise the

4   argument.  And, if they raise an objection, obviously, I will

5   expedite a resolution of it.

6          MS. CRUZ:  Understood.

7          THE COURT:  And, we will resolve it.

8          But, at least that way, then I have some basis of --

9   some more factual basis that Mr. Sumwalt believes he can

10  testify to.

11         MS. CRUZ:  Okay.

12         THE COURT:  Rather than our -- your and my speculation.

13         MS. CRUZ:  Yes.

14         THE COURT:  Because I think you are in the same boat

15  I'm in.  I have no idea.

16         MS. CRUZ:  Right.

17         THE COURT:  So, I think that's probably the appropriate

18  manner to deal with it.

19         MS. CRUZ:  Okay.

20         THE COURT:  And, if they want to take one of their ten

21  depositions on Mr. Sumwalt and he is prepared to testify and

22  that the Department is not going to preclude him, so be it.

23  Obviously, then, the question would be admissibility of that

24  testimony.

25         MS. CRUZ:  Of course.
```

1              THE COURT:  That is for another day.

2              MS. CRUZ:  Right.

3              THE COURT:  You are preserved on that issue.

4              MS. CRUZ:  Of course, of course.

5              THE COURT:  I think that is the best I can do for you.

6              MS. CRUZ:  Okay.

7              The second issue I want to raise, then, is moving to

8       what it is that they want to talk to Mr. Sumwalt about.

9              So, they want to talk to Mr. Sumwalt about an incident.

10      From what I understand, again, this is from what they have told

11      us.  Now, maybe there are additional things they want to talk

12      about, and perhaps we need to go back and meet and confer

13      about.  But, now, I am moving to what the subject of the

14      testimony would be and if it is relevant to this case.

15             So, from what I understand, they want to talk to

16      Mr. Sumwalt about a 2016 crash that involved a Tesla vehicle.

17      It was a different make -- sorry, it was the same, of course it

18      is the same make, but it was the same model, but a different

19      model year.  And, the autopilot technology was completely

20      different than what we have in the subject vehicle, which is

21      the 2021 vehicle.

22             And, that has kind of been the scope of the case.  That

23      was the scope in terms of documents that have been produced.

24      That is the scope in the protective order.  You may or may not

25      recall, we were here, I think it was the last hearing, we were

1   talking about the scope of the protective order, and the

2   plaintiffs wanted to broaden the scope of the protective order,

3   and the Court ruled that -- the Court denied that motion.  And,

4   so, that vehicle doesn't fit into the -- the Brown vehicle

5   doesn't fit into that scope.  Not only is the vehicle not

6   within that scope, but the accident facts were totally

7   different, in that case.  The driver was watching a

8   Harry Potter movie, had autopilot on, was watching a

9   Harry Potter movie, did not have his hands on the wheel, did

10  not have his foot on the accelerator, and was driving on a road

11  in which a tractor-trailer -- a tractor-trailer crossed his

12  path.  And, he ran into the tractor-trailer.

13       This case is -- these accident facts are completely

14  different.  In this case, the driver had their foot on the

15  accelerator pedal.  They were controlling the speed.  There is

16  EDR data that shows that.  That is not in dispute.  He was

17  controlling the speed.  He had his hands on the wheel.

18       So, this issue about did he get the warnings that say

19  put your hands on the wheel, you have had your hands on the

20  wheel, did this system strike him out?

21       In other words, after you get a certain number of

22  warnings, the system disables because you don't have your hands

23  on the wheel.  That is not relevant in this case because the

24  driver had his hands on the wheel.  He happened to be looking

25  away, but he had his foot on the accelerator, had his hands on

1    the wheel, and there was no crossing traffic of any kind.

2         He went through a stop sign, a flashing red light, and

3    he hit a parked car across the street, broadside.

4         So, the facts are totally different, too.

5         So, the substance, at least as we understand it, of

6    what they want to talk to Mr. Sumwalt about, are completely

7    unrelated to this case.  The technology isn't the same, the car

8    isn't the same, and the accident facts aren't the same.  So, we

9    would ask that the deposition be prohibited on that basis.

10        THE COURT:  How can I do that though?

11        You are asking me for an advisory relevance ruling

12   without seeing what the deposition is.  How can I do that?

13        MS. CRUZ:  Well, this is.

14        THE COURT:  How do I do that in a normal case, let

15   alone this case?

16        MS. CRUZ:  Because you know what the facts are, and

17   there is no set of circumstances -- those facts of that

18   accident are not going to change, and they are not the same.

19   The technology is not the same.

20        So, there is nothing he could say about that accident

21   that could be relevant to this accident, if he is going to talk

22   about that accident, which is what they are saying.

23        THE COURT:  Again, have you had -- it is not whether

24   you are right, because you are very persuasive.  And, to my

25   trained ear, you may have a very good argument to make on a

```
 1   motion in limine.  But, for purposes of a protective order

 2   motion to deny deposition, how do I do that?

 3           Because if I did that all the time, I would be

 4   precluding depositions left and right.  I would -- I don't -- I

 5   don't do that in a normal course.  Right?

 6           So, why do I -- how can I do that here?  Assuming even

 7   he's prepared to testify --

 8           MS. CRUZ:  I mean, you can't.

 9           THE COURT:  Yeah.  On what basis, though?

10           I can't --

11           MS. CRUZ:  On the basis that it is completely

12   irrelevant to the facts.  I mean, we can't let all kinds of

13   discovery go on and let whatever depositions they want to take,

14   the next thing that is coming, I can already tell you, is let's

15   push back the deadline.

16           THE COURT:  Why would I do that?

17           In other words, why would we push back the deadline,

18   just because they want to take a deposition?

19           How many have they taken, by the way?

20           Well, that is -- have they already taken ten

21   depositions?

22           MS. CRUZ:  No. We have taken most of the depositions.

23           THE COURT:  Okay.  How many did the plaintiff take?

24           MS. CRUZ:  Like, the depositions you think they would

25   be taking, they haven't.  You know, we took the driver, we
```

1    took -- I mean, we have been noticing the depositions.

2            THE COURT:  It is their call for who they want to take,

3    right?

4            So, assuming you have ten -- you still have within your

5    ten?

6            MR. EATON:  Yes.

7            THE COURT:  Well, then, if they want to waste one on

8    inadmissible testimony, how am I going to stop them in advance?

9            Because what if -- I don't know, we are speculating as

10   to what he is going to say, he may not say anything at all.  He

11   may say nothing of relevance.  You won't even have to file a

12   motion for in limine.  So, I can't do that in the abstract.

13           Now, it is different from the protective order motion,

14   which I think is what the genesis of this.  That has to do with

15   your discovery.  The burden is on you to produce things.

16           And, I sustained the objection, in part, based upon the

17   scope of the case.  That is different because that -- that, you

18   have immediate standing to object, and it goes to the breadth

19   of work that you have to do -- you, being the defendant.

20           MS. CRUZ:  Understood.

21           THE COURT:  So, that is a little different.

22           Here, as to what a third party may say that has some

23   relevance or not, it is completely, you know, abstract, at this

24   point.

25           So, we may not even get there because the DOT may

1    prevent him from testifying, anyway.

2          So let's just take it a step at a time.  All your

3    arguments are preserved, of course, and you can make that

4    preservation argument at the beginning of the deposition or at

5    the end of the deposition and you don't have to repeat

6    yourself.

7          MS. CRUZ:  Understood.

8          THE COURT:  So, at least, at this point, I don't have

9    any basis to grant you any relief either on the first ground,

10   which is the C.F.R., or the second ground, which is a general

11   26 irrelevant premise.

12         MS. CRUZ:  Understood.

13         THE COURT:  Without prejudice to considering at a later

14   date -- is it Judge Bloom?

15         MS. CRUZ:  Yes.

16         MR. EATON:  Yes.

17         THE COURT:  So, she will handle her own motions in

18   limine.  So, it is without prejudice as to that issue.  So, I

19   can't -- we will just have to take it a step at a time.

20         MS. CRUZ:  Understood.

21         THE COURT:  Anything else?

22         MS. CRUZ:  We just have one other minor, unrelated

23   issue, that will take two minutes.

24         MR. EATON:  But -- sorry.

25         MS. CRUZ:  Sorry.  Go ahead.

1        MR. EATON:  I am a lawyer, and I do like to hear myself

2    talk sometimes.

3        MS. CRUZ:  No, go ahead.

4        THE COURT:  You have already won.  You don't have to

5    worry about it.

6        MR. EATON:  I understand that, and I have been told to

7    shut up --

8        THE COURT:  Remember -- what is the expression?

9        MR. EATON:  Shut up while you are winning?

10       THE COURT:  No that -- no, there is a better one.

11   Something about Don't pull defeat from the jaws of Victory.

12       MR. EATON:  Yes.  I do want to address the Court's

13   ruling about putting them on notice, because that is not

14   required by the statute.  And, let me, this is contemplated in

15   the regulation, 835.7 specifically is not necessary to request

16   board approval for testimony of a former board employee, nor is

17   testimony related to depositions.  So, and conceivably, you

18   know, it is the same -- you can talk -- this is a private

19   citizen, at this point.

20       THE COURT:  Um-hmm.

21       MR. EATON:  These restrictions apply to current board

22   employees, and it is set forth right in the initial statement

23   of why they have this, is to ensure that the time of board

24   employees is used only for official purposes, to avoid

25   embroiling the board in controversial issues that are not

1  related to its duties, to avoid spending public funds for

2  nonboard purposes.

3          So, that is the purpose behind it.

4          And, if you look at --

5          THE COURT:  So, is there any restriction on a former --

6  which I thought she read to me something that said a former

7  employee or a former board member is bound.

8          MR. EATON:  So, what it says is, what it says is that,

9  it says the sole permissible testimony continues to be

10  constrained by all eliminations set forth in these sections.

11          Now, that is, you know -- again, presumably, somebody

12  has the right to raise that.  Your point is substantively, it

13  is not testimony.

14          Maybe the Court, later on.

15          But what is important is the limitation that she is

16  seeking to invoke here doesn't apply to former employees.

17  835.5 says that -- sorry, 835.3C, which she was invoking says

18  current board employees are not authorized to testify regarding

19  other employees' reports or other type of board documents,

20  current.

21          And, the statutory interpretation, when you include a

22  word in there, you can't write it out of existence because the

23  subsequent one says later, at the D, "may apply," which you are

24  interpreting that term, meaningless.

25          So, that limitation only applies to current board

1    employees.

2            I have a case that I had printed out that Mr. Poses was

3    going to bring, called Murphy versus Colorado Aviation, Inc.

4            I can get a cite to it.  But, basically, that was a

5    former NCSB employee who testified about all kinds of things in

6    an accident.

7            So, all in all, basically what I am asking, your Honor,

8    is that --

9            THE COURT:  Does that have anything to do with notice

10   to the NTSB or the Department of Transportation?

11           MR. EATON:  No.  That is -- that is just -- that would

12   be within -- in the substantive admissibility of the issues.

13   That is not even what we are talking about here today.

14           THE COURT:  Right.

15           MR. EATON:  But, the section requires notice to them.

16   If you want to -- if you want to depose a board employee,

17   requesting testimony to the litigation, a written request to

18   deposition by deposition or interrogatories of a board employee

19   relating to the accident shall be addressed to the general

20   counsel.

21           Only applies to current employees, there is nothing

22   like that.

23           MS. CRUZ:  Is it --

24           MR. EATON:  For former employees.  So -- to say that

25   you know -- and we don't even need a subpoena.  If we could

1    just notice him for deposition, because --

2         THE COURT:  Because he is prepared to appear?

3         MR. EATON:  Correct.  So, to say there is some idea

4    where they have to receive notice and the right --

5         THE COURT:  Well, since it is --

6         MR. EATON:  It is not even in the statute.  The statute

7    only has notice requirements for current employees.

8         THE COURT:  But, if you are correct, and it sounds like

9    you are, right, taking it at face value, then what difference

10   does D make?

11        If the general counsel with the Department of

12   Transportation gets notice of it, he didn't just chuck it,

13   right?

14        If -- if his interpretation of the regulation is

15   different than Mr. Sumwalt or your interpretation, then, okay,

16   you see what I'm saying?

17        MR. EATON:  I do.

18        THE COURT:  So, notice, in that situation, is hardly

19   ever prejudicial because if you are right, you are right.  And,

20   if, so, they are going to send it to the general counsel as

21   soon as you issue the notice.

22        So, my suggestion is you just do the same, with a cover

23   letter that explains to him that there is nothing wrong with

24   what you are doing.  Do you see what I'm saying?

25        MR. EATON:  I do.

1          THE COURT:  Rather than responding to what Tesla may

2     send, you might as well be proactive, number one, and, number

3     two, for purposes of the Court's -- again, I am getting this

4     very surface level, right?

5          So, I am told that there is a representation that

6     C.F.R. may limit his testimony.

7          Your response is no, actually, he is not limited in any

8     way here.  Okay?

9          Notice to the appropriate official at an agency that

10    would be relevant to this discussion is never a bad thing.

11         MR. EATON:  I understand.

12         THE COURT:  Chances are they are going to chuck it and

13    you are going to forward me to a deposition.  But, I don't have

14    a problem with saying that the Department should be given

15    notice because they are going to give notice anyway.  So, this

16    way, you do it with your own cover letter.  Okay?

17         MR. EATON:  Understood.

18         THE COURT:  So, I am not going to change that part of

19    it, but I -- I think in the interest of -- in the interest of

20    transparency, I have no problem with that.

21         MR. EATON:  So, to be clear then, you said a timeline

22    between the day of notice and the date that deposition be

23    taken?

24         THE COURT:  Right.  Exactly.

25         MR. EATON:  14 days.

