```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                      CASE NO. 1:21-cv-21940-BB
 3
     NEIMA BENAVIDES, as Personal
 4   Representative of the Estate of
     Naibel Benavides Leon, deceased,
 5
              Plaintiff,                     December 12, 2024
 6                                           10:02 a.m.
              vs.
 7
     TESLA, INC., a/k/a Tesla Florida, Inc.,
 8
              Defendant.                     Pages 1 THROUGH 33
 9   _____

10

11                    TRANSCRIPT OF STATUS CONFERENCE
                                via Zoom
12               BEFORE THE HONORABLE BETH BLOOM
                      UNITED STATES DISTRICT JUDGE

13   Appearances:

14   FOR THE PLAINTIFF:   POSES LAW GROUP, PA
                          TODD POSES, ESQ.
15                        169 East Flagler Street, Suite 1600
                          Miami, Florida 33131
16
                          EATON & WOLK, PL
17                        DOUGLAS F. EATON, ESQ.
                          2665 South Bayshore Drive, Suite 609
18                        Miami, Florida 33133

19                        THE ROUSSO BOUMEL LAW FIRM
                          ADAM T. BOUMEL, ESQ.
20                        9350 South Dixie Highway, Suite 1520
                          Miami, Florida 33156
21
                          SINGLETON SCHREIBER
22                        BRETT SCHREIBER, ESQ.
                          591 Camino De La Reina, Suite 1025
23                        San Diego, California 92108

24

25
```

```
 1    APPEARANCES CONTINUED:

 2    FOR THE DEFENDANT:    BOWMAN AND BROOKE, LLP
                            THOMAS P. BRANIGAN, ESQ.
 3                          101 West Big Beaver Road, Suite 1100
                            Troy, Michigan 48084
 4
                            BOWMAN AND BROOKE, LLP
 5                          WHITNEY V. CRUZ, ESQ.
                            Two Alhambra Plaza, Suite 800
 6                          Coral Gables, Florida 33134

 7                          BOWMAN AND BROOKE, LLP
                            JOEL H. SMITH, ESQ.
 8                          1441 Main Street, Suite 1200
                            Columbia, South Carolina 29201
 9

10    COURT REPORTER:       Yvette Hernandez
                            U.S. District Court
11                          400 North Miami Avenue, Room 10-2
                            Miami, Florida 33128
12                          yvette_hernandez@flsd.uscourts.gov

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           (Call to order of the Court, 10:02 a.m.)

2                THE COURT:  Hi.  Good morning.

3                MR. EATON:  Good morning, Your Honor.

4                MR. BOUMEL:  Good morning.

5                THE COURT:  Good morning.  Let's go ahead and call the

6      case and we can get started.

7                COURTROOM DEPUTY:  Calling Civil Case Number 21-21940,

8      Benavides v. Tesla, Inc.

9                Counsel, please state your appearances for the record,

10     beginning with Plaintiff's counsel.

11               MR. EATON:  On behalf of the Plaintiff, Doug Eaton,

12     Todd Poses, Brett Schreiber, and Adam Boumel.

13               THE COURT:  Good morning.

14               MR. SMITH:  Good morning --

15               MS. CRUZ:  On behalf -- go ahead, Joel.

16               MR. SMITH:  I see my video is off here.  Hold on.

17               Oh, thanks.

18               Your Honor, Joel Smith from the South Carolina Bar.

19     You've allowed me to participate in this from out of town, and

20     I appreciate that.  I understand it's a privilege, and we'll

21     try to comply with all things local.

22               THE COURT:  Mr. Smith, is there anyone else on behalf

23     of the Defendant?

24               MS. CRUZ:  Yes.  Whitney Cruz, Your Honor, on behalf

25     of Tesla.

1     THE COURT:  All right.  Good morning to each of you.

2     MR. BRANIGAN:  Your Honor, I'm sorry to interrupt you.

3  I'm not sure if you can hear me now.  It's Tom Branigan.  I'm

4  also here for the Tesla Corporation.  My audio was apparently

5  not functioning a moment ago.

6     THE COURT:  All right.  Thank you, Mr. Branigan.  We

7  can hear you now.

8     Good morning once again to each of you.

9     The Court originally scheduled this for a status

10 conference to discuss the securing of a jury panel for the

11 three-week special set trial that was to commence in March.

12 However -- and actually I have a letter that was prepared for

13 the jurors asking them about hardships and advising them of the

14 specific case that was going to be specially set.

15     Unfortunately, there's a wrinkle because the Court did

16 receive Docket Entry 285 under seal.  I've required that there

17 be an expedited response, and that issue would need to be

18 resolved.  And I don't believe that at this point it's

19 appropriate to send a letter out securing a jury for March when

20 some of the motions to be filed, including this one, may be

21 dispositive or may address certain issues that may cause,

22 unfortunately, a delay of this trial.

23     So with that said, I think it's appropriate to address

24 this motion.  It may or may not require an evidentiary hearing.

25 I will wait for the response.  I will be addressing it, as

