**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-21940-BLOOM/Otazo-Reyes**

NEIMA BENAVIDES, *as Personal Representative of the Estate of Naibel Benavides Leon, deceased*,

  Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

  Defendant.

_____/

**Case No. 22-cv-22607-BLOOM**

DILLON ANGULO,

  Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

  Defendants.

_____/

**PLAINTIFF'S MOTION IN LIMINE**
**TO EXCLUDE IMPROPER CHARACTER EVIDENCE**

  Plaintiffs, by and through undersigned counsel, file this motion in limine to limit the scope of the evidence or arguments relating to the character evidence and prior bad acts by Dillon Angulo.

  Generally, evidence of prior bad acts – i.e. "other crimes, wrongs or acts" – may be introduced <u>only</u> in limited circumstances and <u>only</u> then to prove a material fact in issue.  Fla. Evid.

1

Code § 90.404(2). Such material facts include proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. The rules curtail the use of unrelated prior bad act evidence because it "tends to distract the trier of fact from the primary issues of the case." Eleaszer and Weissenberger, FLORIDA EVIDENCE, 1999 ed., at 170.

Even otherwise admissible prior bad acts or character evidence is subject to the dictates of Rule 403, which precludes admission of even relevant evidence whose probative value is substantially outweighed by its unfairly prejudicial effect. *Perper v. Edell*, 44 So. 2d 78, 80 (Fla. 1949); Fla. Stat. § 90.401-403. Where evidence is unfairly prejudicial, tends to mislead jurors, or confuse the issues, the Court should exclude it notwithstanding relevance. Fla. Evid. Code § 90.403.

Plaintiff contends that Angulo suffered a traumatic brain injury in this accident that has resulted in changes to his personality, depression and PTSD. The Defendant sent Angulo to a compulsory medical exam with its retained neuropsychologist, Barry Crown. Dr. Crown opines that Angulo's "personality and behavioral findings are self-reported and pre-exist the accident and treatments in question." (See Exhibit 1 – Dr. Crown's CME report, at 11) He bases this opinion, in part, on the fact that Angulo previously used recreational drugs. We acknowledge that this history may therefore be relevant to Dr. Crown's opinions, but there are a number of details that Dr. Crown obtained from Rehabilitation facility records that are highly prejudicial and unnecessary to expose to the jury in order for him to provide his opinion. We would ask the Court to limit the disclosure of the facts that support Dr. Crown's opinion to only those necessary to support the opinion, and prevent the jury from being exposed to the most prejudicial and prurient details.

Angulo developed a drug addiction in high school, and gradually began using more substances, including marijuana, cocaine and crack cocaine. Then, approximately one year prior

to this incident, Angulo voluntarily checked himself in – on his own accord – to an inpatient drug rehabilitation program. The unrefuted facts establish that following his admission to this rehab facility, Angulo has never used any illicit substances ever again. Indeed, it is unrefuted that even after his discharge from the hospital following this crash, when he was completely wheelchair bound, had an external fixator, and was in horrible physical pain, not only did Angulo remain clean and not relapse, but he even refused to take any medication (such as narcotic pain medication) which could have led to a relapse.

Dr. Crown's Report contains the following details of his medical history:

> On December 15, 2014, Mr. Angulo was seen in the emergency room of Baptist Hospital after having a seizure at a workplace. He was transported by ambulance. Medical records indicate that he had been taking one to two 2mg Xanax (alprazolam) tablets a day and had abruptly stopped two days prior to the seizure. Medical screening was positive for cannabis and benzodiazepines.
>
> In June of 2018, Mr. Angulo voluntarily entered a program for substance abuse and addiction at the Beachcomber Center in South Florida. He tested positive for cannabis, benzodiazepines, and cocaine. He was taking 2 to 4 milligrams of Xanax (alprazolam) per day and using cocaine in powder and crack form. He also complained of and was treated for depression. He was prescribed Wellbutrin for depression. Issues of sex addiction and love addiction emerged during treatment. When challenged in group counseling, he left the program against medical and clinical advice. His primary therapist noted that he was at high risk for relapse.

(Exhibit 1, at 6)

Dr. Crown refers to this drug use in support of his opinion that Angulo's personality and behavioral findings pre-exist the accident, stating:

> Antisocial behavior, alcoholism, or drug problems would not be inconsistent with this clinical picture.
> . . .
> His overall profile is consistent with individuals who are likely to abuse drugs, legal or street substances, or both. Irritable, negative, and hostile, he may employ drugs not only to help him unwind his tensions and undo his conflicts but also to serve as a statement of resentful independence from constraints of social convention.

While Dr. Crown may point to the fact that Angulo used drugs for a lengthy period of time as evidence to support his opinion regarding the pre-existing nature of Angulo's condition, it is patently unnecessary to go into the type of and amount of drugs that Angulo took; the fact that he reported a love or sex addiction; the fact that he suffered a seizure as a result of benzodiazepine withdrawal; or the fact that left Rehabilitation against medical advice are all prejudicial and lack any probative value.[1] Dr. Crown does not point to any factor other than the past drug use as the basis for his opinion. The only purpose for placing the tawdry details before the jury would be to prejudice the jury against Angulo.

