## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal Representative
of the Estate of Naibel Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

      Defendant.

_____/

DILLON ANGULO,                           Case No. 22-22607-KMM

      Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

      Defendant.

_____/

## TESLA, INC.'S MOTION *IN LIMINE* AND MEMORANDUM OF LAW IN SUPPORT

Respectfully submitted,

**JOEL SMITH**
(*Admitted Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel. 803-726-7420 / Fax: 803-726-7421
joel.smith@bowmanandbrooke.com

**WHITNEY V. CRUZ**
Florida Bar No. 800821
**WENDY F. LUMISH**
Florida Bar No. 334332
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com
wendy.lumish@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com
*Attorneys for Defendant Tesla, Inc.*

## <u>TABLE OF CONTENTS</u>

**FACTUAL OVERVIEW**......................................................................................1

    **A.**    Tesla's Advanced Driver Assistance Features.....................................1

    **B.**    The Crash ...........................................................................................1

MOTIONS IN LIMINE .......................................................................................3

**I.**    **REFERENCES TO OTHER INCIDENTS** ................................................3

    **A.**    Anecdotal Evidence Of Other Incidents Does Not Tend To Prove A Defect ...............................................................................................4

    **B.**    Even If There Was Some Predicate To Establish Relevancy, Plaintiffs Cannot Demonstrate Substantial Similarity To Other Accidents or Claims........4

    **C.**    Evidence of Other Accidents is Inadmissible Because the Circumstances of Those Accidents Have Not Been "Established"................................6

    **D.**    Evidence Of Other Incidents Or Complaints Is Inadmissible Hearsay................7

    **E.**    Evidence Concerning Other Incidents Or Alleged Defects Will Be Unfairly Prejudicial And Cause Confusion And Undue Delay .........................8

**II.**    **REFERENCES TO SUBSEQUENT REMEDIAL MEASURES/RECALL ............9**

**III.**    **REFERENCES TO GOVERNMENT INVESTIGATIONS .......................11**

**IV.**    **REFERENCES TO THIRD PARTY REPORTS CONCERNING THE FUNCTIONING, MALFUNCTIONS, OR MISUSE OF AUTOPILOT .................12**

**V.**    **REFERENCES TO MR. MUSK'S PUBLIC STATEMENTS REGARDING FULL SELF DRIVING (FSD) CAPABILITY ................................................13**

**VI.**    **USE OF INCORRECT AND MISLEADING TERMINOLOGY AND REFERENCES TO EVIDENCE CONCERNING MATERIALS RELATED TO FUTURE PRODUCTS ......................................................................14**

**VII.**    **REFERENCES TO PROMOTIONAL VIDEOS ................................14**

**VIII.**    **TESTIMONY FROM ROBERT SUMWALT ....................................15**

    **A.**    Sumwalt's Testimony Is Prohibited By Federal Law ..........................15

    **B.**    Sumwalt's Testimony About Investigations Into Other Incidents Is Inadmissible ......................................................................................18

**C.**     Sumwalt Was Not Properly Disclosed As An Expert ............................................ 18

**D.**     Any Claimed Relevance Is Outweighed By The Danger Of Unfair Prejudice. ......................................................................................................... 18

**IX.**   **MEDICAL BILLS** ...................................................................................................**18**

**X.**    **ARGUMENTS RELATED TO PUNITIVE DAMAGES** ........................................**19**

**A.**     Preclude Comments Related to Out of State Conduct ............................................ 19

**B.**     Admissible Evidence as to Amount of Punitive Damages .................................... 20

REQUEST FOR HEARING .................................................................................................... 21

CERTIFICATE OF GOOD FAITH COMPLIANCE ............................................................. 21

CERTIFICATE OF SERVICE ............................................................................................... 22

Defendant, Tesla, Inc., moves in limine to exclude certain evidence it anticipates will be offered at trial.

## FACTUAL OVERVIEW

### A.    Tesla's Advanced Driver Assistance Features

The 2019 Tesla Model S was configured with a suite of advanced driver *assistance* features. These features, which Tesla calls "Autopilot," include (a) Traffic-Aware Cruise Control (TACC), which is an adaptive cruise control system that helps drivers maintain a safe distance behind a detected vehicle in the same lane; and (b) Autosteer, which is lane-centering. (ECF 318-10 at 80). The vehicle also had Forward Collision Warning and Automatic Emergency Braking systems for active safety. (*Id.* at 102).

There are 6 levels of driving automation as defined by the Society of Automotive Engineers. Autopilot is a Level 2 Advanced Driver Assistance Systems (ADAS), requiring the driver to remain in control of the vehicle at all times. Autopilot does not make the Model S a "self-driving car," or "autonomous," and does not replace the driver. The driver must still brake, accelerate, and steer when appropriate just as if the system is not engaged, and the driver retains responsibility to keep his hands on the wheel and his eyes on the road at all times after deciding to engage the system. *See* https://www.sae.org/blog/sae-j3016-update. Autopilot reminds drivers of these obligations via on-screen pop-ups and in the digital Owner's Manual available in the center touchscreen. (*See* ECF 318-10 at 80, 82, 84, 86-87, 89-90, 92, 102-104). Plaintiffs' expert, Moore, agreed that with a Level 2 vehicle, like the Model S, "the operator of the vehicle is in control of the vehicle and responsible for what occurs in the vehicle." (ECF 318-2 at 24).

### B.    The Crash

On April 25, 2019, George McGee was driving his Model S in Key Largo, on Card Sound Road, Florida - a road he frequently traveled - when he approached a "T" intersection.

