**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-21940-BLOOM/Torres**

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,                         Case No. 22-22607-KMM

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

## PLAINTIFFS' MOTION TO EXCLUDE SAE J3016

### I. INTRODUCTION

Florida law defines the duties of a product manufacturer. The jury will be instructed to follow Florida law in determining whether or not Tesla breached those duties. Tesla attempts to evade its duty to manufacture a non-defective product by placing blame on the driver, Mr. McGee, by relying on Society of Automotive Engineers ("SAE") J3016 Taxonomy and Definitions for Terms Related to Driving Automation Systems for On-Road Motor Vehicles ("SAE J3016").

1

SAE J3016 was developed to define terminology for automated vehicles. It is a taxonomy, i.e., a system of classifying various driver automation levels from Level 0 (no driving automation) to Level 5 (full driving automation). It is a definitional document. SAE J3016 is not an industry or safety standard, let alone a government standard.

Tesla primarily intends to rely on SAE J3016 to assert to the jury that its vehicles are Level 2 vehicles and as such, supervision of the vehicle remains the ultimate responsibility of the driver, regardless of whether any of the Autopilot suite of features is engaged. The introduction and reliance on SAE J3016 is problematic for several reasons.

The trier of fact is charged with determining whether Mr. McGee's behavior was reasonable under the circumstances; i.e., the jury's role is to determine whether the Tesla Mr. McGee (1) was negligent in how he used Autopilot and (2) was using Autopilot "in a manner reasonably foreseeable by the manufacturer." (Fla. Std. Jury Instruction 403.15) SAE J3016 cannot be used to usurp the role of the trier of fact.

As will be shown at trial, Tesla has repeatedly and consistently made statements to the public and its customers regarding the capabilities and safety of its Autopilot suite of features. What will not be shown at trial is evidence that Tesla informed its customers that it considered its vehicles Level 2 per SAE J3016. Tesla has not produced any evidence that it utilized SAE J3016 in the marketing or sales materials provided to customers. There is nothing in the evidentiary record to suggest that Mr. McGee knew the SAE J3016 classifications, that his Tesla was a Level 2 vehicle, or that he or similarly situated consumers were familiar with the limitations of Level 2 automation systems. As a result, there is no evidentiary link establishing the relevance of this taxonomy to the facts and issue in this case.

Via this motion, Plaintiffs seek to exclude any and all reference to, and use of, SAE J3016 on the grounds that it cannot be relied on by Tesla's experts to provide opinions on the ultimate issue of a driver's duty and that it is irrelevant to the instant suit, is unduly prejudicial, and will certainly confuse the jurors on the standard of care and duties owed by Tesla under Florida law.

## II. FACTUAL BACKGROUND

This case arises from a tragic incident on April 25, 2019, in which Naibel Benavides was killed and Dylan Angulo seriously injured in an crash involving Mr. McGee's Tesla Model S equipped with Tesla's Enhanced Autopilot package. Autopilot failed to slow the vehicle or warn the driver of the impending end of driveable space, the presence of a stop sign limit line, the presence of a vehicle, a pedestrian and signage in front of it and instead crashed into the Angulo vehicle parked lawfully at the roadway edge. One theory of liability Plaintiffs raise against Tesla that it is strictly liable for this preventable tragedy because the subject Tesla's Autopilot system did not perform as safely as an ordinary consumer would have expected and that the risks of the design of the Autopilot system outweighed its benefits.

Three years before this crash, Tesla's CEO, Elon Musk, told consumers that Autopilot was "certainly better than human at staying in the center of the lane compared to other cars on the road" and that, on the highway, "a Model S and Model X, at this point, can drive autonomously with greater safety than a person. Right now." (See DE 205 at ¶43.) In October of 2016, Tesla published a video on its website showing a Tesla navigating a roadway without any input from a person. The video states, "The person in the driver's seat is only there for legal reasons. He is not doing anything. The car is driving itself." (See DE 205 at ¶41.)

Tesla's marketed to Mr. McGee at the time of purchase that the "Enhanced Autopilot" package was able to match speed to traffic conditions, keep within a lane, and automatically change lanes without requiring driver input.

Despite going to extensive lengths to convince consumers that, due to its ability to safely accelerate, steer and brake a Tesla on roadways, Enhanced Autopilot was worth the thousands of dollars that Tesla charged for it, Tesla blames drivers when the system malfunctions and causes a crash. In litigation stemming from Autopilot malfunctions, Tesla takes the position that the driver must always compensate for Autopilot's mistakes and the

3

requires the driver as a stop-gap measure.

