# EXHIBIT L

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-21940-BLOOM/Torres**

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

      Defendant.

_____/

DILLON ANGULO,

      Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

      Defendant.

_____/

Case No. 22-22607-KMM

### TESLA, INC.'S RESPONSE TO PLAINTIFF DILLON ANGULO'S ELEVENTH REQUEST FOR PRODUCTION

Tesla, Inc. ("Tesla"), through its undersigned counsel, responds to Dillon Angulo's Eleventh Request for Production.

### GENERAL OBJECTIONS

1.     Tesla objects to Plaintiff's Instructions and Definitions to the extent Plaintiff's use of them in these requests is an attempt to impose a burden on Tesla that exceeds the requirement of the FRCP.

2.     Tesla objects to Plaintiff's definition of "Level 2 ADAS" to the extent it is inconsistent with the term as defined by the Society of Automotive Engineers.

3.      Tesla objects to Plaintiff's use of the term "Subject Vehicles" as overly broad and not limited to the relevant model, model year, hardware version, or firmware version of vehicle involved in the subject incident.  This definition is also improper because it includes vehicles designed and manufactured after the subject incident, which constitute inadmissible subsequent remedial measures.

4.      Tesla objects to Plaintiff's definition of "Sensors" to the extent it is inconsistent with Tesla's use of the term.

5.      Tesla objects to Plaintiff's definition of "Hardware Suite" to the extent it is inconsistent with Tesla's use of the term.

6.      Tesla objects to Plaintiff's definition of "Software/Firmware Versions" to the extent it is inconsistent with Tesla's use of the term.

7.      Tesla objects to Plaintiff's definition of "LIDAR" to the extent it is inconsistent with plain meaning of the word.

8.      Tesla objects to these requests to the extent that they are not limited to a reasonable period of time, the same or similar model vehicle as the subject vehicle, or component(s) or system(s) at issue as identified in Plaintiffs' Complaint. The determination of scope and the documents produced in response to these Requests are for the purposes of discovery only and not an admission on behalf of Tesla regarding admissibility or responsiveness to the allegations made in this case.

9.      Tesla does not interpret Plaintiff's requests to ask for information about (1) correspondence between Tesla and its attorneys, (2) communications between Tesla, its lawyers or its representatives about the investigation or defense of any claims or lawsuits, including Plaintiff's claims after Tesla learned that a claim would be made, (3)

notes or other work product of Tesla's lawyers, (4) other documents or things created by or for Tesla's lawyers, and (5) documents or things prepared by consulting experts about this or any suit, claim, or anticipated claim. If Plaintiff intends any request for the production of these privileged items, Tesla objects to providing any such information because it is protected from discovery pursuant to attorney-client privilege and/or the attorney work product privilege.

10. Tesla has not yet completed discovery, investigation, or preparation for trial. Accordingly, its responses are based on information presently available and given without prejudice to Tesla's right to further supplement or modify based upon the discovery of additional or different information. Tesla reserves the right to supplement responses to these requests up to the time of trial, as the investigation of the facts and circumstances of this case is ongoing.

11. Tesla reserves all objections and questions as to the competency, relevance, materiality, privilege, proprietary, admissibility, and all other objections on any grounds that would require the exclusion of any information from evidence if the same were sought to be admitted at trial.

## **REQUESTS FOR PRODUCTION**

**REQUEST NUMBER 59:** Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS identifying the SOFTWARE/ FIRMWARE VERSION(S), including all updates thereto, installed in the SUBJECT VEHICLE at any time.

**RESPONSE**: Tesla objects to this Request because it is cumulative of discovery already propounded by Plaintiff and therefore harassing. Tesla also objects to this Request because it is overly broad in its use of the phrase "all documents" and not limited in scope to the relevant time period (from George McGee's purchase of the vehicle to the time of the accident) and because this

Request is not limited to software/firmware on the subject vehicle related to the vehicle systems that Plaintiff has alleged to be defective. Thus, this Request is not proportional to the needs of this case.

Subject to and without waiving these objections, Tesla states that no software updates were applied to the vehicle between the date of purchase and the time of the accident.  Tesla will search for and produce the firmware history for the subject vehicle.

**REQUEST NUMBER 60:**   Produce   all   DOCUMENTS,   ESI,   and/or   INTERNAL COMMUNICATIONS describing updates made to SOFTWARE/ FIRMWARE VERSION(S) installed in the SUBJECT VEHICLE at any time.

**RESPONSE**:  Tesla objects to this Request because it is cumulative of Request 59 and harassing. Tesla also objects to this Request because it is overly broad in its use of the phrase "all documents" and, not limited in scope to the relevant time period (from George McGee's purchase of the vehicle to the time of the accident) and because this Request is not limited to software/firmware on the subject vehicle related to the vehicle systems that Plaintiff has alleged to be defective. Thus, this Request is not proportional to the needs of this case.

Subject to and without waiving these objections, see Tesla's Response to Request 59.

**REQUEST NUMBER 61:**   Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS regarding TESLA's testing, modelling, verification, and/or validation relative or pertinent to, concerning, referencing, or in any way associated with the AUTOPILOT and other ADAS related SOFTWARE/FIRMWARE VERSION installed in the SUBJECT VEHICLE at the time of the SUBJECT INCIDENT.

