# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal Representative
of the Estate of Naibel Benavides Leon, deceased,

     Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

     Defendant.

_____/

DILLON ANGULO,                               Case No. 22-22607-KMM

     Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

     Defendant.

_____/

## TESLA, INC.'S REPLY IN SUPPORT OF MOTION *IN LIMINE*

Respectfully submitted,

**JOEL SMITH**
(*Admitted Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel. 803-726-7420 / Fax: 803-726-7421
joel.smith@bowmanandbrooke.com

**HILARIE BASS**
Florida Bar No. 334243
**HILARIE BASS, ESQUIRE LLC**
2821 Bayshore Drive, UPH-B
Miami, FL 33133
Tel. 305-505-8777
bassh@bassinstitute.org

**WHITNEY V. CRUZ**
Florida Bar No. 800821
**WENDY F. LUMISH**
Florida Bar No. 334332
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com
wendy.lumish@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com
*Attorneys for Defendant Tesla, Inc.*

## <u>TABLE OF CONTENTS</u>

TESLA, INC.'S REPLY IN SUPPORT OF MOTION IN LIMINE ............................................i

I.      REFERENCES TO OTHER INCIDENTS........................................................................2

      A.    Plaintiffs Cannot Satisfy The Test Of Substantial Similarity ..............................2

      B.    Plaintiffs Cannot Establish Notice or Overcome Hearsay ...................................5

      C.    An Evidentiary Hearing Is Required.....................................................................6

II.     REFERENCES TO SUBSEQUENT REMEDIAL MEASURES/RECALL .................7

III.    REFERENCES TO GOVERNMENT INVESTIGATIONs............................................8

IV.    REFERENCES TO THIRD PARTY REPORTS CONCERNING THE
        FUNCTIONING, MALFUNCTIONS, OR MISUSE OF AUTOPILOt .........................8

V.      REFERENCES TO MR. MUSK'S PUBLIC STATEMENTS REGARDING
        FULL SELF-DRIVING (FSD) CAPABILITY ............................................................9

VI.    USE OF INCORRECT AND MISLEADING TERMINOLOGY AND
        REFERENCES TO EVIDENCE CONCERNING MATERIALS RELATED TO
        FUTURE PRODUCTs........................................................................................10

VII.   REFERENCES TO PROMOTIONAL VIDEOS .............................................11

VIII.  TESTIMONY FROM ROBERT SUMWALT .................................................11

IX.    MEDICAL BILLS ...........................................................................................13

X.      PUNITIVE DAMAGES ...................................................................................14

      A.    Preclude Comments Related To Out Of State Conduct.......................................14

      B.    Admissible Evidence As To Amount Of Punitive Damages ...............................15

CONCLUSION...............................................................................................16

CERTIFICATE OF SERVICE .......................................................................18

Tesla, Inc. ("Tesla") files its reply in support of its motion *in limine*. (ECF 320).

## **INTRODUCTION**

Plaintiffs have failed to adequately address the evidentiary issues raised in Tesla's motion *in limine.* Although each category of evidence at issue in Tesla's motion has distinct grounds for inadmissibility, the common thread for all is, Plaintiff's continued effort to try a case about a different driver, a different crash, and a vehicle that did not exist in 2019. The Court should grant Tesla's Motion or, at a minimum, hold an evidentiary hearing in advance of trial to address any outstanding issues.

This trial is about *this* vehicle, *this* driver, *this* crash and the state of technology at the time of this crash. It is uncontradicted that *this* driver, George McGee, crashed while driving his 2019 Tesla Model S because he dropped his phone and was temporarily distracted while searching for it. Yet Plaintiffs seek to try a case about driver complacency caused by overreliance on partial automation systems, like Tesla's Autopilot. There is no evidence that McGee was somehow complacent because he was driving with Autopilot. In fact, *this* driver in *this* car with *this* software had driven *this* route and stopped at *this* stop sign many times without crashing. The only difference is that this time he dropped his phone.

