# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

      Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,
      Defendant.

_____/

DILLON ANGULO,

      Plaintiff,                                 Case No. 22-22607-KMM

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

      Defendant.

_____/

## TESLA, INC.'S REPLY STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1 (a)(3), Tesla, Inc. files its response to Plaintiffs' additional facts in support of its statement of undisputed facts in support of its motion for summary judgment as to all of Plaintiffs' claims. (ECF 325).

### Prefatory Statement

Plaintiffs' L.R. 56.1 Counter Statement to Tesla, Inc.'s Statement of Undisputed Facts and Statement of Additional Material in Support of Plaintiffs' Opposition to Tesla, Inc.'s Summary Judgment violates the letter and the spirit of L.R. 56.1(b) by offering dozens of purported statements of undisputed material fact that either (a) are not factual in nature, (b) are disputed but *immaterial*, or (c) both. Most often and most obviously, they have done so by referencing their

experts' conclusions, analysis, or inaccurate recitation of the case facts in support of their assertions.[1] Clearly, an opposing expert's conclusions are not undisputed facts, to say nothing of the fact that their experts should be excluded from testifying at trial. (*See* ECF 318). However, because their so-called "facts" are so incorrect, so misleading, and so pejorative, Tesla is forced to respond, as it has, with detailed explanation by way of reference to the record.

It seems clear that Plaintiffs' strategy has been to invite disputes from Tesla in hopes of misleading the Court into concluding that summary judgment should be denied merely because there are so many apparent "disputes." The Court should not be misled. As explained herein, Plaintiffs have raised *no* factual disputes that are relevant to the reasons Tesla should be granted summary judgment.

### Reply to Plaintiffs' Additional Material Facts[2]

83.     Undisputed but not relevant and subject to Tesla's motions *in limine*. (*See* ECF 320 at 3-12, 15-18). The referenced investigation did not concern this driver, this vehicle, or this crash. Moreover, it is inadmissible by virtue of its origin in an NTSB investigation. *Id.* First, Plaintiffs cite to the deposition testimony of Robert Sumwalt, the former Chairman of the NTSB. (*See Id.* at 15-18; ECF 347-4 at 118-21). Second, the underlying NTSB report concerning the referenced investigation is itself inadmissible under the NTSB's own regulations. *See* 49 U.S.C. § 1154(b); *Chiron Corp. and PerSeptive Biosystems, Inc. v. National Transp. Safety Bd.*, 198 F.3d 935, 940

---

[1] Plaintiffs cite only to their experts in 71 instances, and they reference their experts as partial support in 10 additional instances.

[2] Consistent with L.R. 56.1(c), Tesla has not replied to the purported factual disputes Plaintiffs attempt to raise in response to Tesla's Statement of Undisputed Material Facts (SUMF). However, they employed the same tactics of referring to their experts and/or raising irrelevant or misleading disputes in response to Tesla's SUMF. Collectively, they attempt to make the same points they raise in their Counterstatement. However, to be clear. Tesla does not agree that they have raised material disputes by way of their response to Tesla's SUMF, for the reasons described in herein in.

(D.C. Cir. 1999). The *Chiron Corp.* court made clear that this restriction applies to "reports of the Board" rather than "factual accident report[s]" from NTSB investigators, but, as Plaintiffs' cited testimony makes clear, the report in question is precisely this sort of "report of the Board." (*See Id.* at 940-41 and ECF 347-4 at 34:3-10). More simply, the reference to this investigation is a backdoor effort to discuss a dissimilar incident that is not the subject of this lawsuit.

84.     Disputed, not relevant, and misleading.  The inadmissible report (*see* Tesla's Reply at 83) listed the quoted language as a *probable* cause, not *the* cause, as Plaintiffs assert. (*See* 5.17.16 NTSB Report at p. vi, attached as Exh. A).

85.     Undisputed but not relevant, misleading, and subject to Tesla's motions *in limine*. (*See* ECF 320 at 3-12, 15-18). The NTSB made a similar recommendation to several other automakers and to NHTSA, the federal regulator for automotive safety. (*See* Exh. A at 43-44). NHTSA rejected the recommendations. (*See* 6.22.20 NHTSA Response Letter to NTSB at p. 2, attached as Exh. B). Therefore, this assertion misleadingly represents that the NTSB had singled out Tesla's Level 2 system as uniquely unsafe and inconsistent with the state of the art, and it exacerbates the misleading nature of the assertion by suggesting the federal government supports Plaintiffs' assertion, when NHTSA has done precisely the opposite. (*See Id.* at 2-4).

86.     Undisputed but not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 83). This assertion is particularly immaterial and misleading because, as NHTSA explained in the aforementioned response, "With SAE Level 2 automation the driver is expected to remain fully and continuously engaged in the driving task. However, driver distraction is already a known safety issue and may be a factor while driving with advanced driver assistance systems engaged as well." (Exh. B at 2).

87.     Undisputed but not relevant, misleading, and inadmissible. (*See* Tesla's Reply at

83). Additionally, this assertion is inadmissible because it is hearsay that does not fall outside of any exception. *See* FRE 802. Moreover, the referenced testimony is irrelevant and misleading because it did not concern this event and instead has only been offered in an effort to create unfair prejudice. *See* FRE 403. Finally, the referenced testimony is misleading because Plaintiffs fail to include additional testimony from Sumwalt's deposition wherein he either acknowledged that the other automakers that did respond to the NTSB indicated they also use a steering wheel torque-based driver monitoring system like Tesla's or testified that he was not familiar with their responses. (*See* ECF 347-4 at 206-18). The responses by the other automakers Sumwalt said he was unfamiliar with did indicate that those other automakers utilized such a steering wheel-based driver monitoring system.

88.     Undisputed but not relevant, misleading, and inadmissible because it is subject to Tesla's motion *in limine*. (*See* ECF 320 at 9-11). Moreover, it is immaterial and misleading because it fails to acknowledge that NHTSA closed the investigation after accepting Tesla's assertion in its recall notice that the recall was intended to "prevent driver misuse" of Autopilot. (*See* ECF 252-2 at 3; ECF 320-5 at 3). Likewise, the assertion ignores NHTSA's above-quoted statements regarding Level 2 automation and driver distraction. (*See* Tesla's Reply at 86). This omission is particularly significant because the Tesla driver here acknowledged he was reaching for his dropped cell phone when this crash occurred and because driver inattention due to reaching for a dropped object, such as a cell phone, in vehicles that are not equipped with Autopilot or other Level 2 ADAS is known to have been the cause of other fatal crashes, including ones in Florida. (*See* ECF 325 at 7-10; NHTSA Study Titled "The Economic and Societal Impact of Motor Vehicle Crashes, 2019" at 134-39, attached as Exh. C; Article Titled "Identifying the Main Factors Contributing to Driving Errors and Traffic Violations" at 60, 66, attached as Exh. D; Description

in Cades 1.3.25 Deposition of Contents of Florida Crashes Caused by Dropped Objections at 152-53, 161, 186, attached as Exh. E).

