# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-21940-BLOOM/Torres**

NEIMA BENAVIDES, *as Personal Representative of the Estate of Naibel Benavides Leon, deceased*,

    Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

    Defendant.

_____/

**Case No. 22-cv-22607-BLOOM**

DILLON ANGULO,

    Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,

    Defendants.

_____/

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR ORDER CONFIRMING CONTINUED CONFIDENTIALITY OF MATERIALS DESIGNATED UNDER CONFIDENTIALITY PROTECTIVE ORDER

Plaintiffs, Neima Benavides and Dillon Angulo, by and through their undersigned counsel, hereby file this Opposition to Defendant, Tesla, Inc.'s ("Tesla") Motion for Order Confirming Continued Confidentiality of Materials Designated Under Confidentiality Protective Order [D.E. 368] as follows:

### I. Introduction

The purpose of the Protective Order entered into in this case is to protect the disclosure of Tesla's trade secrets, not to protect Tesla from negative publicity. Tesla's opposition to Plaintiffs' confidentiality challenge has nothing to do with the former, and everything to do with the latter. The Court should reject Tesla's efforts to keep its discovery misconduct hidden from the public, conduct that it engaged in in the first instance to hide from the public its own failures to prevent this tragic accident. The Court can provide transparency on these matters without exposing any of Tesla's trade secrets, and it should do so.

### II. The Protective Order places the burden on Tesla to establish the confidentiality of the challenged materials.

Tesla's motion relies on two facts that actually have no significance to the determination of this motion – the existence of the July 28, 2023 Confidential Protective Order (CPO) and the fact that Plaintiff filed the challenged documents under seal. By its own terms, the CPO requires Tesla to prove, from scratch, that the challenged information should be kept confidential, and it further makes clear that Plaintiffs' filing of the motion and exhibits under seal has no relevance to Plaintiffs' ability to challenge the confidentiality of such documents.

Entry of a protective order in cases like this is common in federal practice. In *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001), the Court described the practice as follows:

> At the beginning of the litigation, in what has become commonplace in the federal courts, the parties stipulated to a protective order allowing each other to designate particular documents as confidential and subject to protection under Federal Rule of Civil Procedure 26(c)(7).See FED.R.CIV.P. 26(c)(7). This method replaces the need to litigate the claim to protection document by document, and postpones the necessary showing of "good cause" required for entry of a protective order until the confidential designation is challenged. See In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir.1987) (discussing operation and efficacy of umbrella protective orders). As the district court noted, this allowed Bridgestone/Firestone, Inc. (Firestone) to temporarily enjoy the protection of Rule 26(c), making Firestone's documents presumptively confidential until challenged.

*Chicago Tribune Co.* at 1307-08. See also *The Manual for Complex Litigation (3rd)* § 21.432 (1995) ("[u]mbrella orders provide that all assertedly confidential material disclosed ... is presumptively protected *unless* challenged. The orders are made without a particularized showing to support the claim for protection, but such a showing must be made whenever a claim under an order is challenged.")

This is precisely what occurred here. Plaintiffs stipulated to the entry of a CPO. While there was a dispute as to its terms, the dispute was related to the universe of people that would have access to the confidential documents.[1] At no point was Tesla required to show good cause with respect to

---

[1] Tesla sought to prevent the sharing of documents with other lawyers, a risk that other Courts have recognized is not good cause for entry of a protective order. In *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 129 F.R.D. 483, 486 (D.N.J. 1990), the district court explained:

> Moreover, if the basis for defendants' motion is to prevent information from being disseminated to other potential litigants, then defendants' application must fail. With increasing frequency, defendants, as well as other insurers, are finding themselves embroiled in litigation over whether there is coverage for property damage as a result of environmental harm. The courts have emphatically held that a protective order cannot be issued simply because it may be detrimental to the movant in other lawsuits. *United States v. Hooker Chemicals & Plastic Corp.*, 90 F.R.D. at 426; *Kamp Implement Co., Inc. v. J.I. Case Co.*, 630 F.Supp. 218, 219 (D.Mont.1986); *Patterson*

specific documents. More importantly, the CPO requires that Tesla, as the producing party, need only establish good cause if and when the confidentiality designation of a particular document is challenged:

> If the challenge is not resolved in the meet-and-confer process, the Producing Party shall have thirty (30) court days from the date of the termination of the meet and confer effort to seek an order from the Court that such designated material is subject to protection as Confidential Information or Highly Confidential Information. *The Producing Party seeking the order has the burden of establishing that each designated document or item is entitled to protection.*"

(CPO at ¶ 12) (emphasis added)

In other words, now that Plaintiff has challenged the confidentiality designation of the various exhibits, the CPO requires Tesla to meet its initial burden to establish that the materials at issue are trade secrets.[2] Thus, the mere existence of the CPO and Tesla's designation of documents as confidential is entirely irrelevant to the Court's determination as to whether Tesla has shown good cause to maintain the confidentiality of the documents in its current motion.

