UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal Representative of the Estate of Naibel Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

Case No. 22-22607-KMM

**REPLY IN SUPPORT OF TESLA'S MOTION FOR CONTINUED CONFIDENTIALITY OF MATERIALS DESIGNATED UNDER CONFIDENTIALITY PROTECTIVE ORDER**

    Tesla's Motion should be **GRANTED.** Plaintiffs' Response: (1) cites inapplicable authority and misstates relevant authority in a confusing attempt to re-frame the Court's inquiry; (2) misstates the history of the Courts' entry of a ***contested*** protective order upon finding good cause; (3) demonstrates a holistic ignorance of or disregard for the operation of the Confidentiality Protective Order (the "CPO"); and (4) fails in its challenge to Tesla's Confidential and Highly Confidential designations through conclusory statements that are easily controverted.

    Plaintiffs' Response makes clear that Plaintiffs' real motive in asserting their challenges is to continue to publicize this tragic case to gain a tactical advantage. ECF 362 at 2; *see also* ECF

390 at 2 and ECF 390-1. Though the Court has not ruled on their Motion for Sanctions, Plaintiffs admit they intend to broadcast their allegations through national media "as soon as possible" and in a manner that will cause Tesla substantial harm irrespective of the ultimate ruling. *Id.*[1]

I. **GOOD CAUSE UNDER RULE 26(C)**

Tesla does not dispute that the party seeking protection must move for protection under the CPO. Tesla already established good cause for the entry of its more stringent protective order (the "CPO").[2] More importantly Tesla has established good cause for the continued Confidential and Highly Confidential designations of the materials challenged. *See generally* ECF (368). Both parties agree that the proper inquiry necessitates a balancing of interests under Rule 26. *See* ECF 390 at 7. However, Plaintiffs' Response largely relies on inapplicable law and injects factors that are irrelevant to the issues raised in Tesla's Motion.

A. **"Common-Law Right Of Access" Is Inapplicable To Plaintiffs' Challenges**

Plaintiffs' reliance on *DePuy Synthes Products, Inc.* to inject the compelling interest standard is wrong. The challenged material is not "public records and documents, including judicial records and documents." *DePuy Synthes Prods., Inc.*, 990 F.3d 1364, 1369 (Fed. Cir. 2021). It is material produced in discovery pursuant to the CPO or filed *under seal* in connection with Plaintiffs' discovery motion. The Eleventh Circuit unambiguously excludes this type of

---

[1] Plaintiffs have already made clear their trial strategy is to persuade the jury that Tesla is engaged in a "big lie," and only secondarily seek to prove defect. This campaign falls squarely within the playbook. Tesla vehemently opposed Plaintiffs' sanctions motion because there is no actual evidence of bad faith conduct Plaintiffs insist was there, only innuendo. While that is insufficient for Plaintiffs' Motion to prevail, it is all they need to influence public opinion.

[2] Plaintiffs *did not* stipulate to the extant CPO. The parties submitted dueling orders and Plaintiffs' proposal contained several deficiencies beyond the sharing provision. *See generally* ECF 368-3. The Court held a hearing and decided these issues in favor of Tesla. *See generally* ECF 123. Plaintiffs' contention that this was without good cause is unsupported. The Court recognized this earlier good cause finding in denying Plaintiffs' Motion to modify the CPO, finding that ***Plaintiffs*** did not establish good cause for modification. *See* ECF 368-12 at 32-33, 45-46.

material from the common law right of access, even if filed in connection with a discovery motion as is the case here. *See Callahan v. United Network for Organ* Sharing, 17 F.4th 1356, 1362 (11th Cir. 2021) (quoting *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001). Thus, the common law right of access is inapplicable. *See Chicago Trib. Co.*, 263 F.3d at 1312 (reversible error to apply compelling interest standard for access to discovery materials).

### B. Passage Of Time Is Outweighed By The CPO's Purpose And Tesla's Interests

Plaintiffs vaguely contend that the passage of time can reduce or eliminate the need to protect documents from disclosure.[3] That contention is contrary to the explicit language of the CPO. First, all provisions governing the communication or use of "Covered Information" shall continue to be binding after the conclusion of the case…" ECF 126 at ¶23. Additionally, all Covered Information must be returned or destroyed within 60 days after the conclusion of the case. *Id* at ¶29. Finally, the Court retains jurisdiction to enforce or modify the CPO even after termination of this case. *Id* at ¶28. It is difficult to imagine how the passage of time would affect the Court's inquiry here when the clear policy of the CPO was to maintain its limitations even after the litigation ends. Moreover, the sensitivity of Tesla's trade secrets does not wane with the passage of time, especially for technology as new as 2019. *See*, Ex. A attached hereto - C. Payne Declaration at ¶¶ 3, 6-7, and 10. Thus, this does not outweigh Tesla's interest in maintaining confidential protections.

