# EXHIBIT D

**KLEIN THOMAS LEE & FRESARD**
Gregory P. Gilmer (SBN: 212067)
Email:  greg.gilmer@kleinthomaslaw.com
Claire E. Dietrich (SBN: 280113)
Email:  claire.dietrich@kleinthomaslaw.com
Melissa P. Wilner (SBN: 320550)
Email:  melissa.wilner@kleinthomaslaw.com
1920 Main Street, Suite 230
Irvine, CA 92614
Telephone: (949) 676-4570

**TESLA, INC.**
Ryan A. McCarthy (SBN: 233093)
Email:  rmccarthy@tesla.com
Robert W. Bruce (SBN: 223488)
Email: robebruce@tesla.com
3000 Hanover Street
Palo Alto, CA 94304
Telephone: (510) 602-3267

Attorney for Defendant and Cross-Defendant TESLA, INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO - CENTRAL

SASHA PELLETIER, by and through his Guardian ad Litem, Louise Meymand-Pelletier,

Plaintiff,

vs.

TESLA, INC., a California corporation; LEONARDO PAOLO; JEREMY SKARR; and DOES 1 through 50, inclusive,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.:  37-2023-00042304-CU-PA-CTL

Assigned to:  Hon. Wendy Behan
Department:  "C-66"

**TESLA, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Declaration of Gregory P. Gilmer and [Proposed] Order]*

Date:  March 21, 2025
Time:  9:30 a.m.
Dept.:  C-66

Action Filed:  September 13, 2023
Trial:          June 20, 2025

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 21, 2025, at 9:30 a.m., or as soon

thereafter as the matter may be heard in Department C-66 of the above-entitled Court, Defendant and Cross-Defendant Tesla, Inc.'s Motion for Protective Order will be heard.

This Motion is made pursuant to Code of Civil Procedure section 2031.060 and Evidence Code section 1060 and is based on the accompanying Points and Authorities, Declaration of Gregory P. Gilmer, any Reply that Tesla may file, the records on file in this action, and on other written and oral argument as may be presented to the Court.

DATED: February 25, 2025                    KLEIN THOMAS LEE & FRESARD

_____
                                            Gregory P. Gilmer
                                            Claire E. Dietrich
                                            Melissa P. Wilner

                                            TESLA, INC.

_____
                                            ROBERT W. BRUCE

                                            Attorneys for Defendant and
                                            Cross-Defendant TESLA, INC.

TESLA, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 4

STATEMENT OF RELEVANT FACTS AND THE PROPOSED "SHARING PROVISION" AT
ISSUE ............................................................................................................... 6

POINTS AND AUTHORITIES ................................................................................ 7

I.    This Court's authority and obligation to limit disclosure of Tesla's trade secret
      information are well-settled. ....................................................................... 7

II.   California and Federal courts have restricted dissemination of trade secret
      information even where substantially more compelling interests were implicated than
      those asserted by Plaintiff's counsel's here. ............................................. 10

III.  Plaintiff's proposed sharing provision circumvents this Court's role in protecting
      Tesla's proprietary information and ignores long-standing procedure by which
      collateral litigants may obtain related discovery where appropriate. ........................ 13

IV.   The trade secrets at issue, the manner in which discovery was conducted, and the
      state of the law in 1995 bear so little resemblance to present day that Raymond
      Handling v. Superior Court is of dubious value here. ................................................. 15

V.    Conclusion ................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Health Care Services* (2020) 47 Cal.App.5th 716, 734............................ 8, 9

*Bridgestone/Firestone, Inc. v. Superior Court* (1992) 7 Cal.App.4th 1384, 1393....... 9, 16

*Coalition Against Police Abuse v. Superior Court* (1985) 170 Cal. App. 3d 888............ 11

*Cohen v. Norcold, Inc.* (E.D.N.C. May 8, 2023) 2023 WL 3335048, at 3....................... 11

*Foltz v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2003) 331 F.3d 1122, 1131.... 14, 15, 16

*Kraszewski v. State Farm General Ins. Co.* (N.D.Cal.1991) 139 F.R.D. 156................. 16

*Long v. TRW Vehicle Safety Systems, Inc.* (D. Ariz., Apr. 29, 2010) 2010 WL 1740831
at 1 ................................................................................................................................ 12

*Menendez ex rel. Menendez v. Wal-Mart Stores East LP* (N.D. Ind., Jan. 11, 2012) 2012
WL 90140 at 4 .............................................................................................................. 12

*Multiversal Enterprises-Mammoth Properties, LLC v. Yelp Inc.* (2022) 74 Cal.App.5th
890 ........................................................................................................................... 10, 11

