UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,

    Plaintiff,

Case No. 22-22607-KMM

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

## DILLON ANGULO'S CORRECTED REPLY IN SUPPORT OF MOTION TO LIMIT AND EXCLUDE CERTAIN OPINIONS OF TESLA'S NEUROPSYHCOLOGIST, DR. BARRY CROWN

Plaintiff, Dillon Angulo, hereby gives his Corrected Reply in Support of his Motion to Limit and Exclude Certain Opinions of Tesla's Neuropsychologist, Dr. Barry Crown (DE 344), and states as follows:

In its Response in Opposition to Plaintiff's Motion (DE 383), Tesla made its theme clear. Despite the extraordinary trauma suffered by Angulo in this crash, Tesla denies that Angulo suffered any lasting harm, and seeks to parade as much prejudicial evidence before our jury as it can get away with. And to get there, in its Response, Tesla reliably continues with its pattern of making blatantly false statements and misrepresentations. It is precisely because of this repeated distortion of fact and truth that a fair trial on Angulo's damages requires the relief sought in Plaintiff's Motion.

**I. Dr. Crown unequivocally admitted that Angulo sustained a "severe" traumatic brain injury resulting in continuing neurocognitive deficits as a result of this crash.**

In its Response, Tesla questions whether Angulo even sustained a brain injury, and further asserts that Dr. Crown's concession that Angulo suffered a "serious" traumatic brain injury was a misrepresentation by Plaintiff. (Response at footnote 2). First, the correct terminology for the initial classification of Angulo's brain injury, as defined in the Glasgow Coma Scale and as used by Plaintiff is "severe," not serious. Nomenclature aside, in direct contradiction to Tesla's repeated assertions in its Response, Dr. Crown absolutely did acknowledge that Angulo suffered a "severe" traumatic brain injury with continuing neurocognitive deficits *secondary to this brain injury*. See excerpts from Dr. Crown's testimony as follows:

> Q: And per your own testimony when Mr. Angulo presented, he initially had a Glasgow Coma Scale of eight, correct?
> A: Correct.
> A: And *that puts him in the severe brain injury category, correct?*
> A: *Correct.*
> (Exh. A, Dr. Crown dep. at 85-86, see also, p. 32, p.141)(emphasis added).
> ------------------------
> Q: It is your opinion that [Angulo] has neurocognitive deficits, correct?
> A: Yes.
> (Id.. at 74)
> ------------------------
> Q: So the brain – so this incident is contributory to – this incident and the injuries he suffered is contributory to his neuropsychological disturbance?
> A: Yes.
> (Id. at 35)
> -----------------
> Q: And if you choose a validated fixed battery, you can provide a probability of brain damage index, correct?
> A: You could.
> Q: Okay. And that's not available in the battery you chose, correct?
> A: *The probability – the probability is that Mr. Angulo is brain damaged.*
> (Id. at 112)(Emphasis added).

2

## II. Angulo did not have pre-existing PTSD.

To distract and detract from the clear evidence of Angulo's TBI and resulting neurocognitive deficits as shown by Dr. Crown's testing, Dr. Crown and Tesla seek to claim that Angulo had pre-existing PTSD. *If* that assertion were true, it would admittedly be a critical fact as PTSD also causes the same type of neuro-cognitive deficits as does TBI. So, in its Response, Tesla states repeatedly – as if it were fact - that Angulo had PTSD prior to this incident. At one point, Tesla went as far as to state that "Angulo's self-reported childhood PTSD is an objective fact conceded by both sides". (Response at 2, 5, 15-17). This is unequivocally false.

While Angulo did suffer some childhood trauma (of a far less magnitude than what he suffered in this crash), there is a marked difference between suffering trauma and having PTSD – which is a severe mental health disorder, requiring formal medical diagnosis, that causes a specific constellation of symptoms and a drastic reduction in daily functioning and quality of life. Indeed, in a case with voluminous evidence and medical records, there is no evidence or indication at all that Angulo ever exhibited any of the signs or symptoms of PTSD prior to this crash, let alone that he actually had or was diagnosed with PTSD before.

