UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, *as Personal Representative of the Estate of Naibel Benavides Leon, deceased*,

    Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

    Defendant.
_____/

**SEALED ORDER ON MOTION FOR RULE 37 SANCTIONS**

**THIS CAUSE** is before the Court upon Plaintiffs Dillon Angulo and Neima Benavides, as Personal Representative of the Estate of Naibel Benavides Leon's Motion for Rule 37 Sanctions ("Motion"), ECF No. [285]. Defendant Tesla, Inc. ("Tesla") filed a Response in Opposition ("Response"), ECF No. [297], to which Plaintiffs filed a Reply, ECF No. [307].[1] The Court has reviewed the Motion, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, Plaintiffs' Motion is granted in part and denied in part.

**I.   BACKGROUND**

The case arises from a car accident that occurred in Key Largo, Florida. George McGee owned a 2019 Tesla Model S ("Vehicle") "equipped with automatic driving features, one of which Tesla called 'Autopilot,' that could navigate without driver input." ECF No. [205] at 3. On April 25, 2019, McGee was driving the Vehicle when it suddenly hit a parked car and then struck Naibel

---

[1] While Plaintiffs filed their original reply brief at ECF No. [306], Plaintiffs filed a Corrected Reply at ECF No. [307].

Benavides Leon and Dillon Angulo, killing Benavides Leon and causing Angulo to suffer significant injuries. *See id.* at 3-4.

On April 22, 2021, Plaintiff Neima Benavides, brought this action against Tesla on behalf of Decedent Naibel Benavides Leon, in the Circuit Court for Miami-Dade County, Florida, alleging automotive product liability claims against Tesla. ECF No. [1-1]. Tesla removed the action to this Court on May 25, 2021. ECF No. [1]. On August 16, 2022, Plaintiff Dillon Angulo initiated a similar automotive products liability action against Tesla in this district, Case No. 22-cv-22607-KMM. *See* 22-cv-22607, ECF No. [1]. The Court accepted the transfer of this case and consolidated both actions due to the overlapping issues presented. ECF No. [50].

Plaintiffs filed an Amended Complaint, ECF No. [205], asserting strict-products-liability claims for defective design (Count I), failure to warn (Count II), and defective manufacture (Count III), as well as a negligent misrepresentation claim (Count IV). Relevant to Plaintiffs' claims are evidence indicating the cause of the car crash, as Plaintiffs insist that the incident was the result of a defect in the Vehicle's Autopilot system. *See id.* at 6, 39-46.

Plaintiffs contend that evidence that may assist in determining the cause of the crash include augmented videos, typically produced by Tesla, which are designed to show what the vehicle's systems were "'seeing,' processing and commanding in the events leading up to the crash." ECF No. [285] at 2. The data used to create these augmented videos "is compiled on the vehicle's computer into a package or a TAR file," which Tesla commonly refers to as a snapshot package or a snapshot. ECF No. [297] at 5 n.1. The snapshot package data is stored in the vehicle's Electronic Control Unit ("ECU").[2] *Id.* at 8 n. 2. Once the vehicle's computer compiles all the relevant vehicle data into a snapshot package, the package is "then compressed or zipped for over-

---

[2] Plaintiffs describe the MCU of the vehicle as a version of a "black box" that investigators may use to determine the cause of a plane crash. *See* ECF No. [285] at 3.

the-air transmittal to Tesla." *Id.* at 5 n. 1. Upon arriving at the Tesla facility, the snapshot package is then "unzipped," and the "data files are distributed across the servers." *Id.* From there, Tesla can use the data sent from the vehicle's computer to produce augmented videos that may assist in determining the cause of the crash. *Id.* at 10. While that is the normal process for transferring data from a Tesla vehicle in the event of a crash, Tesla maintained throughout discovery that it never received the complete snapshot package from McGee's vehicle following the crash on April 25, 2019. However, as will be explained below, Tesla possessed the snapshot package on its servers all along. *See* ECF Nos. [285] at 5; ECF No. [297] at 14.

