## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, *as Personal Representative of the Estate of Naibel Benavides Leon, deceased*, and DILLON ANGULO

      Plaintiffs,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

      Defendant.

_____/

## OMNIBUS ORDER ON PARTIES' MOTIONS *IN LIMINE*

**THIS CAUSE** is before the Court upon Plaintiffs' Omnibus Motion *in Limine*, ECF No. [329]. Tesla filed a Response, ECF No. [359], to which Plaintiffs filed a Reply, ECF No. [386]. Plaintiff Angulo separately filed a Motion to Limit and Exclude Certain Opinions of Tesla's Neuropsychologist, Dr. Barry Crown, ECF No. [344]. Tesla filed a Response, ECF No. [383], and Plaintiff Angulo filed a Reply, ECF No. [403].

Also before the Court is Tesla's Motion *in Limine*, ECF No. [320], to which Plaintiffs filed a Response in Opposition, ECF No. [348], and Tesla filed a Reply, ECF No. [376].

The Court has reviewed the Motions, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, Plaintiffs' Omnibus Motion *in Limine* is granted in part and denied in part, Plaintiff Angulo's Motion to Limit or Exclude Opinions of Dr. Barry Crown is granted in part and denied in part, and Tesla's Motion *in Limine* is granted in part and denied in part.

### I.    BACKGROUND

Case No. 21-cv-21940-BLOOM/Torres

This matter arises from a collision that occurred in Key Largo, Florida. George McGee owned a 2019 Tesla Model S ("Vehicle") "equipped with automatic driving features, one of which Tesla termed 'Autopilot,' that could navigate without driver input." ECF No. [205] at 3. On April 25, 2019, McGee was driving the Vehicle when it hit a parked Chevrolet Tahoe, which then struck Decedent Naibel Benavides Leon and Plaintiff Dillon Angulo, killing Benavides Leon and causing significant injuries to Angulo. *See id.* at 3-4.

On April 22, 2021, Plaintiff Neima Benavides, as Personal Representative, brought this action against Tesla on behalf of the Estate of Decedent Naibel Benavides Leon in the Circuit Court for Miami-Dade County, Florida, alleging automotive product liability claims against Tesla. ECF No. [1-1]. Tesla removed the action to this Court on May 25, 2021. ECF No. [1]. On August 16, 2022, Plaintiff Dillon Angulo initiated a similar automotive products liability action against Tesla in this district, Case No. 22-cv-22607-KMM. *See* 22-cv-22607, ECF No. [1]. The Court accepted the transfer of this case and consolidated both actions due to the overlapping issues presented. ECF No. [50].

Plaintiffs filed a consolidated Amended Complaint on March 11, 2024, asserting the following claims against Tesla: Strict-Products-Liability—Defective Design (Count I), Failure to Warn (Count II), Defective Manufacture (Count III), and Negligent Misrepresentation (Count IV). *See* ECF No. [205] at 6, ¶¶ 39-46.

On June 25, 2025, the Court granted summary judgment in favor of Tesla as to Count III (Defective Manufacture) and Count IV (Negligent Misrepresentation) while allowing Count I (Defective Design) and Count II (Failure to Warn) to proceed to trial. ECF No. [428]. The Parties are scheduled to begin trial on July 14, 2025. ECF No. [354].  In anticipation of the upcoming trial, the Parties have submitted their respective Motions *in Limine*. *See* ECF No. [329]; ECF No. [320].

Additionally, Plaintiff Angulo has filed his own Motion to Limit or Exclude Certain Opinions of Tesla's Expert, Dr. Barry Crown. ECF No. [344].

## II.   LEGAL STANDARD

### A.  Motions *in Limine*

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id*. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig*., Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). Likewise, "[i]n light of the preliminary or preemptive nature of motions *in limine*, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.'" *Holder v. Anderson*, No. 3:16-CV-1307-J-39JBT, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (quoting *Miller ex rel. Miller v. Ford Motor Co*., No. 2:01CV545FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004)); *see In re Seroquel.*, 2009 WL 260989, at *1 ("The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*.") (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989)).

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed. R. Evid. 401, 402; Advisory Comm. Notes, Fed. R. Evid. 401 ("The standard of probability under the rule is 'more probable than it would be without the evidence.'"); *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013). A district court

may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Patrick*, 513 F. App'x at 886 (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011)); *see United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010). Rule 403's "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect[.]" *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001) (quoting *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir. 1991)).

## III.   DISCUSSION

### A.  Plaintiffs' Omnibus Motion *in Limine*

Plaintiffs seek to exclude any evidence, testimony, or arguments on the following twenty-two issues at trial.

#### i.   Preclude Evidence or Testimony Regarding Plaintiffs' Decision Not to Call Certain Witnesses or Introduce Certain Available Evidence

Plaintiffs seek to preclude Tesla from "[a]rguing or suggesting that the jury should draw an adverse inference from Plaintiff[s'] decision not to call witnesses or introduce evidence at trial available to both parties." ECF No. [329] at 1. The Parties have stipulated not to present any evidence or make any arguments regarding this issue. As such, the Motion is moot. *See* ECF No. [360-1].

#### ii.  Exclude Evidence or Testimony that Plaintiffs' Medical Bills Were Paid by a Collateral Source

Plaintiffs request the Court to preclude Tesla from introducing any evidence of or making any reference to the fact that Plaintiffs' medical bills "were paid by insurance or some other

collateral source." ECF No. [329] at 2. Tesla responds that "Plaintiffs should be limited to introducing only the medical expenses that Plaintiffs owe or that Plaintiffs have paid." ECF No. [359] at 2. Because Tesla believes there is no dispute as to that limitation, Tesla contends the motion is moot. Plaintiffs do not challenge Tesla's contention in their Reply. *See generally* ECF No. [386]. Accordingly, the Court agrees that Plaintiffs' Second Motion is moot.

### iii. Prohibit Argument or Testimony Regarding Counsel's Personal Beliefs

Plaintiffs request that the Court prohibit the Parties from making any statements concerning personal beliefs about their respective clients or their cause. ECF No. [329] at 2. The Parties have reached an agreement on this issue. ECF No. [360-1] at 1. Therefore, the Motion is moot.

### iv. Preclude Statements Regarding Counsel's Belief of Any Witness's Credibility

Plaintiffs seek to preclude any statements regarding attorneys' personal beliefs about the credibility of the witnesses in this case. ECF No. [329] at 2. Again, the Parties have reached an agreement as to this Motion. ECF No. [360-1] at 2. Consequently, the Motion is moot.

### v. Preclude Improper Comments Concerning Whether Any Recovery is Taxable

Plaintiffs move to preclude any argument or testimony that any award in this case "will not be subject to federal income tax or any other form of taxation." ECF No. [329] at 2. Tesla argues that any instruction informing the jury that jury awards are not taxable is discretionary. According to Tesla, an explanation to the jury that the award is not taxable is relevant as it will help to ensure that the jury does not award Plaintiffs "an improper windfall recovery." ECF No. [359] at 2.

Indeed, whether to inform the jury that any award Plaintiffs receive in this case is not taxable is subject to the Court's discretion. *See Angeloff v. Delta Airlines Inc.*, 860 F.2d 379, 390 (11th Cir. 1988) ("Florida law permits an instruction that a damage award will not be subject to federal income taxation. [ ]. Such an instruction is not required, however, but is left to the discretion

of the trial court.") (citing *Poirier v. Shireman*, 129 So. 2d 439 (Fla. 2d DCA 1961); *Gray Drugfair, Inc. v. Heller*, 478 So. 2d 1159 (Fla. 3d DCA 1985)).

In exercising its sound discretion, the Court finds that an instruction on the taxability of any jury award is inappropriate. Not only is an assessment of Plaintiffs' future income tax liability highly conjectural, but it is also of no legal concern to Tesla. *See St. Johns River Terminal Co. v. Vaden*, 190 So. 2d 40, 41 (Fla. 1st DCA 1966) ("[T]he decided majority of courts in America support the view that in fixing damages for accrued loss of earnings or for impairment of future earning capacity because of personal injury, the income tax consequences of the injury and the award should not be taken into consideration . . . [because] income tax liability or saving is a matter not pertinent to the damages issue, being a matter between the plaintiff and the taxing authority, of no legal concern to the defendant; that the amount of income tax which might become due on one's prospective earnings in future years is too conjectural to be considered in fixing damages; or that to introduce the income tax matter into a lawsuit for damages would be unduly complicating and confusing."). Therefore, Plaintiffs' Fifth Motion is granted.

### vi.  Preclude Improper Comments about Damages Request

Plaintiffs seek to preclude any statement or suggestion that Plaintiffs' attorneys always ask for more money than they expect to receive. ECF No. [329] at 2. Tesla has agreed not to make any such statements. ECF No. [360-1] at 2. Accordingly, the Motion is moot.

