*Supplemental briefing on admissibility of other similar incidents (OSI's)*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,
    Defendant.
_____/
DILLON ANGULO,

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,          Case No. 22-22607-KMM

    Defendant.
_____/

### PLAINTIFF'S RESPONSE TO DE 433 REQUIRING ADDITIONAL INFORMATION WITH RESPECT TO PRIOR ACCIDENTS

In this Court's Omnibus Order on Parties' Motions in Limine, ECF 433, the Court ordered Plaintiffs to provide detailed information bearing on admissibility for each accident they seek to introduce at trial. What follows is Plaintiffs' effort in that regard.

To summarize, Plaintiffs only seek to discuss three prior incidents in detail, all of which were subject to significant government and regulatory scrutiny involving Tesla's Autopilot system. Each case highlighted Autopilot's failure at object detection, emergency intervention, poor driver supervision and overly permissive operating capabilities. In addition to the detailed discussion of these three cases, Plaintiffs seek to introduce the findings of NHTSA from its review of autopilot collisions, as well as Telsa's admissions that in at least 18 of the accidents identified in Plaintiffs'

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

complaints, Tesla was aware that that they involved an "inattentive driver was driving with Autosteer engaged."

A summary table of the three primary collisions documenting the incident, the year, make and model involved, distinguishing features, whether Autopilot was activated, the type of collision, the purported defects, and other facts and circumstances to assist the court in determining substantial similarities can be found below.

First, however, is an explanation in prose fashion of those same/similar characteristics, along with relevant analysis of non-hearsay purposes for admission and the salient exhibits plaintiffs intend to introduce at trial that highlight these very same collisions.

**May 7, 2016 – The Brown Crash**

The fatality collision involving Joshua Brown formed the basis of the initial NTSB investigation resulting in Safety Recommendations 17-041 and 17-042 to all autonomous vehicle manufacturers, including Tesla, to implement ODD restrictions and enhanced driver monitoring. (see Trial Exhibit P-79 *NTSB Safety Recommendation 17-041* and P-81 *NTSB Safety Recommendation 17-042*) In his life, Mr. Brown was a devout Tesla enthusiast. He drove extensively for work and used Autopilot frequently. Like Mr. McGee, his virtual owner's manual gave him the same host of warnings about the use of Traffic Aware Cruise Control on highways and freeways and to not use it on city streets. He was similarly warned that Autosteer was for only use on highways and limited access roads and that he must keep his hands on the steering wheel at all times. On his final trip using Autopilot before his death, Mr. Brown activated the system for 37 minutes of his 41-minute trip from Cedar Key. During that time, the Autopilot system detected his hands on the wheel for a total of 25 seconds. The longest period between alerts was nearly six minutes. For the entire trip, Autopilot was in some form of warning mode for a total of approximately two minutes. (See pp. 13-15 of Trial Exhibit P-88 – NTSB Report - *Collision Between a Car operating with Automated Vehicle Control Systems and a Tractor Semitrailer Truck near Williston, Florida, May 7, 2016*.) After extensive investigation, the NTSB determined that the cause of the crash was a combination of a truck driver's failure to yield combined with the car driver's inattention due to his over-reliance on vehicle automation, resulting in his lack of response to the presence of the truck. "Contributing to the car driver's over-reliance on the vehicle automation was its operational design, which permitted his prolonged disengagement from the driving task and his use of automation in ways inconsistent with guidance and warnings from the manufacturer." (*Ibid.* at 42.)

Put simply, Mr. McGee was just another Josh Brown, in a slightly different model, in a slightly different location, operating under slightly different software and hardware, but suffering from the same over-reliance on Autopilot and misusing it in the same fashion.

There is no doubt that Tesla will argue that the Brown case involved different software and hardware and the failure of the Autopilot system to detect cross-traffic. However, those are distinctions without

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

a difference. As the NTSB concluded in 2016, the probable cause of the Brown crash was the same conclusion that NHTSA reached eight years later, "a weak driver engagement system," combined with "Autopilot's permissive operating capabilities." (See p. 6 of Trial Exhibit P-63 – *NHTSA EA22002 Update 4-25-24*)

