UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal Representative
of the Estate of Naibel Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.           /

DILLON ANGULO,                                     Case No. 22-22607-KMM

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.           /

**DEFENDANT, TESLA, INC.'S SUPPLEMENTAL MEMORANDUM OF LAW
REGARDING THE ADMISSIBILITY OF OTHER ACCIDENTS**

Defendant, Tesla, Inc., submits this supplemental memorandum of law, in response to Plaintiffs' Response to ECF. No. 433 Requiring Additional Information With Respect to Prior Accidents (ECF No. 441), regarding the admissibility of other accidents and states as follows:

**INTRODUCTION**

In response to the Court's Order requiring Plaintiffs to identify detailed information "**[f]or each accident Plaintiffs seek to introduce at trial**"[1] so that the Court could consider substantial similarity, Plaintiffs identified some, but not all, relevant information about three crashes. However, they also stated that they intended to introduce 229 additional crashes (211 that are referenced in a NHTSA report and 18 that were referenced in their complaint and in requests for admission), but for these they simply ignored the Court's order to provide additional information relevant to the substantial similarity analysis. Plaintiffs say they are not going to

---

[1] ECF No. 433 at p. 31.

discuss these 229 crashes "in detail," which indicates their goal is to present a large number of incidents to the jury in hopes that the jury will assume they are similar. This is precisely the sort of unfair prejudice the substantial similarity requirement is intended to preclude. And, of course, neither this Court nor the legal standard contains a "not in detail" exception to the substantial similarity requirement for the admissibility of other incidents. It is Plaintiffs' burden to prove substantial similarity, not Tesla's to disprove it. If Plaintiffs were permitted to proceed with their "not in detail" presentation of 229 events that they do not even identify, Tesla would be forced to distinguish each during trial in order to alleviate some of the unfair prejudice that the substantial similarity was created to avoid.

It should also be noted here that Plaintiffs' "not in detail" tactic is the exact same one used by the plaintiffs in *Ford Motor Company v. Hall-Edwards*, 971 So. 2d 854, 856-60 (Fla. 3d DCA 2007) that resulted in the reversal of a verdict for those plaintiffs. For the three crashes where Plaintiffs provided some detail, Tesla will demonstrate here that there are critical *dissimilarities* to the Benavides crash. These dissimilarities expose Plaintiffs' effort to avoid the Court's order, which was based upon well-established legal requirements, that Plaintiffs provide sufficient evidence to establish the substantial similarity of other incidents as a prerequisite for admissibility.

## OVERVIEW OF TESLA'S RESPONSE TO PLAINTIFFS' ARGUMENTS

Turning to Plaintiffs' arguments, after briefing on Tesla's motion to exclude evidence of other incidents (ECF Nos. 320, 348, and 376), the Court ruled that there was insufficient record evidence about the context and circumstances of these other accidents and indicated that **"[f]or each accident Plaintiffs seek to introduce at trial**, Plaintiffs are to identify: (1) the year and model of the vehicle; (2) the date of the incident; (3) any distinguishing features between the Autopilot in McGee's Vehicle and the allegedly similar vehicle; (4) whether Autopilot

2

technology was activated; (5) the type of collision (e.g., in-lane rear-end collision); (6) the purported defect in the ADAS technology; (7) a non-hearsay basis for the admission of the accident; and (8) any other facts or circumstances to assist the Court in determining whether those accidents are substantially similar." (ECF No. 433 at p. 31) (emphasis added).

In response, Plaintiffs identified three specific incidents involving Tesla vehicles, referred to as *Brown*, *Kanagawa*, and *Banner*. (ECF No. 441, at 2-6). Plaintiffs attempt to create the illusion of substantial similarity by including a table that shows some limited superficial similarities, but that entirely ignores the crucial facts that distinguish those crashes from the one at issue here:

- None of the drivers in the other accidents was pressing the accelerator pedal like Mr. McGee was here. This is a critical distinction because pressing the accelerator pedal overrides the TACC (i.e. longitudinal speed control) function, essentially turning that feature off. Mr. McGee, rather than the vehicle, was controlling the vehicle's speed for the last 75 seconds before the crash, and the vehicle alerted him that "Cruise Will Not Brake" because his foot was on the accelerator pedal. The use of a single continuously operating driver assistance feature is SAE Level 1 performance. The drivers in the three other offered incidents were not pressing their accelerator pedals; TACC was not overridden in those cases, meaning their vehicles were operating with a Level 2 system assisting the driver (both TACC and Autosteer). In other words, different vehicle features were involved in those cases than are involved here and Plaintiffs do not assert otherwise.

