UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,                                   Case No. 22-22607-KMM

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

**DEFENDANT'S SUPPLEMENTAL OBJECTIONS
TO SPECIFIC MUSK STATEMENTS**

Defendant, Tesla, Inc. ("Tesla"), through its undersigned counsel, hereby objects to specific excerpts of audio and video recordings of Elon Musk, that Plaintiffs intend to produce at trial. In support, Tesla states as follows:

**I.    INTRODUCTION**

The Court previously ruled that the Musk statements could be "relevant to both Plaintiffs' Design Defect and Failure to Warn Claims because the statements will help the jury understand whether an ordinary consumer would have reasonably expected the Vehicle's Autopilot to warn of or avoid the subject collision," but that Tesla could challenge the

introduction of any statements that are clearly "forward-looking or aspirational or only appl[y] to fully self-driving vehicles[.]" (ECF No. 433, at 34).

On July 7, 2025, Plaintiffs produced to Tesla (for the first time) copies of the specific excerpts of audio and video recordings of Mr. Musk that they seek to use as trial exhibits. Upon review, the disclosure revealed these excerpts are so patently out of context and misleading as to distort the truth of what was said. Plaintiffs ignore or intentionally omit language, ***sometimes immediately following the selected quote***, that contradicts the plaintiffs' implied meaning or show unquestionably that the selected statements are, in fact, "forward-looking or aspirational or only appl[y] to fully self-driving vehicles." Because the parties are unable to resolve the issues around these statements, Tesla objects to these excerpts under Federal Rules of Evidence 403 and 106.

These excerpts must be excluded as they are misleading because they are unduly prejudicial to Tesla in violation of Rule 403. Alternatively, should the Court not exclude the excerpts in their entirety, Rule 106 requires the jury be provided additional context for these statements, as proposed by Tesla herein.

II.   ARGUMENT

    A.   **FRE 403 Requires The Exclusion Of The Challenged Excerpts**

While Tesla does not concede that the proposed excerpts are relevant for any purpose in this case, Rule 403 excludes even relevant evidence if its probative value is substantially outweighed by the dangers of, among other things, unfair prejudice, confusion and misleading the jury. Fed. R. Evid. 403.

For ease of review, Tesla has attached as Exhibits A to D, the excerpts at issue in this motion. In the attached excerpts, **the yellow highlighted portions** represent the excerpts Plaintiffs intend to present at trial and Tesla has added the **red highlighted portions** to demonstrate that

Plaintiffs' proposed excerpts are unfairly prejudicial and misleading and must be excluded.

### 1. Statements from October 14, 2015 Tesla Press Conference Regarding Autopilot V7.0 Release

Plaintiffs seek to offer a quote from Mr. Musk as follows:

> That's then combined with a forward facing camera with image recognition. The forward facing camera is able to determine where the lanes are, where cars are ahead of it and it's also able to read signs. It's been able to read speed signs for a while for example. But it's able to read pretty much any sign. And then that's, that's combined with the forward radar. The radar is very good at detecting fast moving large objects. And it can actually see through, through fog, rain, snow and dust. So the forward radar gives the our superhuman sensors. It can see through things that a person cannot.

(*See* Exh. A at 4:15 – 5:4 (highlighted in yellow in exhibit represent Plaintiffs' excerpt). That is, Plaintiffs want to use this excerpt to imply that Mr. McGee could reasonably expect his vehicle to stop at a stop sign.

However, Plaintiffs fail to include the following statements from Mr. Musk in the same interview, which provide critical context for the quote language offered by Plaintiffs:

> *So this version of Autopilot, for example, does not take into account stop signs and red lights. But a future software update will. One example is (indiscernible) and we'll get more and more refined over time.*

(Exh. A at 3:15-19) (highlighted in red in the exhibit, representing the context) (emphasis added).

Plaintiffs cannot seriously claim that the proffered language about reading signs sets a consumer expectation that Autopilot would stop at a stop sign when the statement just a few lines *earlier* said that it would not, but that it would be able to in the future. Further, allowing Plaintiffs to offer their yellow highlighted excerpt divorced from the green highlighted context is unfairly prejudicial and cannot be cured by simply letting Tesla "explain it in their case." The statement has nothing to do with the vehicle, crash or technology at issue and, per the Court's Order, is not proper evidence in this trial.

