UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, *as Personal Representative of the Estate of Naibel Benavides Leon, deceased*, and
DILLON ANGULO

    Plaintiffs,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

    Defendant.

_____/

## ORDER ON ADMISSIBILITY OF OTHER ACCIDENTS

**THIS CAUSE** is before the Court upon Plaintiffs Neima Benavides, as personal representative of the Estate of Naibel Benavides Leon, and Dillon Angulo's ("Plaintiffs") Response to the Court's Order, ECF No. [433], Requiring Additional Information with Respect to Prior Accidents. ECF No. [441]. The Court permitted Tesla to file a Supplement Regarding the Admissibility of Other Accidents. ECF No. [452]. The Court has reviewed the supplemental filings and is otherwise fully advised. For the reasons that follow, Plaintiffs may only introduce evidence of the following other accidents: (1) the "Brown Crash," (2) the "Kanagawa Japan Crash," and (3) the "Banner Crash." The Court finds Plaintiffs have not established that any other accidents are substantially similar to the subject collision in this case.

### I.   BACKGROUND

This matter arises from a collision that occurred in Key Largo, Florida. George McGee owned a 2019 Tesla Model S ("Vehicle") "equipped with automatic driving features, one of which Tesla termed 'Autopilot,' that could navigate without driver input." ECF No. [205] at 3. On April

25, 2019, McGee was driving the Vehicle when it hit a parked Chevrolet Tahoe, which then struck Decedent Naibel Benavides Leon and Plaintiff Dillon Angulo, killing Benavides Leon and causing significant injuries to Angulo. *See id.* at 3-4.

On April 22, 2021, Plaintiff Neima Benavides, as Personal Representative, brought this action against Tesla on behalf of the Estate of Decedent Naibel Benavides Leon in the Circuit Court for Miami-Dade County, Florida, alleging automotive product liability claims against Tesla. ECF No. [1-1]. Tesla removed the action to this Court on May 25, 2021. ECF No. [1]. On August 16, 2022, Plaintiff Dillon Angulo initiated a similar automotive products liability action against Tesla in this district, Case No. 22-cv-22607-KMM. *See* 22-cv-22607, ECF No. [1]. The Court accepted the transfer of this case and consolidated both actions due to the overlapping issues presented. ECF No. [50].

Plaintiffs filed a consolidated Amended Complaint on March 11, 2024, asserting the following claims against Tesla: Strict-Products-Liability—Defective Design (Count I), Failure to Warn (Count II), Defective Manufacture (Count III), and Negligent Misrepresentation (Count IV). *See* ECF No. [205] at 6, ¶¶ 39-46.

On June 25, 2025, the Court granted summary judgment in favor of Tesla as to Count III (Defective Manufacture) and Count IV (Negligent Misrepresentation) while allowing Count I (Defective Design) and Count II (Failure to Warn) to proceed to trial. ECF No. [428]. The Parties are scheduled to begin trial on July 14, 2025. ECF No. [354]. In anticipation of the upcoming trial, the Parties submitted Motions *in Limine*. *See* ECF No. [329]; ECF No. [320]. The Court issued an Omnibus Order on the Parties' Motions *in Limine*. ECF No. [433]. In the Omnibus Order, the Court attempted to address whether Plaintiffs would be permitted to introduce evidence of other car accidents at trial. However, the Court lacked sufficient information to determine whether the

car accidents were substantially similar to the subject collision in this case. Accordingly, the Court ordered Plaintiffs to "provide the Court with all the relevant facts regarding the accidents they seek to introduce at trial." *Id.* at 31. Specifically, the Court directed Plaintiffs to provide the following information for each purportedly similar incident, "(1) the year and model of the vehicle; (2) the date of the incident; (3) any distinguishing features between the Autopilot in McGee's Vehicle and the allegedly similar vehicle; (4) whether Autopilot technology was activated; (5) the type of collision (e.g., in-lane rear-end collision); (6) the purported defect in the ADAS technology; (7) a non-hearsay basis for the admission of the accident; and (8) any other facts or circumstances to assist the Court in determining whether those accidents are substantially similar." *Id.* Plaintiffs filed the requested information on July 7, 2025. ECF No. [441].

