UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, *as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased*, and
DILLON ANGULO

     Plaintiffs,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

     Defendant.
_____/

## ORDER ON PLAINTIFFS' MOTION FOR RECONSIDERATION

**THIS CAUSE** is before the Court upon Plaintiffs Neima Benavides, as personal representative of the Estate of Naibel Benavides Leon, and Dillon Angulo's ("Plaintiffs") Motion for Reconsideration contained in their Response to Tesla's Memorandum of Law in Support of [Its] Objections to Plaintiffs' Exhibits ("Motion" or "Motion for Reconsideration"), ECF No. [469]. The Court has reviewed the Motion and related submissions and is otherwise fully advised. For the reasons that follow, Plaintiffs' Motion for Reconsideration is granted in part and denied in part.

    **I.   BACKGROUND**

This matter arises from a collision that occurred in Key Largo, Florida. George McGee owned a 2019 Tesla Model S ("Vehicle") "equipped with automatic driving features, one of which Tesla termed 'Autopilot,' that could navigate without driver input." ECF No. [205] at 3. On April 25, 2019, McGee was driving the Vehicle when it hit a parked Chevrolet Tahoe, which then struck

Decedent Naibel Benavides Leon and Plaintiff Dillon Angulo, killing Benavides Leon and causing significant injuries to Angulo. *See id.* at 3-4.

On April 22, 2021, Plaintiff Neima Benavides, as Personal Representative, brought this action against Tesla on behalf of the Estate of Decedent Naibel Benavides Leon in the Circuit Court for Miami-Dade County, Florida, alleging automotive product liability claims against Tesla. ECF No. [1-1]. Tesla removed the action to this Court on May 25, 2021. ECF No. [1]. On August 16, 2022, Plaintiff Dillon Angulo initiated a similar automotive products liability action against Tesla in this district, Case No. 22-cv-22607-KMM. *See* 22-cv-22607, ECF No. [1]. The Court accepted the transfer of this case and consolidated both actions due to the overlapping issues presented. ECF No. [50].

Plaintiffs filed a consolidated Amended Complaint on March 11, 2024, asserting the following claims against Tesla: Strict-Products-Liability—Defective Design (Count I), Failure to Warn (Count II), Defective Manufacture (Count III), and Negligent Misrepresentation (Count IV). *See* ECF No. [205] at 6, ¶¶ 39-46.

On June 25, 2025, the Court granted summary judgment in favor of Tesla as to Count III (Defective Manufacture) and Count IV (Negligent Misrepresentation) while allowing Count I (Defective Design) and Count II (Failure to Warn) to proceed to trial. ECF No. [428]. Trial began on July 14, 2025. ECF No. [354]. In anticipation of the upcoming trial, the Parties submitted Motions *in Limine*, wherein Tesla sought to exclude evidence of other car accidents. *See* ECF No. [329]; ECF No. [320]. The Court issued an Omnibus Order on the Parties' Motions *in Limine*. ECF No. [433]. In the Omnibus Order, the Court attempted to address whether Plaintiffs would be permitted to introduce evidence of the other car accidents at trial; however, the Court found that it lacked sufficient information to determine whether the accidents were substantially similar to the

subject collision in this case. *Id.* Accordingly, the Court ordered Plaintiffs to "provide the Court with all the relevant facts regarding the accidents they seek to introduce at trial." *Id.* at 31. Specifically, the Court directed Plaintiffs to provide the following information for each purportedly similar incident, "(1) the year and model of the vehicle; (2) the date of the incident; (3) any distinguishing features between the Autopilot in McGee's Vehicle and the allegedly similar vehicle; (4) whether Autopilot technology was activated; (5) the type of collision (e.g., in-lane rear-end collision); (6) the purported defect in the ADAS technology; (7) a non-hearsay basis for the admission of the accident; and (8) any other facts or circumstances to assist the Court in determining whether those accidents are substantially similar." *Id.* Plaintiffs filed the requested information on July 7, 2025. ECF No. [441].

