UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal Representative
of the Estate of Naibel Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,                                                          Case No. 22-22607-KMM

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

### DEFENDANT TESLA, INC.'S MOTION FOR RELIEF IN RESPONSE TO PLAINTIFFS' REPEATED VIOLATIONS OF THE COURT'S *IN LIMINE* ORDERS

Plaintiffs have established a pattern, from the very first moments of this trial, of discussing and offering evidence in the presence of the jury that the Court has excluded. First, in their opening, they referenced excluded portions of an NTSB report that contained the NTSB's recommendations. Next, they offered two partially redacted exhibits that contained references to a number of other incidents including ones that post-dated this crash and that, therefore, violated the Court's order that reference could only be made to such events for purposes of establishing Tesla had notice of them prior to the subject. Then, after Tesla raised objections to these documents, Plaintiffs persisted in offering one of them without redacting portions that discussed Tesla's Autopilot recall by referencing a "Defect Information Report" (simply another name for the recall), which the Court had ordered (and reiterated) was excluded.

Plaintiffs exacerbated this violation by eliciting testimony (including through leading questions) from their expert, Dr. Mary Cummings, that focused on the portions of the exhibit that

1

referenced the excluded recall. These violations of the Court's order excluding the recall as a subsequent remedial measure have placed Tesla in the untenable position of having to respond to this improper evidence by explaining it (indeed, Plaintiffs' expert misrepresented the facts about the recall) while knowing that, as soon as it does, Plaintiffs will assert Tesla has opened the door to further discussion of the recall.

This concern is especially acute because, as the record now stands, the jury has heard evidence that Tesla informed NHTSA that it agreed Autopilot is defective, while leaving the jury with the impression that Tesla has done nothing to remedy the alleged Autopilot defect. Neither is true, however, because (a) Tesla stated when it filed its recall notice that it did not concur with NHTSA's belief that Autopilot was defective, and (b) Tesla nevertheless issued the recall to provide countermeasures to the Autopilot features that NHTSA had criticized. Moreover, the recall did not seek to address factual scenarios like the one here, where a driver had momentarily looked away from the road to retrieve a dropped cell phone while he was having an important call, and the countermeasures associated the recall would have not prevented the crash he caused by way of his inattention.

The record evidence does not support any of these conclusion and yet, thanks to Plaintiffs gamesmanship that is the impression with which the jury has been left. These serial violations of the Court's exclusionary orders have already unfairly prejudiced Tesla's ability to obtain a fair trial, and this unfair prejudice will only grow if Tesla is not permitted to contextualize and explain the facts about the recall and if Plaintiffs are not admonished to immediately cease violating, and otherwise attempting to circumvent, the Court's orders that have excluded certain clearly defined evidence. For this reason, by way of this Motion, Tesla respectfully requests:

    a) The Court permit Tesla to provide evidence that contextualizes and clarifies the

32198860v1

record concerning the "Defect Information Report" without finding that Tesla has opened the door to still further discussion of the excluded recall;

b) That the exhibits Plaintiffs have already offered into evidence that contain unredacted references to the recall be further redacted to remove those references;

c) That Plaintiffs be precluded from offering additional evidence of the recall and not be permitted to circumvent such a ruling by using the synonymous term "Defect Information Report";

d) That Plaintiffs be precluded from making arguments in closing that refer to improperly submitted evidence about the recall, the NTSB's safety recommendations, and the portions of the other incidents investigated by NHTSA that occurred after the subject incident; and

e) That Plaintiffs be admonished that they must immediately cease their efforts to circumvent or offer evidence that violates the Court's exclusionary orders and that they must first seek clarification about whether evidence they intend to offer will violate the Court's orders when there is any reasonable possibility or risk that the evidence could be viewed as doing so.

