UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, *as Personal Representative of the Estate of Naibel Benavides Leon, deceased*, and
DILLON ANGULO

    Plaintiffs,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,

    Defendant.
_____/

**ORDER ON TESLA, INC'S MOTION FOR RELIEF IN RESPONSE TO PLAINTIFFS' REPEATED VIOLATIONS OF THE COURT'S *IN LIMINE* ORDERS**

**THIS CAUSE** is before the Court upon Tesla Inc.'s ("Tesla") Motion for Relief in Response to Plaintiffs' Repeated Violations of the Court's *In Limine* Orders ("Motion"), ECF No. [487]. Plaintiffs Neima Benavides, as personal representative of the Estate of Naibel Benavides Leon, and Dillon Angulo ("Plaintiffs") filed a Response in opposition, ECF No. [508]. The Court has reviewed the Motion and is otherwise fully advised. For the reasons that follow, Tesla's Motion is denied.

**I. BACKGROUND**

This matter arises from a collision that occurred in Key Largo, Florida. George McGee owned a 2019 Tesla Model S ("Vehicle") "equipped with automatic driving features, one of which Tesla termed 'Autopilot,' that could navigate without driver input." ECF No. [205] at 3. On April 25, 2019, McGee was driving the Vehicle when it hit a parked Chevrolet Tahoe, which then struck Decedent Naibel Benavides Leon and Plaintiff Dillon Angulo, killing Benavides Leon and causing significant injuries to Angulo. *See id.* at 3-4.

On June 25, 2025, the Court granted summary judgment in favor of Tesla as to Count III (Defective Manufacture) and Count IV (Negligent Misrepresentation) while allowing Count I (Defective Design) and Count II (Failure to Warn) to proceed to trial. ECF No. [428]. Trial began on July 14, 2025. ECF No. [354]. In anticipation of the trial, the Parties submitted Motions *in Limine*, wherein Tesla sought to exclude evidence of other car accidents as well as evidence of its 2023 Recall. *See* ECF Nos. [320]; [329]. The Court issued an Omnibus Order on the Parties' Motions *in Limine*. ECF No. [433]. The Court ruled "evidence of the 2023 Recall is admissible to the extent that it is offered to demonstrate the feasibility of the precautionary measures." *Id.* at 31. The Court also attempted to address whether Plaintiffs would be permitted to introduce evidence of the other car accidents at trial; however, the Court found that it lacked sufficient information to determine whether the accidents were substantially similar to the subject collision in this case. Accordingly, the Court ordered Plaintiffs to "provide the Court with all the relevant facts regarding the accidents they seek to introduce at trial." *Id.* at 31.

Plaintiffs' supplemental brief included specific details regarding three prior accidents and a general overview of accidents contained in the National Highway Traffic Safety Administration ("NHTSA") Reports and Tesla's answer to requests for admissions. *See* ECF No. [441]. Tesla responded to Plaintiffs' supplement,[1] wherein it argued that none of the accidents were substantially similar to the subject collision and must be excluded. *See* ECF No. [452]. In a related filing, Tesla also argued that any National Transportation Safety Board ("NTSB") Reports and Recommendations arising from these other accidents must be excluded pursuant to 49 U.S.C. § 1154(b). ECF No. [444] at 9-10.

---

[1] At the Calendar Call held on July 8, 2025, the Court provided Tesla an opportunity to file a response to Plaintiffs' supplemental briefing regarding the substantial similarity of the other accidents Plaintiffs seek to introduce at trial.

On July 13, 2025, the Court issued an Order ruling on both the admissibility of the other accidents and the NTSB records that Plaintiffs sought to rely on in presenting those accidents. ECF No. [466]. The Court found that the Brown Crash, the Kanagawa Japan Crash, and the Banner Crash could be introduced, but all other accidents were excluded. *Id.* at 1. The Court also held that "while Plaintiffs may utilize the NTSB investigator's factual accident reports, Plaintiffs 'are precluded from referencing the NTSB Board's Accident Reports, the legal conclusions, opinions, or probable cause determinations of the NTSB before the jury.'" *Id.* at 13 (quoting *Escobar v. Nevada Helicopter Leasing LLC*, No. CV 13-00598 HG-WRP, 2020 WL 104672, at *3–4 (D. Haw. Jan. 8, 2020) (citing *Dowe v. Nat'l Railroad Passenger Corp.*, 2004 WL 1375692, *6-7 (N.D. Ill. May 28, 2004))). The Court has since clarified that its prohibition on the use of NTSB Board Reports also extends to NTSB Safety Recommendations. *See* ECF No. [486] at 4.

