UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21940-BLOOM/Torres

NEIMA BENAVIDES, as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased,

    Plaintiff,

v.

TESLA, INC., a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

DILLON ANGULO,                                            Case No. 22-22607-KMM

    Plaintiff,

v.

TESLA, INC. a/k/a Tesla Florida, Inc.,

    Defendant.
_____/

## DEFENDANT TESLA, INC.'S OBJECTION TO PLAINTIFFS' INTENDED USE IN TRIAL OF TESLA'S FORM 8-K REPORT, DATED JULY 23, 2025

Plaintiffs have indicated that they intend to use, in some unspecified way and for some unspecified purpose, pages 1 and 6 of a Form 8-K Report that Tesla furnished[1] to the United States Securities and Exchange Commission on July 23, 2025. A copy of that report is attached as Exhibit A.

Page 6 of that PDF report identified by Plaintiffs (which has a label of Page 4), reflects Tesla's revenues (among other data) for the past five quarters, ending with Quarter 2 of 2025. As

---

[1] In contrast with documents "filed" with the SEC, such as Tesla's quarterly 10-Q filings.

**Error! Unknown document property name.**

such, it is Tesla's belief that Plaintiffs' intent is to try to use this document as a means of providing evidence of Tesla's "financial resources" to be considered by the jury on the issue of punitive damages. *See* Fla. Std. Jury Instr. 503.2.c(2). There is no other potential issue in the case that the document could even theoretically be relevant to. However, even if this document's relevance were assumed—which it should not be since, as discussed below, the 8-K is irrelevant even as purported evidence of Tesla's "financial resources"—Plaintiffs should not be permitted to offer it in evidence or use it in any way in the presence of the jury.[2]

The first, and most fundamental, reason Plaintiffs should not be permitted to use this document is that the Court has not yet ruled on Tesla's pending Motion For Judgment As A Matter of Law on Punitive Damages. If that motion is granted (as Tesla believes it should be, for the reasons discussed therein), there will be no issue in the case that in any way concerns Tesla's finances and, thus, the document will be irrelevant. It would be unfairly prejudicial for Plaintiffs to be permitted to introduce evidence of Tesla's finances when they have rested their case without this evidence, and the Court has not yet ruled whether their claim for punitive damages will be permitted to proceed. Plaintiffs should, at a minimum, be precluded from attempting to use the Form 8-K unless and until the Court determines they will be permitted to proceed on their punitive damage claim.

However, even if it is assumed that punitive damages will be permitted, Plaintiffs should be precluded from offering the 8-K for several procedural reasons. First, they have rested their case. They failed to present evidence of Tesla's financial resources during their case-in-chief, and they should not be permitted to do so now, during Tesla's presentation of evidence. Although Mr.

---

[2] Tesla expressly preserves all other objections to the admissibility of the Form 8-K that are not discussed herein.

Eaton sought judicial notice of the 8-K before Plaintiffs rested, he sprung it on Tesla with no advance notice or meet and confer, and so the parties agreed to meet and confer. And then Plaintiffs rested without reservation (save rebuttal).

Second, this document was not identified on the Exhibit List as required by Court order; it certainly is not being used for impeachment purposes so it was required to be disclosed and, if it had, these issues could have been resolved earlier. Third, Mr. Eaton conceded Plaintiffs had no intention of introducing the document during their case, instead indicating they would seek to use this document during the cross-examination of Tesla's engineering representative. However, Plaintiffs deposed the witness, Mr. Rubio, and know that his scope of work does not require him to have personal (or any) knowledge of the document or its contents. Thus, they cannot lay a foundation for introducing the document through him and he should not be questioned on this issue that is wholly outside the scope of his employment, experience or his direct examination.[3]

Even still, if the Court permits Plaintiffs to offer such evidence, the 8-K should be excluded because it does not present an accurate picture of Tesla's financial resources. Among other reasons, it lists only Tesla's revenues from Quarter 2 of 2025 and the preceding four quarters. It does not account for Tesla's liabilities and, as such, would create unfair prejudice because it reflects the money Tesla brought in during that time, with no mention of its obligations. It invites the jury to guess or speculate about Tesla's value or net worth, or its capacity to pay a judgment, wholly divorced from those data points. *See* Fed. R. Evid. 403.

---

[3] If the Court were to permit questioning of the witness on Tesla's financial condition, Tesla requests the Court instruct Plaintiffs' counsel to not read any figures or data without first laying foundation that the witness has seen or understands the document. Counsel should not be permitted to ask the question for which the witness has no foundation (e.g., "Tesla's revenues last quarter were…?).

For this reason, courts ordinarily limit evidence on a defendant's "financial resources" to evidence of that defendants' *net worth*, which provides a more accurate picture of the defendant's financial condition. *See Rinaldi v. Aaron*, 314 So. 2d 762, 765 (Fla. 1975) ("[E]vidence of financial worth is admissible and may be considered by the jury in its determination of the amount to be awarded as punitive damages, but evidence of worth is not a requisite to such award."); *accord Brooks v. Rios*, 707 So. 2d 374, 376 (Fla. Dist. Ct. App. 1998) ("Although evidence of a defendant's net worth (i.e. that amount by which assets exceed liabilities) is admissible and may be considered by the jury in its assessment of punitive damages, it is not a prerequisite for such an award."). Simply stated, because the 8-K lists certain assets but no liabilities, it would provide an inaccurate and unfairly prejudicial picture of Tesla's financial health.

In all events, the probative value is at best minimal because it is neither logical nor legal to increase punitive damages simply because of the size of the defendant. *Bankers Multiple Line Ins. Co. v. Farish*, 464 So. 2d 530, 533 (Fla. 1985) ("[W]e emphasize that it is not an accurate rule of law that the greater a defendant's wealth, the greater must be punitive damages."). On the other hand, the prejudice is great because it is likely to be misused by the jury to express a bias against big business, to punish the company for activities unrelated to Plaintiff, to skew the assessment of reprehensibility, and inflate a punitive damages award based on passion and prejudice rather than legitimate interests of punishment and deterrence. *Campbell*, 538 U.S. at 417 ("the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses"); *see also Gore*, 517 U.S. at 591 (Breyer, J. concurring); *City of Newport v. Fact Concerts Inc.,* 453 U.S. 247, 270-71 (1981); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 464 (1993).

Finally, Tesla submits that this issue does not need to be resolved before Tesla's representative testifies. Should the Court dismiss the punitive damages claim, the financial resources information is clearly irrelevant and inadmissible. Even if the Court denies Tesla's pending motion on the punitive damages, there is debate over and prejudice arising from use of the 8-K as outlined above and the Court should not create a controversy where it may be easily avoided. For instance, after the Court rules on whether the Plaintiffs' case-in-chief supports this jury deciding the issue of punitive damages—a conclusion Tesla adamantly opposes—the parties should meet and confer in an effort to negotiate a stipulation that accurately demonstrates Tesla's net worth.

Respectfully submitted,

/s/ *Wendy F. Lumish*
**WHITNEY V. CRUZ**
Florida Bar No. 800821
**WENDY F. LUMISH**
Florida Bar No. 334332
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com
wendy.lumish@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**JOEL SMITH**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**

1441 Main Street, Suite 1200
Columbia, SC 29201
Tel. 803-726-7420 / Fax: 803-726-7421
joel.smith@bowmanandbrooke.com

**HILARIE BASS**
Florida Bar No. 334243
**HILARIE BASS, ESQUIRE LLC**
2821 Bayshore Drive, UPH-B Miami, FL 33133
Tel. 305-505-8777
bassh@bassinstitute.org


*Attorneys for Defendant TESLA, Inc.*