UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-21940-BLOOM/Torres**

NEIMA BENAVIDES, *as Personal Representative of the Estate of Naibel Benavides Leon, deceased*,

    Plaintiff,

v.

TESLA, INC., *a/k/a. Tesla Florida, Inc.*,
    Defendant.
_____/

**Case No. 22-cv-22607-BLOOM**

DILLON ANGULO,

    Plaintiff,

v.

TESLA, INC., *a/k/a/ Tesla Florida, Inc.*,
    Defendants.
_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR ORDER CONFIRMING CONTINUED CONFIDENTIALITY OF MATERIALS DESIGNATED UNDER CONFIDENTIALITY PROTECTIVE ORDER**

Plaintiffs, Neima Benavides and Dillon Angulo, by and through their undersigned counsel, hereby file this Opposition to Defendant, Tesla, Inc.'s ("Tesla") Motion for Order Confirming Continued Confidentiality of Materials Designated Under Confidentiality Protective Order [D.E. 368] as follows:

**I.    Procedural History.**

Tesla's procedural history is incomplete. While Tesla acknowledges that the Court entered a pretrial order, at its request, governing the procedure Tesla was required to follow in order to preserve the confidentiality of exhibits or testimony, Tesla leaves out the details of that procedure. In order to protect what it considered to be trade secrets, Tesla was required to do the following:

> No later than **6:00 P.M. on July 13, 2025**, Tesla shall notify the Court of the specific testimony and exhibits it anticipates will be introduced on the **first day of trial** that contain trade secrets that should not be disclosed to the public. Tesla shall also explain how disclosure of the specific evidence or testimony would be harmful.1 The Court will determine whether the identified evidence warrants temporary closure of the courtroom before the start of Plaintiffs' case-in-chief. If the Court deems any evidence or testimony should not be presented to the public
> . . .
> For the remaining days of the trial, Tesla shall identify any trade secret information and make its request for temporary closures of the courtroom the afternoon before the anticipated evidence or testimony is expected to be introduced.
> . . .
> Additionally, all proceedings regarding a request to close the courtroom shall be closed to the public.
> At the close of trial, the Court will confer with the parties to reexamine whether any sealed portions of the transcript and any sealed filings may be placed on the public record.

DE 459 at 3-5.

At the beginning of trial, the Court reiterated Tesla's burden to protect its alleged trade secrets as follows:

> THE COURT: Let me just put this to bed. Because the Court entered an order specifically because there was a concern on the part of Tesla that there was a disclosure of trade secrets. Your agreement to find that certain exhibits are confidential during the course of discovery is very different from this Court finding that there are trade secrets.
> I've told you from the beginning this is going to be an open trial. My order was very clear. So let me emphasize it again. To ensure that Tesla is able to provide sufficient justification for any potential courtroom closures, any filings regarding a request to close the courtroom may be filed under seal.
> Additionally, all proceedings regarding a request to close the courtroom shall be closed to the public. However, you need to advise the Court what specific portions of Akshay Phatak's testimony are true trade secrets. The mere fact that you filed a deposition under seal does not support what the Court is requiring. So you can file that with the Court. You can file it under seal. But it is Tesla's burden to show the

> Court that it is, in fact, a trade secret.
> MR. BRANIGAN: Your Honor, we agree with that. We accept that. I just want to give you the history of how this deposition was designated confidential pursuant to protective order, how the Plaintiffs until just now have never said they didn't think it was confidential. I thought it would be helpful for the Court to know that.
> And we will do what Your Honor has instructed us to do. We will submit it tonight so that you know from us the specific portions of that deposition that we think are covered by your confidentiality protective order that was entered last Friday.
> THE COURT: So there are two layers. One are the objections that were already filed. To the extent that those objections do not refer to trade secrets, and there are additional portions of Akshay Phatak's depositions that Tesla believes are trade secrets, then you need to file it under seal so the Court can review specifically what portions you're referring to that were not objected to.
> MR. BRANIGAN: Understood. Thank you.