```
 1              THE COURT:  14 days, right.

 2              MR. EATON:  Got you.

 3              THE COURT:  And, you send your cover letter to general

 4    counsel and say I directed you to do this, because I don't want

 5    to -- I want to make sure that to the extent there was anything

 6    that they -- required their intervention, they had notice of,

 7    simple as that.  And, you can say in there, but none -- "Your

 8    intervention is not required for these reasons:"  Put it in

 9    there.

10              MR. EATON:  Understood.

11              THE COURT:  Okay?  Okay.

12              There was a final thing you said, Ms. Cruz.

13              MS. CRUZ:  One final thing.  On May 31st, plaintiffs

14    will be taking the deposition of Tesla's corporate

15    representative.  Tesla has designated a corporate

16    representative.  We were here talking about him previously.  He

17    lives and works in Spain.  He has been living there for, I

18    don't know, about a year now.

19              Tesla has employees -- it is an international company.

20    We have employees all over the country -- I mean, all over the

21    world and we produce corporate reps and other employees for --

22    produce their -- for depositions, that live in various parts of

23    the world.

24              This witness happens to live, again, in Spain.  So, we

25    were having a debate about what the appropriate deposition time
```

 1   would be.

 2              THE COURT:  Okay.

 3              MS. CRUZ:  We ask that the deposition not go later than

 4   10:00 P.M., local time.  It is local time for the witness.  I

 5   mean, it is our --

 6              THE COURT:  Oh, no, for the witness, that is their

 7   dinner time.

 8              MS. CRUZ:  Exactly.  That is what I told them.

 9              THE COURT:  In Spain, 10:00 o'clock is.

10              MS. CRUZ:  Right, and then he can go to tapas.

11              THE COURT:  Right, that's a little different.

12              MS. CRUZ:  So, you know --

13              THE COURT:  So eight or nine local time is what you are

14   saying?

15              MS. CRUZ:  No, 10:00 P.M. local time, which would be

16   4:00 P.M. Eastern.  They are six hours ahead.  UTC is six hours

17   the other way.

18              THE COURT:  So, we are talking about nine to four?

19              MR. EATON:  No.  It would be fine if the lawyer taking

20   the deposition was in the Eastern time zone.  But, he is in the

21   Pacific.  So there is three hours on that.  So, really, we are

22   in dispute over an hour.  We would like to end at five, which

23   allows our counsel to leave at 7:00 A.M. in California, to do

24   the deposition, as opposed to 6:00 A.M., which is when we have

25   to start, it going to end at 4:00 P.M. Eastern time.

 1          THE COURT:  You are going too fast with your numbers.

 2   So, 7:00 A.M. Pacific is what time in Madrid?

 3          Is he in Madrid?

 4          MS. CRUZ:  1:00 P.M.  It is six hours.

 5          THE COURT:  I thought it was six hours from here.

 6          MS. CRUZ:  I am sorry, six hours from here, so, nine

 7   hours.

 8          THE COURT:  Nine hours.  So, seven plus nine would be

 9   16.  So, that would be 4:00 o'clock his time, right?

10          MR. EATON:  Right.

11          THE COURT:  So, why can't your guy get up at six?

12          MR. EATON:  Well, he is going to get up at six because

13   the deposition would start at seven.  So, we are trying to, you

14   know, create -- make a compromise here where he starts at seven

15   and their witness ends at 11.  They are both inconvenient

16   times.  But, I think 6:00 A.M. is far more convenient than a

17   10:00 P.M. finish for him.

18          So, you know, we are just asking for a 7:00 A.M. start

19   and 11:00 P.M. finish.

20          THE COURT:  But, the difference is, your guy is not the

21   guy under oath.  Your lawyer is not under oath.  I have to

22   protect the quality of the testimony of a witness.  So, the

23   witness' competence is more important, in the Court's mind.

24          So, if it is 6:00 A.M. Pacific -- because obviously,

25   the plaintiff has control over who the attorney is going to be.

 1    That is entirely within your control.  You would take probably

 2    a better deposition than whoever it is you are talking about,

 3    frankly, right, or, he is welcome to come to Miami for a

 4    weekend.  You know what I mean?

 5              There are things you have control over.

 6              There are things -- the Court has to be more concerned

 7    as to the competency of a witness.

 8              So, in this case, if I were to grant your request, that

 9    would be -- that would mean the deposition would start at

10    4:00 P.M. local for the witness, I assume you want to go seven

11    hours.  I think if you want to go, can you go a little less

12    than that?

13              MR. EATON:  I can't tell you.  I was planning out for

14    the maximum.

15              THE COURT:  You want to preserve the seven hours?

16              MR. EATON:  Yes.

17              THE COURT:  Okay.  So, assuming you want to go to seven

18    hours, that would get -- that would take you to 11:00 P.M.,

19    local, for the witness.  Right?

20              MR. EATON:  Correct.

21              THE COURT:  Okay.  So, I have no problem cutting --

22    giving a little slack.  But -- splitting the baby.  So, 6:30

23    time means that the witness now is at 10:30.  That is perfectly

24    reasonable.  Plus, tell your lawyer to go to bed early.

25              So, 6:30 A.M., Pacific time will be the deposition

 1    start time.  Hopefully, the deposition won't take seven hours,

 2    in which case everybody can have dinner and lunch, okay?

 3            MR. EATON:  Appreciate it.

 4            MS. CRUZ:  I understood you, your Honor.

 5            MR. EATON:  There is one other matter.

 6            You have not seen the order from our last time that I

 7    was here, which is back on March 7th, because it took us a

 8    while to get the hearing transcript.  And, I wanted to make

 9    sure that -- to track that precisely.  As part of that, Tesla

10    said they were going to put in objections to the list of codes

11    that we were asking for, if you will recall.

12            THE COURT:  I don't remember.

13            MR. EATON:  No problem.  So, you compelled them to

14    produce -- we have a narrow list of codes that the car

15    produced, that the computer produced in the hour before the

16    accident.  We said, "These are the topics we want."

17            We did get a lot of codes that we felt were irrelevant.

18    We felt like we needed -- ten percent of what we received was

19    relevant, and 90 percent was irrelevant.  We did a list in the

20    order of things that we wanted, and they reserved the right to

21    object to some of the things that we asked for, which they

22    provided us with their objections this morning.

23            THE COURT:  Okay.

24            MR. EATON:  So, rather than come back here, you know,

25    rather than have -- it has been two months, I like to address

1  the objections here, at this point, because there are only

2  three or four of them.

3         THE COURT:  Okay.

4         MR. EATON:  Okay.

5         MS. CRUZ:  I think -- just so it is clear, I didn't

6  know we were going to talk about this today.  So, I wish I had

7  had a little bit of notice, because there were a lot of

8  different issues with the order.

9         But the Court's order wasn't "Come back and I will talk

10  about the objections."

11         What the Court said was you do the -- "Plaintiffs, you

12  do the order."

13         And I said, "But we have objections."

14         And you said, "Well, it is fine for you to footnote the

15  objections in the order."

16         So, the way that the Court was going to sign the order

17  was, these are the codes and these are the objections.

18         They are not codes.  They are categories.  I mean, I

19  have a lot of things to say about what Mr. Eaton just said, but

20  I think it was my understanding of -- the Court's intention was

21  you were going to sign it like that, and it was, as your Honor

22  so often does, "You can make your objections, put them down and

23  you guys produce it, and if you don't work it out in the end,

24  when all is said and done, come back to me."

25         But, that was my understanding of the order, not now

1   the objections are there, and we will come back, and --

2        THE COURT:  Excuse me.

3        Do you not want to argue your objections?

4        MS. CRUZ:  Well, here, let me go -- so that was the

5   first piece.

6        The second piece is I guess I have to address the

7   statements that were made.  They are not narrow categories.

8   They say things like steering, brakes, speed -- these are not

9   narrow categories.

10       And, we didn't, we didn't -- they never asked for sport

11  -- for specific signals.  What we have given them, which is

12  what the Court ordered, which is what we have already given

13  them -- all the data for -- that we had for the hour after the