```
 1   opposed to Magistrate Judge Torres, since the discovery period
 2   has already concluded.  And at this point, I think that it
 3   would be appropriate, following the disposition of this motion
 4   as well as any other motions that may determine the issues in
 5   this trial, to reconvene for purposes of a status conference to
 6   discuss securing a particular panel for the three-week period.
 7        And those are my thoughts.  What might yours be?
 8        MR. EATON:  Well, I'll let the Defense weigh in, Your
 9   Honor, because the motion obviously implicates their conduct,
10   and I'll give them a chance to speak first.
11        MR. SMITH:  And thank you for that.
12        Your Honor, this is Joel Smith.  And first of all, the
13   motion raises questions that require an explanation.  There is
14   no question about that.  They require an explanation to the
15   Court.  They require an explanation to Plaintiff's counsel.
16        And knowing that, and having worked diligently over
17   the past few days and week to understand what happened, I've
18   spoken to Mr. Schreiber a couple of times this week to let him
19   know what the status of our investigation of this is and what
20   we have learned.  I told him in those conversations that I felt
21   that the explanation that we have -- and that is a factual
22   explanation -- is not -- identifies a situation which is not
23   sanctionable.  I asked even that he withhold the motion until
24   we get all of the facts to him.  I was unpersuasive in that
25   respect.  But we intend to -- and I told him at the time we
```

1  intend to fully comply with the Court's order.

2          And Your Honor, I would like to -- if it's all right

3  with the Court, to provide some context for sort of the plan

4  going forward to give the Court a little bit of that -- sort of

5  an outline of that explanation of the facts.  I don't want to

6  get into too much detail because these are complex data-based

7  details, and I want to -- and I want to make sure that that is

8  provided to the Court with affidavits and appropriate

9  evidentiary support, which we intend to provide.

10         But if it's all right with the Court, I'd love to give

11  the Court just a moment of discussion on an explanation of what

12  we believe happened.

13         THE COURT:  Mr. Eaton or Mr. Poses, do you have any

14  objection to that?  I'm certain that you disagree with

15  Mr. Smith's statement that the actions are not sanctionable.

16  And that's, I suspect, why you filed this motion.  But is there

17  any objection to Mr. Smith giving an explanation on the record?

18         MR. EATON:  Your Honor, this is your hearing.  If

19  you're willing to listen to it, then I'm not going to object to

20  it.  Obviously we'll have a response to it.

21         THE COURT:  Well, I don't want this to be considered a

22  supplement to the response that the Court ordered to be filed

23  by December 13th, nor do I want this to encourage a

24  back-and-forth argument on the merits of the motion.

25         So to that extent, Mr. Smith, if you want to give a

1    limited response -- and let me also share with you that I

2    recognize, pursuant to this Court's order amending the

3    scheduling order, that there are certain dispositive deadline

4    dates, particularly January 20th, with the pretrial motions.

5    My concern, quite candidly, is with regard to whether, number

6    one, there will be required to be an evidentiary hearing.

7    Secondly, whether that may append many of the deadlines,

8    including the depositions of certain experts that the Court had

9    ordered.

10          MR. SMITH:  And Your Honor, I think giving the Court

11    this background is sort of to set the stage for coming up with

12    a plan to deal with that.  One of the things that I'm sure the

13    Plaintiffs will want is the opportunity to do some discovery,

14    to take some depositions of the people who are going to be

15    affiants to provide the information that we intend to provide

16    to the Court.

17          So let me just say, Your Honor, that there are four

18    pieces of information that are helpful to understand this as to

19    what happened.

20          First of all, we understand that computers use

21    language, inputs and outputs that are in binary data -- that is

22    in ones and zeros.  So what the first item is is the data, the

23    binary data in the car.  Okay?  And what happens, as the

24    Plaintiff's expert correctly stated, is that the snapshot

25    feature collects certain of that data into what he refers to as

1    a package.  I'm not sure that's what we refer to it as.  But

2    that's a fair description, a package.  That package is then

3    uploaded to Tesla and -- in binary form, in ones and zeros.

4    And then, it is deleted.  And Your Honor, I want to make clear

5    that "deleted" is a term that has many meanings in the data

6    world.  And what we thought it meant was something different

7    than what it is.  But it's deleted from the car.  The package

8    is deleted.

9         So that's item number one we need to understand, which

10    is the binary code -- I mean, I'm sorry -- binary data

11    collected by snapshot.  So you got binary snapshot data in the

12    car.

13         The second is, of course, that set of binary data that

14    is now transmitted to Tesla.  Okay?  That data goes to Tesla.

15    It goes to a specific location at Tesla, a location we know,

16    and a location that Plaintiff's expert knows it should be.  It

17    is binary code, unreadable by human beings.

18         So at the same time and automatically, there is a

19    trigger -- we'll just call it a trigger -- that -- which is

20    probably a piece of software, but a trigger that says:

21    "Process this data as it is received."  So what "processing"

22    means is I've got these different software functions that take

23    that binary data and convert it into a human readable form.  So

24    I've got now three sets of information, the binary data in the

25    car, the binary data that is transmitted, and the processed

1    snapshot data that is useful to human beings.

2           In the instant that the binary data is instructed to

3    be processed, that trigger also -- I believe this is the

4    correct way that this happens -- that trigger creates an index.

5    It inputs something into an index that says:  "This is that

6    data and this is where it is."

7           Your Honor, that's -- I've got a political science

8    major, not a computer science major.  So please accept that I

9    am explaining this in the best way that I can, and it will be

10   better explained by our expert -- by engineers who will provide

11   affidavits.

12          So when we -- so now you got four sets of data --

13   you've got four items, the binary code in the car, the binary

14   code that is transmitted, the processed data, and the index.

15   When this accident happened, and probably before the

16   litigation, we provided this information -- we were asked by

17   NHTSA for this information.  We looked for the binary data,

18   where it should be.  It was not there.  It is not there.  And

19   as far as we know -- we have a suspicion as to why, but we

20   haven't run that down yet.  It is not in that location.

21          We looked in the index to see if it had been -- which

22   was to tell us:  Has this been processed and is this processed

23   data somewhere that we can identify?  It's not in the index.

24   It wasn't in the index, and it hasn't been in the index.

25   Relying on those things, Your Honor, we have made multiple

1    representations to the Plaintiff, to the Court, to NHTSA, we

2    don't have the data.

3         So now we get back to the information in the car.

4    That information in the car, when we got it, we looked at it,

5    looked at the location where the snapshot data should have

6    been, and sure enough deleted, not there.  So when we are

7    dealing with our experts and our people after the downloaded

8    data had been gotten from the chip, we're telling everybody:

9    "Hey, there's nothing there.  When the Plaintiffs come out with

10   their new reports, there's going to be nothing there."

11        And then to -- and I've given Mr. Schreiber his fair

12   credit personally on the telephone about this -- they got an

13   expert who hacked into this and found the deleted data.  Now,

14   how does that happen?  The best explanation I've heard for it

15   is imagine that you have your camera and you're taking pictures

16   with your camera, and you have the little card that goes in --

17   the memory card that goes in your camera, and you delete those

18   pictures off of that card to reuse it.  Maybe you download them

19   on your laptop or whatever.  If there is not a photograph taken

20   again over that memory, that memory location, using special

21   tools, can be harvested and you can find that old photograph

22   that you have deleted.  And that's essentially what Mr. Dworkin

23   did here.  He was able to go and find what we thought was

24   deleted in a file that had not been written over -- wouldn't be

25   written over because the car was crashed.  Nothing was going to

1    happen to it.

2           So the information we got from him is:  "Oh.  Here's

3    the data," which is great information.  We're happy to have

4    more data.  Usually, more data is good for us, as it is here.

5    But what he also found was:  "Hey, there's an indication in

6    this data that it was sent and received."

7           So we went back.  And what we had to do to find what

8    we have found now is our engineers went and took off the shelf

9    old software that would have been used in 2019 to see if they

10   could find, using that software, a path that in 2019 would have

11   given an identifying marker to this information, to the

12   processed snapshot data, and would have told us the location

13   where that was routinely stored.

14          They found that metadata in that software that they

15   were able to use, went to that location, and found that we do

16   have the processed human readable format data.  We don't have

17   the binary code, we don't have the index, but by doing this

18   extraordinary sort of sleuthing by pulling off five-year-old

19   software to go back and look, we were able to say that's there.

20          So I told Mr. Schreiber Monday that we intend to

21   produce that.  We're working on that right now.  It takes a bit

22   of processing to get that kind of data in a position to

23   produce.  And Your Honor, I wished it had been produced by now,

24   but it just takes some time.

25          And what I'm telling the Court -- why I'm telling the

1   Court all this is because what we have always believed -- and I

2   tell you this, Your Honor, that the lawyers on this

3   telephone -- I mean this Zoom call believe this -- the lawyers

4   that we deal with at Tesla believed this, and the engineers --

5   the auto pilot engineers that we worked with on discovery, on

6   identifying and pulling this information, all believed we did

7   not have the data.

8          It wasn't until -- to his credit, Mr. Dworkin was able

9   to show that there had been something transmitted that we took

10  this extraordinary step and went back and looked and found the

11  information that is available, which will be produced as soon

12  as it is technically practicable to do that.

13         Your Honor, that explanation -- and Your Honor,

14  there's some questions that you have about:  "Well, why didn't

15  you know that this was on the chip?  And why doesn't Tesla have

16  information that would allow it to go to this chip in the car

17  and find it?"  And the reason for that is Tesla doesn't hack

18  its own -- and "hack" sounds like a derogatory term.  I'm using

19  that as a technical term, not as a derogatory term -- doesn't

20  hack its own vehicles.  And Mr. Dworkin has hacked a hundred of

21  them.  So he knew right -- what to look for and where to find

22  it, and credit to him.

23         But what I want the Court to understand in this

24  process is that our response will describe in more detail than

25  I just have how it turned out that we have represented to this