The same reasoning applies to a number of other opinions in Dr. Crown's report. Specifically, Dr. Crown goes out of his way to make Angulo sound like a sociopath:

> Notable may be tendencies to intimidate and exploit others and to expect special recognition and consideration without assuming reciprocal responsibility. Actions are likely to be present that raise questions about personal integrity, such as a ruthless indifference to the rights of others. These may indicate a pervasively deficient social conscience, a disdain of traditional ideals, and a contemptuousness of conventional values.
> . . .
> Antisocial behavior, alcoholism, or drug problems would not be inconsistent with this clinical picture. When his life is under control, he may be skillful in exploiting the goodwill of others. More characteristically, he will be envious of others and wary of their motives.
> . . .
> Deficient in deep feelings of loyalty and displaying an occasional indifference to truth, he may successfully scheme beneath his veneer of civility.
> . . .
> There are further indicators of borderline personality disorder with antisocial and sadistic features.

---

[1] It is undisputed that leaving rehabilitation after nine months did not cause Angulo any harm. For a patient's failure to obtain treatment to be relevant, there must be a showing that their failure caused them harm. *See Vidal v. Macksoud*, 933 So. 2d 659, 662 (Fla. 3d DCA 2006) ("There was no evidence of a causal link between any missed appointment and Vidal's resulting injuries.") It is further undisputed that the reason for the facility's concern, the potential for relapse, was never realized. Angulo has not used drugs since leaving Rehab in 2018, including refusing narcotics during his physical rehabilitation after this accident.

(Exhibit 1, at 10-11) None of these opinions are necessary to establish Dr. Crown's ultimate opinion that Angulo's personality and behavioral findings pre-existed the accident. Further there is no documentation that prior to the accident, Angulo was diagnosed with borderline personality disorder, sadism, or other antisocial behavior described in Dr. Crown's report. Nor does Angulo complain that he is manifesting the type of behavior Dr. Crown describes here. Quite simply, Dr. Crown does not need to describe what he alleges is Angulo's personality in order to offer the opinion that Angulo's personality was not changed as a result of the accident. Again, the only purpose for placing these descriptions of Angulo's personality before the jury would be to prejudice the jury against Angulo.

Defendant will be unable to demonstrate that it is necessary to share any of the evidence referenced above in order for Dr. Crown to offer his opinions in this case. The Court should therefore limit reference to these sensitive topics to only the bare minimum needed to explain the basis for Dr. Crown's opinions and nothing more.

WHEREFORE, Plaintiff respectfully requests this Court enter an order in limine providing the relief requested above.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 27th day of January, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notices of electronic submission to all parties on the attached service list.

                                      THE ROUSSO, BOUMEL LAW FIRM, PLLC.
                                      9350 South Dixie Highway
                                      Suite 1520
                                      Miami, Florida 33156
                                      (305) 670-6669

                      By:      **/s/ *Adam T. Boumel, Esq.***
                                        Adam T. Boumel, Esq.
                                        Florida Bar No.: 0110727
                                        Direct email:
                                        adam@roussolawfirm.com
                                        Service emails:
                                        Pleadings@roussolawfirm.com
                                        haiyang@roussolawfirm.com

## SERVICE LIST

| | |
|---|---|
| **Bowman and Brooke LLP**<br>41000 Woodward Ave., Suite 200E<br>Bloomfield Hills, Michigan 48304<br>**Attn: Joel Smith Esq.**<br>**Attn:Thomas P. Branigan, Esq.**<br>**Attn: Whitney Cruz, Esq.**<br>**Attn: Drew P. Branigan, Esq.**<br>**Attn: Wendy F. Lumish, Esq.**<br>Joel.smith@bowmanandbrooke.com<br>thomas.branigan@bowmanandbrooke.com<br>whitney.cruz@bowmanandbrooke.com<br>drew.branigan@bowmanandbrooke.com<br>Wendy.Lumish@bowmanandbrooke.com<br>*Counsel for Defendant* | **Singleton Schreiber, LLP**<br>591 Camino de la Reina, Suite 1025<br>San Diego, CA 92108<br>Tel: (619) 771-3473<br>**Attn: Brett J. Schreiber, Esq.**<br>bschreiber@singletonschreiber.com<br>bschreiber@singletonschreiber.com<br>vas@singletonschreiber.com<br>cbirnbaum@singletonschreiber.com<br>eelms@singletonschreiber.com<br>*Counsel for Plaintiffs* |
| **Poses & Poses, P.A.**<br>169 East Flagler Street, Suite 1600<br>Miami, Florida 33156<br>**Attn: Todd Poses, Esq.**<br>tposes@posesandposes.com<br>Maria@posesandposes.com<br>*Counsel for Plaintiffs* | **Eaton & Wolk PL**<br>2665 South Bayshore Dr., Suite 609<br>Miami, FL 33133<br>**Attn: Doug Eaton, Esq.**<br>deaton@eatonwolk.com<br>*Counsel for Plaintiffs* |