(*See* ECF 205 at ¶11; *see also* ECF 318-9 at 148, 153-154).

Approximately three minutes before the crash, McGee activated Autopilot and TACC restricted the vehicle's speed to 45 mph based on the road type, which was also the posted speed limit. (Ex. A - Harrington Report at 10). However, for more than the minute leading up to the crash, McGee decided to *override* TACC's restricted speed by pressing the accelerator to reach a speed of 61 mph. (ECF 318-2 at 96; ECF 318-1 at 10). This functions the same as any other cruise control system in any other car: pressing the accelerator can increase the vehicle's speed beyond the set cruising speed. When this happens, a pop-up is displayed to alert the driver that, because he was pressing the accelerator, "cruise control will not brake." (Ex. B – PE21-020 at BENAVIDES-00003148; Ex. C - Log Data). Additionally, sensors measuring torque applied to the steering wheel recorded that McGee's hands were detected within the last 20 seconds. (ECF 318-2 at 55); (ECF 318-3 at 118:18-19, 120:5-10). Thus, notwithstanding that Autopilot was engaged, McGee was, in effect, in control and driving the Model S with his hands on the wheel and foot on the accelerator and driving manually before and at the moment of impact.

McGee testified he knew Autopilot did not make the car "self-driving" and that it was his "responsibility as the driver of the vehicle, even with Autopilot activated, to drive safely and be in control of the vehicle at all times." (ECF 318-9 at 73-74, 93). He knew Autopilot would not stop for stop signs or traffic signals. (*Id.* at 112-13). He admitted he dropped his cell phone as he approached the stop sign, and, distracted from his driving responsibilities, he looked down, and as a result, ignored multiple traffic control devices including a visible stop sign, and stop bar painted on the ground, an overhead red flashing stop light and multiple road end signs, and drove straight through the intersection. (Ex. D, Certified Tr. Body Cam Video at 2, 5, 8; ECF 318-9 at 149-151). After crossing through the intersection, McGee struck the side of a Chevy Tahoe that

was parked perpendicular to the "T" intersection. The Tahoe was pushed into two people individuals standing next to it—Naibel Benavides, who was killed, and Dillon Angulo, who was injured. (ECF 205 at ¶¶17-18).

## MOTIONS IN LIMINE

### I.   REFERENCES TO OTHER INCIDENTS

This trial is and should be about the circumstances of *this* crash. Yet, trying to bridge the gap between the actual evidence and their burden of proving a defect that caused this crash, Plaintiffs apparently intend to refer to other accidents, lawsuits, and claims. Indeed, Plaintiffs' Amended Complaint lists 55 crashes—without regard to vehicle model or crash circumstance—under a heading "Other Similar Incidents Involving Autopilot," primarily citing media accounts of other accidents as their source. (ECF 205 at ¶83). And Plaintiffs' expert, Cummings, repeatedly referred to other accidents, with highly inflammatory comments editorializing including her belief suggesting Tesla has been "killing people." (*See* ECF 318-6 at 106, 145, 184).

Plaintiffs should not be permitted to mislead the jury into thinking there is something wrong with Autopilot because *other* vehicles have crashed, or *other* people found lawyers to sue Tesla. In fact, none of these incidents has resulted in a verdict against Tesla. To the contrary, Tesla prevailed in the two Autopilot crash cases to go to trial. None of the supposed "similar" incidents involves a driver pressing the accelerator to override the speed restricted by Autopilot until he crashed into a vehicle parked laterally ahead and across a T-intersection. The evidence will only detract from the issues in this case, force Tesla to show how dissimilar each incident in fact is, and thereby waste the jury's time and unfairly prejudice Tesla. Fed. R. Evid. 401-403.

Accordingly, the Court should exclude evidence of incidents involving Tesla vehicles other than the Tesla Model S at issue in this case with its hardware and software versions of

Autopilot, as well as evidence of other crashes, near misses, malfunctions, or alleged malfunctions of Tesla vehicles.

### A.    Anecdotal Evidence Of Other Incidents Does Not Tend To Prove A Defect

Under established Florida law, a manufacturer is not an insurer of the total safety when using its product and Plaintiffs cannot prove a defect simply because a prior accident or injury occurred. *West v. Caterpillar Tractor Co.,* 336 So. 2d 80, 86 (Fla. 1976); *See Lash v. Noland*, 321 So. 2d 104, 105 (Fla. Dist. Ct. App. 1975). Thus, as a threshold matter, Plaintiffs cannot demonstrate the relevancy of other accidents or claims.

### B.    Even If There Was Some Predicate To Establish Relevancy, Plaintiffs Cannot Demonstrate Substantial Similarity To Other Accidents or Claims.