### SAE J3016

SAE J3016 is a system of classification developed by the SAE which provides a framework for the categorization and definition of automated driving systems (ADS) and their levels of automation. It is not an industry guideline or standard, regulation, or law. SAE J316 is a definitional document that identifies five levels of driving automation. Level 1 is the lowest, with no driving automation. Level 5 is the highest, representing full driving automation. Level 2 includes driver assistance systems. Tesla takes the position that all of its vehicles, including the Model S Mr. McGee was driving, are Level 2.

It is undisputed that Tesla does not provide customers with a physical copy of the Owner's Manual. Accessing the manual requires that the vehicle have internet access and requires a user to wade through multiple layers of menus on the Model S's on-board touch screen computer. Again it is undisputed that nowhere in the Owner's Manual is there any reference to SAE J3016. Similarly, Tesla has not produced – nor can it produce - any evidence in this case demonstrating that SAE J3016 was referenced in any of Tesla's marketing materials, including its website, at any time prior to the subject crash.

It is anticipated that Tesla will focus much of its attention on educating the jury on the SAE J3016 classifications in an attempt to convince a jury that Mr. McGee should have been privy to the limitations of the Autopilot's "lowly" Level 2 system.

### III. ARGUMENT

#### Florida Law Dictates the Duty of a Driver of a Vehicle

Tesla relies on SAE J3016 to shield itself from the responsibility to design and implement safe and reliable technology. Tesla and its experts argue that SAE J3016 is the definitive and authoritative source for judging the reasonableness of the conduct of a person using Autopilot. The argument follows that because, in litigation, Tesla is now declaring Autopilot to be a Level 2 system, all Tesla drivers, including Mr. McGee, are <u>always</u> and

4

unconditionally responsible for <u>any</u> mistakes made by Autopilot that lead to a crash. Furthermore, Tesla and its experts use SAE J3016 to trivialize all Autopilot malfunctions as "limitations" that the owner must compensate for.

In other words, Tesla wants the jury to use SAE J3016 to create and impose a "standard of care" for the user of its system. But it is the role of the jury to decide what is conduct is reasonable or unreasonable given the facts of the case. Under Florida law it is well established that:

> [W]hile "an expert may testify as to his opinion on an ultimate issue of fact," an expert cannot "merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citing Fed. R. Evid. 704). This means that Dr. Chapman "may not testify to the legal implications of conduct," and tell the jury that the Officers engaged in deadly force because "the court must be the jury's only source of law." *Id.* (citing cases). Indeed, expert testimony is often unhelpful and "potentially confusing for the jury, when it purports to articulate the requirements of the law," and this danger can be even more pronounced where the opinion could differ from the "actual requirements set forth in binding legal authorities."
>
> *Washington v. City of Waldo, Fla.*, 2016 WL 3545909, at *4 (N.D. Fla. Mar. 1, 2016) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("It is the responsibility of the court, not testifying witnesses, to define legal terms"); *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (noting that an expert witness "is not qualified to compete with the judge in the function of instructing the jury"); *Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988) (distinguishing "permissible testimony on issues of fact" and "testimony that articulates the ultimate principles of law governing the deliberations of the jury," which is not permissible, and noting the confusion that would result from competing expert testimony on the requirements of the law)).

*Cendan v. Trujillo*, No. 16-21775-CIV, 2020 WL 6149800, at *5 (S.D. Fla. Oct. 20, 2020)

Thus, Tesla's experts cannot provide opinions on issues of law or how the law should apply to particular facts. Whether or not Mr. McGee breached his duty to operate his vehicle safely is an ultimate issue to be decided by the trier of fact. Tesla experts cannot use SAE J3016 to opine that it was Mr. McGee's "ultimate responsibility" over operation of his vehicle because

Tesla believes it is a Level 2 vehicle as doing so improperly invades the province of the jury.

### SAE J3016 is Irrelevant to the Facts and Claims of this Case

Evidence Code section 402 directs a court to admit only relevant evidence to the issues properly before it. The test of relevance is whether the evidence tends to make a fact of consequence more or less probable than it would be without the evidence. *Fed. Rules of Evid.* § 401.

First, there is no evidence that Tesla informed its customers, including Mr. McGee, that it considers its vehicles Level 2. Tesla has not produced any evidence that Tesla included in marketing materials or the owner manuals information that Tesla's vehicles, including Mr. McGee's Model S were considered Level 2 vehicles by Tesla. And the reason is simple: had Tesla informed customers that it considered its vehicles Level 2 under SAE J3016's definitional characterization, customers would most likely not understand or appreciate what that meant. These facts are especially critical when juxtaposed with Tesla's own statements to its customers about the capabilities and safety of vehicles equipped with Autopilot.