**RESPONSE**: Tesla objects to this Request because it is vague and ambiguous through its use of the terms "modelling, verification, and/or validation" which are vague, undefined, and subject to varying interpretations.  Tesla also objects to this Request because it is overly broad in its use of the phrase "all documents," unduly burdensome, not limited in scope to the relevant time period or Plaintiff's defect claims, and is not proportionate to the needs of the case.

4

Subject to and without waiving these objections, see Tesla's Response to Request 11 in which Tesla agreed to search for documents related to the validation of Automatic Emergency Braking for the 2019 Tesla Model S with Autopilot Hardware 2.5. In addition, Tesla will search for and produce the sign-off documentation for the firmware version operating at the time of the accident.

**REQUEST NUMBER 62:**   Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS containing, describing, relative or pertinent to, concerning, referencing or in any way associated with complaints by TESLA AGENTS, EMPLOYEES, or OFFICERS about the performance of AUTOPILOT and other ADAS which operated using the HARDWARE SUITE and SOFTWARE/FIRMWARE VERSION installed in the SUBJECT VEHICLE at the time of the SUBJECT INCIDENT.

**RESPONSE**:   Tesla objects to this Request because it is vague, ambiguous and argumentative through its use of the word "complaints."  Tesla also objects to this Request because it is overly broad in its use of the phrase "all documents," unduly burdensome, and not proportionate to the needs of the case.  Specifically, this request amounts to an impermissible "fishing expedition," and is not limited in scope to the subject model, model year vehicle, or Plaintiff's defect claims.  This Request is so broad that it asks for material that would be protected by the attorney-client privilege and work product doctrine.  Tesla objects to searching "internal communications" of the thousands of "Tesla Agents, Employees, or Officers" to determine whether any expressed "complaints…about the performance of Autopilot and other ADAS " as unduly burdensome and not proportionate to the needs of the case.

Subject to and without waiving these objections, because Autopilot was not designed or intended to detect, warn or stop for stop signs or traffic signals at the time of this accident, Tesla reasonably and in good faith believes there are no documents reflecting "complaints" about that circumstance and involving the same hardware/firmware as the vehicle in this case.  Likewise, because Autopilot and Automatic Emergency Braking were not designed or intended to detect,

5

warn or stop for cross-traffic, particularly at high speeds and with the driver pressing the accelerator pedal to maintain a higher speed than Autopilot permitted, as were the circumstances leading up to this accident, Tesla reasonably and in good faith believes there are no documents reflecting "complaints" about that circumstance and involving the same hardware/firmware as the vehicle in this case.

**REQUEST NUMBER 63:**   Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS containing, describing, relative or pertinent to, concerning, referencing or in any way associated with complaints by TESLA customers about the performance of AUTOPILOT and other ADAS which operated using the HARDWARE SUITE and SOFTWARE/FIRMWARE VERSION installed in the SUBJECT VEHICLE at the time of the SUBJECT INCIDENT.

**RESPONSE**:  Tesla objects to this Request because it is vague, ambiguous and argumentative through its use of the word "complaints."  Tesla objects to this Request because it is overly broad in its use of the phrase "all documents," unduly burdensome, and not proportionate to the needs of the case.  Specifically, this request amounts to an impermissible "fishing expedition," and is not limited in scope to the subject model, model year vehicle, Plaintiff's defect claims, incidents allegedly caused by the defect Plaintiff alleges in this case or to accident circumstances that are substantially similar to the circumstances of the subject accident.  This Request is so broad that it asks for material that would be protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving these objections, Tesla searched its records and did not locate any lawsuits involving an accident that occurred prior to the subject accident, involving a 2019 Model S with Autopilot Hardware 2.5, and an allegation that Autopilot failed to detect and slow or stop for the side profile of a parked vehicle.  In the spirit of cooperation, if Plaintiff is aware of any lawsuits believed to be responsive to this Request, Tesla requests counsel identify them and Tesla will investigate and supplement this response, if appropriate.

6

**REQUEST NUMBER 64:**    Produce all Design Failure Mode and Effects Analyses (DFMEA), including drafts and updates, relative or pertinent to, concerning, or in any way associated with the AUTOPILOT and other ADAS related SOFTWARE/FIRMWARE VERSION installed in the SUBJECT VEHICLE at the time of the SUBJECT INCIDENT.

**RESPONSE**: Tesla objects to this Request because it is overly broad, unduly burdensome, and

not proportionate to the needs of the case.  Specifically, this Request amounts to an impermissible

"fishing expedition" because it is not limited in scope to the Autopilot features involved in this

case or Plaintiff's defect claims. Subject to and without waiving these objections, Tesla responds

that Autopilot, including its Automatic Emergency Braking system in the 2019 Model S, was not

designed to detect and prevent a collision with the side profile of a stationary vehicle. Instead,

Automatic Emergency Braking was primarily designed to detect the rear of a lead vehicle in front

of the Model S to reduce the frequency and severity of vehicle-to-vehicle rear-end collisions.

Therefore, no DFMEA relevant to these issues was generated relative to the 2019 Model S,

Autopilot Hardware 2.5 and the firmware version operating at the time of the accident.

**REQUEST NUMBER 65:**    Produce all Design Failure Mode and Effects Analyses (DFMEA), including drafts and updates, relative or pertinent to, concerning, or in any way associated with the SENSORS installed in the SUBJECT VEHICLE.