This crash is not attributable to Autopilot. Drivers retrieving dropped items is a well-known and well-documented crash risk. Plaintiffs know this, so they shift their focus, alleging that even if Autopilot did not cause the crash, Tesla technology should have prevented it. But Tesla cannot be held liable for failing to provide crash avoidance technologies that did not exist at the time this Model S was manufactured. *Tesla, Inc. v. Banner,* No. 4D2023-3034, 2025 WL 610816, at *1 (Fla. Dist. Ct. App. Feb. 26, 2025), *petition for reh'g filed,* No. 218758272 (Mar. 13, 2025). Plaintiffs

have pointed to no 2019 model year vehicle that had crash avoidance technology that would have prevented this crash, and none existed.

Although each category of evidence at issue in Tesla's motion has distinct grounds for inadmissibility, the common thread for all is Plaintiffs' effort to try a different case than the one presented by the unique facts of this crash. This case is about a driver who was looking for his dropped phone, and the state of crash avoidance technology in January 2019.

## I.    REFERENCES TO OTHER INCIDENTS

In their Response, Plaintiffs use the sweeping generalization that frontal crashes of Tesla vehicles of multiple models and years, operated by drivers who were inattentive, are admissible. (ECF 348 at 3). That is plainly false. As proponents of other incident evidence, Plaintiffs must demonstrate substantial similarity between ***each*** of the accidents they offer and the circumstances of this crash. They have not and cannot do so.

Most notable is the complete lack of attention Plaintiffs provide to the operative facts of this crash. Plaintiffs ignore that this crash was caused by the driver dropping his cell phone and attempting to retrieve it. Plaintiffs identify no crash where a driver dropped an item in a Tesla, no crash that suggests a driver is more likely to drop something in a Tesla, or is more likely to be distracted while retrieving an item in a Tesla.

### A.    <u>Plaintiffs Cannot Satisfy The Test Of Substantial Similarity</u>

Plaintiffs cite *Davis v. Little Giant Ladder Sys., LLC*., 2022 WL 3924144 (M.D. Fla. Aug. 31, 2022) to argue other incidents need not require identical circumstances, but ignore that in *Davis*, the court examined the circumstances of the other incident and found it was not substantially similar, even though it involved the same product.[1]

---

[1] *See also Sorrells v. NCL (Bah.) Ltd.,* 796 F.3d 1275, 1278 (11th Cir. 2015)(affirming exclusion of 22 incidents of a slip and fall, finding each incident involved different circumstances, including

Florida law is clear that before admitting evidence of other accidents to prove defect, the Court must analyze all aspects of the proffered accidents. *See Bahr v. NCL (Bahamas) Ltd.*, No. 19-cv-22973, 2021 WL 4898218, at \*4 (S.D. Fla., Oct. 20, 2021) ("[I]ncidents must not be too remote in time; [] the conditions must be substantially similar; and [] there must be no prejudice or confusion of the issues that outweighs the probative value of the evidence."); *see also Ford Motor Co. v. Hall-Edwards*, 971 So. 2d 854, 856-60 (Fla. Dist. Ct. App. 2007) (reversing $60 million verdict where "[n]o precautions or measures were taken to ensure that the other accidents were not too remote in time or that the conditions of the accidents were similar").

Here, assessing the similarities between this crash and other accidents requires—at a minimum—an assessment of:

- **Vehicle model and year**, as technologies in Tesla vehicles vary by model, year and trim level;[2]

- **Autopilot engagement**, as McGee's hands were on the wheel, his feet were on the accelerator pedal, and TACC was being overridden in the seconds before this crash;

- **Driver attentiveness**, as McGee was manually driving in the seconds leading up to the crash, and diverted his attention temporarily to pick up his phone; and

---

the shoes being worn, the liquid on which the individual allegedly fell, and the location of the fall).

[2] For example, the subject Model S is equipped with Tesla Autopilot Hardware 2.5 (available on Model Years ("MY") 2017-19) while other Tesla vehicles with Autopilot are equipped with Hardware 1 (MY2014-15); Hardware 2 (MY2016); Hardware 3.0 (MY2019-22) and Hardware 4 or "FSD 2" (MY2023 - Present). Additionally, Tesla has offered Autopilot with various additional options including "Full Self-Driving" capability that was not purchased by McGee. Updates to Autopilot software occur frequently and often include new features for the entire vehicle, not just Autopilot updates. A relevant example of this is Tesla's Stop Light Warning update, which was not applied to McGee's 2019 Model S because he never set up the WiFi access in his vehicle. (*See* Harrington Second Rebuttal Report at 4-5, attached as Exh. A).