89.     Undisputed but not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 88).

90.     Undisputed but not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 88).

91.     Undisputed but not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 88.

92.      Undisputed but not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 88).

93.     Undisputed but not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 88). Additionally, this assertion is particularly not relevant and misleading because the Tesla driver here, McGee, testified, *inter alia*, that he understood that Autopilot did not make the car "self-driving," that he understood it was his "responsibility as the driver of the vehicle—even with Autopilot activated—to drive safely and be in control of the vehicle at all times[,]" and that he was "highly aware that [it] was still [his] responsibility to operate the vehicle safely." (*See*  ECF 325 at 30-39).

94.     Disputed and inadmissible. First, this assertion is inadmissible for the reasons stated in Tesla's motion *in limine*. (*See* ECF 320 at 9-11). Although Tesla did issue a voluntary recall that include the quoted language, the quoted language does not accurately convey Tesla's position, as stated in the recall notice, which included the following: "While not concurring with the agency's analysis, in the interest of resolving EA22-002, Tesla determined on December 5, 2023, to voluntarily administer a recall and provide the remedy described [in the recall notice]." (Exh. B

at 4). Likewise, Plaintiffs ignore that driver misuse of Autopilot is the described "Safety Risk" in the recall notice and that NHTSA accepted this finding in the closing resume it issued for its investigation. (*Id.* at 3).

95.     Disputed and inadmissible. First, this assertion is inadmissible for the reasons stated in Tesla's motion *in limine* regarding References to Subsequent Remedial Measures/Recall. *See* ECF 320 at 9-11). Additionally, it is incorrect because it misattributes the source of the quoted language. (Exh. B at 4).

96.     Undisputed but not relevant, misleading, and inadmissible. This assertion is inadmissible for the reasons stated in Tesla's motion *in limine*. (*See* ECF 320 at 9-11). Additionally, it is misleading and immaterial because it is incorrectly premised on the unproven (and unproveable) assertions that Autopilot was not designed to operate on a road such as the one where this crash occurred and that it could not be safely used on this road. This assertion ignores McGee's multiple acknowledgments that he understood Autopilot did not make the vehicle "self-driving," that he understood he was responsible for driving safely and remaining in control of the vehicle, and that he caused the crash because he looked away from the road to retrieve a dropped cell phone. (*See* ECF 325 at 3-12, 30-39). Similarly, the assertion fails to acknowledge that Plaintiffs' own expert, Moore, testified that the crash was avoidable by an attentive driver and Plaintiffs' expert, Cummings, testified that the crash could have been avoided or mitigated if McGee had seen the stop sign and road edge. (*See* ECF 325 at 46-47).

97.     Undisputed but not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 94, 96). This assertion is also not relevant and misleading because it is offered to suggest the opening of an investigation—in this case, a Recall Query, which is a type of routine NHTSA investigation concerning with determining the effectiveness of a recall remedy—is equivalent to a

finding that there is a safety risk. (*See* NHTSA's "Risk-Based Processes for Safety Defect Analysis and Management of Recalls" at 11-13, attached as Exh. F).

98.     Undisputed but misleading because it suggests McGee did not understand that it was his responsibility to remain in control of the vehicle, did not understand that it was his responsibility to operate the vehicle safely, and that he did not understand that Autopilot did not make the vehicle "self-driving."  He testified that he did understand all of those things. (*See* ECF 325 at 30-32; *see also* ECF 325 at 33-39). Likewise, this assertion incorrectly suggests that Tesla did not adequately warn of the system's limitations and did not adequately explain the driver's responsibility for ensuring safe operation of the vehicle. (*See* ECF 325 at 17-29).

99.     Undisputed but misleading. (*See* Tesla's Reply at 98).

100.    Undisputed.

101.    Undisputed.

102.    Disputed and misleading. Tesla does refer to the version of Autopilot in McGee's Tesla as "beta," but Plaintiffs' assertion is false and contrary to the definition of "beta" that Tesla provided to users. First, the Autopilot in McGee's 2019 Model S was a "finished product" at the time of the crash that provided driver assistance when used properly and in accordance with the warnings and instructions provided by Tesla. (*See* ECF 325 at 18-20). Before activating Autopilot for the first time, a driver must agree to a user agreement that describes Autopilot as "beta" and provides Tesla's definition of "beta": "To be clear, when we say 'beta,' we do so to encourage a higher level of vigilance. If this were PC desktop or mobile software, we would not refer to it as such. It is simply that we believe the standard for the term should be considerably higher for control of a vehicle." (*See* ECF 318-10).

103.    Disputed and misleading. (*See* Tesla's Reply at 93). He more generally testified

that he was aware of Autopilot's limitations and his responsibility to remain aware and in control of the vehicle. (*See Id.* at 33-38).

104.    Disputed and misleading. (*See* Tesla's Reply at 93).

105.    Undisputed that McGee made the quoted statement but misleading because the selective quotation ignores other relevant portions of McGee's testimony that make clear he knew he was responsible for staying aware and in control of the vehicle while using Autopilot. (*See* Tesla's Reply at 93).

106.    Disputed and misleading. Tesla provided ample warnings and instructions about Autopilot's limitations and its proper and intended use, and McGee's testimony proves he understood the system's limitations and his responsibilities to remain aware and in control. (*See* Tesla's Reply at 93; ECF 325 at 13-28). Additionally, the District Court of Appeal of the State of Florida has found that Tesla's Autopilot is state of the art "and complied with all industry and regulatory standards." *Tesla, Inc. v. Banner,* No. 4D2023-3034, 2025 WL 610816, at *1 (Fla. Dist. Ct. App. Feb. 26, 2025), *petition for reh'g filed,* No. 218758272 (Mar. 13, 2025).

107.    Undisputed that McGee received 23 "strikeouts" during the time he owned the vehicle but disputed that "many [were] less than 10 minutes apart," and not relevant and misleading because McGee's hands were detected on the wheel in the seconds leading up to the crash and because he had turned off its TACC by pressing the accelerator. (*See* Tesla's Reply at 123; ECF 320-3).