It is similarly irrelevant that Plaintiffs originally filed these documents under seal, as Tesla repeatedly notes in its motion. As the CPO states:

> 14. No party shall be obliged to challenge the propriety of a Confidential Information designation at any specified time, and a failure to do so shall not preclude a subsequent challenge to the propriety of such a designation.

---

*v. Ford Motor Co.*, 85 F.R.D. 152, 153 (W.D.Tex.1980). Using fruits of discovery from one lawsuit in another litigation, and even in collaboration among various plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure. United States v. Hooker Chemicals & Plastics Corp., 90 F.R.D. at 426. The harm possibly emanating therefrom does not form a basis for a protective order.

[2] Tesla's reliance on *F.T.C. v. AbbVie Products LLC*, 713 F.3d 54 (11th Cir. 2013) is misplaced, because Tesla did not make a showing of good cause prior to entry of the CPO, and certainly never made such a showing with respect to the documents Plaintiffs seek to unseal. The Eleventh Circuit held "If good cause were not required to be shown when the order was initially entered, the party who later seeks to prevent disclosure ... bears the burden of showing good cause." *F.T.C*. at 66. Of course, the CPO itself also places this burden on Tesla.

Page **4** of **16**

(CPO at ¶ 14)

The Court is thus tasked with making a determination as to whether Tesla has demonstrated good cause to keep these documents sealed based solely on the content of Tesla's motion and exhibits, not on any previous actions taken by the parties in this litigation.

### III. Tesla has failed to submit any evidence to establish that the challenged documents are trade secrets.

In order to meet its burden to establish good cause to maintain the confidentiality of the documents, Tesla must submit evidence. As explained in *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 129 F.R.D. 483, 485–86 (D.N.J. 1990):

> Defendants have submitted no affidavits; solely the conclusory arguments of counsel. In Aetna's brief there are only general and vague references to harm. Rather than making a particularized showing of harm, defendants seem to believe that they can satisfy their burden by explaining that the protective order proposed does not prejudice plaintiff since it does not restrict discovery but only limits disclosure to the instant case.
> The court in *Cipollone* was explicit that the burden of demonstrating good cause rests upon the movant and that such a showing requires that the harm be significant and be substantiated by specific examples or articulated reasoning. *Cipollone*, 785 F.2d at 1121. After remand, the defendants in *Cipollone* were still unable to specify or elaborate the injury they might suffer from disclosure. *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86 (D.N.J.1986). On appeal, the third circuit affirmed the lower court's denial of a protective order, finding that the petitioners failed to provide the district court with a single document as a "concrete example of the type of harm they would suffer." *Cipollone v. Liggett Group*, Inc., 822 F.2d 335, 346 (3d Cir.), cert. denied, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). The Third Circuit so found, despite petitioners' offer of proof that the value of defendants' stock was linked to the litigation. In the instant case, defendants do not even provide the Court with the type of proof which was found insufficient in *Cipollone*. Rather, the Court is presented with bald allegations of confidentiality and harm in direct contravention of the *Cipollone* mandate.
> While this Court recognizes that umbrella-type protective orders, such as submitted by defendants here, are valid, nonetheless, the movant still is required to make a threshold showing of good cause. *Cipollone*, 785 F.2d at 1122. But as illustrated by the broad and conclusory allegations in Aetna's brief, fn. 4, supra, there is a total absence of specificity from which this Court can find that these documents are confidential and if so what harm will result from their disclosure.

*See also Sec. & Exch. Comm'n v. Solv-Ex Corp.*, No. CV 98-860 BB/RLP, 1999 WL 35809404, at *1 (D.N.M. Aug. 30, 1999)( "The specific showing by this rule should be made by affidavit or other evidentiary support."); *Alcon Vision, LLC v. Lens.com*, No. 18-CV-0407 (NG), 2020 WL 3791865, at *8 (E.D.N.Y. July 7, 2020) ("[A]part from the perfunctory assertions contained in the Dowd Declaration, Alcon has made no evidentiary showing that the information that it seeks to maintain under seal is a trade secret."); and *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023 CBA, 2010 WL 889799, at *5 (E.D.N.Y. Mar. 8, 2010) ("Glenmark has made no evidentiary showing whatsoever that the information that it seeks to maintain under seal is a trade secret within the meaning of Rule 26(c)(1).")