## II. THE TRADE SECRET INQUIRY UNDER RULE 26(C)(1)(G)

### A. Plaintiffs' Definition Of Trade Secrets is Incorrect

---

[3] Plaintiffs cite to non-controlling law from the Third Circuit to suggest that Tesla must "present specific evidence showing how the release of those materials would result in competitive harm at this time." Though not required to do so, Tesla presents the Court with the Declaration of Tesla Employee C. Payne to explain the harm Tesla would endure should Tesla's Motion be denied.

Plaintiffs cite to law from outside the Eleventh Circuit to support their argument that the Court must apply Florida state law to define trade secrets. *See* ECF 390 at 6. These cases are inapplicable because they are diversity action infringement cases. *See DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1367 (Fed. Cir. 2021); *see also Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1408-9 (11th Cir. 1998).

When analyzing a trade secret under Fed. R. Civ. P. 26(c)(1)(G), courts in the Eleventh Circuit apply "the commonly accepted criteria of trade secrets" enumerated by *Chicago Tribune Co.*. *See Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, No. 17-23996-CV, 2018 WL 4111216, at *3 (S.D. Fla. Aug. 29, 2018) (citing *Chicago Trib. Co.*, 263 F.3d at 1313-14); *see also Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 9:17-CV-80495, 2018 WL 3118266, at *4 (S.D. Fla. June 25, 2018); *see* ECF 368 at 5 (applying appropriate factors).

B. **Tesla Closely Guards Its Confidential And Highly Confidential Material**

Plaintiffs confusingly attribute this factor to good cause and skew the record in alleging that Tesla failed to protect challenged material.[4] There is substantial evidence that Tesla actively

---

[4] Plaintiffs' Response alleges that "Tesla agreed that its corporate representative's discussion of the process in which telemetry, videos, log data and CAN data is transmitted over the air to Tesla after a crash is not confidential." ECF 390 at 7. Plaintiffs cite to nothing in support of that statement because it is incorrect. Tesla designated discussion of this information as protected. *See e.g.* ECF 285-4 at 239:3-241:3 and Ex. B, Designations for E. Rubio Blanco (designating 239:3-241:3 as Highly Confidential). To the extent certain lines were inadvertently not designated, this does not constitute a waiver of protection under the CPO. ECF 126 at ¶8. This testimony is also derivative of designated information – much of which Plaintiffs concede is protected (i.e. vehicle data) – and thus need not be re-designated. *See* ECF 368 at 7; *see also* ECF 368-7.
    Plaintiffs also suggest that certain material is not in the hands of a third party only because Tesla "deci[ded] to ignore a subpoena from the Florida Highway Patrol." Setting aside the baselessness of this accusation, the argument presumes that Tesla would not condition the production on a confidentiality agreement, which is inconsistent with its practices. Ex. A at ¶¶11-12. It also ignores the fact that FHP treated Tesla's materials as confidential. See ECF 285-5 at 24.

4

guards this information, including the actions taken in this case and other cases. *See generally* ECF 368-3; Ex. A at ¶11; *see also* Ex. C - Letter to Plaintiffs' Former Counsel; *see also* at *infra* III(A).

### C. Tesla Has Provided Sufficient Evidence Supporting Its Designations

Tesla's Motion comprehensively describes the evidence supporting the propriety of Tesla's designations and the good cause existing to maintain them. *See e.g.* ECF 368-3 (explaining the need for heightened protections for Tesla's "secret recipe"). Significantly, all of the materials challenged are on the docket for this case (under seal) for the Court to review. Plaintiffs' Response also conveniently ignores the fact that the vast majority of Plaintiffs' challenges are derivative of information **Plaintiffs concede is protected**. *See* ECF 368 at Challenges 1-4, 10, 14 and 21 and part of Challenges 12 and 19; *see* ECF 368-1 and 2. Consequently, the Court can quickly dispense with these items based on the operation of the CPO. *See* ECF 126 at ¶¶ 3 and 9.