*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 317 ................. 8

*Oppenheimer Fund, Inc. v. Sanders* (1978) 437 U.S. 340, 352-53 n.17 ....................... 10

*Petersen v. DaimlerChrysler Corp.* (D. Utah, Mar. 5, 2007) 2007 WL 914738 at 1 ....... 12

*Raymond Handling Concepts Corp. v. Superior Court* (1995) 39 Cal.App.4th 584, 590
.................................................................................................................... 13, 15, 16, 17

*Seattle Times Co. v. Rhinehart* (1984) 467 U.S. 20, 32 .......................................... 11, 14

*Stadish v. Superior Court* (1999) 71 Cal.App.4th 1130................................................... 8

*Strough v. Gen. Motors LLC* (D. Colo. June 4, 2019) 2019 WL 2357306 at 2............... 12

*Williams v. Taser Int'l, Inc.* (N.D. Ga. June 30, 2006) 2006 WL 1835437, at 1-2 .......... 11

**Statutes**

Civil Code section 3426.1.................................................................................................. 8

Civil Code section 3426.5.......................................................................................... 10, 13

Code of Civil Procedure section 2025.420 ........................................................................ 8

Code of Civil Procedure sections 2025.040 .................................................................... 13

Evid. Code § 1060 ............................................................................................ 8, 9, 13

Evid. Code § 1061 ................................................................................................ 8

**INTRODUCTION**

Autonomous vehicle technology is in a period of extraordinary growth, with some estimates indicating a fivefold increase in global market value over the next five years.[1] Defendant Tesla, Inc. is frequently acknowledged to be the global leader in this market due to its innovative, adaptive, and commercially successful approach to Advanced Driver Assistance Systems (ADAS) and autonomy.[2]  In 2024, as actual and would-be competitors either lost a significant amount of money on each vehicle sale[3] or shuttered their autonomous vehicle development efforts altogether[4,5], Tesla reported over $72 billion in annual automotive sales revenue.[6]

Tesla's success has been hard-earned.  Its position as the market leader is the result of years of innovative and ambitious research and development, diligent testing, and substantial capital reinvestment.  Yet despite its present competitive advantage, Tesla recognizes that a significant and growing number of established and new automobile manufacturers have entered, or are reported to have plans to enter, the market for electric and other alternative fuel vehicles, as well as the market for self-driving technology and other vehicle applications and software platforms.[7]

Tesla further recognizes the substantial value of its intellectual property, the threat posed by intentional or inadvertent disclosure, and the damage that would result if its proprietary information was compromised: "Although we make reasonable efforts to maintain the confidentiality of our proprietary information, we cannot guarantee that these actions will deter or prevent misappropriation of our intellectual property. The theft or unauthorized use or publication of our trade secrets and confidential information could affect our competitive position."[8] In the face of this threat, Tesla has implemented robust

---

[1] https://www.fortunebusinessinsights.com/autonomous-vehicle-market-109045
[2] https://finance.yahoo.com/news/nvidia-ceo-says-tesla-far-ahead-in-self-driving-tech-as-autonomous-driving-efforts-boost-chip-demand-181126677.html
[3] https://www.investors.com/news/rivian-stock-q3-earnings-2/
[4] https://www.reuters.com/business/autos-transportation/general-motors-drop-development-cruise-robotaxi-2024-12-10/
[5] https://www.cnbc.com/2024/02/27/apple-car-project-canceled-report.html
[6] https://www.sec.gov/Archives/edgar/data/1318605/000162828025003063/tsla-20241231.htm
[7] Ibid.
[8] Ibid

information technology measures designed to protect against intellectual property theft, data breaches, sabotage and other external or internal cyber-attacks or misappropriation.[9]

The threat of compromise or disclosure of proprietary information related to its ongoing development efforts is not hypothetical: "While we have implemented security measures intended to prevent unauthorized access to our information technology networks, our products and their systems, malicious entities have reportedly attempted, and may attempt in the future, to gain unauthorized access to modify, alter and use such networks, products and systems to gain control of, or to change, our products' functionality, user interface and performance characteristics or to gain access to data stored in or generated by our products."[10]

Notwithstanding the value of proprietary information related to the research, development, testing, deployment, and operation of Tesla's suite of Advanced Driver Assistance System features known as Autopilot and the risk of its compromise, Tesla has and will continue to expansively disclose, for the purposes of this litigation, this information to Plaintiff's firm and associated counsel, his experts and consultants, and other individuals described in the Interim Protective Order currently in place and Tesla's Proposed Protective Order (*see* Exhibit "A" to the Declaration of Gregory P. Gilmer).[11] The terms of these Protective Orders strike an appropriate balance between Plaintiff's access to proprietary information and Tesla's interest in ensuring that the information is safeguarded in a manner consistent with its extraordinary value.