To support this blatantly false statement of purported "objective fact," Tesla misleadingly cites to the testimony of Angulo's neuropsychologist, Dr. Russell. Review of the cited testimony, however, paints a far different picture from what Tesla asserts. Dr. Russell *never* opined that Angulo had pre-existing PTSD or that his childhood trauma was a causative factor as to his current PTSD. Instead, she merely acknowledged that any child abuse, generally, "*can*" contribute towards PTSD. See the full and complete testimony by Dr. Russell on this issue as follows: (Response Exh. B at 41-42).

> Q: Was Mr. Angulo a victim of emotional and physical abuse during his childhood?
> A: Yes. As far as I read, he was.
> Q: And is child abuse a contributor of posttraumatic stress?
> A: Well, of course, it *can be*, but it makes someone more fragile so they suffer another trauma.

3

In essence, what Dr. Russell testified to was that childhood trauma generally serves as a risk factor for PTSD in that it makes that person less resilient to future trauma. Plaintiff agrees with that, but notes that same has little relevance in this action. This is because under the eggshell plaintiff rule, Tesla must take Angulo as it finds him, and should be held responsible for the full extent of his PTSD even if his childhood trauma rendered him more susceptible (less resilient) to the trauma suffered in this crash. See, e.g., Maurer v. U.S., 668 F.2d 98, 100, 1982 A.M.C. 884 (2nd Cir. 1981)("When defendant's wrongful act causes injury, he is fully liable for resulting damage even though injured plaintiff had preexisting condition that made consequences of wrongful act more severe than it would have been for normal victim..").

In this case, there is no evidence that Angulo had pre-existing PTSD, and Tesla and Dr. Crown should not be allowed to confuse our jury and prejudice Angulo's case by falsely suggesting otherwise. Moreover, because Angulo's childhood trauma has little evidentiary value when considering the eggshell plaintiff rule, and would undoubtedly cause extensive prejudicial effect by painting Angulo's parents – who intend to testify on his behalf – in the worst light possible, the evidence surrounding Angulo's childhood trauma should be wholly excluded from trial.

**III.     There is no evidence that Angulo suffered from ADHD in adulthood.**

Just as with the PTSD issue, Tesla and Dr. Crown assert that Angulo had ADHD in adulthood to suggest to our jury an alternate reason as to why he continues to have neurocognitive deficits. And just as with the PTSD issue, Tesla and Dr. Crown seemingly invent the "evidence" of this adulthood ADHD out of thin air. And to be clear, the distinction between childhood ADHD and ADHD which continues past the "adolescent growth spurt" is important, as, per Dr. Crown, it is only the latter which would have caused the type of neurocognitive deficits suffered by Angulo. (Exh. A, Dr. Crown dep. at 41). And to that end, there is no evidence of any kind that Angulo had ADHD past the adolescent growth spurt. In its Response to this issue, Tesla's lone cite to medical evidence was a single

4

note which contained the following excerpt: "dx'd *as a child* as add' & mdd. *Pt disbelieves adhd dx.*" (Exh. A to Tesla's Response at 170)(Plaintiff's interpretation of this note: "Patient diagnosed as a child with ADHD and Major Depressive Disorder, Patient disbeleives the ADHD diagnosis was accurate.")