Starting in May 2023, Plaintiffs requested that Tesla produce crash data as well as the augmented video from the Vehicle in discovery. ECF No. [297] at 9; ECF No. [285] at 4. Tesla purportedly informed Plaintiff it would "search for and produce video clips and data from the accident." ECF No. [297] at 9. Tesla claims that when it initially performed a search of the records on Tesla's severs, "[t]he search uncovered the forward-facing camera videos and diagnostic log data from the crash," however, Tesla was not able to "locate an Autopilot 'snapshot' package" that it normally receives from a vehicle in the event of an accident. *Id.* According to Tesla, typically, when it receives a snapshot package from a vehicle, "Tesla's system adds it to an index based on the unique ID assigned to the Autopilot ECU (a 'Board ID')." *Id.* at 10. From there, the Tesla system processes the data and separates the compressed files, ultimately distributing the files into servers within a system called "S3." *See id.* When the files are placed in the S3 system, they are indexed with an identifier called the trip ID. *Id.* Therefore, to locate a particular vehicle's snapshot data from a crash event, Tesla can search its index for a vehicle's Board ID or the vehicle's trip ID. *See id.*

In searching for the snapshot data from the incident in this case, Tesla claims it was unable to find the Board ID or the trip ID on its servers and, therefore, it was unable to locate the data from the Vehicle. *See* ECF No. [297] at 10. Based on its review of both the indexes and the S3, Tesla purportedly concluded that the Vehicle's ECU did not send over the snapshot package from the crash. *Id.* Consequently, Tesla determined that it lacked the requisite data to produce the snapshot package or an augmented video of the crash. *See* ECF No. [285] at 2; ECF No. [297] at 10. Tesla informed Plaintiffs that, at the time, it did not have access to the Vehicle's MCU or ECU because Tesla understood both to be in the possession of the Florida Highway Patrol. *See* ECF No. [297] at 11; *see also* ECF No. [268] at 2.

After Tesla informed Plaintiffs it did not have the requested evidence, Plaintiffs sought a discovery hearing before Magistrate Judge Torres on March 7, 2024, asserting that Tesla had failed to provide all the call log data in its possession as well as the requested augmented video from the crash. ECF No. [204].[3] At the conclusion of the hearing, Judge Torres ordered that Tesla produce any additional call log data and augmented videos to the extent they existed. However, the parties could not reduce Judge Torres' directive into a written order. Therefore, the parties returned to court on May 23, 2024, as the discovery dispute remained unresolved. At the hearing, Tesla represented it had searched for car log data but did not have any data other than the data it had already produced. *See* ECF No. [241]. While that initially seemed to be the end of the matter, in August 2024, Plaintiffs were able to secure the Vehicle's MCU and ECU from the Florida Highway Patrol. *See* ECF No. [268] at 6.

---

[3] According to Tesla, the hearing before Judge Torres only concerned car log and augmented video, not the snapshot package. However, it is clear to this Court that the snapshot package is necessary to produce the augmented video.

4

On October 30, 2024, the parties conducted a joint inspection of the MCU and ECU in the Vehicle. ECF No. [285] at 12; ECF No. [297] at 13. Following the inspection, Tesla was able to upload additional car log data from the MCU and supplement its production but still did not turn over any snapshot package data that should typically be on the ECU. *See* ECF No. [297] at 7, 11, 13. Plaintiffs, however, provided the ECU data to their experts, who conducted their own review and were able to recover the entire snapshot package data. ECF No. [297] at 13-14; ECF No. [285] at 5-6. Plaintiffs' experts also discovered that the entire snapshot package had been transmitted from the ECU to Tesla after the crash. *See* ECF No. [285] at 6. Thus, Tesla had been in possession of the requested data all along. *See id.*

Upon discovering that Tesla had the critical snapshot data since the date of the crash, Plaintiffs filed the instant Motion for Rule 37 Sanctions. ECF No. [285]. While Tesla asserts that the failure to discover the snapshot package was a reasonable mistake and, at worst, a negligent oversight, Plaintiffs insist that Tesla engaged in a long series of willful acts attempting to deceitfully withhold the critical Autopilot snapshot package data despite Tesla knowing the data was on Tesla servers from the very beginning of this case. *See id.* at 20. Plaintiffs claim that Tesla received the complete snapshot package data from the Vehicle, which was then properly indexed on the servers, but that someone at Tesla later went into the servers and intentionally attempted to delete the snapshot package from Tesla's servers. ECF No. [307] at 11. Plaintiffs further contend that to avoid an investigator from the Florida Highway Patrol discovering the snapshot package data on the Vehicle's MCU/ECU,[4] Tesla intentionally interfered with the Florida Highway Patrol's investigation, convincing the investigator not to request the snapshot package for review. *See id.* at 7. Furthermore, once Plaintiffs had access to the Vehicle's MCU and ECU, Plaintiffs claim that

---

[4] The parties disagree on whether the snapshot package is located on the MCU or the ECU.