### vii. Preclude Argument that Verdict will Harm Tesla, Tesla's Employees, or Stakeholders

Plaintiffs seek to preclude Tesla from arguing or suggesting that "any verdict rendered will financially harm Tesla, the [large number of] people whom it employs, or its [s]takeholders." ECF No. [329] at 2. According to Plaintiffs, the only purpose of such commentary is to imply to the jury that "the jobs of numerous men and women might be impacted by a large verdict or to

otherwise garner sympathy for the corporation." *Id.* Therefore, any such statements are irrelevant and inadmissible.

Tesla responds that Plaintiffs have failed to offer any supporting authority that such statements are impermissible and, therefore, have failed to carry their burden to show that the "evidence is inadmissible on any relevant ground." ECF No. [359] at 3.

The Court agrees with Tesla that Plaintiffs have failed to establish that evidence regarding the financial harm of the jury award is inadmissible on all possible grounds. Moreover, because the Court has permitted Plaintiffs to request punitive damages in this case, the Court finds that evidence of financial harm to Tesla is both important and highly relevant. The purpose of punitive damages is to punish and deter the wrongdoer and, therefore, the impact of such damages must be considered to ensure that there is "some relationship to the defendant's ability to pay and [the award] does not result in economic castigation or bankruptcy of the defendant." *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1216 (11th Cir. 2010); *see Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000). Accordingly, "[w]here there is a claim for punitive damages[,] a defendant's financial condition becomes relevant because the wealth of the defendant is a factor for consideration in determining the reasonableness of a punitive award." *Shores of Panama Resort Cmty. Ass'n Inc. v. Halberthal.*, No. 5:14–cv–294, 2015 WL 3466127, at *1 (N.D. Fla. 2015); *see In re Wright Med. Tech. Inc.*, No. 1:13-CV-297-WSD, 2015 WL 6690046, at *3 (N.D. Ga. Oct. 30, 2015) ("Defendants are entitled to present evidence of their net wealth and the financial impact a punitive damages award would have on Defendants' business.").

While the Court agrees with Plaintiffs that discussion of the impact a verdict may have on Tesla's employees likely would go beyond the issue of punitive damages, discussions about the

number of employees Tesla might have to lay off and the impact of those layoffs as a result of an award factors into the punitive damages analysis. Therefore, Plaintiffs' Seventh Motion is denied.

### viii.    Prohibit Discussion Regarding the Selection of Counsel or Motives of Lawsuit

Plaintiffs move to preclude Tesla from referencing "why Plaintiff chose Plaintiff's counsel; when Plaintiff decided to file the lawsuit; any insinuation that Plaintiff delayed in filing the lawsuit; Plaintiff's (or Decedent's) motivation in bringing the lawsuit; any intended use of the jury's award, . . . or how money could be used if not awarded to Plaintiff." ECF No. [329]. Plaintiffs now acknowledge that following the filing of their Motion *in Limine*, the Parties resolved their disagreements regarding this particular motion, and therefore agree "that the [C]ourt may properly deny this subsection without prejudice[.]" ECF No. [386]. Accordingly, Plaintiffs' Eighth Motion is denied as moot.

### ix.  Preclude the Use of or Reference to Plaintiffs' Complaint or Amended Complaints

Plaintiffs seek to preclude Tesla from referencing their Amended Complaint or any prior versions of the complaint to impeach Plaintiffs. ECF No. [329] at 3. Plaintiffs argue that a complaint is not admissible to prove a fact at issue, nor can a party use the inconsistent position taken by opposing counsel in the pleadings as proof of an issue. *Id.*

Tesla responds that while Plaintiffs rely on state law, the admissibility of pleadings is governed by federal law, which dictates that "a party's pleadings are admissions by that party to the facts alleged therein." ECF No. [359] at 5 (citing *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983); *Taxinet Corp. v. Leon*, 114 F.4th 1212, 1227 (11th Cir. 2024)).

"Absent necessary exceptions for inconsistent pleas and complicated joinder scenarios, '[a]s a general rule the pleading of a party made in another action, as well as pleadings in the same

action which have been superseded by amendment, withdrawn or dismissed, are admissible as admissions of the pleading party to the facts alleged therein.'" *Tucker v. Hous. Auth. of Birmingham Dist.*, 229 F. App'x 820, 826 (11th Cir. 2007) (quoting *Cont'l Ins. Co. of New York v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971)); *Muhs v. River Rats, Inc.*, 586 F. Supp. 2d 1364, 1378 (S.D. Ga. 2008) ("A party's pleading in one case may generally be used as an evidentiary admission in other litigation."). Neither of the exceptions apply here. This is neither a case of complicated joinder nor does it involve inconsistent pleadings. Indeed, as Plaintiffs vigorously argued in their opposition to summary judgment, there can still be a design defect even if McGee was driving negligently, as neither theory of liability is mutually exclusive. Accordingly, because Plaintiffs have not demonstrated that their prior pleadings here or in the case against McGee are inherently inconsistent with the operative pleadings in the instant matter, the Motion is denied.

**x. Preclude Any Reference Regarding Plaintiffs' Settlement with George McGee**

Plaintiffs seek to exclude any reference of their involvement in or the settlement of the lawsuit with McGee, the driver of the Vehicle. ECF No. [329] at 4. According to Plaintiffs, Fla Stat. § 768.041 prohibits the Parties from disclosing to the jury that Plaintiffs received settlement funds from McGee. *Id.* Moreover, because Tesla is not responsible for McGee's share of liability under Florida law, Plaintiffs argue there is no need to introduce the settlement because Tesla will not be entitled to a setoff of any settlement funds. *See id.*

Tesla responds that Plaintiffs incorrectly rely on state law as their basis for exclusion but, once again, federal law controls. ECF No. [359] at 7. Tesla maintains that under the Federal Rules of Evidence, "evidence of settlement negotiations [are] admissible when [ ] presented for a reason other than demonstrating liability, including but not limited to proving bias, prejudice of a witness,

and undue delay." *Id.* As such, Tesla contends that the exclusion of any settlement evidence is premature as Plaintiffs may open the door at trial to issues of bias or prejudice of a witness. *Id.*

Federal law and Florida law are both clear when it comes to the introduction of evidence of third-party settlements at trial; however, the admissibility of such evidence will differ depending on which law applies. Pursuant to Federal Rule of Evidence 408, while evidence of a third-party settlement is generally inadmissible, a party may use evidence of a settlement to show bias or otherwise impeach a witness's credibility. *Peklun v. Tierra Del Mar Condo. Ass'n, Inc.*, No. 15-CV-80801, 2016 WL 4250693, at *2 (S.D. Fla. June 1, 2016).[1] Florida law, on the other hand, "prohibits informing the jury that a settlement has been made with the 'empty chair' (a non-party responsible for the plaintiff's injuries), . . . or that there has been a prior action against the 'empty chair[.]'" *Black v. Montgomery Elevator Co.*, 581 So. 2d 624, 625 (Fla. 5th DCA 1991).[2] Since Tesla insists that it will only use the evidence of Plaintiffs' settlement with McGee for impeachment purposes, the instant Motion turns on whether federal law or Florida law governs this issue.

Pursuant to the United States Supreme Court decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity, as here, are bound "to apply state substantive law and

---

[1] *See Peklun*, 2016 WL 4250693, at *2 ("'Rule 408 bars settlements or offers to settle in order to prove liability for, invalidity of, or amount of a claim. The rule does not apply if the evidence is offered for another purpose.' *Barker v. Niles Bolton Assoc., Inc.*, 316 F. App'x. 933, 937 (11th Cir. 2009) (internal quotations omitted). Put another way, 'a defendant cannot prove the invalidity or amount of a plaintiff's claim by proof of plaintiff's settlement with a third person, nor can plaintiff show the defendant's liability or extent of liability, by proof of defendant's settlement with a third person.'") (quoting *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161, 166 (5th Cir. 1983)).

[2] The Supreme Court of Florida held in *Saleeby v. Rocky Elson Const., Inc.*, 3 So. 3d 1078, 1086 (Fla. 2009), that § 768.041(3) prohibits the introduction of evidence of a settlement for *any* purpose, including impeachment. *See id.* ("The meaning of paragraph (3) of the statute could not be clearer. The statute plainly and unambiguously prohibits disclosure to the jury of any evidence of settlement or that a former defendant was dismissed from the suit.").

federal procedural law." *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014).

Although "'rules of procedure encompass rules of evidence and, therefore, the Federal Rules of

Evidence, not state evidentiary rules[, generally] apply' to evidentiary disputes in a federal

diversity action[,]" Plaintiffs contend that Fla. Stat. § 768.041 is a substantive statute that federal

courts sitting in diversity "routinely" apply.[3] *ML Healthcare Servs., LLC v. Publix Super Markets,

Inc.*, 881 F.3d 1293, 1299 (11th Cir. 2018) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1294-

95 (11th Cir. 2004)); ECF No. [386] at 6. Plaintiffs' argument is not necessarily groundless. As

the Eleventh Circuit has explained, "[s]ome state evidentiary rules are substantive in nature, and

transcend the substance-procedure boundary," meaning a state evidentiary rule may sometimes

"trump a federal evidentiary rule." *McDowell*, 392 F.3d at 1295; *ML Healthcare Servs.*, LLC, 881

F.3d at 1299.