**April 29, 2018 – Kanagawa Japan Crash**

This accident was among the first pedestrian fatalities involving Tesla's Autopilot. It led to legal and regulatory scrutiny with investigations highlighting major shortcomings and Tesla's driver engagement and obstacle detection systems. The Tesla Model X was tailing a slower vehicle. When that vehicle signaled and moved to the left to bypass a road obstruction, the Tesla promptly accelerated to its previously set cruising speed. This is characteristic of how TACC responds: when the target car clears, the Tesla assumes the lane ahead is clear and accelerates accordingly. As the lead vehicle moved away, the Model X's forward-facing cameras and sensors failed to detect the stationary van, motorcycle, and pedestrians, including a traffic director, stopped in the emergency lane. The system did not consider them obstacles at all, treating the path as free and continuing acceleration. Without driver intervention, the Tesla accelerated into and struck the group, tragically running over Mr. Yoshiro Umeda, who died from the impact. Yet again, this crash showed that Tesla's method of driver monitoring was flawed - sensing torque on the wheel - proving that it failed to ensure drivers remained alert. Similarly, it highlighted Tesla's obstacle detection limitations where the system could not identify or react to static obstacles like park vehicles, motorcycles, or pedestrians directly in its path.

Tesla similarly felt that this crash was significant enough to report it in its quarterly updates to NHTSA in March of 2019 where it also identified and reported the Banner crash that follows. (See p. 8 to Trial Exhibit P-22- *Tesla Quarterly Update to NHTSA 3-27-19*.)  As part of the on-going NHTSA investigations involving Autopilot Tesla was required to update the federal government on Autopilot fatalities. It's worth noting that in its reporting Tesla never attempted to highlight differences in hardware/software versions or crash scenarios nor otherwise claim this crash was so dissimilar to warrant exclusion. If Tesla felt compelled to self-report this crash to federal investigators it remains a tacit admission of substantial similarity.

**March 1, 2019 – Banner Crash**

Jeremy Banner was driving his 2018 Tesla Model 3 and engaged Autopilot approximately 10 seconds before impact. Mr. Banner removed his hands and never reengaged the wheel before his Tesla struck a semi-truck crossing a highway from a private drive, underriding the trailer and shearing off the roof at 68 miles per hour. Much like Mr. Brown before him and Mr. McGee after him, investigators found no evidence of evasive braking or steering by the Autopilot system or by Mr. Banner. This crash, just six weeks before the subject incident, further highlighted failures of Tesla's torque-based driver monitoring system which allowed for a prolonged, hands-off state without escalation, Autopilot's failure to detect a truck directly in its path of travel and its overly permissive operating capabilities allowing the system to operate on divided highway – US 441 - with significant cross traffic and private driveways.

As part of its reporting requirements to NHTSA regarding crash rates and Autopilot fatalities Tesla found it appropriate to report the Banner crash just a month before the subject collision. (*Id.* at pp. 12-21.)  Again, at no point did Tesla attempt to suggest to NHTSA that the Banner crash was some

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

sort of outlier or anomaly nor dissimilar from prior crashes. Rather Tesla felt compelled to report this Autopilot fatality, a tacit if not explicit, admission of substantial similarity.

Like the Brown crash, there is no doubt that Tesla will claim that the Banner case involved different software and hardware and a different model, and that the Autopilot system's failure involved cross-traffic. However, again just like the Brown crash before it and the hundreds of crashes before and after it, the failures of Tesla's Autopilot system were found across all hardware versions, all software versions, and in all types of crash circumstances.

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

| Year/Make/Model | Benavides (2019 Model S) | Brown (2015 Model S) | Kanagawa (2016 Model X) | Banner (2018 Model 3) |
|---|---|---|---|---|
| **Date of Incident** | April 25, 2019 | May 7, 2016 | April 29, 2018 | March 1, 2019 |
| **Distinguishing features** | None relevant to driver monitoring Torque-based; gave warnings but driver remained disengaged | None relevant to driver monitoring Torque-based; gave warnings but driver remained disengaged | None relevant to driver monitoring Torque-based; ineffective; allowed to sleep | None relevant to driver monitoring Torque-based; gave warnings but driver remained disengaged |
| **Autopilot Activated?** | Yes | Yes | Yes | Yes |
| **Collision Scenario** | Autopilot (and driver) failed to detect and respond to object/vehicle/pedestrian directly in front of it; resulting in fatal collision | Autopilot (and driver) failed to detect and respond to object/vehicle directly in front of it; resulting in fatal collision | Autopilot (and driver) failed to detect and respond to object/vehicle/pedestrian directly in front of it; resulting in fatal collision | Autopilot (and driver) failed to detect and respond to object/vehicle directly in front of it; resulting in fatal collision |
| **Driver Distraction** | Distracted (phone retrieval) at stop controls, overreliance | Distracted/complacent; hands off for 37 min | Distracted/complacent; Missed stationary emergency vehicles/pedestrians | Distracted/complacent; Hands-off, overreliance |
| **Obstacle Detection Limitations** | Missed parked truck and traffic signals | Missed tractor-trailer side under bright sky | Accelerated to preset speed after target clear | Failed to detect large truck at crossing |
| **Speed at Impact** | ~62 mph off stop; intersection collision | ~74 mph on highway | ~24 mph upon acceleration | ~68 mph |