- None of Plaintiffs' three offered incidents involved a driver that looked away from the road to retrieve a dropped object (Plaintiffs do not assert otherwise), such as a cell phone, whereas the parties have stipulated it is an undisputed fact that "McGee was distracted

3

from the driving task in the moments before impact having dropped his cell phone." (ECF No. 438 at p. 4, ¶ 4). This is a critical distinction that goes to both the defect and causation elements of Plaintiffs' claim because retrieving dropped objects is a well-known risk for causing crashes in all vehicles; in fact, it is a secondary task with one of the highest risks of all driver distractions.

- None of Plaintiffs' three offered cases involved drivers whose hands were on the steering wheel, whereas Mr. McGee's were, and Plaintiffs do not assert otherwise. Thus, they involve entirely different crash circumstances and vehicle performance that are directly relevant to Plaintiffs' allegation that the subject vehicle's "hands on/off wheel" detection system was inadequate.

- The *Banner* and *Brown* crashes involved industry-wide limitations of cross-traffic detection. This case does not involve cross-traffic, but instead involves detection of traffic control devices (stop signs). There were no stop signs, lights, or painted stop bars involved in any of the three crashes Plaintiffs identify, and Plaintiffs do not assert otherwise.

- The *Kanagawa* crash involved a combination of in-lane objects, specifically a stationary van, a motorcycle, and pedestrians, which is entirely different from the sideways, off-road Tahoe struck in this case. Moreover, as Plaintiffs acknowledge, the Kanagawa crash happened at a preset speed controlled by TACC. As noted, Mr. McGee, was overriding the preset speed by pressing the accelerator pedal.

These are dispositive distinctions that defeat Plaintiffs' claim of substantial similarity for each of these incidents. However, as shown below, there are many other important facts that distinguish these other incidents.

After discussing these three incidents, Plaintiffs turn to a discussion of 18 incidents

4

referenced in their complaint and 211 incidents referenced in a document NHTSA published in relation to the investigation preceding Tesla's recall,[2] which they suggest should be admitted because they do not intend to discuss them "in detail" (elsewhere they refer to the three incidents above as "the three primary collisions").  Their references to these incidents, however, fail to provide the specifically identified information the Court requested for each other incident so that it could determine whether an offered incident is substantially similar.  (*See* ECF. No 433 at p. 31).  This same high bar for admissibility of other incidents applies whether or not the proponent intends to discuss them "in detail."

Finally, Plaintiffs responded to the Court's request for a non-hearsay basis for admission of these other incidents, by stating purposes that relate to a hearsay analysis but that do not change the requirement for establishing substantial similarity, which remains the same no matter the purpose for which another incident is offered.  Thus, even if the Court agrees that their stated purposes change the hearsay analysis for admissibility, the other incidents must still be excluded due to Plaintiffs' failure to establish substantial similarity.

## ARGUMENT

**I.     The Stringent Standard for Admission of Evidence of Other Incidents**

The law is settled that the burden is on Plaintiffs to demonstrate that other incidents are substantially similar, not too remote in time, and that their probative value outweighs any potential prejudice before evidence other accidents will be admitted. *See Davis v. Little Giant Ladder Sys.*, Case No. 2:19-cv-780, 2022 WL 3924144 (M.D. Fla. Sept. 8, 2022) (excluding evidence of another incident because it did not occur under substantially similar conditions).

---

[2] As discussed below, this document should, therefore, also be excluded for the independent reason that the Court has already ruled that the recall will not be admitted in light of Tesla's acknowledgment that it is not contesting the feasibility of the recall remedies.  (*See* ECF No. 433 at p. 33 and ECF No. 444 at pp. 11-12).

This is an individualized analysis that must be done for each other incident, even if the offered piece of evidence purports to discuss a collection of other incidents. *Gardner v. Ford Motor Co.*, 166 F. Supp. 3d 1261, 1271 (M.D. Fla. 2015) (concluding plaintiffs failed to show that "complaints received by Ford's customer call center and posted to safecar.gov" and a "supplemental recall letter" were substantially similar to subject incident).