Nevertheless, the interview continues:

3

> MR. KEN: [H]ow does it handle pedestrians at the moment (indiscernible)
>
> MR. MUSK: Sure. So it's a -- it, it -- I mean it should not -- it should not pedestrians, hopefully. So it does sense pedestrians. It can see pedestrians, it can see cyclists. So it should -- it should avoid them or it should actually break before hitting them or it should handle them well, hopefully. I would exercise caution at this early stage. The pedestrian can't exercise fortunately because it better be done their way to the (indiscernible) are you talking about the car today or the car in the future? There's a difference between the car today and the car in the future. Big differences. Those meetings these days. Yeah, that's why we, you know, in the beginning we really recommend that in, in fact we – **instructions to say you need to pay attention to what's on the road and you need to be ready to take the wheel at any time. So it's certainly -- I certainly wouldn't want to say that today, 'Don't worry about it.' And I -- in the long term it will be safer than a person driving for all – for all, you know, pedestrians as well as for people in the car and other cars.**

(Exh A, at 35:15 – 36:20 (emphasis added)).

Again, the statement is all about future development of features, and is not relevant to setting then current expectations of consumers.

## 2.     Statements from June 1, 2016 Tesla Code Conference

Plaintiffs seek to offer the following excerpts of Mr. Musk's statements:

(1) "Well, I mean, I think, I mean I really would consider autonomous driving to be basically a solved problem." (Exh. B at 2:14-16),

(2) "And, like, a Model S and Model X, at this point, can drive autonomously[.]" (*Id.* at 3:11-12), and

(3) "I think we're basically less than two years away from complete autonomy….Wait. Safer than a human." (*Id.* at 4:1-5).

Not only are these statements obviously the forward-looking, aspirational statements that the Court intended to exclude ("...*two years away from…*"), the context demonstrates just how misleading the excerpts are. Indeed, as shown in Exhibit B, these statements were made in direct response to a question about "*how far do you think from a timeframe perspective we are from*" **having "fully autonomous vehicles** *which have passed through regulatory approvals[.]*" (Exh. B

4

at 2:1-13). This is a discussion of Level 5 vehicles and continuing with red highlights showing context. The statement nowhere mentions Autopilot. His statement about Model S and Model X is about the vehicle's ability to "maintain a safe distance from various cars as he is discussing full autonomy of Level 5 technology." Mr. Musk also responded that it would take regulators "*at least another year…depend[ing] on…what part of the world you're in*" because the regulators would "*want to see billions of miles of data to show that it is statistically true that there is a substantial improvement in safety if something's autonomous versus not autonomous.*" (*Id.*) (emphasis added).

### 3. Statements from September 11, 2016 Tesla Press Conference

Plaintiffs intend to offer two full pages of transcript testimony from a September 11, 2016 press conference. The excerpt can be read in its entirety at Exhibit C, pages 2-4. In summary, however, these statements discuss the capabilities of the vehicles to detect large objects and operate an emergency breaking mode. (*Id.*). However, the context demonstrates that these are aspirational statements, as Mr. Musk further states: "*It's a lot of software and quite a complicated job to, to fit that software onto the available computer hardware on the vehicle. Really very challenging software problem, but one that we are **confident that we can – we can solve**[.]*" (Exh. C, at 4:23 – 5:17) (emphasis added). Musk further says: "*Now I want to emphasize **this doesn't mean perfect safety…perfect safety is, is, is really an impossible goal. [I]t's really about improving the probability of safety. That's the only thing that's really ever possible….[T]here won't ever be zero fatalities, there won't ever be zero injuries…So it's really just about minimizing the possibility of injury, minimizing the possibility of death[.]***" (*Id.* at 8:7 – 9:5) (emphasis added).

This is a clear example of Musk identifying correctly the limitations of the system and the efforts to make cars safer in the future. Trying to suggest by cherry picking excerpts that consumers would have expectations greater than the capabilities of the system is misleading.

5

### 4. Statements from October 19, 2016 Tesla Autopilot 2.0 Announcement

Plaintiffs seek to offer a quote from Mr. Musk as follows: "The, the basic news is that all Tesla vehicles exiting the factory have hardware necessary for Level 5 autonomy." (Exh. D at 2:1-3). Yet this is but one sentence of a lengthy statement which, when read in its entirety, provides:

> The, the basic news is that all Tesla vehicles exiting the factory have hardware necessary for Level 5 autonomy. *So that's in terms of the, the, the cameras and compute power. It's every car we make, so on, on the order of 2,000 cars a week are shipping now with Level 5, meaning hardware capable of a full self-driving or driverless capability.* **So it'll take us some time, you know, into the future to, to complete validation of the software and, and, and obviously get the required regulatory approval.** *But the important thing is that* **the foundation is laid** *for the cars to be fully autonomous at a safety level* **we believe to be at least twice that of a person, maybe better.**

(*Id.* at 2:1-16) (emphasis added).