Plaintiffs' supplemental brief included specific details regarding three prior accidents and a general overview of accidents contained in the National Highway Traffic Safety Administration ("NHTSA") Reports and Tesla's answer to requests for admissions. Tesla responded to Plaintiffs' supplement,[1] wherein it argued that none of the accidents were substantially similar to the subject collision and must be excluded. *See* ECF No. [452].

## II. LEGAL STANDARD

### A. Motions *in Limine*

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id*. "Unless evidence

---

[1] At the Calendar Call held on July 8, 2025, the Court provided Tesla an opportunity to file a response to Plaintiffs' supplemental briefing regarding the substantial similarity of the other accidents Plaintiffs seek to introduce at trial.

meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig.*, Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). Likewise, "[i]n light of the preliminary or preemptive nature of motions *in limine*, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.'" *Holder v. Anderson*, No. 3:16-CV-1307-J-39JBT, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (quoting *Miller ex rel. Miller v. Ford Motor Co.*, No. 2:01CV545FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004)); *see In re Seroquel.*, 2009 WL 260989, at *1 ("The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*.") (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989)).

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed. R. Evid. 401, 402; Advisory Comm. Notes, Fed. R. Evid. 401 ("The standard of probability under the rule is 'more probable than it would be without the evidence.'"); *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013). A district court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Patrick*, 513 F. App'x at 886 (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011)); *see United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010). Rule 403's "major function . . . is limited to excluding matter of scant or cumulative

4

probative force, dragged in by the heels for the sake of its prejudicial effect[.]" *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001) (quoting *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir. 1991)).

## III. DISCUSSION

### A. References to Other Incidents

#### i. Substantial Similarity of the Brown, Kanagawa Japan, and Banner Crashes

In its Motion *in Limine*, Tesla sought to exclude evidence of all accidents involving Tesla vehicles beyond the subject collision. ECF No. [320] at 6. Tesla argued that such evidence is irrelevant as it does not tend to prove a defect in the design at issue. Moreover, Tesla maintained the evidence was not substantially similar "[g]iven the number of variables involved in any one incident." *Id.* at 8. Plaintiffs argued in response that these other crashes are substantially similar and are highly relevant to the issue of whether Tesla was on notice of the alleged defects. ECF No. [348] at 1-4. Plaintiffs also asserted they intended to introduce NHTSA reports that "are admissible subject to the public records exception." *Id.* at 5.

In their supplemental response, Plaintiffs assert that they seek to introduce three primary accidents at trial—(1) the "Brown Crash," (2) the "Kanagawa Japan Crash," and (3) the "Banner Crash." *See* ECF No. [441] at 2-3. Plaintiffs argue that all three crashes "highlighted Autopilot's failure at object detection, emergency intervention, poor driver supervision and overly permissive operating capabilities." *Id.* at 1.

Turning first to the Brown Crash, Plaintiffs argue that the crash is substantially similar to the subject collision because the 2016 accident involved a 2015 Model S Tesla with Autopilot activated. The Tesla vehicle ultimately crashed, in part, because of the "driver's inattention due to his over-reliance on vehicle automation." *Id.* at 2. Plaintiffs claim the alleged defect is substantially

5

similar because the driver's over-reliance on the vehicle's automation was a result of Autopilot's "operational design, which permitted his prolonged disengagement from the driving task and his use of automation in ways inconsistent with guidance and warnings from the manufacturer." *Id.* According to Plaintiffs' "Mr. McGee was just another Josh Brown, in a slightly different model, in a slightly different location, operating under slightly different software and hardware, but suffering from the same overreliance on Autopilot and misusing it in the same fashion." *Id.*

Plaintiffs next describe the Kanagawa Japan Crash. In that crash, "[t]he [2016] Tesla Model X was tailing a slower vehicle. When that vehicle signaled and moved to the left to bypass a road obstruction, the Tesla promptly accelerated to its previously set cruising speed." *Id.* at 3. Plaintiffs maintain that the Kanagawa Japan Crash is substantially similar to the subject collision because, similar to the subject collision, Tesla's sensors failed to detect a stationary vehicle, motorcycle, as well as pedestrians. *See id.*