Plaintiffs' supplemental brief included specific details regarding three prior accidents and a general overview of accidents contained in the National Highway Traffic Safety Administration ("NHTSA") Reports and Tesla's answer to requests for admissions. *Id.* Tesla responded to Plaintiffs' supplement,[1] wherein it argued that none of the accidents were substantially similar to the subject collision and must be excluded. *See* ECF No. [452]. In a related filing, Tesla also argued that any National Transportation Safety Board ("NTSB") Reports and Recommendations arising from these other accidents must be excluded pursuant to 49 U.S.C. § 1154(b). ECF No. [444] at 9-10.

On July 13, 2025, the Court issued an Order ruling on both the admissibility of the other accidents and the NTSB records Plaintiffs sought to rely on in presenting those accidents. ECF No. [466]. The Court found that the Brown Crash, the Kanagawa Japan Crash, and the Banner

---

[1] At the Calendar Call held on July 8, 2025, the Court provided Tesla an opportunity to file a response to Plaintiffs' supplemental briefing regarding the substantial similarity of the other accidents Plaintiffs seek to introduce at trial.

Crash could be introduced, but all other accidents were excluded. *Id.* at 1. The Court also held that "while Plaintiffs may utilize the NTSB investigator's factual accident reports, Plaintiffs 'are precluded from referencing the NTSB Board's Accident Reports, the legal conclusions, opinions, or probable cause determinations of the NTSB before the jury.'" *Id.* at 13 (quoting *Escobar v. Nevada Helicopter Leasing LLC*, No. CV 13-00598 HG-WRP, 2020 WL 104672, at *3–4 (D. Haw. Jan. 8, 2020) (citing *Dowe v. Nat'l Railroad Passenger Corp.*, 2004 WL 1375692, *6-7 (N.D. Ill. May 28, 2004))). The Court has since clarified that its prohibition on the use of NTSB Board Reports also extends to NTSB Safety Recommendations. Plaintiffs now seek reconsideration of the Court's ruling as to the admissibility of additional other accidents as well as the use of NTSB Board Reports regarding the Brown accident.

## II. LEGAL STANDARD

A motion for reconsideration is "an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). "The burden is upon the movant to establish the extraordinary circumstances supporting reconsideration." *Saint Croix Club of Naples, Inc. v. QBE Ins. Corp.*, No. 2:07-cv-00468-JLQ, 2009 WL 10670066, at *1 (M.D. Fla. June 15, 2009) (citing *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1073 (M.D. Fla. 1993)).

> A motion for reconsideration must do two things. First, it must demonstrate some reason why the court should reconsider its prior decision. Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice.

*Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citations omitted). "Such problems rarely arise and the motion to reconsider should be equally rare." *Burger King Corp.*, 181 F. Supp. 2d at 1369.

Because court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure," a motion for reconsideration must clearly "set forth facts or law of a strongly convincing nature to demonstrate to the Court the reason to reverse its prior decision." *Am. Ass'n of People With Disabilities v. Hood*, 278 F. Supp. 2d 1337, 1339, 1340 (M.D. Fla. 2003) (citations omitted). As such, a court will not reconsider its prior ruling without a showing of "clear and obvious error where the 'interests of justice' demand correction." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, No. 6:11-cv-1637-Orl-31, 2013 WL 425827, at *1 (M.D. Fla. Feb. 4, 2013) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assoc.*, 763 F.2d 1237, 1239 (11th Cir. 1985)). "When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based." *Taylor Woodrow Constr. Corp.*, 814 F. Supp. at 1072-73; *see also Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 n.2 (S.D. Ala. 2008) (noting that reconsideration motions are to be used sparingly, and stating, "imagine how a district court's workload would multiply if it w[ere] obliged to rule twice on the same arguments by the same party upon request").

A motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Hood v. Perdue*, 300 F. App'x 699, 700 (11th Cir. 2008) (citation omitted). Thus, a motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Kapila v. Grant Thornton, LLP*, No. 14-61194-CIV, 2017 WL 3638199, at *1 (S.D. Fla. Aug. 23, 2017) (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (internal quotation marks omitted). "Such problems rarely arise and the motion

to reconsider should be equally rare." *Burger King Corp.*, 181 F. Supp. 2d at 1369. Ultimately, reconsideration is a decision that is "left 'to the sound discretion' of the reviewing judge." *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No. 6:18-cv-1149-Orl-78DCI, 2020 WL 5534280, at *2 (M.D. Fla. Apr. 1, 2020) (quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993)).