Although this relief will not fully remedy the unfair prejudice that their serial violations have created for Tesla, it is the minimum that is necessary to alleviate, to some extent, that unfair prejudice.[1]

---

[1] Recognizing that "curative instructions do not always eradicate the prejudice resulting from an improper argument," *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990). Tesla reserves their right to additional relief based on the manner in which the case proceeds.

## I.   PLAINTIFFS' PATTERN OF VIOLATING THE COURT'S ORDERS

### A.   The NTSB Report Order

The evening before trial, the Court entered an order finding that Plaintiffs are precluded from referencing the NTSB Board reports, the legal conclusions, opinions or probable cause determinations of the NTSB before the jury. (ECF No. 466 at 12).

Before the order was received, the parties had exchanged their power point slides for opening statements. Because Plaintiffs slides had included references to the precluded NTSB material, and to ensure that the order was complied with, Tesla's counsel sent an email reminding Plaintiffs to revise their opening to reflect that ruling.

Instead, to Tesla's surprise and great prejudice, less than one minute after beginning their opening statement, Plaintiffs violated this Court's NTSB Order by stating:

> Tesla chose to put its enhanced Autopilot technology on the roadways of this community knowing full well that the leading government agencies for transportation safety in this country NHTSA the National Highway Traffic Safety Administration, and the NTSB, the National Transportation Safety Board, don't worry, there's going to be an acronym chart -- they had been telling Tesla for years to make its product safer.

(Tran. 7/14/25 at 164:1-8).

The Court overruled the objection, presumably not realizing or expecting that Plaintiffs would blatantly violate a court order. Emboldened by the Court's ruling, Plaintiffs' counsel continued:

> You'll learn that within weeks of the Brown crash NHTSA, National Highway Traffic Safety Administration is the government agency that is charged with keeping your public roadways say. They along with the NTSB, National Transportation Safety Board, that's the independently federal agency considered by most to be the leader in major accident investigations in the world, if it's a plane, if it's a train, if it's a railroad or an autonomous vehicle, the NTSB are oftentimes the leading experts two who get the involved. They opened an investigation into Autopilot.

4

> And so on the heels of this the government investigators conclude that Tesla failed to adequate consider [the] human element and they issued safety recommendations. Right and really what we're talking about here and what the evidence will show is that this is what happens when you introduce automation because you can rather than because you should.
>
> And you'll learn it's Court's Exhibit or Plaintiff's Exhibit 79 and 81. There two safety recommendations that are issued. And the first talks about the importance of improving driver monitor. The safety recommendation number 11741 – a lot of acronyms, a lot of numbers. It's the government. I didn't come up with it -- they talk about the importance of improving driver monitoring.
>
> The other safety recommendation is that they need to limit the use of Autopilot another acronym for you. Limit it to its Operational Design Domain.

(Tran. 7/14/25 at 170:13-22; 172:11-173:1).

Amid these statements, Plaintiffs also used a power point slide that showed the jury highlighted excerpts of Exhibits P-79 and P-81—which are NTSB findings—both of which reference material clearly proscribed by the Court's NTSB Order.  (Ex. A, P-79, titled "Safety Recommendation H-17-041") and (Ex. B, P-81, titled Safety Recommendation H-17 -42)**.**

The Court has since confirmed its exclusion of the Safety Recommendations portion of the NTSB report.  (ECF No. 286).  This goes directly to the heart of Plaintiffs' theory that Autopilot insufficiently monitored drivers.  Unfortunately, it was just the precursor of what was to come.

    **B.**     <u>**Plaintiffs' Violations of the Court's Order Excluding References to Tesla's Autopilot Recall**</u>

Additionally, in its Omnibus Order on the parties' motions *in limine*, the Court correctly precluded subsequent remedial measures as evidence of "Tesla's culpability."  (ECF No. 433 at 31).  As the Court recognized, such evidence is plainly excluded under Federal Rule of Evidence 407, which makes clear that evidence of "remedial measures taken after an incident . . . is inadmissible to prove negligence or culpable conduct[.]".