Tesla now brings the instant Motion arguing that Plaintiffs have repeatedly violated the Court's Orders during the course of trial by introducing inadmissible evidence. ECF No. [487]. Tesla argues that it has been prejudice by the evidence and accompanying testimony, and as such, curative measures are necessary to ensure a fair trial. *See id.* Plaintiffs disagree that they have violated any of the Court's orders and therefore, the Court should deny Tesla's Motion in its entirety. *See* ECF No. [508].

## II. LEGAL STANDARD

### A. Curative Admissibility Doctrine

The Eleventh Circuit "recognizes the concept of 'curative admissibility'—also called 'opening the door' or 'fighting fire with fire.'" *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1349 (11th Cir. 2004) (quoting *United States v. Hall*, 653 F.2d 1002, 1007 (5th Cir. Unit A Aug. 1981)) (additional citations omitted). The curative admissibility doctrine is implicated "when a party offers inadmissible evidence to the jury." *Perez v. Hardwick*, No. 3:19-

3

CV-880-MMH-SJH, 2025 WL 1837523, at *1 (M.D. Fla. July 3, 2025) (quoting *Rivera v. Ring*, 810 F. App'x 859, 866 (11th Cir. 2020) (internal quotations omitted)).[2] Under such circumstances, "the court may in its discretion[3] allow the opposing party to offer otherwise inadmissible evidence on the same matter to rebut any unfair prejudice created." *Bearint ex rel. Bearint*, 389 F. 3d at 1349 (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 177 n.3 (1998)). Such curative evidence will be permitted only to the extent it cures the prejudice created by the opposing party's introduction of inadmissible evidence. *See Bearint ex rel. Bearint*, 389 F. 3d at 1349; *Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS), 2016 WL 9243594, at *7 (M.D. Ga. Oct. 4, 2016) ("[T]he admissibility of curative evidence must be proportional to supposed unfairness created by otherwise inadmissible evidence . . ..") . Moreover, any curative evidence must itself satisfy the Court's 403 balancing. *See Bearint ex rel. Bearint*, 389 F. 3d at 1349; *see also Bryant v. Sheriff, Saint Lucie Cnty.*, Fla., No. 23-12334, 2024 WL 4458382, at *7 (11th Cir. Oct. 10, 2024).

**III.   DISCUSSION**

Tesla argues that "Plaintiffs have established a pattern, from the very first moments of trial, of discussing and offering evidence in the presence of the jury that the Court has [previously] excluded." ECF No. [487] at 1. Specifically, Tesla claims Plaintiffs have offered evidence of inadmissible NTSB Board Reports and Safety Recommendations, references to other vehicle

---

[2] The opposing party need not object to the inadmissible evidence for the curative admissibility doctrine to apply. *See Greer v. Ivey*, No. 20-13542, 2022 WL 2914471, at *4 n. 2 (11th Cir. July 25, 2022) ("We have never held that a party must object to evidence before curative admissibility is available, and we won't do so here.").

[3] *See Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS), 2016 WL 9243594, at *7 (M.D. Ga. Oct. 4, 2016) ("[W]hile the concept of curative admissibility, or 'opening the door,' is well-recognized in this Circuit, the admissibility of such evidence *rests within the sound discretion of the district court.*") (emphasis added).

collisions not deemed substantially similar, and evidence of Tesla's subsequent remedial measures (i.e. the "Defect Information Report").[4] *See id.* Not only have Plaintiffs introduced inadmissible evidence prejudicing Tesla's case, but Tesla contends the prejudice has been "exacerbated" by Plaintiffs' decision to elicit testimony from their expert, Dr. Mary Cummings, that focused on the excluded subsequent remedial measures evidence.