Trial Transcript Day 1 at 222-226

> That order, Docket Entry 459, was very specific in terms of the burden that was placed on either party for purposes of filing an item under seal. I understand that you had an agreed upon confidentiality order that was signed during the long period of discovery because the parties were under the belief that certain items were protected or were confidential in nature, but that is very different from its use at trial. And it is the requirement to establish that there in fact are trade secrets at issue. And I would reiterate the Court's order that requires that there be sufficient justification for any potential courtroom closures, and that would include any filing of items under seal. Because that -- that certainly informs the Court that those items do contain the requisite trade secrets.

Trial Transcript Day 8 AM at 2:

As Tesla conceded in its motion, it ultimately "did not seek to close the courtroom at any time during the trial." (DE 554 at 3) Nor did it file any motion seeking to designate a specific trial exhibit a "trade secret." As a result, Tesla has waived its objection to unsealing the trial testimony and exhibits.

## II. Waiver

It has longe been recognized that a party may waive its ability to maintain confidentiality of documents by failing to object to their discussion and admission at trial. *In Littlejohn v. Bic Corp.,* 851 F.2d 673 (3d Cir. 1988), the Defendant assumed that the pre trial protective order

Page **3** of **15**

governed the treatment of the confidential documents admitted into evidence during trial. The Third Circuit disagreed, and held that the defendant's failure to address the documents during trial acted as a waiver:

> The court properly found BIC waived whatever rights to confidentiality that might have been created by the PO. In her pre-trial memorandum, the plaintiff signaled her intention to use some confidential documents as trial exhibits. BIC failed to raise the issue of confidentiality. BIC also failed to assert its interest at trial when the plaintiff referred to and discussed portions of the confidential exhibits with her experts. Finally, BIC did not object when the plaintiff moved to have the disputed exhibits admitted into evidence, although after the settlement, BIC did move to seal the record "for the reasons that we stated in our motion for protective order." The court refused.
> It is well established that the release of information in open court "is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use." *National Polymer Products v. Borg–Warner Corp.,* 641 F.2d 418, 421 (6th Cir.1981). The references to the confidential documents made in open court may have constituted a sufficient publication. *See Matter of Continental Illinois Securities Litigation,* 732 F.2d at 1312–13 (failure to read aloud entire report is not determinative, references and scattered quotes sufficient to support public access). But, in any event, we hold that BIC's failure to object to the admission into evidence of the documents, absent a sealing of the record, constituted a waiver of whatever confidentiality interests might have been preserved under the PO.

*Littlejohn* at 680–81.

More recently, in *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, (E.D. Va. 2018), the district court applied *Littlejohn* and other cases to a more analogous factual situation. First, the district court noted that "[n]otwithstanding the need to weigh the competing interests when an effort is made to seal a document in advance of or contemporaneously with its use or filing with a court, an entity seeking to seal such document after its use or admission can be held to have waived its right to assert a continuing interest in the document in opposition to the presumptive right of access." *Benedict* at 756-57.

The district court then reviewed several cases as examples that defined the full scope of the waiver doctrine. The court summarized the lessons of these cases as follows:

> These examples teach several key points. First, each shows that the waiver doctrine applies to prospective attempts to seal documents (i.e., to any argument that the proponent of sealing has an interest in confidentiality that outweighs the public's right of access). Second, as indicated by *Certusview*, the doctrine applies to materials that were previously sealed (even as exhibits to summary judgment motions). Third, all three examples demonstrate that, as to trial materials, the waiver doctrine is triggered if the proponent of sealing fails to seek protections at or before trial. And, fourth, *Cousins* reveals that the waiver doctrine applies to testimony that was not sought to be protected at trial.

*Benedict* at 758.

The district court then described the circumstances that led to its finding that the defendant had waived its ability to put the cat back in the bag:

> As demonstrated by Defendants' arguments, Defendants knew of the confidential nature of the information to be presented at trial. Nevertheless, they did not attempt to protect that information during trial. They did not ask that the courtroom be closed; they did not request that observers be ordered not to reveal what they heard; they did not avoid discussing confidential topics or seek to prevent Plaintiff from doing so in open court; and they did not apprise the Court of any confidentiality concerns.
>
> Thus, this case is precisely like *Certusview*, in which previously sealed materials were admitted into evidence, included in public filings, and discussed openly at trial, and waiver was found. *See Certusview*, 198 F.Supp.3d at 588 n.12. It is also similar to *Level 3*, in which an intervenor knowingly failed to take any measures to prevent the release of confidential information at trial, and the same result obtained. *See Level 3*, 611 F.Supp.2d at 587–88. And, it is like *Cousins*, in which waiver was found because "a request to protect or seal ... testimony should have come before, or at least during, trial" but did not. *See Cousins*, 858 F.Supp.2d at 618–19. Indeed, it is also like *Cousins* in that "the court cannot undo any potential impact of public disclosure" that has already occurred. *See id.* at 619.