14  crash.  Sorry, the hour before the crash.

15       THE COURT:  Okay.

16       MS. CRUZ:  I am sorry.  I don't have the order in front

17  of me.  There were various things in the order.  So, I am

18  trying to get this all back in my head.

19       The Court's order was, "Produce these signals.

20  Footnote your objections, if you have objections, for the

21  signals that fit within that category for the drive cycle

22  before the crash."

23       Okay?

24       THE COURT:  The one hour before, is that what you --

25       MS. CRUZ:  Well, it was more than one hour.  I think

1   you said the drive cycle before the crash.  So, it was more

2   than one hour.

3            THE COURT:  Okay.

4            MS. CRUZ:  Because he had been driving for like an hour

5   and 45 minutes or something.

6            THE COURT:  I see, okay.

7            MS. CRUZ:  The bottom line is, Tesla has already done

8   that, not within the past two weeks or not since we sent them

9   the order.  That has already been done.

10           THE COURT:  Okay.

11           MS. CRUZ:  We already gave them the data that we have.

12           THE COURT:  Right.  And this was an issue before, at

13   the last hearing, was that there so much data.

14           MS. CRUZ:  Right.  Well, because it is the data for all

15   the drive cycle, they are saying, well, a lot of it is not

16   relevant, right, then I can go back to all the conversation

17   that we had telling them that "You don't need all this stuff,"

18   but they said, "We want all the data."

19           This tracks thousands of different signals.

20           So, when we give you -- we gave them the engineering

21   set, the customer-facing set, but we have given them all the

22   data.  We have given them even more than this because we went

23   back and forth about different time frames over the past year

24   or so.

25           But, what I can tell you is that we have given them all

 1    the data that we have currently for the last drive cycle.

 2    There isn't anything that we are holding back.

 3            So, we made the objections --

 4            THE COURT:  So what are you objecting to then?

 5            MS. CRUZ:  They listed categories that aren't relevant.

 6    But, let me --

 7            THE COURT:  But I thought you said you gave them

 8    everything anyway.

 9            MS. CRUZ:  We did.  That's what I am telling you, and I

10    told them in the email, when I sent the email to them a few

11    hours ago saying, "These are our changes," I said, "We have to

12    object" because it is just like --

13            THE COURT:  Object to what?

14            What are you objecting to, is what I am asking.

15            MS. CRUZ:  But, it is -- well, I don't know what to

16    say.  We put objections.  It is like sometimes you can respond

17    and say "none."

18            Sometimes, you can put objections and say -- but "still

19    none."

20            So, I am telling you the answer is none.  We don't have

21    anything else to give them.

22            I do want to say -- and I said in the email to them --

23            THE COURT:  But, that is not an objection.  That is

24    just saying there is nothing else to produce.

25            MS. CRUZ:  Then that is what I am saying.

1          The other piece that I wanted to get out, which is also

2     in the email to them, but I just want to be upfront, because we

3     are Court-ordered -- so, I want the Court to know, excuse me,

4     exactly what the lay of the land is -- there is an SD card -- I

5     don't know if the Court is familiar with what is an SD card.

6     There is an SD card inside -- it is called the NCU, but it is

7     basically the screen inside the Tesla.

8          We are currently storing the vehicle.  However, long

9     ago, I don't know when, shortly after the crash, as part of

10    their investigation, law enforcement removed the NCU that had

11    the SD card in it.  To our knowledge, we have not checked with

12    them, I don't know, plaintiff said they were going to check

13    with them, but we have not checked with them.

14         We did call them yesterday, but we haven't heard back

15    yet.  I don't know whether they are still storing the NCU and

16    whether they still have the SD card that was in the NCU, if we

17    can extract data from the SD card.  It may be that there is

18    more data for the last drive cycle on the SD card.

19         So, we don't have anything else.  But we just want to

20    be upfront that that's there.

21         We told plaintiffs, we called the police to find out if

22    it is there, but of course, they can do this, too.

23         There is nothing stopping them from going and

24    extracting the data.  And, we are happy to interpret them.  You

25    have to give the data to Tesla to interpret, but anyone can

1  extract the data from the SD card.

2       So, because this issue got brought up again, I have

3  already told plaintiffs this in an email, but I just want to be

4  upfront with the Court about what the data is because there was

5  a court order.

6       THE COURT:  So, the data disk, so I understand, the

7  data that you produced before, right, prior to the last

8  hearing, that, obviously, did not come from the SD card, that

9  came from another source from within the car?

10      MS. CRUZ:  It comes from -- there is data sent from the

11 car to Tesla.

12      THE COURT:  Oh, like wifi transmitted?

13      MS. CRUZ:  Yes.  So like there is something called an

14 urgent upload.  So, when there is a crash --

15      THE COURT:  I see.

16      MS. CRUZ:  -- for example, it sends --

17      THE COURT:  It uploads?

18      MS. CRUZ:  It sends data, sometimes, depending on the

19 crash.

20      THE COURT:  So, like Tesla, Tesla received that data?

21      MS. CRUZ:  Tesla receives that data over the air.

22      THE COURT:  Okay.

23      MS. CRUZ:  Like you said, and then we preserve that

24 data.  There is a certain, like -- like most other

25 manufacturers, there are certain things that we preserve.  We

1   preserve what we call the engineering set, which is usually,

2   which can be used in-house to investigate crashes.

3            THE COURT:  Right.

4            MS. CRUZ:  We preserve the customer-facing data, which

5   is if a customer comes to us and says, "I want the data for all

6   the signals in my car," this is the set that we give the

7   customer.

8            So there is different, you know, sets, and we preserved

9   that for this case

10           THE COURT:  Okay.

11           MS. CRUZ:  And, we have already given them the data

12  that we have for the drive cycle.

13           THE COURT:  So, now that I understand that, again, I

14  guess, what is the dispute that you e-mailed him today?

15           MS. CRUZ:  There is no dispute.  I said, "These are our

16  revisions to the proposed order that you sent us."

17           We sent our revisions in redline.  We noted our

18  objections, where they were, because we still have to preserve

19  our objections.  But, some of the things that they are asking

20  for, they are asking for GPS data, for example, that's what,

21  again, I don't have any of this in front of me, but that is one

22  I remember off the top of my head.  That is irrelevant.

23           We also don't have it, but it is irrelevant.  So --

24           THE COURT:  But I thought, I guess what I am not

25  understanding is if you say you produced all the data for the

1    drive cycle, they have it?

2              MS. CRUZ:  Yes.

3              THE COURT:  Including the GPS?

4              MS. CRUZ:  There is no data -- I don't believe that

5    there is GPS data.

6              THE COURT:  Oh, okay.

7              MS. CRUZ:  I didn't memorize, we also went through

8    their categories, and there is newer signals --

9              THE COURT:  So, you are just, are you just objecting

10   for the legal abstract reason?

11             MS. CRUZ:  Exactly.  Because it is an order.  So we

12   can't just have an order saying, yeah, because then down the

13   road, someone says, "Oh, you said this was relevant in this

14   case.  Here is a court order, another judge found GPS data was

15   relevant in a case like this," when it is not.

16             So, we have to preserve our objections, just because it

17   is going into an order.

18             THE COURT:  Okay.

19             MS. CRUZ:  But, we told them, and I am telling you, we

20   do not have any data for the drive cycle, it is my

21   understanding, that we have not already given them.

22             THE COURT:  Okay.

23             MS. CRUZ:  Even prior to the Court's order.

24             THE COURT:  So, what do you want me to do?

25             MR. EATON:  Well, we will go back to where we were two

1  months ago.  There are -- we brought in here last time, there

2  were over 2,000 signals of data that they collect in these

3  cars.  We got a list, right, and we wanted things, we asked

4  them, here is a glossary that defines all that, and that is not

5  something we received yet, today, either.  They gave us 90.

6      THE COURT:  90 what?

7      MR. EATON:  90 signals.  And, I don't recall there