```
 1    Court multiple times we don't have data that we now find that
 2    we do have -- in a different format.  We don't have the data,
 3    the binary code, but we do have -- and Your Honor, there is one
 4    other thing that we're investigating but have not run to ground
 5    entirely.  There is historically an indication that there was a
 6    known outage of the system that was collecting this data
 7    between April the 11th and April 30th of 2019, which would have
 8    been the time that this was sent to us.
 9            And how that all figures into this about whether
10    that's the reason we don't have the binary code where it should
11    be, and where Plaintiff's expert indicated that it would be, is
12    something we're still investigating.
13            THE COURT:  Well, Mr. Smith, I certainly appreciate
14    this, quote/unquote, mea culpa, but certainly it raises a big
15    question as to what led to your word of sleuthing, where you
16    needed to investigate when you could not look on -- or within
17    your own files.  It appears that it was on Tesla's servers all
18    along, which leads to the Court looking at its order, which was
19    the reason why we had reset this case yet again -- is because
20    in the Court's order, Docket Entry 277, by November 11th, Tesla
21    was to download and produce all data from the subject vehicle's
22    MCU in a usable format, as well as the augmented video of the
23    incident in a format available on Tesla's website.
24            So to the extent that you are somewhat agreeing with
25    the Plaintiff that the Plaintiff has been prejudiced -- the
```

1    Plaintiff is seeking Rule 37 sanctions -- might I suggest that

2    before tomorrow when you file your response perhaps the parties

3    can confer and come to an agreement as to the best path

4    forward.  And that may include depositions, that may include

5    some expenses that of course would not appear to be

6    appropriately borne by the Plaintiff, and perhaps get this case

7    back on a track for trial.

8         Because it does appear that this 2021 case does need

9    to be tried.  And I'm here to try it, but with a three-week

10   period it will require a special set and it will require

11   everyone to be in a position to be ready to try the case

12   without any lingering issues, particularly with regard to

13   outstanding discovery that should have been provided.

14        MR. SMITH:  And Your Honor, I totally agree with what

15   you're saying.  That is somewhat of a mea culpa.  But I think

16   it's an understandable situation and within the -- and although

17   we had information that we did -- and I don't want to argue

18   this, Your Honor.  I'm sort of starting to argue it.  We don't

19   agree that the Plaintiffs were prejudiced in the merits of the

20   case.  The expense issue is certainly one that the Court has

21   properly raised.

22        But -- and Your Honor, the only thing that I would ask

23   is that given the fact that we are not going to be able to go

24   forward, and given the fact that this is a highly technical and

25   very important motion, giving us 48 hours to respond is not

1    going to allow us the opportunity to fully prepare the response

2    that we need to prepare.  I've given the Court the outline, but

3    this may even require an expert to say whether or not this is

4    something Tesla should have found, they should have known this.

5         And when the Court says:  "What triggered this

6    sleuthing," it was the fact that we now knew that there had

7    been a transmission that we got two weeks ago when the

8    Plaintiff's expert identified this.

9         Your Honor, I want to assure you that, once we got

10   this, we have been working night and day to try to uncover sort

11   of how this all happened.  And I don't want -- I don't -- in a

12   case where representations -- alleged misrepresentations about

13   the availability of data is the issue, I don't want to be in a

14   position where on 48 hours' notice I have to provide to the

15   Court substantive evidence on whether or not -- and that --

16   about misrepresentations.  I want to be in a position to

17   provide the Court with a full and accurate statement that

18   supports what I just said but in detail and totally accurate.

19        And what I propose, Your Honor -- and this is entirely

20   the Court's prerogative.  Don't -- I'm not trying to set a

21   schedule for the Court.  I don't want to be viewed as sort of

22   telling the Court what to do with the Court's schedule.  But we

23   would like to have two weeks, to the 27th -- and that excludes

24   the holidays, so it's really a shorter period of time than

25   that -- to provide a response because it will have affidavits,

1     et cetera, with it.

2          I think that from Mr. Schreiber's point of view he is

3     going to want some discovery on this, and that's totally fair.

4     We can set those -- we'll work toward setting the depositions

5     of the people who we identify as affiants so that he can have a

6     full opportunity to explore sort of the level of error that

7     occurred here or whether it was an appropriate understanding

8     of, you know -- no one -- Your Honor, we have produced

9     augmented videos in other cases.  No one would say to this

10    Court we don't have that information if we didn't have that

11    information, if we thought we had that information.

12         But we would -- the statements we have made to the

13    Court have been honest.  Even if they have been in error.  And

14    I think that is -- that goes directly to the issue of

15    sanctions.  So I want to be in a position to lay that all out,

16    to give the Court a full exposition of that, to have the

17    Plaintiff have the opportunity to ask questions about it, and

18    have the Court have the opportunity to fully understand

19    everything that we're saying.

20         I will do my best to do that in 48 hours, if that's

21    what the Court wants us to do, but I think this record and

22    this -- the Court's decision -- the gravity of the Court's

23    decision warrants giving us a little more time, if the Court

24    please.

25         THE COURT:  Thank you, Mr. Smith.

1      Mr. Eaton?

2      MR. EATON:  Yes, Your Honor.

3      Well, for the starting point, they've already had 10

4  days since we filed -- since we provided them with our expert