The law is well settled that to the extent evidence of other accidents, claims, or lawsuits is relevant in a products liability case, the burden is on the proponent to lay a foundation showing the allegedly similar claim or accident pertains to the same type of product under "substantially similar" circumstances. *See Wilson v. Bicycle South*, 915 F.2d 1503, 1508 (11th Cir. 1990); *Davis v. Little Giant Ladder Sys.*, Case No. 2:19-cv-780, 2022 WL 3924144 (M.D. Fla. Sept. 8, 2022); *Ford Motor Co. v. Hall-Edwards*, 971 So. 2d 854, 856-60 (Fla. Dist. Ct. App. 2007). Absent that foundation, a court cannot make a determination concerning substantial similarity. *See Hall-Edwards*, 971 So. 2d at 859 (reversing $60 million verdict where plaintiff and her experts referred to "hundreds of other accidents," noting that "[n]o precautions or measures were taken to ensure that the other accidents were not too remote in time or that the conditions of the accidents were similar" and that the "failure to lay a sufficient predicate establishing substantial similarity between the accidents renders the evidence irrelevant as a matter of law.").[1]

---

[1] *See also Agrofollajes, S.A. v. E.I. Du Pont De Nemours & Co., Inc*., 48 So. 2d 976, 991-93 (Fla. Dist. Ct. App. 2010), *disapproved on other grounds, Aubin v. Union Carbide Corp.*, 177 So. 3d 489 (Fla. 2015) (error as a matter of law to admit evidence of other claims where plaintiffs failed

Given the number of variables involved in any one accident, Plaintiffs cannot meet their burden of demonstrating substantial similarity. Here, the driver admitted his own fault in becoming distracted while driving toward a "T" intersection, while keeping his hand on the steering wheel and pressing the accelerator to ensure he was overriding TACC and exceeding the speed limit. Thus far, Plaintiffs have not laid any foundation establishing the other incidents they plan to present to the jury are substantially similar to this fact pattern. Indeed, Plaintiffs have only presented one-line descriptions of 55 other incidents within their Amended Complaint, and even those descriptions make it clear these other accidents are not substantially similar. Pointing to a crash involving a Tesla equipped with Autopilot, or an expert's mere mention of another incident, is insufficient to establish substantial similarity. *See generally Pinchinat v. Graco Children's Prods.*, Case No. 04-252, 2005 WL 5960928, 2 (M.D. Fla. Apr. 7, 2005) ("[t]he mere fact that plaintiff's expert may have relied upon these accidents in formulating an opinion is not sufficient to make the accidents themselves admissible"). Yet, that is what Plaintiffs and their experts plan to do.

In addition, evidence of other incidents is inadmissible unless these events occurred at roughly the same time as this crash. *See Hall-Edwards*, 971 So. 2d at 858-59. This requirement is particularly significant here given the numerous changes in hardware and software both before and after this crash.[2] Tesla Autopilot has had several hardware iterations (Hardware 1, 1.1, 2, 2.5, 3 and now 4), and a dozen software versions, plus regular firmware updates, each impacting feature performance. For example, the 2016 crash involving Mr. Brown that Plaintiffs' experts

---

to establish prior claims were substantially similar, even though they involved same product); *Godfrey v. Precision Airmotive Corp.*, 46 So. 3d 1020 (Fla. Dist. Ct. App. 2010) (same)
[2] Tesla separately addresses the admission of evidence of subsequent changes in Issue II *infra*.

often refer to, involved an earlier Model S utilizing substantially dissimilar ADAS.[3] Thus, Plaintiffs even fail to demonstrate the vehicle is substantially similar. To be "substantially similar," at minimum, it should involve a vehicle with the same hardware and software configurations, in the same general time period.

Further, just pointing to crashes reported in which Autopilot was supposedly involved— with no attempt to identify similar circumstances (i.e. a driver with his hands on the wheel, pressing the accelerator to go over the set speed and speed limit, while a message says **the vehicle will not brake** when the claim that the vehicle should nevertheless have braked).

In sum, Plaintiffs have not and will not be able to establish any of the other incidents they plan to present to the jury are substantially similar to the crash at issue.

### C.   Evidence of Other Accidents is Inadmissible Because the Circumstances of Those Accidents Have Not Been "Established"

The proponent of evidence of other accidents also bears the burden of affirmatively establishing the other accidents resulted from the same alleged defect or dangerous condition. As explained by the Seventh Circuit:

> [T]here are too few established facts about the St. Anne accident from which a comparison between the two accidents can be made. Our primary concern is that the plaintiffs have not presented any evidence that the alleged dangerous condition—a frozen elevator—was in any way involved in the St. Anne accident.

*Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261,1269 (7th Cir. 1988).[4] Plaintiffs cannot meet

---

[3] Mr. Brown's Tesla was equipped with Autopilot Hardware 1.0 that utilized one forward facing camera, 12 ultrasonic sensors with 16 ft-range and a processor with 256 MB RAM storage. In contrast, McGee's Model S had Autopilot Hardware 2.5, eight cameras with nearly 3x the fps of Hardware 1.0's monocam, 12 ultrasonic sensors with 26 ft-range, and nearly 32x more RAM storage and 40x the processing speed of Hardware 1.0. Additionally, there were dozens of firmware updates between the two crashes that updated, iterated, expanded and improved Autopilot's functionality.

[4] *See also Wilson*, 915 F.2d at n. 10 (where cause of other proffered accident had not been determined, it would have required a trial within a trial to make that determination before admitting the evidence).

that burden.

D.      **Evidence Of Other Incidents Or Complaints Is Inadmissible Hearsay**

Evidence of other incidents or complaints is independently inadmissible because it is hearsay. *See* Fed. R. Evid. 801(c), 802; *see also ADT LLC v. Vivint Smart Home, Inc.*, No. 20-CV-23391, 2023 WL 3568117, at *11 (S.D. Fla. May 19, 2023) ("the external proceedings such as other lawsuits and investigations are inadmissible hearsay"); *Salinero v. Johnson & Johnson*, No. 1:18-cv-23643, 2019 WL 7753445, at *3 (S.D. Fla. Sept. 25, 2019) (evidence of lawsuits is inadmissible hearsay) (citation omitted). This is especially true where an expert based his or her opinion on hearsay, or even a witness to the incident which raises a problem of double hearsay.