Second, none of Tesla's experts or employees will testify at trial that Tesla defines its different Autopilot systems by aligning them with SAE J3016's categorizations. If Tesla did not seek to align its own automated driving systems (i.e., basic Autopilot, enhanced Autopilot, or Full Self-Driving) with the SAE definitions, how can those definitions be relevant to the actual product that Tesla sold to its customers? They can't.

Tesla is improperly seeking to rely on SAE J3016 as an after-the-fact justification for the defects its design of Mr. McGee's vehicle. Since there is no correlation between the Tesla's product, how it was designed and marketed, and SAE J3016 it has no relevance to the facts or issues in this case.

### SAE J3016 Should be Excluded Because its Introduction Will Invariably Confuse the Jury and Unduly Prejudice Plaintiffs

As discussed above, SAE J3016 is not relevant to the facts or issues in this case. As such, it has very little probative value. Introducing it and/or relying on it as evidence will mislead the jury because it conflicts with the law. The assertion that the operator of a vehicle is always and ultimately responsible for correcting Autopilot's mistakes implies that Autopilot can never be a substantial factor in causing a crash. That is the opposite of Florida law. *See Cassisi v. Maytag Co*., 396 So. 2d 1140, 1151–52 (Fla. 1st DCA 1981 ("In a strict liability action, the fact that the defendant was not in control of the product when the injury occurred is obviously not a bar to the application of the product defectiveness inference although it may be a factor for the jury to consider on the question whether the plaintiff's own conduct in fact contributed to his injuries.")

Given the demonstrated lack of probative value of SAE J3016 and the high likelihood of confusion and prejudice, the balancing process requires a finding that it is excludable under Section 403.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court issue an order precluding the introduction of, or reliance on, SAE J3016.

Respectfully submitted,

Dated: January 27, 2025

SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Tel: (619) 771-3473
*/s/ Brett J. Schreiber, Esq.*
Brett J. Schreiber, Esq.
California Bar No. 239707
(Admitted *Pro Hac Vice 05/07/2024*)
*Attorney for Plaintiff Benavides*
bschreiber@singletonschreiber.com
SERVICE EMAILS:
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
eelms@singletonschreiber.com

POSES LAW GROUP, P.A.
169 East Flagler Street, Suite 1600
Miami, Florida 33131
Tel: (305) 577-0200
**/s/Todd Poses**
Todd Poses
Florida Bar No.: 75922
tposes@poseslawgroup.com
maria@poseslawgroup.com
shelly@poseslawgroup.com
*Attorney for Plaintiff Benavides*

THE ROUSSO, BOUMEL LAW FIRM, PLLC.
9350 South Dixie Highway
Suite 1520
Miami, Florida 33156
Tel: (305) 670-6669
**/s/ Adam T. Boumel, Esq.**
Adam T. Boumel, Esq.
Florida Bar No.: 0110727
Adam@roussolawfirm.com
SERVICE EMAILS:
pleadings@roussolawfirm.com (primary)
assistant@roussolawfirm.com
*Attorney for Plaintiff Angulo*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January, 2025, the foregoing document was filed with the Clerk of Court using CM/ECF which will send notices of electronic submission to all parties on the attached service list.

**/s/ Adam T. Boumel, Esq.**
Adam T. Boumel, Esq.
Florida Bar No.: 0110727

8

## SERVICE LIST

**Bowman and Brooke LLP**
41000 Woodward Ave., Suite 200E
Bloomfield Hills, Michigan 48304
**Attn: Joel Smith Esq.**
**Attn:Thomas P. Branigan, Esq.**
**Attn: Whitney Cruz, Esq.**
**Attn: Drew P. Branigan, Esq.**
**Attn: Wendy F. Lumish, Esq.**
Joel.smith@bowmanandbrooke.com
thomas.branigan@bowmanandbrooke.com
whitney.cruz@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com
Wendy.Lumish@bowmanandbrooke.com
*Counsel for Defendant*

**Singleton Schreiber, LLP**
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Tel: (619) 771-3473
**Attn: Brett J. Schreiber, Esq.**
bschreiber@singletonschreiber.com
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
eelms@singletonschreiber.com
*Counsel for Plaintiffs*

**Poses & Poses, P.A.**
169 East Flagler Street, Suite 1600
Miami, Florida 33156
**Attn: Todd Poses, Esq.**
tposes@posesandposes.com
Maria@posesandposes.com
*Counsel for Plaintiffs*

**Eaton & Wolk PL**
2665 South Bayshore Dr., Suite 609
Miami, FL 33133
**Attn: Doug Eaton, Esq.**
deaton@eatonwolk.com
*Counsel for Plaintiffs*