**RESPONSE**:  Tesla objects to this Request because it is overly broad, unduly burdensome, and

not proportionate to the needs of the case.  Specifically, this Request amounts to an impermissible

"fishing expedition" because it is not limited in scope to the Autopilot features involved in this

case or Plaintiff's defect claims. Subject to and without waiving these objections, Tesla responds

that Autopilot, including its Automatic Emergency Braking system in the 2019 Model S, was not

designed to detect and prevent a collision with the side profile of a stationary vehicle. Instead,

Automatic Emergency Braking was primarily designed to detect the rear of a lead vehicle in front

of the Model S to reduce the frequency and severity of vehicle-to-vehicle rear-end collisions.

Therefore, no DFMEA relevant to these issues was generated relative to the 2019 Model S,

29407922v4

Autopilot Hardware 2.5 and the firmware version operating at the time of the accident.

**REQUEST NUMBER 66:**   Produce all Fault Tree Analyses (FTAs) relative or pertinent to, concerning, or in any way associated with the AUTOPILOT and other ADAS related SOFTWARE/FIRMWARE VERSION in the SUBJECT VEHICLE at the time of the SUBJECT INCIDENT.

**RESPONSE**: Tesla objects to this Request because it is vague, ambiguous, overly broad, unduly burdensome, and not proportionate to the needs of the case.  Specifically, this Request amounts to an impermissible "fishing expedition" because it is not limited in scope to the Autopilot features involved in this case or Plaintiff's defect claims. Subject to and without waiving these objections, Tesla responds that Autopilot including its Automatic Emergency Braking system in the 2019 Model S was not designed to detect and prevent a collision with a side profile stationary vehicle. Instead, Automatic Emergency Braking was primarily designed to detect the rear of a lead vehicle in front of the Model S to reduce the frequency and severity of vehicle-to-vehicle rear-end collisions. Therefore, no FTA relevant to these issues was generated relative to the 2019 Model S, Autopilot Hardware 2.5 and the firmware version operating at the time of the accident.

**REQUEST NUMBER 67:**   Produce all Fault Tree Analyses (FTAs) relative or pertinent to, concerning, or in any way associated with the SENSORS used by AUTOPILOT and other ADAS installed in the SUBJECT VEHICLE at any time.

**RESPONSE**:  Tesla objects to this Request because it is vague, ambiguous, overly broad, unduly burdensome, and not proportionate to the needs of the case.  Specifically, this Request amounts to an impermissible "fishing expedition" because it is not limited in scope to the Autopilot features involved in this case or Plaintiff's defect claims. Subject to and without waiving these objections, Tesla responds that Autopilot including its Automatic Emergency Braking system in the 2019 Model S was not designed to detect and prevent a collision with a side profile stationary vehicle. Instead, Automatic Emergency Braking was primarily designed to detect the rear of a lead vehicle in front of the Model S to reduce the frequency and severity of vehicle-to-vehicle rear-end

collisions. Therefore, no FTA relevant to these issues was generated relative to the 2019 Model S, Autopilot Hardware 2.5 and the firmware version operating at the time of the accident.

**REQUEST NUMBER 68:**    Produce    all    DOCUMENTS    and/or    ESI    describing    the HARDWARE SUITE used in the SUBJECT VEHICLE.

**RESPONSE**: Tesla objects to this Request because it is vague, ambiguous, overly broad in its use of the phrase "all documents," unduly burdensome, and not limited to hardware related to the Autopilot features involved in this case or Plaintiff's defect claims. Plaintiff's definition of "Hardware Suite" encompasses the "in-vehicle onboard computer systems" – of which there are dozens – "used to process data from sensors" – of which there are thousands.  Thus, this Request is not proportionate to the needs of the case.  Subject to and without waiving these objections, Tesla will produce – subject to the extant confidentiality protective order – the Theory of Operation materials relating to Autopilot Hardware 2.5 in the Model S as that document provides an overview of the hardware components comprising the Autopilot driver assist feature.

**REQUEST NUMBER 69:**    Produce all DOCUMENTS and/or ESI specifying, describing, referencing, concerning, or in any way associated with all procedures, including revisions thereto, for labeling in-path stationary vehicles detected by AUTOPILOT or other ADAS in SUBJECT VEHICLES.

**RESPONSE**:  Tesla objects to this Request because it is cumulative of Request 4 and Request 35. Tesla also objects to this Request because it is cumulative and duplicative of Request 72.  Further, Tesla objects that this Request implies that all "in-path stationary vehicles" are amenable to the same detection, planning and controls, but Autopilot including its Automatic Emergency Braking system in the 2019 Model S was not designed to detect and prevent a collision with a side profile stationary vehicle. Instead, Automatic Emergency Braking was primarily designed to detect the rear of a lead vehicle in front of the Model S to reduce the frequency and severity of vehicle-to-vehicle rear-end collisions.

29407922v4

Subject to and without waiving this objection, see Tesla's Responses to Requests 4, 35, and 72.

**REQUEST NUMBER 70:**    Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS relative or pertinent to, concerning, referencing, or in any way associated with TESLA's evaluations of the capability of AUTOPILOT and other ADAS related HARDWARE SUITE and SOFTWARE/FIRMWARE VERSION installed in the SUBJECT VEHICLE at the time of the SUBJECT INCIDENT to avoid a COLLISION with an in-path stationary vehicle absent intervention by the SUBJECT VEHICLE's driver.

**RESPONSE**:  Tesla objects to this Request because it is cumulative and duplicative of Requests 71 and 72.  Further, Tesla objects that this Request implies that all "in-path stationary vehicles" are amenable to the same detection, planning and controls, but Autopilot including its Automatic Emergency Braking system in the 2019 Model S was not designed to detect and prevent a collision with a side profile stationary vehicle. Instead, Automatic Emergency Braking was primarily designed to detect the rear of a lead vehicle in front of the Model S to reduce the frequency and severity of vehicle-to-vehicle rear-end collisions.