- **Crash circumstances**, as the type of roadway, vehicle speed, driving conditions, etc., all impact accident similarity.

Plaintiffs have not offered *any* factual evidence to establish similarity on these basic points.

**Recall events are not substantially similar.** In sharp contrast to what the law requires, Plaintiffs suggest all crashes should be considered appropriately similar due to a recall letter aimed at "collisions in which the frontal plane of the Tesla stuck another vehicle or obstacle in adequate time [from] an attentive [] drivers to respond to avoid or mitigate the crash[.]" (ECF 348 at 3).

This broad view of the accident is precisely what the plaintiff argued in *Hall-Edwards*— claiming there were hundreds of other rollover accidents without regard to the specific facts of each crash—and accepting the plaintiff's arguments led to reversible error. The voluntary Tesla recall itself does not establish the "substantial similarity" of 211 incidents across model types, model years, trim levels and technology packages, not to mention crash circumstances.[3]

**The "55 Autopilot cases" are not substantially similar.** Plaintiffs refer to the 55 Autopilot cases identified in their Consolidated Complaint, but offer no factual basis to assess substantially similarity to the subject crash. And most of the incidents alleged in Plaintiffs' Complaint are unverifiable due to sheer lack of information.

Plaintiffs then assert that Tesla "has admitted that at least 18 of those other collisions occurred when an inattentive driver was driving with Autopilot engaged." (ECF 348 at 4). But

---

[3] The recall at issue was an over-the-air software update that, among other things, increased the frequency of driver alerts "to further encourage the driver to adhere to their continuous driving responsibility whenever Autosteer is engaged." (ECF 320-5). Nothing about the recall notice is relevant here because it does not address the circumstances of this case (driver's conscious choice to distract himself), or the "defects" alleged by Plaintiffs, including ODD or steering detection. Moreover, even before the recall, a driver who repeatedly failed to respond to alerts to put hands on the wheel would "strike out"—that is, Autopilot would disengage and be unavailable until the car was restarted.

Tesla's acknowledgement of reports that a Tesla driver had a crash while Autopilot was engaged and while the driver was distracted for any reason is insufficient to establish the required foundation of substantial similarity between the subject incident and any of the other reported incidents raised by Plaintiffs.

Plaintiffs' argument incorrectly assumes all that is required to establish substantial similarity between this incident and any other is a Tesla crash while (1) Autopilot was engaged and (2) the driver was reported to have been inattentive for any reason. But additional circumstances about the other incidents Plaintiffs offer are surely relevant to determine substantial similarity or lack thereof. For example, was the inattentiveness of the Tesla driver due to intoxication, sleeping, or some form of vehicle misuse? The 18 other incidents that Plaintiffs reference include driver inattentiveness for those reasons—but none of these conditions or reasons for inattentiveness were present in *this* crash. Separately, did the Tesla vehicles involved in the other incidents have the same hardware, software, firmware version, and capabilities and limitations as the 2019 Model S at issue in this case? As detailed above, these latter points are also relevant the issue of substantial similarity.

Simply put, Plaintiffs have presented no factual predicate upon which to assess similarity of these incidents. It would, therefore, be error to allow such evidence. *See Hall-Edwards*, 971 So. 2d at 859 (failure to lay a sufficient predicate establishing substantial similarity of accidents renders the evidence irrelevant as a matter of law).