108.    Undisputed.

109.    Undisputed but not relevant, misleading, and subject to Tesla's *motion in limine*. (*See* ECF 320 at 14-15). The referenced video was released by Tesla in a blog post that referenced future capabilities of the technology, but the vehicle and software in the video were not available

to the public; moreover, there is no evidence that McGee saw the video, as Plaintiffs' expert Cummings has conceded. (*See* ECF 318-6 at 255; ECF 318-9 at 46-47).

110.    Undisputed but not relevant, misleading, and subject to Tesla's *motion in limine*. (*See* Tesla's Reply at 109).

111.    Undisputed but not relevant, misleading, and subject to Tesla's *motion in limine*. (*See* ECF 320 at 13-14). McGee testified that he was not familiar with any statements Musk made about Autopilot and that no such statements affected his decision to purchase the vehicle or how he used it. (*See* ECF 318-9 at 233-34).

112.    Undisputed but not relevant in regard to the statement that "[v]ehicles are frequently stopped on the roadside, and the road is used by bicyclists and pedestrians" because Plaintiffs and their experts do not claim this crash occurred because of these possible road conditions. This assertion is also misleading insofar as the statement that there "is no roadside lighting for much of the road" ignores that there was an overhead flashing red light, a visible stop sign, and multiple road end signs at the intersection where the crash occurred. (*See* ECF 325 at 5). Plaintiffs' expert Moore testified that there was a clear and unobstructed view of this intersection for "a long distance," at least 1000 feet. (*See* ECF 318-2 at 89-91).

113.    Disputed and misleading. In support of this assertion, Plaintiffs cite to their expert Moore's report and deposition for the offered definition of an Operational Design Doman (ODD), which in turn cites to the Society of Automotive Engineers (SAE) Recommended Practice J3016 titled *Taxonomy and Definitions for Terms Related to Driving Automation Systems for On-Road Motor Vehicles*. (*See* ECF 318-1 at 4). However, SAE J3016 states that, for a Level 2 system like Autopilot, "at all times" the driver "[d]etermines whether/when engagement and disengagement of the driving automation system is appropriate." (*Id.* at 21). It is only when a vehicle is equipped

with Level 3 ADAS that the SAE indicates the system should disengage outside of the ODD (Autopilot is a Level 2 system). The paper goes on to explain that although "a given driving automation system feature has only one ODD, [] that ODD may be quite varied and multi-faceted." (*Id.* at 26). Thus, while Plaintiffs' definition of ODD is quoted accurately, it is incomplete and misleading because it ignores the driver's role in determining the ODD for a Level 2 system.

114.    Disputed and misleading because it conflates Tesla's warnings and instructions regarding where and how to use Autopilot with Autopilot's ODD. (*See* Tesla's Reply at 113). The incorrect and misleading nature of Plaintiffs' assertion is exacerbated because it is "supported" by a partial quote from an uncited portion of Tesla's owner's manual. The full quotation reads, "Traffic-Aware Cruise Control is *primarily* intended for driving on dry, straight roads such as highways and freeways." (ECF 318-10 at 1877) (emphasis added). The owner's manual goes on to explain, in a section concerning Autopilot's Autosteer feature, that "Autosteer is intended for use only by a fully attentive driver on freeways and highways where access is limited by entry and exit ramps. If you choose to use Autosteer on residential roads, a road without a center divider, or a road where access is not limited, Autosteer may limit the maximum allowed cruising speed." (*Id.* at 1885). It goes on to clearly explain this limitation and the driver's responsibility to maintain awareness and control of the vehicle such circumstance. *Id.* Thus, the owner's manual's description is consistent with the SAE's description of a Level 2 System's ODD and contradicts Plaintiffs' assertion about Autopilots ODD. (*See Id.*; Tesla's Reply at 113).

115.    Disputed and misleading. First, Tesla's owner's manual does not use the term ODD (or Operational Design Domain) and Plaintiffs' citation (their expert Cummings' Report) does not assert that it does. (*See* ECF 318-5 at 1 (Plaintiffs' citation); ECF 318-10). Plaintiffs' assertion is also incorrect and misleading because it does not accurately define ODD. (*See* Tesla's Reply at

113).

116.     Disputed and misleading. (*See* Tesla's Reply at 113).

117.     Undisputed but misleading. Although Autopilot was engaged, McGee had turned off the speed control function, TACC, at the time of the crash by pressing the accelerator so as to cause the vehicle to travel at approximately 61 miles per hour (Autosteer, the lateral assistance feature, remained active). (*See* ECF 320-3; Tesla's Reply at 123). In accordance with the limitations described in Tesla's owner's manual, Autopilot had restricted the vehicle's maximum automated speed to 45 miles per hour because of the nature of Card Sound Road. (*See Id.* and ECF 318-10 at 1885).

118.     Undisputed.

119.     Disputed and misleading. (*See* Tesla's Reply at 98).

120.     Undisputed that McGee made this assertion but disputed in regard to its substance, and not relevant and inadmissible because McGee is a layperson that is unqualified to make such an assertion.  The assertion is simply incorrect because it misrepresents Autopilot, automatic emergency braking (AEB), and front collision warning (FCW). (*See* Tesla's Reply at 107, 123, 127). Additionally, McGee told 911 and police on scene that he caused the crash because he looked away from the road to find his cell phone. (*See* ECF 325 at 8-9).

121.     Disputed and misleading because it misrepresents the definition of ODD in a Level 2 system. (*See* Tesla's Reply at 113). Likewise, Plaintiffs' assertion is inadmissible because it relies upon an inadmissible NTSB Report. (*See* Tesla's Reply at 83-87).

122.     Disputed and misleading because it misrepresents the definition of ODD in a Level 2 system. (*See* Tesla's Reply at 113). Additionally, this assertion is incorrect because it inaccurately describes restrictions on the locations where competitor's Level 2 systems can

operate. (*See* Super Cruise Convenience and Personalization Guide at 11, attached as Exh. G; Ford Mustang MACH-E Owner's Manual 2023 at 253, attached as Exh. H).