Under Florida law, Tesla was required to demonstrate that the challenged documents contain information that "(1) was distinct from general knowledge; (2) was not readily ascertainable; (3) had independent value; and (4) was subject to reasonable security measures." *DePuy Synthes Prods., Inc,* 990 F.3d 1364, 1371 (Fed. Cir. 2021) At no point in this litigation has Tesla made an evidentiary showing that the challenged documents are trade secrets.[3] For example, unlike Firestone in *Chicago Tribune Co*. *supra*, no one has signed a declaration under oath to say *how* and *why* these *specific* materials currently have an independent value derived from secrecy and that reasonable efforts were taken to maintain their secrecy. All Tesla has provided are conclusory statements from its lawyer. On this basis alone, the Court can deny Tesla's Motion.

But even if the Court were to treat Tesla's arguments as evidence, it would still find, given the facts and circumstances of this case, the materials at issue are *not* confidential trade secrets entitled to protection and never were. Most of the materials at issue concerned Tesla's conduct in

---

[3] Tesla cites Ex. C - Telsa's Memorandum in Support of Entry of Tesla's Proposed Confidentiality Protective Order at pp. 3-4. But conspicuously absent from this motion is any *evidence.* It too consists of only argument of counsel.

*discovery* in failing to produce snapshot data it had but said it didn't. The materials do *not* show unique ways that Tesla saves and transmits data that gives them a comparative advantage over others.

On this point, it should be noted that Telsa agreed that its corporate representative's discussion of the process in which telemetry, videos, log data and CAN data is transmitted over the air to Tesla after a crash is not confidential. Tesla wholly fails to demonstrate how Allen Moore's discussion of this same process implicates trade secrets while Rubio Blanco's testimony doesn't. Finally, even if they remaining challenged documents could somehow be considered to implicate trade secrets, the balancing test discussed below still favors their unsealing.

### IV. Even if the documents discuss trade secrets, the balancing test weighs in favor of their unsealing.

As explained in *DePuy Synthes Products, Inc.*, *supra*, at 1369:

> The Supreme Court has recognized "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (footnotes omitted). This longstanding right helps secure the integrity and transparency of the judicial process. *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (noting right of access promotes public review and democratic legitimacy of the federal courts). There is accordingly a "presumption that judicial records should be available to the public." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1236 (11th Cir. 2013); *see also Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1358 (Fed. Cir. 2020) (citing *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016)); *In re Violation of Rule 28(d)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011).

This presumption can only be overcome by a compelling interest. Tesla's desire to avoid bad publicity is not such a compelling interest.

The district court, in *Nycomed US, Inc.*, *supra*, at *6, explained why:

> Nycomed's allegations of wrongdoing do not reveal any of Glenmark's trade secrets or even specific ANDA information maintained as confidential by the FDA. Although Glenmark's desire to shield this information from public view is understandable, "[c]ompetitive harm should not be taken to mean simply any injury to competitive position, as might flow ... from embarrassing publicity attendant upon public revelations." *Public Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1291 n. 30 (D.C.Cir.1983); *accord Bloomberg L.P. v. Board of Governors,* 649 F.Supp.2d

> 262, 279 (S.D.N.Y.2009); *see Lugosch,* 435 F.3d at 123 n. 5 ("[T]he natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public ... cannot be accommodated by the courts without seriously undermining the tradition of an open judicial system.") (quoting *Brown & Williamson Tobacco v. FTC,* 710 F.2d 1165, 1180 (6th Cir.1983)).

*See also Union Oil Co. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000) (holding that while "[m]any a litigant would prefer that the subject of the case ... be kept from the curious," "[w]hat happens in the halls of government is presumptively public business").

There is no doubt that there is a great deal of public interest in this matter.  Contrary to Tesla's suggestion that "no third party – such as the press or a government entity – is seeking access," numerous press outlets, including the New York Times, Wall Street Journal, Associated Press, Washington Post, CNBC, Reuters and others have contacted Plaintiffs' counsel asking about the basis and substance of the Rule 37 Motion.  (DE 368 at 17; Exhibit 1 – Declaration of Brett Schrieber) Tesla's unsupported claims of trade secrets do not outweigh the public's interest in this case.