Plaintiffs cite no controlling authority requiring Tesla to submit an affidavit supporting its Motion. *See* ECF 390 at 5-6 (citing Second, Third, Federal, and Tenth Circuits). Rather, the standard is flexible. The Court need only make sufficiently detailed findings to permit meaningful appellate review. *Chicago Trib. Co.*, 263 F.3d at 1314; *see Tillman v. C.R. Bard, Inc.*, 297 F.R.D. 660, 664 (M.D. Fla. 2014) (When fashioning a protective order, a court *may* rely on a declaration accompanying the motion). Nevertheless, Tesla attaches a Declaration of Tesla Engineer C. Payne as additional support. Ex. A. [5] This Declaration explains (1) the proprietary and confidential nature of the challenged material; (2) protocols followed by Tesla to protect this material; and (3) the

---

[5] Tesla also submits an order recently entered in *Pelletier v Tesla, Inc.* as enlightening. *See,* Ex. D. There, Plaintiffs, also represented by Mr. Schreiber, agreed to a CPO but insisted on being allowed to share Tesla's Autopilot documents with others litigating Autopilot claims. The court denied that request, finding that it "pose[d] a risk of disclosure" where trial courts are "the gatekeepers…to protect unauthorized dissemination of trade secrets." Tesla's Autopilot materials, the court found, are trade secrets that "involve cutting-edge technology with substantial competitive and security implications." Even more concerning, here Plaintiffs intend to share materials with the media, not just other lawyers.

5

harm Tesla would suffer should the Court unseal this material. Based on this and the material on the record the Court can and should conclude that the challenged material is properly designated.

### III. MATERIAL CHALLENGED

#### A. Augmented Video (Challenges 1 and 2)

Plaintiffs concede that the underlying data used to make the augmented video was properly designated. *See* ECF 368 at 7. Thus, this derivative material is automatically accorded the same status and protection. *See* ECF 126 at ¶¶ 3 and 9; *see also* Ex. A at ¶¶3-4, 8-9.

Plaintiffs' contention that Tesla publishes certain augmented video to the public is also unavailing. The examples cited are marketing materials and – as explained in Tesla's Motion – Tesla's publication clearly indicates that the published materials and Tesla's discussion of its vehicle's features were sanitized of any sensitive information. ECF 368 at 7. The materials shown in Tesla's marketing have never been released to customer vehicles because they are demonstrative. Tesla has not publicly disclosed the same data sets at issue here.

The other examples proffered by Plaintiffs involve third parties forcibly accessing Tesla computers on individual vehicles without Tesla's consent and – like Plaintiffs' self-proclaimed hacker Drokin – using their own methods to create something similar to augmented vision video that Tesla engineers formerly used in reviewing Autopilot videos and data. *See* ECF 368 at 8-9. As an example, the narrator in the Wall Street Journal video explains that – once he removes the computer from salvage vehicles – he sends them "across the country to a hacker." (https://youtu.be/mPUGh0qAqWA?si=pgclqWFiOabpmPeV at 8:17-8:25). Similarly, another hacker named "Ingineerix" ominously warns the audience "[d]on't bother asking me how I got this…". Tesla was not permitted to depose Drokin as to his methodologies, his motivations, or the legality of his efforts to publicize Tesla's crowning intellectual property, however, this is not the same as Tesla retrieving data from vehicles and using its own proprietary software to generate

6

augmented video for the purposes of assessing ADAS performance. *See e.g.* ECF 297-4 at ¶¶6, 8-9, 11-14, 22; *see also* ECF 379 at ¶125 and supporting materials. The fact that others have gained access to Tesla's information in a possibly illegal manner does not erode Tesla's attempts to protect its data.

### B.     March 7, 2024 Transcript (Challenge 10)

Plaintiffs' Response ignores the fact that – under the CPO – protected information includes any testimony, conversations, or presentations by parties or their Counsel that might reveal Covered Information, without the need for independent designation. ECF 126 at ¶3. Further, discovery materials submitted in connection with discovery motions – like the one heard during the March 7, 2024 hearing – are not subject to the common law right of access. *Callahan*, 17 F.4th at 1362. Thus, it is irrelevant that these conversations took place at a discovery hearing.