What Tesla opposes, and therefore what forms the basis of the instant motion, is the unwarranted and procedurally improper "sharing provision" insisted upon by counsel for Plaintiff, that would significantly jeopardize the security of Tesla's trade secret information, provide no benefit to Plaintiff in the instant litigation, and far from creating

---

[9] https://www.sec.gov/Archives/edgar/data/1318605/000162828025003063/tsla-20241231.htm
[10] Ibid.
[11] Tesla notes that the Proposed Order is not materially different from the Interim Order, other than providing additional protections for highly confidential documents.

1    judicial efficiency as Plaintiff's counsel claims, would impose upon this Court a burden of

2    what would amount to perpetual jurisdiction over the use and misuse of materials

3    disclosed by Plaintiff to individuals with no other connection to this litigation or this Court's

4    jurisdiction.

## STATEMENT OF RELEVANT FACTS AND THE PROPOSED
## "SHARING PROVISION" AT ISSUE

7    Neither Tesla nor Plaintiff disputes that this case involves claims related to Tesla's

8    proprietary Autopilot suite of driver assistance features. In the course of counsel's meet

9    and confer efforts (*see generally* Gilmer Dec.) and in the statements that the two parties[12]

10   filed with this Court in advance of the Informal Discovery Conference (*see* Ex. "B" to

11   Gilmer Dec.), a single disputed issue exists. Counsel for Plaintiff insists upon – and Tesla

12   opposes – a provision to be included in the Protective Order that would permit sharing of

13   information provided in discovery in this case with attorneys involved in other pending

14   lawsuits against Tesla that involve an Autopilot defect claim in a defined subset of model,

15   year, and vehicle hardware variants. In order to facilitate the exchange of documents

16   containing Tesla's trade secret and other proprietary information while adjudication of this

17   dispute has been pending, the parties entered into a stipulated non-sharing protective

18   order that is on file in this action. Tesla has provided over 3,300 pages subject to that

19   Order to date.

20   Tesla notes that neither party contests the terms of the Proposed Protective Order

21   that set forth the manner in which information that is trade secret or otherwise proprietary

22   may be designated Confidential or Highly Confidential, nor do they dispute the manner in

23   which such a designation may be contested. Accordingly, Tesla asserts *ipso facto* that

24   the proposed sharing provision at issue here would compel sharing of information that *is*

25   trade secret.

26   Tesla's Proposed Protective Order is attached hereto as Exhibit "A" to the

---

[12] As of the time of filing, counsel for Co-Defendants/Cross-Complainants Leonardo Paolo and Jeremy Skarr have not conclusively indicated their agreement with, or objection to, the proposed sharing provision.

declaration of Gregory P. Gilmer. Counsel for Plaintiff insists that the following language be added to that order:

> i. other attorneys of record in other pending lawsuits against Tesla, Inc. in the United States of America involving a claim that a defect in the Autopilot suite of driver assistance features of a 2012-2023 Tesla Model X, S, 3 or Y vehicle equipped with Autopilot Hardware 2.0, 2.5 or 3.0 caused a frontal crash resulting in personal injuries and/or death ("Sharing Attorneys").

> (1) Each Sharing Attorney shall sign Exhibit A annexed hereto and agree to be subjected to the jurisdiction of this Court for enforcement of the Protective Order prior to receiving any Confidential Information,
> (2) Each Sharing Attorney shall provide the original or a copy of the executed Exhibit A to the counsel in this Action who provided Confidential Information to the Sharing Attorney;
> (3) Counsel for all Parties to this Action shall maintain the originals and/orcopies ofthe Exhibit Athat are executed by Sharing Attorneys;
> (4) Sharing Attorneys shall only use Confidential Information for purposes of the specific case orcases for which the Sharing Attorney is counsel of record or for purposes related to this Action; and
> (5) Sharing Attorneys shall not further share Confidential Information with anyone other than the category of persons or entities described above in subparagraphs a-h, for the specific case or cases for which the Sharing Attorney is counsel of record, and only after the persons or entities have executed the Exhibit A. Sharing Attorneys shall not further share Confidential Information with any counsel, person or entity not described above.

*See* Informal Discovery Conference Statement attached as Ex. B to Gilmer Dec.