To support the contention that Angulo must have continued to suffer from ADHD in adulthood, Tesla and Dr. Crown point to…Angulo's poor grades in high school and college, and the fact that Angulo referred to himself as having previously been a "knucklehead" in his interview with Dr. Crown. That's the sum total of the evidence. Clearly, poor grades do not equate to a diagnosis of ADHD. Neither does being a knucklehead in one's youth. If that were the case, half of our population would qualify for an ADHD diagnosis. Which brings us to our last point on this; it cannot be ignored that in the one record pointed to by Tesla, it reflects that Angulo doesn't believe he *ever* had ADHD, even as a child. And to that end, it is important to understand that ADHD is one of, if not the, most erroneously over-diagnosed conditions for young rambunctious children.[1]

**IV.    Dr. Crown admitted that he cannot opine that Angulo was malingering or exaggerating.**

Tesla's Response highlights Plaintiffs' *exact* concern with the issue of malingering. In its Response, Tesla makes clear its intent that, through Dr. Crown, it intends to tell our jury that the neuropsychological testing results were "***suggestive*** of over-endorsing or exaggerating symptoms." (Response at 13)(Emphasis supplied). Yet, Dr. Crown admitted that he had no reason to believe that Angulo was lying, exaggerating, or being anything other than honest and forthright in his interview session. (Id. at 107). And even more importantly, Angulo passed Dr. Crown's malingering tests[2] and

---

[1] See, "Overdiagnosis of Attention-Deficit/Hyperactivity Disorder in Children and Adolescents" (April 12, 2021, https://pmc.ncbi.nlm.nih.gov/articles/PMC8042533/ (last visited April 10, 2025)

[2] Angulo passed two out of the three malingering tests administered by Dr. Crown. As to the third test which was not passed, Dr. Crown acknowledged that the results were flagged as a result of Angulo endorsing symptoms of depression, PTSD and former drug use, all of which were factually accurate.

5

based on same, Dr. Crown admitted that he could not opine that Angulo was malingering or exaggerating:

> Q: So fair to say you cannot testify that within a reasonable degree of medical probability or neuropsychological probability that Mr. Angulo was malingering or exaggerating?
> A: Yes. That's what I intended to express.
> Q: Okay. That's not an opinion that you're going to offer at trial?
> A: Correct.
>
> (Exh. A, Dr. Crown dep. at 116).

Yet, as made clear in its Response, despite the foregoing, Tesla apparently still intends to surreptitiously "*suggest*" that Angulo is malingering, which is exactly the reason that Plaintiff raised this issue, to prevent such improper suggestions by Tesla's counsel and experts. And, for purposes of completeness, while Dr. Crown did also testify that the constellation of Angulo's score results being lower than expected for his level of functioning was also a factor to consider in malingering, Dr. Crown also admitted that those low score results can also be a function of and reflective of Angulo's chronic pain and PTSD. (See, e.g., Exh. A, Dr. Crown dep. at 20; 60; 123; 126).

V.  **Addressing former drug use - the lack of evidence "residual effects"**

Along with PTSD and ADHD, Angulo's prior drug use is the third of three alternative reasons posited by Tesla and Dr. Crown as to why Angulo continues to have neurocognitive deficits. And here, unlike with the PTSD and ADHD, Tesla and Dr. Crown aren't *completely* making it up in the sense that Angulo did formerly use drugs - though the evidence is clear that he has been clean since long before this crash [3]. Notwithstanding this fact, what Tesla and Dr. Crown do again invent is that this former drug use resulted in continuing "residual effects" on Angulo. (Response at 11). This notion

---

[3] In its Response, Tesla questions the veracity of the fact that Angulo never returned to any illicit drug use or abuse after he left rehab. This again is irresponsible speculation by Tesla. The unequivocal evidence is clear on this issue, including doctor notes and deposition testimony. Indeed, even Dr. Crown was forced to admit that – *based on all the evidence and information available to him in the case as a whole* – he had no reason to suspect that Angulo has ever used any type of narcotic even a single time after leaving rehab. (Exh. A, Dr. Crown dep. at 53).

6

is the focus of Dr. Crown's opinions, and is repeated often and loudly by Tesla in its Response. Yet, when one searches for evidence and anything approaching scientific fact in either Dr. Crown's opinions or in Tesla's Response, there simply is none. There is no medical evidence. In the absence of medical evidence, there is also no science. No comparative analysis was performed. No literature was provided. There is only Dr. Crown saying it is true, and Tesla saying that we must believe him.