Tesla attempted to intentionally delete or overwrite the still recoverable snapshot data needed to create the augmented video. *See* ECF No. [285] at 8. Despite those efforts to withhold and destroy evidence, Plaintiffs argue that their experts were able to successfully recover the entire snapshot package from the Vehicle and create their own augmented video. *See id.* at 2. Notwithstanding that Plaintiffs now have all the data they were seeking in discovery, Plaintiffs contend that Tesla's alleged willful and bad faith conduct warrants Rule 37 sanctions. Plaintiffs seek either a default judgment or issue preclusion against Tesla as to whether Tesla's Autopilot constituted a defective and unreasonably dangerous condition. *Id.* at 20-21.

Tesla opposes Plaintiffs' request for sanctions because Tesla contends that its failure to turn over the snapshot package in a timely fashion was not the result of willful conduct; rather, it was a reasonable mistake or, at worst, a negligent oversight. ECF No. [297] at 22. Tesla maintains it was diligent in searching for the data on its servers, and based on its findings, made good faith representations that it could not produce the snapshot package to Plaintiffs. *See id.* at 5, 18. Accordingly, because there was no bad faith and no prejudice, given that Plaintiffs now have all the evidence well in advance of trial, Tesla contends the proposed sanction of default judgment or issue preclusion is too severe, especially given the judicial preference to resolve cases on the merits. *See id.* at 20-24.

## II. LEGAL STANDARD

### A. Rule 37

Federal Rule of Civil Procedure 37 authorizes the Court to award attorneys' fees against a party and/or the party's counsel as a sanction for certain discovery-related conduct. Thus, when a party refuses to participate in discovery, the Court may issue an order compelling the party to disclose. Fed. R. Civ. P. 37(a). If a party then disobeys the Court's order, more severe sanctions

6

are available. *See* Fed. R. Civ. P. 37(b)(2). Federal Rule of Civil Procedure 37(b)(2) states in relevant part:

(2) Sanctions Sought in the District Where the Action Is Pending. (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2). "These sanctions 'are intended to 1) compensate the court and parties for the added expenses caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney.'" *Thornton v. Hosp. Mgmt. Assocs., Inc.*, 787 F. App'x 634, 638 (11th Cir. 2019) (citing *Wouters v. Martin County*, 9 F.3d 924, 933 (11th Cir. 1993)). District courts possess wide discretion over the discovery process and when discovery sanctions are appropriate. *Dude v. Cong. Plaza, LLC*, 17-80522-CIV, 2018 WL 4203888, at *5 (S.D. Fla. July 20, 2018), *report and recommendation adopted sub nom. Dude v. Cong. Plaza. LLC*, 17-CV-80522, 2018 WL 4203886 (S.D. Fla. Aug. 29, 2018). While "courts enjoy discretion in deciding whether and how to impose sanctions under Rule 37[,]" "[v]iolation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal." *Chudasama v. Mazda*

*Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

"The severe sanctions permitted by Rule 37(b) are usually only imposed by district courts upon a finding '(1) that the party's failure to comply with the order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders.'" *Dude*, 2018 WL 4203888, at *5 (quoting *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.*, No. 10-24310-CIV, 2011 WL 6190160, at *5 (S.D. Fla. Dec. 2, 2011) and *Taylor v. Bradshaw et al.*, No. 11-80911-CIV-Marra/Matthewman, 2015 WL 11256306, at *3 (S.D. Fla. Apr. 8, 2015) *report and recommendation adopted as modified*, No. 11-80911-CIV, 2015 WL 11254712 (S.D. Fla. May 11, 2015), *aff'd sub nom. Taylor v. Bradshaw et al.*, No. 15-15027, 2018 WL 3414344 (11th Cir. July 13, 2018)).