      Fla. Stat. § 768.041 has both a substantive and an evidentiary component. Substantively, §

768.041 provides as follows:

> At trial, if any defendant shows the court that the plaintiff, or any person lawfully
> on her or his behalf, has delivered a release or covenant not to sue to any person,
> firm, or corporation in partial satisfaction of the damages sued for, the court shall
> set off this amount from the amount of any judgment to which the plaintiff would
> be otherwise entitled at the time of rendering judgment and enter judgment
> accordingly.

Fla. Stat. § 768.041(2). The "setoff" provision of § 768.041 is intended to "prevent duplicate or

overlapping compensation for identical damages" by providing tortfeasors a right to set-offs for

---

[3] Despite Plaintiffs' insistence to the contrary, the Parties have not cited a case clarifying whether §
768.041(3), the evidentiary component of the statute, has been deemed substantive, nor have the Parties
identified a case where a federal court sitting in diversity has applied the evidentiary rule. The federal case
Plaintiffs cite for the proposition that Fla. Stat. § 768.041 is substantive rather than procedural, dealt with
the application of § 768.041(2), which does not deal with the admissibility of settlement evidence at trial.
*See* ECF No. [386] (citing *Scheib v. Florida Sanitarium & Benev. Ass'n*, 759 F.2d 859, 863 (11th Cir.
1985)).

settlements made by another party for the same tort or injury caused by the tortfeasor. *Cornerstone SMR, Inc. v. Bank of Am., N.A.*, 163 So. 3d 565, 569 (Fla. 4th DCA 2015) (quoting *Gordon v. Marvin M. Rosenberg, D.D.S., P.A.*, 654 So. 2d 643, 644 (Fla. 4th DCA 1995)). While § 768.041(2) clearly provides substantive rights to defendants in tort actions,[4] § 768.041(2) does not address the admissibility of evidence. The relevant evidentiary rule prohibiting the admissibility of settlement evidence is found in § 768.041(3), which states: "The fact of such a release or covenant not to sue . . . shall not be made known to the jury." Fla. Stat. § 768.041(3). Therefore, the Florida Legislature has clearly delineated the substantive and procedural components of the statute. Accordingly, the Court may apply the federal evidentiary rules allowing for the introduction of settlement evidence for the purposes of impeachment while still preserving the substantive portion of the Florida statute in § 768.041(2). Although Florida has made a public policy decision to prohibit any settlement evidence into a trial, the Court does not find that this policy decision so affects the substantive rights of the parties that § 768.041(3) must be applied in a federal diversity case, especially where the federal rules still prohibit parties from using settlement evidence to prove or disprove liability. *See Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1272 (S.D. Fla. 2011) ("Traditionally, courts have construed Rule 408 to exclude 'evidence of settlement and settlement offers only where the evidence is offered to prove liability for or invalidity [or amount] of the claim under negotiation.'" (quoting *Armstrong v. HRB Royalty, Inc.*, 392 F. Supp. 2d 1302, 1304 (S.D. Ala. 2005) (additional level of citation omitted))).

Because the Court finds that it may apply Federal Rule of Evidence 408 to this issue without affecting the Parties' substantive rights or otherwise undermining the spirit of Florida's

---

[4] *See e.g.*, *Scheib*, 759 F.2d at 862-63 (describing Fla. Stat. § 768.041(2) as the "setoff statute"); *KMS Restaurant Corp., v. Wendy's Intern. Inc.*, 194 F. App'x 591, 597-98 (11th Cir. 2006) (discussing "setoff" rights under §768.041(2)); *Hiatt v. United States*, 910 F.2d 737, 740 n.2 (11th Cir. 1990).

prophylactic evidentiary rule, the Court will not foreclose Tesla from introducing settlement evidence for impeachment purposes at this juncture. However, because it is unclear how Tesla will be able to show bias or McGee's prejudice as a witness, Plaintiffs may renew their motion should Tesla attempt to introduce such evidence at trial.

### xi. Preclude Any Reference Regarding Plaintiffs' Financial Status

Plaintiffs seek to preclude Tesla from making "any reference to Dillon Angulo's wealth as a result of the settlement or use of the settlement funds." ECF No. [329] at 4. Tesla opposes the Motion, arguing that evidence of a plaintiff's wealth may be admitted to prove or disprove a fact at issue at trial. ECF No. [359] at 8. One such example of such a circumstance is Angulo's claim that "he cannot seek various treatment because it is too expensive." *Id.* Given that evidence of Angulo's finances would be relevant to this issue, Tesla argues that excluding all uses of such evidence is premature. *See id.*

Despite the appearance of a dispute, the Parties agree that Tesla may not affirmatively introduce evidence of Angulo's finances, but may introduce such evidence if Plaintiffs open the door, such as "testifying [Angulo] cannot seek various treatment because it is too expensive.'" ECF No. [386] at 7. Because the Parties agree as to what evidence regarding Plaintiffs' finances is admissible, the Court will deny the Plaintiffs' Eleventh Motion as moot.

### xii. Preclude Argument that Angulo's Post-Collision Conduct was Motivated by Secondary Gain

Plaintiffs seek to exclude "[a]ny argument that Angulo's [post-collision conduct] was driven by 'secondary gain.'" ECF No. [329] at 5. Specifically, Plaintiffs seek to prevent Tesla from suggesting that "Plaintiff is refusing treatment due to a lawsuit or is malingering[.]" ECF No. [329] at 5. Tesla argues that while opposing counsel and experts may not make improper personal statements of malingering or other misconduct that is not supported by the record, Tesla may

introduce "comments by Mr. Angulo concerning the lawsuit or his own admitted malingering" given that those statements help the jury make credibility determinations. *Id.* Furthermore, Tesla argues that "physicians routinely offer admissible opinions as to whether a patient is 'malingering.'" *Id.* Therefore, so long as the physician's opinion is supported by the record, it is admissible.

To the extent that Plaintiffs seek to exclude Angulo's own admission of malingering, the Court agrees with Tesla that those statements are admissible. As for Crown's opinion that Angulo is malingering, the Court agrees that the opinion is admissible so long as it is well-founded and supported by the record.[5] Consequently, Plaintiffs' Seventh Motion is denied.

### xiii.    Preclude Argument or Suggestion that Tesla's Medical Experts are Independent

Plaintiffs seek to exclude any argument or suggestion "that examination by Defendant's compulsory medical examiners are 'independent,' or that these doctors were appointed by the Court." ECF No. [329] at 5. The Parties have agreed that they will not make any such arguments, and therefore, Plaintiffs' Thirteenth Motion is moot.

### xiv.    Exclude any Opinion Besides Those in the Expert Reports

Plaintiffs request that Tesla's expert testimony "be limited to those opinions expressed in their reports." ECF No. [329] at 6. Tesla agrees that its expert testimony will be limited to the opinions expressed in its expert reports. ECF No. [360-1] at 2. As such, Plaintiffs' Fourteenth Motion is moot.

---

[5] As the Parties primarily address the validity and reliability of Crown's malingering opinion in a subsequent motion and briefing, *see* ECF No. [344], the Court will address those issues below when it addresses that motion.

### xv. Prohibit Improper Attacks on Experts

Plaintiffs seek to preclude any of Tesla's experts from making any improper attacks on Plaintiffs' experts' "ability, credibility, reputation, or competence." ECF No. [329] at 6. Tesla has agreed not to have its experts make any such statements. Accordingly, Plaintiffs' Fifteenth Motion is moot. ECF No. [360-1] at 2.

### xvi.   Preclude Any Reference to Learned Treatises

While Plaintiffs originally sought to prohibit Tesla's experts from bolstering "their opinions on direct examination by reference to studies, tests, or other authoritative texts," Plaintiffs have since withdrawn this Motion, and it is thus moot. ECF No. [329] at 6; ECF No. [386] at 8.

### xvii.   Exclude Expert Opinions Based on Inadmissible Records

Plaintiffs originally sought to preclude Tesla's experts from expressing opinions formed by reviewing inadmissible records or commenting on their review of inadmissible records. ECF No. [329] at 7. Additionally, Plaintiffs argued Tesla's experts should not be "permitted to comment on what other doctors may think or consultations with colleagues." *Id.*  Plaintiffs have since withdrawn their Motion to the extent it seeks to preclude opinions or comments based on an expert's review of inadmissible evidence. *See* ECF No. [386] at 8. However, Plaintiffs maintain their position that "an expert may not bolster his opinion by stating that another agrees with him." ECF No. [386] at 8. Tesla argues that the "Motion on this issue is not yet ripe because it is unclear what specific evidence or testimony Plaintiffs have in mind." ECF No. [359] at 11.