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

| Year/Make/Model | Benavides (2019 Model S) | Brown (2015 Model S) | Kanagawa (2016 Model X) | Banner (2018 Model 3) |
|---|---|---|---|---|
| **Emergency Intervention** | No braking or evasive action by car or driver, no corrective warnings | No braking or evasive action by car or driver, unknown as to whether warnings were issued | No braking or evasive action by car or driver, unknown as to whether warnings were issued | No braking or evasive action by car or driver, unknown as to whether warnings were issued |
| **System Design Flaw** | Failed obstacle detection/intervention and poor driver monitoring | Failed obstacle detection/intervention and poor driver monitoring | Failed obstacle detection/intervention and poor driver monitoring | Failed obstacle detection/intervention and poor driver monitoring |
| **ODD** | Traveling outside ODD on rural two lane road (Card Sound Road) | Traveling outside ODD on SR 27 | Not applicable | Traveling outside ODD on SR 7 with cross traffic |

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

**The Office of Defect Investigation Findings**

Finally, while not necessarily an individual incident, plaintiff wanted to use this opportunity for supplemental briefing to address the admission of factual findings from the NHTSA authorized investigation into Autopilot. As set forth in the Office of Defect Investigation's (ODI) conclusions from April 25th, 2024, NHTSA identified 211 frontal plane crashes where a vehicle on Autopilot struck an object or person in its path, resulting in 13 fatal crashes leading to 14 deaths and 49 injuries. (See Trial Exhibit p. 3-4 to P-63 *NHTSA EA22002 Update 4-25-24*). The ODI's analysis of this crash data concluded that Autopilot's design was not sufficient to maintain driver engagement. In more than half of the crashes, the hazards were visible for 5 or more seconds, and in many instances the hazard was visible for over 10 seconds prior to impact. Despite this, drivers either did not brake or braked less than 1 second prior to the crash in 82% of the incidents, and steered less than 1 second prior to impact in 78% of the incidents. (*Id.* at p. 4.)

The factual findings from the ODI's investigation held that drivers involved in these crashes were not sufficiently engaged in the driving task, and the warnings provided by Autopilot did not adequately ensure that drivers maintain their attention on the driving task (even when drivers had fulfilled Tesla's driver engagement monitoring criteria.) Yet most importantly for admissibility purposes, the ODI concluded that these hundreds of "[c]rashes with no or late evasive action attempted by the driver were found across all Tesla hardware versions and crash circumstances." *Id.* at 5)

The Court further asked us to provide a non-hearsay basis for the admission of the accidents; and any other facts or circumstances to assist the Court in determining whether those accidents are substantially similar. We will do so below.

We interpret the Court's request for a non-hearsay basis for admission as a request to show how we would use the evidence for some purpose other than proving the truth of the matter asserted regarding each accident. As the Court in *Eugene v. State*, 53 So. 3d 1104, 1109 (Fla. 4th DCA 2011) explained:

> Subsection 90.801(1)(c), Florida Statutes (2008), defines "hearsay" as a "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The Supreme Court has recognized that a statement may "be offered to prove a variety of things besides its truth." *Foster v. State,* 778 So.2d 906, 914–15 (Fla.2000). When a statement is not offered for the truth of its contents, but to prove a material issue in a case, it is not hearsay. *Id.* at 915.

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

One type of non-hearsay basis for the admissibility of out of court statements is to show notice. See *Dorsey v. Reddy,* 931 So. 2d 259, 267 (Fla. 5th DCA 2006) ("This statement was not hearsay because it was not offered to show the truth of the matter asserted—that Benny Dorsey had the dissection—but to show that Dr. Reddy had notice of the dissection.") Each of the 3 primary accidents, the 18 accidents addressed in Tesla's answers to request for admissions and the NHTSA records may be admitted to show that Tesla was on notice of problems with its autopilot system involving inattentive drivers and collisions with obstacles directly in the path of the vehicle prior to the instant accident. For this purpose, Plaintiffs don't need to show that each of the accidents occurred in the manner the reports say they did. They just need to show that Tesla was aware that this is what the reports said, which is undisputed