Florida courts have often addressed this requirement in the context of products liability actions and reinforced the stringent standard that must be met. *Hall-Edwards*, 971 So. 2d at 856-60, an automotive product liability case, is directly on point. There, the parents of a deceased teenager who was ejected from a Ford Explorer during a rollover accident sued Ford and sought to introduce evidence of other Ford Explorer accidents to show notice and knowledge of a defect. *Id*. at 856. The court allowed the plaintiffs to present testimony, through their expert, that the Explorer's design caused "hundreds of injuries and deaths" in other rollover accidents *without* requiring plaintiffs to establish substantial similarity between those accidents and the accident at issue. *Id*. at 856-58. Indeed, the plaintiffs' experts were allowed to testify about other crashes they had investigated or testified about, without providing any specific information or demonstrating substantial similarity. *Id*.

The Third District reversed a $60 million verdict and remanded for a new trial. *See id*. at 860. Specifically, the court held the trial court committed reversible error by admitting the prior-accident testimony because "at no time, did the plaintiff lay a sufficient foundation to establish substantial similarity between the evidence relating to other accidents and the accident at issue in this case." *Id*. at 859. The court further commented that "[n]o precautions or measures were taken to ensure that the other accidents were not too remote in time or that the conditions of the accidents were similar. For example, the trial judge never inquired into the general characteristics of the other accidents." *Id*. at 860. The court also rejected the plaintiff's attempt to

6

avoid the substantial similarity requirement by arguing its admission on the issue of punitive damages. *Id.* at 859. And finally, the Third District rejected the plaintiffs' attempt to circumvent the substantial similarity requirement by having their experts provide conclusory and generalized statements of substantial similarity. *Id* at 856-60.

In *Godfrey v. Precision Airmotive Corp.*, 46 So. 3d 1020 (Fla. 5th DCA 2010), an action to recover against the manufacturer of an airplane engine following a crash, the court found reversible error in allowing the plaintiffs to introduce evidence of more than 100 problem occurrences involving other aircraft engines purportedly to show that the manufacturer was on notice of the carburetor defect that allegedly caused its engine to fail. The appellate court reasoned that the fact that other accidents involved the same type of engine exhibiting the same condition was *not* sufficient to meet the similarity requirement because the condition could have been caused by a different defect than the one alleged in the present case. *Id*. at 1022-23.

As such, it concluded that the plaintiff's written submission and reliance on testimony from an expert who opined that the engine at issue was similar to the other engines was insufficient to show the other accidents met the required test for substantial similarity. *Id*. *See also Agrofollajes, S.A. v. E.I. Du Pont De Nemours & Co., Inc.*, 48 So. 3d 976, 991-93 (Fla. 3d DCA 2010), *disapproved on other grounds, Aubin v. Union Carbide Corp.*, 177 So. 3d 489 (Fla. 2015) (error as a matter of law to admit evidence of other claims absent proof of substantial similarity, noting that the fact that the other claims involved the same product was insufficient).

## II. Plaintiffs Failed To Establish The Substantial Similarity Of Any Of The Three Specifically Identified Incidents

As noted above, Plaintiffs' three offered incidents share certain facts that dispositively distinguish them from the crash in this case. Specifically, (a) none involved a driver that was pressing the accelerator, whereas Mr. McGee was doing so, which meant he—not TACC—was

controlling the vehicle's speed; (b) none involved driver's that had briefly looked away from the road to retrieve a dropped object, whereas Mr. McGee was searching for his dropped cell phone at the time of the crash; (c) none involved drivers with their hands on the wheel, whereas Mr. McGee's were; and (d) none involved collisions with sideways, off-road vehicles, which is to say each involved different circumstances that challenged the detection capabilities of the Tesla vehicles.