Again, how misleading. The omission of the italicized section reveals just how manipulative Plaintiffs are with their cherry-picked excerpts. First this is not a representation that could lead a consumer to believe that Autopilot would warn or avoid the collision. It talks about equipment on the vehicle that will be used for future system capabilities. The context demonstrates, the actual statement clarifies that "it'll take us some time…into the future" for full autonomy. Mr. Musk further clarified that "the new hardware is, is what will *enable* self-driving, which is different from autopilot" and that the term "autopilot" is "a term that's been in use for more than half a century as…a flying *assistant* in aircraft for pilots." (*Id.* at 7:10-25).

Plaintiffs further seek to introduce another Musk quote from this transcript where he states that Hardware 2 will be capable of Level 5 autonomy, not Hardware 1. (*Id.* at 24:22 – 25:18). This is a discussion which is clearly around the fact that Hardware 1 "will continue to improve." (*Id.*)

As a reading of these statements in context reveals Plaintiffs elaborate misinformation campaign is nothing more that selective quotes that are out of context, misleading and in some cases totally contradicted by the speaker in the same transcript. These are not relevant to any reasonable expectation of an ordinary consumer that the system might warn or avoid this crash.

Plaintiffs' proposal in response to Tesla's objection is the rule of completeness. They claim that they will read the portions we believe should be read with the misleading cherry-picked statements they quote. This disrespects the role of the jury. The jury's role is to decide the case based on the evidence, not to spend their deliberations unwinding a farcical patchwork of misinformation.  As can now be plainly seen, none of these statements are relevant to the expectations of consumers about the capabilities of the then current products, all are forward looking. This Court should not allow the admission of these misleading excerpts into evidence.

### B. To The Extent Any Of These Excerpts Are Admitted, FRE 106 Requires They Be Presented With The Additional Context Proposed

Although inadequate to cure the impact of Plaintiffs' attempt at distortion, to the extent any of these statements are allowed, Tesla requests under Federal Rule of Evidence 106 for those excerpts to be played in the critical context required.

Known as the "rule of completeness," Rule 106 provides: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part — or any other statement — that in fairness ought to be considered at the same time." Fed. R. Evid. 106.  Rooted in common law, the rule was designed to prevent the prejudice that results when distorted, incomplete statements are presented as evidence. *See, e.g., Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 171-72, 109 S. Ct. 439, 451, 102 L. Ed. 2d 445 (1988).

For purposes of the statements at issue here, context is everything.  Therefore, Tesla proposes that – to the extent Plaintiffs are allowed to present these excerpts at all – they be

presented alongside the carefully curated context that Tesla proposes. For ease of the Court's review, Tesla proposes the portions highlighted in blue on the attached Exhibits A-D as the necessary context that must be presented alongside Plaintiffs' proposed excerpts in order to, at a minimum, reduce the prejudice that would result from the Plaintiffs' incomplete excerpts.

In addition, Tesla requests that none of these specific statements be read to, paraphrased or shown to the jury in opening or until the Court has had ample opportunity to evaluate the duplicity within the selected excerpts.

Respectfully submitted,

/s/ *Whitney V. Cruz*
**WHITNEY V. CRUZ**
Florida Bar No. 800821
**WENDY F. LUMISH**
Florida Bar No. 334332
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com
wendy.lumish@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**JOEL SMITH**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel. 803-726-7420 / Fax: 803-726-7421
joel.smith@bowmanandbrooke.com

**HILARIE BASS**
Florida Bar No. 334243
**HILARIE BASS, ESQUIRE LLC**
2821 Bayshore Drive, UPH-B Miami, FL 33133
Tel. 305-505-8777
bassh@bassinstitute.org

*Attorneys for Defendant TESLA, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2025, the foregoing was filed using the Court's CM/ECF system, which will send electronic notice of the same to all interested parties.

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
adam@roussolawfirm.com
haiyang@roussolawfirm.com
pleadings@roussolawfirm.com

*Attorneys for Plaintiff Dillon Angulo*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHRIEBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel. 305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

/s/ *Whitney V. Cruz*
**Whitney V. Cruz**