Finally, Plaintiffs describe the Banner Crash that occurred just a few months prior to the subject collision. Banner was driving a 2018 Tesla Model 3 and had engaged Autopilot approximately ten seconds before impact. "Banner removed his hands and never reengaged the wheel before his Tesla struck a semi-truck crossing a highway from a private drive, underriding the trailer and shearing off the roof at 68 miles per hour." *Id.* at 3. According to Plaintiffs, similar to the subject collision, there was no evidence of evasive braking or steering by the Autopilot system or by the driver. Plaintiffs insist that this incident highlights the defect in "Tesla's torque-based driver monitoring system which allowed for a prolonged, hands-off state without escalation[.]" *Id.* It also further demonstrates "Autopilot's failure to detect a truck directly in its path of travel and its overly permissive operating capabilities allowing the system to operate on [a] divided highway [ ] with significant cross traffic and private driveways." *Id.*

6

Case No. 21-cv-21940-BLOOM/Torres

Plaintiffs claim the commonality between all three crashes and the subject collision is that, similar to the subject collision, Tesla's Autopilot driver-monitoring system led the driver to either over rely on the system, or otherwise become distracted. The three other accidents also show substantially similar limitations in Tesla vehicles' ability to detect obstacles, engage the emergency brakes, and take evasive measures to avoid potential collisions. Furthermore, Plaintiffs contend these incidents demonstrate a similar design flaw in allowing drivers to utilize Autopilot outside of their operational driving domain.

Tesla responds that none of these three crashes is substantially similar to the subject collision for four key reasons. ECF No. [452] at 7-8. First, unlike the subject collision, none of the three crashes involved a driver who was pressing the accelerator, and therefore, the automatic braking system had not been disabled in the vehicles in those other accidents. *See id.* at 7. Second, none of the other accidents involved a driver who briefly looked away from the road to retrieve a dropped object. *See id.* at 8 Third, unlike McGee, none of the Tesla drivers in the other accidents had their hands on the wheel at the time of the incident. *Id.* Fourth, none of the vehicles crashed into a horizontally oriented vehicle on the side of the road.[2] *See id.* Given those differences from the subject collision, Tesla argues that the purported similarities are merely superficial and, therefore, Plaintiffs cannot satisfy the substantial similarity requirements for any of the three accidents.

It is well settled that "[e]evidence of other accidents may be relevant [and admissible] to show . . . the existence of a design defect." *Gardner v. Ford Motor Co.*, 166 F. Supp. 3d 1261, 1269-70 (M.D. Fla. 2015) (quoting *Miller ex rel. Miller v. Ford Motor Co.*, No. 2:01–cv–545,

---

[2] Tesla also noted a number of other distinctions between the other accidents and the subject collision such as: (1) different year and models, (2) different version of the Autopilot Hardware and Software, (3) different versions of the Autopilot itself, (4) different firmware, and (6) different environmental factors and traffic conditions. *See* ECF No. [452] at 8-9.

7

2004 WL 4054843, at *3–4 (M.D. Fla. July 22, 2004)). Specifically, "evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care, and causation." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661 (11th Cir. 1988). "However, '[b]ecause there is a strong potential for prejudice resulting from the admission of evidence of other accidents,' the Eleventh Circuit imposes special conditions on the admissibility of such evidence." *Jones*, 861 F.2d at 661 (quoting *Ford Motor Co.*, 2004 WL 4054843, at *3–4; *see Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997) (same). "[P]rior similar incidents illustrating a potential design defect are admissible [only] if (1) the proponent makes a showing that the prior accidents are substantially similar, (2) the prior accidents are not too remote in time, and (3) the probative value of the evidence outweighs any potential prejudice or confusion." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1350 (11th Cir. 2020) (citing *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015); *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985)). The burden of satisfying all three requirements is on the party seeking admission of the allegedly similar accidents. *See Gardner*, 166 F. Supp. 3d at 1271; *see also Nakajima v. Gen. Motors Corp.*, 857 F. Supp. 100, 102 (D.D.C. 1994) ("The burden is on the party seeking admission to prove that substantially similar circumstances exist."). However, determinations of substantial similarity are ultimately subject to the court's sound discretion. *See Heath*, 126 F.3d at 1395-96.