**III. DISCUSSION**

    **A. References to Other Incidents**

        **i. Use of NTSB Board Reports to Introduce Evidence of Other Accidents**

Plaintiffs argue that the Court should reconsider its decision to preclude any use of the NTSB Board Reports or Safety Recommendations involving other accidents. Plaintiffs first highlight the statutory language of 49 U.S.C. § 1154 which provides that "[n]o part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." *Id.* Plaintiffs argue the plain language of the statute "only precludes a report's use in the lawsuit based on the accident in the report," not reports of other accidents. ECF No. [469] at 8. According to Plaintiffs, finding that the statute bars the use of any NTSB report in any civil action not only rewrites the statute but "renders the phrase 'resulting from a manner mentioned in the report' meaningless." *Id.* at 8. To support their argument, Plaintiffs' Motion relies exclusively on *Kastner v. Beech Aircraft Corp.*, 650 S.W.2d 312 (Mo. Ct. App. 1983), a Missouri Court of Appeals decision that Plaintiffs concede is not on point and addresses the admissibility of NTSB *factual* investigation reports, not *board* reports.[2] *See id.* at 9-10.

---

[2] Plaintiffs subsequently filed a notice on July 15, 2025, which cites to *Olympic Air, Inc. v. Helicopter Tech. Co.*, No. C17-1257-RSL, 2022 WL 823545, (W.D. Wash. Mar. 18, 2022) and 49 C.F.R. § 835.2. ECF No. [478].

Plaintiffs further argue that even if § 1154(b) applies to the Brown NTSB Board report, the statute only renders "the conclusion and opinions contained in the report [inadmissible,] not the factual investigation." *Id.* at 10. The Court finds neither of Plaintiffs' arguments persuasive.

"Consistent with its fact-finding mission that is litigation neutral, NTSB reports are barred as evidence in court." *In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 780 F. Supp. 1207, 1211 (N.D. Ill. 1991). "The simple truth [ ] is that NTSB investigatory procedures are not designed to facilitate litigation, and Congress has made it clear that the Board and its reports should not be used to the advantage or disadvantage of any party in a civil lawsuit." *In re Air Crash at Lexington, Ky., Aug. 27, 2006*, No. CIV.A.5:06CV316KSF, 2008 WL 2796875, at *2 (E.D. Ky. July 18, 2008) (*quoting Chiron Corp. and Perspective Biosystems, Inc. v. National Transportation Safety Board*, 198 F.3d 935, 940 (D.C. Cir. 1999)). Accordingly, courts have consistently held that "49 U.S.C. § 1154(b) forbids the use of any "Board accident report" in civil litigation." *Knous v. United States*, 981 F. Supp. 2d 1365, 1367 (N.D. Ga. 2013); *see also Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998) ("Federal law flatly prohibits the NTSB accident report from being admitted into evidence in any suit for damages arising out of accidents investigated by the NTSB."); *Chiron Corp. & PerSeptive Biosystems v. Nat'l Transp. Safety Bd.*, 198 F.3d 935, 941 (D.C. Cir. 1999); *Escobar v. Nevada Helicopter Leasing LLC*, No. CV 13-00598 HG-WRP, 2020 WL 104672, at *3 (D. Haw. Jan. 8, 2020) ("The Ninth Circuit Court of Appeals has held that NTSB Board Accident Reports are not admissible at trial.") (quoting *Benna v. Reeder Flying Service Inc.*, 578 F.2d 269, 272-73 (9th Cir. 1978)); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, No. 05-MD-1721-KHV, 2009 WL 1140404, at *3 (D. Kan. Apr. 27, 2009) (NTSB "has no role in determining civil liability"). Plaintiffs offer no authority that

7

reasonably suggests there is an exception to the prohibition against the use or reliance on NTSB Board reports involving other accidents.