32198860v1

### 1. Plaintiffs Violated Court Orders By Introducing Evidence of Subsequent Remedial Measures Related to The Voluntary Recall.

On the morning of July 17, 2025, before the jury entered the courtroom, Plaintiffs indicated that they intended to offer partially redacted versions of Exhibit P-61, which is the NHTSA ODI's closing resume for its Autopilot investigation (EA 22-002), and Exhibit P-63, which is a supplement NHTSA issued to that closing resume. (*See* Tran. 7/17/25 AM Rough Trial Transcript, at pp. 2-9; Ex. C, P-63 with Plaintiffs' redactions; Ex. D, P-63 without redactions; Ex. E, P-61 with Plaintiffs' redactions; Ex. F, P-61 without redactions). Tesla objected that "these should be excluded in whole because of—they relate to subsequent remedial measures. This is in 2024, not in 2019. And all of it is and was feasible. Your Honor, this is an effort to work around a ruling that is correct, Your Honor." (7/17/25 AM Rough Trial Transcript at p. 9).

In light of this objection, and Tesla's assertion that it was not contesting the feasibility of the countermeasures contained in the recall, the Court permitted the parties to negotiate a stipulation concerning that feasibility, the entry of which the Court ruled would confirm that the Court's exclusion of the recall would remain in place. (*Id.* at pp. 9-17). Specifically, the Court stated, "Then given the feasibility, even though Tesla has argued state-of-the-art, given the stipulation, then there's no longer any opening of the door to admit any issue with the recall." (*Id.* at p. 18).

Immediately after these events, Plaintiffs called their expert, Dr. Mary Cummings. That afternoon, she was shown Plaintiffs' Exhibit 61, which included redactions to comport with the Court's exclusion not of the recall, but of other incidents NHTSA had considered after the date of the subject crash.[2] However, the exhibit was not redacted to reflect the Court's above-described

---

[2] The Court had previously excluded all references to 211 other incidents that NHTSA had considered in the course of its investigation of Autopilot. (*See* ECF No. 466 at pp. 13-15). However, the Court later reconsidered this exclusion, ordering instead that the portion of these

ruling concerning references to the recall. At the time it was offered, Tesla stated, "Assuming you were presenting the redacted version, we have no objection." (7/17/25 PM Rough Trial Transcript at p. 81). In response, Plaintiffs' counsel stated, "Yes, I am, counsel." (*Id.*).

After counsel began his examination of Dr. Cummings about the document, Tesla objected, and requested a sidebar, on the grounds that Plaintiffs had not properly redacted the document to comport with the Court's ruling concerning the other incidents. Rather than hold a sidebar, the Court dismissed the jury for the day and then held argument, wherein Plaintiffs' counsel agreed to "parse it further" in regard to the documents references to admissible and excluded other incidents. (*Id.* at p. 87).

The next day, when questioning of Dr. Cummings resumed, Plaintiffs showed a version of P-61 to the jury that did not contain redactions to the references to the recall.[3] Images of the version they showed, with yellow highlights added to demonstrate the portions that referenced the recall are provided below:

---

incidents that pre-dated the subject crash could be admitted for the limiting purpose of showing notice to Tesla, which the Court found had a more relaxed standard for substantial similarity than the standard that applies when other incidents are offered for other purposes. (*See* 7/17/25 PM Rough Trial Transcript at p. 2; ECF No. 486 at pp. 145-15).

[3] Immediately prior to this, Plaintiffs' counsel handed Tesla's counsel a redacted version of the exhibit, the Court heard argument concerning yet another failure by Plaintiffs to properly redact the exhibit to comply with the Court's orders regarding the other incidents described above.

safety risks by undermining the effectiveness of the driver's supervision. To support this work, ODI collected additional crash information and assessed vehicle control authority, driver engagement technologies, and related human factors considerations associated with partial automation via analysis of peer vehicle data and hands-on vehicle evaluation, assessments from NHTSA human factors subject matter experts, and reviews of related publications dedicated to partial driving automation.