As a result of Plaintiffs' purported violations of the Court's orders, Tesla maintains that it has now been forced into an "untenable situation of having to respond to this improper evidence by explaining it . . . while knowing that, as soon as it does, Plaintiffs will assert Tesla has opened the door to further discussion" of the inadmissible evidence. *Id.* at 2. To cure the prejudice, Tesla argues the Court should allow Tesla an opportunity to contextualize and clarify the inadmissible recall evidence and preclude Plaintiffs from arguing that Tesla's contextualization opens the door to further discussion of the Recall. Additionally, Tesla seeks an order requiring Plaintiffs to take the following actions: (1) redact any already admitted evidence that references the Recall or "the synonymous term 'Defect Information Report;'" (2) make no mention in closing of the "evidence about the [R]ecall, the NTSB Safety Recommendations, and the portions of the other incidents investigated by NHTSA that occurred after the subject incident." *Id.* at 3.[5]

Plaintiffs deny they have offered any evidence in the presence of the jury that the Court has previously excluded. ECF No. [508] at 1. Plaintiffs maintain that they intended to offer evidence of the NTSB Safety Recommendations based on a good-faith interpretation of the Court's Order. *Id.* Plaintiffs also argue that redactions to the NHTSA ODI Resume were appropriate and

---

[4] Tesla contends that a Defect Information Report is simply another term for a "recall." ECF No. [487].
[5] Tesla also requests that "Plaintiffs be admonished that they must immediately cease their efforts to circumvent or offer evidence that violates the Court's exclusionary orders and that they must first seek clarification about whether evidence they intend to offer will violate the Court's orders when there is any reasonable possibility or risk that the evidence could be viewed as doing so." ECF No. [487] at 3.

did not violate the Court's Order prohibiting the introduction of evidence of subsequent remedial measures or other accidents that were not substantially similar. Accordingly, Plaintiffs insist that the instant Motion "should be denied in its entirety." *Id.*

### A. The NTSB Report Order

In arguing that Plaintiffs engaged in a pattern of violating Court orders, Tesla first focuses on the Court's NTSB Report Order issued on July 13, 2025, the day before trial. *See* ECF No. [466]. In that Order, the Court held that "while Plaintiffs may utilize the NTSB investigator's factual accident reports, Plaintiffs 'are precluded from referencing the NTSB Board's Accident Reports, the legal conclusions, opinions, or probable cause determinations of the NTSB before the jury.'" *Id.* at 13 (quoting *Escobar v. Nevada Helicopter Leasing LLC*, No. CV 13-00598 HG-WRP, 2020 WL 104672, at *3–4 (D. Haw. Jan. 8, 2020) (citation omitted)). Despite the Court's directive, Plaintiffs made the following statements in their opening:

> Tesla chose to put its enhanced Autopilot technology on the roadways of this community knowing full well that the leading government agencies for transportation safety in this country NHTSA the National Highway Traffic Safety Administration, and the NTSB, the National Transportation Safety Board, don't worry, there's going to be an acronym chart—they had been telling Tesla for years to make its product safer.
>
> . . .
>
> You'll learn that within weeks of the Brown crash NHTSA, National Highway Traffic Safety Administration is the government agency that is charged with keeping your public roadways sa[fe]. They along with the NTSB, National Transportation Safety Board, that's the independently federal agency considered by most to be the leader in major accident investigations in the world, if it's a plane, if it's a train, if it's a railroad or an autonomous vehicle, the NTSB are oftentimes the leading experts two who get the involved. They opened an investigation into Autopilot.
>
> And so on the heels of this the government investigators conclude that Tesla failed to adequate[ly] consider [the] human element and they issued safety recommendations. Right and really what we're talking about here and what the evidence will show is that this is what happens when you introduce automation because you can rather than because you should.

6

> And you'll learn it's Court's Exhibit or Plaintiff's Exhibit 79 and 81. There two safety recommendations that are issued. And the first talks about the importance of improving driver monitor[ing]. The safety recommendation number 11741 – a lot of acronyms, a lot of numbers. It's the government. I didn't come up with it—they talk about the importance of improving driver monitoring.
>
> The other safety recommendation is that they need to limit the use of Autopilot another acronym for you. Limit it to its Operational Design Domain.