*Benedict* at 761.

Here, Tesla knew that Plaintiff intended to offer its alleged "trade secrets" into evidence at trial. It filed a motion addressing same. The Court entered an order laying out the procedure for Tesla to preserve the confidentiality of its "trade secrets" during trial. But Tesla chose not to utilize the procedure, and instead failed to raise a "trade secret" objection at any point during trial. That disclosure cannot be undone.

While we believe that, at least with respect to the trial testimony and exhibits, the Court can end its analysis here, we acknowledge that the Court may disagree and further, that Tesla is objecting to the unsealing of a handful of documents that were not admitted at trial. We will thus continue our argument.

### III. Tesla has not met its burden to establish that each of the identified documents are trade secrets.

Under Florida law, Tesla was required to demonstrate that the challenged documents contain information that "(1) was distinct from general knowledge; (2) was not readily ascertainable; (3) had independent value; and (4) was subject to reasonable security measures." *DePuy Synthes Prods., Inc,* 990 F.3d 1364, 1371 (Fed. Cir. 2021) For the first time during this litigation, Tesla has submitted a declaration in which it attempts to make an evidentiary showing that the challenged documents are trade secrets. However, Rubio Blanco's declaration is deficient. While it contains general conclusory averments that these documents meet the definition of trade secrets, it fails to demonstrate *how* and *why* these *specific* materials related to 6 year old hardware and software *currently* have an independent value derived from secrecy.

As we have previously noted, one of the factors the Court should take into account in balancing the interests of the public's right to disclosure against Tesla's right to confidentiality is the passage of time. It is not enough that the unsealing of these documents might once have caused competitive harm. Tesla was required to "present specific evidence showing how release of those materials would result in competitive harm *at this time*." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991) (emphasis supplied) The technology involved in this

accident is from 2019 – an eon in this rapidly advancing industry.[1]  Tesla indicated that the data involved here was so old that it no longer had the software available to create the augmented video ordered by the court and essentially had to reconstruct it. How could the disclosure of completely outdated software place Tesla at a competitive disadvantage today?

Below we respond to each of Tesla's objections:

a. **Tesla's Moving Objects Manual** (Trial Exhibit D-318): This s a 2020 document showing how a Hardware version 2.5 and earlier vehicle labeled the world around it. It was introduced with Dr. Cummings who described it as a training manual for how the vision system determined which obstacles to label and which to reject. The entire manual was admitted without objection. See Trial Day 3AM, pp 52-57. Tesla has not used this manual for years, and nothing about it remains a trade secret today. Tesla has not made, and will not make, any representation that their Hardware 3, Hardware 4, or any newer vision system technology utilizes this information.

Also, the Curt should compare the manual to this video from Tesla's autonomy day, on

---

[1] A brief summary of Tesla's hardware versions is appropriate here. From about 2014 to 2016, Tesla worked with a computer vision company called Mobileye to produce the first version of their Autopilot hardware (HW1). This hardware had one camera, 12 ultrasonic sensors, and radar sensors. It was called "Gnat Brain" and "Monocam" in the HW I Theory of Operations manual. In 2016, Tesla unveiled Autopilot hardware version 2.0 (HW2). This version was completely created in house and bumped the number of cameras up from one to eight, and also utilized a new Nvidia GPU. This is the oldest hardware version that can handle Full Self-Driving features or can be upgraded to FSD, primarily because the older HW1 vehicles lack the cameras necessary for FSD.
    In 2017, Tesla upgraded the Autopilot hardware to version 2.5 (HW2.5) and this is the hardware that the Model 3 originally shipped with. This was also the hardware version of McGee's Model S. 2019 marked the release of Autopilot version 3.0 (HW3), which was a massive update, and the first to use Tesla's very own chip design. This version is required for the Full Self-Driving package to operate some of the more advanced features. In 2023, Tesla began rolling out Autopilot hardware version 4.0 (HW4), which is the second iteration of their proprietary chip design. The FSD 2 computer reportedly has 2-4x the processing power of its predecessor.