8  being a statement saying, "This is all there is."

9      That is what they gave us, and 80 of them were

10  irrelevant, ten were relevant.

11      And, there are all kinds of other signals that our

12  experts tell us are out there that were not provided to us.

13  So, we said, "We want all the signals beyond the 90 that you

14  provided to us that relate to these topics."

15      And they say, "We don't have GPS data."

16      That's -- I mean, that's nonsense.  They know exactly

17  where their cars are at all times.  I can't even conceive of

18  how that is possible.

19      There is a map in the car that shows you where your car

20  is, and Tesla has it.  That is how the newer cars are.  They

21  have GPS data.  So, I mean, these are -- you know, unless there

22  is some kind of sworn affidavit out there saying that we --

23  there were only 90 codes for this car, for this accident and

24  these other 2110, or, 1910 don't exist for this car, then we

25  are missing stuff.  And so, that's why we came here, to ask you

1   to compel, was all of the other codes, not just the 90 that

2   they produced to us and said that's all there is.

3          You know, our expert says there is more.

4          And, we have seen a list of other codes that were not

5   supplied in there.  So, we can't make a determination as to

6   whether what they are telling us was -- what Ms. Cruz is

7   telling us.

8          I am not suggesting that she is, you know, is

9   misrepresenting things to you, at this point, but, what I am

10  telling you is what we know, and what we have been provided

11  with, and they don't line up.  And so, your court order was

12  "Produce this stuff."

13         And, they can lodge their objections to it.  But, the

14  objections that they are lodging, what I didn't understand is

15  are they objecting to -- are they just preserving objections,

16  or are they actually not willing to produce the categories for

17  this?

18         For example, they are saying, "We object to GPS."

19         Does that mean that they are not going to produce GPS

20  data that they have?

21         I haven't seen any, and we don't have that.  And, I

22  would be surprised if that is the case.  It makes zero sense.

23         The other -- other issue that they raised was the

24  position of the driver in the driver's seat.  They said that it

25  is irrelevant because there is no defect allegations to the

1    driver's seat.

2          It doesn't matter whether there is defect allegations.

3    The facts of this case is that the driver is -- that he is

4    leaning over, he reached down for his phone at the time of the

5    accident.  And, the car, the seats actually, like, collect data

6    on the position of the driver.

7          So, it is clearly relevant.  We want to be able to

8    reconstruct what happened in the car prior to the accident.

9    So, all the data, what is going on in there is relevant to us,

10   that includes people's headlights, when they are on, are their

11   brights on or not, because again, we are dealing with a -- with

12   a car camera can see the oncoming cars and the reflectors that

13   he is driving up on.  If the brights aren't on, you can see

14   that.  So, that is imminently relevant to the issue in this

15   case.

16         And, the motor speed and torque -- again, these are

17   basic things that they are objecting to that I just, what I am

18   trying to understand is, are they withholding these baseless

19   objections until I come to you and ask you to tell them to give

20   them to me, or are they preserving this for that and they are

21   going to give them to me?

22         And, you know, we need to sort out, one way or another,

23   whether we have been provided everything that we have asked

24   for.  We presented you with evidence that suggests we have not.

25   You said give them the rest, and we have not gotten anything

1    else.

2              THE COURT:  Are you withholding any data?

3              MS. CRUZ:  I said it in the email.  I said it today in

4    court.  I don't know how else to say this to make -- to make it

5    more clear.  We do not have any data for the drive cycle that

6    has not already been produced.  I don't know how else to say

7    that.  I don't know.

8              And, this thing about all this other stuff exists --

9    they just think that something should exist, and therefore, it

10   creates it into existence.  It doesn't work like that.

11             But, the bottom line is you can't produce something

12   that you don't have, right?

13             You can't -- I can't give you a red folder right now if

14   you order me to give you a red folder, because I don't have a

15   red folder, I have a green folder.  I don't have a red folder

16   to give you.

17             The corporate rep deposition is next week.  If they

18   want to talk to Mr. Rubio about what signals -- which they are

19   going to, that is in their notice, and we have not objected to

20   that.  We told them, you know, "Have at it.  Talk to him about

21   whether this glossary of signals exists," which it still does

22   not, it doesn't.  They went back.  They can talk to him.  He is

23   the one that made the affidavit before.  He can explain.  They

24   can talk to him about it.

25             If they want something -- they say they want something

 1    in writing, a declaration or something.  They are going to have

 2    his sworn testimony, so they can ask him.

 3         But, I don't know what else to say other than what I

 4    have already said.  We don't have anything else for this drive

 5    cycle.  There might be something else on the SD card.  What is

 6    interesting is that they could have gone at any time and get

 7    the SD card.  They never did that.  So, they want, if they

 8    think there is more data, why not go and interrogate the SD

 9    card?

10         They have not done that.  Have at it.  We told them

11    that a year ago.  We told them that a month ago.  And, I am

12    saying, I said it in an email today, and I am saying it again

13    now.  But, they have not done that.  So, I am not sure why they

14    are coming in and complaining that other things exist.  They

15    know -- they know so much.  They know there could be other data

16    on the SD card.  Maybe there is.  We don't know it.  Just

17    because a signal exists in the world, it doesn't mean that it

18    was recorded in this instance.

19         Do you know what I mean?

20         Just because your car has GPS, it doesn't mean that the

21    manufacturer is recording where you are every second and

22    storing that data.

23         It doesn't mean that that is being uploaded to the

24    manufacturer and they are recording it.

25         And, they have -- all these representations about these

1    things that exist, they are based on nothing other than

2    plaintiff's wanting to exist.

3         I have never seen anything that supports anything that

4    he is saying about what exists.  So, just because there is a

5    screen, this is standard GPS just like everyone else has.

6         So, I mean, we can sit here, I just don't know if it is

7    worth the Court's time to go through and address everything

8    that Mr. Eaton has said.  What I can tell you about the

9    specific issue that he raised that wasn't noticed for today is

10   we don't have any other data for the drive cycle, and the SD

11   card might have other data.  They are welcome to go, and have

12   been welcome to go for the past two years, and get the SD card

13   from the police and extract the data, and they haven't done

14   that.

15        THE COURT:  So, it doesn't sound like there is

16   something for me to do, at this point, other than making clear

17   on the record and the order that -- are you submitting it now,

18   that you have the --

19        MR. EATON:  Yes.  I mean, changes to the order that

20   were appropriate --

21        THE COURT:  So, submit it to me, I will sign the order,

22   and if there is something that you learn in the deposition that

23   changes something, I will fix it.

24        MR. EATON:  That is what I was going to say.  Okay,

25   fine, we got this coming up.  We just don't want to be

1    penalized if we find out the fact that what we are saying is

2    true, and now we have to do a lot more, you know, as a result

3    and then we are up against these deadlines, and -- okay.  I

4    appreciate that, your Honor.

5              MS. CRUZ:  Thank you, your Honor.

6              THE COURT:  Thank you very much.

7              THE COURTROOM DEPUTY:  All rise.

8              (Transcription of recording was concluded).

9                             _    _    _

10

11                   C E R T I F I C A T E

12

13

14

15         I hereby certify that the foregoing is an

16    accurate transcription of the recording of the proceedings in

17    the above-entitled matter.

18

19

20
     _____        _____
21   May 30, 2024           /s/Sharon Velazco
     DATE                   SHARON VELAZCO, RPR, FPR
                            Official Court Reporter
22                          United States District Court