5  report, which put them on notice that we had the data.  So I

6  don't want the Court to think this -- you know, this just

7  happened yesterday.

8      The stuff that we attached to our motion was provided

9  to them in an expert report.  We did not file it because we did

10  file a notice saying that we were doing that.  So they've

11  already had 10 days.  We would object to additional time on

12  that, but of course we'll defer to the Court on that.

13      I do think that, you know, what we're asking for here,

14  the ultimate sanction of a default judgment -- I do think that,

15  you know, in order for us to keep that, if the Court is

16  inclined to grant those kinds of sanctions, I think they're

17  entitled to an evidentiary hearing on the issue.  So I'm not

18  going to oppose that.  I would hate it to go up to the Eleventh

19  Circuit, and say:  "No.  You opposed that, and they needed an

20  evidentiary hearing."

21      So to the point that they're going to produce

22  affiants, then I think at that point we're entitled to take

23  their depositions.  It's unfortunate.  But, you know, this is a

24  very, very serious matter.  I'm not going to preview a response

25  to what Mr. Smith said, but I can tell you that I disagree with

1    a lot of what he said, and I think we can establish that

2    Tesla's had this data all along, and they knew it, and they

3    could have provided it to us, and they have engaged in a scheme

4    to hide it from us.  And I believe -- I don't think anything

5    Mr. Smith just said changes my opinion on that.

6         So there are a couple things that I would say as we're

7    here today that as a starting point that we would want from

8    Tesla.  The first of which is they've admitted that they have

9    the snapshot.  We want the snapshot that they received -- the

10   entire snapshot file, so that our experts can review that.  I

11   think we should be provided that immediately.

12        Second, Mr. Smith said they're going to comply with

13   the Court order, so they should comply with that.  They're well

14   laid -- again, they've had 10 days.  They could have provided

15   the data.  They could have provided their augmented video by

16   this point.  They need to do that immediately.

17        They had asked potentially deposing the programmer

18   that obtained this -- that helped us obtain the data.  That's

19   unnecessary.  They've admitted that he found their data.  It is

20   their data.  It doesn't matter how he got to it.  It's theirs.

21   They've admitted that.  So we don't need to go down that

22   road -- admit that is their data, we found it, it's accurate,

23   and we're not having a fight over, you know, this data anymore.

24   We have it.  It's accurate.

25        And then there is an individual that may not be an

1    affiant in their response that we're going to want to depose,

2    which is the person that participated in the download, the

3    download with the FHP.  Because at that point, you know, they

4    were supposed to be giving this information to the FHP.  We

5    want to find out what happened there.

6         So these are things that -- you know, just off the top

7    of my head that, you know, given Mr. Smith's admission, that I

8    think we want immediately.

9         THE COURT:  All right.  Mr. Smith, are you agreeable

10   that the Plaintiff should be immediately entitled to the entire

11   snapshot of the augmented video?

12        MR. SMITH:  Your Honor, I've already promised that to

13   Mr. Schreiber.  I promised him that on Monday.  And that's

14   what's taken a minute for us to get processed and get out.  I

15   think I should be able to get that by early next week and

16   produce it by the end of next week.

17        You know, if this was paper I could tell the Court how

18   quickly I could get it to the Plaintiff, but it takes some

19   processing and some gathering.  So we spoke to someone

20   yesterday about that to try to get it as soon as possible, and

21   they're -- every effort is being made to do that.  I think I

22   can get it to him by the end of next week.

23        And Your Honor -- go ahead.

24        THE COURT:  Let me set parameters and some deadlines

25   so that we can all work within the schedule, given the holidays

1  and given the circumstances.

2          By December 20th, the Defendant shall provide the

3  entire snapshot of the augmented video to the Plaintiff.  That

4  is the first and foremost.

5          Secondly --

6          MR. EATON:  Your Honor, to be clear, I want to be

7  precise about this, because there is -- the snapshot that I am

8  referring to is the upload that Tesla received in April of

9  2019, that they claim they just found.  So that's one thing.

10         The augmented video is something that Tesla creates

11  from that data.  So they're two separate items.  So I just

12  wanted to let the Court know.

13         THE COURT:  You want both?  What is it precisely --

14         MR. EATON:  So the Court ordered Tesla to produce the

15  data that was downloaded off of the MCU, which we got a copy as

16  well, but we wanted -- you know, Tesla was supposed to produce

17  it to us as well, and they said:  "Hey, we didn't find

18  anything."  Well, we did, and we want them to produce what they

19  found.  And then, from that data, they were required to create

20  the augmented video.  So those are the -- that's complying with

21  the Court order.  They have to do that.  They said they will do

22  that.

23         In addition to that, they now say:  "Okay.  We have

24  the snapshot file."  It's like a -- is the Court familiar with

25  a zip file --

1          THE COURT:  Yes, I am.

2          MR. EATON:  -- on a computer?

3          Yes.  It's like that.  It's a folder that packages all

4     this data into one thing, and it's transmitted.  They say they

5     have that now.  We want that.

6          THE COURT:  All right.  The entire snapshot file -- so

7     that's been accurately defined -- by December 20th.

8          Secondly --

9          MR. SMITH:  Your Honor, I just want to make sure we're

10    clear on this record.  We do not have the entire snapshot file

11    that came in binary code to us.  We have found the entire

12    snapshot file in -- as it is processed and provided to us in

13    human readable format.  Whatever is converted to human readable