Moreover, the use of documents from other cases raise serious questions about the reliability and integrity of their contents since other incident claims are usually made by individuals having a financial interest or stake in the outcome of their claim. *See McKinnon v. Skil Corp.,* 638 F.2d 270, 278 (1st Cir. 1981) ("other accident" evidence from Consumer Product Safety Commission reports properly excluded as untrustworthy hearsay, in part, because, "[m]ost of the data contained in the reports is simply a paraphrasing of versions of accidents given by the victim[s] themselves who surely cannot be regarded as disinterested observers").

In response to a hearsay objection, plaintiffs often argue the evidence is not offered for its truth—but rather to prove a manufacturer's "notice" or "knowledge" of a defect, and that substantial similarity is not required for that purpose. Not so—if another accident is not substantially similar, of what would it be notice? *See, e.g.*, *Agrofollajes*, 48 So. 3d 976 (error to allow evidence of prior claims for notice without establishing substantial similarity); *Hall-Edwards*, 971 So. 2d at 859 (same). Further, citing the evidence for "notice" does not alleviate inherent prejudice problems. *See Yellow Bayou Plantation, Inc. v. Shell Chem., Inc.*, 491 F.2d 1239, 1242-43 (5th Cir. 1974) (evidence of other lawsuits offered to show notice properly

excluded given faint probative value and high potential for unfair prejudice). And evidence of accidents *post*-dating this accident cannot constitute "notice." *See Martin*, 778 So. 2d at 1103.

  **E.**  **Evidence Concerning Other Incidents Or Alleged Defects Will Be Unfairly Prejudicial And Cause Confusion And Undue Delay**

  Even if Plaintiffs satisfy all of the foregoing burdens, courts often exclude other accident evidence under Rule 403 finding this evidence can turn the trial into a series of minitrials about other accidents causing any slight probative value of the evidence to be substantially outweighed by the danger of unfair prejudice, and confusion of issues. *See Wilson,* 915 F.2d at 1510 (excluding other accident evidence under Rule 403 because there is a "necessity for a considerable amount of extrinsic evidence to determine whether the incidents were sufficiently similar to meet the standards of Fed. R. Evid. 403).

  Such is the case here. The introduction of evidence concerning other incidents would raise a variety of collateral issues and entail the presentation of numerous witnesses and documents by both parties, which will only lengthen the trial and confuse the issues. Plaintiffs' experts have done little or no research into these supposed similar incidents and thus cannot opine as to whether the similarity (or dissimilarity, as it were) runs any deeper than a given headline. Moreover, testimony delving into unrelated incidents and potentially tragic details of other fatalities would only inflame and distract the jury, which must be the objective since this evidence does not prove defect here and does not prove notice of a supposed defect. *See Matthews v. State*, 772 So. 2d 600, 602 (Fla. Dist. Ct. App. 2000) ("[T]estimony must not inflame the jury so as to taint its verdict."). This would unduly prejudice Tesla. *Steverson v. State*, 695 So. 2d 687, 688-89 (Fla. 1997) (evidence that "inflames the jury or appeals improperly to the jury's emotions" is properly excluded).

  Indeed, the mere mention of other incidents and especially the number of other incidents

could taint the deliberative process, thereby significantly undermining the trial's integrity and fairness. By the time jurors deliberate, they may merge the facts of this crash with facts of unrelated accidents, leading them to impermissibly conclude that Tesla is liable without considering the actual elements of Plaintiffs' claims.

## II.    REFERENCES TO SUBSEQUENT REMEDIAL MEASURES/RECALL

After a lengthy investigation into nearly every aspect of Tesla's Autopilot functionality, the only failure mode, NHTSA identified involved instances where "a ***driver misuses*** the SAE Level 2 advanced driver-assistance feature such that they fail to maintain continuous and sustained responsibility for vehicle operation." (Ex. E, Part 573 Safety Recall Report at 3). In December 2023, Tesla voluntarily issued a recall consisting of an over-the-air update, that among other things, increased the frequency of reminders to drivers not to misuse their vehicles, and "to further encourage the driver to adhere to their continuous driving responsibility whenever Autosteer is engaged." (*Id.* at 5).

Plaintiffs' counsel has admitted, and the Court agreed, that evidence concerning the recall constitutes a subsequent remedial measure under Federal Rule of Evidence 407. (ECF 206 at 32-33, 42-43). In an attempt to avoid this black letter law, Plaintiffs have argued the recall is relevant to punitive damages. (ECF 165, generally; *see also* ECF 206 at 31-34).[5] To the contrary, there is no "punitive damage exception."[6]

---

[5] While not ruling on the issue, the Court noted that if punitive damages are based solely on the recall, the Court could "foresee some problems down the road." (ECF 206 at 42-43). Tesla has fully addressed the lack of evidence as to Plaintiffs' claim for punitive damages in its motion for summary judgment filed concurrently. Tesla requests that the Court consider this motion in conjunction with Tesla's Motion for Summary Judgment.