Subject to and without waiving these objections, see Tesla's Response to Request 72.

**REQUEST NUMBER 71:**    Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS relative or pertinent to, concerning, referencing, or in any way associated with TESLA's evaluations of the capability of AUTOPILOT and other ADAS-related HARDWARE SUITES and SOFTWARE/FIRMWARE VERSIONS in SUBJECT VEHICLES to avoid a COLLISION with an in-path stationary vehicle absent the SUBJECT VEHICLES' drivers' intervention.

**RESPONSE**:  Tesla objects to this Request because it is vague, ambiguous, overly broad, unduly burdensome, and not proportionate to the needs of the case.  Specifically, this request amounts to an impermissible "fishing expedition," and is not limited in scope.  Tesla also objects to this Request because it is cumulative and duplicative of Request 72.  Further, Tesla objects that this Request implies that all "in-path stationary vehicles" are amenable to the same detection, planning and controls, but Autopilot including its Automatic Emergency Braking system in the 2019 Model

S was not designed to detect and prevent a collision with a side profile stationary vehicle. Instead, Automatic Emergency Braking was primarily designed to detect the rear of a lead vehicle in front of the Model S to reduce the frequency and severity of vehicle-to-vehicle rear-end collisions.

Subject to and without waiving these objections, see Tesla's Response to Request 72.

**REQUEST NUMBER 72:**   Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS relative or pertinent to, concerning, referencing, or in any way associated with TESLA's evaluations of the capability of the AEB system in the SUBJECT VEHICLE to avoid a COLLISION with an in-path stationary vehicle.

**RESPONSE**:   Tesla also objects to this Request because it is cumulative and duplicative of Request 10.  Further, Tesla objects that this Request implies that all "in-path stationary vehicles" are amenable to the same detection, planning and controls, but Autopilot including its AEB system in the 2019 Model S was not designed to detect and prevent a collision with a side profile stationary vehicle. Instead, AEB was primarily designed to detect the rear of a lead vehicle in front of the Model S to reduce the frequency and severity of vehicle-to-vehicle rear-end collisions.  See Tesla's Response to Request 10 of Plaintiff Angulo's Second Requests for Production, wherein Tesla agreed to search for and produce if found, and subject to a Protective Order, documents related to the validation of Automatic Emergency Braking for the 2019 Tesla Model S with Autopilot Hardware 2.5. Beyond this, Tesla objects to this Request because it is overly broad and not proportional to the needs of this case.

**REQUEST NUMBER 73:**   Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS relative or pertinent to, concerning, referencing, or in any way associated with TESLA's evaluations of the capability of the AEB system in SUBJECT VEHICLES to avoid a COLLISION with an in-path stationary vehicle.

**RESPONSE**:   Plaintiff has withdrawn this Request.

**REQUEST NUMBER 74:**   Produce all DOCUMENTS and/or ESI, including INTERNAL COMMUNICATIONS, reports, analyses, evaluations, and testing regarding the use of LIDAR technology in SUBJECT VEHICLES.

**RESPONSE**:  Tesla objects to this Request because it is vague, ambiguous, overly broad, unduly burdensome, and not proportionate to the needs of the case.  Subject to and without waiving these objections, Tesla states that Lidar was not considered or evaluated for use on a 2019 Model S with Autopilot Hardware 2.5.

**REQUEST NUMBER 75:**   Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS describing, relative or pertinent to, concerning, referencing, or in any way associated with TESLA's evaluations of the AEB system's ability to respond to in-path stationary vehicles.

**RESPONSE**:  Tesla objects to this Request as duplicative and cumulative of Requests 72-73 and harassing.

Subject to and without waiving these objections, see Tesla's Response to Request 72.

**REQUEST NUMBER 76:**   Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS that include, describe, relate, or pertain to, concern, reference, or in any way are associated with change requests, change approvals, or change orders for AUTOPILOT and/or other ADAS, including the associated HARDWARE SUITES and SOFTWARE/FIRMWARE VERSIONS installed in the SUBJECT VEHICLE.

**RESPONSE**:  Tesla objects to this Request because it is vague, ambiguous, overly broad, unduly burdensome, and not proportionate to the needs of the case.  Specifically, this request amounts to an impermissible "fishing expedition" because it is not limited in time or in scope to the Autopilot features involved in this case or Plaintiff's defect claims. Tesla also objects to the terms "change requests, change approvals, or change orders" as terms of art not adopted by Tesla in connection with Autopilot development and therefore vague.

Subject to and without waiving these objections, Tesla releases firmware updates regularly, generally every 4-6 weeks, similar to an iPhone or laptop software update.  These firmware updates involve sometimes hundreds of thousands of lines of code that has been changed, deleted, added, or otherwise modified to add features, improve features, or otherwise impact vehicle performance and the driver's experience.  Firmware updates affect many aspects of the vehicle, not just

12

Autopilot.  There are no "change requests, change approvals, or change orders" associated with firmware updates, though firmware updates include, in part, updates addressing software concerns identified in JIRA tickets.  As the vehicle in this case never received a firmware update, there were no changes from delivery to the time of the accident.  Furthermore, Autopilot including its Automatic Emergency Braking system in the 2019 Model S was not designed to detect and prevent a collision with the side profile of a stationary vehicle. Instead, AEB was primarily designed to detect the rear of a lead vehicle in front of the Model S to reduce the frequency and severity of vehicle-to-vehicle rear-end collisions.  Therefore, no JIRA relevant to these issues was generated relative to the 2019 Model S, Autopilot Hardware 2.5 and the firmware version operating at the time of the accident.