## B.     Plaintiffs Cannot Establish Notice or Overcome Hearsay

Plaintiffs suggest that the "18 incidents" referenced above are admissible to establish notice of defect. Again, the argument is misguided. If Plaintiffs cannot establish the appropriate similarity among the accidents, they cannot suggest a common "defect" sufficient to provide constructive notice to Tesla. *See Agrofollajes, S.A. v. E.I. Du Pont De Nemours & Co., Inc.*, 48 So. 3d 976, 991-

93 (Fla. 3d DCA 2010), *disapproved on other grounds, Aubin v. Union Carbide Corp.*, 177 So. 3d 489 (Fla. 2015) (trial court erroneously allowed non-parties' prior claims testimony because it believed this demonstrated notice of alleged defect to defendant; the evidence was unduly prejudicial and inadmissible because plaintiffs failed to establish substantial similarity); *Bahr*, 2021 WL 4898218, at *6 (without sufficient factual explanation of the factual similarities, "the Court finds that the Defendant was not put on constructive notice[.]"). Nor does citing the evidence for "notice" alleviate the inherent prejudice. *See Yellow Bayou Plantation, Inc. v. Shell Chem., Inc.*, 491 F.2d 1239, 1242-43 (5th Cir. 1974) (evidence of other lawsuits and complaints offered to show notice properly excluded given faint probative value and high potential for unfair prejudice).

Moreover, the public records hearsay exception does not necessarily render the contents of NHTSA reports or the details of NHTSA investigations admissible, as Rule 803(8) "does not provide for the admissibility of the legal conclusions contained within an otherwise admissible public report." *Hines v. Brandon Steel Decks, Inc*., 886 F.2d 299, 302 (11th Cir. 1989). Any statement contained in a report made by a non-party witness or bystander is inadmissible as hearsay within hearsay. *Jenkins v. Corizon Health Inc.*, 584 F. Supp. 3d 1364, 1369 (S.D. Ga. 2022) (internal quotations omitted) (excluding statements from officer who made report as hearsay not falling within the public records exception). The Court should require certainty about which report or information Plaintiffs seek to admit, and exclude any underlying hearsay or legal conclusions.

### C.   <u>An Evidentiary Hearing Is Required</u>

Given Plaintiffs' failure to individually address each of the "other accidents" they seek to admit, the Court should grant Tesla's motion on the papers. Yet Plaintiffs suggest that the Court should defer ruling until trial. While Tesla acknowledges that there are instances where deferred ruling is appropriate, the issues raised by this motion are so significant that Tesla requests they be

addressed by evidentiary hearing in advance of trial, so the parties can prepare accordingly.

## II.    REFERENCES TO SUBSEQUENT REMEDIAL MEASURES/RECALL

Once again attempting to try the case on issues that are not relevant to this crash and these circumstances, Plaintiffs seek to introduce evidence of a subsequent recall. For all of the reasons identified *supra*., at Section I, the recall is not relevant to this case.

Even if relevant, the recall evidence is inadmissible under Rule 407 as a subsequent remedial measure. Each of Plaintiffs' arguments for exception to this rule—feasibility, punitive damages, and necessity to their case—are unavailing.

***Feasibility*** impacts admissibility only where the defendant contests the feasibility of the subsequent design. *See* FRE 407 ("the court may admit this evidence for another purpose, such as impeachment—or *if disputed*—proving…feasibility"); *AMC v. Ellis*, 403 So. 2d 459, 466 (Fla. Dist. Ct. App. 1981) (allowing evidence of subsequent change where defendant did not explicitly admit that change was feasible); *Bauman v. Volkswagenwerk AG*., 621 F.2d 230 (6th Cir. 1980) (admission of subsequent changes to show feasibility was erroneous where manufacturer did not controvert the feasibility of design changes). Here, Tesla does not dispute the *feasibility* of the subsequent change (the over-the-air software update, that among other things, increased the frequency of driver alerts). (ECF 320-5). As such, the recall is inadmissible for that purpose.

Plaintiffs next argue that the alleged inadequacy of the recall is relevant for ***punitive damages*** but fail to explain the relevance. The recall occurred years after this crash, thus its adequacy is no more relevant or admissible than the recall itself. And leaving aside Tesla's disagreement over Plaintiffs' accusations, Rule 407 does not have an exception for measures that are "wholly inadequate." In fact, the public policy reasons for excluding a product manufacturer's subsequent changes (*i.e.,* to encourage innovation in furtherance of safety) apply with even greater force to Plaintiffs suggestion that Tesla not only made changes made, but those changes did not

solve the "problem."