123.     Undisputed but misleading. When Autopilot is engaged in a restricted use roadway such as Card Sound Road, it will reduce driving speed and limit the set speed to 45 miles per hour *if the accelerator is not depressed*. (*See* Tesla's Reply at 117). If the accelerator is depressed so as to exceed 45 miles per hour limitation, TACC is disabled and the vehicle will reach whatever speed the driver desires. *Id.* McGee was pressing the accelerator at the time of the crash, which turned off the speed control function's 45 miles per hour limitation and caused the vehicle to travel at approximately 60 miles per hour. *Id.*

124.     Undisputed but not relevant and misleading. (*See* Tesla's Reply at 123).

125.     Undisputed but not relevant and misleading. This is misleading and irrelevant because the fact that certain things were detected at certain times does not mean the vehicle could have or should have responded to those things.  In an effort to confuse and mislead the Court (and ultimately the jury), Plaintiffs fail to explain why these things that were "detected" by the vehicle were not and should not have been controlled for by Autopilot, AEB, or FCW.  First, "augmented video" is a tool Tesla developed to enable human engineers to view what the vehicle was detecting by overlaying real-time data values from the vehicle's sensor's detections onto video from that vehicle. Augmented vision translated what had been detected into a human-readable format on the video. (*See* ECF 318-3 at Exh. 7, ¶¶ 7-10; Shoemaker Depo. 1/8/25 at 93:9-97:22, attached as Exh. I).[3] This enabled Tesla engineers to assess what the vehicle's sensors were detecting (and when) so that they were able to assess the effectiveness of detection functions, all in service of product

---

[3] Tesla no longer uses augmented vision because it has replaced it with a more sophisticated system that serves a similar function.  *Id.*

improvement. *See Id.;* DefenseScoop and Forbes Articles Describing Shadow Mode, attached as Exh. J). Not everything the vehicle's sensors detected that can be seen on the augmented video were connected to the system's control functions. Some of those detections were made by the vehicle's contemporaneously running "shadow mode." Shadow mode is a well-known machine learning tool used by Tesla to assist with the development of new, even more advanced features than those currently incorporated in a vehicle. *Id.* Shadow mode allows the detection and prediction functions of new features to operate without their being connected to any vehicle control function. *Id.* This enables evaluation of the reliability and safety of those functions of new features in a real-world context without enabling those features or otherwise affecting the established product performance. *Id.* The purpose of shadow mode is to confirm that the detection and prediction functions of new features are reliable enough to safely connect to control functions. *Id.* The stop sign and stop bar detections by the vehicle's sensors seen in the augmented video from this crash were detected by the vehicle's shadow mode function, and thus Plaintiffs' assertion is not relevant and misleading because it suggests the vehicle could have or should have responded to those things, even though Plaintiffs' expert Moore has acknowledged it should not have. (ECF 318-3 at 150:21-153:4). The end of road/drivable space detection is irrelevant and misleading because it was related to the vehicle's TACC function, which was turned off because McGee was pressing the accelerator. (*See* Tesla's Reply at 123). Plaintiffs' references to the pedestrian and Tahoe detections are also irrelevant and misleading because they were not detected as in the vehicle's lane of travel and, therefore, were not things that AEB or FCW was designed to respond to. (*See* Tesla's Reply at 127, 128, 160).

      126.    Undisputed but not relevant and misleading. The augmented video shows that the vehicle's sensors did detect both the longitudinal and lateral limits of drivable space. However,

TACC (Autopilot's longitudinal control function) had been turned off because McGee was pressing the accelerator. (*See* Tesla's Reply at 117, 123). This can be seen in a still frame from the augmented video that Plaintiffs' expert Moore confirms shows that "ACC" was "OFF". (*See Id.*; ECF 318-3 at 101:5-103:11; ECF 318-3's Exh. 7 at 5). Thus, this assertion is not relevant and misleading because it suggests Autopilot should have stopped the vehicle when, in fact, McGee had turned off that function. (*See* Tesla's Reply at 117, 123). This was precisely how the system should have and was intended to operate, as was described in the owner's manual. (*See* Tesla's Reply at 117, 123; ECF 318-10 at 1885). The vehicle did not leave the lateral drivable space, so the fact of that detection is irrelevant. The second proposition is not relevant and misleading because (i) the system had given multiple hands-on-wheel reminders to McGee in the time leading up to the crash, (ii) McGee had his hands on the wheel at the time of the crash, (iii) Plaintiffs' expert Moore acknowledged there was a clear and unobstructed view of the roadway from at least 1000 feet away, (iv) McGee acknowledged he was looking away from the road while searching for his dropped cell phone at the time of the crash, and (v) McGee testified that he was aware of his responsibilities to remain aware and in control. (*See* Tesla's Reply at 102, 93, 106, 112, 116, 131).

127.    Undisputed but not relevant and misleading because it incorrectly suggests that the Owner's Manual provides that FCW is designed to issue a warning any time something is detected within 525 feet of the vehicle. First, the Owner's Manual's reference is to "an approximate area of up to 525 (160) meters *in the driving path*." (ECF 318-10 at 1897) (emphasis added). More importantly, however, the Owner's Manual also explains, "[FCW] is for guidance purposes only and is not a substitute for attentive driving and sound judgment. Keep your eyes on the road when driving and never depend on [FCW] to warn you of a potential collision." *Id.* It then explains there

are several factors that "can reduce or impair performance, causing either unnecessary, invalid, inaccurate, or missed warnings." *Id.* Finally, the Owner's Manual warns, "Depending on [FCW] to warn you of a potential collision can result in serious injury or death." *Id.* In addition, as can be seen in still images from the augmented video that are contained in Plaintiffs' experts' declarations, the momentary and changing detections of the off-road pedestrian and Tahoe were detected by the Tesla's sensors as being in "Lane Unknown." (*See* ECF 318-7; ECF 318-3's Exh. 7 at 5). The system would not and should not stop for detections that are not identified as in the lane of travel of the subject vehicle. (*See* Tesla's Reply at 160).

128.    Disputed, not relevant, and misleading. First, this assertion is not even consistent with the cited portion of Plaintiffs' expert report, which states that the vehicle detected "potential" obstacles. (*See* ECF 347-3). This assertion is also not relevant and misleading because the Tahoe was not in the Tesla's lane of travel and was detected by the vehicle's sensors as being in "Lane Unknown". Instead, it was parked perpendicular to and partially in the lane of travel. (*See* ECF 347-1; Tesla's Reply at 125). Additionally, AEB is not designed or expected to activate for perpendicular vehicles that are not in the lane of travel. (*See* Tesla's Reply at 160).