There are other factors the Court should take into account in balancing the interests of the public against Tesla. The first is the passage of time. It is not enough that the unsealing of these documents might once have caused competitive harm. Tesla was required to  "present specific evidence showing how release of those materials would result in competitive harm *at this time*." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991) (emphasis supplied) The technology involved in this accident is from 2019 – an eon in this rapidly advancing industry.  Tesla indicated that the data involved here was so old that it no longer had the software available to create the augmented video ordered by the court and essentially had to reconstruct it. How could the disclosure of completely outdated software place Tesla at a competitive disadvantage today?

Tesla appears to suggest that the CPO forever protects from disclosure anything that Tesla deemed confidential at the beginning of the case. But in the very case it cites for this proposition,

Page **8** of **16**

*F.T.C. v. AbbVie Prods. LLC,* 713 F.3d 54 (11th Cir. 2013), the Court found that the passage of time can reduce and eventually eliminate the need to protect documents from disclosure, even if they were initially properly ruled confidential. Specifically, the Eleventh Circuit noted that "the district court did not reweigh the parties' interests from scratch but in fact compared the strength of their interests relative to the time of its earlier order." *F.T.C.* at 67. Tesla's argument fails to account for the passage of six years since the date of the accident. The Court, however, consider this factor when balancing the interests of the public against Tesla's desire to avoid bad publicity.

Finally, the right to claim a trade secret is significantly diminished when the allegedly confidential information is in the hands of a third party, particularly if the third party is under no obligation to maintain its confidentiality. See *Ruckelshaus v. Monsanto Co*., 467 U.S. 986 (1984) Here, the only reason all of the autopilot data was not in the hands of the third party Corporal Riso was because Tesla ignored the subpoena that obligated it to produce it. Had they followed the law, the autopilot data itself, would have been "included, considered and incorporated" into the Homicide Investigation Report. (DE 308-3, ¶ 26) In other words, *all* of the evidence that Tesla seeks to keep sealed – derivative or not – would and should have been part of a public document. Tesla shouldn't benefit from its decision to ignore a lawful subpoena from FHP.

   V.   **Specific Cause Challenges**

      A.  **Augmented Video (Challenges 1 and 2)**

Tesla asserts that the documents Plaintiffs seek to unseal contain "commercially sensitive information and data about the design of the vision and object detection and response components of Tesla's proprietary Autopilot features." This accusation is specious given that Tesla itself has repeatedly disclosed far more information about its autopilot features than are disclosed in these documents.

Consider this video from Tesla's autonomy day, on April 22, 2019, less than a month before this accident. (https://www.youtube.com/live/Ucp0TTmvqOE) In this video, Tesla discusses the capabilities of its vision and object detection and response components in far more detail than the documents at issue here. Attached as composite Exhibit 2 are screenshots from 1:53, 2:10, 2:13, 2:20, 2:54 in the video which show augmented video of the same type created by our consultant here. If someone could divine Tesla's proprietary code from merely looking at augmented video, then Tesla has repeatedly exposed its source code to the public. The Court should also view https://vimeo.com/192179726, which juxtaposes a self-driving Tesla next to augmented video from three different cameras.

Finally, in order to preserve trade secret protections, the information must not be "readily ascertainable" and must be "subject to reasonable security measures." There are numerous examples of augmented videos on the internet either created by or posted by parties other than Tesla. In this Wall Street Journal video, augmented video is displayed at the 7:00 minute mark. (https://www.youtube.com/watch?v=mPUGh0qAqWA). Here is augmented video posted by "Ingineerix" - https://www.youtube.com/watch?v=XfqabC_akV0, and https://www.youtube.com/watch?v=CV5yJEvAvrc. "Carscoops" has posted augmented video - https://www.youtube.com/watch?v=fKXztwtXaGo. Finally, our consultant has posted over a dozen examples of augmented video he has created on his YouTube page: https://www.youtube.com/@greentheonly/videos.

The fact that people like our consultant can produce their own augmented videos means that this process is readily ascertainable. The fact that Tesla itself has repeatedly published augmented video and allowed such augmented videos to proliferate on the internet demonstrates that Tesla has not taken reasonable security measures to prevent access to such videos. The reason for this is simple. Showing augmented video does not expose Tesla's proprietary code. The video shows output that

Page **10** of **16**

Tesla deems suitable for public consumption. There is no basis to keep the augmented video from this accident sealed.