Plaintiffs' contention that no such trade secrets were exposed because – at one point in the hearing, Tesla's counsel pointed out that certain materials Plaintiffs sought didn't exist – is unavailing. Portions of this transcript affirmatively discuss proprietary data revealing the design and operation of Tesla's Autopilot system, Tesla's method of data collection, storage, transmittal and processing (confidential), and the process of how augmented video is created. *See* ECF 368 at 8. All of this touches on commercially sensitive information. *Id*; *see also* Ex. A at ¶¶3-4, 7-9, 12.

### C.     Drokin Declaration (Challenge 3)

Similar to the augmented video challenges, Plaintiffs' Response here is moot because Plaintiffs conceded the propriety of Tesla's designation of the data used to create augmented video. *See* ECF 368 at 8-9; *see also* Ex. A at ¶¶3-4, 7-9, 12. (discussing proprietary nature of augmented video). Plaintiffs continue to ignore the fact that Drokin could not have created or authored anything without access to proprietary data from the 2019 Model S, which required (1) Tesla's consent; and (2) signing onto the CPO. Drokin's employment of his own methods to create the

7

video is irrelevant. Because Drokin's Declaration is derivative of the augmented video and proprietary data, it is automatically accorded the same status and protection under CPO.

### D. Moore Declarations (Challenges 4 and 18)

Plaintiffs' Response concerning Moore's Initial Declaration is also moot because Plaintiffs do not contest that the underlying data and information discussed in vivid detail in that Declaration was properly designated. *See* ECF 368 at 9-10 and 11; *see* ECF 126 at ¶¶ 3 and 9. Additionally, both Declarations discuss or are based on Moore's examination of proprietary and confidential Autopilot data and detailed information about the design and operation of Tesla's Autopilot features, including: (1) frames pasted from the augmented video created by Plaintiffs' hacker Drokin and (2) discussion of material Tesla submitted to NHTSA as Highly Confidential Business Information. ECF 368 at 10 and 12-13; *see also* Ex. A at ¶¶3-4, 7-9, 12.

Plaintiffs' Response disingenuously glosses over the entire substance of Moore's Declarations in asserting that they merely detail "Tesla's attempts to hide the autopilot data from Plaintiffs." ECF 390 at 11-12. A mere glance at these documents clearly indicates otherwise.

### E. Shoemaker And Calafell "Testimony" (Challenges 13-16)

Because Plaintiffs' Response vaguely references "testimony" in Challenges 13-16, Tesla reiterates that the challenges to Messrs. Shoemaker and Calafell's deposition testimony were and remain improperly asserted. *See* ECF 368 at 12. Thus, they are not ripe for a motion. *Id*. Regardless, the testimony describes how data is stored on the vehicle, accessed, uploaded and received, processed, stored, searched and accessed by Tesla – all of which is confidential.

Shoemaker's Declaration discusses the process of using proprietary vehicle data to create augmented video. *See* ECF 368 at 11-12. Again, because Plaintiffs concede the proprietary nature of the data discussed in Shoemaker's Declaration, the Declaration is accorded the same status and protection. *See* 126 at ¶¶ 3 and 9; *see also supra* at III(A).

8

Both Declarations also describe Tesla's method of collection, storage, transmission, processing, and potential means of data retrieval from Tesla's vehicles – all of which Tesla has designated as Confidential. *See* ECF 368 at 7-8; *see also* ECF 368-7 (Confidential designations). Plaintiffs' conclusory assertion that this is not special or unique is ill-informed. As discussed in Tesla's Motion and in the attached Declaration, Tesla's vehicle data contains details about specific components of Autopilot's design, development process, and operation. *See e.g.* ECF 368 at 7, 9-10 (explaining proprietary nature of Autopilot data); *see also* Ex. A at ¶¶4, 7-9. Further, divulgence of this information would tip competitors off to what data Tesla collects and how it labels, collates, analyzes, and actions that data – all related to the greater process of improvement of Autopilot. *Id* at ¶6-7, 9-10, 12. This could provide competitors with a valuable tool for analyzing their own business through tools developed by Tesla with its own expertise, time, effort and expense. *Id*.