## POINTS AND AUTHORITIES

**I.     This Court's authority and obligation to limit disclosure of Tesla's trade secret information are well-settled.**

A litigant's interests in limiting disclosure of proprietary, sensitive, or privileged information have long been protected under various statutory provisions and the interpretations thereof by California and Federal Courts of Appeal. The authority of a trial court to protect those interests is robust, and is derived from the government's substantial interest in protecting a litigant's privacy interests. A trial court is therefore compelled to balance the interests of the party from which sensitive information is sought, and the party seeking it: "The state has two substantial interests in regulating pretrial discovery. The first is to facilitate the search for truth and promote justice. The second is to protect the legitimate

privacy interests of the litigants and third parties. The interest in truth and justice is promoted by allowing liberal discovery of information in the possession of the opposing party. The interest in privacy is promoted by restricting the procurement or dissemination of information from the opposing party upon a showing of good cause. The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. A trial court must balance the various interests in deciding whether dissemination of the documents should be restricted." (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 317 (cleaned up), citing *Stadish v. Superior Court* (1999) 71 Cal.App.4th 1130.)

Tesla brings the instant motion pursuant to Code of Civil Procedure section 2025.420, which explicitly grants this Court the authority to grant the protection Tesla seeks[13]:

> The court, for good cause shown, may make any order that justice requires to protect any party, deponent, or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. Code of Civil Procedure section 2025.420 subdivision (b) provides a nonexclusive list of permissible directions that may be included in a protective order. A protective order may include the direction that 'a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only to specified persons or only in a specified way'." (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 316 (cleaned up) citing Code Civ. Proc. §§ 2025.420 and 2031.060.)

The California Evidence Code establishes Tesla's statutory privilege to limit disclosure of its trade secret information: "[T]he owner of a trade secret has a privilege to refuse to disclose the secret, and to prevent another from disclosing it, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." (Evid. Code § 1060.) "Trade secret" as used in section 1060 refers to the definition found in the Uniform Trade Secrets Act (UTSA), Civil Code section 3426.1. (*See* Evid. Code § 1061; *see also Amgen Inc. v. Health Care Services* (2020) 47 Cal.App.5th 716, 734: "The Evidence Code and case

---

[13] The pending discovery requests at issue here are Requests for Production under section 2025.040; depositions that will implicate the identical protections of section 2031.060 are undoubtedly forthcoming, and the proposed Protective Order here protects information discovered under either provision.

1    law apply the UTSA definition to the trade secret privilege under Evidence Code section

2    1060.")

3       The UTSA "defines a trade secret as information that: (1) Derives independent

4    economic value, actual or potential, from not being generally known to the public or to

5    other persons who can obtain economic value from its disclosure or use; and (2) Is the

6    subject of efforts that are reasonable under the circumstances to maintain its secrecy. In

7    short, the test for a trade secret is whether the matter sought to be protected is information

8    (1) that is valuable because it is unknown to others and (2) that the owner has attempted

9    to keep secret." (*Amgen Inc. v. Health Care Services*, *supra* at 734.) The documents and

10    information that Tesla seeks to protect as Covered Information under the proposed

11    Protective Order relate to or include information related to technical research and

12    development of Tesla's industry-leading Advanced Driver Assistance Systems,

13    information that Tesla goes to significant lengths to protect from disclosure, thereby falling

14    under the UTSA definition of trade secret.

15       When a party seeks to outright *prevent* disclosure of trade secret information in

16    discovery, the party seeking discovery "must make a *prima facie*, particularized showing

17    that the information sought is relevant and necessary ... and that it is reasonable to

18    conclude that the information sought is essential to a fair resolution of the lawsuit. It is

19    then up to the holder of the privilege to demonstrate any claimed disadvantages of a

20    protective order. Either party may propose or oppose less intrusive alternatives to

21    disclosure of the trade secret, but the burden is on upon the trade secret claimant to

22    demonstrate that an alternative to disclosure will not be unduly burdensome to the

23    opposing side and that it will maintain the same fair balance in the litigation that would

24    have been achieved by disclosure." (*Bridgestone/Firestone, Inc. v. Superior Court* (1992)

25    7 Cal.App.4th 1384, 1393.)

26       Here, Tesla does not seek to outright prevent disclosure of its trade secret

27    information to parties to this litigation. To the contrary, Tesla has already produced to

28    Plaintiff a significant amount of such information.  The Proposed Protective Order, whose

protections are as expansive as those in the interim order already in place, achieves the "fair balance in the litigation" compelled by *Bridgestone.* The terms are reasonably crafted to maximize disclosure of information that is unquestionably deserving of protection under the UTSA while imposing no burden on Plaintiffs' ability to prosecute their claims against Tesla in this litigation. Therefore, the sole purpose of counsel for Plaintiff's insistence on a sharing provision appears to be to funnel Tesla's protected information to collateral litigants and others, a purpose that no less an authority than the Supreme Court of the United States has held is improper: "[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied." (*Oppenheimer Fund, Inc. v. Sanders* (1978) 437 U.S. 340, 352-53 n.17.)