Given Dr. Crown's clear willingness to invent other issues in this case (i.e. adulthood ADHD and pre-existing PTSD), there is no reason that this Court should give any credence to Dr. Crown's unsubstantiated proclamations here.  Moreover, because Dr. Crown wholly failed to even attempt to assess which of Angulo's neurocognitive deficits are allegedly attributable to the "residual effects" of his prior issues versus which were caused by the injuries he suffered in this incident, Florida law is clear that Dr. Crown's opinions on this issue are inadmissible *ipse dixit*. See, Brashevitzky v. Reworld Holding Corporation, 348 F.R.D. 107, 126 (S.D.Fla., 2024)(explaining that an "expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions internal citations omitted" and holding that an expert's conclusion that there was a "discernable toxic footprint" was *ipse dixit* where the expert "did not compare the toxicity levels to the background concentrations".)(internal citations omitted).

**VI.**   **Addressing former drug use – Florida Law on other contributing causes of damages**

In its Response, Tesla argues that evidence such as the prior drug use is important because it renders Plaintiff unable to "medically apportion causation" of Angulo's neurocognitive deficits between the injuries he suffered in this collision (i.e. TBI, PTSD and chronic pain) with those issues that were pre-existing (i.e. the former benzo use, and the non-existent adulthood ADHD and pre-existing PTSD). (Response at 4). Tesla then suggests that this creates a legal barrier to recovery of his damages related to these neurocognitive deficits.

First, again, Tesla completely misrepresents the evidence on this issue. As cited to above, even Dr. Crown had to agree that Angulo's injuries suffered in this crash are contributory to his current neurocognitive deficits. As to Angulo's own experts, while Dr. Nedd (neurologist) did state that he couldn't "split the baby" between apportioning any prior conditions versus the brain injury suffered in this crash, Tesla conveniently omitted the full context of this testimony, wherein Dr. Nedd clearly explained that (1) the fact that that Angulo had prior conditions made it so that he had a "worse outcome" from this brain injury, and (2) "*This accident caused a structural and physiological neurological injury that he didn't have before.*"  (Exh. C to Tesla Response, Dr. Nedd dep. at 21-23)(Emphasis added)

Second, notwithstanding the above, even if we were to assume for the sake of argument that what Tesla is saying is true – that it is impossible to medically apportion causation - Florida Law is clear that under those circumstances, Tesla will be held to be responsible for the totality of Angulo's current and continuing condition. See, Florida Civil Jury Instruction 501.5(a) – Other Contributing Causes of Damages- Aggravation or activation of disease or defect.

> If you find that the (defendant(s)) caused a bodily injury, and that the injury resulted in [an aggravation of an existing disease or physical defect] [or] [activation of a latent disease or physical defect], you should attempt to decide what portion of (claimant's) condition resulted from the [aggravation] [or] [activation]. If you can make that determination, then you should award only those damages resulting from the [aggravation] [or] [activation]. However, **if you cannot make that determination, or if it cannot be said that the condition would have existed apart from the injury, then you should award damages for the entire condition suffered by (claimant).** (Emphasis Added).

**VII.    Addressing former drug use – evidentiary considerations**

Because Angulo's former drug use has little to no probative value as set forth above and will undoubtedly both cause juror confusion as well as be highly prejudicial, this Court should completely disallow introduction of such evidence.   If, however, the Court were to disagree with that argument, and find that at least some of Angulo's prior drug use can come into evidence, the record is clear that there is some evidence on this issue which is both uniquely inflammatory and prejudicial while also