**III.   DISCUSSION**

Plaintiffs argue that sanctions should be imposed upon Tesla for failure to comply with court orders and turn over critically important evidence. According to Plaintiffs, at a minimum, Tesla has admittedly withheld log data it later confirmed was in its possession since the date of the accident. ECF No. [285] at 19. Plaintiffs claim the log data contained "a number of data streams that would have assisted [ ] in modeling this crash," including "radar data for two minutes before the crash." *Id.* at 10. Plaintiffs contend that this log data alone will allow Plaintiffs to prove that "Tesla's radar detected the stationary SUV in its path from over 350 feet away" before the crash. *Id.* Plaintiffs maintain that the record also reflects Tesla intentionally disobeyed the Court's Order to produce the snapshot package and the augmented video that could have been produced with that data. Plaintiffs argue that it is "inconceivable that [Plaintiffs'] expert was able to access the data downloaded from the MCU, but Tesla could not." *Id.* Moreover, the data that Tesla did turn over

8

in response to the Court's Order "was purposefully produced in an unsearchable and unusable format." *Id.* And once Plaintiffs sought to uncover the remaining data, Tesla attempted to intentionally overwrite and unsuccessfully delete the data.

Moreover, Plaintiffs contend Tesla should be sanctioned for its "numerous inaccurate or false representations to the Court." *Id.* at 20. Specifically, Plaintiffs claim that Tesla has made the following misrepresentations: (1) that the Autopilot was not engaged prior to the accident; (2) that it had provided all the Autopilot data in its possession; and (3) claiming it would not be able to use its software to create the augmented video notwithstanding Tesla was producing such videos in two California cases. *See* ECF No. [285] at 20. Plaintiffs argue that Tesla's continued failure to willingly turn over information and evidence in its possession and promptly comply with the Court's orders amounts to willful and intentional misconduct. *See id.* Because Tesla's attempt to withhold and destroy crucial evidence goes to the heart of the issues in this case, Plaintiffs maintain that Tesla "deserves the harshest of sanctions—entry of a default judgment." *Id.* at 20-21. Plaintiffs insist that, at the very least, the Court should make "a finding of issue preclusion on the [question of whether] Tesla [created a] defective and unreasonably dangerous condition"—the central element in dispute in this case. *Id.* at 21.

Tesla responds that such drastic sanctions are inappropriate because default judgment and issue preclusion on a dispositive issue are reserved for flagrant discovery violations or flouting Rule 34 and the Court's orders. *See* ECF No. [297] at 6. While Tesla admits that it did have the Autopilot snapshot data from the very beginning of discovery and failed to turn it over, the failure to produce the evidence was not intentional. *See id.* at 7. In responding to Plaintiffs' request for discovery, Tesla asserts that it diligently searched the locations within Tesla where the snapshot data used to create the augmented video could be found but was unable to locate the data. *See id.*

9

at 5, 9, 18. Although it did have the data on its servers, Tesla contends it reasonably concluded that the Vehicle did not send the snapshot package containing the Autopilot data. *See id.* at 18. Tesla insists that simply because a more thorough or different type of search could have revealed the relevant data, that does not mean Tesla was willfully withholding the data. *See id.* at 22. Moreover, because Tesla's initial search did not uncover the snapshot package, Tesla's initial representations to Plaintiffs and to the Court that it had produced all the relevant data was not a misrepresentation, but an honest assessment of the evidence Tesla believed it had at the time of the incident. *See id.* at 18.

Tesla further contends that it is disingenuous for Plaintiffs to argue that Tesla flagrantly disregarded three separate Court orders to produce the relevant data at issue. ECF No. [297] at 18. Of the three orders in question, Tesla argues that the "Order" from Magistrate Judge Torres on March 7, 2024, was not an order but an oral directive. *See id.* Tesla points out that the parties were never able to reduce Judge Torres' oral recommendation into a formal written order because the parties could not agree on what the oral directive entailed. *Id.* at 19. As such, even if Tesla withheld information, it did not fail to comply with an order that had never been formally issued. *See id.* Furthermore, Tesla maintains that even if Judge Torres' directive was a formal order, the order merely directed Tesla to provide Plaintiffs with log data and a glossary—records that are not related to the instant Motion for sanctions based on Tesla's failure to turn over the snapshot package. *See id.* at 18.