The Court agrees with Tesla. Without any specifics about the witnesses or the testimony Plaintiffs seek to preclude, the Court finds the Motion "is patently overboard, and it inappropriately inhibits the jury's ability to evaluate expert testimony." *Palmetto 241 LLC v. Scottsdale Ins. Co.*, No. 19-CV-22195, 2020 WL 2736646, at *3 (S.D. Fla. May 26, 2020). To the extent Tesla's witnesses provide improper bolstering testimony, the Court will address those issues at trial.

### xviii.   Preclude Experts from Stating their Personal Opinions about the Parties

Plaintiffs originally requested that the Court preclude Tesla's experts from stating personal opinions about the Plaintiffs. ECF No. [329] at 7. The Parties have since agreed that "this issue may be addressed by contemporaneous objection at trial." ECF No. [386] at 8. Accordingly, Plaintiffs' Eighteenth Motion is moot.

### xix.   Limit the Scope of Character Evidence

Plaintiffs' Nineteenth Motion *in Limine* concerned character evidence and prior bad acts of Plaintiff Angulo. However, Angulo withdrew this Motion and subsequently filed it as a new separate motion addressing the same issues as well as several additional issues. *See* ECF No. [335]; ECF No. [344]. Therefore, the Court will address the challenges raised in Plaintiffs' Nineteenth Motion in the section addressing Plaintiff Angulo's Motion to Limit and Exclude Certain Opinions of Dr. Crown. *See* ECF No. [344].

### xx. Preclude Admission of Accident Reports

Plaintiffs seek to exclude any evidence regarding "the Traffic Crash Report that was generated by Florida Highway Patrol (FHP) Joel Torres on [April 25, 2019,] and the Traffic Homicide Report that was generated by FHP Corporal David Riso on [August 28, 2020]." ECF No. [329] at 11. Plaintiffs also seek to exclude any conclusions by the investigating officers as well as "any and all conversations" Officer Torres and Officer Riso had with George McGee. *Id.* at 12. According to Plaintiffs, the Florida Accident Report Privilege, Fla. Stat. § 316.066(4), prohibits the introduction of police reports and any testimony involving an investigation of an accident.

Tesla argues that the Florida Accident Report Privilege does not apply in federal court because federal courts apply federal law when deciding issues regarding the admissibility of

evidence. ECF No. [359] at 12. Although the statute is commonly referred to as "privilege," and privileges are governed by state law, Tesla argues that the statute does not create a true privilege, but rather, creates a rule of evidence. As such, federal law applies.

Additionally, even if Florida law does apply, Tesla argues that Plaintiffs' Motion sweeps too broadly. First, Tesla contends that the investigating officers may testify about their own observations. *Id.* at 13. Second, Tesla argues Corporal Riso may testify as to his conversation with McGee, since it was months after the investigation "and had nothing to do with the crash report. *Id.* at 14. Third, Tesla asserts that Officer Torres may testify as to the initial conversation he had with McGee because that conversation occurred prior to the time Torres began the investigation process. *Id.* Tesla maintains that when Torres arrived on the scene, he was still assessing the ongoing danger of the crash, and therefore, those initial conversations do not fall under the Accident Report Privilege. *See id.* Tesla also argues that Torres' body-camera footage falls beyond the purview of the Accident Report Privilege. *See id.* at 15.

The Florida Accident Report Privilege applies in federal diversity cases. Not only do courts generally consider issues of privilege a substantive issue, both Plaintiffs and Tesla cite numerous cases applying the Accident Report Privilege in federal court. *See e.g.*, *Cardona v. Mason and Dixon Lines, Inc.*, 737 F. App'x 978, 981-82 (11th Cir. 2018); *Tereskun-Arce v. KW Int'l, Inc.*, No. 5:18-CV-295-OC30PRL, 2019 WL 13245750, at *3 (M.D. Fla. Dec. 16, 2019); *Dewit v. UPS Ground Freight, Inc.*, No. 1:16CV36- MW/CAS, 2017 WL 4863279, at *2 (N.D. Fla. Aug. 22, 2017); *In re Jacoub*, No. 6:23-AP-00008- LVV, 2024 WL 4355564, at *5 (Bankr. M.D. Fla. Sept. 30, 2024). Although two Second District Court of Appeal cases[6] conclude that the Accident Report Privilege is simply a rule of admissibility, not a true privilege, those holdings are in conflict with

---

[6] *See Anderson v. Mitchell*, 300 So. 3d 693, 695 (Fla. 2d DCA 2019); *Rawe v. Coleman*, 354 So. 3d 574, 577 (Fla. 2d DCA 2022).

other Florida appellate court decisions recognizing a privilege. *See e.g., State v. Cino*, 931 So. 2d 164, 168 (Fla. 5th DCA 2006) ("The purpose of the section 316.066(4) accident report privilege is to ensure that the state does not violate an individual's constitutional privilege against self-incrimination when he or she is compelled to truthfully report to law enforcement the facts surrounding an automobile accident.") (citing *Brackin v. Boles*, 452 So. 2d 540, 544 (Fla. 1984)); *State v. Marshall*, 695 So. 2d 719, 722 (Fla. 3d DCA 1996), *approved*, 695 So. 2d 686 (Fla. 1997) (noting "that the sole purpose of the accident report privilege is to protect the privilege against self-incrimination."); *Stewart v. Draeleaus*, 226 So. 3d 990, 994 (Fla. 4th DCA 2017) (explaining that the statute provides "immunity" to individuals involved in an accident under certain circumstances); *Sottilaro v. Figueroa*, 86 So. 3d 505, 508 (Fla. 2d DCA 2012). Because the Court finds the Florida Accident Report privilege to be a true privilege, Florida law applies to the issue. Accordingly, the Court addresses whether any evidence that Tesla seeks to introduce falls outside the privilege.

Plaintiffs concede that the officers are not precluded from testifying about their personal observations. *See* ECF No. [386] at 10. As such, those statements are admissible. As for McGee's statements to Corporal Riso after the accident, Plaintiffs contend there is no evidence that McGee made any statements after the accident. *Id.* Therefore, the dispute over the admissibility of this evidence appears to be moot. However, because there is no dispute that such statements would otherwise be admissible, to the extent that McGee did make such statements to Corporal Riso months after the accident, Tesla may introduce those statements at trial. Finally, regarding the admissibility of Officer Torres' body-cam footage, the Court agrees with Plaintiffs that it must review the body-camera footage before making a ruling. Accordingly, no later than July 7, 2025,

the Parties are to conventionally file the body-camera footage to allow the Court to address that issue.

### xxi.    Exclude Dr. Fernandez's Opinion Regarding Centralized Pain

Plaintiffs seek to exclude certain opinions from Dr. Rafael Fernandez that Plaintiff Angulo is not experiencing centralized pain. ECF No. [329] at 13. However, Tesla has decided not to have Dr. Fernandez offer an opinion that Angulo does not have centralized pain. ECF No. [360-1] at 2. As such, the Motion is moot.

### xxii.    Preclude Reference to the SAE J3016 Taxonomy

Plaintiffs seek to preclude Tesla from making any reference to, or use of, Society of Automotive Engineers ("SAE") J3016 Taxonomy and Definitions for Terms Related to Driving Automation Systems for On-Road Motor Vehicles ("SAE J3016") on the grounds that such reference or use would be unduly prejudicial. ECF No. [329] at 14-15. According to Plaintiffs, "Tesla primarily intends to rely on SAE J3016 to assert to the jury that its vehicles are Level 2 vehicles and as such, supervision of the vehicle remains the ultimate responsibility of the driver, regardless of whether any of the Autopilot suite of features is engaged." *Id.* at 14. However, because Tesla does not use such terminology in its advertising or communications with the public, Plaintiffs insist it would be unduly prejudicial for the jury to hear this terminology.

The Court will not preclude Tesla from relying on the SAE J3016 at trial, as the Court does not find any undue prejudice simply because the classification system in the SAE J3016 was not used by Tesla when working with the public. There is no dispute that the SAE J3016 is a useful tool to classify and describe the assistive driving capabilities of the Vehicle. Indeed, both Tesla and Plaintiffs rely on the classification system in their briefs and expert reports. Moreover, Plaintiffs' own experts refer to the SAE J3016 in their expert reports. Accordingly, the use of SAE J3016 would be relevant and helpful to the jury since the Parties, the National Highway Traffic

Safety Administration ("NHTSA"), and other manufacturers in the industry utilize this classification system. Therefore, Plaintiffs' Motion is denied.

### B.  Plaintiff Dillon Angulo's Motion

Plaintiff Angulo seeks to exclude certain opinions and testimony of Tesla's expert Dr. Barry Crown. *See* ECF No. [344].