In *CSX Transp., Inc. v. Palank*, 743 So. 2d 556,561 (Fla. 4th DCA 1999), the Court held that a federal government safety investigation report showing deficiencies in the defendant's operations were relevant to the issue of notice, even though the findings were related to a different division within the company:

> Even though the deficiencies addressed in the audit were related to a separate division, the deficiencies were strikingly similar to those in the Hamlet Division. The evidence regarding the audit showed prior knowledge of dangerous similar conditions within the system. *See Lawrence v. Florida East Coast Ry. Co.,* 346 So.2d 1012, 1015 (Fla.1977); *Rodriguez v. Loxahatchee Groves Water Control Mgmt. Dist.,* 636 So.2d 1348, 1350 (Fla. 4th DCA), *rev. denied,* 649 So.2d 233 (Fla.1994). Further, the FRA's general observations regarding the poor quality of track maintenance and repairs, as well as the lack of proper training and inspection practices of employees, provided CSX with ample notice of what was needed to provide proper training procedures and inspection practices. The audit, when considered in conjunction with the testimony concerning the inspection practices in the Hamlet Division, was relevant to demonstrate that CSX had actual prior notice that its practices in the Hamlet Division did not meet the FRA standards.

*CSX Transp., Inc.* at 561.

Another non-hearsay basis for the admission of theses documents is to show the effect this information had on Tesla. *See Eugene v. State*, 53 So. 3d 1104, 1109 (Fla. 4th DCA 2011) ("the emails

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

were not hearsay because they were offered not for the truth of the matters they contained but to establish the effect that the statements had on appellant, the recipient of the emails.") Here, we intend to show that, in response to information about the accidents, Tesla did not fully cooperate with the investigations, and did not readily take steps to address the issues highlighted by these accidents.

Finally, Tesla's responses to Plaintiffs' requests for admission are statements of an opponent under FRE 801(2) and are thus not hearsay. Thus, Plaintiffs can admit to the jury that Tesla was aware that 18 of collisions that were identified in the complaint occurred when an "inattentive driver was driving with Autosteer engaged". (Tesla's Supplemental Response to Plaintiffs' Request for Admissions at ¶¶ 88, 89, 91, 95, 96, 97, 98, 99, 101, 105, 109, 111, 113, 114, 119, 123, 129, 134).

If we misread the Court's request, and it was asking for any basis to overcome a hearsay objection, we would repeat our response to Tesla's motion in limine, in which we noted FRE 803(8) allows for the admissibility of government reports under the public records exception:

> (8) Public Records. A record or statement of a public office if:
>  (A) it sets out:
>   (i) the office's activities;
>   (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>   (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>  (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8)

There is ample federal case law which supports the admission of NHTSA reports and documents, both for Plaintiffs and Defendants. See, e.g., *Jones v. Ford Motor Co.*, 204 Fed. Appx. 280, 283-85 (4th Cir. 2006) (affirming admission of NHTSA report under Rule 803(8) in support of Ford's defense); *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 49, 53 (2nd Cir. 2002) (Sotomayor, J.) (same and stating: "[t]he weight given to conclusions in the NHTSA report ... was a matter for the jury to decide"); *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833, 846 (3rd Cir. 1981) (admitting NHTSA's Fatal Accident

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

Reporting System data in support of Plaintiff's claims); *Estate of Edward W. Knoster v. Ford Motor Co.,* 200 Fed. Appx. 106, 111 (3d Cir. 2006), (Approving admission of NHTSA report in support of Ford's defense); *Guild v. Gen. Motors Corp.,* 53 F. Supp. 2d 363, 365 (W.D.N.Y. 1999); (Allowing GM "to introduce a certified copy of the NHTSA as evidence of non-defect."); *Castaldi v. Land Rover N Am.*, No. 06-CV-1008 (JG), 2007 WL 4165283, *2, 11 (E.D.N.Y. Nov. 21, 2007) (admitting NHTSA report under Rule 803(8) in support of Plaintiff's claim); *Miller v. Ford Motor Co.*, No. 2:0l-CV-545-FTM-29DNF, 2004 WL4054843, *5 (M.D. Fla. July 22, 2004) (admitting NHTSA report under Rule 803(8) in support of Ford's defense).

Florida courts have also approved the admission of NHTSA documents and investigative reports of other federal agencies. In *American Motors Corp. v. Ellis*, 403 So. 2d 459 (Fla. 5th DCA 1981), the court affirmed the trial court's admission of a NHTSA report on a study of the severity of crashes. The court held that "[t]he report is admissible under the public record exception to the hearsay rule." Id. at 468.