Each of these distinctions is independently dispositive. However, there are many more significant distinguishing characteristics summarized in the table below:

|  | **Benavides** | **Banner** | **Brown** | **Kanagawa** |
|---|---|---|---|---|
| **Model Year** | 2019 | 2018 | 2015 | 2016 |
| **Model** | Model S | Model 3 | Model S | Model X |
| **AP Hardware** | 2.5 | 2.5 | 1.0 (MobilEye camera system; completely different from Tesla's vision system in 2.5) | 2.5 |
| **AP Software** | Version 9 | Version 9 | Version 7 | Version 7 |
| **Date of Accident** | April 2019 | March 2019 | May 2016 | April 2018 |
| **Autopilot** | Enhanced AP | Enhanced AP | Base Autopilot | FSD-Capability |
| **Firmware** | 2018.48.12.1 | 2019.6 | 2016.16 | 17.44.34 |
| **Accident facts/ Type of collision** | Collision with stationary vehicle

Plaintiffs first sued driver and settled. | Collision into cross-traffic

Plaintiff sued truck driver | Collision into cross-traffic

No litigation | Collision into stationary vehicle

Litigation dismissed for forum non conveniens (the crash occurred in Japan) |
|  | SUV | Tractor-trailer | Tractor-trailer | Motorcycle |
|  | Off-highway | Highway | Highway | Highway |
|  | Collision off-road | Collision on-road | Collision on-road | Collision on-road |
|  | Stop sign-controlled T-intersection | No traffic controls | No traffic controls | No traffic controls |
|  | Dark outside | Dawn | Daytime | Dark outside |
|  | Driver pressing | Not pressing | Not pressing | Not pressing |

8

|  | | | | |
|---|---|---|---|---|
|  | accelerator | accelerator | accelerator | accelerator |
|  | Driver braked immediately before impact | No braking | No braking | No braking |
|  | Driver's hands detected on steering wheel | No hands | No hands | No hands |
|  | No lead vehicle | No lead vehicle | No lead vehicle | Lead vehicle changed lanes and revealed stopped traffic |
|  | Driver reached for dropped cell phone | Driver behavior unknown | Driver reportedly watching a movie | Driver asleep |
|  | Other vehicle parked legally | Tractor-trailer driver ran stop sign and failed to yield to Tesla right-of-way | Tractor-trailer driver failed to yield to Tesla right-of-way | Other vehicles involved in prior crash and exchanging information on highway lane |
| **TACC** | Overridden by driver McGee's depression of accelerator pedal | Activated; no accelerator application by driver | Activated; no accelerator application by driver | Activated; no accelerator application by driver |
| **Purported Defect in the ADAS system** | Litigation claim - failure to detect/control for stop sign and sideways, off-road car; ODD; AEB | Litigation claim - failure to detect cross-traffic; AEB. | There was no litigation. | Litigation claim – inadequate driver monitor |

Plaintiffs' claimed similarities are superficial and cannot overcome these many meaningful distinctions.

### III. Plaintiffs' Non-Specific "Collections" of Other Incidents Should be Excluded

After their discussion of the three specific other incidents, Plaintiffs offer arguments concerning purported admissibility of two "collections" of other incidents. The first is a reference to "211 frontal plane crashes where a vehicle on Autopilot struck an object or person in its path" that is contained in a NHTSA publication, titled "Additional Information Regarding EA22002" (hereinafter "Plaintiffs' Exh. 63"), that was issued after Tesla's voluntary recall in December 2023. (*See* ECF No. 441 at p. 7); Exh. A, Plaintiffs' Exh. 63. That document describes NHTSA's investigatory activity preceding the recall, and it mentions the recall at least

9

five times. Exh. A.³ The second is a list of 18 collisions that were identified in Plaintiffs' complaint and referenced in requests for admission Plaintiffs served on Tesla.⁴ (*See* ECF No. at p. 9).

After identifying these collections of other incidents, Plaintiffs offer a series of hearsay-related arguments concerning the purposes for which the other incidents are being offered, which they seem to contend changes the admissibility analysis. (ECF No. 441 at 7-10). But these arguments are misplaced because their burden of establishing substantial similarity is the same regardless of the purpose for which other incidents are offered. Plaintiffs then close their brief by stating three purported similarities between their offered collections of events and the subject crash, which they say proves they are "substantially similar for the purposes of which Plaintiffs intend to utilize the evidence." (ECF No. at 441 at p. 11).