"The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015). Consequently, "the central question is [whether] 'the two incidents were similar enough to allow the jury to draw a

reasonable inference' defendant has the 'ability to foresee this type of' incident." *Davis v. Little Giant Ladder Sys., LLC*, No. 2:19-CV-780-SPC-NPM, 2022 WL 3924144, at *2 (M.D. Fla. Aug. 31, 2022) (quoting *Borden, Inc.*, 772 F.2d at 755). When determining the degree of similarity required, courts must consider "the purpose for which the evidence is offered[.]" *Nakajima*, 857 F. Supp. at 102.

Despite the differences identified by Tesla, the Court finds that the Brown Crash, the Kanagawa Japan Crash, and the Banner Crash are all substantially similar enough to the subject collision to be admissible. First, none of the accidents is too remote in time to be excluded. Each of the accidents occurred within three years of the subject collision. The Court also finds the remaining dissimilarities between other accidents and the subject collision go to the weight of the evidence, not the admissibility.

Tesla points out that, unlike McGee, none of the drivers briefly looked away from the road and reached for an object on the floorboard. However, the substantial similarity doctrine does not require identical circumstances, but rather only relevantly substantially similar circumstances. In all three accidents, the Tesla drivers were distracted, notwithstanding Tesla's driver monitoring system. One driver was watching a movie, one was asleep at the wheel, and the third was distracted for some indeterminate reason. The fact that all three drivers were distracted tends to show that Tesla was on notice prior to McGee's accident that its monitoring and warning system did not ensure drivers were staying sufficiently engaged when utilizing their vehicle's Autopilot system. *See Sorrels*, 796 F.3d at 1287-88 (explaining that dissimilarities are insubstantial for the purpose of notice where the similarities still make it reasonably foreseeable that the type of injury would occur) (citing *Borden*, 772 F.2d at 755). Accordingly, the fact that the accidents all involve distracted drivers is sufficiently similar to avoid exclusion.

Tesla also argues that the accidents are substantially different from the subject collision because none of the three accidents involved undetected traffic control signage, nor did the Tesla drivers strike a horizontally oriented vehicle off the side of the road. Again, those differences go to the weight of the evidence. Tesla has not shown that the orientation of the target vehicle would have made it more or less likely that its vehicles would identify a target vehicle as a dangerous obstacle.[3] Moreover, the presence of traffic control signage suggests that there was an even greater reason for Autopilot to have warned McGee or otherwise avoided the collision. Therefore, the absence of any traffic signage in the three other accidents is not a difference that would unfairly prejudice Tesla.

Tesla's final two distinctions—McGee's foot on the accelerator and hands on the wheel—do not warrant exclusion of the alleged similar accidents either.[4] While it may be true that McGee's foot on the accelerator might have overridden "the TACC (i.e., [the] longitudinal speed control) function, essentially turning that feature off," the complete disablement of the TACC function is a material fact in dispute, and thus, the materiality of the difference turns on the jury's findings of fact at trial. ECF No. [452] at 3. As such, the difference cannot serve as a basis for excluding the evidence.

Moreover, even assuming McGee's utilization of the accelerator in the moments before the subject collision completely disabled the TACC function, according to Tesla, the disablement only

---

[3] Similarly, the fact that the McGee was driving off the roadway toward a large object seems to suggest that it is more likely that Autopilot would detect an anomaly compared with a vertically oriented vehicle Autopilot would reasonably expect to be in front of it on the roadway.

[4] As for the remaining "significant distinguishing characteristics" identified by Tesla in the table on page 8 of its supplemental briefing, the Court does not find those differences to be substantial. See ECF No. [452] at 8-9. Tesla fails to offer a reason why those differences materially distinguish the other accidents from the subject collision, specifically with respect to the purpose the evidence of the other accidents is being offered. As such, the Court does not find that those differences warrant exclusion of the Brown, Kanagawa Japan, or Banner accidents.