Plaintiffs cite only two cases, neither of which are persuasive. *See* ECF Nos. [469], [478]. The *Kastner* case explicitly deals with the admissibility of factual investigation reports and has no bearing on whether the Court may admit NTSB Board accident reports or permit a witness to rely upon such reports during their testimony. *See* 650 S.W.2d at 317-18 (finding that that the factual accidents reports were admissible because the exclusionary provision of the NTSB statute only applied to Board reports that contained probable cause of the accident not purely factual reports).[3] As the Court explained in its previous Order, NTSB factual reports and NTSB Board reports are fundamentally different types of documents and have different statutory provisions and regulations governing their admissibility. *See* ECF No. [466] (citing among other cases *Chiron Corp. & PerSeptive Biosystems*, 198 F.3d 940–41 ("A 'factual accident report,' on the other hand, is 'an investigator's report of his investigation of the accident.' [ ] Because this report is not a 'report of the Board,' it is not barred by the statute and is therefore admissible. . . . [T]he only reports that are admissible 'are the factual reports that investigators do, not the Board's findings, either factual or probable cause, but what individual investigators find[.]"). Plaintiffs' other citation to *Olympic Air, Inc. v. Helicopter Tech. Co.*, 2022 WL 823545, simply reaffirms that 49 U.S.C. § 1154(b) precludes a litigant from using any part of the NTSB Board accident report in a civil action. *See Olympic Air, Inc.*, 2022 WL 823545 at *2 (quoting *Chiron Corp. & PerSeptive Biosystems*, 198 F.3d at 941) ("Thus, the statute means what it says: No part of the Board's actual report is admissible as evidence in a civil suit.").[4] Because neither case supports the conclusion that NTSB

---

[3] Plaintiffs' argument that the *Kastner's* court's admission of the "stall/spin statistics" supports their position is similarly unpersuasive.

[4] In addition to the two cases cited, Plaintiffs' supplemental notice cites to 49 C.F.R. § 835.2. However, the

Board reports of other accidents are admissible, Plaintiffs' argument hinges on their interpretation of the text of the statute.

Plaintiffs insist that the only way to give meaning to the phrase "in a civil action for damages resulting from a matter mentioned in the report," is for the Court to assume that only the NTSB Board reports regarding the subject accident at issue in the given case are prohibited from being admitted or otherwise relied upon. *See* ECF No. [469] at 8. The Court disagrees that a plain reading of the statute mandates such a result. Plaintiffs assume, without citation to any authority, that the term "matter" necessarily only means an "accident," even though the term "matter" is undeniably a general term that could just as easily refer to the purported design defect or other cause giving rise to the NTSB's investigation. Indeed, once "matter" is given its reasonably more expansive meaning, precluding the use or introduction of the Brown NTSB Board report in this case is consistent with the statute, as § 1154 would necessarily bar the use or introduction of NTSB reports in civil actions resulting from the purported design defect in that investigation. Consequently, the Court rejects Plaintiffs' contention that a plain reading of § 1154 necessarily allows Plaintiffs to introduce or rely upon NTSB reports of other accidents.

Moreover, Plaintiffs' reading of the statute is also inconsistent with the legislative intent of § 1154 and the case law. "Courts have long held that one of the underlying Congressional purposes animating § [1154] is 'to preserve the functions of court and jury uninfluenced by the findings of the Board or investigators.'" *In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 780

---

notice fails to explain why the regulation supports the Court reconsidering its prior ruling. Plaintiffs simply highlight the portion of the regulation which states that, "no part of a Board accident report may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports," and seem to assume this provision speaks for itself. *See* ECF No. [478] at 16. The Court will not assume Plaintiffs' argument based on a highlight. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments."). In any event, the Court is unpersuaded that the regulation supports the admission or use of any NTSB Board accident reports in this case.

F. Supp. 1207, 1210 (N.D. Ill. 1991) (quoting *Universal Airline, Inc. v. Eastern Air Lines, Inc.*, 188 F.2d 993, 1000 (D.C. Cir. 1951)). As the district court explained in *In re Jacoby Airplane Crash Litig.*:

> Congress sought to insulate the NTSB from expending unnecessary energy choosing its words, lest those words become part of the arsenal of a civil litigant. It is easy to understand why Congress adopted this policy. That is, if the NTSB's core function is to identify methods to improve safety in transportation, then its core function is directed at the future, and in saving lives. To accomplish this task, the NTSB must analyze past accidents, attempt to isolate common elements, and thereby deduce a prescription to help minimize such accidents in the future. In making such prescriptions, Congress decided that the NTSB should be allowed to speak freely. If civil litigants were allowed to utilize such recommendations to prove or disprove liability, then there is considerable danger that those wanting to use the NTSB's reports would have too great a motive to try to influence the contents of those reports in advance. *See* 49 C.F.R. § 835.3 (recognizing "Congress's strong desire to keep the Board free of the entanglement of [lawsuits]").