Autopilot is the simultaneous use of the features that Tesla calls Traffic-Aware Cruise Control (TACC) and Autosteer. TACC is a type of adaptive cruise control that, like traditional cruise control, maintains a set speed but also slows or accelerates as necessary to maintain the vehicle's following distance from a vehicle in front. As designed, Autosteer detects lane markings and the presence of other nearby vehicles and objects to keep the vehicle in its driving lane.

Autopilot is characterized by Tesla as an SAE Level 2 ("L2 system") partial driving automation system that provides driver assistance through steering, propulsion, and braking within a specified driving environment under direct supervision of the driver. L2 systems should be designed to support the driver's need to monitor the system in response to the constantly changing driving environment and, if necessary, take over the dynamic driving task. To ensure sufficient driver engagement, vehicles with L2 systems should employ driver engagement systems and usage controls that are appropriate and sufficient for the L2 system design and driver expectations.

ODI completed an analysis of ▆ crashes reported up to August 30, 2023. In approximately half (▆ of those crashes, ODI found: 1.) that there was insufficient data to make an assessment; 2.) the other vehicle was at fault; 3.) Autopilot was found to not be in use; or 4.) the crash was otherwise unrelated to EA22002. Of the remaining ▆ crashes, ODI identified ▆▆▆▆▆▆▆▆▆▆▆: collisions in which the frontal plane of the Tesla struck another vehicle or obstacle with adequate time for an attentive driver to respond to avoid or mitigate the crash (211), ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ODI observed this pattern across all Tesla models and hardware versions. Crash and human factors assessment showed that Autopilot controls did not sufficiently ensure driver attention and appropriate use. At the same time, peer analysis and vehicle evaluations established that Autopilot invited greater driver confidence via its higher control authority and ease of engagement. This mismatch of weak usage controls and high control authority was evident in these crash categories, which included indications of driver disengagement from the driving task. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Additional information regarding NHTSA's crash analysis is available in the EA22002 file.

ODI reviewed these findings with Tesla during several conversations in Quarter 4 of 2023. ==On December 12, 2023, Tesla filed a Defect Information Report (DIR) ▆▆▆▆▆▆ applicable to all Tesla models produced and equipped with any version of its Autopilot system. Tesla's DIR described the functionality of this system, stated that the prominence and scope of the system's controls may be insufficient to prevent driver misuse,== ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

ODI completed an extensive body of work via PE21020 and EA22002, which showed evidence that Tesla's weak driver engagement system was not appropriate for Autopilot's permissive operating capabilities. This mismatch resulted in a critical safety gap between drivers' expectations of the L2 system's operating capabilities and the system's true capabilities. This gap led to foreseeable misuse and avoidable crashes. During EA220002, ODI identified at least 13 crashes involving one or more fatalities and many more involving serious injuries, in which foreseeable driver misuse of the system played an apparent role. ODI's analysis



(Ex. F at pp. 2-3)