(Rough Tran. 7/14/25 at 164:1-8; 170:13-22; 172:11-173:1).[6] According to Tesla, the PowerPoint Plaintiffs used during their opening included "highlighted excerpts of Exhibits P-79 and P-81— which are NTSB [Board] findings both of which reference material clearly proscribed by the Court's NTSB Order." ECF No. [487] at 5. Tesla concedes that the Court did not confirm the exclusion of the Safety Recommendations until the trial, but contends the impermissible introduction of this evidence to the jury "goes directly to the heart of Plaintiffs' theory that Autopilot insufficiently monitored drivers." *Id.*

Regarding the NTSB issues, Plaintiffs maintain they did not violate the Court's July 13th Order. According to Plaintiffs, while Tesla sought to exclude all of their NTSB exhibits, Tesla distinguished between the Brown Board Report in Exhibit 77, and the related NTSB "recommendations and similar materials Plaintiffs [sought] to introduce as exhibits P-78 to P-87." ECF No. [508] at 2. Therefore, Plaintiffs argue that Tesla also understood the NTSB Board Report to be distinct and separate from the Safety Recommendations. Accordingly, because the Court's Order precluded references to "NTSB Board Accidents Reports, the legal conclusions, opinions, or probable cause determinations," but did not specifically include the NTSB Safety Recommendations, Plaintiffs argue that they reasonably concluded that the Safety Recommendations and other related materials were not excluded by the Order. Accordingly,

---

[6] The quoted language is from a rough transcript and is not a citation to the official transcript in this case.

7

Plaintiffs contend their use of NTSB related evidence was not intentional and does not entitle Tesla to further relief. *See id.* at 3.

The Court finds no need to take curative action with respect to Plaintiffs' reference to the NTSB Safety Recommendations or other NTSB materials during opening statements. First, prior to opening statements, the Court gave the following instruction:

> During the trial, you'll hear certain things that are not evidence and you must not consider them. First, the lawyers' statements and arguments aren't evidence. In opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Additionally, at the close of trial, the Court will once again remind the jury that the opening statements, and any statements and arguments made by lawyers are not evidence. The Court is satisfied that those instructions will adequately cure any prejudice caused by Plaintiffs' improper reference to the NTSB materials at issue given that Tesla does not argue that Plaintiffs impermissibly referenced the inadmissible NTSB materials during their case-in-chief.

Moreover, Tesla fails to offer any curative action that would appropriately address the reference to the NTSB materials. Indeed, Tesla simply asks that Plaintiffs be precluded from referencing the NTSB Safety Recommendations in their closing arguments. However, because Tesla does not assert that Plaintiffs have offered those exhibits into evidence, they would already be foreclosed from referring to such evidence during the closing arguments. Consequently, Tesla's Motion as to the NTSB issue is effectively moot.

### B. Reference to Tesla's Autopilot Recall

Tesla argues that Plaintiffs also violated the Court's Omnibus Order on the Parties' Motion *In Limine*. ECF No. [433]. In that Order, the Court prohibited Plaintiffs from introducing "evidence of the 2023 [R]ecall" to the extent the evidence was offered for any purpose other than to show

8

the feasibility of any subsequent remedial measures. *Id.* at 32. According to Tesla, Plaintiffs violated the Court's Order by introducing evidence that referenced the "Defect Information Report" (DIR), which Tesla contends is merely another name for a recall, despite the parties previously stipulating to the feasibility of the remedial measures. Tesla contends the prejudice caused by the introduction of this evidence was further exacerbated by the testimony Plaintiffs elicited from their expert, Dr. Mary Cummings. During her testimony, Cummings "referenced the DIR and described it as 'Tesla's statement that indeed their technology is defective." ECF No. [487] at 11. (quoting 7/17/25 AM Rough Transcript at pp. 13-15 and 7/17/25 PM Rough Transcript, at p. 27). Additionally, Cummings testified that Tesla agreed that "NHTSA did an investigation [and d]etermined there was enough evidence to suggest that the Driver Monitoring System and Autopilot was defective." *Id.* at 11.[7]

Tesla maintains that Cummings relied on inadmissible recall evidence to give a false impression that "Tesla agreed in the DIR with NHTSA's view that Autopilot was defective." *Id.* at 13. However, Tesla did not agree with NHTSA's conclusion. Instead, Tesla specifically stated in the DIR that "[w]hile not concurring with the agency's analysis, in the interest of resolving EA22-002, Tesla determined on December 5, 2023, to voluntarily administer a recall and provide the remedy described below." *Id.* (quoting ECF No. [487-8] at 4).

Tesla further argues it has not only been prejudiced by the false impression that it agreed there was a defect in the Autopilot system, but also by the impression that Tesla has done nothing to remedy the purported defect, despite the numerous counter-measures taken by the company. As a result of the prejudice caused by Plaintiffs' use of inadmissible evidence, Tesla insists that it has

---

[7] While the Court does not find the statement particularly relevant to Tesla's argument, Tesla also points to Cummings' testimony that "other auto manufacturers had not 'filed a defect information report applicable to all models they have ever produced equipped with any version of their Level 2 autonomous features." ECF No. [487] at 11.