      April 22, 2019, less than a month before this accident. (https://www.youtube.com/live/Ucp0TTmvqOE) In this video, Tesla discusses the capabilities of its vision and object detection and response components in far greater detail than this exhibit.

b. **Excerpts of "Theory of Operation HW2.5 Model S"** (Trial Exhibit P-14): This is an internal Tesla document that sets forth the theory of how Autopilot and its various features operate. It does not include information as to the "technical capabilities or parameters" of Autopilot. (Trial Transcript Day 12 AM pp 11) It's for the use of the Service Team. Rubio Blanco was asked if it contained any trade secret information, and he responded only that it included information for internal use. (Id. at 11-12) It's an internal document "prepared by engineers or Tesla members in order to assist the service team." (Id at 12) Essentially, this is a technical service bulletin for hardware that is already three generations old.

c. **Excerpts of Tesla's Response to NHTSA Inquiries in Relation to PE 21-020**: These are documents from Tesla's response to NHTSA inquiries that are over 4 years old. None of these documents contain any type of trade secret information. They contain information responsive to NHTSA's investigation into Autopilot system failures. The only reason it is given "confidential" status under the federal regulations is so that the documents are not subject to production under a FOIA request.

Exhibits P18 and P20 set forth the hands-on logic as well as when the system fires a "take over immediately" message as part of its aborting procedures. Both of these exhibits describe now outdated technology. Tesla now incorporates an driver facing camera in its driver monitoring system, having abandoned a torque-based only system. The aborting procedures exhibit also addresses outdated technology, and simply establish when and how

the system shuts off, which can readily be discerned by any driver through use of the car.

d. **Confluence Page Titled "Warning Sequence"** (Trial Exhibit P-116): This document is even more outdated then the prior exhibits regarding the hands-on warning sequence, considering half of it relates to hardware 1, a system that has not been on the market for nearly a decade. The hands-on reason analysis in hardware 2 is similarly no longer relevant nor of any trade secretive value considering Tesla has abandoned it. If Tesla was really concerned about the proprietary nature of this information, they simply could have redacted this document at the time of its admission but instead chose not to. Our focus here was simply on the 4th page and the fact that it indicated a drivable space violation chime that never fired.

e. **June 15, 2018 Tesla Quarterly Update to NHTSA** (Trial Exhibit P-23): This document is similar to Tesla's other responses to NHTSA. They are simply marked confidential so as to not be subject to FOIA requests. The discussion of the hands-on warning sequence as well as how the vehicles send and receive information over the air is publicly available through a simple Google search. In fact, Mr. Musk has shared this information publicly in numerous settings, including in the 2015 and 2016 press calls that were played for the jury. Finally, the hands-on warning sequence referenced herein is now outdated.

f. **2020 AP Safety Goals** (Trial Exhibit P-94): This exhibit consist of four pages from a document Tesla wants to hide from the world, not because it contains trade secrets, but because it contains Tesla's embarrassing admission that its autopilot systems were at fault for 6 to 7 percent of the accidents in which Tesla received collision snapshots. Of course it is damaging to their reputation and shows what Tesla has known all along, that its system fails at an alarming rate. That, however, does not warrant withholding this information, nor

the testimony about it, from the public any longer.

g. **December 24, 2024, Declaration of A. Moore with Appendices** (Exhibit to Pre-Trial Filings at DE #'s 285 at Ex. B, 305, 306, 318, 347, and 368): Alan Moore's declaration sets forth a host of opinions he reached after review of the "treasure trove" of data that Plaintiffs obtained from the ECU and MCU. It contains his own conclusions from review that data and of other Tesla documents. Among other facts, the declaration reveals the hardly sensitive information that Tesla's vehicles transmit data to Tesla's servers, a fact discussed in its owners manuals. (https://www.tesla.com/ownersmanual/model3/en_us/GUID-2E8E5E0B-DAA8-40B8-9804-45F5960538DF.html)  The most important aspects of his declaration concerns Telsa's attempts to hide the autopilot data from Plaintiffs, which in no way implicates trade secrets. Finally, Tesla did not seek to designate any of the data or documents reviewed by Moore and incorporated in his declaration as trade secrets, so the declaration itself cannot be considered a trade secret.