                            400 North Miami Avenue
23                          9th Floor
                            Miami, Florida 33128
24

25

**#**

**#1600** [2] - 1:15, 1:18

**/**

**/s/Sharon** [1] - 44:20

**1**

**1** [1] - 1:8
**10:00** [4] - 26:4, 26:9, 26:15, 27:17
**10:30** [1] - 28:23
**11** [1] - 27:15
**11:00** [2] - 27:19, 28:18
**14** [3] - 12:10, 24:25, 25:1
**14-day** [1] - 13:2
**16** [1] - 27:9
**169** [2] - 1:14, 1:18
**1910** [1] - 38:24
**1:00** [1] - 27:4

**2**

**2,000** [1] - 38:2
**2014** [1] - 5:15
**2016** [1] - 14:16
**2021** [1] - 14:21
**2024** [2] - 1:5, 44:20
**21** [1] - 12:17
**21-21940** [2] - 1:2, 3:6
**2110** [1] - 38:24
**23** [1] - 1:5
**26** [1] - 19:11
**28th** [2] - 3:17, 12:19

**3**

**30** [1] - 44:20
**31st** [2] - 3:18, 25:13
**33128** [2] - 2:5, 44:23
**33131** [2] - 1:15, 1:19
**33134** [1] - 1:23

**4**

**400** [2] - 2:5, 44:22
**45** [1] - 32:5
**49** [3] - 5:18, 6:5, 6:18
**4:00** [4] - 26:16, 26:25, 27:9, 28:10
**4th** [1] - 3:18

**6**

**6:00** [3] - 26:24, 27:16, 27:24
**6:30** [2] - 28:22, 28:25

**7**

**7:00** [3] - 26:23, 27:2, 27:18
**7th** [1] - 29:7

**8**

**80** [1] - 38:9
**800** [1] - 1:22
**835** [3] - 5:18, 5:23, 6:19
**835.1** [2] - 5:24, 7:2
**835.3** [2] - 6:5, 8:14
**835.3A** [2] - 8:3, 9:15
**835.3C** [2] - 7:1, 21:17
**835.4** [1] - 8:14
**835.5** [1] - 21:17
**835.7** [2] - 8:10, 20:15

**9**

**90** [7] - 29:19, 38:5, 38:6, 38:7, 38:13, 38:23, 39:1
**9th** [1] - 44:23

**A**

**A.M** [7] - 26:23, 26:24, 27:2, 27:16, 27:18, 27:24, 28:25
**able** [2] - 8:20, 40:7
**above-entitled** [1] - 44:17
**absolutely** [1] - 9:20
**abstract** [3] - 18:12, 18:23, 37:10
**accelerator** [3] - 15:10, 15:15, 15:25
**accident** [15] - 6:3, 6:9, 15:6, 15:13, 16:8, 16:18, 16:20, 16:21, 16:22, 22:6, 22:19, 29:16, 38:23, 40:5, 40:8
**accidents** [4] - 5:4, 5:5, 5:12, 6:2
**accurate** [1] - 44:16
**additional** [1] - 14:11
**address** [5] - 12:14,

20:12, 29:25, 31:6, 43:7
**addressed** [1] - 22:19
**adjudicate** [1] - 7:23
**administrative** [1] - 9:7
**admissibility** [2] - 13:23, 22:12
**advance** [1] - 18:8
**advisory** [1] - 16:11
**affidavit** [2] - 38:22, 41:23
**afternoon** [2] - 3:9, 3:12
**agency** [2] - 5:2, 24:9
**ago** [6] - 6:21, 33:11, 34:9, 38:1, 42:11
**agree** [1] - 8:23
**ahead** [3] - 19:25, 20:3, 26:16
**air** [1] - 35:21
**al** [1] - 1:4
**Alhambra** [1] - 1:22
**allegations** [2] - 39:25, 40:2
**allows** [1] - 26:23
**alone** [1] - 16:15
**annual** [1] - 5:15
**answer** [1] - 33:20
**anyway** [4] - 10:7, 19:1, 24:15, 33:8
**appear** [1] - 23:2
**appearances** [1] - 3:7
**APPEARANCES** [1] - 1:12
**applicable** [2] - 5:16, 8:21
**applies** [2] - 21:25, 22:21
**apply** [4] - 8:7, 20:21, 21:16, 21:23
**appointed** [1] - 5:9
**appreciate** [2] - 29:3, 44:4
**appropriate** [4] - 13:17, 24:9, 25:25, 43:20
**approval** [1] - 20:16
**argue** [3] - 4:9, 4:10, 31:3
**argument** [6] - 4:1, 4:17, 9:24, 13:4, 16:25, 19:4
**arguments** [1] - 19:3
**arrives** [1] - 6:1
**assume** [2] - 12:14, 28:10

**assuming** [4] - 12:22, 17:6, 18:4, 28:17
**attempting** [1] - 4:18
**Attorney** [1] - 10:24
**attorney** [1] - 27:25
**authorized** [2] - 7:3, 21:18
**autopilot** [2] - 14:19, 15:8
**available** [1] - 12:15
**Avenue** [2] - 2:5, 44:22
**aviation** [1] - 5:4
**Aviation** [1] - 22:3
**avoid** [2] - 20:24, 21:1

**B**

**baby** [1] - 28:22
**background** [1] - 5:7
**bad** [1] - 24:10
**based** [2] - 18:16, 43:1
**baseless** [1] - 40:18
**basic** [1] - 40:17
**basis** [6] - 13:8, 13:9, 16:9, 17:9, 17:11, 19:9
**bed** [1] - 28:24
**BEFORE** [1] - 1:11
**beginning** [1] - 19:4
**behalf** [3] - 3:10, 3:11, 9:25
**behind** [1] - 21:3
**believes** [1] - 13:9
**BENAVIDES** [1] - 1:4
**Benavides** [1] - 3:5
**best** [1] - 14:5
**better** [3] - 11:12, 20:10, 28:2
**between** [2] - 12:7, 24:22
**beyond** [1] - 38:13
**bit** [3] - 5:7, 12:16, 30:7
**black** [4] - 5:16, 7:6, 7:11, 8:10
**Bloom** [2] - 3:6, 19:14
**BLOOM** [1] - 1:2
**board** [23] - 4:24, 5:8, 5:21, 6:6, 6:11, 7:3, 7:4, 8:4, 8:5, 8:7, 8:11, 8:12, 20:16, 20:21, 20:23, 20:25, 21:7, 21:18, 21:19, 21:25, 22:16, 22:18
**Board** [5] - 4:24,

5:19, 5:24, 8:24, 9:2
**boat** [1] - 13:14
**bottom** [2] - 32:7, 41:11
**bound** [4] - 10:16, 10:17, 21:7
**bounds** [1] - 6:18
**Bowman** [1] - 1:21
**brakes** [1] - 31:8
**breadth** [1] - 18:18
**brights** [2] - 40:11, 40:13
**bring** [1] - 22:3
**broaden** [1] - 15:2
**broadside** [1] - 16:3
**Brooke** [1] - 1:21
**brought** [2] - 35:2, 38:1
**Brown** [1] - 15:4
**burden** [1] - 18:15
**BY** [1] - 2:2

**C**

**C.F.R** [11] - 5:18, 5:23, 6:5, 6:19, 8:21, 9:3, 9:6, 9:16, 10:23, 19:10, 24:6
**California** [1] - 26:23
**camera** [1] - 40:12
**capacity** [1] - 6:2
**car** [14] - 16:3, 16:7, 29:14, 35:9, 35:11, 36:6, 38:19, 38:23, 38:24, 40:5, 40:8, 40:12, 42:20
**card** [15] - 34:4, 34:5, 34:6, 34:11, 34:16, 34:17, 34:18, 35:1, 35:8, 42:5, 42:7, 42:9, 42:16, 43:11, 43:12
**cars** [4] - 38:3, 38:17, 38:20, 40:12
**case** [22] - 3:5, 3:13, 7:10, 14:14, 14:22, 15:7, 15:13, 15:14, 15:23, 16:7, 16:14, 16:15, 18:17, 22:2, 28:8, 29:2, 36:9, 37:14, 37:15, 39:22, 40:3, 40:15
**CASE** [1] - 1:2
**Case** [1] - 3:6
**categories** [6] - 30:18, 31:7, 31:9, 33:5, 37:8, 39:16
**category** [1] - 31:21
**certain** [3] - 15:21, 35:24, 35:25
**certainly** [1] - 8:18

**certify** [1] - 44:15
**chair** [2] - 4:23, 5:8
**chances** [1] - 24:12
**change** [2] - 16:18, 24:18
**changes** [3] - 33:11, 43:19, 43:23
**charged** [1] - 5:3
**check** [1] - 34:12
**checked** [2] - 34:11, 34:13
**Chief** [1] - 3:4
**chuck** [2] - 23:12, 24:12
**circumstances** [1] - 16:17
**cite** [1] - 22:4
**cited** [1] - 7:2
**citizen** [2] - 11:18, 20:19
**civil** [3] - 3:6, 5:21, 6:11
**clear** [4] - 24:21, 30:5, 41:5, 43:16
**clearly** [2] - 10:22, 40:7
**codes** [8] - 29:10, 29:14, 29:17, 30:17, 30:18, 38:23, 39:1, 39:4
**collect** [2] - 38:2, 40:5
**Colorado** [1] - 22:3
**coming** [4] - 12:19, 17:14, 42:14, 43:25
**company** [1] - 25:19
**COMPEL** [1] - 1:10
**compel** [1] - 39:1
**compelled** [1] - 29:13
**competence** [1] - 27:23
**competency** [1] - 28:7
**complaining** [1] - 42:14
**completely** [5] - 14:19, 15:13, 16:6, 17:11, 18:23
**compromise** [1] - 27:14
**computer** [1] - 29:15
**conceivably** [1] - 20:17
**conceive** [1] - 38:17
**concerned** [1] - 28:6
**concluded)** [1] - 44:8
**conclusion** [1] - 10:13
**conducted** [1] - 6:4

**confer** [1] - 14:12
**conferred** [1] - 6:20
**Congress** [4] - 5:10, 5:15, 9:5, 9:9
**Congress's** [1] - 8:3
**connection** [1] - 3:13
**considering** [1] - 19:13
**Consistent** [1] - 7:1
**constrained** [3] - 8:13, 11:21, 21:10
**constraint** [1] - 12:15
**contact** [1] - 8:11
**contemplated** [1] - 20:14
**continues** [2] - 8:13, 21:9
**control** [4] - 12:16, 27:25, 28:1, 28:5
**controlling** [2] - 15:15, 15:17
**controversial** [1] - 20:25
**convenient** [1] - 27:16
**conversation** [1] - 32:16
**copy** [1] - 5:17
**Coral** [1] - 1:23
**corporate** [4] - 25:14, 25:15, 25:21, 41:17
**correct** [5] - 7:11, 9:18, 23:3, 23:8, 28:20
**counsel** [8] - 3:7, 6:20, 11:17, 22:20, 23:11, 23:20, 25:4, 26:23
**country** [1] - 25:20
**course** [9] - 6:8, 12:13, 13:25, 14:4, 14:17, 17:5, 19:3, 34:22
**court** [4] - 35:5, 37:14, 39:11, 41:4
**Court** [20] - 2:4, 2:4, 3:2, 5:17, 7:10, 11:11, 11:13, 15:3, 21:14, 28:6, 30:11, 30:16, 31:12, 34:3, 34:5, 35:4, 44:21, 44:22
**COURT** [120] - 1:1, 3:12, 3:16, 4:2, 4:10, 4:12, 4:16, 4:20, 4:22, 5:1, 5:6, 7:18, 7:22, 8:7, 8:18, 8:25, 9:3, 9:6, 9:11, 9:16, 9:19, 10:12, 10:16, 11:14,

11:16, 11:20, 12:4, 12:6, 12:10, 12:13, 12:18, 13:1, 13:7, 13:12, 13:14, 13:17, 13:20, 14:1, 14:3, 14:5, 16:10, 16:14, 16:23, 17:9, 17:16, 17:23, 18:2, 18:7, 18:21, 19:8, 19:13, 19:17, 19:21, 20:4, 20:8, 20:10, 20:20, 21:5, 22:9, 22:14, 23:2, 23:5, 23:8, 23:18, 24:1, 24:12, 24:18, 24:24, 25:1, 25:3, 25:11, 26:2, 26:6, 26:9, 26:11, 26:13, 26:18, 27:1, 27:5, 27:8, 27:11, 27:20, 28:15, 28:17, 28:21, 29:12, 29:23, 30:3, 31:2, 31:15, 31:24, 32:3, 32:6, 32:10, 32:12, 33:4, 33:7, 33:13, 33:23, 35:6, 35:12, 35:15, 35:17, 35:20, 35:22, 36:3, 36:10, 36:13, 36:24, 37:3, 37:6, 37:9, 37:18, 37:22, 37:24, 38:6, 41:2, 43:15, 43:21, 44:6
**Court's** [9] - 11:9, 20:12, 24:3, 27:23, 30:9, 30:20, 31:19, 37:23, 43:7
**Court-ordered** [1] - 34:3
**COURTROOM** [2] - 3:2, 44:7
**cover** [3] - 23:22, 24:16, 25:3
**crash** [10] - 6:15, 6:16, 14:16, 31:14, 31:22, 32:1, 34:9, 35:14, 35:19
**crashes** [2] - 5:5, 36:2
**create** [1] - 27:14
**creates** [1] - 41:10
**criminal** [1] - 5:21
**crossed** [1] - 15:11
**crossing** [1] - 16:1
**Cruz** [4] - 3:11, 4:1, 4:2, 25:12
**cruz** [1] - 39:6
**CRUZ** [92] - 1:21, 3:11, 4:4, 4:11, 4:14, 4:18, 4:21, 4:23, 5:2, 5:7, 7:21, 7:25, 8:9,

8:23, 9:1, 9:5, 9:9, 9:15, 9:18, 10:10, 10:15, 11:9, 11:15, 11:19, 12:3, 12:5, 12:9, 12:11, 12:14, 12:25, 13:6, 13:11, 13:13, 13:16, 13:19, 13:25, 14:2, 14:4, 14:6, 16:13, 16:16, 17:8, 17:11, 17:22, 17:24, 18:20, 19:7, 19:12, 19:15, 19:20, 19:22, 19:25, 20:3, 22:23, 25:13, 26:3, 26:8, 26:10, 26:12, 26:15, 27:4, 27:6, 29:4, 30:5, 31:4, 31:16, 31:25, 32:4, 32:7, 32:11, 32:14, 33:5, 33:9, 33:15, 33:25, 35:10, 35:13, 35:16, 35:18, 35:21, 35:23, 36:4, 36:11, 36:15, 37:2, 37:4, 37:7, 37:11, 37:19, 37:23, 41:3, 44:5