14    format, we have that.

15         We do not have -- and I want to make it clear -- we

16    have not found that transmittal of binary code.

17         Secondly, I want to make it clear that what we got out

18    of the car is binary code.  That binary code has to be

19    processed through this automatic function in order to make it

20    useful to create these augmented videos.  We do not have that

21    function within Tesla to take the binary code that -- off of a

22    chip and create that data.  We can possibly take the data in

23    the processed data that we have and create an augmented video.

24         We can't -- the only thing I'm talking about here is

25    the difference in the source.  We can't do it from -- or I'm

1  told we can't do it from the binary code that we received from

2  the download, as their expert -- or as their processer has

3  done.  We don't have the tools to do that, because it's done

4  automatically when it comes to us.

5        So -- and Mr. Eaton, I think, wants augmented videos.

6  No matter what the source is -- they want Tesla-generated

7  augmented videos no matter what the source is.  The creation of

8  Tesla-augmented videos also has another wrinkle that takes some

9  more time, and I want to explain that to the Court.  But in

10  terms of the data that we have, we have produced to them the

11  data that we got from the download.  We have -- but there is --

12  and if all of that hadn't been produced, I don't know why, but

13  that's not an issue.  We'll -- anything that we've gotten from

14  the download we'll produce.

15        THE COURT:  Specifically, Mr. Smith, what you're

16  telling the Court is that the additional time you've requested

17  by December 20th is to include the entire snapshot file in

18  human readable format?

19        MR. SMITH:  Yes, Your Honor.  Whatever we have on the

20  server that is that processed data set, we owe the Plaintiff.

21        THE COURT:  Mr. Eaton, is that acceptable?

22        MR. SMITH:  That's all we have.

23        MR. EATON:  Well -- and Mr. Smith, correct me if I'm

24  wrong, but what I heard you say earlier -- and maybe I

25  misunderstood it -- was that you said that -- saw a

1    transmittal, and then you went back and looked, and you found

2    that, in fact, there was a transmittal.

3              MR. SMITH:  No.  No.  No.  I'm sorry.  I'm sorry.

4              We -- what made us go back and do the additional

5    sleuthing was that we saw your expert's -- the Plaintiff's

6    expert's indication of transmittal in the data from the

7    vehicle.  So we're thinking if there's this there why aren't we

8    seeing it where it's supposed to be and where he says it would

9    be.

10             So it's still not where he -- it's still not -- the

11   binary code is still not there and where he says it would be.

12   It's still not in the index.  We did this additional homework

13   of going back to the dated software to try to trace where

14   processed data might have been, and we found the processed

15   data.  So the processed data is there.  There are no augmented

16   videos made in that processed data that we know of.  But --

17             MR. EATON:  I understand --

18             MR. SMITH:  Okay.

19             MR. EATON:  I understand the latter part.  You have to

20   make the augmented videos.  It's not created automatically.  I

21   get that.

22             But what I'm still unclear on is you're saying --

23   where are you saying you went back and looked for that data, in

24   the recent download or in what Tesla has had since 2019?

25             MR. SMITH:  So Your Honor, just to be clear -- and I

1   don't mean to have a conversation with counsel, but I do want

2   to answer his questions.

3          THE COURT:  I think it needs to be defined

4   specifically as to what is going to be produced by

5   December 20th.

6          MR. SMITH:  Your Honor, I think that what we should

7   say is that we are going to provide the processed snapshot data

8   that we located just this week.  And --

9          MR. EATON:  Located where, Mr. Smith?

10          MR. SMITH:  Well, you know, you're going to have to

11   see the affidavit of an expert.

12          MR. EATON:  It's important.

13          MR. SMITH:  It is.

14          MR. EATON:  It's important.  Is it in Tesla's

15   servers --

16          MR. SMITH:  Oh, yes.  Oh, yes.

17          MR. EATON:  -- or is it from the download from the MCU

18   that we just got on October 30th?

19          MR. SMITH:  No.  It's in Tesla's -- it was there all

20   along, and that's --

21          MR. EATON:  Okay.

22          MR. SMITH:  And I just want to make sure we're

23   understanding what those four parts are and why we would not

24   have known it was where it was.  We had to go back and search

25   the prior used software to establish a path to find where it

1   is.

2          But we have -- and just to be clear -- not been able

3   to use anything from the download, either the information your

4   expert got or the download that we got, because it's in binary

5   code and we don't have a system to convert that other than the

6   automatic system when it is downloaded to us.  And as far as we

7   know, we can't input it into that.

8          So -- and Mr. Eaton, I want to make sure that today

9   you have any questions you have answered.  You can pick up the

10  phone and call me.  I'm glad to give you whatever information I

11  can.  And I'm glad to include in the inquiry that we have with

12  our internal people now specific questions you might have so

13  that we can advance this process as best we can.  Okay?

14      MR. EATON:  I understand.  I just want it to be clear

15  what the Court is ordering today.

16          So I'll let the Court continue, but my understanding

17  is that you will be producing the snapshot data that Tesla has

18  had since 2019, and you'll be creating the augmented video from

19  that data and not the download data.

20      MR. SMITH:  So the augmented video is something --

21  Your Honor, I just want to be clear on this.  It's something

22  that we do not do anymore.  There is software that was used to

23  do that that is not active anymore.  What that will take to do,

24  and the timing of that, is an issue that I think we need to get

25  a little more information on before the Court sets a schedule