[6] Tesla acknowledges Rule 407 does not preclude Plaintiffs and their experts from offering opinions as to alternative designs or countermeasures they contend would have prevented the crash, subject to other objections like relevance and speculation. R. 401, 403. But Plaintiffs cross

Despite this, Plaintiffs have argued that the recall "provides unequivocal information defining the nature and scope of Autopilot's defectiveness and of Tesla's misrepresentations." (ECF 165 at 9; *see also* ECF 206 at 31-34). Likewise, Plaintiffs' expert Cummings claimed, "Tesla's technology was found defective that led to a recall. That's just a fact." (ECF 318-6 at 244; *see also id*. at 245 (stating McGee "was one of the people the recall was designed to catch."). Clearly, under the guise of the recall's relevance to punitive damages, Plaintiffs intend to use the recall for precisely the purpose it is disallowed—to prove a defect or need for a warning. The Court should not allow the Plaintiffs to avoid the black letter law in this manner.

In any event, there is no basis to argue the recall is relevant to punitive damages. Plaintiffs contends that Tesla's recall response is "wholly inadequate," and does not fix the problem. (ECF 206 at 33-34). Leaving aside Tesla's disagreement with these assertions, the rule against admission of subsequent remedial measures does not have an exception for measures that are claimed to be "wholly inadequate." In fact, the public policy reasons supporting exclusion of a product manufacturer's subsequent changes, (*i.e.,* to encourage changes and innovation in furtherance of safety), apply with even greater force to exclude Plaintiffs attempt to argue Tesla not only made changes made, but those changes were not effective to solve the "problem."

Independently, evidence of changes or updates to Autopilot subsequent to the manufacture and sale of the 2019 Model S is irrelevant because the operative time to evaluate the design is at the time of manufacture, not at the time of loss. *See* § 768.1257, Fla. Stat. (under the "state-of-the-art defense," conduct is measured "at the time of manufacture, not at the time of loss or injury."); *see also* Fla. Std. Jury Instr. 403.7(b). Similarly, the "government rules defense" is based on regulations existing when the "product was *sold or delivered* to the initial purchaser."

---

the line into prohibited testimony, if they argue there was a recall in which those measures were implemented, or suggest in any manner that those changes were made after the crash.

§ 768.1256(1), Fla. Stat. Thus, the evidence must be limited to that time frame.

Finally, in the context of admission of other accidents, the court in *Hall-Edwards*, 971 So. 2d at 859, held that plaintiffs could not avoid the requirement of proving substantial similarity by arguing relevance to punitive damages: "we are aware of no case which, absent a showing of substantial similarity, has allowed reference to 'other cases' simply because punitive damages were at issue." *Id.* Similarly, the law does not allow Plaintiffs to ignore Rule 407 by invoking a non-existent punitive damage exception.

## III.   REFERENCES TO GOVERNMENT INVESTIGATIONS

Plaintiffs may also attempt to offer evidence about government investigations into Tesla related to alleged misrepresentations as to the capabilities of Autopilot and Tesla's Full Self-Driving Capability option (FSD Capability). [7] But, as the Court previously ruled, and as detailed in Tesla's motion for summary judgment, Plaintiffs do not have standing to pursue a claim for negligent misrepresentations.  (ECF 206 at 10-11). Moreover, because McGee's Model S did not have FSD capability, any references to that feature are completely irrelevant.

Beyond that, Florida courts recognize that evidence regarding an ongoing investigation is irrelevant, unnecessary, and prejudices juries. *Perez v. State*, 79 So. 3d 140, 143 (Fla. Dist. Ct. App. 2012) ("[R]epeated references to an ongoing investigation are highly prejudicial to the defendant's case because they divert the jury's focus from the offense charged to collateral acts."); *Carnival Cruise Lines, Inc. v. Rodriguez*, 505 So. 2d 550, 552 (Fla. Dist. Ct. App 1987) (evidence of other investigations or incidents, even when admitted for impeachment purposes, tends to inject collateral issues and to divert the jury's attention); *Kenet v. Bailey, Hunt, Jones & Busto*, 785 So. 2d 515, 517 (Fla. Dist. Ct. App. 2000) ("[I]t is error to divulge to the jury the

---

[7] The "FSD Capability" package is more recently identified as or named "FSD (Beta)" and currently "FSD (Supervised)."

conclusion of any other fact-finder as this information has the inevitable tendency of causing the jury to defer to decisions made by those other agencies.").

## IV.    REFERENCES TO THIRD PARTY REPORTS CONCERNING THE FUNCTIONING, MALFUNCTIONS, OR MISUSE OF AUTOPILOT

Media reports, third-party statements, and videos purporting to describe how Autopilot functions or allegedly failed to function are inadmissible for several reasons.

A media report is undeniably hearsay. Fed. R. Evid. 801, *et seq*.; *Bouton v. Ocean Props., Ltd.*, No. 16-cv-80502, 2017 WL 4792488 at *27 n. 31 (S.D. Fla. Oct. 23, 2017). Indeed, reports coming from individuals of unknown backgrounds and expertise are particularly untrustworthy. Nor would the authors of these reports have a foundation from which to comment upon purported malfunctions in Autopilot. Yet, Plaintiffs would be offering these out-of-court statements to establish the truth of the matters asserted—*i.e.*, that McGee's Autopilot malfunctioned in the manner depicted in these unrelated incidents.

Media reports are also irrelevant because Plaintiffs have not shown that a media report expressing a reporter's personal beliefs as to Autopilot's functions or Tesla's purported design decisions relate in any way to the hardware or software on the vehicle at issue in this case. Indeed, this would be nothing more than an attempt to back door in evidence of other accidents without establishing substantial similarity. (*See* Issue I).