**REQUEST NUMBER 77:**    Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS that include, describe, relate, or pertain to, concern, reference, or in any way are associated with change impact analyses for change requests associated with AUTOPILOT and/or other ADAS, including the associated HARDWARE SUITES and SOFTWARE/FIRMWARE VERSIONS installed in the SUBJECT VEHICLE.

**RESPONSE**: See Tesla's Response to Request 76.  Tesla also objects to the terms "change impact analysis for change requests" as terms of art not adopted by Tesla in connection with Autopilot development and therefore vague.

**REQUEST NUMBER 78:**    Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS relative or pertinent to, concerning, referencing, or in any way associated with calibration of the SENSORS in the SUBJECT VEHICLE.

**RESPONSE**:  Tesla objects to this Request because it is vague, ambiguous, overly broad, unduly burdensome, and not proportionate to the needs of the case.  Specifically, this request amounts to an impermissible "fishing expedition" because it is not limited in scope to the sensors on the Subject Vehicle related to Autopilot features involved in this case or Plaintiff's defect claims.

Subject to and without waiving these objections, Tesla will produce – subject to the extant

confidentiality protective order – the Theory of Operation materials relating to Autopilot Hardware 2.5 in the Model S as that document provides an overview of the hardware components comprising the Autopilot driver assist feature.

**REQUEST NUMBER 79:**   Produce all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS describing, referencing, concerning, or in any way associated with SENSOR evaluation and selection for the AUTOPILOT and other ADAS in the SUBJECT VEHICLE.

**RESPONSE**: Tesla objects to this Request because it is vague, ambiguous, overly broad and unduly burdensome. Specifically, this request amounts to an impermissible "fishing expedition" because it is not limited in scope to the sensors on the Subject Vehicle related to Autopilot features involved in this case or Plaintiff's defect claims.

Subject to and without waiving these objections, Tesla will produce – subject to the extant confidentiality protective order – the Theory of Operation materials relating to Autopilot Hardware 2.5 in the Model S as that document provides an overview of the hardware components comprising the Autopilot driver assist feature.

**REQUEST NUMBER 80:**   Produce all DOCUMENTS, ESI, and/or INTERNAL COMMUNICATIONS, reports, analyses, and evaluations that describe, reference, concern, or in any way are associated with the methods by which TESLA ensures its DATA STORAGE SYSTEM, including but not limited to its neural network, interprets and/or classifies data correctly and accurately.

**RESPONSE**: Tesla objects to this Request because it is vague, ambiguous, argumentative, overly broad, unduly burdensome and because it is not relevant to the issues in this case.  Plaintiff does not assert any allegation related to the classification or storage of data.  Plaintiff's definition of "Data Storage System" is likewise overly broad, referencing all systems on the vehicle and within Tesla, recording and utilizing data from all sources in multiple formats, yet this Request asks Tesla to produce "all documents" that "describe, reference, concern, or in any way are associated with the methods…[these systems] interprets and/or classifies data" and ensures the data is

"interpreted" or "classified" "correctly and accurately." This is purely a fishing expedition.

**REQUEST NUMBER 81:** Produce all DOCUMENTS, ESI, and/or INTERNAL COMMUNICATIONS that concern, describe, reference, or are in any way are associated with repairing or otherwise correcting misinterpretations or misclassifications of data in updates made to the SOFTWARE/FIRMWARE VERSIONS installed in the SUBJECT VEHICLE.

**RESPONSE**: Tesla objects to this Request because it is vague, ambiguous, argumentative, overly broad, unduly burdensome and because it is not relevant to the issues in this case. Plaintiff does not allege that data was misinterpreted or misclassified. See Tesla's response to Request 80.

**REQUEST NUMBER 82:** Produce all algorithms used to process fleet data regarding in-path stationary vehicles used by AUTOPILOT and other ADAS and associated HARDWARE SUITE and SOFTWARE/FIRMWARE VERSION(S) installed in the SUBJECT VEHICLE.

**RESPONSE**: Tesla objects to this Request because it is overly broad, unduly burdensome, and not proportionate to the needs of the case. Specifically, this Request amounts to an impermissible "fishing expedition," and is not limited in time, and not limited in scope Plaintiff's defect claims or the components Plaintiff claims to be defective. Tesla also objects to this Request because it is cumulative of Request 4 of Plaintiff Angulo's Second Request for Production and Request 35 of Plaintiff Angulo's Fifth Request for Production. Furthermore, the record clearly shows that the accident was not caused by Autopilot's alleged failure to detect and stop for a stationary object. Instead, as the driver of the Model S, a vehicle equipped with SAE Level 2 advanced driver assistance systems, has admitted several times, he caused the crash because he was distracted by his cell phone that he bent over to pick up, and as a result, he failed to stop for a red flashing light and stop sign at the "T" intersection where the crash occurred. See the transcript of Mr. McGee's admission to police recorded by a police body camera previously produced to Plaintiff; see also the Deposition Transcript of Corporal David Riso at pg. 67:10-68:19.