Finally, Plaintiffs make the vague argument that evidence of the recall should not be excluded where it is "***needed to explain the Plaintiffs' theory***." (ECF 348 at 8). That is a circular argument—if the evidence is not admissible for the reasons above, how can it be used to support Plaintiffs' theory other than as a back door argument to admit otherwise inadmissible evidence?

Ultimately, Plaintiffs must demonstrate a basis for admission of evidence. If they believe there is a basis for introducing the recall evidence at trial, they should be required to seek Court permission *before* proceeding—the burden should not be on Tesla to object.

## III.   REFERENCES TO GOVERNMENT INVESTIGATIONS

Plaintiffs are correct that Tesla seeks to exclude the investigation related to Full Self-Driving, which is (among other reasons) necessarily irrelevant, as this case does not involve a vehicle with Full Self-Driving capability. (*See* ECF 320 at 11). Plaintiffs again seek to try a case about a different technology than that in McGee's 2019 Model S.

Beyond that, Plaintiffs' assertion that they intend to offer evidence of completed investigations—presumably the investigations leading to the recall—are inadmissible for all the reasons stated above, including hearsay and lack of similarity. Moreover, as set forth in Tesla's Motion for Summary Judgment, this Court has already concluded that a claim of negligent misrepresentation cannot be predicated on a third party's (McGee's) reliance on alleged misrepresentations. (ECF 206 at 10:19-11:1). Therefore, investigations concerning those alleged misrepresentations are further irrelevant.

## IV.   REFERENCES TO THIRD PARTY REPORTS CONCERNING THE FUNCTIONING, MALFUNCTIONS, OR MISUSE OF AUTOPILOT

Tesla has demonstrated multiple reasons why third-party reporting on Autopilot's functions, including media accounts and videos, is inadmissible. (ECF 320 at 12). Plaintiffs'

response is unavailing.

First, Plaintiffs claim these reports are relevant to demonstrate notice that "Tesla became aware that its customers were misusing Autopilot, and causing accidents as a result." (ECF 348 at 9). As detailed above, Plaintiffs have not demonstrated that these other incidents occurred under circumstances similar to this case, so the evidence is not relevant or admissible for ***any*** purpose. *See*, *e.g.*, *Agrofollajes*, 48 So. 3d 976; *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W. 3d 131, 141-42 (Tex. 2004) (rejecting other-incident admissibility to demonstrate notice).

Plaintiffs next argue that the ***unidentified*** evidence might be admissible for ***some*** purpose, so the Court should defer its ruling. Plaintiffs' vague suggestion of some potential evidentiary purpose is insufficient. Tesla requests that the Court impose preliminary parameters on the admission of such evidence (e.g., no reports or videos from Tesla owners because they are irrelevant, hearsay and violative of FRE 403; no reports or commentary about Full Self-Driving ("FSD") capability vehicles because McGee did not purchase the FSD capable option for his Model S) so the parties can better prepare for trial.

## V.    REFERENCES TO MR. MUSK'S PUBLIC STATEMENTS REGARDING FULL SELF-DRIVING (FSD) CAPABILITY

In what may be the most egregious effort to try a case about a different vehicle and different driver, Plaintiffs continue to insist they can rely on statements by Mr. Musk as to FSD capability. Not only did McGee not purchase a FSD capable vehicle, but he specifically admits that he did not pay attention to anything Musk said or did about the Tesla before he bought it, that Musk's statements did not affect his decision to purchase the Model S and *did not affect his use of the vehicle*. (ECF 325 at ¶29). There is no possible link between Mr. Musk's statements and McGee's conduct at the time of this crash. Reference to those statements is not only irrelevant under FRE

401, but unfairly prejudicial, confusing and misleading to the jury under FRE 403. If this case is to be tried about this car and this driver, this evidence must be excluded.

Plaintiffs respond that the issue is not what McGee heard, but rather what the ordinary consumer would have understood. While Tesla disputes that the consumer expectation test is the proper in this case,[4] Plaintiffs' argument fails regardless of defect test.