129.    Undisputed but not relevant and misleading. (*See* Tesla's Reply at 125, 128, 160).

130.    Disputed and misleading. (*See* Tesla's Reply at 113).

131.    Disputed. First, Florida's Fourth District Court of Appeal has determined that Tesla's driver monitoring system was state of the art. *See Tesla, Inc. v. Banner*, No. 4D2023-3034, 2025 WL 610816, at *1 (Fla. 1st DCA Feb. 26, 2025), *petition for reh'g filed*, No. 218758272 (Mar. 13, 2025). The subject vehicle's driver monitoring system is consistent with NHTSA's published guidance. (*See* "Human Factors Design Guidance for Level 2 and Level 3 Automated Driving Concepts" at 40-48, 65, attached as Exh K). It used escalating alerts, incorporated multiple

alert modalities, provided alerts in an accessible manner, incorporated strategies for minimizing false and nuisance alerts, and provided alerts that support driver comprehension. *Id.* Moreover, 77 out of 81 model year 2019 vehicles (like the subject vehicle) utilized driver monitoring systems that were similar to Tesla's in that they used hands-on-wheel sensing to monitor the driver. (*See* 2019 MY DMS Review, attached as Exh. K). Finally, Plaintiffs offer no testing or evaluation to support their assertion that an alternative driver monitoring system would be a more effective alternative design.

132.    Disputed and misleading because it suggests McGee did not understand how to use Autopilot or his responsibility to remain aware and in control of the vehicle at all times. (*See* Tesla's Reply at 93). Additionally, neither Plaintiffs' experts Moore (upon whom they rely for this assertion), nor Cummings has offered any support for the conclusion that additional or different training would have prevented this crash, and they have not identified any other vehicle manufacturer that provides such hypothetical training.

133.    Undisputed but not relevant and misleading. Although McGee did misuse the system, Plaintiffs' assertion is misleading because it suggests McGee did not understand how to use it or his responsibility to remain aware and in control. (*See* Tesla's Reply at 103). Additionally, neither Plaintiffs' experts Moore (upon whom they rely for this assertion), nor Cummings has offered any testing or evaluation to support the assertion that an alternative system would have prevented this crash. Finally, and most pertinently, Plaintiffs' assertion fails to account for the single most important undisputed fact, which is that McGee's inattention was caused by his reaching for a dropped cell phone when this crash occurred. Driver inattention due to reaching for a dropped object, such as a cell phone, in vehicles that are not equipped with Autopilot or other Level 2 Automated Systems is known to have been the cause of other fatal crashes, including ones

in Florida. (*See* ECF 325 at 7-10; Tesla's Reply at 33). This is the prime example of Plaintiffs' attempt to try a different crash than the one McGee caused.

134.     Disputed and misleading. First, this is misleading because it suggests that Tesla's use of the term "beta" indicates that Autopilot cannot be used safely. (*See* Tesla's Reply at 102). Additionally, this assertion simply ignores that McGee actively chose to enable Autopilot after being prompted with a warning about its limitations that included Tesla's definition of "beta." *Id.*

135.     Disputed and misleading. (*See* Tesla's Reply at 113, 93, 123).

136.     Disputed and misleading. First, this is misleading because it misrepresents the driver's role in defining the ODD in a vehicle with Level 2 ADAS. (*See* Tesla's Reply at 113). Additionally, it inaccurately describes Cadillac Supercruise's restrictions on use in certain locations (that Plaintiffs then improperly conflate with its ODD). (*See* Tesla's Reply at 122).

137.     Disputed and subject to Tesla's motion *in limine*. (*See* ECF 320 at 9-11). First, the "one-week disablement of Autosteer" Plaintiffs' expert Moore refers to is one of a suite of features that were included in the software update that was provided as part of the above-discussed voluntary recall; thus, this assertion is subject to Tesla's motion *in limine*. Regardless, it is inaccurate and speculative because Moore has simply assumed that McGee's strikeout cadence in the days leading up to the crash would have been unchanged by the updated software package. Additionally, McGee had turned off TACC in the seconds leading up to the crash (by pressing the accelerator pedal) and his hands were detected on the wheel (while he was looking for his dropped cell phone); given these inputs, the updated features would not have changed the outcome. (*See* ECF 320-3; EDR Data from Subject Vehicle, attached as Exh. L).

138.     Undisputed but not relevant and misleading because the subject vehicle was a Level 2 automated system and Plaintiffs' assertion fails to account for the driver's role in determining

the ODD in a Level 2 automated system. (*See* Tesla's Reply at 113).

139.    Disputed. As described above, at the time of the crash, McGee had turned off the vehicle's TACC function by pressing the accelerator pedal. (*See* Tesla's Reply at 123). Plaintiffs' expert Moore acknowledged that "the driver is overriding the set speed using the accelerator pedal." (ECF 318-3 at 116:6-7).

140.    Disputed and misleading insofar as this assertion suggests the subject vehicle was not safe or that it caused this crash. (*See* Tesla's Reply at 93, 113, 123, 132, 137).

141.    Disputed, not relevant, and misleading. (*See* Tesla's Reply at 125-28, 160). Additionally, Plaintiffs do not even attempt to connect assertions numbered 3, 5, and 6 to the crash. Finally, the assertions regarding drivable space are irrelevant and misleading because McGee had disabled Autopilot's TACC function by pressing the accelerator pedal. (*See* Tesla's Reply at 117).

142.    Disputed. (*See* Tesla's Reply at 93, 131).

143.    Disputed and misleading. (*See* Tesla's Reply at 93, 131).

144.    Disputed. (*See* Tesla's Reply at 93, 106, 133, 137, 139).

145.    Disputed. Tesla's chimes, visual warnings, and strikeout system did encourage corrective action. (*See* Tesla's Reply at 131). Additionally, McGee knew he was responsible for remaining aware and in control of the vehicle at all times. (*See* Tesla's Reply at 93).

146.    Disputed. (*See* Tesla's Reply at 131, 137).

147.    Undisputed but not relevant and misleading. (*See* Tesla's Reply at 132).

148.    Undisputed.

149.    Disputed and misleading. (*See* Tesla's Reply at 113, 98, 93).

150.    Undisputed but misleading. Tesla's Owner's Manual does contain these statements, but it includes other relevant language. Thus, because the Owner's Manual speaks for itself,

Plaintiffs' assertion is misleading insofar as it does not provide a complete recitation of the warnings and instructions contained therein. (*See* ECF 318-10 at 1874-1901). Most pertinently, Plaintiffs' fail to include the Owner's Manual's language that explains what drivers should do and expect when they "choose to use Autosteer on residential roads, a road without a center divider, or a road where access is not limited[.]" (*See Id.* at 1885).

151.    Disputed. (*See* Tesla's Reply at 98, 93, 132).

152.    Undisputed but misleading because it suggests that Tesla does not adequately warn and inform drivers that they are responsible for remaining aware and in control and that McGee did not have such understanding. (*See* Tesla's Reply at 98, 93).