### B.     Excerpts From March 7, 2024 Transcript (Challenge 10)

The statements contained in the transcript were made in open court, were factual representations about the nature of this case, and did not contain any of Tesla's proprietary or sensitive information. The argument consisted primarily of Plaintiffs' counsel asking for discovery of items that Tesla insisted didn't exist. Information that doesn't exist (such as a glossary of signal codes that was never produced in this case) cannot constitute a trade secret.

Nothing was said during this hearing which could place Tesla at a competitive disadvantage and therefore, this transcript cannot be sealed on the grounds that it mentions trade secrets or that the alleged trade secrets outweigh the public's right to access.

### C.     Initial Declaration of Oleg Drokin in Support of Plaintiff's Motion for Sanctions (Challenge 3)

Similar arguments applicable to the Augmented Video also apply to the declaration of Mr. Drokin. Mr. Drokin described how he was able to create augmented video *without* Tesla's proprietary software. Tesla acknowledges that Mr. Drokin created the segmented video in "a manner not employed by Tesla and which may be instructional to others, including Tesla's competitors." DE368 at 8. By definition, a method that Tesla doesn't use cannot be a trade secret of Tesla, and reinforces the fact the creation of augmented video is readily ascertainable process. Without providing any source codes, a third-party consultant's description of how he created augmented video cannot put Tesla at a comparative disadvantage.

As an aside, Tesla uses the term "hacker" in what we take to be a derogatory fashion. In fact, Mr. Drokin is known as a "white hat hacker," which is a type of programmer that assists companies like Tesla in identifying security flaws or other bugs in their software. Indeed, per this CNBC article, Tesla has paid Mr. Drokin "tens of thousands of dollars cashing in on Tesla bug bounties in recent

years."   (https://www.cnbc.com/2019/03/29/tesla-model-3-keeps-data-like-crash-videos-location-phone-contacts.html)

Tesla did not satisfy its burden to establish that Drokin's declaration is a trade secret or that its interest is more compelling than the public's. Therefore the declaration should be unsealed.

**D.     Initial and Second Supplemental Declarations of Alan Moore (Challenge 4)**

Mr. Moore's declarations reveal the hardly sensitive facts that Tesla's vehicles transmit data to Tesla's servers which is publicly known including through information disseminated by Tesla. Tesla reveals these very facts in its owners manuals.  (Exhibit 3) (https://www.tesla.com/ownersmanual/model3/en_us/GUID-2E8E5E0B-DAA8-40B8-9804-45F5960538DF.html)

The most important aspects of his declaration concerns Telsa's attempts to hide the autopilot data from Plaintiffs.  Those type of opinions are about discovery abuse and not trade secrets in any way shape or form.  As such, Tesla cannot claim its interest is outweighed by the public's, even if it were able to prove that it contained trade secrets.

**E.     Declarations of Shoemaker and Calafell (Challenges 13-16)**

Mr. Shoemaker's testimony was centered on issues related to issues of discovery and evidence preservation. To the extent that his testimony did encompass any technical information, it was not proprietary or sensitive business /technical information belonging to Tesla, but instead related to *methods* of transmitting data and saving data on servers which is not special or unique to Tesla's technology.

Mr. Calafell's testimony too was centered on issues related to his involvement in handling evidence related to this case, and did not encompass any proprietary or sensitive business / technical information belonging to Tesla.  Mr. Calafell is a low-level technician who only testified as to the

process of what he did and did not do in trying to download information from the Subject Vehicle from this vehicle. He does not reveal any methods particular to Tesla. Tesla cannot claim that these declarations contain trade secrets or that their interest is greater than the public's at this point.

### F. Meet and Confer Communications Concerning Proprietary Information (Challenges 12 and 19)

Much like the Court Transcript, the Meet and Confer letters do not contain and proprietary information unique to Tesla. Tesla suggests that Plaintiffs seek publication because they wish to embarrass Tesla's lawyers. The accusation of hiding evidence is serious, but it was brough up not to embarrass anyone, but to obtain evidence critical to the case. Even so, "the fact that public disclosure of discovery materials will cause some annoyance or embarrassment is not sufficient to warrant a protective order; the annoyance or embarrassment *must* be particularly serious." *U.S. ex rel. Davis*, *supra*, 753 F. Supp. 2d 561, 568.

### G. Tesla's Opposition Memo.

Tesla's opposition itself contains no trade secrets. By itself it contains no information that has independent value or would place them at a competitive disadvantage. It does not describe information unique to Tesla as to how information is stored and processed.