### F. Meet And Confer Correspondence (Challenges 12 and 19)

As discussed in Tesla's Motion, this material contains or discusses information concerning the design and operation of Tesla's Autopilot features and thus shall be accorded the same level of protection as the underlying information. ECF 368 at 13. Exhibit 12 to Plaintiffs' Motion for Sanctions and Exhibits 12, 14, and 15 to Plaintiffs' Corrected Reply contain or discuss sensitive information concerning Autopilot's design and operation and Tesla's process of evaluating Autopilot performance. *See* ECF 298-12 and ECF 305 at Exhibits 12, 14, and 15. This includes discussion of the data used to create augmented video that **Plaintiffs concede is proprietary**. *Id*; *see also* ECF 368-1 at Challenges 1 and 2. Exhibit 8 to Plaintiffs' Reply discusses Tesla's method of data collection, storage, transmittal and processing (confidential). For the reasons discussed *supra* III(E)(2), the Court should maintain Tesla's respective Highly Confidential and Confidential Designations. Tesla addresses Plaintiffs' comments concerning the impact of publicizing their allegations concerning a pending discovery motion *infra* at IV.

### G. Opposition To Sanctions (Challenge 21)

Plaintiffs' claim that Tesla's Opposition to Plaintiffs' Motion for sanctions "contains no trade secrets" reflects their repeated misunderstanding of the CPO. Tesla's Opposition is derivative of Highly Confidential and Confidential information and is therefore accorded the same status and protection under CPO. *See* ECF 368 at 14-15; *see* Ex. A at ¶¶3-4, 7-9, 12.

## IV. PLAINTIFFS' CONTINUED LITIGATION IN THE MEDIA

From one side of their mouths, Plaintiffs continue attacks against Tesla CEO Elon Musk. Out of the other, they feign innocence by claiming they do not intend to influence the jury pool through their intent to publish Tesla's protected information concerning ***allegations*** in a pending discovery dispute. Plaintiffs' Response and their Opposition to Tesla's request for additional time to file its Motion repeatedly confirm their quest to influence this case through the media.

It is easy to imagine the impact this would have on public perception and the likelihood that it would cause jurors to decide a case based on unsubstantiated negative news about Tesla rather than admissible evidence and merits of the case. Despite downplaying Plaintiffs and their counsel's interview with the media about their allegations and Plaintiffs' expert Missy Cummings' personal crusade against Elon Musk, Plaintiffs inform the Court that they intend to publish the challenged material through virtually every national news outlet. ECF 390-1 at ¶4. And regardless of intent, this begs the more important question – how can this case be tried to unbiased jurors if Plaintiffs continue to publicize this case nationally and the entire population has been exposed?[6]

---

[6] Plaintiffs' attacks against Mr. Musk highlight an important aspect of the answer to this question. In the context of Mr. Musk's high profile at a time of intense political polarization, Tesla urges the Court to exercise caution, particularly around attempts to publicize this case. This tragic case concerns a negligent driver and allegations about Tesla's ADAS; it is not about Mr. Musk's political endeavors which are completely separate from Tesla.

There is no legitimate interest in unsealing material that is clearly Confidential and Highly Confidential. Tesla's interest in maintaining its standing in the ADAS industry clearly outweighs Plaintiffs' desire to unseal the challenged information. For these reasons, Tesla's Motion should be **GRANTED** in its entirety.

Date:  April 9, 2025                              Respectfully submitted,

*s/  Whitney V. Cruz*
**WHITNEY V. CRUZ**
Florida Bar No. 800821
**WENDY F. LUMISH**
Florida Bar No. 334332
**Bowman and Brooke LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com
wendy.lumish@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
*(Admitted Pro Hac Vice)*
**DREW P. BRANIGAN**
*(Admitted Pro Hac Vice)*
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**JOEL SMITH**
*(Admitted Pro Hac Vice)*
**BOWMAN AND BROOKE LLP**
1441 Main Street, Suite 1200
Columbia, SC 2920
Tel. 803-726-7420 / Fax: 803.726.7421
Joel.Smith@bowmanandbrooke.com

**HILARIE BASS**
Florida Bar No. 334243
**HILARIE BASS, ESQUIRE LLC**
2821 Bayshore Drive, UPH-B
Miami, FL 33133
Tel. 305-505-8777
bassh@bassinstitute.org

*Attorneys for Defendant TESLA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
adam@roussolawfirm.com
assistant@roussolawfirm.com
pleadings@roussolawfirm.com

*Attorneys for Plaintiff Dillon Angulo*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel. 305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHRIEBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Tel. 619-771-3473
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

/s/ *Whitney V. Cruz*
Whitney V. Cruz