## II. California and Federal courts have restricted dissemination of trade secret information even where substantially more compelling interests were implicated than those asserted by Plaintiff's counsel's here.

Plaintiff's counsel has not asserted, and cannot assert, that absent a sharing provision here his ability to litigate the instant case on behalf of Plaintiff is hampered. Therefore his client's interests are fully protected through the provisions of the Proposed Protective Order. The sharing provision he desires serves only *counsel's own* interests. Courts have held that a party's privilege to safeguard its trade secret information outweighs far more compelling interests and justifications than counsel asserts here.

In California, even a litigant's due process right to be present at trial has been held insufficient to overcome an opposing party's right to protection of its proprietary business and technical information. In *Multiversal Enterprises-Mammoth Properties, LLC v. Yelp Inc.* (2022) 74 Cal.App.5th 890, the Second District Court of Appeal reviewed for an abuse of discretion the trial court's grant of Yelp's motion to exclude the Plaintiff corporation's principal from the portion of the trial proceedings during which testimony of trade secret information was discussed. (*Multiversal Enterprises-Mammoth Properties, LLC v. Yelp Inc.* (2022) 74 Cal.App.5th 890, 902.) The *Multiversal* court recognized that a civil plaintiff has a due process right to be present at trial, but that a trial court's authority to "preserve the secrecy of an alleged trade secret by reasonable means" under Civil Code section

3426.5 merited exclusion of Plaintiff's principal during the portions of trial in which the trade secret information was presented. The Court of Appeal found that the trial court properly weighed the parties' competing interests and rejected petitioner's claim that *Yelp's* interest in protecting its trade secret information was less compelling than a litigant's right to attend his own company's trial.

Long before *Multiversal*, the United States Supreme Court held that "A litigant has no First Amendment right of access to information made available only for purposes of trying his suit." (*Seattle Times Co. v. Rhinehart* (1984) 467 U.S. 20, 32.) The Supreme Court also sagely recognized the potential risk to a litigant's intellectual property that liberal discovery rules pose: "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. (*Id.* at 34–35.) California Courts have long relied on the holding in *Seattle Times* to limit dissemination of confidential information obtained during pre-trial discovery. (*See, e.g. Coalition Against Police Abuse v. Superior Court* (1985) 170 Cal. App. 3d 888.)

Multiple Federal and other State courts have concluded that the interest of a litigant in maintaining the confidentiality of its materials and the risk associated with a sharing provision outweighs purported interests in litigation efficiency, for various reasons relevant here:

- "[T]he more widely confidential documents are disseminated, it becomes more likely that those documents will be released, and more difficult for the Court to enforce the terms of its protective order." (*Williams v. Taser Int'l, Inc.* (N.D. Ga. June 30, 2006) 2006 WL 1835437, at 1-2.);

- A court "cannot ignore the confidential nature of materials subject to its protective order and cannot blithely assume such protections would remain in place in the collateral litigation." (*Cohen v. Norcold, Inc.* (E.D.N.C. May 8, 2023) 2023 WL 3335048, at 3.)

- "Delays in discovery while the parties fight about whether documents can or cannot be shared with other lawyers who may seek to bring other cases in the future do not further the objective of getting this case ready for trial. It may actually cause delay in the production of documents as Defendants act more deliberately in deciding whether to produce or object to discovery, concerned that any material produced in discovery will be shared widely among the Plaintiffs' Bar across the country for no verifiable legitimate purpose." (*Strough v. Gen. Motors LLC* (D. Colo. June 4, 2019) 2019 WL 2357306 at 2.)

- "The court is not persuaded that the inclusion of this type of provision is either appropriate or necessary. Such sharing requests can and should be considered on an 'as-needed' basis throughout the course of the litigation, rather than 'opening the barn doors' with a broad order at this stage, which is anything but 'protective'." (*Petersen v. DaimlerChrysler Corp.* (D. Utah, Mar. 5, 2007) 2007 WL 914738 at 1, rejecting a 'sharing provision' [that] "would allow parties to share discovery in this case with certain parties unrelated to this case.")

- "The Court, however, is unwilling to enter a protective order that suggests it retains jurisdiction of any kind after the resolution of the case. (*Menendez ex rel. Menendez v. Wal-Mart Stores East LP* (N.D. Ind., Jan. 11, 2012) 2012 WL 90140 at 4.)