8

completely irrelevant and/or duplicative. Accordingly, if any line is drawn, the following items should clearly be on the inadmissible side of said line:

   a. <u>Any reference to cocaine or crack cocaine use</u>. All of Dr. Crown's opinions regarding contributory deficits were reliant on Angulo's former benzo abuse; he offered no opinions at all pertaining to Angulo's use of cocaine or crack cocaine. As such, there is obviously no relevance to Angulo's former use of cocaine or crack cocaine. Conversely, in a 403 analysis, it is without refute that introduction of cocaine or crack cocaine abuse would cause substantial prejudice, as those narcotics carry a uniquely prejudicial stigma.

   b. <u>Records from the rehab facility</u>.  For obvious reasons, when Angulo voluntarily checked himself into rehab on his own accord and motivation, he was at the lowest point of his life, and as part of the rehab process the deepest and darkest aspects of his life and psyche were laid out and put on paper. Should this Court find that Angulo's former drug use and rehab visit are relevant and admissible, Tesla can easily make any points it needs by just referring to the fact that Angulo had a drug addiction problem and went to rehab. The sordid details are completely unnecessary.

   c. <u>Any reference to the benzo withdrawal seizures</u>. In its Response, Tesla argues that Angulo's seizures from benzo withdrawal are relevant to Angulo's anticipated claim for "future seizure treatment" caused by his TBI. To that end, Plaintiff hereby stipulates that he will not present such a claim, thus negating Tesla's reason for introducing same. And regarding the argument that Dr. Crown must account for these seizures in his opinions, Dr. Crown failed to assert or establish that Angulo having seizures caused any neurocognitive damage beyond what Dr. Crown alleges the benzo use itself caused.  As such, such evidence is duplicative, unnecessary, and highly prejudicial.

        d. <u>That Angulo left rehab against medical advice</u>. Notably, there is no evidence to establish that his leaving rehab against medical advice caused Angulo harm or contributed to his continuing neurocognitive deficits. Absent such evidence, this issue should not be put before our jury. See, <u>Vidal v. Macksoud</u>, 933 So.2d 659, 661 (Fla.App. 3 Dist., 2006)

VIII. <u>The MCMI-III personality factors are not based on Angulo's own self-reporting, are not relevant, and are highly prejudicial.</u>

Tesla argues that that the MCMI—III personality factors detailed by Dr. Crown were self-reported. Again, this is completely misleading. The MCMI-III personality factors detailed in Dr. Crown's report are not at all based on anything that Angulo actually reported to Dr. Crown or to anyone else. Instead, the profile was created by an algorithm based on true or false questions that Angulo answered. Examples of the questions utilized in the MCMI-III include "I often get lost in my thoughts and forget what's going on around me", "I get very tense with people I don't know well because they may want to harm me", and "I like to flirt with members of the opposite sex". In no way can answering these true or false questions be construed as a self-report of the personality issues identified in Plaintiff's Motion (e.g. sadistic, scheming, etc.). For all the same reasons identified in Plaintiffs Motion, it is clear these personality factors must be excluded.

## CONCLUSION

In its Response, Tesla has clearly shown that, in an attempt to detract from Angulo's damages and prejudice his case, it has no qualms in making stark misrepresentations to this Honorable Court. If Tesla is comfortable making such representations to this Court, one can imagine the extent that it will go to in attempting to mislead and prejudice our jury. It is precisely for these reasons that a fair trial requires the exclusion of this irrelevant and prejudicial evidence.

Date:  April 13, 2025.                                    Respectfully submitted,

*/s/Adam T. Boumel*
**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
adam@roussolawfirm.com
haiyang@roussolawfirm.com
pleadings@roussolawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on 13th day of April, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the parties listed below.

*/s/Adam T. Boumel*
**Adam T. Boumel, Esq.**
Florida Bar No. 0110727

## SERVICE LIST

**WHITNEY V. CRUZ**
Florida Bar No. 800821
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**JOEL SMITH**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel. 803-726-7420 / Fax: 803-726-7421
joel.smith@bowmanandbrooke.com

*Attorneys for Defendant Tesla, Inc.*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHRIEBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com
*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com
*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*