As for the other two orders relating to Plaintiffs' motion to compel, Tesla maintains that it fully complied with the orders to the extent Tesla reasonably believed possible at the time. *See id.* at 19. Tesla asserts that it fully complied with "its obligation to 'download, interpret, and produce to Plaintiff, in usable format, all of the crash data from the subject MCU SD card.'" ECF No. [297]

10

at 15 (quoting ECF No. [273]). Regarding the order to produce the augmented video, Tesla did not have the augmented video clips from the crash, and it reasonably believed it did not have the requisite snapshot data to produce such a video. While Tesla actually had the necessary data all along, Tesla argues that it did not have any reason to think that "it should attempt to use the unconventional and untested methods of data recovery employed by Plaintiffs' consultant." *Id.*

Given the record, Tesla maintains that its conduct cannot be considered willful or in bad faith because "Tesla's representations that no additional data existed were made sincerely, after a diligent and reasonable search of its records." *Id.* at 21-22. And to the extent Tesla should have anticipated the snapshot package data to be located somewhere other than where it originally searched, such conduct amounts to a mere negligent oversight. *Id.* at 22. Tesla also argues there is no evidence that Plaintiffs have been prejudiced by Tesla's failure to timely produce the records in question. *See id.* at 22. Plaintiffs and their experts have had an opportunity to review all the data and incorporate the records into their opinions and pretrial motions. *Id.* Tesla further asserts that, to the extent Plaintiffs needed more time to review the records, it would not oppose an extension to do so. ECF No. [297] at 22.

Finally, Tesla contends that the severe sanctions proposed are unnecessary to adequately remedy any injury suffered by Plaintiffs while also ensuring future compliance with the Court's orders. *See id.* at 23. Tesla points out it has already sought to remedy any harm to Plaintiffs for the delay in production by reimbursing "Plaintiffs for the expense incurred from Tesla's belated discovery of the snapshot data, including reasonable attorney's fees for this motion." *Id.* Reimbursing Plaintiffs' expenses is a sufficient sanction, especially as no "harsh sanction is needed [for] Tesla or others, given that the failure to locate the data occurred under unusual circumstances that Tesla had never before encountered." *Id.* While Tesla acknowledges that sanctions in addition

11

to paying Plaintiffs' expenses may be appropriate here, the severe sanction of default judgment or issue preclusion is improper given the federal interest in favor of adjudication of claims on the merits. *See id.* at 23-24.

The Court finds that sanctions are appropriate. Tesla caused needless time, expense, and delay by its failure to uncover the requested data when it was required to be produced, but Plaintiffs have failed to carry their burden to establish that the specific sanctions requested—default judgment or issue preclusion—are the least severe sanctions that would accomplish the goals of preventing prejudice and protecting the integrity of the discovery process. *See Pharma Funding, LLC, v. FLTX Holdings, LLC*, Case No. 20-21103, 2020 WL 8084174, at *1 (S.D. Fla. Dec. 28, 2020)*; see also Sirer v. Aksoy*, Case No. 21-cv-22280, 2022 WL 3154184, at *3 (S.D. Fla. Aug. 8, 2022) ("Rule 37 authorizes a court to impose sanctions "as are just" against a party that violates a discovery order."). After a thorough review of the record, including the depositions, and the briefings, the Court does not find sufficient evidence to conclude that Tesla's conduct was intended to avoid the production of evidence or otherwise undermine the discovery process. While Plaintiffs point to several instances where Tesla could have uncovered the previously undisclosed data more efficiently or could have been more thorough and careful in the search for and preservation of data, the Court is not persuaded that Tesla willfully withheld information or deliberately attempted to destroy evidence. As such, Plaintiffs' proposed sanctions are excessive. *See Stansell v. Revolutionary Armed Forces of Columbia*, 120 F. 4th 754, 764 (11th Cir. 2024) ("Default judgment pursuant to Rule 37 'is appropriate only as a last resort[.]'") (quoting *Malautea*, 987 F.2d at 1542).

Plaintiffs initially requests that the Court enter a default judgment against Tesla. However, default judgment is one of the most severe sanctions a court may impose under Rule 37. *Hawkins*

*v. Fulton County*, 96 F.R.D. 416, 422 (N.D. Ga. Dec. 30, 1982). Before a court may impose a severe sanction such as default judgment, the district court must find "(1) that the party's failure to comply with the order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders." *Kenall Lakes Towers Condominium Ass'n, Inc.*, 2011 WL 6190160, at *5; *See Kleiman v. Wright*, No. 18-CV-80176, 2020 WL 113396, at *6–7 (S.D. Fla. Jan. 10, 2020), *aff'd*, No. 22-11150, 2023 WL 7039512 (11th Cir. Oct. 26, 2023). Here, the Court does not find that Plaintiffs have made a sufficient showing of bad faith. The burden for proving bad faith sufficient to support default judgment is exceptionally high, and the Court therefore demands more than a suggestion of possible wrongdoing. *Hartford Fire Ins. Co. v. N.Y. Mart Group.*, Case No. 4:18-cv-10276, 2022 WL 3682082, at * (S.D. Fla. 2022) ("Bad faith is a high bar, and although the conduct of Defendant [ ] in this case has been troubling, it falls short of bad faith); *Cf In re Liquid Carbonic Truck Drivers Chem. Poisoning Litig. M.D.L.*, 580 F.2d 819 (5th Cir. 1978) (suggesting that flagrant bad faith and callous disregard of a party's responsibilities are necessary before extreme sanctions may be entered). Where there is not compelling evidence of bad faith, default judgment is inappropriate under Rule 37. *Cf. Hawkins*, 96 F.R.D. at 422 ("Justice requires that the most severe sanctions be reserved for extreme circumstances").