### i.   Exclude the Extent and Specifics of Angulo's Former Drug Use

Angulo seeks to exclude testimony regarding the extent and specifics of his addiction to Xanax in high school, as well as his later use of marijuana and crack cocaine. ECF No. [344] at 5. Tesla argues that the evidence is relevant to Angulo's damages claims as indicated by the "voluminous evidence that Angulo's drug abuse contributes to his alleged mental and psychological issues today." ECF No. [383] at 8. The Court agrees that to the extent there is an adequate foundation to support the conclusion that Angulo's mental health issues may be attributable to his prior drug use, such testimony is admissible. Although there may be other evidence at trial the Court deems unduly prejudicial, the Court does not find the examples highlighted by Angulo justify limiting the extent of Crown's anticipated testimony on the issue, let alone the wholesale exclusion of such testimony. Accordingly, Angulo's request to preclude testimony regarding his former drug use is denied.

### ii.  Preclude Crown from Testifying that Angulo's Former Drug Use, ADHD, and Depression are Contributors to Angulo's Current Neurocognitive Deficits

Angulo argues that Crown's opinion that his "pre-morbid drug use, ADHD, and depression were [ ] contributing factors" of his current "neurocognitive disorders or brain damage" is not "based on sufficient facts or data, and [is] not the product of reliable methodology." ECF No. [344] at 6. According to Angulo, "Crown acknowledges that there is no medical evidence of any kind to

show that Angulo had any pre-existing neurocognitive disorders or brain damages as a result of his pre-morbid drug use, ADHD, or depression." *Id.*

Tesla argues that Crown's opinions regarding Angulo's former drug use, ADHD, and depression are based on his expertise and experience as well as his examination of Angulo and his review of Angulo's records. ECF No. [383]. The Court finds that Crown's opinions regarding Angulo's pre-existing conditions are reliable and are relevant to causation. Therefore, to the extent Crown relies on his examination of Angulo and other evidence in the record, the opinions are not subject to exclusion.

### iii. Preclude Crown from Testifying that Angulo is Malingering or Exaggerating his Injuries and Neuropsychological Deficits

Angulo seeks to preclude Crown from testifying that he is malingering because "Crown acknowledged that based on the testing results[,] he could not testify within a reasonable degree of neuropsychological probability that Angulo was malingering or exaggerating." ECF No. [344] at 9. Tesla argues that "nobody can know with certainty how Angulo truly feels except for Mr. Angulo himself," and that is why "Crown exercised precision in stating that the validity testing was *suggestive* of malingering or exaggeration." ECF No. [383] at 13-14. (emphasis in original).[7]

When asked if it is "fair to say you cannot testify that within a reasonable degree of medical probability or neuropsychological probability that Mr. Angulo was malingering or exaggerating," Crown responded: "Yes. That's what I intended to express." ECF No. [344-1] at 117. Crown asserted that it was *possible* [that Angulo was malingering or exaggerating], but he could offer no additional assurance. *Id.* Because a medical "expert must [] testify to a reasonable degree of medical certainty" when giving causation testimony, the Court will preclude Crown's testimony

---

[7] Indeed, in Crown's report, he merely opines that the results were "suggestive of malingering or exaggeration related to neurological complaints, affects, and intelligence." ECF No. [344] at 7.

on this issue. *Hoff v. Steiner Transocean, Ltd.*, No. 12–22329–CIV, 2014 WL 273075, at \*4 (S.D. Fla. 24, 2014) (citing *Wilson v. Taser Int'l Inc.*, 303 F. App'x 708, 715 (11th Cir. 2008)); *see Worley v. Carnival Corp.*, Case No. 21-CIV-23501, 2023 WL 1840154, at \*4 (S.D. Fla. 2023) ("Medical opinions regarding causation must be stated to a reasonable degree of medical certainty.") (collecting cases). Crown is attempting to give an opinion that his medical testing indicates that Angulo's symptoms were not caused by the collision but rather were manufactured by Angulo's own malingering and exaggeration. Accordingly, to give such an opinion he must provide more than a mere suggestion or possibility and, therefore, the Court precludes Crown from testifying that Angulo is malingering or exaggerating, or that his testing "suggests" Angulo is malingering or exaggerating the extent of his injuries.

### iv.  Preclude Testimony Regarding Crown's Use of the MCMI-III Test Administered to Angulo

Angulo seeks to exclude any testimony regarding the Personality Factor section of Crown's expert report. ECF No. [344] at 9. According to Angulo, the Personality Factor section does not include any of Crown's own analysis and, instead, simply relies on "a verbatim copy and paste of a printout from the [Million Clinical Multiaxial Inventory-3] [']MCMI-III['] test administered by Dr. Crown." *Id.* at 10. Tesla responds that Crown's opinion as to Angulo's personality is "based on Angulo's own admissions and self-reporting" and is consistent with the psychopathological profile Angulo was observed to have had "at the Beachcomber before the subject crash." ECF No. [383] at 14. Furthermore, Tesla argues that Crown "is not parroting or blindly relying on 'computer generated results[,]" he is taking Angulo's own self-reporting, imputing that reporting into a universally recognized test for analysis, and then "subsequently applying his own expertise to opine how the results of that testing explain Angulo's current condition and alleged ailments." *Id.*

The Personality Factor section of Crown's report must be excluded. "While it is true that 'an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts,' [ ] such expert must make some findings and not merely regurgitate another expert's opinion." *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. May 19, 2009) (citing *Robinson v. Ford Motor Co.*, 967 F. Supp. 482, 487 n.2 (M.D. Ala. 1997) (internal citation omitted)). An expert witness cannot simply "adopt the findings of another expert without attempting to assess the validity of the opinions relied upon." *La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*, 586 F. Supp. 3d 1300, 1306 (S.D. Fla. 2022) (quoting *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000) (internal quotations omitted)). Here, Crown failed to conduct any analysis or otherwise assess the validity of Angulo's MCMI-III results. As Crown explained in his deposition, "Dr. Millon and his group," put the MCMI-III data analysis together. ECF No. [344-1] at 62. Crown took no credit for the analysis, and when asked whether he contributed at all to the profile or simply put the MCMI-III profile in his report, Crown admitted that "all the personality factors are just a printout from the computer." *Id.* at 63. Crown conceded that he did not have a basis to give an opinion on Angulo's personality characteristics included in the MCMI-III analysis. For example, Crown acknowledged he could not give an opinion that Angulo was "skillful in exploiting the goodwill of others" and that if he were to testify as such, it would be based on Dr. Millon's group's "analysis of the MCMI[.]" *Id.* at 64. Similarly, when asked about the statement in the report that Angulo "may successfully scheme beneath his veneer of civility," Crown conceded that he did not reach the opinion independently and that he did not have a basis for the opinion other than what the printout stated. *Id.* at 69.

Despite Tesla's assertion to the contrary, there is no record evidence that Crown conducted any independent analysis or made any independent findings with respect to the Personality Factor section on his expert report. Because Crown's testimony would be nothing more than a regurgitation of another expert's analysis, the Court precludes Crown from testifying or offering an opinion on the Personality Factor section of his expert report.

### v. Preclude Crown from Testifying that the Corporal Punishment Angulo Received as a Child Contributed to his PTSD

Angulo seeks to prevent Crown from opining that the corporal punishment Angulo experienced as a child at the hands of his mother contributed to Angulo's PTSD. ECF No. [344] at 11-12. Angulo gives three reasons why Crown's opinion should be excluded. First, "PTSD requires 'exposure to actual or threatened death, serious injury, or sexual violence,'" and corporal punishment with a wooden spoon does not fall into any of those categories. *Id.* at 12. Second, Crown failed to conduct a Diagnostic and Statistical Manual of Mental Disorders ("DSM") analysis with Angulo. *Id.* Accordingly, because corporal punishment does not satisfy the criteria to constitute a cause of PTSD, and because Crown never conducted the requisite analysis, Angulo maintains that Crown's opinions are based on "insufficient data and unreliable methodology." *Id.* Third, Crown's opinion on Angulo's childhood PTSD is a surprise opinion that was never included in his expert report. *Id.*

Tesla responds that Angulo's medical records support "an extended history of childhood trauma," and Angulo's expert, "Dr. [Sally] Russell[,] acknowledges that this pre-crash abuse is a contributor to [Angulo's] post-traumatic stress." ECF No. [383] at 15. Moreover, Tesla disagrees that PTSD is only caused by "exposure to actual or threatened death, serious injury, or sexual violence." *Id.* Tesla argues that "Crown's testimony and modern medical understanding of PTSD" support that childhood corporal punishment may contribute to PTSD. *See id.* Tesla also contends

that Crown's PTSD opinion is not inherently unreliable simply because Crown did not conduct a particular test, especially where the Parties concede that Angulo self-reported having childhood PTSD prior to the subject collision. *See id.* at 16.

Finally, Tesla argues that Angulo's claim that Crown's opinion is a surprise "is simply disingenuous." *Id.* According to Tesla, Angulo's pre-crash mental health issues are contained in the medical records Crown reviewed and are facts that Angulo's expert conceded.