As to the Court's request for "any other facts or circumstances to assist the Court in determining whether those accidents are substantially similar," we would point to Tesla's own recall letter sent to its drivers, in which Tesla stated, "Tesla has determined that a defect, which relates to motor vehicle safety exists in certain Model Year 2012-2023 Model S, 2016-2023 Model X, 2017-2023 Model 3, and 2020-2023 Model Y vehicles." (See Trial Exhibit P-112-Tesla's Recall Notice.) This is consistent with NHTSA's finding that a defect existed in 100% of Tesla's cars that were equipped with Autopilot. The defect existed regardless of model, year, hardware or software version. Tesla acknowledged the existence of the defect and vowed to fix it in all of its cars.

The substantial similarity between each of these accidents is that in each one, Autopilot was engaged, Autopilot failed to avoid the accident, and the driver was inattentive and thus unable to react to the Autopilot's failure. Each of these accidents placed Tesla on notice that its driver monitoring

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

system was inadequate to prevent its drivers from becoming disengaged and too reliant on the Autopilot system. They are thus substantially similar for the purposes of which Plaintiffs intend to utilize the evidence.

> Respectfully submitted,
>
> */s/ Douglas F. Eaton, Esq.*
> **Douglas F. Eaton, Esq.**
> Florida Bar No. 0129577
> Eaton & Wolk PL
> 2665 South Bayshore Drive, Suite 609
> Miami, FL 33133
> Tel. 305-249-1640
> Fax: 786-350-3079
> deaton@eatonwolk.com
> cgarcia@eatonwolk.com
> lhuete@eatonwolk.com
>
> */s/ Adam T. Boumel*
> **Adam T. Boumel, Esq.**
> Florida Bar No. 0110727
> The Rousso, Boumel Law Firm, PLLC
> 9350 South Dixie Highway
> Suite 1520
> Miami, FL 33156
> adam@roussolawfirm.com
> haiyang@roussolawfirm.com
> pleadings@roussolawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on 7th day of July, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the parties listed below.

> */s/Adam T. Boumel*
> **Adam T. Boumel, Esq.**
> Florida Bar No. 0110727

*Supplemental briefing on admissibility of other similar incidents (OSI's)*

**SERVICE LIST**

| | |
|---|---|
| **WHITNEY V. CRUZ** <br> Florida Bar No. 800821 <br> **Bowman and Brooke LLP** <br> Two Alhambra Plaza, Suite 800 <br> Coral Gables, FL 33134 <br> Tel. 305-995-5600 / Fax: 305-995-6100 <br> whitney.cruz@bowmanandbrooke.com <br> **THOMAS P. BRANIGAN** <br> (Admitted *Pro Hac Vice*) <br> **DREW P. BRANIGAN** <br> (Admitted *Pro Hac Vice*) <br> **Bowman and Brooke LLP** <br> 101 W. Big Beaver Road, Suite 1100 <br> Troy, MI 48084 <br> Tel. 248-205-3300 / Fax: 248-205-3399 <br> thomas.branigan@bowmanandbrooke.com <br> drew.branigan@bowmanandbrooke.com <br><br> **JOEL SMITH** <br> (Admitted *Pro Hac Vice*) <br> **Bowman and Brooke LLP** <br> 1441 Main Street, Suite 1200 <br> Columbia, SC 29201 <br> Tel. 803-726-7420 / Fax: 803-726-7421 <br> joel.smith@bowmanandbrooke.com <br> *Attorneys for Defendant Tesla, Inc.* | **Brett Schreiber, Esq.** <br> Admitted *Pro Hac Vice* <br> **Satyarinivas "Srinivas" Hanumadass, Esq.** <br> Admitted *Pro Hac Vice* <br> **Carmela Birnbaum, Esq.** <br> Admitted *Pro Hac Vice* <br> Singleton Schrieber <br> 591 Camino de la Reina, Suite 1025 <br> San Diego, CA 92108 <br> bschreiber@singletonschreiber.com <br> vas@singletonschreiber.com <br> cbirnbaum@singletonschreiber.com <br> jjusto@singletonschreiber.com <br> eelms@singletonschreiber.com <br> service@singletonschreiber.com <br> *Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides* <br><br> **Douglas F. Eaton, Esq.** <br> Florida Bar No. 0129577 <br> Eaton & Wolk PL <br> 2665 South Bayshore Drive, Suite 609 <br> Miami, FL 33133 <br> Tel. 305-249-1640 <br> Fax: 786-350-3079 <br> deaton@eatonwolk.com <br> cgarcia@eatonwolk.com <br> lhuete@eatonwolk.com <br> *Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides* |