---

³ As such, it should be excluded for the independent reason that it is subject to the Court's *in limine* ruling, which excluded the recall in light of Tesla's acknowledgment that it was not disputing the feasibility of the recall remedy. (*See* ECF No. 433 at p. 32 and ECF. No. 444 at pp. 11-12). However, it should also be noted that, in making that ruling, the Court explained that "to the extent that Plaintiffs are seeking to introduce evidence that Tesla was on notice of a defect and failed to make subsequent changes to prove punitive damages, such evidence is admissible so long as the evidence establishing notice *complies with the substantial similarity doctrine.*" (ECF No. 433 at p. 32 (emphasis added). Thus, even if the Court determines that its exclusion of the recall does not extend to this document (or to the entirety of this document), Plaintiffs must still establish substantial similarity of the governmental investigatory activity discussed in the document. *Id.* at p. 32-33.

⁴ Additionally, although no mention of it is made in their brief, Plaintiffs provided a demonstrative exhibit, in the form of a timeline that states "NHTSA collected 510 additional crash reports" and that "NHTSA's investigation concluded after analyzing 956 Autopilot-related crashes." (*See* Exh. B, Plaintiffs' Trial Demonstrative Exhibit P-106, at p. 1). These references to these large numbers of "Autopilot-related crashes" were not identified amongst the other incidents discussed in Plaintiffs' brief and, as such, they should be excluded for this reason alone because they have not been identified by Plaintiffs' in accordance with the Court's order. However, even if they had been listed in the brief, they would still have to be excluded because Plaintiffs offer no information about them that even attempts to establish substantial similarity. Therefore, that exhibit, and any reference to these other large numbers of unidentified incidents, should also be excluded for the reasons discussed herein regarding the "collections" of other incidents Plaintiffs discuss in their brief.

Tesla will first show these purported similarities do not satisfy the substantial similarity requirement and will then briefly respond to the other portions of Plaintiffs' arguments related to their stated purposes for offering the evidence.

A) **Plaintiffs Cannot Establish Substantial Similarity in Regard to their Offered "Collections of Other Incidents"**

Plaintiffs assert that "[t]he substantial similarity between each of these accidents is that in each one, Autopilot was engaged, Autopilot failed to avoid the accident, and the driver was inattentive and thus unable to react to the Autopilot's failure." (ECF No. 441 at p. 10). As with the three incidents above, these are all highly generalized, superficial similarities that do not address whether the version of Autopilot in each crash was the same as the one at issue here, whether the drivers of the other vehicles deactivated TACC by pressing the accelerator, whether the drivers had their hands on the wheels, whether the drivers had looked away from the road in search of a dropped object, whether the drivers were engaged in more extreme types of inattention such as sleeping or playing a video game, what the vehicles hit and where/how those were oriented on the road (which is relevant to understanding whether the same Autopilot-related detections were involved in those incidents).

In fact, each of Plaintiffs' stated similarities can be easily rephrased as question: What Autopilot features were engaged? Why did Autopilot "fail to avoid the accident?" In what way was the driver inattentive, simply a glance away from the road with hands on the wheel, totally disengaged with hands off the wheel, or something in between? The answers to these questions, which Plaintiffs do not even attempt to provide despite their burden to do so, are what the Court would need to consider to find substantial similarity. Plaintiffs cannot carry their burden and, therefore, their collections of other incidents should be excluded. *See Hall-Edwards*, 971 So. 2d

at 859 (failure to lay a sufficient predicate establishing substantial similarity of accidents renders the evidence irrelevant as a matter of law).

> B) **Plaintiffs' Stated Purposes for Offering the Other Incidents Do Not Reduce Their Burden**

Plaintiffs' first stated purpose for offering these collections is that they tend "to show that Tesla was on notice of problems with its autopilot system involving inattentive drivers and collisions with obstacles in the path of the vehicle." (ECF. No. 441 at p. 8). This stated purpose does not change the substantial similarity analysis, which makes sense because an incident that is not substantially similar would not put a defendant on notice of anything relevant to a given case.

Thus, for example, in *Agrofollajes*, 48 So. 3d 992, the court acknowledged the requirement of proving substantial similarity even for notice. *See also Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613, 622 (D.N.J. 1982) ("A detailed analysis would have to be made of each complaint . . . to determine whether the facts were similar enough to [plaintiff's] complaint to constitute notice to defendants . . . ."); *see also Gen. Motors Corp. v. Moseley*, 447 S.E.2d 302, 306 (Ga. Ct. App. 1994), *abrogated on other grounds*, *Webster v. Boyett*, 496 S.E.2d 459 (Ga. 1998), *overruled on other grounds, Williams v. Harvey*, 858 S.E.2d 479 (Ga. 2021) (evidence of other accidents is admissible on notice provided there is a showing of substantial similarity).