impacted the automatic emergency braking system. *See* ECF No. [452] at 3. However, Plaintiffs contend that there were several other defects in Autopilot's design besides its failure to trigger the automatic emergency brakes. Plaintiffs also argue that Autopilot was defective because: (1) it made McGee more distracted than he otherwise would have been, (2) it could be used outside of its Operational Design Domain, and (3) the system failed to adequately warn McGee of the dangerous obstacles in his path. *See* ECF No. [428]. As the Court previously explained, when deciding whether an accident is substantially similar, the Court must consider the purpose for which the evidence is being offered. *See Nakajima*, 857 F. Supp. at 102; *Cf. Sorrels*, 796 F.3d at 1287-88. Since Plaintiffs are arguing that these accidents put Tesla on notice of multiple different defects in Autopilot's design, it is not dispositive that there is a difference with respect to one alleged defect, so long as the accidents are otherwise substantially similar. *See Sorrels*, 796 F.3d at 1287 (explaining that substantial similarity determination depends "on the scenario presented and the desired use of the evidence"). Thus, while McGee's use of the accelerator may limit how Plaintiffs may use the evidence of these other accidents at trial, this difference does not foreclose Plaintiffs from introducing the evidence to prove the existence or notice of some other alleged defect. *See Gonzalez*, 718 F. Supp. 2d at 1345 ("The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground.").

  The fact that McGee had his hands on the wheel while the other three drivers did not is similarly unpersuasive to warrant exclusion of those other accidents. The fact that all four Tesla drivers were distracted in the moments before their respective crashes, regardless of whether the Autopilot system detected their hands on the wheel, shows that the purported dissimilarity is insubstantial in determining whether it was reasonably foreseeable that Autopilot's design causes

drivers to become over-reliant on assistive driving features, thereby failing to pay adequate attention to the road.

Accordingly, the Court finds the Brown Crash, the Kanagawa Japan Crash, and the Banner Crash are substantially similar to the subject collision, occurred sufficiently close in time to the subject collision, and their admission would not unduly prejudice Tesla.

### ii. Use of Government Investigations to Introduce Evidence of the Brown, Kanagawa Japan, and Banner Crashes

While Plaintiffs may introduce evidence of the Brown, Kanagawa Japan, and Banner crashes, Plaintiffs may not rely on inadmissible records to introduce those incidents. As Tesla correctly points out, NTSB Board Reports and Recommendations are not admissible at trial and witnesses may not rely on such reports to give testimony about another accident. *See* ECF No. [444] at 9-10; *see also Specter v. Texas Turbine Conversions, Inc.*, No. 3:17-CV-00194-TMB, 2020 WL 7701484, at *3 (D. Ala. Dec. 28, 2020) ("Federal regulations prevent "Board accident report[s]" from being admitted as evidence[.]"); *United States Aviation Underwriters, Inc. v. Aerospatiale, Societe Nationale Industrielle, S.A.*, No. CIV 02-0824-PHX-EHC, 2005 WL 8161454, at *5 (D. Ariz. Nov. 1, 2005) ("An expert, therefore, cannot offer an opinion in a civil action for damages if the opinion is based on an NTSB report containing the NTSB's determinations or conclusions.") (citing *Curry v. Chevron, USA*, 779 F.2d 272, 274 (5th Cir. 1985)); *Credle v. Smith & Smith, Inc.*, 42 F. Supp. 3d 596, 599 (D.N.J. 2013) ("The clear language of 46 U.S.C. § 6308(a) and 49 U.S.C. § 1154(b) mandates that expert reports based on . . . NTSB reports, which rely on the information and conclusions contained in those reports, may not be introduced into evidence in a subsequent civil trial."). Only NTSB "Factual Accident Reports" are admissible at trial. *Chiron Corp. & PerSeptive Biosystems v. Nat'l Transp. Safety Bd.*, 198 F.3d 935, 940–41 (D.C. Cir. 1999) ("A 'factual accident report,' on the other hand, is 'an investigator's

report of his investigation of the accident.' [ ] Because this report is not a 'report of the Board,' it is not barred by the statute and is therefore admissible. . . . [T]he only reports that are admissible 'are the factual reports that investigators do, not the Board's findings, either factual or probable cause, but what individual investigators find[.]").

Accordingly, while Plaintiffs may utilize the NTSB investigator's factual accident reports,[5] Plaintiffs "are precluded from referencing the NTSB Board's Accident Reports, the legal conclusions, opinions, or probable cause determinations of the NTSB before the jury." *Escobar v. Nevada Helicopter Leasing LLC*, No. CV 13-00598 HG-WRP, 2020 WL 104672, at *3–4 (D. Haw. Jan. 8, 2020) (citing *Dowe v. Nat'l Railroad Passenger Corp.*, 2004 WL 1375692, *6-7 (N.D. Ill. May 28, 2004)).[6]