No. CIV. 99-6073 (HAA), 2007 WL 2746833, at *9 (D.N.J. Sept. 19, 2007). Therefore, in enacting § 1154, Congress sought to prevent Board reports from being used against a party later on in any civil litigation. *Knous,* 981 F. Supp. 2d at 1367 ("NTSB investigatory procedures are not designed to facilitate litigation, and Congress has made it clear that the Board should not be used to the advantage or disadvantage of any party in a civil suit.") (citing *Chiron Corp.*, 198 F.3d at 940) (internal quotations omitted). To allow an NTSB Board report to be used in a case involving a different but related accident would completely undermine one of the key goals of the statute. *Cf. Lidle v. Cirrus Design Corp.*, No. 08 CIV. 1253 BSJHBP, 2010 WL 1644958, at *3 (S.D.N.Y. Apr. 22, 2010) ("By precluding any use of NTSB reports in litigation, 49 U.S.C. § 1154(b) 'prevent[s] outside influence on a Board report . . . automatically eliminat[ing] any motive to influence the Board's reports.'" (quoting *In re Jacoby Airplane Crash Litig.*, 2007 WL 2746833, at *10)).

The Court's conclusion is also consistent with the case law. Courts have repeatedly found that Board reports are not admissible in any civil litigation. *See Knous*, 981 F. Supp. 2d at 1367 ("49 U.S.C. § 1154(b) forbids the use of any "Board accident report" in civil litigation."); *Allen v. PHI, Inc.*, 2015-461 (La. App. 3 Cir. 12/9/15), 181 So. 3d 890, 895 ("[U]nder the plain terms of the statute, NTSB reports are inadmissible in civil litigation."); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, No. 05-MD-1721-KHV, 2009 WL 1140404, at *3 (D. Kan. Apr. 27, 2009) (citing *Thomas Brooks*, 920 F.2d at 646 (NTSB investigation is forum for developing safety recommendations, not show for audience of silent note takers looking for someone to sue)); *cf. Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 12 (D.C. Cir. 2015) ("The agency does not intend that its determination will be relied upon in other proceedings, and indeed the relevant statute and regulations forbid such reliance. See 49 U.S.C. § 1154(b); 49 C.F.R. § 835.3. The NTSB's report is only used within the government in making decisions regarding the need for further safety regulations."). Furthermore, other federal courts have found that the use of an NTSB Board report involving another accident may not be introduced or relied upon in a case involving a different accident. *See e.g., West v. Bell Helicopter Textron, Inc.*, 967 F. Supp. 2d 479, 501 (D.N.H. 2013) ("If West is accusing the defendants of potentially trying to use the factual portions of Board accident reports of other crashes, that would violate the statute"); *United States Aviation Underwriters, Inc. v. Aerospatiale, Societe Nationale Industrielle, S.A.*, No. CIV 02-0824-PHX-EHC, 2005 WL 8161454, at *5 (D. Ariz. Nov. 1, 2005) ("[Expert's] opinion based on the other accidents and incidents is inadmissible because it is based on documents which Congress has declared cannot be used in a civil action for damages. *See* 49 U.S.C. § 1154(b) (2005). Stimpson bases his opinions of the other accidents and incidents on briefs of [NTSB] Board reports.").

Accordingly, the Court does not find that § 1154 provides an exception for the use of NTSB Board reports involving other accidents.