"Defect Information Report" (DIR) is another name for the recall.  It is the title of the document, which is sometimes called a Part 573 Report, that auto manufacturers submit to NHTSA when they initiate a recall.  As NHTSA has explained, "A recall is typically initiated when a manufacturer files a Part 573 Defect Information Report identifying a safety defect, often called a DIR or Part 573 Report." (Ex. G, NHTSA's Risk-Based Processes for Safety Defect Analysis and Management of Recalls, at p. 12); *see also* 49 CFR 573—Defect and Noncompliance Responsibility and Reports. The DIR itself makes this clear; it is titled "Part 573 Recall Report 23V-838" and an image of its first page is provided below:

```
                                                        OMB Control No.: 2127-0004
Part 573 Safety Recall Report                           23V-838

Manufacturer Name : Tesla, Inc.
    Submission Date : DEC 12, 2023                      NHTSA
    NHTSA Recall No. : 23V-838                          NATIONAL HIGHWAY TRAFFIC
Manufacturer Recall No. : SB-23-00-008                  SAFETY ADMINISTRATION

Manufacturer Information :                  Population :
Manufacturer Name : Tesla, Inc.                 Number of potentially involved : 2,031,220
         Address : 1 Tesla Road                 Estimated percentage with defect : 100 %
                   Austin TX 78725
   Company phone : 6506815000

Vehicle Information :
              Vehicle 1 : 2012-2023 Tesla Model S
           Vehicle Type :
             Body Style :
            Power Train : NR
  Descriptive Information : The subject population includes certain MY 2012-2023 Model S that are equipped
                            with Autosteer and were produced between October 5, 2012, and December 7, 2023,
                            and all MY 2016-2023 Model X vehicles, all MY 2017-2023 Model 3 vehicles and all
                            MY 2020-2023 Model Y vehicles that are equipped with Autosteer and were produced
                            through December 7, 2023.
       Production Dates : OCT 05, 2012 - DEC 07, 2023
        VIN Range 1 : Begin :           NR           End :   NR             ☐ Not sequential

              Vehicle 2 : 2016-2023 Tesla Model X
           Vehicle Type :
             Body Style :
            Power Train : NR
  Descriptive Information : The subject population includes certain MY 2012-2023 Model S that are equipped
                            with Autosteer and were produced between October 5, 2012, and December 7, 2023,
                            and all MY 2016-2023 Model X vehicles, all MY 2017-2023 Model 3 vehicles and all
                            MY 2020-2023 Model Y vehicles that are equipped with Autosteer and were produced
                            through December 7, 2023.
       Production Dates : SEP 15, 2015 - DEC 07, 2023
        VIN Range 1 : Begin :           NR           End :   NR             ☐ Not sequential

                  The information contained in this report was submitted pursuant to 49 CFR §573

                                                                                          P-66-0001
```

(Ex. H, Tesla's Defect Information Report/Part 573 Report Initiating Recall).

In addition to showing the jury Exhibit P-63, with its unredacted references to the recall, Plaintiffs elicited testimony from Dr. Cummings wherein she referenced the DIR and described it

10

32198860v1

as "Tesla's statement that indeed their technology is defective;" stated, "NHTSA did an investigation. Determined there was enough evidence to suggest that the Driver Monitoring System and Autopilot was defective, Tesla agreed;" and, in response to a leading question, agreed that other auto manufacturers had not "filed a defect information report applicable to all models they have ever produced equipped with any version of their Level 2 autonomous features." (7/17/25 AM Rough Transcript at pp. 13-15 and 7/17/25 PM Rough Transcript, at p. 27).

Clearly, this exhibit and testimony violated the Court's exclusion of the recall issue. Indeed, the redactions Plaintiffs did make obscured for the Court that their references to the DIR were in fact references to the recall by another name. The following images are of the unredacted pages of the exhibit, with green highlights applied where redactions were placed that removed the word "recall," while, at the same time, suggesting that the DIR was something other than the recall.