9

been forced into an untenable situation where it is now required to explain the circumstances surrounding certain statements in the DIR report while risking opening the door for Plaintiffs to further discuss the subsequent remedial measures taken as a part of the 2023 Recall. Tesla argues that Plaintiffs should not be rewarded for this behavior and, therefore, the Court should allow Tesla to discuss the Recall to rebut the unfair prejudice while foreclosing Plaintiffs from discussing the matter further. Additionally, Tesla seeks to have any exhibits already admitted further redacted to remove any references to the DIR.

Plaintiffs respond that the counter-measures discussed in the 2023 Recall are not subsequent remedial measures under Rule 407. Plaintiffs note that to fall under Rule 407, the subsequent measure must have made the injury or harm less likely to occur. ECF No. [508] at 3. Therefore, since Tesla argues in its Motion that none of the "countermeasures would have made a difference in this case," Plaintiffs insist that Tesla has effectively conceded that the measures do not amount to a subsequent remedial measure under Rule 407. Accordingly, Plaintiffs argue the Court should "admit a fully unredacted Exhibit 61, as well as the full Part 573 Safety Recall Report." *Id.* at 4.

Plaintiffs further contend that Tesla's argument regarding redactions is waived. Plaintiffs note that Tesla had an opportunity to object to the unredacted portions of the exhibit prior to its admission but failed to make any challenge. Moreover, Tesla failed to object when Plaintiffs asked Dr. Cummings about the Defect Information Report referenced in Exhibit 61, and Tesla's admission of defect. Consequently, Plaintiffs argue that Tesla has waived any argument regarding the inadmissibility of such evidence or testimony because of its failure to timely object during the proceedings.

Even if Tesla did timely object to the exhibit, Plaintiffs maintain they did not introduce any evidence of subsequent remedial measures. Plaintiffs point out that they introduced Exhibit 61, the NHTSA's ODI Resume, not "the part 573 Safety Recall Report, also referred to as the DIR." ECF No. [508] at 6. While Plaintiffs acknowledge they did not redact all references to the DIR, they explain that the Exhibit 61 presented to the jury redacted any mention of the subsequent remedial measures taken by Tesla. Plaintiffs once again point to the language of Rule 407 and note that the Rule only excludes evidence of subsequent remedial measures; it does not prohibit the reference or discussion of a "Part 573 Safety Recall Report." Plaintiffs explain that competent evidence of an investigation or report is not a subsequent remedial measure because "[r]emedial measures are those actions taken to remedy flaws or failures." *Id.* at 7. (quoting *Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc.*, 805 F.2d 907, 918-19 (10th Cir. 1986). Therefore, since a report or investigation merely identifies a problem, Plaintiffs argue that the DIR itself is not a subsequent remedial measure, even if the counter-measures described in the DIR are remedial measures.[8]

The Court finds that Plaintiffs did not violate the Court's Omnibus Order nor did Plaintiffs introduce inadmissible evidence of subsequent remedial measures that would implicate the curative admissibility doctrine. Indeed, the Court's Omnibus Order prohibited the parties from introducing evidence of the 2023 Recall, which the Court agrees is contained within the DIR.[9] However, Plaintiffs did not introduce the DIR and, instead, introduced the redacted NHTSA ODI

---

[8] Plaintiffs further argue that the DIR should not be considered a subsequent remedial measure because the issuance of the DIR is mandated by law, and therefore was not done out of a sense of social responsibility. Therefore, the policy goal behind Rule 407 is not furthered, given that Tesla would be required to produce such reports regardless of whether the Court admitted the evidence or not.

[9] As explained in ECF No. [487-7], the Defect Investigation may result in NHTSA making "a formal decision that a vehicle or equipment contains a safety-related defect and can order a manufacturer to conduct a recall." *Id.* at 15.

11

Resume which merely mentions the DIR, and does not reference the Recall or any subsequent remedial measures taken by Tesla. Accordingly, the Court finds that because Plaintiffs did not introduce evidence that there was a recall on the Autopilot system, Plaintiffs did not violate the Court's Order. Since the curative admissibility doctrine is only implicated by an opposing party's introduction of inadmissible evidence, Tesla cannot invoke the doctrine under the circumstances. *See Perez*, 2025 WL 1837523, at *1.