h. **December 27, 2024, Declaration of D. Shoemaker** (Exhibit to Pre-Trial Filing at DE # 297, Ex. D): David Shoemaker testified publicly during trial about the very issues contained in his declaration. To the extent that the declaration encompassed any technical information, it involved neither proprietary nor sensitive business /technical information belonging to Tesla, but instead related to *methods* of transmitting data and saving data on servers. Such methods are not unique to Tesla.  His declaration is entirely consistent with the trial testimony, which was not objected to at the time, and which has since been filed on the publicly available docket.

i. **December 2, 2024, Declaration of O. Drokin** (Exhibit to Pre-Trial Filings at DE # 285,

Ex. A and DE # 368 at Ex. D): Drokin's declaration contains no information from Tesla at all. Tesla previously acknowledged that Drokin created the augmented video in "a manner not employed by Tesla and which may be instructional to others, including Tesla's competitors." DE 368 at 8. By definition, a method that Tesla doesn't use cannot be a trade secret of Tesla, and reinforces the fact the creation of an augmented video is a "readily ascertainable" process as a matter of law, and therefore not a trade secret. Without providing any source codes, a third-party consultant's description of how he created augmented video cannot put Tesla at a competitive disadvantage.

j. **Excerpt of Notes from A. Moore's Expert File** (Exhibit to DE # 318 at p. 603 of that Filing): Moore repeatedly discussed what this CAN data showed at trial. (Transcript Day 4 at 179, 185, 197) Tesla did not object or request a trade secret designation. Rubio Blanco failed to explain how data showing the car's steering angle, steering torque, and radar measurements had "independent value." (Id. at 179)

k. **January 15, 2025, Second Supplement Declaration of A. Moore** (Exhibit to DE #'s 305 at pages 333-37 and 306 at pages 334-38): See our response to document g.

l. **Email Containing Product Privacy Signals** (Exhibit to DE # 268 at Ex. J; BENAVIDES-00001244-303): This is a Confluence page showing signal names and corresponding English language description of what they correlate to. It involves a 2018 Model 3 and is completely outdated information that has no relevance nor trade secret value to Tesla today. Tesla no longer uses the vast majority of these signals in its current hardware systems. As Telsa have stated repeatedly throughout this litigation, there is no table of contents or document which sets forth all of the various signal names or their meanings.

In the unlikely event that the Court finds that, for one or more documents, Tesla's request to seal has not been waived, and the document contains a trade secret, the balancing test discussed below still favors their unsealing.

### IV. Even if the documents discuss trade secrets, the balancing test weighs in favor of their unsealing.

As explained in *DePuy Synthes Products, Inc.*, *supra*, at 1369:

> The Supreme Court has recognized "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (footnotes omitted). This longstanding right helps secure the integrity and transparency of the judicial process. *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (noting right of access promotes public review and democratic legitimacy of the federal courts). There is accordingly a "presumption that judicial records should be available to the public." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1236 (11th Cir. 2013); *see also Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1358 (Fed. Cir. 2020) (citing *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016)); *In re Violation of Rule 28(d)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011).

This presumption can only be overcome by a compelling interest. Tesla's desire to avoid bad publicity is not such a compelling interest.

The district court, in *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023 CBA, 2010 WL 889799, at *6 (E.D.N.Y. Mar. 8, 2010), explained why:

> Nycomed's allegations of wrongdoing do not reveal any of Glenmark's trade secrets or even specific ANDA information maintained as confidential by the FDA. Although Glenmark's desire to shield this information from public view is understandable, "[c]ompetitive harm should not be taken to mean simply any injury to competitive position, as might flow ... from embarrassing publicity attendant upon public revelations." *Public Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1291 n. 30 (D.C.Cir.1983); *accord Bloomberg L.P. v. Board of Governors,* 649 F.Supp.2d 262, 279 (S.D.N.Y.2009); *see Lugosch,* 435 F.3d at 123 n. 5 ("[T]he natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public ... cannot be accommodated by the courts without seriously undermining the tradition of an open judicial system.") (quoting *Brown & Williamson Tobacco v. FTC,* 710 F.2d 1165, 1180 (6th Cir.1983)).