**current** [9] - 3:16, 6:11, 7:2, 20:21, 21:18, 21:20, 21:25, 22:21, 23:7
**customer** [4] - 32:21, 36:4, 36:5, 36:7
**customer-facing** [2] - 32:21, 36:4
**cut** [1] - 3:16
**cut-off** [1] - 3:16
**cutting** [1] - 28:21
**cycle** [11] - 31:21, 32:1, 32:15, 33:1, 34:18, 36:12, 37:1, 37:20, 41:5, 42:5, 43:10

## D

**data** [44] - 15:16, 31:13, 32:11, 32:13, 32:14, 32:18, 32:22, 33:1, 34:17, 34:18, 34:24, 34:25, 35:1, 35:4, 35:6, 35:7, 35:10, 35:18, 35:20, 35:21, 35:24, 36:4, 36:5, 36:11, 36:20, 36:25, 37:4, 37:5, 37:14, 37:20, 38:2, 38:15, 38:21, 39:20, 40:5, 40:9, 41:2, 41:5, 42:8, 42:15, 42:22, 43:10, 43:11, 43:13

**date** [2] - 19:14, 24:22
**DATE** [1] - 44:21
**days** [4] - 12:10, 12:17, 24:25, 25:1
**deadline** [2] - 17:15, 17:17
**deadlines** [1] - 44:3
**deal** [1] - 13:18
**dealing** [1] - 40:11
**debate** [1] - 25:25
**decide** [2] - 7:11, 10:3
**declaration** [1] - 42:1
**decline** [1] - 10:7
**deemed** [1] - 8:21
**defeat** [1] - 20:11
**defect** [2] - 39:25, 40:2
**defend** [1] - 8:21
**defendant** [2] - 1:8, 18:19
**DEFENDANT** [1] - 1:21
**define** [1] - 8:19
**defines** [3] - 5:20, 7:12, 38:4
**denied** [1] - 15:3
**deny** [1] - 17:2
**Department** [17] - 7:24, 8:19, 8:20, 9:4, 9:6, 9:22, 10:19, 10:24, 11:5, 11:17, 11:23, 11:24, 12:1, 13:22, 22:10, 23:11, 24:14
**depo** [1] - 4:15
**depose** [3] - 6:22, 8:12, 22:16
**deposition** [30] - 3:22, 3:24, 4:6, 4:19, 12:8, 12:21, 12:23, 16:9, 16:12, 17:2, 17:18, 19:4, 19:5, 22:18, 23:1, 24:13, 24:22, 25:14, 25:25, 26:3, 26:20, 26:24, 27:13, 28:2, 28:9, 28:25, 29:1, 41:17, 43:22
**depositions** [9] - 13:21, 17:4, 17:13, 17:21, 17:22, 17:24, 18:1, 20:17, 25:22
**DEPUTY** [2] - 3:2, 44:7
**designated** [1] - 25:15
**desire** [1] - 8:3
**determination** [1] -

3

39:5

**determine** [1] - 5:11
**difference** [2] - 23:9, 27:20
**different** [16] - 10:12, 14:17, 14:18, 14:20, 15:7, 15:14, 16:4, 18:13, 18:17, 18:21, 23:15, 26:11, 30:8, 32:19, 32:23, 36:8
**dinner** [2] - 26:7, 29:2
**directed** [1] - 25:4
**director** [1] - 3:25
**disables** [1] - 15:22
**discovery** [3] - 3:13, 17:13, 18:15
**discussion** [1] - 24:10
**disk** [1] - 35:6
**dispute** [5] - 10:20, 15:16, 26:22, 36:14, 36:15
**DISTRICT** [2] - 1:1, 1:1
**District** [4] - 2:4, 3:2, 3:3, 44:22
**DIVISION** [1] - 1:2
**documents** [3] - 7:4, 14:23, 21:19
**done** [6] - 30:24, 32:7, 32:9, 42:10, 42:13, 43:13
**DOT** [2] - 9:17, 18:25
**Doug** [1] - 3:9
**DOUGLAS** [1] - 1:13
**down** [3] - 30:22, 37:12, 40:4
**drive** [11] - 31:21, 32:1, 32:15, 33:1, 34:18, 36:12, 37:1, 37:20, 41:5, 42:4, 43:10
**driver** [7] - 15:7, 15:14, 15:24, 17:25, 39:24, 40:3, 40:6
**driver's** [2] - 39:24, 40:1
**driving** [3] - 15:10, 32:4, 40:13
**due** [1] - 3:17
**during** [1] - 6:7
**duties** [1] - 21:1

---

**E**

**e-mailed** [1] - 36:14
**ear** [1] - 16:25
**early** [1] - 28:24
**East** [2] - 1:14, 1:18

---

Eastern [3] - 26:16, 26:20, 26:25
**Eaton** [2] - 3:9, 43:8
**EATON** [41] - 1:13, 3:9, 3:15, 3:20, 18:6, 19:16, 19:24, 20:1, 20:6, 20:9, 20:12, 20:21, 21:8, 22:11, 22:15, 22:24, 23:3, 23:6, 23:17, 23:25, 24:11, 24:17, 24:21, 24:25, 25:2, 25:10, 26:19, 27:10, 27:12, 28:13, 28:16, 28:20, 29:3, 29:5, 29:13, 29:24, 30:4, 37:25, 38:7, 43:19, 43:24
**eaton** [2] - 3:19, 30:19
**EDR** [1] - 15:16
**Edwin** [1] - 3:4
**EDWIN** [1] - 1:11
**eight** [1] - 26:13
**either** [3] - 9:22, 19:9, 38:5
**eliminations** [1] - 21:10
**email** [8] - 12:12, 33:10, 33:22, 34:2, 35:3, 41:3, 42:12
**embodied** [1] - 6:9
**embroiling** [1] - 20:25
**employee** [6] - 8:12, 20:16, 21:7, 22:5, 22:16, 22:18
**Employees** [2] - 5:19, 5:24
**employees** [16] - 5:22, 6:6, 6:11, 7:3, 8:11, 20:22, 20:24, 21:16, 21:18, 22:1, 22:21, 22:24, 23:7, 25:19, 25:20, 25:21
**employees'** [2] - 7:4, 21:16
**end** [5] - 3:17, 19:5, 26:22, 26:25, 30:23
**ends** [1] - 27:15
**enforce** [2] - 10:3, 10:22
**enforcement** [1] - 34:10
**enforcing** [1] - 9:10
**engineering** [2] - 32:20, 36:1
**ensure** [2] - 8:5, 20:23
**entanglement** [1] - 8:4

---

**entirely** [1] - 28:1
**entitled** [2] - 5:18, 44:17
**ESQ** [3] - 1:13, 1:17, 1:21
**et** [1] - 1:4
**evaluations** [1] - 6:8
**evidence** [1] - 40:24
**exactly** [5] - 24:24, 26:8, 34:4, 37:11, 38:16
**example** [3] - 35:16, 36:20, 39:18
**excuse** [2] - 31:2, 34:3
**exert** [1] - 8:5
**exist** [5] - 38:24, 41:9, 42:14, 43:1, 43:2
**existence** [3] - 11:5, 21:22, 41:10
**exists** [4] - 41:8, 41:21, 42:17, 43:4
**expedite** [1] - 13:5
**expert** [1] - 39:3
**experts** [1] - 38:12
**explain** [1] - 41:23
**explains** [1] - 23:23
**expression** [1] - 20:8
**extent** [3] - 8:21, 10:16, 25:5
**extract** [3] - 34:17, 35:1, 43:13
**extracting** [1] - 34:24

---

**F**

**face** [1] - 23:9
**facing** [2] - 32:21, 36:4
**fact** [3] - 3:16, 3:22, 44:1
**facts** [8] - 15:6, 15:13, 16:4, 16:8, 16:16, 16:17, 17:12, 40:3
**factual** [4] - 6:7, 6:8, 6:9, 13:9
**falls** [1] - 10:9
**familiar** [1] - 34:5
**far** [1] - 27:16
**fast** [1] - 27:1
**federal** [5] - 4:7, 5:2, 6:10, 7:12, 11:21
**felt** [2] - 29:17, 29:18
**few** [2] - 6:21, 33:10
**file** [2] - 12:22, 18:11
**filed** [1] - 12:22
**final** [2] - 25:12, 25:13

---

**fine** [5] - 4:12, 11:25, 26:19, 30:14, 43:25
**finish** [2] - 27:17, 27:19
**first** [3] - 4:9, 19:9, 31:5
**firsthand** [1] - 12:21
**fit** [3] - 15:4, 15:5, 31:21
**five** [1] - 26:22
**fix** [1] - 43:23
**FL** [3] - 1:15, 1:19, 1:23
**Flagler** [2] - 1:14, 1:18
**flashing** [1] - 16:2
**Floor** [1] - 44:23
**FLORIDA** [1] - 1:1
**Florida** [4] - 1:4, 2:5, 3:3, 44:23
**focus** [1] - 6:24
**folder** [5] - 41:13, 41:14, 41:15
**following** [1] - 3:1
**foot** [3] - 15:10, 15:14, 15:25
**footnote** [2] - 30:14, 31:20
**FOR** [1] - 1:13, 1:21
**foregoing** [1] - 44:15
**former** [14] - 3:25, 4:23, 6:11, 8:7, 8:11, 8:12, 11:21, 20:16, 21:5, 21:6, 21:7, 21:16, 22:5, 22:24
**formulate** [1] - 5:13
**forth** [4] - 8:14, 20:22, 21:10, 32:23
**forward** [1] - 24:13
**four** [2] - 26:18, 30:2
**FPR** [2] - 2:3, 44:21
**frames** [1] - 32:23
**frankly** [1] - 28:3
**free** [1] - 8:4
**FROM** [1] - 1:6
**front** [2] - 31:16, 36:21
**funds** [1] - 21:1

---

**G**

**Gables** [1] - 1:23
**General** [1] - 10:24
**general** [6] - 11:17, 19:10, 22:19, 23:11, 23:20, 25:3
**genesis** [1] - 18:14
**gentleman** [1] - 4:19
**given** [8] - 24:14, 31:11, 31:12, 32:21,

---

32:22, 32:25, 36:11, 37:21
**glossary** [2] - 38:4, 41:21
**government** [3] - 12:20, 12:23
**GPS** [10] - 36:20, 37:3, 37:5, 37:14, 38:15, 38:21, 39:18, 39:19, 42:20, 43:5
**grant** [3] - 11:1, 19:9, 28:8
**green** [1] - 41:15
**ground** [2] - 19:9, 19:10
**GROUP** [2] - 1:14, 1:17
**guess** [7] - 3:24, 4:4, 8:23, 11:6, 31:6, 36:14, 36:24
**guest** [1] - 12:2
**guy** [3] - 27:11, 27:20, 27:21
**guys** [1] - 30:23

---

**H**

**handle** [1] - 19:17
**hands** [7] - 15:9, 15:17, 15:19, 15:22, 15:24, 15:25
**happy** [2] - 4:9, 34:24
**hardly** [1] - 23:18
**Harry** [2] - 15:8, 15:9
**head** [2] - 31:18, 36:22
**headlights** [1] - 40:10
**hear** [1] - 20:1
**heard** [1] - 34:14
**hearing** [6] - 3:13, 3:23, 14:25, 29:8, 32:13, 35:8
**hereby** [1] - 44:15
**hit** [1] - 16:3
**hmm** [3] - 11:14, 12:9, 20:20
**holding** [1] - 33:2
**home** [1] - 4:15
**Honor** [7] - 3:9, 5:17, 22:7, 29:4, 30:21, 44:4, 44:5
**HONORABLE** [1] - 1:11
**Honorable** [1] - 3:4
**hopefully** [1] - 29:1
**hour** [8] - 26:22, 29:15, 31:13, 31:14, 31:24, 31:25, 32:2,

32:4
**hours** [13] - 26:16, 26:21, 27:4, 27:5, 27:6, 27:7, 27:8, 28:11, 28:15, 28:18, 29:1, 33:11
**house** [1] - 36:2

## I

**idea** [2] - 13:15, 23:3
**imagine** [1] - 10:19
**immediate** [1] - 18:18
**imminently** [1] - 40:14
**important** [2] - 21:15, 27:23
**imposes** [1] - 6:10
**improve** [1] - 5:13
**in-house** [1] - 36:2
**inadmissible** [1] - 18:8
**Inc** [2] - 3:11, 22:3
**INC** [1] - 1:7
**incident** [1] - 14:9
**incidents** [1] - 5:12
**include** [1] - 21:21
**includes** [1] - 40:10
**including** [4] - 5:5, 6:8, 7:4, 37:3
**inconvenient** [1] - 27:15
**Incorporated** [1] - 3:5
**influence** [1] - 8:5
**inform** [2] - 11:23, 12:1
**information** [1] - 6:7
**informed** [1] - 11:4
**initial** [1] - 20:22
**inside** [2] - 34:6, 34:7
**instance** [1] - 42:18
**intention** [1] - 30:20
**interest** [2] - 24:19
**interested** [1] - 11:18
**interesting** [1] - 42:6
**international** [1] - 25:19
**interpret** [3] - 7:10, 34:24, 34:25
**interpretation** [4] - 7:11, 21:21, 23:14, 23:15
**interpreting** [1] - 21:24
**interrogate** [1] - 42:8
**interrogatories** [1] - 22:18

**intervention** [2] - 25:6, 25:8
**investigate** [2] - 6:15, 36:2
**investigates** [1] - 5:4
**investigating** [1] - 5:3
**investigation** [8] - 5:3, 6:3, 6:8, 6:13, 6:16, 6:17, 7:13, 34:10
**investigator** [1] - 6:14
**invoke** [1] - 21:16
**invoking** [1] - 21:17
**involved** [1] - 14:16
**irrelevant** [8] - 17:12, 19:11, 29:17, 29:19, 36:22, 36:23, 38:10, 39:25
**issue** [14] - 6:21, 7:19, 11:15, 14:3, 14:7, 15:18, 19:18, 19:23, 23:21, 32:12, 35:2, 39:23, 40:14, 43:9
**issues** [3] - 20:25, 22:12, 30:8

## J

**jaws** [1] - 20:11
**JUDGE** [1] - 1:11
**Judge** [3] - 3:4, 3:6, 19:14
**judge** [1] - 37:14
**July** [1] - 3:18
**June** [2] - 3:16, 12:19
**Justice** [1] - 8:20
**Justice's** [1] - 7:24

## K

**keep** [1] - 8:4
**key** [1] - 6:17
**kind** [5] - 7:7, 10:2, 14:22, 16:1, 38:22
**kinds** [3] - 17:12, 22:5, 38:11
**knowledge** [2] - 10:9, 34:11

## L

**land** [1] - 34:4
**last** [7] - 14:25, 29:6, 32:13, 33:1, 34:18, 35:7, 38:1
**LAW** [2] - 1:14, 1:17

**law** [11] - 5:16, 5:20, 6:10, 7:6, 7:10, 7:12, 8:10, 11:4, 11:21, 34:10
**lawyer** [4] - 20:1, 26:19, 27:21, 28:24
**lay** [1] - 34:4
**leaning** [1] - 40:4
**learn** [1] - 43:22
**least** [4] - 12:16, 13:8, 16:5, 19:8
**leave** [1] - 26:23
**left** [1] - 17:4
**legal** [1] - 9:24, 37:10
**less** [1] - 28:11
**letter** [7] - 5:16, 7:6, 7:11, 8:10, 23:23, 24:16, 25:3
**level** [1] - 24:4
**light** [2] - 3:17, 16:2
**limine** [3] - 17:1, 18:12, 19:18
**limit** [1] - 24:6
**limitation** [2] - 21:15, 21:25
**limitations** [2] - 6:10, 8:14
**limited** [2] - 7:5, 24:7
**line** [3] - 32:7, 39:11, 41:11
**list** [5] - 29:10, 29:14, 29:19, 38:3, 39:4
**listed** [1] - 33:5
**litigation** [2] - 8:6, 22:17
**live** [2] - 25:22, 25:24
**lives** [1] - 25:17
**living** [1] - 25:17
**local** [6] - 26:4, 26:13, 26:15, 28:10, 28:19
**lodge** [1] - 39:13
**lodging** [2] - 3:23, 39:14
**look** [4] - 7:1, 7:10, 10:7, 21:4
**looked** [1] - 11:10
**looking** [1] - 15:24
**lunch** [1] - 29:2

## M

**Madrid** [2] - 27:2, 27:3
**MAGISTRATE** [1] - 1:11
**Magistrate** [1] - 3:4
**mailed** [1] - 36:14
**manner** [1] - 13:18
**manufacturer** [2] -

42:21, 42:24