```
 1    for that production.  We've been told that it could take as
 2    much as a hundred hours of engineering time to reconstitute the
 3    software to create that video.  And that's all -- I'm just
 4    telling what I've been told.
 5          MR. EATON:  Yeah.
 6          MR. SMITH:  So I'm -- we've produced that in other
 7    cases.  We're not avoiding producing it.  It's just it may take
 8    some time to get that uploaded and together.  We did not have
 9    until recently an understanding that we had the materials to
10    process -- to do that work.  So it will take a bit of time to
11    figure out what we have to do there, Your Honor.
12          MR. EATON:  Your Honor, I just want to say one
13    more thing and then I'll let you issue your ruling.
14          THE COURT:  My ruling is going to be precisely what
15    the Plaintiffs are seeking to have finally produced to them,
16    based on Mr. Smith's admission that the Defendants did their
17    own sleuthing and found precisely what the Plaintiff should
18    have received originally.
19          MR. EATON:  I will say that it took our consultant
20    four days from receiving this data to create the augmented
21    video.  And this -- Tesla, I think, had this software for
22    years.  They've used it -- I sent you two Court orders, so
23    they've been told to produce this.  It's their software.  And
24    for them to say:  "Oh, we don't have it any more," then that's
25    spoliation.  They destroyed their own capacity to create this
```