Finally, any marginal probative value of this evidence is substantially outweighed by the possibility of undue consumption of time, and the substantial danger that the evidence would cause undue prejudice to Tesla, confuse the issues, and mislead the jury. Fed. R. Evid. 403. Tesla would need to devote substantial time responding to each of these media reports about unrelated incidents to demonstrate the lack of relevance and distinct differences from the crash at issue

here resulting in a trial within a trial. *See, e.g., Davis,* 2022 WL 3924144, at *1-2.[8]

## V.   REFERENCES TO MR. MUSK'S PUBLIC STATEMENTS REGARDING FULL SELF DRIVING (FSD) CAPABILITY

Tesla anticipates Plaintiffs will attempt to introduce or refer to CEO Elon Musk's out of court public statements about the function and performance of Tesla's FSD capability, to suggest, among other points that his comments created expectations for McGee as to the performance of his vehicle. Such statements are inadmissible for multiple reasons.

First, FSD Capability is a separate software package that adds additional capabilities, while still requiring active driver supervision. McGee did not purchase package on his vehicle. Thus, any statements related to FSD Capability (or references generally to FSD) are irrelevant. (ECF 318-9 at 73-74). And other customers impressions of Musk's statements have no bearing on this customer or this crash.

Second, there is no evidence McGee heard about or relied on any of statements allegedly made by Musk.  In fact, McGee denied hearing anything from Mr. Musk. (*Id.* at 233-34). McGee further testified he knew Autopilot did not make the car "self-driving" and he was responsible as the driver. (*Id.* at 73-4). He repeatedly admitted: **"*I was highly aware that was still my responsibility to operate the vehicle safely.*"** (*Id*. at 111). Absent a causal link between any statements made by Musk and conduct by McGee, any references to Mr. Musk's statements are irrelevant and only intended to prejudice Tesla.

 Third, Musk's statements do not pertain to the state of technology that existed at the time of the April 2019 accident; instead, they were forward-looking, aspirational statements made several years before the accident. As such, they are irrelevant. Fed. R. Evid. 803; *see generally* Fla. Stat. § 768.1257 (the finder of fact shall consider the state of the art of scientific and

---

[8] *See* cases cited in Issue I.

technical knowledge and other circumstances that existed at the time of manufacture, not at the time of loss or injury).

Finally, any probative value would be substantially outweighed by the danger of unfair prejudice by the implication that the Model S had different capabilities or features than those which actually existed on the subject vehicle. Fed. R. Evid. 403. Enhanced Autopilot is not "Full Self-Driving," and this case is about ***the system that McGee purchased*** and its performance—as well as his—at the time of the crash. Plaintiffs' efforts to provide evidence of what Tesla executives said about a different system and its functionality in the future can only confuse and mislead the jury about the system McGee purchased. Moreover, because Musk is an outspoken public figure, the jury may well give his statements from Mr. Musk undue weight.

## VI. USE OF INCORRECT AND MISLEADING TERMINOLOGY AND REFERENCES TO EVIDENCE CONCERNING MATERIALS RELATED TO FUTURE PRODUCTS

As described in the Factual Overview, Autopilot is a Level 2 Advanced Driver Assistance System, requiring the driver to remain in control of the vehicle at all times. Engaging Autopilot does not make the Model S a "self-driving car," or "autonomous," and does not replace the driver. *See* https://www.sae.org/blog/sae-j3016-update. Accordingly, Plaintiffs, and their witnesses should be instructed not to call the Model S "autonomous" or imply the Model S was equipped with Tesla's "Full-Self-Driving Capability." This evidence, like the comments from Musk are irrelevant, and risk unfair prejudice and confusion of the issues. *See* Fed. R. Evid 403.

## VII. REFERENCES TO PROMOTIONAL VIDEOS

Likewise, there is no relevance, and it is unfairly prejudicial to reference, or worse, to show promotional videos unrelated to the subject vehicle. For example, Plaintiffs have referenced Tesla's promotional videos, including an October 2016 video in which the Rolling Stones song, "Paint it Black" is played in the background, while showing a level of hands-free

driving that could only be achieved with more advanced software than that on McGee's Model S. The video was released by Tesla in a blog post that references the future capabilities of the technology but the vehicle and software in the video were not available to the public. Plaintiffs' expert Cummings conceded there is no evidence McGee saw the video. (ECF 318-6 at 255). Moreover, this discussion of future performance has nothing to do with this case.

## VIII.   TESTIMONY FROM ROBERT SUMWALT

Robert Sumwalt is the former Chairman of the National Transportation Safety Board (NTSB). The NTSB did not investigate this crash and Sumwalt has **no** information about it beyond what Plaintiffs' counsel told him before his deposition. Nonetheless, over Tesla's objections, he was deposed, not as an expert witness, but as a "retained fact witness" for Plaintiffs, while ***charging $400 per hour for his time before and during the deposition***. (Ex. F, Sumwalt Dep. at 118-121).