**REQUEST NUMBER 83:** Produce all algorithms used to process fleet data regarding in-path flashing lights used by AUTOPILOT and other ADAS and associated HARDWARE SUITE and SOFTWARE/FIRMWARE VERSION(S) installed in the SUBJECT VEHICLE.

15

29407922v4

**RESPONSE**:   Tesla objects to this Request because it is overly broad, unduly burdensome, and not proportionate to the needs of the case.  Specifically, this request amounts to an impermissible "fishing expedition," and is not limited in time or scope to Plaintiff's defect claims or the components Plaintiff claims are defective.   Tesla also objects to this Request because it is cumulative of Request 4 and Request 69. Furthermore, the record clearly shows that the accident was not caused by Autopilot's alleged failure to detect and stop for a stationary object. Instead, as the driver of the Model S, a vehicle equipped with SAE Level 2 advanced driver assistance systems, has admitted several times, he caused the crash because he was distracted by his cell phone that he bent over to pick up, and as a result, he failed to stop for a red flashing light and stop sign at the "T" intersection where the crash occurred. See the transcript of Mr. McGee's admission to Police recorded by a Police body camera previously produced to Plaintiff; see also the Deposition Transcript of Corporal David Riso at pg. 67:10-68:19.

**REQUEST NUMBER 84:**     Produce all Software Requirement Specifications for AUTOPILOT and other ADAS related SOFTWARE/FIRMWARE VERSION(S) installed in the SUBJECT VEHICLE.

**RESPONSE**:  Tesla objects to this Request because it is vague and ambiguous in its use of the phrase "Software Requirement Specifications."  If Plaintiff provides additional information, Tesla may be able to respond further.

**REQUEST NUMBER 85:**     Produce all DOCUMENTS and/or ESI related to the Software Design Life Cycle for AUTOPILOT and other ADAS related SOFTWARE/FIRMWARE VERSION(S) stalled in the SUBJECT VEHICLE.

**RESPONSE**:  Tesla objects to this Request because it is vague and ambiguous in its use of the phrase "Software Design Life Cycle."  If Plaintiff provides additional information, Tesla may be able to respond further.

**REQUEST NUMBER 86:**     All INTERNAL COMMUNICATIONS, emails, and electronic

29407922v4

communication (including but not limited to interoffice Instant Messaging services such as SLACK, Microsoft Teams) which discuss:

1.     Camera systems used by the AUTOPILOT system,

2.     Vision systems used by the AUTOPILOT system,

3.     Neural network training of the AUTOPILOT system,

4.     In-path stationary vehicle recognition,

5.     In-path stationary vehicle hazards,

6.     In-path flashing lights,

7.     Label boost as related to in-path stationary vehicle recognition,

8.     VIP Data Sets related to in-path stationary vehicle recognition,

9.     Label boost as related to in-path flashing light recognition,

10.     VIP Data Sets related to in-path flashing light recognition,

11.     The "Monet" fatal COLLISION,

12.     The "Hendrickson" fatal COLLISION, and/or

13.     The SUBJECT INCIDENT,

and which have been sent or received by key AUTOPILOT personnel, including, but not limited to:

a.     Omead Afshar,

b.     Richard Baverstok,

c.     Stuart Bowers,

d.     Craig Castellanos,

e.     Michelle Dang,

f.     Ashok Elluswamy,

g.     Eddie Gates,

h.     Ian Glow,

17

i.       Nicklas Gustafsson,

j.       Alexander Hertzberg,

k.      Andrej Karpathy,

l.       Tolga Kart,

m.     Milan Kovac,

n.      David Lau,

o.      Owen Lloyd,

p.      C.J. Moore,

q.      Elon Musk,

r.       Reyna Ortiz,

s.       Chris Payne,

t.       Arrind Ramanandan,

u.      Michael Rizkalla,

v.      Peter Scheutzow,

w.     R.J. Sekator,

x.      Prianka Sekhar,

y.      Charles Sheih,

z.       Scott Sims,

aa.    Sam Teller,

bb.    Han Zhang,

cc.    and anyone who sent to or received emails from the addresses autopilotsw-staff@tesla.com, autopilotsw-all@tesla.com, and autopilotsw-program@tesla.com.

[**NOTE**:  The requested emails are those with subject matter applicable to SUBJECT VEHICLES,

18

including all AUTOPILOT and ADAS related HARDWARE SUITES and SOFTWARE/FIRMWARE VERSIONS installed in SUBJECT VEHICLES. The period of the requested emails is from January 2016 until the present.]

**RESPONSE**: Tesla objects to this Request because it is compound, overly broad, unduly burdensome, not limited in scope to the Autopilot features alleged to be at issue in this case, the relevant time period, or incidents substantially similar to the subject incident, and not proportionate to the needs of the case. This Request constitutes an improper "fishing expedition" and is harassing, particularly given that trial of this matter is in six months and it would consume inordinate time and resources to respond to this Request. Tesla also objects because the burden and expense of the proposed discovery outweighs any likely benefit where, in addition to the 28 named individuals in this Request, several of whom are not within the Autopilot group, the Request demands Tesla search and produce communications spanning over 8 years from the hundreds, if not thousands, of current and former employees who ever "sent to or received emails from" various email aliases regarding unspecified subject matters including, but not limited to, "Camera systems," "Vision systems" or "Neural network training" of the Autopilot systems. Moreover, the Request reflects an abuse of discovery in seeking to collect discovery on other matters handled by Plaintiff's counsel. Tesla also objects to this Request for "All INTERNAL COMMUNICATIONS" because the scope of that request is broad enough to cover communications protected by the Attorney-Client and Work Product Doctrine privileges.