First, Plaintiffs' argument is predicated on their pursuit of a negligent misrepresentation claim, despite the Court's prior rulings on misrepresentation. Indeed, the case they rely on is a negligent misrepresentation case. *See Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831 (Fla. 2022) (discussing proof necessary for a fraudulent misrepresentation claim).

Second, Plaintiffs claim the Court cannot evaluate whether a particular statement was "forward looking, [and aspirational]" without reviewing the statement. (ECF 348 at 10). Yet they fail to identify the statements they intend to introduce. Again, Tesla should not have to wait until trial to learn what evidence Plaintiffs intend to offer. Because Plaintiffs failed to identify the evidence they seek to admit beyond the broad description of "representations regarding full self-driving and Autopilot," Tesla's motion should be granted at this time.

## VI.   USE OF INCORRECT AND MISLEADING TERMINOLOGY AND REFERENCES TO EVIDENCE CONCERNING MATERIALS RELATED TO FUTURE PRODUCTS

While they claim they will not mischaracterize the capabilities of the subject vehicle, Plaintiffs admit they intend to offer evidence that Tesla "exaggerated" or "overpromised" the capabilities of the Autopilot system. (ECF 348 at 11). That is the exact issue of this motion. As a Level 2 vehicle, the Model S is not a "self-driving car," or "autonomous," and does not replace the

---

[4] Tesla has addressed this in its Motion for Summary Judgment (ECF 326) and will address it further in its upcoming Reply in Support of Summary Judgment; Tesla hereby incorporates those arguments by reference.

driver. *See* https://www.sae.org/blog/sae-j3016-update. Plaintiffs, their counsel, and their witnesses should be instructed not to call the Model S "autonomous" or "self-driving," or imply that McGee's vehicle was equipped with Tesla's "Full-Self-Driving Capability," as these characterizations are inaccurate (and therefore irrelevant) and risk unfair prejudice and confusion of the issues under FRE 403.

## VII.   REFERENCES TO PROMOTIONAL VIDEOS

Plaintiffs argue that Tesla's promotional videos, including an October 2016 video set to "Paint it Black" by The Rolling Stones, are relevant because of alleged misrepresentations of vehicle capabilities. (ECF 348 at 11). Yet Plaintiffs continue to ignore that the context and timing of the video matters. The video showed a level of hands-free driving that could only be achieved with more advanced software than was on McGee's Model S. On that basis alone, that video is irrelevant. But more so, it is irrelevant because McGee had his hands on the wheel.

Additionally, the video was released by Tesla in a blog post referencing ***future*** capabilities of the technology, not vehicles or software then-available to the public.

Finally, Plaintiffs' expert Cummings concedes there is no evidence McGee saw the video. (ECF 318-6 at 255). While Plaintiffs hope to taint the jury with this type of evidence, once again, evidence that is untethered to the facts of this case is irrelevant, and any probative value is outweighed by the danger of unfair prejudice.

## VIII.   TESTIMONY FROM ROBERT SUMWALT

Robert Sumwalt is a "fact" witness to nothing relevant in this case and his testimony should be excluded. Plaintiffs' Response finally lays bare their real motivation to bring Sumwalt before a Jury in this case:

> Here, we intend to offer testimony from Mr. Sumwalt explaining that NTSB's safety recommendations (admissible under the public record hearsay exception) were transmitted to Tesla and other car companies, but that Tesla was the only

> company that failed to respond to the recommendations. Mr. Sumwalt will further testify that during one of his conversations with Mr. Musk, Mr. Musk simply hung up on him, evidencing Mr. Musk's disdain for safety regulators that persist to this day in his new role as the head of DOGE, which has been busy shutting down investigations into his various companies.

(ECF 348 at 13).

First, Tesla does not dispute that the NTSB's safety recommendations were transmitted to Tesla and other car companies or that Tesla did not respond to those recommendations. Sumwalt's testimony on this undisputed issue will simply waste time and should be excluded under FRE 403 for that reason alone. Further, however, Tesla was under no obligation to respond to any NTSB safety recommendation; thus, testimony that Tesla chose not to respond proves nothing.