153.    Disputed. (*See* Tesla's Reply at 131).

154.    Disputed. (*See* Tesla's Reply at 131).

155.    Disputed, not relevant, misleading, and subject to Tesla's motions *in limine*. (*See* ECF 320 at 9-12; Tesla's Reply at 83, 88).

156.    Disputed, not relevant, and misleading. (*See* Tesla's Reply at 113, 137). Moreover, Plaintiffs do not allege Autosteer caused the subject vehicle to enter the path of the parked Tahoe. Additionally, this assertion ignores the Owner's Manual warning concerning the described circumstance. (*See* Tesla's Reply at 150). Finally, this assertion is misleading because it ignores that McGee disabled TACC by pressing the accelerator. (*Id.* at 117).

157.    Disputed, not relevant, and misleading because it ignores that McGee turned off Autopilot by pressing the accelerator. (*See Id.* at 123). Likewise, this is not relevant because McGee stated he was looking for his dropped cell phone, not at his center display, when the crash occurred. (*Id.* at 98, 93). Finally, Plaintiffs' expert Cummings, upon who they rely for this assertion, provides no support for the conclusion that Tesla's visual message is not consistent with

industry standards. (*Id.* at 88, 93).

158.   Undisputed but not relevant and misleading. (*See* Tesla's Reply at 98, 933, 157).

159.   Undisputed but not relevant and misleading. (*See* Tesla's Reply at 125-128, 160).

160.   Undisputed but not relevant and misleading because these were detected by the vehicle's shadow mode, not by any system that could control the vehicle. (*See* Tesla's Reply at 125). Additionally, McGee had turned off TACC by pressing the accelerator. (*See* Tesla's Reply at 123). Finally, AEB was not designed to apply the brakes for stop signs or the end of a roadway. (*See* ECF 318-10 at 1898). As the owner's manual provides, AEB is designed to detect in-lane objects travelling in front of the Tesla and its functionality can be affected when vehicles are partially in the path of travel. *Id.* This is consistent with NHTSA's description of the purpose of such functions, which is to assist in preventing front-to-rear vehicle-to-vehicle crashes. (*See* NHTSA Paper Titled "Target Crash Population For Crash Avoidance Technologies in Passenger Vehicles, Target Crash Population" at 1, 5, 8 and Appendix D 1-4, attached as Exh. M).

161.   Disputed, misleading, and not relevant. (*See* Tesla's Reply at 125-128, 160). Additionally, the Owner's Manual does not provide that "control will revert to the driver if an obstacle is detected at or less than 525." (*See* ECF 318-10).

162.   Disputed, not relevant, and misleading. (*See* Tesla's Reply at 125-28, 160).

163.   Disputed, not relevant, and misleading. First, on its own terms, this is not an assertion of fact but is instead Plaintiffs' expert's "theory"-based conclusion. This theory is incorrect because, yet again, Plaintiffs and their experts ignore that McGee had turned off TACC by pressing the accelerator. (*See Id.* at 123). This is especially egregious because the document Plaintiffs' expert Cummings refers to in support of that assertion indicates that a response to the end of drivable space is a TACC function. (Tesla Quarterly Report 6/15/18 at 3240, attached as

Exh. N). Additionally, the assertion regarding the end of drivable space is not relevant and misleading because McGee turned off Autopilot by pressing the accelerator. (*See* Tesla's Reply at 123).

164.    Disputed, not relevant, and misleading. First, this assertion mischaracterizes the function of augmented video, which plays no role in vehicle control (and indeed does not even exist while the vehicle is travelling on the path later shown in the augmented video). (*See* Tesla's Reply at 125). Additionally, the assertion ignores that McGee had turned off Autopilot's speed control function by pressing the accelerator. (*See* Tesla's Reply at 123).

165.    Disputed, not relevant, and misleading. (*See* Tesla's Reply at 125-28, 160).

166.    Disputed and misleading. (*See* Tesla's Reply at 98, 102-03). Additionally, Plaintiffs' expert Cummings' statement that the term "beta" "only further causes confusion for drivers," is not a fact but rather an opinion unsupported by any testing or other evaluation.

167.    Disputed, misleading, and subject to Tesla's motions *in limine*. (*See* ECF 320 at 3-11; Tesla's Reply at 88). Additionally, Plaintiffs do not even attempt to support the assertion that there are other accidents that are "very similar to McGee's," much less that they are "common."

168.    Undisputed but not relevant and misleading because McGee testified that he knew the subject vehicle was not "self-driving." (*See* Tesla's Reply at 98, 93).

169.    Disputed but not relevant and misleading because McGee testified, he did not see any videos or hear any statements from Elon Musk that impacted his decision to purchase the subject vehicle or how he operated it. (*See* Tesla's Reply at 111). Additionally, the subject vehicle was accompanied by ample clear warnings and instructions regarding Autopilot, and McGee testified that he knew he was responsible for remaining aware and in control. (*See* Tesla's Reply at 98; *see also* Reply at 93).

170.    Disputed but not relevant and misleading. The cited testimony from Plaintiffs'
expert Cummings concerns purported statements by Elon Musk that she asserts misled McGee
about Autopilot's capabilities and limitations. This is incorrect and, indeed, impossible because
McGee testified that he was not familiar with any such statements. (*See* Tesla's Reply at 98).

171.    Undisputed but not relevant and misleading. This assertion is not relevant because
McGee testified that he was not familiar with any statements made by Elon Musk. (*See* Tesla's
Reply at 98). Additionally, it is misleading because the phrase "Elon Musk admitted…" suggests
something improper and because the language quoted in Plaintiffs' assertion is incomplete and
taken out of context. (*See* ECF 351-2 at 11). The misleading nature of the quoted language is
exacerbated because Plaintiffs' assertion fails to acknowledge that it is consistent with the above-
described Beta User Agreement, which provides, "Those interested in a more robust Autosteer
experience should wait as fleet learning refines Autosteer performance over hundreds of millions
of miles." (*See* ECF 318-10).

172.    Undisputed but not relevant. This paragraph is simply introductory language
indicating Plaintiffs' intent to offer assertions from a declaration that was submitted by their expert
Cummings as part of their response to the SUMF.