## VI. Plaintiffs do not seek to Taint the Jury Pool

Tesla accuses the Plaintiffs are attempting to taint the jury. But, Tesla does not reference the power of voir dire to ameliorate any potential effects of publicity that might be generated from the unsealing of the material at issue. As the Court stated in *ParkerVision, Inc. v. Qualcomm Inc.*, No. 6:14-CV-687-PGB-LHP, 2025 WL 436768, at *2 (M.D. Fla. Feb. 7, 2025) , "the Court knows how to screen potential jurors for exposure to prejudicial news coverage [and] the court will painstakingly question potential jurors to identify those who may have been exposed … preconceived beliefs about a party do not sit on juries."

It's doubtful that disclosure of information related to the motion for sanctions would be more than a raindrop in the rainstorm of negative publicity that Tesla's CEO is currently visiting upon his company. Without proving to the Court that the materials at issue, would taint the jury, the Court should not lend any credence to the argument Plaintiffs are attempting to taint the jury pool when deciding whether to keep the materials at issue under seal.

### VII. Plaintiffs are Not Seeking to Try this Case in the Media.

In this litigation, Plaintiffs and their counsel have responded to only a handful of media inquiries despite receiving almost constant media inquiries. Counsels' limited interactions with the media have been circumspect. Indeed, despite significant interest in the subject of the Rule 37 motion, Counsel has not spoken on the topic at all.

In contrast, Tesla's CEO is the owner of international stage Tesla can use to influence the public and potential jury pool. Tesla has done just that, pushing its narrative in a lengthy post about this accident that has over 2.8 million views: x.com/Tesla/status/1734374558105293081 (Exhibit 4). Both parties have a first amendment right to present their view of the case to the press. But only one party, Tesla is accusing the other of litigating the case in the press, despite engaging in the same conduct.

This is no basis on which to grant Tesla's motion.

### VI. CONCLUSION

Under Rule 26(c) and the CPO, Tesla bore the burden to establish good cause that the materials at issue should be kept sealed under the challenge provisions. Tesla failed to present any evidence to meet that burden. Nor could it have, because the material at issue does not contain Tesla's trade secrets. Finally, it is clear that the balancing test favors the interests of the public over Tesla's interests in avoiding negative publicity.

WHEREFORE, Plaintiffs respectfully request that the Court deny Tesla's Motion for Continued Confidentiality, remove such documents under seal, and any other relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of April, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notices of electronic submission to all parties on the attached service list.

                                      **POSES LAW GROUP, P.A.**
                                      169 East Flagler Street
                                      Suite 1600
                                      Miami, Florida 33131
                                      (305) 577-0200

                           By: */s/Todd Poses*_____
                                 Todd Poses, Esq.
                                 FBN: 0075922
                                 tposes@poseslawgroup.com
                                 maria@poseslawgroup.com
                                 shelly@poseslawgroup.com

## SERVICE LIST

**Bowman and Brooke LLP**

41000 Woodward Ave., Suite 200E

Bloomfield Hills, Michigan 48304

**Attn: Joel Smith Esq.**

**Attn:Thomas P. Branigan, Esq.**

**Attn: Whitney Cruz, Esq.**

**Attn: Drew P. Branigan, Esq.**

**Attn: Wendy F. Lumish, Esq.**

Joel.smith@bowmanandbrooke.com

thomas.branigan@bowmanandbrooke.com

whitney.cruz@bowmanandbrooke.com

drew.branigan@bowmanandbrooke.com

Wendy.Lumish@bowmanandbrooke.com

*Counsel for Defendant*

**Singleton Schreiber, LLP**

591 Camino de la Reina, Suite 1025

San Diego, CA 92108

Tel: (619) 771-3473

**Attn: Brett J. Schreiber, Esq.**

**Attn: Satyasrinivas Hanumadass, Esq.**

bschreiber@singletonschreiber.com

bschreiber@singletonschreiber.com

vas@singletonschreiber.com

cbirnbaum@singletonschreiber.com

eelms@singletonschreiber.com

*Counsel for Plaintiffs*

**The Rousso Boumel Law Firm, PLLC**
9350 South Dixie Highway Suite 1520
Miami, Florida 33156
(305) 670-6669
Adam T. Boumel, Esq.
Florida Bar No.: 0110727
adam@roussolawfirm.com
Pleadings@roussolawfirm.com
haiyang@roussolawfirm.com
*Counsel for Plaintiffs*

**Eaton & Wolk PL**

2665 South Bayshore Dr., Suite 609

Miami, FL 33133

**Attn: Doug Eaton, Esq.**

deaton@eatonwolk.com

*Counsel for Plaintiffs*