- "Plaintiffs seek the ability to share confidential and proprietary material discovered in this case with collateral litigants without needing to seek to modify the protective order and obtain a relevance determination from the Court, and without requiring the collateral courts to resolve any disputes which may arise with respect to the discoverability of the materials in the collateral cases. Plaintiffs' request for the entry of a sharing protective order, therefore, will be denied." (*Long v. TRW Vehicle Safety Systems, Inc.* (D. Ariz., Apr. 29, 2010) 2010 WL 1740831 at 1.)

The concerns articulated by the Courts in the above cases describe a Pandora's Box that the sharing provision would open. An untold number of attorneys in various

distant jurisdictions, unscreened by this court, in possession of information of extraordinary commercial value. And Tesla with no means to restrict, verify, or audit how that information was shared, stored, transmitted, or transmuted. Plaintiff's counsel's interest in becoming a clearing house for Tesla's proprietary information is unequivocally outweighed by Tesla's interest in maintaining the security of it.

### III. Plaintiff's proposed sharing provision circumvents this Court's role in protecting Tesla's proprietary information and ignores long-standing procedure by which collateral litigants may obtain related discovery where appropriate.

As previously noted, this Court does not just have the authority to craft a protective order that appropriately protects Tesla's trade secret information; it also has the obligation. If the same trade secret information at issue here were at issue in a UTSA action, the Court would be compelled by Civil Code section 3426.5 to do so. (*See* Civ. Code, § 3426.5 ["In an action under this title, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings…"].) In that this is not an action under the UTSA, the Court's authority and obligation derive from Evidence Code section 1060 (*See Raymond Handling Concepts Corp. v. Superior Court* (1995) 39 Cal.App.4th 584, 590 ["To protect the privilege accorded to trade secrets in Evidence Code section 1060 … a trial court must balance the interests of both sides"]) and from Code of Civil Procedure sections 2025.040 and section 2031.060.[14]

Here, the blanket procedure proposed by counsel for Plaintiff would allow him or other counsel to share information obtained through discovery in this case with other attorneys, who would each in turn be permitted to share that information with other attorneys. This proposal circumvents not just this court and its mandatory exercise of discretion, but also the court in which the collateral matter is venued, that also has a critical role in balancing the respective litigants' interests. Moreover, Plaintiff proposes

---

[14] The unpublished opinion of the 4th District Court of Appeals in *Seahaus La Jolla Owners Ass'n v. Superior Court* (Cal. Ct. App., Nov. 9, 2010, No. D058237) 2010 WL 4457399) is also instructive, if not authoritative, on the distinction between authority under Civil Code section 3426.5 and the civil discovery statutes.

that each attorney to whom the covered information was subsequently shared would agree to be subject to the jurisdiction of this Court, potentially creating a temporal jurisdiction without end.

In *Foltz v. State Farm Mut. Auto. Ins. Co.*, the Ninth Circuit Court of Appeals, a court that "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation," explains in great detail the process by which a collateral litigant may obtain modification of a protective order to allow access to covered material. (*Foltz v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2003) 331 F.3d 1122, 1131.) Tesla notes for this Court as a preliminary matter that contrary to the desires of Plaintiff's  counsel here, *it is not a party to the matter in which the Protective Order was entered that initiates the process, it is the litigant in the <u>collateral</u> matter.*

> [C]ollateral litigants may be entitled to modification of the original protective order permitting them access to the properly covered material, subject to the terms of that order.
> …
> Nonetheless, a court should not grant a collateral litigant's request for such modification automatically. As an initial matter, the collateral litigant must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein. Requiring a showing of relevance prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding. Such relevance hinges on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings.

(*Foltz v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2003) 331 F.3d 1122, 1131-32.)

The initial relevance determination made by the Court that issued the protective order serves the important purpose of preventing disclosure of protected information that is irrelevant to the collateral action. It is also a tacit acknowledgement of the inherent overbreadth of discovery: "Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." (*Seattle Times, supra*, 467 U.S. at p. 33.) The Ninth Circuit explains why a collateral litigant must first prove relevance of the requested information to the Court that issued the Protective Order: "The court that issued the order is in the best position to make the relevance

assessment for it presumably is the only court familiar with the contents of the protected discovery." (*Foltz, supra,* at 1132.) The issuing court is also uniquely positioned to weigh the interests of the party opposing disclosure of the protected information: "Of course, before deciding to modify the protective order, the court that issued it must consider other factors in addition to the relevance of the protected discovery to the collateral litigation. In particular, it must weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." (*Id.* at 1133.)