Moreover, even assuming Plaintiffs had demonstrated bad faith, Plaintiffs fail to show that Tesla's conduct caused any significant prejudice to Plaintiffs' case. The trial is not set to begin until July 14, 2025, and as of the date of this Order, Plaintiffs have received all the information and evidence requested in discovery. Plaintiffs do not contend that the delay has prevented their experts from adequately reviewing the data and incorporating that data into their expert reports.

Moreover, given that trial in not to begin for over three months, Plaintiffs have sufficient time to review the recently disclosed materials and prepare their case accordingly.[5] Without any evidence of prejudice other than the underlying delay of the case, no legitimate basis exists for the Court to impose the most onerous sanction available. *See Nukote Itern., Inc. v. Office Depot, Inc.*, No. 09–CV–82363, 2015 WL 71566, at *10 n. 4 (S.D. Fla. Jan. 6, 2015) "(As to prejudice, the Court notes that Plaintiff's non-compliance with discovery obligations did not prejudice Defendant beyond the expenses incurred in the discovery dispute; in fact, Defendant admitted that it will seek the remaining discovery from other sources. Without a stronger showing of prejudice, severe sanctions are inappropriate.").

Regarding the request for issue preclusion as to a defective and dangerous condition, such a sanction, although lesser than default judgment, is still too drastic under the circumstances given the "strong preference that cases be heard on the merits instead of imposing sanctions that deprive a litigant of his day in court." *Owens v. Benton*, 109 F. App'x 762, 763 (11th Cir. 2006); *see Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014) (noting that courts "have a strong preference for deciding cases on the merits"). The issue of whether Tesla created a defective and unreasonably dangerous condition is a dispositive issue in this case. Therefore, a sanction of issue preclusion would have virtually the same penalizing effect on Tesla as a sanction of default judgment. Plaintiffs have failed to establish bad faith or demonstrate how Tesla's misconduct prejudiced or otherwise prevented Plaintiffs from proving their case. Without a sufficient showing of prejudice or concrete evidence that Telsa's failure to timely turn over the snapshot evidence was

---

[5] The Court also notes that Plaintiffs do not argue that the delayed discovery limited their ability to file pretrial motions in any way. Indeed, Plaintiffs have filed numerous motions based on the evidence that is at issue.

willful, it is inappropriate to impose a sanction that will effectively foreclose Tesla from putting on a defense in this case.

Having determined that neither default judgment nor issue preclusion is appropriate, the Court must determine whether there are alternative sanctions that are better tailored to the facts of the case. The Court finds that although the merits of Plaintiffs' case have not been prejudiced, Plaintiffs have suffered prejudice by having to engage in an unreasonably lengthy discovery while also incurring significant attorney's fees and expert fees due to Tesla's negligent failure to timely locate and produce evidence in Tesla's possession since the start of this litigation. To properly compensate Plaintiffs and to ensure that Tesla understands the significance of its obligations in complying with this Court's orders, the Court requires that Tesla reimburse Plaintiffs all of its fees and costs, including all attorneys' and experts' fees, reasonably related to the production, and related evaluation and testing of the snapshot package and the augmented video.[6]

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Rule 37 Sanctions**, ECF No. [285], is GRANTED IN PART AND DENIED IN PART. Plaintiffs shall file an affidavit setting forth any additional expenses incurred that have not already been paid for by Defendant. Defendant shall thereafter pay all outstanding expenses within 30 days.**

---

[6] While Tesla may have preemptively paid Plaintiffs much, if not all, of the of the sanctions imposed today, that does not alter the Court's conclusion that monetary sanctions are the most just sanction available given the circumstances.

Case No. 21-cv-21940-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 14, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record