Crown's childhood PTSD opinion must be excluded as an impermissible surprise opinion. "Courts regularly exclude opinion testimony that has not been timely or sufficiently disclosed." *Gugliuzza v. Swift Transp. Co. of Ariz., LLC*, No. 4:21-CV-140, 2024 WL 4593865, at *4 (S.D. Ga. Oct. 28, 2024). Tesla readily admits that Crown's childhood PTSD opinion was not included in his expert report despite the fact that "Rule 26 [ ] requires the [expert's] written report [ ] contain 'a complete statement of all opinions the witness will express and the basis and reasons for them' and 'any exhibits that will be used to summarize or support them.'" *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250 (M.D. Fla. 2012) (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)); *see generally* ECF No. [344-2] (no mention of childhood corporal punishment, pre-crash PTSD, or that childhood trauma contributed to PTSD). The "expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise," which include providing timely disclosure prior to an expert's deposition. *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006)); *see also Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1366-67 (S.D. Ga. 2016), *objections overruled*, No. CV 215-81, 2016 WL 6542717 (S.D. Ga. Nov. 3, 2016) ("Prior to that deposition, Plaintiff had not provided any disclosure regarding Dr. Karl and, thus, had not even hinted that Dr. Karl

would testify about anything other than the facts regarding his treatment of Plaintiff. This surprise defeats the purpose of Rule 26's expert disclosure requirements."); *Mobile Shelter Sys. USA, Inc.*, 845 F. Supp. 2d at 1250-51 (finding disclosure of an expert opinion on the eve of the expert's deposition untimely).

Accordingly, Crown may not testify as to this issue unless Tesla shows its failure to disclose Crown's opinion was "'substantially justified' or harmless." *Mobile Shelter Sys. USA, Inc.*, 845 F. Supp. 2d at 1250 (quoting Fed. R. Civ. P. 37(c)(1)); *Munoz v. Williams*, No. 21-CV-22801, 2022 WL 17736192, at *2 (S.D. Fla. Dec. 16, 2022) ("The non-disclosing party bears the burden of showing that the failure to comply with Rule 26 was substantially justified or harmless."). In making this determination, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (citation omitted). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (citation omitted). However, the "determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Smith v. Jacobs Eng'g Grp., Inc.*, No. 4:06CV496-WS/WCS, 2008 WL 4264718, at *6 (N.D. Fla. Mar. 20, 2008), *report and recommendation adopted*, No. 4:06 CV 496 WS, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008) (citation omitted); *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-23074-CIV, 2014 WL 3764126, at *2 (S.D. Fla. July 30, 2014)

(noting that a court has "great discretion in deciding whether to impose such a sanction" for failure to comply with expert witness disclosure requirements).

The four factors all counsel against permitting Crown to testify that Angulo's alleged childhood PTSD contributed to current PTSD symptoms. Such testimony is clearly important as Crown's opinion directly bears on the extent to which the jury should attribute Angulo's mental health issues to the subject collision. The failure to timely disclose the opinion is also prejudicial. Angulo had no time to prepare to rebut the opinion prior to Crown's deposition and at this juncture there is no longer an opportunity to cure. Trial in this case is imminent and is specially set. Moreover, Tesla has offered no explanation or justification for its failure to disclose this opinion prior to Crown's deposition. Tesla simply argues that Crown's opinion was not a surprise because evidence of the PTSD is in the medical records, and Plaintiff's own expert conceded that Angulo's childhood trauma contributed to his PTSD. However, Angulo's expert never opined nor testified that Angulo had pre-crash PTSD or that his childhood trauma contributed to his PTSD.[8] Moreover, the mere fact that there is evidence in Angulo's medical records by no means suggests that Angulo's experts or his attorneys should have anticipated Crown would give such an opinion. Accordingly, the Court finds that Tesla has not met its burden that the surprise opinion was

---

[8] The relevant testimony Tesla highlights to support the contention that Angulo's expert conceded that pre-childhood trauma contributed to Angulo's PTSD is as follows:

> Q. Was Mr. Angulo a victim of emotional and physical child abuse during his childhood?
> A. Yes. As far as I read, he was.
> Q. And is child abuse a contributor of posttraumatic stress?
> A. Well, of course, it can be, but it makes someone more fragile so they suffer another trauma.

ECF No. [382-2] at 4. This testimony does not suggest that Angulo's childhood trauma contributed to his PTSD, let alone that Angulo, in fact, had pre-crash PTSD.

harmless or substantially justified, and the request to exclude Crown's opinion regarding Angulo's childhood trauma and pre-crash PTSD is granted.

### vi. Preclude Any Testimony that Crown has Provided Testimony or Guidance to the Government or Governmental Agencies

Angulo requests that Crown be prohibited from "bolstering" his opinions by testifying that "he ha[s] previously provided similar unsworn opinions to the National Institute of Drug Abuse." ECF No. [344] at 13. Angulo argues this statement and related statements must be excluded because "it is impermissible to 'place the government's prestige behind the witness to bolster the witness' credibility.'" *Id.*

Tesla responds that in forming his opinion, Crown relied, in part, on the treatment of thousands of benzodiazepine abusers and the reporting he made about those abusers to the National Institute of Health ("NIH"). ECF No. [383] at 17. Accordingly, "[i]t is well within Rule 702 for Crown to rely on his experience" as a doctor providing treatment to opine that Angulo is likely to continue experiencing "permanent residual neuropsychological disturbances" because of his drug abuse. *Id.*

Although courts may exclude evidence that constitutes improper bolstering, this issue typically arises only in criminal cases, and Plaintiffs offer no persuasive reason to apply the rule to the circumstances here. *See Garcia v. GEICO General Ins. Co.*, 807 F.3d 1228, 1234 (11th Cir. 2015) (noting that "bolstering typically comes up in criminal cases"). The anticipated testimony regarding Crown's reports and opinions to the NIH explains the experience Crown relied on in forming his opinion about the impact of Angulo's drug use. *See id.* The fact that Crown's relevant experience involved work with the federal government does not render his testimony improper bolstering, especially where there is no suggestion that Tesla's counsel will make improper comments about Crown's credibility based on this testimony. *Cf. United States v. Bernal-Benitez*,

594 F.3d 1303, 1314 (11th Cir. 2010) ("Bolstering occurs when 'the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.'" (quoting *United States v. Knowles*, 66 F.3d 1146, 1161 (11th Cir.1995))). To suggest this testimony is impermissible would mean any expert witness who relied on their experience working with the federal government to form an opinion would amount to improper bolstering or placing the prestige of the government behind their testimony. That is plainly not the law. As such, the Court will not preclude Crown from testifying about his work with the NIH so long as the testimony is otherwise relevant.

### vii. Preclude Testimony or Evidence of Angulo's Bad Character or Prior Bad Acts

Angulo seeks to exclude any testimony regarding his bad character or prior bad acts. Specifically, Angulo seeks to preclude testimony regarding (1) his sex and love addiction; (2) his departure from rehab against medical and clinical advice; and (3) his prior drug withdrawal. The Court will not exclude this evidence as improper character evidence as Tesla has provided a legitimate non-propensity reason for introducing such evidence. As Tesla explains in its Response, evidence regarding Angulo's love and sex addiction and the relationships he had with other women "before, after, and possibly at the time of the subject incident" is relevant to undermine the credibility of Angulo's claim that he is suffering from PTSD due to loss of someone he had only known for a few weeks. ECF No. [383] at 18.

The Court also agrees with Tesla that "Angulo's failed drug addiction recovery" before the subject collision is relevant because it has a tendency to establish an alternative explanation for the cause of Angulo's purported "anxiety, depression, sleep issues, and anger issues." *Id.* at 19. For instance, Angulo admitted to his care providers that his depression was related to his substance abuse. *See id.* Accordingly, the fact that Angulo may not have completed his recovery and

treatment process would tend to show that Angulo had preexisting and unresolved mental health issues that were caused by his substance abuse rather than the subject collision.

Finally, evidence of Angulo's pre-crash seizures due to drug withdrawals is plainly relevant to undermine any claim that the sole cause of any future seizure treatment iss the brain injury he suffered in the subject collision. Moreover, evidence of past seizures is also relevant in determining the cause of Angulo's alleged neurocognitive deficits.[9]

Therefore, because there is a non-propensity purpose, and the Court finds the evidence not unduly prejudicial, Angulo's Motion to exclude testimony regarding (1) his sex and love addiction; (2) his departure from rehab against medical and clinical advice; and (3) his prior drug withdrawal, is denied.