In *Nissan Motor Co. v. Armstrong*, 145 S.W. 3d 131 (Tex. 2004), the Texas Supreme Court flatly rejected the contention that other-incident evidence is admissible to demonstrate notice:

> Fourth and finally, the court of appeals indicated that the database was relevant to show "Nissan's knowledge of the dangerous condition in its vehicles." In other words, the hearsay was admissible not for the truth of the matters asserted, but to show Nissan's **knowledge** of the truth of the matters asserted. The hearsay rules cannot be avoided by this kind of circular reasoning.
>
> To sum up, product defects must be proved; they cannot simply be inferred from a large number of complaints. If the rule were otherwise, product claims would

>become a self-fulfilling prophecy—the more that are made, the more likely all must be true. Without proof that a hearsay exception applied or that any of the reported incidents were due to a defect similar to those alleged by Armstrong, the trial court erred in admitting the database of complaints.

145 S.W.3d at 141-42 (emphasis added; footnote omitted).

Moreover, citing the evidence for "notice" does not alleviate the inherent prejudice problems. *See Yellow Bayou Plantation, Inc. v. Shell Chem., Inc.*, 491 F.2d 1239, 1242-43 (5th Cir. 1974) (evidence of other lawsuits and complaints offered to show notice properly excluded given faint probative value and high potential for unfair prejudice).

The same is true for Plaintiffs' next stated purpose, which they say is to "show the effect this information had on Tesla." (ECF. No. 441 at p. 8). Plaintiffs cite one case on this point that has nothing to do with a substantial similarity analysis but, instead, is exclusively focused on a hearsay analysis. *See Eugene v. State*, 53 So.3d 1104 (Fla. 4th DCA 2011). Additionally, the "effect" Plaintiffs argue this information had on Tesla was "that, in response to information about the accidents, Tesla did not fully cooperate with the investigations,[5] and did not readily take steps to address the issues highlighted by these accidents," serves to highlight *why* the substantial similarity requirement extends to all contexts: a juror could only reasonably and fairly draw the conclusions Plaintiffs identify if the underlying other incidents are indeed substantially similar. Jurors would be misled into potentially drawing such conclusions on the basis of dissimilar incidents.

Plaintiffs next argue that the 18 other incidents identified in their Complaint should be admitted because Tesla's responses to requests for admission responses admitted that it was

---

[5] Note that the only governmental document Plaintiffs offer is the one described above that NHTSA published in response to Tesla's recall. (*See* ECF. No. 441 at p. 7 and Exh. A). It does not contain any statement or suggestion that would tend to prove Plaintiffs' quoted arguments. Thus, it should be excluded on the independent grounds that it is irrelevant to Plaintiffs' stated purpose.

13

aware that those events "'occurred when an 'inattentive driver was driving with Autosteer engaged.'" (ECF. No. 441 at p. 9). Tesla's acknowledgement that these 18 accidents involved a Autosteer was activated and while those drivers were "distracted" to some undefined amount and in some undefined way cannot establish substantial similarity. As explained above, the reason and for and type of inattentiveness – whether, for example, due to intoxication, sleeping, or some form of vehicle misuse – is highly relevant for assessing substantial similarity to this case's facts. Indeed, the 18 other incidents that Plaintiffs reference include driver inattentiveness for those reasons (i.e., intoxication, sleeping, or misuse)—but none of these conditions or reasons for inattentiveness were present in *this* crash.

Likewise, an acknowledgement that Autosteer was engaged was not meaningful for establishing substantial similarity. Was the driver overriding TACC? Were the driver's hands on the wheel? What did the Tesla strike and how does that compare to the detections at issue in this case? *See Hall-Edwards*, 971 So. 2d at 859 (failure to lay a sufficient predicate establishing substantial similarity of accidents renders the evidence irrelevant as a matter of law).

Finally, Plaintiffs argue that the offered NHTSA document satisfies the public records hearsay exception. Once again, however, this point ignores that Plaintiffs still have the burden of establishing substantial similarity of the 211 incidents referenced in the document, even if it were assumed that they could overcome the hearsay hurdle.