### iii. Introduction of All Other Purportedly Substantially Similar Accidents.

In addition to the three crashes outlined above, Plaintiffs also seek to introduce the NHTSA factual findings regarding "two 'collections' of other incidents." ECF No. [452] at 9. The first is "211 frontal plane crashes where a vehicle on Autopilot struck an object or person in its path." ECF No. [441] at 7. The second is the "18 accidents addressed in Tesla's answers to requests for admission." *Id.* at 8. The Court finds that Plaintiffs have not satisfied their burden to show substantial similarity with respect to these two remaining collections of accidents. Plaintiffs argue that all 229 accidents are substantially similar to the subject collision because in all of the accidents, Autopilot was activated but failed to avoid the accident. Additionally, the drivers in

---

[5] "A NTSB 'Factual Accident Report' is defined in the federal regulations as 'the report containing the results of the investigator's investigation of the accident.'" *Escobar v. Nevada Helicopter Leasing LLC*, No. CV 13-00598 HG-WRP, 2020 WL 104672, at *4 (D. Haw. Jan. 8, 2020) (quoting 49 C.F.R. § 835.2).

[6] To be clear, the Court's decision does not preclude Plaintiff from relying on NHTSA reports, only NTSB Board reports. *See Noel v. Ford Motor Co.*, No. 611CV370ORL28DAB, 2013 WL 12160973, at *1 (M.D. Fla. May 7, 2013) (finding NHTSA reports admissible).

each of the accidents were found not to be sufficiently engaged in the driving task. *See* ECF No. [441] at 7-8.

However, Plaintiffs have failed to provide sufficient evidence to establish substantial similarity.[7] The Court specifically requested the following information it needed in order to determine whether the accidents were substantially similar to the subject collision: "(1) the year and model of the vehicle; (2) the date of the incident; (3) any distinguishing features between the Autopilot in McGee's Vehicle and the allegedly similar vehicle; (4) whether Autopilot technology was activated; (5) the type of collision (e.g., in-lane rear-end collision); (6) the purported defect in the ADAS technology; (7) a non-hearsay basis for the admission of the accident; and (8) any other facts or circumstances to assist the Court in determining whether those accidents are substantially similar." ECF No. [433] at 31. With respect to the 229 incidents at issue, Plaintiffs failed to provide the year and model of the vehicles, whether the accidents occurred before or after the subject collision, what changes had been made to Autopilot's design, the nature of the accident, what kind of object the vehicle collided with, nor any other circumstances of the accidents. While "[t]he substantial similarity doctrine does not require identical circumstances, *Sorrels*, 796 F.3d at 1287, it requires "more than the mere previous occurrence of a similar incident." *Dunkley v. C.I.E. Trans., Inc.*, Civ. Act. No. 1:18-CV-116, 2019 WL 13083583, at *3 (N.D. Ga. Apr. 29, 2019) (internal citations and quotations omitted). The movant must show that "the conditions of the things to be compared are substantially similar." *Id.* With so much critical information missing, the Court is unable to determine whether the accidents occurred under substantially similar circumstances. *See Gardner*, 166 F. Supp. 3d at 1270, 1274-75 (excluding accidents for failure to

---

[7] Although Plaintiffs seek to introduce the NHTSA report of the 211 accidents and not the accidents themselves, the report is still subject to the substantial similarity doctrine. *See Fox v. General Motors LLC*, Civ. Act. No. 1:17-CV-209, 2019 WL 3483171, at *27 (N.D. Ga. Feb. 4, 2019) (citing *Hockensmith v. Ford Motor Co.*, No. 03-13729, 116 F. App'x 244, *11 (11th Cir. Aug. 5, 2004)).

provide basic factual information relevant to the substantial similarity analysis). Although any differences between the subject collision and these 229 other accidents with respect to this missing information may not be dispositive as to whether the accidents are substantially similar, the lack of information prevents the Court from determining whether any of the differences are indeed material. Accordingly, the Court precludes Plaintiffs from introducing the 229 accidents or the NHTSA report analyzing the accidents at trial.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiffs may only introduce evidence of the Brown, Kanagawa Japan, and Banner Crashes. Evidence of any other accidents is **EXCLUDED**.

2. Plaintiffs may not introduce or otherwise rely on NTSB Board Reports to introduce evidence regarding the Brown, Kanagawa Japan or Banner Crashes.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 13, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record