In the alternative, Plaintiffs argue that only the conclusions and opinion of the Board report should be precluded from being introduced or relied upon, not the factual findings within the report. However, most courts have found that no parts of the NTSB Board reports may be used in a civil case for any purpose, and a number of courts have expressly rejected Plaintiffs' position. *See e.g.*, *BC Dental, Inc. v. FSH Maint., LLC*, No. 8:23-CV-00664-WFJ-LSG, 2024 WL 5186887, at *3 (M.D. Fla. Dec. 20, 2024) (striking entire NTSB board report despite defendants request to use "the 'factual portions of the report'"); *Lidle v. Cirrus Design Corp.*, No. 08 CIV. 1253 BSJHBP, 2010 WL 1644958, at *3 (S.D.N.Y. Apr. 22, 2010) (citing *Chiron Corp. v. Nat'l Transp. Safety Bd.*, 198 F.3d at 941 ("No part of the Board's actual report is admissible as evidence in a civil suit."); *In re Jacoby Airplane Crash Litig.*, 2007 WL 2746833 at *10 ("The impropriety of attempting to dissect Board reports for factual statements while excising opinions and conclusions is too great."); *West*, 967 F. Supp. 2d at 501; *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998); *Benna v. Reeder Flying Serv., Inc.*, 578 F.2d 269, 271 (9th Cir. 1978); *Echevarria v. Caribbean Aviation Maint. Corp.*, 839 F. Supp. 2d 464, 466 (D.P.R. 2012). The Court finds these cases persuasive and will not permit Plaintiffs to introduce or rely on any portion of the Brown NTSB Board reports or any other Board reports in this case.

### ii. Introduction of All Other Purportedly Substantially Similar Accidents

Plaintiffs also seek to have the Court reconsider the admissibility of the "211 frontal plane crashes" in the NHTSA Report and the "18 accidents addressed in Tesla's answers to requests for admission." *See* ECF No. [469] at 11.

After thorough review and reconsideration, the Court will allow Plaintiffs to introduce these other accidents on a limited a basis. With respect to the 18 accidents contained in Tesla's

answers to the requests for admission, the Court finds Tesla's answers are admissible pursuant to Federal Rule of Civil Procedure 36 ("A matter admitted under this rule is conclusively established[.]"). Therefore, to the extent the admission containing references to other accidents, such admissions and references are admissible. Plaintiffs are not permitted to go into further detail as to those other accidents as Plaintiffs failed to satisfy their burden of establishing substantial similarity.

Plaintiffs' request for reconsideration of the exclusion of the accidents in the NHTSA Report is granted for the portion of the 211 accidents that occurred prior to the subject collision. Plaintiffs argue that they have satisfied their burden to show substantial similarity with respect to those accidents because they are offering the accidents simply to show Tesla was on notice of Autopilot's defect or dangerous conditions prior to the subject collision. *See* ECF No. [469] at 14, 18-19. Plaintiffs contend that when the intended purpose of introducing a purportedly similar accident is merely to establish notice, the substantial similarity doctrine is more relaxed. *Id.* at 14. As such, Plaintiffs maintain that their "general discussion" of those accidents is sufficient so long as the Court can determine that the purported defect in the proffered accident is substantially similar to the purported defect in the subject collision.

The Court is persuaded that when a party offers substantially similar accidents for the limited purpose of notice, a more relaxed standard is applied to determine substantial similarity. *Guerrero v. Apple Computer, Inc.*, No. 18-CV-22654, 2019 WL 1333735, at *2 (S.D. Fla. Feb. 12, 2019) ("The substantially similar requirement is relaxed when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect."); *Rollins v. Enerco Corp.*, 1:16-cv-01834-JEO, 2018 WL 11454739, at *2 (N.D. Ala. Jan. 26, 2018) ("If the other incident evidence is offered at trial to show notice, the substantial similarity requirement is relaxed.") (citing *Sorrels*

13

*v NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015)); *Ree v. Royal Caribbean Cruises Ltd.*, 315 F.R.D. 682, 686 (S.D. Fla. 2016) (citing *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009) ("Substantial similarity depends upon the underlying theory of the case . . .. When the evidence is offered to demonstrate that a highly dangerous condition existed, a high degree of substantial similarity is required. 'The requirement of substantial similarity is relaxed, however, when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect.'"); *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986) ("For purposes of proving other accidents in order to show defendants' *awareness* of a dangerous condition, the rule requiring substantial similarity of those accidents to the accident at issue should be relaxed.") (emphasis added); *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d. 1261, 1269 n.9 (7th Cir. 1988) ("The requirement of similarity is less strict when the evidence is sought to be admitted to show notice."); *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 889 (9th Cir. 1991) (same); *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 555 (D.C. Cir. 1993); *cf. Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1386 (4th Cir. 1995).