32198860v1

> safety risks by undermining the effectiveness of the driver's supervision. To support this work, ODI collected additional crash information and assessed vehicle control authority, driver engagement technologies, and related human factors considerations associated with partial automation via analysis of peer vehicle data and hands-on vehicle evaluation, assessments from NHTSA human factors subject matter experts, and reviews of related publications dedicated to partial driving automation.
>
> Autopilot is the simultaneous use of the features that Tesla calls Traffic-Aware Cruise Control (TACC) and Autosteer. TACC is a type of adaptive cruise control that, like traditional cruise control, maintains a set speed but also slows or accelerates as necessary to maintain the vehicle's following distance from a vehicle in front. As designed, Autosteer detects lane markings and the presence of other nearby vehicles and objects to keep the vehicle in its driving lane.
>
> Autopilot is characterized by Tesla as an SAE Level 2 ("L2 system") partial driving automation system that provides driver assistance through steering, propulsion, and braking within a specified driving environment under direct supervision of the driver. L2 systems should be designed to support the driver's need to monitor the system in response to the constantly changing driving environment and, if necessary, take over the dynamic driving task. To ensure sufficient driver engagement, vehicles with L2 systems should employ driver engagement systems and usage controls that are appropriate and sufficient for the L2 system design and driver expectations.
>
> ODI completed an analysis of 956 crashes reported up to August 30, 2023. In approximately half (489) of those crashes, ODI found: 1.) that there was insufficient data to make an assessment; 2.) the other vehicle was at fault; 3.) Autopilot was found to not be in use; or 4.) the crash was otherwise unrelated to EA22002. Of the remaining 467 crashes, ODI identified trends resulting in three categories: collisions in which the frontal plane of the Tesla struck another vehicle or obstacle with adequate time for an attentive driver to respond to avoid or mitigate the crash (211), roadway departures where Autosteer was inadvertently disengaged by the driver's inputs (111), and roadway departures in low traction conditions such as wet roadways (145). ODI observed this pattern across all Tesla models and hardware versions. Crash and human factors assessment showed that Autopilot controls did not sufficiently ensure driver attention and appropriate use. At the same time, peer analysis and vehicle evaluations established that Autopilot invited greater driver confidence via its higher control authority and ease of engagement. This mismatch of weak usage controls and high control authority was evident in these crash categories, which included indications of driver disengagement from the driving task. This mismatch was also evident in roadway departures when the system was engaged in low traction conditions outside of Tesla's recommendations. Additional information regarding NHTSA's crash analysis is available in the EA22002 file.
>
> ODI reviewed these findings with Tesla during several conversations in Quarter 4 of 2023. On December 12, 2023, Tesla filed a Defect Information Report (DIR) (Recall 23V838) applicable to all Tesla models produced and equipped with any version of its Autopilot system. Tesla's DIR described the functionality of this system, stated that the prominence and scope of the system's controls may be insufficient to prevent driver misuse, ==and described a remedy to improve the effectiveness of driver warnings and to reduce mode confusion.==
>
> ODI completed an extensive body of work via PE21020 and EA22002, which showed evidence that Tesla's weak driver engagement system was not appropriate for Autopilot's permissive operating capabilities. This mismatch resulted in a critical safety gap between drivers' expectations of the L2 system's operating capabilities and the system's true capabilities. This gap led to foreseeable misuse and avoidable crashes. During EA220002, ODI identified at least 13 crashes involving one or more fatalities and many more involving serious injuries, in which foreseeable driver misuse of the system played an apparent role. ODI's analysis

Investigation: EA22002                                                                                                   Close Resume Page 2 of 3

> conducted during this investigation, which aligns with Tesla's conclusion in its Defect Information Report, indicated that in certain circumstances, Autopilot's system controls and warnings were insufficient for a driver assistance system that requires constant supervision by a human driver.
>
> ==Given Tesla's recall (23V838) of all vehicles equipped with Autopilot for insufficient controls to prevent misuse, ODI is closing EA22002. Concurrent with that closing, ODI has opened a Recall Query (RQ24009) to assess the effectiveness of the 23V838 remedy.==
>
> To review the ODI reports cited in the Closing Resume ODI Report Identification Number document, go to NHTSA.gov.

(Ex. E, Unredacted Version of P-61 with Green Highlights Showing Redactions)

12

32198860v1

These redactions leave no doubt that Plaintiffs were aware that the DIR was the recall and that they were engaged in an effort to circumvent the Court's exclusion of the recall.

### 2. Fairness Requires Tesla Be Permitted To Clarify The Record Concerning The Recall

Plaintiffs not only violated the Court's order, but exacerbated that violation by misrepresenting Tesla's statements in the DIR. Specifically, as described above, Dr. Cummings testified that Tesla agreed in the DIR with NHTSA's view that Autopilot was defective. That is false. Instead, Tesla stated in the DIR, "***While not concurring with the agency's analysis, in the interest of resolving EA22-002, Tesla determined on December 5, 2023, to voluntarily administer a recall and provide the remedy described below.***" (Ex. H, Recall at p. 4).