However, even assuming Tesla is correct that the mere mention of the DIR violated the Court's ruling precluding evidence of the 2023 Recall, curative evidence is only permissible to the extent it cures the prejudice suffered. *Martin*, 2016 WL 9243594, at *7 ("[T]he admissibility of curative evidence must be *proportional* to supposed unfairness created by otherwise inadmissible evidence . . . .") (emphasis added). To the extent Plaintiffs violated the Order, no prejudice resulted therefrom. The Court's ruling to exclude evidence of the 2023 Recall was based on an application of Fed. R. Evid. 407. The Court excluded the evidence because it involved countermeasures taken by Tesla that amounted to subsequent remedial measures. *See* ECF No. [433]. However, the evidence Plaintiffs introduced at trial involving the DIR only discussed purported defects in the Autopilot's design. Neither Plaintiffs, their witnesses, nor the exhibits Plaintiffs introduced, addressed the countermeasures that Tesla took in December 2023. Furthermore, the DIR is not, itself, a subsequent remedial measure. Federal Courts across the country have made clear that post-event reports and investigations are not subsequent remedial measures precluded by Rule 407. *See e.g.*, *M.T. v. City of New York*, 325 F. Supp. 3d 487, 498 (S.D.N.Y. 2018) ("[T]he City is incorrect that a post-event investigation is a subsequent remedial measure precluded by the Federal Rules of Evidence.") (citing 2 Weinstein's Federal Evidence § 407.06[1] (2018) ("Post-Event Investigations") ("Post-event tests or reports are generally outside the scope of Rule 407, and thus

admissible, on the basis that they are conducted or prepared for the purpose of investigating the cause of the accident, and can rarely be characterized as 'measures' which, if conducted previously, would have reduced the likelihood of the accident. It is only if changes are implemented as a result of the tests that the goal of added safety is furthered; and, even then, it is only evidence of those changes that is precluded by the rule.")); *Prentiss & Carlisle Co. v. Koehring-Waterous Div. of Timberjack, Inc.*, 972 F.2d 6, 9-10 (1st Cir. 1992) (agreeing with the district court that redacted documents were not subsequent remedial measures because the "selected parts of other documents discussed only [the defendant's] analysis of the problem, without mentioning any remedial measures suggested"); *Rocky Mountain Helicopters, Inc.*, 805 F.2d at 918–19 ("It would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports . . .. [S]uch tests are conducted for the purpose of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those actions taken to remedy any flaws or failures indicated by the test."); *Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096, 1103 (D. Or. 2013) (explaining that post-incident investigations and reports are not subsequent remedial measures because "[a]lthough 'such reports or inspections might represent the first or most preliminary steps that might eventually lead to decisions to make or implement changes,' they are not themselves excluded under Rule 407."). Accordingly, because there was no use of the term "recall" and no mention of subsequent remedial measures, the Court does not find any undue prejudice based on the evidence that has been introduced.

Tesla attempts to argue it has been prejudiced by the discussion of the defect in the DIR because now the jury is under the impression that a defect existed, and Tesla has failed to do anything to address the problem. However, that impression exists not because Plaintiffs introduced

13

evidence of subsequent remedial measures, the 2023 Recall, or even because Plaintiffs mentioned the DIR, but rather because Tesla has elected not to introduce evidence of any corrective action taken following NHTSA's determination that a defect existed. Tesla may certainly introduce evidence of any corrective actions taken to rebut this impression; however, the Court will not shield Tesla from the risks associated with opening the door and introducing such evidence.

As for the false impression Dr. Cummings gave during her testimony that Tesla agreed a defect existed in its Autopilot system, any prejudice was a result of Cummings' mischaracterization of the record, not because Cummings relied on purportedly inadmissible evidence. Tesla could have timely objected to Cummings' testimony or even introduced evidence on cross-examination showing that Tesla did not agree with NHTSA findings without having to discuss evidence of the Recall or any subsequent remedial measures. Moreover, if Tesla still intends to clarify or rebut Cummings' testimony, Tesla may refer to their statement that it did not agree with NHTSA's finding without opening the door to a discussion of the Recall or subsequent remedial measures, so long as Tesla does not mention those measures taken.

Therefore, because any violations of the Court's prior orders have already been adequately cured or did not unfairly prejudice Tesla, the Court sees no reason to take any additional curative action.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Tesla's Motion, **ECF No. [487]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 25, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record