*See also Wilson v. Am. Motors Corp.,* 759 F.2d 1568, 1570–71 (11th Cir. 1985) ("[s]imply showing that the *1571 information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access."); *and Union Oil Co. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000) (holding that while "[m]any a litigant would prefer that the subject of the case ... be kept from the curious," "[w]hat happens in the halls of government is presumptively public business").

In *Benedict, supra,* the defendant successfully established that some of the trial exhibits contained trade secret information. Although the district court had already found waiver, it nevertheless proceeded to conduct the balancing test, and determined that sealing the exhibits after trial was unwarranted, as follows:

> There seems to be no dispute that Defendants' materials are proprietary and could cause Defendants harm if disclosed. That assertion supports a conclusion that Defendants' information could be used for an improper purpose, such as "unfairly gaining a business advantage." Viewed in a vacuum, that could overcome the common law presumption. Here, however, another factor must also be weighed: "whether the public has already had access to the information." In this case, Defendants' confidential information was revealed publicly at a trial without restriction or objection…. And, the trial exhibits were not only admitted into evidence, but also discussed in detail on the record and/or shown on large television screens in the court during the presentation of evidence and in closing arguments. The relevant factors are, at best, in equipoise. Given that the presumption is in favor of open access and that a "significant countervailing interest" must "outweigh[ ] the public's interest in openness" to overcome that presumption, equipoise is insufficient.

*Benedict* at 765–66. (citations omitted)

The same facts are present here. These documents were revealed publicly at a trial without restriction or objection. They were not only admitted into evidence, but also discussed in detail on the record and/or shown on large television screens in the court during the presentation of evidence and in closing arguments. Thus, at best, the factors relevant to the balancing test are here in equipoise, which is insufficient to require the sealing of any documents.

**V.     Conclusion**

Under the Court's Order (DE 459) Tesla was required to raise trade secret objections during trial. For whatever reason, Tesla chose not to raise a single trade secret objection over the course of the trial. Tesla has thus waived its ability to obtain any post-trial relief related to trial testimony and exhibits. Even if Tesla had timely raised a trade secret objection, the documents at issue did not constitute trade secrets. And even if some of the documents were trade secrets, application of the balancing test still weighs in favor of their disclosure to the public.

WHEREFORE, Plaintiffs respectfully request that the Court deny Tesla's Motion to Preserve Confidentiality, and unseal all documents currently under seal in the docket, and provide any other relief as the Court deems just and proper.

Date:  September 12, 2025

Respectfully submitted,

*s/  Douglas Eaton*
**Douglas F. Eaton, Esq.**
Florida Bar No. 0129577
EATON & WOLK PL
2665 South Bayshore Drive, Suite 609
Miami, FL 33133
Tel. 305-249-1640
Fax: 786-350-3079
deaton@eatonwolk.com
cgarcia@eatonwolk.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on 12th day of September, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**WHITNEY V. CRUZ**
Florida Bar No. 800821
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel. 305-995-5600 / Fax: 305-995-6100
whitney.cruz@bowmanandbrooke.com

**THOMAS P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**DREW P. BRANIGAN**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
Tel. 248-205-3300 / Fax: 248-205-3399
thomas.branigan@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

**JOEL SMITH**
(Admitted *Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel. 803-726-7420 / Fax: 803-726-7421
joel.smith@bowmanandbrooke.com

*Attorneys for Defendant Tesla, Inc.*

**Brett Schreiber, Esq.**
Admitted *Pro Hac Vice*
**Satyarinivas "Srinivas" Hanumadass, Esq.**
Admitted *Pro Hac Vice*
**Carmela Birnbaum, Esq.**
Admitted *Pro Hac Vice*
SINGLETON SCHRIEBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
bschreiber@singletonschreiber.com
vas@singletonschreiber.com
cbirnbaum@singletonschreiber.com
jjusto@singletonschreiber.com
eelms@singletonschreiber.com
service@singletonschreiber.com
*Co-Counsel for Plaintiffs Dillon Angulo and Neima Benavides*

                                                  s/ *Douglas F. Eaton*
                                                    Douglas F. Eaton