**manufacturers** [3] - 6:23, 6:24, 35:25
**map** [1] - 38:19
**March** [1] - 29:7
**matter** [5] - 10:18, 10:23, 29:5, 40:2, 44:17
**matters** [2] - 5:21, 6:12
**maximum** [1] - 28:14
**mean** [19] - 12:12, 12:16, 17:8, 17:12, 18:1, 25:20, 26:5, 28:4, 28:9, 30:18, 38:16, 38:21, 39:19, 42:17, 42:19, 42:20, 42:23, 43:6, 43:19
**meaningless** [1] - 21:24
**means** [1] - 28:23
**meet** [1] - 14:12
**member** [2] - 8:8, 21:7
**memorize** [1] - 37:7
**met** [1] - 6:20
**MIAMI** [1] - 1:2
**Miami** [8] - 1:4, 1:15, 1:19, 2:5, 2:5, 28:3, 44:22, 44:23
**might** [3] - 24:2, 42:5, 43:11
**mind** [1] - 27:23
**minor** [1] - 19:22
**minutes** [1] - 19:23, 32:5
**misrepresenting** [1] - 39:9
**missing** [1] - 38:25
**mission** [1] - 5:11
**model** [2] - 14:18, 14:19
**month** [1] - 42:11
**months** [2] - 29:25, 38:1
**morning** [1] - 29:22
**most** [2] - 17:22, 35:24
**motion** [7] - 12:22, 15:3, 17:1, 17:2, 18:12, 18:13
**MOTION** [1] - 1:10
**motions** [2] - 3:17, 19:17
**motor** [2] - 5:5, 40:16
**movie** [2] - 15:8, 15:9
**moving** [3] - 4:2, 14:7, 14:13
**MR** [40] - 3:9, 3:15,

3:20, 18:6, 19:16, 19:24, 20:1, 20:6, 20:9, 20:12, 20:21, 21:8, 22:11, 22:15, 22:24, 23:3, 23:6, 23:17, 23:25, 24:11, 24:17, 24:21, 24:25, 25:2, 25:10, 26:19, 27:10, 27:12, 28:13, 28:16, 28:20, 29:3, 29:5, 29:13, 29:24, 30:4, 37:25, 38:7, 43:19, 43:24
**MS** [91] - 3:11, 4:4, 4:11, 4:14, 4:18, 4:21, 4:23, 5:2, 5:7, 7:21, 7:25, 8:9, 8:23, 9:1, 9:5, 9:9, 9:15, 9:18, 10:10, 10:15, 11:9, 11:15, 11:19, 12:3, 12:5, 12:9, 12:11, 12:14, 12:25, 13:6, 13:11, 13:13, 13:16, 13:19, 13:25, 14:2, 14:4, 14:6, 16:13, 16:16, 17:8, 17:11, 17:22, 17:24, 18:20, 19:7, 19:12, 19:15, 19:20, 19:22, 19:25, 20:3, 22:23, 25:13, 26:3, 26:8, 26:10, 26:12, 26:15, 27:4, 27:6, 29:4, 30:5, 31:4, 31:16, 31:25, 32:4, 32:7, 32:11, 32:14, 33:5, 33:9, 33:15, 33:25, 35:10, 35:13, 35:16, 35:18, 35:21, 35:23, 36:4, 36:11, 36:15, 37:2, 37:4, 37:7, 37:11, 37:19, 37:23, 41:3, 44:5
**Murphy** [1] - 22:3

## N

**named** [1] - 4:19
**narrow** [3] - 29:14, 31:7, 31:9
**National** [3] - 4:24, 8:24, 9:2
**NCSB** [1] - 22:5
**NCU** [4] - 34:6, 34:10, 34:15, 34:16
**necessary** [3] - 8:1, 8:11, 20:15
**need** [4] - 14:12, 22:25, 32:17, 40:22
**needed** [1] - 29:18
**needs** [1] - 5:18

**NEIMA** [1] - 1:4
**Neima** [1] - 3:5
**never** [4] - 24:10, 31:10, 42:7, 43:3
**newer** [2] - 37:8, 38:20
**next** [2] - 17:14, 41:17
**nine** [5] - 26:13, 26:18, 27:6, 27:8
**NO** [1] - 1:2
**nonboard** [1] - 21:2
**none** [4] - 25:7, 33:17, 33:19, 33:20
**nonsense** [1] - 38:16
**normal** [2] - 16:14, 17:5
**North** [2] - 2:5, 44:22
**noted** [1] - 36:17
**nothing** [9] - 7:14, 11:16, 16:20, 18:11, 22:21, 23:23, 33:24, 34:23, 43:1
**notice** [20] - 4:5, 4:8, 11:20, 13:1, 20:13, 22:9, 22:15, 23:1, 23:4, 23:7, 23:12, 23:18, 23:21, 24:9, 24:15, 24:22, 25:6, 30:7, 41:19
**noticed** [1] - 43:9
**noticing** [1] - 18:1
**November** [1] - 3:18
**NTSA** [1] - 6:23
**NTSB** [9] - 3:25, 4:25, 5:2, 6:3, 6:14, 6:15, 6:16, 6:23, 22:10
**NTSB's** [2] - 5:11, 5:15
**Number** [1] - 3:6
**number** [6] - 10:6, 11:20, 15:21, 24:2
**numbers** [1] - 27:1

**O**

**o'clock** [2] - 26:9, 27:9
**oath** [1] - 27:21
**object** [5] - 18:18, 29:21, 33:12, 33:13, 39:18
**objected** [1] - 41:11
**objecting** [5] - 33:4, 33:14, 37:9, 39:15, 40:17
**objection** [5] - 3:22, 3:24, 13:4, 18:16, 33:23

**objections** [22] - 29:10, 29:22, 30:1, 30:10, 30:13, 30:15, 30:17, 30:22, 31:1, 31:3, 31:20, 33:3, 33:16, 33:18, 36:18, 36:19, 37:16, 39:13, 39:14, 39:15, 40:19
**obtain** [1] - 6:7
**obviously** [6] - 6:24, 10:18, 13:4, 13:23, 27:24, 35:8
**OF** [1] - 1:1
**Official** [1] - 44:21
**official** [4] - 2:4, 6:2, 20:24, 24:9
**often** [1] - 30:22
**oncoming** [1] - 40:12
**one** [19] - 10:1, 10:6, 10:16, 11:20, 13:20, 18:7, 19:22, 20:10, 21:23, 24:2, 25:13, 29:5, 31:24, 31:25, 32:2, 36:21, 40:22, 41:23
**ones** [1] - 13:3
**opposed** [1] - 26:24
**order** [30] - 4:3, 14:24, 15:1, 15:2, 17:1, 18:13, 29:6, 29:20, 30:8, 30:9, 30:12, 30:15, 30:16, 30:25, 31:16, 31:17, 31:19, 32:9, 35:5, 36:16, 37:11, 37:12, 37:14, 37:17, 37:23, 39:11, 41:14, 43:17, 43:19, 43:21
**ordered** [2] - 31:12, 34:3
**own** [2] - 19:17, 24:16

**P**

**P.M** [9] - 26:4, 26:15, 26:16, 26:25, 27:4, 27:17, 27:19, 28:10, 28:18
**Pacific** [1] - 26:21, 27:2, 27:24, 28:25
**Pages** [1] - 1:8
**parked** [1] - 16:3
**part** [8] - 5:18, 5:23, 6:6, 6:19, 18:16, 24:18, 29:9, 34:9
**participating** [1] - 9:23
**parts** [1] - 25:22
**party** [1] - 18:22

**past** [3] - 32:8, 32:23, 43:12
**path** [1] - 15:12
**pedal** [1] - 15:15
**penalized** [1] - 44:1
**people** [1] - 10:20
**people's** [1] - 40:10
**percent** [2] - 29:18, 29:19
**perfectly** [3] - 4:12, 11:24, 28:23
**perhaps** [1] - 14:12
**period** [2] - 12:7, 13:2
**permissible** [3] - 6:5, 8:13, 21:9
**permitted** [1] - 5:21
**person's** [1] - 4:6
**persuasive** [1] - 16:24
**pertains** [1] - 8:10
**phone** [1] - 40:4
**piece** [4] - 11:10, 31:5, 31:6, 34:1
**plaintiff** [10] - 3:8, 3:10, 3:14, 9:20, 9:21, 11:4, 11:22, 17:23, 27:25, 34:12
**PLAINTIFF** [1] - 1:13
**plaintiff's** [2] - 6:20, 43:2
**PLAINTIFF'S** [1] - 1:10
**plaintiffs** [6] - 3:10, 4:18, 15:2, 25:13, 34:21, 35:3
**Plaintiffs** [1] - 1:5, 30:11
**planning** [1] - 28:13
**Plaza** [1] - 1:22
**plus** [2] - 27:8, 28:24
**point** [9] - 11:2, 11:7, 18:24, 19:8, 20:19, 21:12, 30:1, 39:9, 43:16
**police** [2] - 34:21, 43:13
**policies** [1] - 5:24
**poses** [1] - 22:2
**Poses** [1] - 3:10
**POSES** [3] - 1:14, 1:17, 1:17
**position** [2] - 39:24, 40:6
**possible** [1] - 38:18
**posture** [1] - 3:21
**potential** [1] - 11:3
**potentially** [1] - 10:23
**Potter** [2] - 15:8,

15:9
**precisely** [1] - 29:9
**preclude** [1] - 13:22
**precluded** [1] - 10:13
**precludes** [1] - 11:16
**precluding** [1] - 17:4
**prejudice** [2] - 19:13, 19:18
**prejudicial** [1] - 23:19
**premature** [1] - 10:2
**premise** [1] - 19:11
**prepared** [5] - 10:7, 11:25, 13:21, 17:7, 23:2
**prerogative** [1] - 12:1
**prescribe** [1] - 5:24
**presence** [3] - 7:23, 7:24, 7:25
**present** [1] - 3:19
**presented** [1] - 40:24
**preservation** [1] - 19:4
**preserve** [7] - 28:15, 35:23, 35:25, 36:1, 36:4, 36:18, 37:16
**preserved** [3] - 14:3, 19:3, 36:8
**preserving** [2] - 39:15, 40:20
**president** [1] - 5:9
**presiding** [1] - 3:4
**presumably** [1] - 21:11
**prevent** [1] - 19:1
**prevents** [1] - 6:12
**previously** [1] - 25:16
**primarily** [1] - 5:3
**primary** [1] - 5:11
**principles** [1] - 7:2
**printed** [1] - 22:2
**private** [1] - 20:18
**proactive** [1] - 24:2
**probable** [1] - 5:12
**problem** [5] - 13:2, 24:14, 24:20, 28:21, 29:13
**procedural** [1] - 3:21
**procedure** [1] - 5:10
**procedures** [1] - 5:25
**proceedings** [1] - 44:16
**produce** [9] - 18:15, 25:21, 25:22, 29:14, 30:23, 33:24, 39:16, 39:19, 41:11
**Produce** [2] - 31:19,

39:12
**produced** [7] - 14:23, 29:15, 35:7, 36:25, 39:2, 41:6
**prohibited** [2] - 7:17, 16:9
**proper** [1] - 4:6
**proposed** [1] - 36:16
**protect** [1] - 27:22
**protective** [6] - 4:2, 14:24, 15:1, 15:2, 17:1, 18:13
**provide** [1] - 6:18
**provided** [6] - 5:17, 29:22, 38:12, 38:14, 39:10, 40:23
**provision** [1] - 11:3
**public** [1] - 21:1
**publicly** [1] - 12:14
**pull** [1] - 20:11
**purpose** [3] - 8:1, 8:2, 21:3
**purposes** [5] - 9:9, 17:1, 20:24, 21:2, 24:3
**purview** [1] - 10:9
**push** [2] - 17:15, 17:17
**put** [6] - 15:19, 25:8, 29:10, 30:22, 33:16, 33:18
**putting** [2] - 12:15, 20:13

**Q**

**quality** [1] - 27:22
**quoted** [1] - 9:14

**R**

**raise** [7] - 7:18, 9:25, 10:21, 13:3, 13:4, 14:7, 21:12
**raised** [2] - 39:23, 43:9
**raising** [1] - 9:24
**ran** [1] - 15:12
**rather** [4] - 13:12, 24:1, 29:24, 29:25
**reached** [1] - 40:4
**read** [2] - 8:1, 21:6
**reading** [1] - 9:8
**really** [4] - 7:9, 11:10, 12:19, 26:21
**reason** [1] - 37:10
**reasonable** [1] - 28:24
**reasons** [1] - 25:8
**receive** [1] - 23:4

**received** [3] - 29:18, 35:20, 38:5
**receives** [1] - 35:21
**recommendations** [3] - 5:13, 6:22, 7:5
**reconstruct** [1] - 40:8
**record** [2] - 3:7, 43:17
**recorded** [1] - 42:18
**recording** [5] - 3:1, 42:21, 42:24, 44:8, 44:16
**RECORDING** [1] - 1:6
**red** [5] - 16:2, 41:13, 41:14, 41:15
**redline** [1] - 36:17
**reflectors** [1] - 40:12
**regarding** [3] - 5:25, 7:3, 21:18
**regulation** [5] - 9:7, 9:17, 10:9, 20:15, 23:14
**regulations** [1] - 9:13
**relate** [1] - 38:14
**related** [3] - 6:3, 20:17, 21:1