```
 1    video.  That's intentional.  So I don't even --

 2              THE COURT:  I don't want to make -- have argument with

 3    regard to the merits of your --

 4              MR. EATON:  I just want to point out --

 5              THE COURT:  I just want to make sure that Mr. Smith

 6    and the Court have a precise definition of what is to be

 7    produced by December 20th.

 8              MR. SMITH:  Yes, Your Honor.  And I'm very clear on

 9    what the Court has said, which is the processed data that we

10    were able to find.  We, of course, aren't able to produce

11    anything we haven't found, so we can't produce the transmitted

12    data.

13              THE COURT:  All right.

14              MR. SMITH:  The -- I would ask the Court to give us a

15    few days to figure out what we can do and how long it would

16    take to create the augmented video, and I would be glad to

17    provide an affidavit for what that is.

18              And nothing has been spoliated.  Just sort of in the

19    ordinary course, we stopped using this software.  It's on the

20    shelf.  So, you know, the question is what would it take to

21    reconstitute that, and the timing for that is the issue.

22              THE COURT:  All right.  So let's be clear.

23    December 20th, the processed data that Tesla was able to find.

24              The second requirement is the parties confer, so,

25    Mr. Eaton, you can make a determination as to what affiants are
```

1    going to be -- or what affidavits are going to be included in

2    Tesla's response, to the extent that you would like to take

3    those depositions for the Court costs to be borne by Tesla.

4    And Tesla's response to the motion shall be on December 27th,

5    with the reply by the Plaintiffs by January 6th.

6         Following the receipt of the briefings, the Court will

7    enter an order to the extent that it believes an evidentiary

8    hearing is necessary.

9         I would like to schedule at some point, whether it's

10   late December, early February, a special set of this trial.

11   I'm going to keep the dates that are set forth in the Court's

12   amended scheduling order, ECF 127, unless the parties tell me

13   that you are not able to comply with those dates.  And that

14   specifically is January 20th for the pretrial motions.

15        With regard to the Joint Pretrial Stipulation, I

16   believe that we should confer before that time, so that we can

17   come to terms with a realistic trial date and how many days are

18   needed so that we can order a special panel to the extent that

19   we need it.

20        MR. SMITH:  Your Honor, one last thing on scheduling.

21   We have depositions of Plaintiff's experts on this data and

22   what they've found.  We do not have the data that the

23   Plaintiffs have -- that Mr. Dworkin has used.  We don't have

24   the human readable format, other than what he's provided in his

25   affidavit.  We don't have the ability to convert that from

1    the -- withdrawn from the chip into human readable format.

2           So our experts have not been able to see any more of

3    what we have than the Plaintiffs have, and we are set to take

4    depositions of their experts kind of blindly.  And we set

5    those -- we had one set yesterday and one set tomorrow.  We set

6    them both for -- we moved the one set for yesterday to tomorrow

7    so that we could have this hearing and see if there was an

8    opportunity to move those.  We would like to be able to take

9    those after we've seen -- we, the lawyers, and our own outside

10   experts have not seen the data.

11          I realize that is no fault of Mr. Eaton and

12   Mr. Schreiber, but we do need to be able to take competent

13   depositions of their experts, and we're not prepared to do

14   that.

15          THE COURT:  Mr. Smith, this is not an opportunity for

16   Tesla to seek additional discovery, so that request is denied.

17          As I stated, the Court will adhere to its order,

18   Docket Entry 277, with regard to the experts and the

19   disclosure, as well as the discovery.  All right.

20          Is there anything further?

21          MR. SMITH:  Your Honor, I just want to clarify what I

22   just said.  I was not asking for additional discovery.  You

23   ordered that we could take their depositions.  Right?  I was

24   only asking to extend deadline.  I was not asking for

25   additional discovery.