Before the deposition, the NTSB's general counsel wrote to Plaintiffs' counsel advising of the limitations on Sumwalt's testimony pursuant to federal regulations; namely, he could only testify about facts gathered from investigations for which he has first-hand information—he has none. Sumwalt was also made aware of this before the deposition. (*See* Ex. G, Letter from NTSB General Counsel; Ex. F at 27-28). Nevertheless, Sumwalt agreed to testify. As the deposition makes clear, he is a vocal critic of Tesla and Autopilot.[9]

### A.      Sumwalt's Testimony Is Prohibited By Federal Law

The NTSB's regulations, 49 C.F.R. § 835, govern testimony by current and former NTSB

---

[9] Indeed, much of his testimony surrounds his frustration that Tesla did not respond to a set of NTSB recommendations following a 2016 crash involving Autopilot, whereas other manufacturers did respond. He conceded however, that "there is no legal obligation for anybody to reply to an NTSB investigation." (Ex. F at 161). He also complained about a telephone discussion he had with Elon Musk unrelated to the issues in this case. Sumwalt claims that during that call Tesla's CEO Mr. Musk "hung up" on him and that "didn't sit well" with him. (*Id.* at 223-24).

employees. These regulations, which carry the force of law, provide civil litigants, in addition to deponents and the United States government, standing to challenge such testimony. *See Edwards v. U.S. Dept. of Justice*, 43 F.3d 312, 316-17 (7th Cir. 1994) (explaining that the common law prohibits courts from independently compelling testimony or production of documents when it is contrary to a valid agency regulation); *Swett v. Schenk*, 792 F.2d 1447, 1451-52 (9th Cir. 1986) ("49 C.F.R. § 835.3, is validly promulgated and has the force of law.").

> Generally, section 835:
>
> prescribes policies and procedures regarding the testimony of employees of the [NTSB] in suits or actions for damages . . . arising out of transportation accidents when [1] such testimony is in an official capacity and [2] arises out of or is related to accident investigation. The purpose of this part is to ensure that the time of Board employees is used only for official purposes, to avoid embroiling the Board in controversial issues that are not related to its duties, to avoid spending public funds for non-Board purposes, to preserve the impartiality of the Board, and to prohibit the discovery of opinion testimony.

49 C.F.R. § 835.1.

These regulations "reflect Congress' strong desire to keep the Board free of the entanglement of such suits . . . and serve to ensure that the Board does not exert an undue influence on litigation." 49 C.F.R. § 835.3(a) (internal quotations omitted).

Specifically, in order to effectuate these goals, the regulations prohibit all but highly circumscribed testimony. For example:

> Board employees may only testify as to the factual information they obtained during the course of an investigation, including factual evaluations embodied in their factual accident reports. ***However, they shall decline to testify regarding matters beyond the scope of their investigation, and they shall not give any expert or opinion testimony.***

49 C.F.R. § 835.3(b) (emphasis added). "Board employees may only testify about the ***firsthand*** information they obtained during an investigation that is not reasonably available elsewhere." §835.3(c) (emphasis added). They "are not authorized to testify regarding other employee's

reports or other types of Board documents…" *Id*. Additionally, "[n]o employee may testify in any matter absent advance approval by the General Counsel as provided in this part." *Id*.

These provisions limiting the testimony of NTSB employees continue to apply after the employee leaves the agency. *See* § 835.7 ("Testimony of former Board employees" mandates that "the scope of permissible testimony continues to be constrained by all the limitations set forth in § 835.3 and § 835.4."). As such, even though Sumwalt is a "former" board member, his testimony is still controlled by Section 835 and subject to its strict limitations.

Here, the conditions for permissible testimony are not met as unequivocally stated by the NTSB's General Counsel in his letter to Plaintiffs' counsel: "because the NTSB did not investigate this accident, there is no factual information that Mr. Sumwalt could possess relative to the accident. Thus, the only possible testimony would be of expert or opinion nature, which is prohibited . . . ." (*See* Ex. G at 1-2). Sumwalt confirmed he did not have "firsthand factual information" because: (1) there was no NTSB investigation into this crash; and (2) Board Members are not investigators and are not apprised of the intricacies of the investigations until the final report has been drafted. (Ex. F at 17-18, 27, 91-92, 95-96 129, 177-78). In short, Sumwalt would be unable to provide any analysis or opinion regarding any investigation or the facts about this matter.

Sumwalt explained that before his deposition, he communicated with Plaintiffs' counsel via email to get around other statutory restrictions in 49 U.S.C. § 1154(b) (prohibiting admission of NTSB reports in civil cases). (*Id.* at 113-114); (*see also* Ex. H, Sumwalt e-mail). Indeed, Sumwalt violated the regulations because Plaintiffs' counsel elicited testimony as to what he and the NTSB concluded about other unrelated incidents involving Tesla vehicles based on the facts collected by their investigators—exactly what the NTSB's general counsel said was not allowed.

(Ex. F at 28, 103-106). Sumwalt admitted that he provided opinions in violation of 49 C.F.R. § 835. (*Id.* at 96, 106-107).

**B.    Sumwalt's Testimony About Investigations Into Other Incidents Is Inadmissible**

Sumwalt's only connection to this case appears to be his investigation of ***other dissimilar and unrelated incidents*** involving a Tesla. His personal opinions about Tesla and the NTSB's investigation of other incidents or conversations with Tesla representatives about those incidents are not relevant to this case and should be excluded under Rules 401 and/or 403, and for the reasons discussed in Issue I.

**C.    Sumwalt Was Not Properly Disclosed As An Expert**

Sumwalt is not a retained expert in this case and Plaintiffs have not timely disclosed him as one. Moreover, as discussed above, NHTSA regulations forbid him from testifying as an expert. 49 C.F.R. § 835.3(b). Therefore, this Court can and should preclude him from offering opinions on Tesla's Autopilot feature or the related technology.