**REQUEST NUMBER 87:**   Provide copies of all communications, correspondence, emails or DOCUMENTS and/or ESI of any kind received by TESLA from any governmental agency which include any type of recommendations or concerns regarding TESLA's AUTOPILOT or other TESLA ADAS at any point in time.

**RESPONSE**: Tesla objects to this Request because it is vague, ambiguous, overly broad, unduly burdensome, not limited in scope to the relevant model or model year vehicle, hardware, or software version, not relevant to the Autopilot features alleged to be at issue in this case or to

Plaintiff's defect claims, not limited to the relevant time period, and not proportionate to the needs of the case. This Request constitutes an improper fishing expedition for these reasons. Tesla also objects to this Request to the extent it asks for information that is publicly available and equally accessible to Plaintiff.

Subject to and without waiving its objections, Tesla refers Plaintiff to its production of materials exchanged with the National Highway Traffic Safety Administration related to collisions with stationary vehicles. Beyond that, Tesla refers Plaintiff to the Court's ruling at the March 1, 2024 hearing that Recall 23V-838 is an inadmissible subsequent remedial measure, and therefore discovery related to it is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NUMBER 88:**   Provide all DOCUMENTS and/or ESI including INTERNAL COMMUNICATIONS of any kind that refer to any governmental agency recommendations or concerns regarding TESLA's AUTOPILOT and/or other TESLA ADAS at any point in time.

**RESPONSE**:  Tesla objects to this Request because it is vague, ambiguous, overly broad, unduly burdensome, not limited in time or in scope to the relevant model or model year vehicle, hardware or software version, the Autopilot features alleged to be at issue in this case or to Plaintiff's defect claims, and is not proportionate to the needs of the case. This Request constitutes an improper "fishing expedition" for these reasons. Tesla also objects to this Request because it asks for information that is publicly available and equally accessible to Plaintiff. Tesla also objects to this Request for "all communications of any kind" because the scope of that request is broad enough to cover communications protected by the Attorney-Client and Work Product Doctrine privileges.

Subject to and without waiving its objections, Tesla refers Plaintiff to its production of materials exchanged with the National Highway Traffic Safety Administration related to collisions with stationary vehicles. Beyond that, Tesla refers Plaintiff to the Court's ruling at the March 1,

2024 hearing that Recall 23V-838 is an inadmissible subsequent remedial measure, and therefore discovery related to it is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NUMBER 89:**    Produce all DOCUMENTS and/or ESI related to any statistical analyses associated with the safety of the AUTOPILOT system in TESLA vehicles equipped with an AUTOPILOT system, including, **but not limited to**, the following:

1.    copies in native format of TESLA-00014878 and TESLA-00012025 produced in *Harcourt v. Tesla*, in the Superior Court of the State of California, County of Santa Clara, Case No. 19CV358488, with complete data and formulas for all cells in all tabs, and with only Vehicle Identification Numbers redacted.  All cells with "#REF!" should have the data and formulas produced; and

2.    all SPREADSHEETS <u>such as</u> TESLA-00014878 and TESLA-00012025 produced in *Harcourt v. Tesla*, in the Superior Court of the State of California, County of Santa Clara, Case No. 19CV358488, <u>that provide crash statistics and information for</u> TESLA vehicles from April 7, 2015, to the present.

**RESPONSE**:  Tesla objects to this Request because it is duplicative of Requests 55, 56 and 57. Tesla also objects to this Request because it constitutes Plaintiff counsel's repeated violation of the Protective Order in *Harcourt*, and is harassing.  Further, Plaintiff's counsel is aware from deposition testimony obtained in the *Harcourt* matter—which did not involve an Autopilot claim but rather a shifting logic claim (which resulted in dismissal on nonsuit)—that the referenced materials do not "provide crash statistics" and were not generated for, intended for, or used for that or any similar purpose. Tesla also refers Plaintiff to the Court's ruling at the hearing on March 7, 2024 that it was improper to request the production of Bates numbered documents produced in another unrelated lawsuit.

Subject to and without waiving its objections, Tesla refers Plaintiff to Tesla's publicly available Vehicle Safety Report at <u>tesla.com/VehicleSafetyReport</u> and the data already produced to Plaintiffs related to the Vehicle Safety Report for the fourth quarter of 2018 and the first and second quarters of 2019.

**REQUEST NUMBER 90:**    Provide a column of data identifying the SUBJECT VEHICLE's geolocation in each of the Customer Friendly Log Files produced in PROD006, BENAVIDES-00002014_CONFIDENTIAL - BENAVIDES-00002090_CONFIDENTIAL.

**RESPONSE**: Tesla objects to this Request because it is overly broad, not limited to a relevant time period, and seeks information that is irrelevant and not proportionate to the needs of the case. Tesla objects to this Request because it asks Tesla to create a document for the sake of production in violation of Fed. R. Civ. P. 34.  This Request violates the privacy of vehicle owner George McGee and is harassing in that it asks Tesla to provide McGee's vehicle location for a period of nearly one hundred days leading up to the accident.

Subject to and without waiving its objections, Tesla vehicles do not log or record historical "geolocation" information and Tesla does not have and never had information responsive to this Request.  VIN-associated location information is only transmitted to Tesla in connection with a crash event or when the customer consents to it in connection with a service or repair need.