Plaintiffs' rank speculation about the reason for Mr. Musk's termination of a telephone call with Sumwalt—a call that had nothing to do with this case—is not a legal basis for Sumwalt to testify about that call. Plaintiffs' statement: "… Mr. Musk simply hung up on him, evidencing Mr. Musk's disdain for safety regulators that persist to this day in his new role as the head of DOGE, which has been busy shutting down investigations into his various companies" now makes clear (if there was ever doubt) that Plaintiffs' real intention is to have Sumwalt inject his speculative opinions about Mr. Musk before the Jury. Such speculation is not admissible under FRE 401 and FRE 403.

Additionally, even as a former NTSB board member and employee, Sumwalt's testimony is controlled by 49 C.F.R § 835 and his testimony is subject to its strict limitations. In no uncertain terms, section 835.7, which is titled "Testimony of former board employees," mandates that "**the scope of permissible testimony continues to be constrained by all limitations set forth in sect. 835.3 and sect. 835.4**" (emphasis added). In response to Plaintiffs' notice to the NTSB that Plaintiffs intended to depose Sumwalt, the NTSB's general counsel explicitly stated no deposition should proceed if neither Sumwalt nor the NTSB conducted a factual investigation of the incident.

(*See* Letter from NTSB General Counsel at 1-2, attached as Exh. B). That is the case here, as confirmed at Sumwalt's deposition. As provided in 49 C.F.R. § 835.3, "Board employees may only testify as to the factual information they obtained during the course of an investigation ... they shall decline to testify regarding matters beyond the scope of their investigation, and they shall not provide any expert or opinion testimony." 49 C.F.R. § 835.3(b). And while section 835.4 allows an employee to use his or her factual accident reports as a testimonial aid and to refresh recollection, the employee is precluded from identifying or otherwise using an NTSB final accident report for any purpose during the testimony, as NTSB probable cause reports are barred from introduction as evidence in civil litigation. 49 C.F.R. § 835.4(b); *see In re Lawrence W. Inlow Accident Litigation*, Cause No. IP 99-0830-CH/K, at *1 (S.D. Ind. Apr. 16, 2002) (granting motion to strike NTSB probable cause report); *see also Petroleum Helicopters, Inc. v. Rolls Royce Corp*., No. 1:15-cv-00840-TWP-DML, at *5 (S.D. Ind. Jan. 17, 2017) (granting motion to exclude reference to NTSB probable cause report).

The Benavides crash was not investigated by the NTSB or Sumwalt, so testimony related thereto should be excluded. Moreover, Sumwalt's speculative thoughts about phone calls with Mr. Musk are not relevant to this case and should excluded under FRE 401 and 403. Any attempt by Plaintiffs to call Sumwalt as an undisclosed expert should also be precluded pursuant to this Court's expert disclosure Order and 49 C.F.R § 835.3.

## IX.    MEDICAL BILLS

It appears Plaintiffs have agreed that any evidence of medical expenses is limited to amounts paid by Plaintiffs or owed by Plaintiffs.

X.      **PUNITIVE DAMAGES**

A.      <u>**Preclude Comments Related To Out Of State Conduct**</u>

The U.S. Supreme Court has recognized that the Fourteenth Amendment's Due Process Clause prohibits the imposition of arbitrary punishment. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). To this end, the Supreme Court has been clear that a jury in one state cannot punish a defendant for lawful or unlawful conduct in another state. *Campbell*, 538 U.S. at 421. Moreover, a defendant should only be punished for conduct that harmed the Plaintiffs in the case, and not for conduct affecting non-parties or for "dissimilar acts." *Campbell*, 538 U.S. at 422-23; *Phillip Morris USA v. Williams*, 549 U.S. 346, 353 (2007).

Plaintiffs challenge these settled principles, arguing that the Supreme Court does not "limit[] the evidence a Plaintiff can present of harm to others resulting from the tortious acts of Tesla ***across the country*** in proving entitlement to punitive damages." (ECF 348 at 14). Plaintiffs appear to contemplate a trial strategy akin to what the Supreme Court expressly rejected in *Campbell*, where the jury awarded the Campbells punitive damages based on State Farm's bad faith in handling their insurance claim. The *Campbell* jury heard evidence that State Farm engaged in a national scheme to meet corporate fiscal goals by capping payouts on claims, which practices had occurred for decades.