173.    Disputed, misleading and inadmissible. (*See* Tesla's Response at 83, 93, 113). As
an initial matter, this is inadmissible because it is based on a declaration from Plaintiffs' expert
Cummings that was produced for the first time with Plaintiffs' Counterstatement in response to
Tesla's SUMF. Thus, insofar as the declaration contains new or different expert opinions and
analysis from Cummings, it is untimely and fails to comply with the requirements for the
disclosure of expert testimony.  *See* FRCP 26(2)(B) and (D). Insofar as the declaration is repetitive
of Cummings' previously disclosed opinions, it is inadmissible for the reasons stated in Tesla's

Motion to Exclude Plaintiffs' Experts. (*See* ECF 318 at 18-27). Thus, the declaration also violates Rule 56(c)(4), FRCP (requiring declaration submitted in opposition to motions for summary judgement "set out facts that would be admissible in evidence"). Additionally, it is disputed and misleading for the reasons stated above. (*See* Tesla's Reply at 83, 93, 113).

174. Disputed, misleading, and inadmissible. (*See* Tesla's Reply at 173).

175. Disputed, not relevant, misleading, and inadmissible. (*See* 111, 169, 170, 173).

176. Disputed, misleading, and inadmissible. (*See* Tesla's Reply at 173). Additionally, this assertion is incorrect because Tesla's system did not "allow" drivers to take their hands off the wheel for "extended periods of time," because Tesla's driver monitoring system was state of the art and consistent with those of its competitors, and because McGee had his hands on the wheel while he was searching for his dropped cell phone at the time of the crash. (*See* Tesla's Reply at 131, 137).

177. Disputed, not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 173, 132).

178. Disputed, not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 173). This assertion is an argument rather than an undisputed statement of fact. Additionally, it is not relevant and misleading for the reasons stated above. (*See* Tesla's Reply at 83, 85, 102, 93, 106, 114, 131). Moreover, the District Court of Appeal of the State of Florida has determined—with specific reference to Tesla's steering wheel torque-based driver monitoring system, rather than a camera-based system—was state of the art. *See Tesla, Inc. v. Banner,* No. 4D2023-3034, 2025 WL 610816, at *1.

179. Disputed, not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 173). This assertion is an argument rather than an undisputed statement of fact. It is Plaintiffs' expert's

unsupported assumption. Second, this assertion is inadmissible. (*See* Tesla's Reply at 173). Third, it violates L.R. 56.1(b)(2) because it is not "supported by specific, pinpoint references to particular parts of record material[.]" Instead, the assertion generally refers to depositions without page citation. The assertion is also false because Tesla's driver monitoring system was state of the art, as Florida's Fourth District court of Appeal has found. *See Tesla, Inc. v. Banner,* No. 4D2023-3034, 2025 WL 610816, at *1; *see also* Tesla's Reply at 131. Additionally, it is not relevant and misleading for the reasons described above. (*See* Tesla's Reply at 83, 85, 102, 193, 106, 114, 131).

180.    Disputed, not relevant, misleading, inadmissible, and offered in violation of L.R. 56.1(b)(2). (*See* Tesla's Reply at 173. 179). Additionally, Plaintiffs' unproven premise that there was "a better DMS design" ignores that Tesla's system was state of the art, as has been recognized by Florida's Fourth District Court of Appeal. *See Tesla, Inc. v. Banner,* No. 4D2023-3034, 2025 WL 610816, at *1; *see also* Tesla's Reply at 131.

181.    Disputed, not relevant, misleading, inadmissible, and offered in violation of L.R. 56.1(b)(2). (*See* Tesla's Reply at 173, 179). Additionally, this is not relevant and misleading, as described below in more detail, because it references statements that concerned a different driver monitoring system than the one incorporated in the subject vehicle. (*See* Tesla's Reply at 187, 197). It is also not relevant and misleading for the reasons described above. (*See* Tesla's Reply at 103, 106).

182.    Disputed, not relevant, misleading, inadmissible, and offered in violation of L.R. 56.1(b)(2). (*See* Tesla's Reply at 173, 179). In fact, the generally referenced deposition testimony states only that the witness was not personally familiar with any such "organized effort." Third, this is, on its face, an argument based upon Plaintiffs' expert's speculation rather than a purported statement of fact. Additionally, it is not relevant and misleading for the reasons stated above. (*See*

Tesla's Reply at 93, 106, 131). Finally, Tesla's system was state of the art, as has been recognized by Florida's Fourth District Court of Appeal. *See Tesla, Inc. v. Banner,* No. 4D2023-3034, 2025 WL 610816, at *1; *see also* Tesla's Reply at 131.

183. Disputed, not relevant, misleading, inadmissible, and offered in violation of L.R. 56.1(b)(2). (*See* Tesla's Reply at 173, 179). It is not a statement of undisputed, but, instead, is an argument based upon Plaintiffs' expert's speculative conclusion regarding alleged "false confidence." (*See* ECF 318 at 18-27). Regardless, it is not relevant and misleading because it ignores the facts of this case, as described above. (*See* Tesla's Reply at 102, 93, 106, 131). Finally, the entire premise of this assertion—that Level 2 systems do not make vehicles safer—is irrelevant to whether Autopilot was defective and whether such alleged defect caused this crash.

184. Disputed, not relevant, and misleading. First, this assertion is irrelevant to issues in dispute in this case, which involves a crash that occurred in 2019, not prior to March 2018. (*See* ECF 325 at 1). Similarly, the generic question of whether vehicles are safer with Autopilot engaged is not an issue that is in dispute in this case.  Second, it is misleading because it selectively quotes the deponent's testimony, which was that there was no "conclusive documentation or data." (*See* ECF 351-3 at 25:1-8). Third, it is disputed and misleading because the second sentence of Plaintiffs' assertion removes the "prior-to-March-2018" time limitation that was the basis of the questions and answers of the testimony cited in support of Plaintiffs' assertion. (*See* ECF 351-3 at 24).

185. Disputed, not relevant, and misleading. First, this assertion is irrelevant to the issues in dispute in this case, which involved a driver, McGee, who had turned off TACC by pressing the accelerator while his hands were detected as on the wheel, all while looking away from the road to search for a dropped cell phone and despite understanding his responsibility to remain aware

and in control of the vehicle while using Autopilot. (*See* Tesla's Reply at 88, 93, 123, 137). Second, it is disputed and misleading because it misrepresents the cited testimony. The witness testified, in response to the question of whether a user would be more likely to engage in secondary tasks the longer his or her hands were not detected on the wheel, "Yeah, I mean it's possible, as I said earlier, it's possible; it depends on person to person. But yes, it's possible." (*See* ECF 351-3 at 84:10-20). Regardless, the cited testimony is irrelevant to this case because McGee's hands were detected as on the steering wheel while he was engaged in the secondary task of looking for his dropped cell phone. (*See* Tesla's Reply at 88, 93, 123, 137).