The relevance determination by the issuing court is not the final say in whether the collateral litigant may obtain information covered by the protective order:

> The disputes over the ultimate discoverability of specific materials covered by the protective order must be resolved by the collateral courts. Allowing the parties to the collateral litigation to raise specific relevance and privilege objections to the production of any otherwise properly protected materials in the collateral courts further serves to prevent the subversion of limitations on discovery in the collateral proceedings. These procedures also preserve the proper role of each of the courts involved: the court responsible for the original protective order decides whether modifying the order will eliminate the potential for duplicative discovery. If the protective order is modified, the collateral courts may freely control the discovery processes in the controversies before them without running up against the protective order of another court.

(*Foltz, supra,* at 1132.) The method described in *Foltz* ensures that courts protect the rights of the owner of protected information covered by a discovery protective order, prevents the subversion of discovery rules and procedure in collateral proceedings and venues, and eliminates the potential for a court issuing a protective order to have indefinite jurisdiction conferred upon it by operation of an ongoing chain of document sharing.

**IV. The trade secrets at issue, the manner in which discovery was conducted, and the state of the law in 1995 bear so little resemblance to present day that *Raymond Handling v. Superior Court* is of dubious value here.**

Plaintiff will almost certainly rely on the 1995 case *Raymond Handling Concepts Corp. v. Superior Court* (1995) 39 Cal.App.4th 584 in support of his proposed sharing provision. Any such reliance is misplaced. To be sure, in *Raymond Handling*, the Fourth

District Court of Appeal did in fact hold that a trial court's inclusion of a sharing provision in a discovery protective order was not an abuse of discretion. (*Raymond Handling Concepts Corp. v. Superior Court* (1995) 39 Cal.App.4th 584, 591.) There are a multitude of reasons why this Court should not find its opinion authoritative or persuasive here.

First, because it could find no California case that addressed sharing provisions of protective orders, the Court looked elsewhere for reasoning inspiration, finding it in six cases: one each from Texas, the Northern District of Illinois, the Northern District of California, the Northern District of Indiana, and the District of Colorado. (*Id.* at 588-89.) Of the federal cases cited, the *Raymond Handling* Court commented only on *Kraszewski v. State Farm General Ins. Co*. (N.D.Cal.1991) 139 F.R.D. 156, highlighting the District Court's application of a 1964 Ninth Circuit case involving a sharing provision. (*Ibid.*) This reasoning can no longer be considered persuasive; the Ninth Circuit's reasoning in *Foltz v. State Farm* set forth above is nearly 40 years more recent than that relied upon by the *Raymond Handling.* If the First District Court of Appeals today was to base its reasoning on a sharing provision case from the Northern District of California that applied Ninth Circuit precedent, that reasoning would track that of *Foltz,* and the trial court's vague, blanket sharing provision imposed in *Raymond Handling* would have been found to be improper.

Second, the Court's application of *Bridgestone/Firestone, Inc. v. Superior Court* (1992) 7 Cal.App.4th 1384 is plainly erroneous. The Court correctly cites the three-step process of *Bridgestone/Firestone*, but fumbles the second step. After acknowledging that "the party seeking discovery must make a prima facie, particularized showing that the information sought is relevant and necessary to the proof of, or defense against, a material element of one or more causes of action presented in the case," (*Raymond Handling, supra* at 590), the Court assumes away the requirement for a particularized showing of relevance: "Since plaintiff's attorney may share this discovery only with counsel in other similar cases, it must be assumed that the information is also discoverable in these other similar cases." (*Ibid.*) The Court almost inconceivably misses

1  the fact that the Court in *Bridgestone/Firestone* found that the general averments of the
2  party seeking disclosure did not carry its burden of proof.

3      Lastly, Tesla asks this Court to acknowledge several significant differences
4  between 1995 and present technology and civil discovery practice. The trade secret
5  information at issue in *Raymond Handling* is referred to as "production drawings" of a
6  stand-up forklift. Tesla trade secret information implicated here refers to the development
7  of computer vision systems, neural networks, and artificial intelligence that have been
8  continuously improved upon, and currently have Tesla on the cusp of deploying fully
9  autonomous motor vehicles and advanced humanoid robots. The discovery process of
10  today differs nearly as much as the technology. eDiscovery, computers, and search
11  algorithms have drastically reduced not just the physically cumbersome process of
12  reviewing tens of thousands of pages of paper documents, but also the time required to
13  review for content and annotate document productions. The efficiencies that the
14  *Raymond Handling* court reasoned came about through discovery sharing are no longer
15  realized due to the nature of today's technology and discovery advancements.

16  **V.   Conclusion**

17      Tesla moves this Court for a Discovery Protective Order here that does not permit
18  sharing of information protected by the order with counsel in collateral matters. The
19  potential damage that may result from inadvertent or intentional disclosure of Tesla's
20  proprietary information compels such a finding. Moreover, the sharing provision proposed
21  by counsel for Plaintiff requires that this Court, and the Courts in which the collateral
22  matters are venued, to abdicate their respective responsibilities to ensure the appropriate
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

1  relevance determinations are made and that Tesla's proprietary information receives the

2  protection it is due.