### C.  Tesla's Motions *in Limine*

#### i.   Preclude References to Other Incidents

Tesla seeks to exclude evidence of all accidents involving Tesla vehicles beyond the subject collision that do not involve the same "hardware and software versions of Autopilot." ECF No. [320] at 6. Tesla argues that such evidence is irrelevant as it does not tend to prove a defect in the design at issue. Moreover, Tesla maintains the evidence is not substantially similar "[g]iven the number of variables involved in any one incident." *Id.* at 8. Plaintiffs argue that these other crashes are substantially similar and are highly relevant to the issue of whether Tesla was on notice of the defect. ECF No. [348] at 1-4. Furthermore, Plaintiffs contend the evidence of other substantially similar crashes is not hearsay because Tesla acknowledged that at least eighteen of

---

[9] While it appears that the fact that Angulo's seizures were caused by drug overdose is irrelevant, the fact that he experienced seizures prior to the crash is certainly relevant in determining the cause and extent of his injuries. Accordingly, Crown's testimony will be limited to the seizures themselves and not the cause of the pre-crash seizures unless Tesla can provide a medically necessary reason at trial why Crown would need to testify as to the cause.

the accidents involved facts that Plaintiffs argue render the accidents substantially similar. Plaintiffs also intend to introduce NHTSA reports that "are admissible subject to the public records exception." *Id.* at 5.

The Court reserves judgment, as there is insufficient record evidence about the context and circumstances of those other accidents. To determine whether those other accidents are relevant and substantially similar, Plaintiffs must provide the Court with all the relevant facts regarding the accidents they seek to introduce at trial. For each accident Plaintiffs seek to introduce at trial, Plaintiffs are to identify (1) the year and model of the vehicle; (2) the date of the incident; (3) any distinguishing features between the Autopilot in McGee's Vehicle and the allegedly similar vehicle; (4) whether Autopilot technology was activated; (5) the type of collision (e.g., in-lane rear-end collision); (6) the purported defect in the ADAS technology; (7) a non-hearsay basis for the admission of the accident; and (8) any other facts or circumstances to assist the Court in determining whether those accidents are substantially similar. Plaintiffs are to provide this information no later than July 7, 2025.

### ii.  Preclude Reference to Subsequent Remedial Measures

Tesla seeks to exclude any evidence of its December 2023 recall as well as any other evidence of subsequent changes to Autopilot as they are irrelevant and constitute an inadmissible subsequent remedial measure. *See* ECF No. [320] at 12. Plaintiffs respond that while the December 2023 recall may constitute a subsequent remedial measure, it is nevertheless admissible under Rule 407's feasibility exception. ECF No. [348] at 7. Regarding the other changes to Autopilot, Plaintiffs argue they may introduce such evidence to show "Tesla's reaction (or lack thereof) to the notice of the defect" in order to prove punitive damages. *Id.* at 8.

"Rule 407 provides, in relevant part, that evidence of remedial measures taken after an incident, measures which 'would have made an earlier harm less likely to occur,' is inadmissible

to prove negligence or culpable conduct, but may be admissible 'for another purpose, such as impeachment or . . . the feasibility of precautionary measures."' *Navelski v. Int'l Paper Co.*, No. 3:14CV445/MCR/CJK, 2018 WL 11206657, at *1 (N.D. Fla. Feb. 1, 2018) (quoting Fed. R. Evid. 407). The feasibility of Plaintiffs' recommended changes is plainly in dispute. Tesla contends its Autopilot technology is state-of-the-art. Plaintiffs may certainly undermine that theory by showing that Tesla had the capacity to cure the alleged issues at the time. Accordingly, evidence of the 2023 recall is admissible to the extent that it is offered to demonstrate the feasibility of the precautionary measures.[10]

As for evidence of other changes, alterations, and improvements to Autopilot following the subject collision, the Court agrees with Tesla that such evidence constitutes subsequent remedial measures that may not be introduced to prove Tesla's culpability. However, to the extent that Plaintiffs are seeking to introduce evidence that Tesla was on notice of a defect and failed to make subsequent changes to prove punitive damages, such evidence is admissible so long as the evidence establishing notice complies with the substantial similarity doctrine. *See Reid v. BMW of N. Am.*, 464 F. Supp. 2d 1267, 1271 (N.D. Ga. 2006) (permitting evidence of substantially similar incidents as well as evidence of defendant's failure to correct problems or warn others to prove punitive damages); *see also In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 3:07-CV-00101, 2010 WL 2015146, at *2 (M.D. Ga. May 20, 2010) (Rule 407 only applies to a subsequent remedial measure which is a "measure that, if taken prior to an injury, would have made the injury less likely to occur."). [11]

---

[10] The issue of the admissibility of evidence based on feasibility appears to be a largely moot point since "Tesla does not dispute the *feasibility* of the subsequent change (the over-the-air software update, that among other things, increased the frequency of driver alerts)." ECF No. [376] at 9 (emphasis in original).

[11] Additionally, any such punitive damages evidence must be introduced for the purpose of proving harm to Plaintiffs.

### iii. Preclude Reference to Ongoing Government Investigations

Tesla seeks to exclude evidence of all government investigations and, in particular, evidence of ongoing investigations. ECF Nos. [320] at 14. Plaintiffs do not intend to offer any evidence of investigations that have yet to be completed. ECF No. [348] at 9. Accordingly, this issue is moot. Plaintiffs, however, do intend to offer evidence of completed investigations. *Id.* Tesla relies entirely on its arguments in its First Motion *in Limine* to exclude any completed government investigations. Because the Court must first determine whether the completed government investigations involved vehicles, technology, and collisions substantially similar to the one here, the Court reserves judgment until Plaintiffs have provided the Court with the requite details to make a substantial similarity determination.

### iv. Preclude References to Third Party Reports Concerning Functioning, Malfunctioning, or Misuse of Autopilot

Tesla requests the Court to exclude all "[m]edia reports, third-party statements, and videos purporting to describe how Autopilot functions or allegedly failed to function[.]" ECF No. [320] at 15. Generally, to be appropriate, motions *in limine* should address specific pieces of evidence that are inadmissible on any relevant ground. *Vaughn v. Carnival Corp.*, 571 F. Supp. 3d 1318, 1325 (S.D. Fla. 2021) ("In general, a district court may deny a motion in limine when it 'lacks the necessary specificity with respect to the evidence to be excluded.'") *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, No. CIV. A. 99-D-880-E, 2001 WL 617521, at *1 (M.D. Ala. Feb. 20, 2001) (quoting *Nat'l Union v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)). Importantly, motions *in limine* should not be used as vehicles to secure substantive rulings on issues in a case, nor should they attempt to ensure that the rules of court will be enforced at trial. Therefore, to the extent that Tesla broadly requests that any third-party sources be excluded, this request is denied as premature and speculative at this stage. *See RJ's Int'l Trading, LLC v. Crown*

*Castle S. LLC*, No. 20-25162-CIV, 2021 WL 6135137, at *2 (S.D. Fla. Dec. 2, 2021) ("The Court cannot grant the Motion without knowing the specific evidence Defendant seeks to exclude."). Tesla may raise proper objections to specific pieces of evidence introduced at trial, when appropriate.

### v. Exclude Elon Musk's Public Statements Regarding Full Self-Driving Capabilities

Tesla seeks to preclude Elon Musk's public statements on the grounds that they are irrelevant and unfairly prejudicial. ECF No. [320]. The Court finds Musk's statements are admissible. As the Court explained in its recent Omnibus Order, Musk's statements are relevant to both Plaintiffs' Design Defect and Failure to Warn Claims because the statements will help the jury understand whether an ordinary consumer would have reasonably expected the Vehicle's Autopilot to warn of or avoid the subject collision. *See* ECF No. [428]. While Tesla argues Musk's statements are only relevant to an ordinary consumer's understanding of full self-driving vehicles, it is not apparent that Musk is only referring to full self-driving vehicles or that he is making "forward-looking, aspirational statements" about future vehicles. ECF No. [320] at 16. Musk appears to be discussing Autopilot generally, and, therefore, his statements are relevant, especially given that Tesla was regularly updating the Autopilot system in real time. Should Plaintiffs attempt to introduce statements at trial that clearly indicate the statement is forward-looking or aspirational or only applies to fully self-driving vehicles, Tesla may challenge the introduction of such statements at trial. However, because Tesla has not shown the evidence is irrelevant or unduly prejudicial at this juncture, Tesla's Motion is denied.

### vi. Preclude Use of Incorrect or Misleading Terminology and References to Evidence Concerning Materials Related to Future Products

Tesla seeks to preclude Plaintiffs from mischaracterizing the Vehicle as autonomous or fully self-driving. ECF No. [320] at 17. However, because Plaintiffs do not intend to

mischaracterize the Vehicle's capabilities in that manner, the Motion is moot. *See* ECF No. [348] at 11.

### vii. Preclude References to Promotional Videos

Tesla also requests that any evidence referencing its promotional videos be excluded as the videos are irrelevant. ECF No. [376] at 13. However, the Court finds the videos are admissible for the same reasons Musk's public statements are admissible. Irrespective of whether McGee saw the videos, they are relevant to determining whether a reasonable consumer would have expected Tesla's Autopilot to avoid a collision and whether the warnings in the Vehicle were adequate. Although Tesla argues that the "Paint it Black" video is not relevant because it demonstrated aspirational future capabilities, Tesla fails to show that it was apparent from the video that the capabilities demonstrated were purely aspirational. While the accompanying blog post might have referenced future capabilities, Tesla does not suggest that a person watching the video would be aware of that caveat unless they also had read the blog post. Therefore, because ordinary consumers could have watched the video without reading the post, the Court is not persuaded that the video is irrelevant. Therefore, Tesla's Motion is denied.