But it should not be assumed that Plaintiffs can overcome the hearsay hurdle because the public records hearsay exception does not necessarily render the contents of NHTSA reports or the details of NHTSA investigations admissible. Rule 803(8) "does not provide for the admissibility of the legal conclusions contained within an otherwise admissible public report." *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302 (11th Cir. 1989). Additionally, any statement contained in a report made by a non-party witness or bystander is inadmissible as

14

hearsay within hearsay. *Jenkins v. Corizon Health Inc.*, 584 F. Supp. 3d 1364, 1369 (S.D. Ga. 2022) (internal quotations omitted) (excluding statements from officer who made report as hearsay not falling within the public records exception).

The report at issue here references and refers to significant numbers of underlying hearsay information provided by other auto manufacturers. (*See e.g.* Exh. A at pp. 1, 5-6). Thus, before deciding the hearsay issue, Plaintiffs should be required to identify which portions of the report it seeks to offer so that the Court can consider whether it contains inadmissible legal conclusions or underlying hearsay. However, this need not be undertaken because, regardless of its outcome, Plaintiffs' failure to establish substantial similarity requires exclusion of the report.

## CONCLUSION

Fundamentally, the legal question, and its answer, is the same for each of the other incidents Plaintiffs' has offered: have they carried their burden of establishing substantial similarity? As Tesla has shown herein, in each instance the answer is "No." Plaintiffs clearly hope to tell the jury there have been other crashes "involving" Autopilot, while highlighting certain superficial, irrelevant facts "in detail" in order to suggest there have been many others so that the jury will conclude there must have been a defect that caused this crash. The substantial similarity requirement, however, is intended to avoid precisely this sort of effort to leap from irrelevant evidence about dissimilar incidents to a finding of liability.

But the other incidents they offer are dissimilar. This crash was the tragic result of Mr. McGee's decision to take his eyes of the road to search for his dropped cell phone, all while he was pressing the accelerator and keeping his hands on the wheel. Autopilot had nothing do with it. For these reasons, and the others discussed herein, the Court should exclude these inadmissible, and highly prejudicial, other incidents.

| | |
|---|---|
| Date: July 9, 2025 | Respectfully submitted,<br><br>/s/ *Whitney V. Cruz*<br>**WHITNEY V. CRUZ**<br>Florida Bar No. 800821<br>**WENDY F. LUMISH**<br>Florida Bar No. 334332<br>**Bowman and Brooke LLP**<br>Two Alhambra Plaza, Suite 800<br>Coral Gables, FL 33134<br>Tel. 305-995-5600 / Fax: 305-995-6100<br>whitney.cruz@bowmanandbrooke.com<br>wendy.lumish@bowmanandbrooke.com<br><br>**THOMAS P. BRANIGAN**<br>*(Admitted Pro Hac Vice)*<br>**DREW P. BRANIGAN**<br>*(Admitted Pro Hac Vice)*<br>**BOWMAN AND BROOKE LLP**<br>101 W. Big Beaver Road, Suite 1100<br>Troy, MI 48084<br>Tel. 248-205-3300 / Fax: 248-205-3399<br>thomas.branigan@bowmanandbrooke.com<br>drew.branigan@bowmanandbrooke.com<br><br>**JOEL SMITH**<br>*(Admitted Pro Hac Vice)*<br>**BOWMAN AND BROOKE LLP**<br>1441 Main Street, Suite 1200<br>Columbia, SC 2920<br>Tel. 803-726-7420 / Fax: 803.726.7421<br>Joel.Smith@bowmanandbrooke.com<br><br>**HILARIE BASS**<br>Florida Bar No. 334243<br>**HILARIE BASS, ESQUIRE LLC**<br>2821 Bayshore Drive, UPH-B<br>Miami, FL 33133<br>Tel. 305-505-8777<br>bassh@bassinstitute.org<br><br>*Attorneys for Defendant Tesla, Inc.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
adam@roussolawfirm.com
haiyang@roussolawfirm.com
pleadings@roussolawfirm.com

*Attorneys for Plaintiff Dillon Angulo*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel.  305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHRIEBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

                                                s/ *Whitney V. Cruz*
                                                 Whitney V. Cruz