Accordingly, identical circumstances need not exist or even a nearly identical crash; instead, Plaintiffs must show that a substantially similar defect caused the collisions in the other accidents such that Tesla would be on notice of the defect or otherwise aware of the dangerous condition present. *See Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986) ("Any differences in the circumstances surrounding the occurrence go merely to the weight to be given [to] the evidence.").

The Court is persuaded that Plaintiffs have satisfied their relaxed burden of showing substantial similarity at least with respect to the accidents that occurred prior to the subject collision. As Plaintiffs explain, in every prior accident they seek to introduce, there was "a collision

with an object directly in the travel path of the Tesla, resulting from driver inattention while using [A]utopilot." ECF No. [469]. Therefore, the purported defect is the same or at least substantially the same across accidents. *See Jackson*, 788 F.2d at 1083 (The "substantially similar" predicate for the proof of similar accidents is defined, again, by the defect (or, as we have also termed it, the product) at issue."). Just like Plaintiffs' theory regarding the subject collision, the NHTSA records tend to show that Tesla's Autopilot design across models failed to ensure driver attention while utilizing Autopilot, thereby causing a front-end collision. *See Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Car, Inc.*, 915 F.2d 641, 649-50 (11th Cir. 1990) (finding evidence of complaints of other Jaguar owners regarding the similar defect (fuel leaks and fuel odors) admissible under the substantial similarity for the purpose of establishing notice of a defect). As such, these other accidents could lead a reasonable juror to infer that Tesla was aware of a defect in Autopilot's driver monitoring system prior to the subject collision.[5] Plaintiffs have adequately demonstrated that any differences across collisions are immaterial and only affects the weight of the evidence. Plaintiffs point out that Tesla stated in a 2023 Defect Information Report to NHTSA that the inattentiveness of drivers utilizing Autopilot was "applicable to all Tesla models produced and equipped with any version of its Autopilot system." ECF No. [469] at 13. Furthermore, NHTSA determined that a defect causing driver inattentiveness "existed regardless of model, year, hardware or software version." ECF No. [469]. Accordingly, because Tesla and NHTSA identified a common defect present in prior accidents involving vehicles substantially similar to the subject vehicle, the Court agrees there are sufficient similarities for the purpose of placing Tesla on notice

---

[5] To be relevant, Tesla need not necessarily be on notice of the purported defect prior to the production or sale of the car given that Tesla was capable of providing over-the-air updates to vehicles already on the road. Accordingly, because Tesla theoretically could have updated or modified the Autopilot's driver monitoring system virtually any time prior to the subject collision, the period after McGee's purchase may be relevant as well.

of the purported defect. *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 4410030, at *3 (S.D.N.Y. Aug. 18, 2016) (finding substantial similarity for accidents in NHTSA reports for the limited purpose of notice where both the manufacturer and NHTSA identified a common defect among the vehicles in the report). Therefore, any differences are not material to determining whether Tesla was on notice of a substantially similar design defect to the one purportedly present in McGee's 2019 Tesla Model S. *See Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992) ("Any differences in the accidents not affecting a finding of substantial similarity go to the weight of the evidence.") (quoting *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407 (10th Cir. 1988) (citing *Jackson*, 788 F.2d at 1083)). Consequently, so long as Plaintiffs only introduce the accidents in the NHTSA report for the limited purpose of notice, the Court is satisfied substantial similarity has been established.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motion for Reconsideration, **ECF No. [469]**, is **GRANTED in part and DENIED in part**.
2. Plaintiffs may introduce Tesla's Response to the Requests for Admissions but may not otherwise discuss the 18 accidents referenced in those Responses in further detail. Plaintiffs may introduce the portions of the NTHSA Report discussing the 211 front-end collisions for the limited purpose of notice.

Case No. 21-cv-21940-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 20, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:	counsel of record