Moreover, Plaintiffs' violation of the Court's order has left the jury with the impression that Tesla agreed not only that Autopilot was defective but has done nothing to remedy that defect. In fact, though Tesla did not agree Autopilot was defective, it developed five countermeasures in the form of software updates, that modified the driver monitoring system in its vehicles. None of these countermeasures would have made a difference in this case, where Mr. McGee had his hand on the wheel and his foot on the accelerator pedal. The following table briefly summarizes the countermeasures and the reasons they would not have made a difference here, which Tesla will now need to explain to the jury to help alleviate unfair prejudice created by Plaintiffs' violation of the Court's order:

| Countermeasure | Why Countermeasure Is Irrelevant |
|---|---|
| Additional hands-on reminders within moments of engaging Autopilot | Mr. McGee's hands were detected as on the wheel |
| Change in location on the touch screen of hands-on reminders in the Model 3 and Model Y | The subject vehicle is Model S |

| Change in method of activating Autopilot from two pulls on the activating stalk to just one pull | There is no dispute that Mr. McGee had engaged Autopilot prior to the crash |
|---|---|
| Hands-on reminders issues more frequently when vehicles are off-highway and approaching stop signs | Mr. McGee's hands were detected as on the wheel, and stop sign detection technology had not yet been released at the time of the crash (this remedy following introduction of traffic control detection in 2020) |
| Eventual suspension of Autopilot when a driver repeatedly fails to demonstrate continuous and sustained responsibility when Autopilot is engaged | Mr. McGee's hands were detected as on the wheel |

Plaintiffs' violation of the Court's order has created the current situation that requires Tesla to explain this information to the jury. They should not be rewarded for their violation by a ruling that Tesla's present need to explain this information thereby opens the door to still further discussion of the recall.

## II. PLAINTIFFS' VIOLATIONS OF THIS COURT'S ORDERS MUST BE REMEDIED.

Plaintiffs' blatant violation of the order precluding evidence of the NTSB report and recommendation set the stage for a trial that is divorced from the rules of evidence. And then, as detailed above, Plaintiffs introduced a Defect Information Report ("DIR") that clearly describes subsequent remedial measures taken by Tesla following a series of unrelated accidents. Following that, they elicited testimony from their expert which misstated Tesla's response to the NHTSA investigation.

Plaintiffs' violation of the Court's order precluding references to the recall has created a lasting impression in the minds of the jurors that Tesla believes and agrees with Plaintiffs that its Autopilot system is defective and yet has done nothing to address those safety issues. Neither is true, however, because (a) Tesla stated when it filed its recall notice that it did not concur with

14

NHTSA's belief that Autopilot was defective, and (b) Tesla nevertheless issued the recall in order to provide countermeasures to the Autopilot features that NHTSA had criticized. Moreover, the recall did not seek to address factual scenarios like the one here, where a driver had momentarily looked away from the road to retrieve a dropped cell phone while he was having an important call, and the countermeasures associated the recall would have not prevented the crash he caused by way of his inattention.

As a result, Plaintiffs have now placed Tesla in the untenable position of needing to re-raise and further discuss the recall to combat the false impressions Plaintiffs' inadmissible evidence has created. They should be permitted to do so, however without the risk that its inquiry be deemed to open the door for Plaintiffs to further exploit their violation. *See Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 289 (11th Cir. 2009) ("Under th[e curative admissibility] doctrine, when a party offers inadmissible evidence before a jury, the court may in its discretion allow the opposing party to offer otherwise inadmissible evidence on the same matter to rebut any unfair prejudice created.").