**relating** [1] - 22:19
**relevance** [4] - 11:3, 16:11, 18:11, 18:23
**relevant** [14] - 7:9, 14:14, 15:23, 16:21, 24:10, 29:19, 32:16, 33:5, 37:13, 37:15, 38:10, 40:7, 40:9, 40:14
**relief** [2] - 11:1, 19:9
**remember** [3] - 20:8, 29:12, 36:22
**removed** [1] - 34:10
**rep** [1] - 41:17
**repeat** [1] - 19:5
**report** [1] - 5:15
**REPORTED** [1] - 2:2
**Reporter** [2] - 2:4, 44:21
**reports** [3] - 6:9, 7:4, 21:19
**represent** [1] - 7:20
**representation** [1] - 24:5
**representations** [1] - 42:25
**representative** [2] - 25:15, 25:16
**reps** [1] - 25:21
**request** [3] - 20:15, 22:17, 28:8

**requested** [1] - 3:14
**requesting** [1] - 22:17
**required** [3] - 20:14, 25:6, 25:8
**requirements** [1] - 23:7
**requires** [1] - 22:15
**requiring** [2] - 11:3, 12:6
**reserved** [1] - 29:20
**resolution** [1] - 13:5
**resolve** [3] - 9:22, 10:20, 13:7
**respond** [2] - 11:11, 33:16
**responding** [1] - 24:1
**response** [1] - 24:7
**rest** [1] - 40:25
**restriction** [1] - 21:5
**restrictions** [1] - 20:21
**result** [1] - 44:2
**revisions** [2] - 36:16, 36:17
**rise** [1] - 44:7
**road** [2] - 15:10, 37:13
**Robert** [2] - 3:24, 44:21
**RPR** [2] - 2:3, 44:21
**Rubio** [1] - 41:18
**rule** [3] - 9:4, 9:12, 10:2
**ruled** [1] - 15:3
**rules** [8] - 4:7, 7:17, 8:2, 8:3, 8:24, 9:1, 9:10
**ruling** [2] - 16:11, 20:13

**S**

**S-U-M-W-A-L-T** [1] - 4:21
**Safety** [1] - 4:24
**safety** [4] - 5:13, 5:14, 6:22, 7:5
**scope** [12] - 5:20, 6:5, 7:12, 8:13, 14:22, 14:23, 14:24, 15:1, 15:2, 15:5, 15:6, 18:17
**screen** [2] - 34:7, 43:5
**SD** [15] - 34:4, 34:5, 34:6, 34:11, 34:16, 34:17, 34:18, 35:1, 35:8, 42:5, 42:7, 42:8,

42:16, 43:10, 43:12
**seat** [2] - 39:24, 40:1
**seats** [1] - 40:5
**second** [4] - 14:7, 19:10, 31:6, 42:21
**Section** [2] - 6:5, 7:2
**section** [3] - 7:2, 8:9, 22:15
**sections** [2] - 8:14, 21:10
**see** [7] - 3:16, 23:16, 23:24, 32:6, 35:15, 40:12, 40:13
**seeing** [1] - 16:12
**seeking** [1] - 21:16
**send** [4] - 12:12, 23:20, 24:2, 25:3
**sending** [1] - 11:17
**sends** [2] - 35:16, 35:18
**sense** [1] - 39:22
**sent** [5] - 32:8, 33:10, 35:10, 36:16, 36:17
**serve** [1] - 8:4
**session** [1] - 3:3
**set** [9] - 3:23, 8:14, 16:17, 20:22, 21:10, 32:21, 36:1, 36:6
**sets** [1] - 36:8
**seven** [2] - 27:8, 27:13, 27:14, 28:10, 28:15, 28:17, 29:1
**shall** [1] - 22:19
**SHARON** [2] - 2:3, 44:21
**shelly@ poseslawgroup.com** [1] - 1:19
**shortly** [1] - 34:9
**shows** [2] - 15:16, 38:19
**shut** [2] - 20:7, 20:9
**sign** [4] - 16:2, 30:16, 30:21, 43:21
**signal** [1] - 42:17
**signals** [12] - 31:11, 31:19, 31:21, 32:19, 36:6, 37:8, 38:2, 38:7, 38:11, 38:13, 41:18, 41:21
**simple** [1] - 25:7
**sit** [1] - 43:6
**situation** [1] - 23:18
**six** [7] - 26:16, 27:4, 27:5, 27:6, 27:11, 27:12
**slack** [1] - 28:22
**sole** [1] - 21:9
**someone** [2] - 5:8,

37:13
**sometimes** [5] - 7:8, 20:2, 33:16, 33:18, 35:18
**soon** [1] - 23:21
**sorry** [8] - 6:23, 14:17, 19:24, 19:25, 21:17, 27:6, 31:14, 31:16
**sort** [1] - 40:22
**sound** [1] - 43:15
**sounds** [1] - 23:8
**source** [1] - 35:9
**SOUTHERN** [1] - 1:1
**Southern** [1] - 3:3
**Spain** [3] - 25:17, 25:24, 26:9
**specific** [2] - 31:11, 43:9
**specifically** [3] - 7:12, 7:17, 20:15
**speculating** [1] - 18:9
**speculation** [1] - 13:12
**speed** [4] - 15:15, 15:17, 31:8, 40:16
**spell** [1] - 4:20
**spending** [1] - 21:1
**splitting** [1] - 28:22
**sport** [1] - 31:10
**stand** [1] - 8:20
**standard** [1] - 43:5
**standing** [8] - 7:18, 9:25, 10:20, 10:22, 11:2, 11:10, 13:3, 18:18
**start** [5] - 26:25, 27:13, 27:18, 28:9, 29:1
**starting** [1] - 3:8
**starts** [1] - 27:14
**state** [1] - 3:7
**statement** [2] - 20:22, 38:8
**statements** [1] - 31:7
**States** [3] - 2:4, 3:2, 44:22
**states** [2] - 6:5, 6:6
**STATES** [2] - 1:1, 1:11
**statute** [5] - 9:12, 10:1, 20:14, 23:6
**statutory** [1] - 21:21
**stay** [1] - 12:23
**steering** [1] - 31:8
**STENOGRAPHICA LLY** [1] - 2:2
**step** [2] - 19:2, 19:19
**still** [6] - 18:4, 33:18,

34:15, 34:16, 36:18, 41:21
**stop** [3] - 12:20, 16:2, 18:8
**stopping** [1] - 34:23
**storing** [3] - 34:8, 34:15, 42:22
**story** [1] - 10:12
**straight** [1] - 12:22
**street** [1] - 16:3
**Street** [2] - 1:14, 1:18
**strict** [1] - 6:10
**strike** [1] - 15:20
**strong** [1] - 8:3
**stuff** [4] - 32:17, 38:25, 39:12, 41:8
**subject** [2] - 14:13, 14:20
**submit** [1] - 43:21
**submitting** [1] - 43:17
**subpoena** [5] - 11:5, 11:15, 11:17, 12:7, 22:25
**subsequent** [1] - 21:23
**substance** [1] - 16:5
**substantive** [1] - 22:12
**substantively** [1] - 21:12
**suggesting** [1] - 39:8
**suggestion** [1] - 23:22
**suggests** [1] - 40:24
**Suite** [1] - 1:22
**suits** [1] - 8:4
**Sumwalt** [23] - 3:25, 4:19, 4:23, 6:18, 6:22, 7:14, 7:15, 7:20, 8:15, 9:23, 10:5, 10:6, 11:4, 11:22, 12:23, 13:9, 13:21, 14:8, 14:9, 14:16, 16:6, 23:15
**Sumwalt's** [2] - 7:23, 7:25
**supplied** [1] - 39:5
**supports** [1] - 43:3
**surface** [1] - 24:4
**surprised** [1] - 39:22
**sustained** [1] - 18:16
**sworn** [2] - 38:22, 42:2
**system** [2] - 15:20, 15:22

**T**

**talks** [1] - 9:9
**tapas** [1] - 26:10

technology [3] - 14:19, 16:7, 16:19

ten [6] - 13:20, 17:20, 18:4, 18:5, 29:18, 38:10

term [1] - 21:24

terms [1] - 14:23

TESLA [1] - 1:7

Tesla [19] - 3:5, 3:11, 3:23, 6:24, 6:25, 10:22, 14:16, 24:1, 25:15, 25:19, 29:9, 32:7, 34:7, 34:5, 35:11, 35:20, 35:21, 38:20

Tesla's [1] - 25:14

testified [1] - 22:5

testify [11] - 6:7, 6:11, 7:3, 7:14, 10:8, 10:11, 11:25, 13:10, 13:21, 17:7, 21:18

testifying [2] - 6:12, 19:1

Testimony [2] - 5:18, 5:23

testimony [21] - 5:20, 5:25, 6:1, 6:2, 6:6, 6:17, 7:16, 8:10, 8:13, 8:16, 13:24, 14:14, 18:8, 20:16, 20:17, 21:9, 21:13, 22:17, 24:6, 27:22, 42:2

THE [124] - 1:11, 1:13, 1:21, 3:2, 3:12, 3:16, 4:2, 4:10, 4:12, 4:16, 4:20, 4:22, 5:1, 5:6, 7:18, 7:22, 8:7, 8:18, 8:25, 9:3, 9:6, 9:11, 9:16, 9:19, 10:12, 10:16, 11:14, 11:16, 11:20, 12:4, 12:6, 12:10, 12:13, 12:18, 13:1, 13:7, 13:12, 13:14, 13:17, 13:20, 14:1, 14:3, 14:5, 16:10, 16:14, 16:23, 17:9, 17:16, 17:23, 18:2, 18:7, 18:21, 19:8, 19:13, 19:17, 19:21, 20:4, 20:8, 20:10, 20:20, 21:5, 22:9, 22:14, 23:2, 23:5, 23:8, 23:18, 24:1, 24:12, 24:18, 24:24, 25:1, 25:3, 25:11, 26:2, 26:6, 26:9, 26:11, 26:13, 26:18, 27:1, 27:5, 27:8, 27:11,

27:20, 28:15, 28:17, 28:21, 29:12, 29:23, 30:3, 31:2, 31:15, 31:24, 32:3, 32:6, 32:10, 32:12, 33:4, 33:7, 33:13, 33:23, 35:6, 35:12, 35:15, 35:17, 35:20, 35:22, 36:3, 36:10, 36:13, 36:24, 37:3, 37:6, 37:9, 37:18, 37:22, 37:24, 38:6, 41:2, 43:15, 43:21, 44:6, 44:7

themselves [1] - 6:13

therefore [1] - 41:9

third [1] - 18:22

thousands [1] - 32:19

three [2] - 26:21, 30:2

timeline [1] - 24:21

TO [1] - 1:10

today [7] - 22:13, 30:6, 36:14, 38:5, 41:3, 42:12, 43:9

Todd [1] - 3:10

TODD [1] - 1:17

took [3] - 17:25, 18:1, 29:7

top [1] - 36:22

topics [2] - 29:16, 38:14

torque [1] - 40:16

TORRES [1] - 1:11

Torres [1] - 3:4

totally [2] - 15:6, 16:4

track [1] - 29:9

tracks [1] - 32:19

tractor [3] - 15:11, 15:12

tractor-trailer [3] - 15:11, 15:12

traffic [1] - 16:1

trailer [3] - 15:11, 15:12

trained [1] - 16:25

transcript [1] - 29:8

Transcription [1] - 44:8

transcription [2] - 3:1, 44:16

TRANSCRIPTION [1] - 1:6

transmitted [1] - 35:12

transparency [1] - 24:20

Transportation [16] - 4:24, 8:19, 8:24, 9:2, 9:4, 9:7, 9:23, 10:19, 10:24, 11:5, 11:18, 11:23, 11:24, 12:2, 22:10, 23:12

transportation [3] - 5:5, 5:12, 5:14

trial [1] - 3:18

true [2] - 8:18, 44:2

trying [4] - 9:21, 27:13, 31:18, 40:18

tunnel [1] - 3:17

two [7] - 10:6, 19:23, 24:3, 29:25, 32:8, 37:25, 43:12

Two [1] - 1:22

twofold [1] - 5:11

type [1] - 21:19

types [2] - 5:4, 7:4

U

ultimately [1] - 9:20

um-hmm [3] - 11:14, 12:9, 20:20

under [3] - 4:7, 27:21

understood [9] - 3:20, 13:6, 18:20, 19:7, 19:12, 19:20, 24:17, 25:10, 29:4

undisputed [1] - 6:16

undue [1] - 8:5

united [1] - 2:4

UNITED [2] - 1:1, 1:11

United [2] - 3:2, 44:22

unless [2] - 10:1, 38:21

unrelated [2] - 16:7, 19:22

up [12] - 8:15, 8:20, 12:22, 20:7, 20:9, 27:11, 27:12, 35:2, 39:11, 40:13, 43:25, 44:3

upfront [3] - 34:2, 34:20, 35:4

upload [1] - 35:14

uploaded [1] - 42:23

uploads [1] - 35:17

urgent [1] - 35:14

UTC [1] - 26:16

V

value [1] - 23:9

various [2] - 25:22,

31:17

vehicle [8] - 5:5, 14:16, 14:20, 14:21, 15:4, 15:5, 34:8

VELAZCO [2] - 2:3, 44:21

Velazco [1] - 44:20

versus [2] - 3:5, 22:3

Victory [1] - 20:11

voted [1] - 5:10

vs [1] - 1:6

W

waivable [1] - 10:23

waive [2] - 8:22, 8:24, 9:2

walk [1] - 12:21

wants [3] - 8:15, 8:17, 12:20

warnings [2] - 15:18, 15:22

waste [1] - 18:7

watching [2] - 15:7, 15:8

week [1] - 41:17

weekend [1] - 28:4

weeks [2] - 6:21, 32:8

welcome [3] - 28:3, 43:11, 43:12

wheel [7] - 15:9, 15:17, 15:19, 15:20, 15:23, 15:24, 16:1

WHITLEY [1] - 1:21

Whitley [1] - 3:11

wifi [1] - 35:12

willing [2] - 10:11, 39:16

winning [1] - 20:9

wish [3] - 3:19, 3:22, 30:6

withholding [2] - 40:18, 41:2

witness [10] - 3:22, 25:24, 26:4, 26:6, 27:15, 27:22, 28:7, 28:10, 28:19, 28:23

witness' [1] - 27:23

won [1] - 20:4

word [1] - 21:22

words [7] - 7:22, 8:16, 9:19, 9:24, 10:13, 15:21, 17:17

works [1] - 25:17

world [3] - 25:21, 25:23, 42:17

worry [3] - 12:20, 12:24, 20:5

worth [1] - 43:7

write [1] - 21:22

writing [1] - 42:1

written [2] - 9:1, 22:17

Y

year [4] - 14:19, 25:18, 32:23, 42:11

years [1] - 43:12

yesterday [1] - 34:14

yourself [1] - 19:6

Z

zero [1] - 39:22

zone [1] - 26:20