```
 1            THE COURT:  And again, all depositions of the
 2    Plaintiff's experts must be completed by tomorrow,
 3    December 13th.
 4            MR. SMITH:  Understood.  Thank you, Your Honor.
 5            THE COURT:  Is there anything further?
 6            MR. EATON:  Yes, Your Honor.
 7            One thing I would like them to address then -- again,
 8    they have a file, and now they're talking about processing the
 9    file.  Apparently -- I mean, we can obviously do more with our
10    data than they can.  Apparently -- I don't understand why they
11    can't send us that file today and let us work with it.  If they
12    want to process it some more, send it to us again on the 20th.
13    But what I don't want is for them to use 18 days to do
14    something to the data.
15            MR. SMITH:  Why don't we set an interim time for
16    production, Your Honor, that -- not -- I don't need the time
17    for -- I don't need till the 20th to produce the data.  I mean,
18    I think I can get it produced next week.
19            MR. EATON:  Again, I don't understand why.  If they
20    have it, it's a file --
21            THE COURT:  Mr. Smith, you asked until the end of next
22    week.  The end of next week is December 20th.  If you believe
23    that you can produce that before December 20th, then that's
24    fine.  But I want to ensure that before the Court proceeds with
25    records to the merits of the Rule 37 sanctions motion that we
```

1   have an understanding as to what has been produced, and what

2   Tesla either has or does not have, and when you had it.

3        So at this point that's the Court's order with regard

4   to the deadlines and with regard to the production of the

5   information.

6        MR. SMITH:  And we'll get it to Mr. Eaton as soon as

7   possible before that deadline.  We won't wait until the

8   deadline to get it to him if we can get it sooner.

9        THE COURT:  All right.  By December 20th.

10        MR. SMITH:  Yes, Your Honor.

11        THE COURT:  Happy Holidays to each of you.

12        MR. SMITH:  Thank you very much.

13        THE COURT:  And we'll enter an order with regard to

14   the briefing schedule.

15        MR. EATON:  One other thing -- I'm sorry to -- you

16   know, because I did ask -- we -- their request to depose the

17   consultant about the download, that has been denied.  Tesla

18   will be admitting that the data that we have is, in fact,

19   Tesla's data and we're not going to be having any contest

20   regarding that.

21        MR. SMITH:  Your Honor, it is true that what we are --

22   what Mr. Eaton said is true.  What we need to depose the --

23   what we have to do is look at the data that we have, compare

24   that to what data was produced in augmented videos by their

25   expert.

1          If there are discrepancies, we will want to explore

2     those discrepancies -- and maybe they won't be.  I just don't

3     want to -- I think it's important that we're able to at some

4     point ask the Court and Plaintiffs for Mr. Dworkin's

5     deposition.  And there are reasons other than that, other than

6     the fact that the -- we have an admission that data is ours and

7     the data is -- and that we had it in a different format in a

8     different location.

9          THE COURT:  The Court's deadlines remain as they are

10    in the Court's order.

11         Have a nice holiday to everyone.

12         MR. SMITH:  Thank you, Your Honor.

13         MR. EATON:  Thank you, Your Honor.

14      (Proceedings concluded at 10:57 a.m.)

1    UNITED STATES OF AMERICA      )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                     C E R T I F I C A T E

5          I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at,

8    and reported in machine shorthand, the proceedings had the 12th

9    day of December, 2024, in the above-mentioned court; and that

10   the foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12         I further certify that this transcript contains pages

13   1 - 33.

14         IN WITNESS WHEREOF, I have hereunto set my hand at

15   Miami, Florida, this 20th day of December, 2024.

16

17                      /s/Yvette Hernandez
                        Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
18                      400 North Miami Avenue, 10-2
                        Miami, Florida 33128
19                      (305) 523-5698
                        yvette_hernandez@flsd.uscourts.gov
20

21

22

23

24

25