**D.    Any Claimed Relevance Is Outweighed By The Danger Of Unfair Prejudice.**

Given Sumwalt's lack of firsthand factual information concerning this case, it is clear Plaintiff just wanted the publicity and impact of obtaining testimony from someone associated with the NTSB who has been vocal about his dislike of Tesla. And, they may try to use this testimony to introduce other dissimilar crashes. Despite the fact that Sumwalt would be testifying as a fact witness, in the jury's mind, his title as the former head of the NTSB, is likely to give his testimony more weight. *See U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (noting that lay jurors may assign "talismanic" significance to expert testimony).

**IX.    MEDICAL BILLS**

"[T]he touchstone for admissibility of medical bills under Florida law is an individual's

obligation to pay them." *Sensini v. MTD Sw. Inc.*, 2019 WL 2015957, at *1 (M.D. Fla. Jan. 7, 2019) (citing *Coop. Leasing, Inc. v. Johnson*, 872 So. 2d 956, 958 (Fla. 2d DCA 2004) ("An individual is not entitled to recover for the value of services that he has obtained without expense, obligation, or liability.")); *Gulfstream Park Racing Ass'n, Inc. v. Volin*, 326 So. 3d 1124, 1126 (Fla. 4th DCA 2021) (similar).

Accordingly, "[w]here a plaintiff is not obligated to pay the full amount of the medical bills, the full amount of the medical bills becomes irrelevant and should be excluded." *Sensini*, at 2019 WL 2015957, at *1; *see also Schenone v. Zimmer, Inc.*, 2014 WL 12619911, at *2 (M.D. Fla. Aug. 27, 2014) ("Plaintiffs may not introduce evidence of the difference between the amount paid by Medicare and the amount charged by the medical providers."); *Rogers v. Gifford Groves, Ltd.*, 2009 WL 10668261, at *3 (S.D. Fla. Nov. 10, 2009) (similar).[10]

Accordingly, Plaintiff should be limited to introducing medical expenses owed or paid.

## X.   ARGUMENTS RELATED TO PUNITIVE DAMAGES

### A.   <u>Preclude Comments Related to Out of State Conduct</u>

The Supreme Court has recognized that the Fourteenth Amendment's Due Process Clause prohibits the imposition of arbitrary punishment on a tortfeasor and provided limits on the evidence admissible for punitive damages. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 547 (1996).

---

[10] While it is undisputed that Plaintiff is not entitled to recover the full amount of the medical bills, Tesla acknowledges that some courts allow the jury to hear the full amount subject to a later set off. *See Joerg v. State Farm Mut. Auto. Ins. Co.*, 176 So. 3d 1247, 1249 (Fla. 2015) (discussing inadmissibility of evidence of future Medicare discounts to medical bills). Tesla maintains that the better view, in accordance with the "fundamental principle of Florida law that the measure of compensatory damages in a tort case is limited to the actual damages sustained by the aggrieved party," is that *evidence* of medical expenses should be limited to amounts medical providers were willing or required to accept in full satisfaction for services, regardless of the source. *See Dial v. Calusa Palms Master Ass'n, Inc.*, 337 So. 3d 1229, 1231 (Polston, J., concurring) (quoting *Goble*, 901 So. 2d at 834 (Bell, J. specially concurring)).

*First*, "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred.") cannot punish Tesla for conduct that may be lawful in other states. *Campbell*, 538 U.S. at 421.[11] *Second*, a state does not have a "legitimate concern" in imposing punitive damages to punish a defendant for "***unlawful***" out-of-state conduct. *Campbell*, 538 U.S. at 421. *Third*, a defendant should only be punished for conduct that harmed these Plaintiffs and not for conduct affecting non-parties. As the Court explained:

> A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not be serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . . punishment on these bases creates the possibility of multiple punitive damages awards for the same conduct . . . .

*Id.* at 422-23. See also *Phillip Morris USA v. Williams*, 549 U.S. 346, 353 (2007), (clarifying that the "Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties.").

### B.    Admissible Evidence as to Amount of Punitive Damages

Should the Court allow Plaintiffs to proceed with punitive damages, evidence as to the amount of punitive damages must be limited. The Court in *Campbell*, 538 U.S. at 427, noted reliance on State Farm's wealth was a "departure from the well-established constraints on punitive damages"; and it stated unequivocally that "[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award."  Accordingly, should the Court allow the punitive damage claim to proceed, Tesla requests a hearing to consider the permissible evidence.

---

[11] *See also, Gore*, 517 U.S. at 572-73 ("[A] State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States); *id* at 585 ("[w]hile each State has ample power to protect its own consumers, none may use the punitive damages deterrent as a means of imposing its regulatory policies on the entire Nation.").

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Defendant requests oral argument on this motion.  Tesla submits that oral argument will aid the Court due to the complexity of the issues presented in the motion. Tesla estimates that 90 minutes will be sufficient to hear argument from the parties.

**CERTIFICATE OF GOOD FAITH COMPLIANCE**

Pursuant to Local Rule 7.1(a)(3), counsel for Tesla has conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

Respectfully submitted,

*s/ Wendy F. Lumish*

**JOEL SMITH**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel. 803-726-7420 / Fax: 803-726-7421
joel.smith@bowmanandbrooke.com

**WHITNEY V. CRUZ**
Florida Bar No. 800821
**WENDY F. LUMISH**
Florida Bar No. 334332
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

*Attorneys for Defendant Tesla, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
adam@roussolawfirm.com
assistant@roussolawfirm.com
pleadings@roussolawfirm.com

*Attorneys for Plaintiff Dillon Angulo*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHRIEBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel.  305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

*s/ Wendy F. Lumish*
   Wendy F. Lumish