**REQUEST NUMBER 91:**    Provide the same columns of data in PROD006, BENAVIDES-00002014_CONFIDENTIAL - BENAVIDES-00002089_CONFIDENTIAL as were included in BENAVIDES-00002090_CONFIDENTIAL.

**RESPONSE**:  Tesla objects to this Request because it is overly broad and seeks irrelevant information. Tesla objects to this Request because it asks Tesla to create a document for the sake of production in violation of Fed. R. Civ. P. 34.  Tesla also objects to this Request because it is cumulative of several prior requests for diagnostic log data, and because the issue of the production of diagnostic log data was previously addressed and decided by the Court at the March 7, 2024, hearing. Further, as Plaintiff's counsel is aware, the "columns of data" change day-to-day based on the driving behavior or circumstances on a given day (e.g., if the passenger door is opened one day and not the next, it will appear in the logs for the first day but not the second).  Therefore, Tesla cannot generate a production of "the same columns of data" without manually inserting

columns for certain signals and leaving them blank, which is waste of time and resources and is harassing.

**REQUEST NUMBER 92:**     Produce all DOCUMENTS and/or ESI, including Car Log files, Diagnostic Log Data, SIGNALS, and other data along with a glossary of the signal definitions regarding the operation of AUTOPILOT and its various components, including but not limited to AUTOSTEER, during the drive cycle involving the SUBJECT INCIDENT related to the following:

All SIGNALS, including time, date, location, signal unavailable default, and unit of measurement, for the final drive cycle from every vehicle system, including but not limited to ACC, AP, CH, DAS, DI, EPAS3P, ESP, GTW, HVP, LRR, MCU, OCS1P, PM, PT, RCM, UI, VCFRONT, VCLEFT, VCSEC, regarding:

1. Autopilot
   (a) Autosteer
   (b) Traffic-Aware Cruise Control
   (c) Collision Avoidance Assist
   (d) Speed Assist
      i. Related to:
         (a) Steering
         (b) Driver Monitoring
         (c) Vehicle and Motor Speed Control
         (d) Forward Collision Avoidance –
            (i) Detection
            (ii) Prevention
            (iii) Warning
         (e) Crash Detection
         (f) Object Detection –
            (i) Radar
            (ii) Camera
         (g) Road Type Detection
         (h) GPS Data
2. Camera Calibration – All Cameras
3. Driver
   (a) Driver's Seat – all signals
   (b) Signals Reflecting Movement
   (c) Interaction with Steering Wheel
   (d) Interaction with Steering Column
   (e) Interaction with Pedals
4. Brake and Accelerator Pedal Movement
5. Vehicle Braking and Acceleration
6. Gear Selection
7. Vehicle Speed
8. Motor Speed and Torque

23

    9.  Steering
   10. Headlights

**RESPONSE**: Plaintiff has agreed to withdraw this Request as it is duplicative of prior Requests.


Date:  May 24, 2024                  Respectfully submitted,


_s/ Whitney V. Cruz_
**WHITNEY V. CRUZ**
Florida Bar No. 800821
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted _Pro Hac Vice_)
**DREW P. BRANIGAN**
(Admitted _Pro Hac Vice_)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

_Attorneys for Defendant TESLA, Inc._

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>**May 24, 2024**</u>, I served the foregoing responses to all counsel of record via Electronic Mail.

| | |
|---|---|
| **Adam T. Boumel, Esq.** | **Todd Poses, Esq.** |
| Florida Bar No. 0110727 | Florida Bar No. 0075922 |
| The Rousso, Boumel Law Firm, PLLC | Poses & Poses, P.A. |
| 9350 South Dixie Highway | Alfred I. Dupont Building |
| Suite 1520 | 169 East Flagler Street, Suite 1600 |
| Miami, FL 33156 | Miami, FL 33131 |
| Tel. 305-670-6669 | Tel.  305-577-0200 |
| adam@roussolawfirm.com | Fax: 305-371-3550 |
| assistant@roussolawfirm.com | tposes@posesandposes.com |
| pleadings@roussolawfirm.com | maria@posesandposes.com |
| *Attorneys for Plaintiff Dillon Angulo* | *Attorneys for Plaintiff Neima Benavides* |

| | |
|---|---|
| **Brett Schreiber, Esq.** | **Douglas F. Eaton, Esq.** |
| Admitted *Pro Hac Vice* | Florida Bar No. 0129577 |
| **Satyarinivas "Srinivas" Hanumadass, Esq.** | Eaton & Wolk PL |
| Admitted *Pro Hac Vice* | 2665 South Bayshore Drive, Suite 609 |
| **Carmela Birnbaum, Esq.** | Miami, FL 33133 |
| Admitted *Pro Hac Vice* | Tel. 305-249-1640 |
| Singleton Schrieber | Fax: 786-350-3079 |
| 591 Camino de la Reina, Suite 1025 | deaton@eatonwolk.com |
| San Diego, CA 92108 | cgarcia@eatonwolk.com |
| bschreiber@singletonschreiber.com | lhuete@eatonwolk.com |
| vas@singletonschreiber.com | *Co-Counsel for Plaintiffs Dillon Angulo and* |
| cbirnbaum@singletonschreiber.com | *Neima Benavides* |
| jjusto@singletonschreiber.com | |
| eelms@singletonschreiber.com | |
| service@singletonschreiber.com | |
| *Co-Counsel for Plaintiffs Dillon Angulo and* | |
| *Neima Benavides* | |

*s/ Whitney V. Cruz*
Whitney V. Cruz