***First***, while *Campbell* held that "[l]awful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability in the State where it is tortious," even Plaintiffs recognize that the Court cabined that statement such that the "[lawful out-of-state] conduct ***must have a nexus to the specific harm suffered by the plaintiff***." *Campbell*, 538 U.S. at 422.

***Second***, to the extent Plaintiffs intend to introduce other incidents in support of their punitive damages claim, he substantial similarity requirement is equally applicable when presented in support of a punitive damages claim. *See Hall-Edwards*, 971 So. 2d at 859-60. Indeed, given

the potential for arbitrary punishment under the cloak of punitive damages, the substantial similarity requirement should be particularly exacting in these circumstances.

Ultimately, however, because Plaintiffs have not identified what evidence it intends to offer of out-of-state conduct or harm to others, Tesla requests an order requiring Plaintiffs to identify such evidence prior to trial, and an opportunity to be heard as to such evidence prior to trial.

**B.**     **Admissible Evidence As To Amount Of Punitive Damages**

In response to Tesla's argument, Plaintiffs rely on outdated law and misrepresent Florida's jury instruction on the issue.

***First***, Plaintiffs rely on law predating *Campbell* to argue that evidence of a defendant's net worth is admissible. (ECF 348 at 14-15 (citing decisions from 1998 and 2001)). In so doing, Plaintiffs ignore the U.S. Supreme Court's pronouncements on the issue of evidence of a defendant's wealth in *Campbell*, where the Court reiterated the three guideposts by which any award of punitive damages must be measured: (1) ratio to compensatory award; (2) reprehensibility of defendant's conduct; and (3) civil penalties for comparable conduct. 538 U.S. at 427. The Court expressly noted that the lower court's reliance on State Farm's wealth was a "departure from the well-established constraints on punitive damages." *Id.* It reasoned that "punitive damages pose an acute danger of arbitrary deprivation of property . . . the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences." *Id.* at 418; *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996).

Relatedly, because Tesla's financial condition necessarily relates to its overall business operations, evidence of Tesla's financial condition would encourage the jury to unconstitutionally punish it for lawful business operations, for conduct unrelated to Plaintiffs, and for extraterritorial

activities that the state cannot punish. *Campbell,* 538 U.S. at 421; *Gore,* 517 U.S. at 572-73; *Phillip Morris USA v. Williams*, 549 U.S. 346, 354 (2007).

**Second**, Plaintiffs' reliance on the Florida Standard Jury Instruction is misplaced, as that instruction refers to evidence of a defendant's "financial condition," not its "net worth." Fla. Std. Jury Instr. 503.2.

As such, if the Court concludes that Plaintiff may proceed with a claim of punitive damages, Tesla requests a hearing during which the parties may address what evidence of Tesla's financial condition, if any, may be presented to the jury.

## **CONCLUSION**

WHEREFORE, Defendant Tesla, Inc. requests that this Court grant its motion *in limine*.

Respectfully submitted,

*s/ Wendy F. Lumish*
**WHITNEY V. CRUZ**
Florida Bar No. 800821
**WENDY F. LUMISH**
Florida Bar No. 334332
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com
wendy.lumish@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**JOEL SMITH**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel. 803-726-7420 / Fax: 803-726-7421
joel.smith@bowmanandbrooke.com

**HILARIE BASS**
Florida Bar No. 334243
**HILARIE BASS, ESQUIRE LLC**
2821 Bayshore Drive, UPH-B
Miami, FL 33133
Tel. 305-505-8777
bassh@bassinstitute.org

*Attorneys for Defendant TESLA, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 24, 2025, the foregoing was filed using the

Court's CM/ECF system, which will send electronic notice of the same to all interested parties.

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
adam@roussolawfirm.com
assistant@roussolawfirm.com
pleadings@roussolawfirm.com

*Attorneys for Plaintiff Dillon Angulo*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHREIBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel.  305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

*s/ Wendy F. Lumish*
Wendy F. Lumish

18