186.    Disputed, not relevant, and misleading. First, this assertion is irrelevant to the issues in this case. (*See* Tesla's Reply at 185). Second, it is disputed and misleading because it misrepresents the cited testimony, which was that the witness was not aware of whether consideration of "research on automation and humans' ability to monitor automation from research that was performed in aviation field or railway field" was "part of the initial design or not." (*See* ECF 351-3 at 114:2-8).

187.    Disputed, not relevant, and misleading. First, this is irrelevant because McGee's hands were detected as on the steering wheel at the time of the crash. (*See* Tesla's Reply at 185). Second, it is disputed and misleading because Plaintiffs fail to include immediately preceding testimony that made clear that the time period involving the theoretically possible outcome contained in Plaintiffs' assertion was from September 2016 to March 2018. (*See* ECF 351-3 at 302:2-304:25).

188.    Undisputed but not relevant and subject to Tesla's motion *in limine*. (*See* ECF 320 at 13-14; Tesla's Reply at 111, 93_.

189.    Undisputed but not relevant and subject to Tesla's motion *in limine*. (*See* ECF 320

at 13-14; Tesla's Reply at 111, 93).

190.    Undisputed but not relevant and subject to Tesla's motion *in limine*. (*See* ECF 320 at 13-14; Tesla's Reply at 111, 93).

191.    Disputed but not relevant and misleading. Tesla does not dispute that the quoted language was included in an announcement, but Tesla disputes that the announcement "seemingly indicat[ed] that it had solved the issue of Autonomous driving." This is because the assertion misleadingly fails to include language from the announcement that explained that further calibration would be necessary before the features enabled by the new hardware referenced in the announcement would be enabled. (*See* ECF 351-4 at 1-2). It is not relevant because McGee had not seen the announcement, was familiar with his responsibility to remain aware and in control of the vehicle while using Autopilot, and because the vehicle was accompanied by numerous warnings and instructions that accurately described the system's abilities and limitations. (*See* ECF 325 at 102, 93, 106, 111).

192.    Disputed but not relevant and misleading because it selectively quotes the statement, which, when read in full, makes clear that this was an aspirational goal, not a statement of current capability. (*See* ECF 351-4, Exh. 2 at 3-4). It is also not relevant for the reasons described above. (*See* Tesla's Reply at 102, 93, 106, 111).

193.    Undisputed but not relevant. (*See* Tesla's Reply at 93, 102, 106, 111).

194.    Undisputed but not relevant. (*See* ECF 325 at 102, 103, 106, 111).

195.    Undisputed but not relevant and misleading. (*See* Tesla's Reply at 102, 93, 106, 111). Additionally, this assertion is misleading because it is offered as if it were a statement made about currently capabilities when, on its own terms, it was clearly a prediction about future capabilities. (*See* ECF 351-2 at Responses and Supplemental Responses 53-54).

196.    Disputed but not relevant and misleading. First, this is an argument, not even an attempt at a statement of undisputed fact. Second, it is misleading because, on its own terms, the quoted language was a prediction about future capabilities (made two years after the subject crash), not about current capabilities. Finally, it is entirely irrelevant. (*See* Tesla's Reply at 102, 93, 106, 111).

197.    Disputed but not relevant and misleading. First, on its own terms, this is not even an attempt at a statement of fact because it contains several unproven premises. Second, it is misleading because it fails to acknowledge that the system, at the time of the quoted language, incorporated different driver monitoring features than those that were incorporated in the subject Tesla. (*See* Tesla's Reply at 187). Finally, and perhaps most pertinently, it is irrelevant for the reasons stated above. (*See* Tesla's Reply at 102, 103, 106, 111).

198.    Undisputed that the referenced letter includes the quoted language but disputed as to the conclusions contained in the quoted language, not relevant, and misleading. (*See* Tesla's Reply at 102, 93, 106, 111, 187). Additionally, the substance of the quoted language, on its own terms, is clearly an argument rather than a statement of fact, much less one of undisputed fact.

199.    Disputed. This assertion contains arguments and opinions of Counsel that are not relevant and misleading. (*See* Tesla's Reply at 102, 93, 106, 111, 187). Additionally, the substance of the quoted language is an argument rather than a statement of undisputed fact.

200.    Undisputed that Tesla posted a Vehicle Safety Report on its website that shows use of Autopilot makes Tesla vehicles safer, but disputed, not relevant, and misleading insofar as the prefatory language "[c]onsistent with its other representations regarding the safety of its autopilot system" purports to refer to Plaintiffs' arguments that Tesla has made misleading statements about Autopilot's safety. (*See* Tesla's Reply 188-199).

201.    Disputed, not relevant, misleading, and inadmissible. This is disputed, not relevant, and misleading for the reasons described above. (*See* Tesla's Reply at 88, 102, 103, 111, 114, 123). Moreover, this is inadmissible because it relies entirely for its support upon a declaration from Plaintiffs' expert Singer that was provided for the first time with Plaintiffs' Counterstatement of Facts. *See* FRCP 26(2)(B) and (D). Thus, it is also inadmissible because it violates Rule 56(c)(4), FRCP (requiring declarations submitted in opposition to motions for summary judgement "set out facts that would be admissible in evidence").

202.    Disputed, not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 201).

203.    Disputed, not relevant, misleading, and inadmissible. (*See* Tesla's Reply at 201).

## CONCLUSION

WHEREFORE, Defendant Tesla, Inc. requests that this Court grant summary judgment as to all claims.

Respectfully submitted,

*/s/ Wendy F. Lumish*
**WHITNEY V. CRUZ**
Florida Bar No. 800821
**WENDY F. LUMISH**
Florida Bar No. 334332
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com
wendy.lumish@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399

thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com


**JOEL SMITH**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel. 803-726-7420 / Fax: 803-726-7421
joel.smith@bowmanandbrooke.com

**HILARIE BASS**
Florida Bar No. 334243
**HILARIE BASS, ESQUIRE LLC**
2821 Bayshore Drive, UPH-B Miami, FL
33133
Tel. 305-505-8777
bassh@bassinstitute.org

*Attorneys for Defendant TESLA, Inc.*


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 24, 2025, the foregoing was filed using the

Court's CM/ECF system, which will send electronic notice of the same to all interested parties.

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
adam@roussolawfirm.com
assistant@roussolawfirm.com
pleadings@roussolawfirm.com

*Attorneys for Plaintiff Dillon Angulo*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel.  305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHRIEBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com

*Co-Counsel for Plaintiffs Dillon Angulo and
Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com

*Co-Counsel for Plaintiffs Dillon Angulo and
Neima Benavides*

*/s/ Wendy F. Lumish*
WENDY F. LUMISH