3  DATED: February 25, 2025                    KLEIN THOMAS LEE & FRESARD

4

5                                              Gregory P. Gilmer
                                               Claire E. Dietrich
6                                              Melissa P. Wilner

7

8                                              TESLA, INC.

9                                              ROBERT W. BRUCE

10

11                                             Attorneys for Defendant and Cross-
                                               Defendant TESLA, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE
## CCP 1013A(3)

*STATE OF CALIFORNIA, COUNTY OF ORANGE*

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 1920 Main Street, Suite 230, Irvine, CA 92614.

On February 25, 2025**,** I served the foregoing document described as **TESLA, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES** on all interested parties in this action by transmitting an electronic copy as follows:

## SEE ATTACHED SERVICE LIST

☐ **BY MAIL (CCP §1013(a) and §2015.5):** I served the documents by placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing documents for mailing. On the same day the document is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage date is more than **1** day after the date of deposit for mailing in affidavit.

☐ **BY OVERNIGHT DELIVERY/NEXT DAY DELIVERY (CCP §1013(c) and §2015.5):** I sealed such documents in separate envelopes to each addressee and deposited each for collection by mailing via overnight mail/next day delivery in a box or other facility regularly maintained by the U.S. Postal Service or an Express Service carrier, or delivered to an authorized carrier or driver authorized by the U.S. Postal Service or an Express service carrier to receive documents, with delivery fees paid or provided.

☒ **BY ELECTRONIC SERVICE (CCP 1010.6.(b)(6):** I transmitted the foregoing document(s) to the person(s) specified above electronically.

☐ **BY ELECTRONIC SERVICE (CCP 1010.6.(b)(6):** Based on an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed above. I did not receive, within reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Executed on February 25, 2025, at Lakewood, California.

☒ (State)  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Samie Long

---

TESLA, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES

## <u>SERVICE LIST</u>

**<u>Sasha Pelletier v. Tesla, Inc.</u>**
**San Diego County Superior Court – Central**
**Case No.:  37-2023-00042304-CU-PA-CTL**

| | |
|---|---|
| Vincent J. Bartolotta, Jr., Esq.<br>Christian Hulburt, Esq.<br>Andrew G. Nagurney, Esq.<br>THORSNES BARTOLOTTA MeGUIRE LLP<br>2550 Fifth Avenue, 11th Floor<br>San Diego, California 92103 | **Attorney for Plaintiff**<br>**SASHA PELLETIER, by and through his**<br>**Guardian ad Litem, Louise Meymand-**<br>**Pelletier** |

Telephone:   (619) 236-9363
Facsimile:   (619) 236-9653
Email:       bartolotta@tbmlawyers.com
Email:       hulburt@tbmlawyers.com
Email:       nagurney@tbmlawyers.com
Email:       mazzarella@tbmlawyers.com

| | |
|---|---|
| Brett J. Schreiber, Esq.<br>Carmela Birnbaum, Esq.<br>Srinivas Hanumadass, Esq.<br>SINGLETON SCHREIBER LLP<br>591 Camino de la Reina, Suite 1025<br>San Diego, CA 92108 | **Attorney for Plaintiff**<br>**SASHA PELLETIER, by and through his**<br>**Guardian ad Litem, Louise Meymand-**<br>**Pelletier** |

Telephone:   (619) 771-3473
Facsimile:   (619) 255-1515
Email: bschreiber@singletonschreiber.com
       cbirnbaum@singletonschreiber.com
       vas@singletonschreiber.com
Jaime Justo – paralegal
jjusto@singletonschreiber.com
Ericka Elms – Assistant
eelms@singletonschreiber.com
Document services
service@singletonschreiber.com

| | |
|---|---|
| Colin H. Walshok, Esq.<br>WINGERT GREBING BRUBAKER &<br>WALSHOK LLP<br>1230 Columbia Street, Suite 400<br>San Diego, CA 92101-3370 | **Attorney for Defendants & Cross-**<br>**Complainants**<br>**LEONARD PAULO (erroneously sued as**<br>**LEONARDO PAOLO) & JEREMY SKARR** |

Telephone:   (619) 232-8151
Facsimile:   (619) 232-4665
Email:       cwalshok@wingertlaw.com
Cynthia Stone – Assistant
cstone@wingertlaw.com

4888-8056-3440, v. 2

TESLA, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF
POINTS AND AUTHORITIES