### viii.    Exclude Robert Sumwalt's Testimony

Tesla seeks to exclude the testimony of Robert Sumwalt. Sumwalt is a former National Transportation Safety Board ("NTSB") employee, and NTSB Regulation 49 C.F.R. § 835 governs the testimony of both current and former NTSB employees. *See* ECF No. [320] at 18-19. According to Tesla, NTSB regulations are highly circumscribed and limit testimony in the following ways:

1. "Board employees may only testify as to the factual information they obtained during the course of an investigation, including factual evaluations embodied in their factual accident reports."

2. Board Employees "shall not give any expert or opinion testimony."

3.  "Board employees may only testify about the firsthand information they obtained during an investigation that is not reasonably available elsewhere."

4.  "No employee may testify in any matter absent advance approval by the General Counsel[.]"

49 C.F.R. § 835.3. Tesla points out that the limitations contained in § 835.3 "continue to apply after the employee leaves the agency. *See* ECF No. [320] at 20 (citing § 835.7 ("'Testimony of former Board employees' mandates that 'the scope of permissible testimony continues to be constrained by all the limitations set forth in § 835.3 and § 835.4.'")). Given these conditions, Tesla maintains that Sumwalt cannot testify about the instant accident "because the NTSB did not investigate this accident, [so] there is no factual information that Mr. Sumwalt could possess relative to the accident. Thus, the only possible testimony would be of expert or opinion nature, which is prohibited . . . ." *Id.* (quoting ECF No. [320-7] at 1-2) (internal quotation omitted).

To the extent that Plaintiffs intend to have Sumwalt testify about investigations into other collisions, Tesla argues those investigations are dissimilar and unrelated to the incidents involving Tesla. *Id.* at 21. Tesla further argues that Sumwalt's testimony would be unduly prejudicial because even though Sumwalt intends to testify as a fact witness, the jury is likely to give undue weight to his testimony given "his title as the former head of the NTSB." *Id.* at 320.

Plaintiffs argue that Tesla misconstrues the applicable NTSB regulations with regard to their application to former NTSB employees. ECF No. [348] at 11. Plaintiffs argue that only current employees are prohibited from testifying regarding other employees reports, and only current employees must obtain approval from the General Counsel's office before testifying. *Id.* at 11-12. Given that those regulations do not apply to Sumwalt as a former NTSB employee, Plaintiffs assert that Sumwalt's limited testimony on the following issues is permissible: (1) that NTSB's safety recommendations were transmitted to a number of car companies, "but that Tesla

was the only company that failed to respond to the recommendation;" and (2) during a conversation Sumwalt had with Musk, "Musk simply hung up on him." *Id.* at 13.

Assuming without deciding that Sumwalt's testimony regarding his phone call with Mr. Musk is admissible under the NTSB's regulations, the Court does not find Sumwalt's anticipated testimony relevant. Sumwalt's testimony that Musk hung up on him during a phone call is irrelevant because Plaintiff has offered no evidence that explains the reason Musk hung up on Sumwalt. The mere fact that Tesla's CEO abruptly ended a phone call with an NTSB employee regarding an unrelated matter does not reasonably support the inference that Musk or Tesla has a disdain for safety regulators, let alone that Tesla's conduct amounted to a "conscious disregard or indifference to the life, safety, or rights of person exposed to such conduct." Fla. Sta. § 768.72. Without evidence that tends to establish the reason Musk hung up the phone, the jury would have to speculate to reach a relevant inference. As such, Sumwalt's testimony that Musk hung upon him during a phone call is excluded.

As for Sumwalt's testimony that Tesla failed to respond to the safety recommendation, the Court finds such testimony is inadmissible under the NTSB regulations. Despite Plaintiffs' insistence to the contrary, 49 C.F.R § 835.3 and § 835.4 continue to limit the scope of a former NTSB employee's testimony. *See* 49 C.F.R § 835.7. Therefore, Sumwalt "may [only] testify about the firsthand information [he] obtained during an investigation that is not reasonably available elsewhere[.]" § 853.3. The fact that Tesla did not respond to the safety recommendation is information available to Plaintiffs through other means. For instance, Plaintiffs could call a Tesla representative to testify whether Tesla responded to the safety recommendation. Additionally, because the fact is not in dispute, the Parties could simply stipulate that Tesla had not responded. Either way, that is not information requiring Sumwalt's unique first-hand knowledge to testify.

Because the Court does not find Sumwalt's anticipated testimony admissible, Tesla's Motion is granted.

### ix.  Medical Bills

Tesla seeks to limit evidence of medical expenses to only those expenses Plaintiffs owe or have already paid. ECF No. [320] at 22. Plaintiffs do not oppose this Motion; therefore, the Motion is moot. ECF No. [348] at 13.

### x.  Exclude Certain Evidence and Argument Related to Punitive Damages

#### a.  Preclude Comments Related to Out-of-State Conduct

Tesla seeks to limit the scope of punitive damages evidence admitted in this case. Specifically, Tesla seeks to exclude punitive damages evidence regarding (1) conduct that was lawful where it occurred, (2) unlawful conduct that occurred *outside* of Florida, and (3) conduct that did not harm Plaintiffs. ECF No. [320] at 23.

While indeed "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred," or otherwise punish a defendant for unlawful out of state conduct, that does not mean such evidence may not support a claim for punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 420 (2003). When considering punitive damages, courts must "consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Campbell*, 538 U.S. at 418 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). "[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. Punitive damages are reasonable when the culpability of the

defendant is so reprehensible that sanctions are needed to achieve deterrence. *See Campbell*, 538 U.S. at 419.

In making the reprehensibility determination, evidence of actual harm to non-parties is considered when it "can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public and so was particularly reprehensible[.]" *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007). Accordingly, to prove a defendant's reprehensibility, a plaintiff may introduce evidence of out-of-state conduct to demonstrate the "deliberateness and culpability of the defendant's action in the State where it is tortious." *Campbell*, 538 U.S. at 422. However, to ensure "that the jury will ask the right question," and not improperly punish a defendant for its out-of-state harm to others, there must be a nexus to the specific harm suffered by [the] [p]laintiff." *Id.* "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 422-23.

Given those considerations, Tesla fails to identify any specific evidence that will be introduced to prove punitive damages that lack a nexus to Plaintiffs' injuries in this case. Without any specific evidence for the Court to consider, the Court is unable to determine whether Plaintiffs' punitive damages evidence is admissible and, therefore, the Motion is denied.

### b.  Limit the Permissible Evidence

Tesla seeks to limit evidence on the amount of punitive damages. However, Tesla fails to identify any evidence it seeks to exclude, and instead, seeks a hearing to consider the permissible evidence. ECF No. [320] at 23. "Motions *in limine* should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial, or (re)-addressing substantive motions such as motions for summary judgment." *Holder*, 2018 WL 4956757, at *1

(citing *Royal Indem. Co.*, 2008 WL 2323900, at *1). Further, a district court may deny a motion *in limine* when it "lacks the necessary specificity with respect to the evidence to be excluded." *Bowden ex rel. Bowden*, 2001 WL 617521, at *1 (quoting *Nat'l Union*, 937 F. Supp. at 287. The Court concludes that the instant Motion is overbroad in that it "lacks the necessary specificity with respect to the evidence to be excluded." *Id.* (citation omitted). Accordingly, the Motion is denied.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  Plaintiffs' Omnibus Motion *in Limine*, **ECF No. [329]**, is **GRANTED IN PART** and **DENIED IN PART**.

2.  Plaintiff Dillon Angulo's Motion to Limit and Exclude Certain Opinions of Tesla's Neuropsychologist, Dr. Barry Crown, **ECF No. [344]**, is **GRANTED IN PART** and **DENIED IN PART**.

3.  Tesla's Motion *in Limine*, **ECF No. [320]**, is **GRANTED IN PART and DENIED IN PART**.

4.  The Clerk of Court shall UNSEAL each of the Motions filed, **ECF Nos. [320], [329], and [344]**, and place them on the public docket.

5.  No later than **July 7, 2025**, the Parties are to conventionally file Officer Torres' body-camera footage from the subject collision.

6.  No later than **July 7, 2025**, Plaintiffs shall file a **Notice Regarding Other Accidents** identifying (1) the year and model of the vehicle; (2) the date of the incident; (3) any distinguishing features between the Autopilot in McGee's Vehicle and the allegedly similar vehicle; (4) whether Autopilot technology was activated; (5) the type of collision (e.g., in-lane rear-end collision); (6) the purported defect in the ADAS technology; (7) a non-hearsay basis for the admission of the accident; and (8) any other

Case No. 21-cv-21940-BLOOM/Torres

facts or circumstances to assist the Court in determining whether those accidents are substantially similar to the subject collision.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 30, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record