For these reasons, Tesla respectfully requests the following relief:

a) The Court permit Tesla to provide evidence that contextualizes and clarifies the record concerning the "Defect Information Report" without finding that Tesla has opened the door to still further discussion of the excluded DIR/recall;

b) That the exhibits Plaintiffs have already offered into evidence that contain unredacted references to the recall be further redacted to remove those references;

c) That Plaintiffs be precluded from offering additional evidence of the recall and not be permitted to circumvent such a ruling by using the synonymous term "Defect Information Report";

32198860v1

d) That Plaintiffs be precluded from making arguments in closing that refer to improperly submitted evidence about the recall, the NTSB's safety recommendations, and the portions of the other incidents investigated by NHTSA that occurred after the subject incident; and

e) That Plaintiffs be admonished that they must immediately cease their efforts to circumvent or offer evidence that violates the Court's exclusionary orders and that they must first seek clarification about whether evidence they intend to offer will violate the Court's orders when there is any reasonable possibility or risk that the evidence could be viewed as doing so.

## CONCLUSION

Tesla deserves a fair trial and has not received one because of Plaintiffs' flagrant violations of this Court's orders. This must stop. For this reason, Tesla respectfully requests the Court grant the relief requested herein.

[*Signature Page to Follow*]

32198860v1

| | |
|---|---|
| Dated: July 20, 2025 | Respectfully submitted,<br><br>/s/ *Wendy F. Lumish*<br>**WHITNEY V. CRUZ**<br>Florida Bar No. 800821<br>**WENDY F. LUMISH**<br>Florida Bar No. 334332<br>**Bowman and Brooke LLP**<br>Two Alhambra Plaza, Suite 800<br>Coral Gables, FL 33134<br>Tel. 305-995-5600 / Fax: 305-995-6100<br>whitney.cruz@bowmanandbrooke.com<br>wendy.lumish@bowmanandbrooke.com<br><br>**THOMAS P. BRANIGAN**<br>*(Admitted Pro Hac Vice)*<br>**DREW P. BRANIGAN**<br>*(Admitted Pro Hac Vice)*<br>**BOWMAN AND BROOKE LLP**<br>101 W. Big Beaver Road, Suite 1100<br>Troy, MI 48084<br>Tel. 248-205-3300 / Fax: 248-205-3399<br>thomas.branigan@bowmanandbrooke.com<br>drew.branigan@bowmanandbrooke.com<br><br>**JOEL SMITH**<br>*(Admitted Pro Hac Vice)*<br>**BOWMAN AND BROOKE LLP**<br>1441 Main Street, Suite 1200<br>Columbia, SC 2920<br>Tel. 803-726-7420 / Fax: 803.726.7421<br>Joel.Smith@bowmanandbrooke.com<br><br>**HILARIE BASS**<br>Florida Bar No. 334243<br>**HILARIE BASS, ESQUIRE LLC**<br>2821 Bayshore Drive, UPH-B<br>Miami, FL 33133<br>Tel. 305-505-8777<br>bassh@bassinstitute.org<br><br>*Attorneys for Defendant TESLA, Inc.* |

32198860v1

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Adam T. Boumel, Esq.**
Florida Bar No. 0110727
THE ROUSSO, BOUMEL LAW FIRM, PLLC
9350 South Dixie Highway
Suite 1520
Miami, FL 33156
Tel. 305-670-6669
adam@roussolawfirm.com
assistant@roussolawfirm.com
pleadings@roussolawfirm.com

*Attorneys for Plaintiff Dillon Angulo*

**Todd Poses, Esq.**
Florida Bar No. 0075922
POSES & POSES, P.A.
Alfred I. Dupont Building
169 East Flagler Street, Suite 1600
Miami, FL 33131
Tel. 305-577-0200
Fax: 305-371-3550
tposes@posesandposes.com
maria@posesandposes.com

*Attorneys for Plaintiff Neima Benavides*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHRIEBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com
lhuete@eatonwolk.com

*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

*s/* Wendy F. Lumish

32198860v1