# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| NEIMA BENAVIDES, as Personal Representative of the Estate of Naibel Benavides Leon, deceased,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TESLA, INC., a/k/a/ Tesla Florida, Inc.,<br><br>　　　　　Defendant. | Case No. 21-cv-21940-BLOOM/Torres |
| DILLON ANGULO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TESLA, INC., a/k/a/ Tesla Florida, Inc.,<br><br>　　　　　Defendant. | Case No. 22-22607-BB |

**DECLARATION OF JULIAN W. POON**

I, Julian W. Poon, declare under penalty of perjury under 28 U.S.C. § 1746 as follows:

1.　　I am a partner in the law firm Gibson, Dunn & Crutcher, LLP. I am more than eighteen years old and am licensed to practice law in the State of California. I maintain my law practice at 333 South Grand Avenue, Los Angeles, California 90071. I am admitted *pro hac vice* and am one of the counsel of record representing Defendant Tesla, Inc. in the above-captioned matter. I submit this declaration in support of Defendant Tesla, Inc.'s Reply in Support of Amended Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for a New Trial or to Amend the Judgment ("Reply Brief"). I am familiar with the facts and circumstances set forth in this declaration and, if called to testify, I could and would competently testify thereto.

2.　　Attached as **Exhibit 1** is a true and correct copy of the article, *The Lawyer Who Beat Tesla Is Ready for 'Round Two'*, authored by Andrew J. Hawkins, published by The Verge

on August 7, 2025, and available at https://www.theverge.com/tesla/720157/tesla-death-lawsuit-verdict-lawyer-brett-schreiber-interview.

        3.      Attached as **Exhibit 2** is a true and correct copy of the article, *From Miami Roots to Landmark Tesla Verdict: Brett Schreiber's Journey as a Leading Trial Lawyer*, authored by Lisa Willis, published by Law.com on September 15, 2025, and available at https://www.law.com/dailybusinessreview/2025/09/15/from-miami-roots-to-landmark-tesla-verdict-brett-schreibers-journey-as-a-leading-trial-lawyer/?slreturn=20251103221401.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 7, 2025, in Pasadena, California.

                                                      Julian W. Poon

# EXHIBIT 1

SUBSCRIBE

TESLA  POLICY  TECH

# The lawyer who beat Tesla is ready for 'round two'

'There are two Teslas,' attorney Brett Schreiber told us. 'There's Tesla in the showroom and then there's Tesla in the courtroom.'

by  Andrew J. Hawkins

Aug 7, 2025, 4:00 AM PDT

Comments (All New)



Image: The Verge, Getty Images

TESLA  POLICY  TECH

# The lawyer who beat Tesla is ready for 'round two'

'There are two Teslas,' attorney Brett Schreiber told us. 'There's Tesla in the showroom and then there's Tesla in the courtroom.'

by  Andrew J. Hawkins

Aug 7, 2025, 4:00 AM PDT

27  Comments (All New)

  Andrew J. Hawkins is transportation editor with 10+ years of experience who covers EVs, public transportation, and aviation. His work has appeared in The New York Daily News and City & State.

The day after he won an unprecedented $243 million verdict in a wrongful death case against Tesla, attorney Brett Schreiber posted a reel on Instagram celebrating the victory. His song pick: 1992's "Damn It Feels Good To Be a Gangsta" by the Geto Boys.

"This is a verdict that will change the world," Schreiber wrote in the caption, as Bushwick Bill, Willie D, and Scarface rap in the background about how "everything's cool in the mind of a gangsta."

If that sounds like hyperbole, mixed with a dose of macho boasting, you're not wrong. But in some sense, Schreiber earned his right to strut.



The day before posting the reel, he stood in a Florida courtroom alongside his clients as a jury handed Tesla a major defeat. The company was partially responsible — 33 percent, to be exact — for a 2019 crash that killed 22-year-old Naibel Benavides and seriously injured her boyfriend, Dillon Angulo. (It was determined that the driver of the Tesla Model S invovled, George McGee, was mostly responsible. McGee settled with the families in 2021.) The company was ordered to pay as much as $243 million in punitive and compensatory damages to Angulo and Benavides' family. It's a huge sum, though one that could be reduced on appeal.

ADVERTISEMENT

The verdict was highly unusual, insofar as the case even went to trial. Tesla has studiously avoided facing juries in fatality cases involving its driver assist technology, preferring to settle with the injured parties. But when it has gone to trial, it typically wins, such as in two previous cases in California.

The winning streak came to an end with Schreiber's case. We spoke a few days after the decision about his historic win, how he used Elon Musk's own words to bolster his case, and how Tesla could face even steeper fines in the many lawsuits that are still pending.

*This transcript has been edited for clarity.*

**I've been following Tesla for a very long time and I know that the company has a pretty solid track record of avoiding these types of judgments. Why do you think this was different?**

Well, I mean, they did make an overture to settle the case, and for a very large sum of money. Now, it was a fraction of the verdict, but the condition of the settlement was that it would be secret. And my clients were not interested in a secret settlement. They knew that this was a case and a cause that was bigger than themselves. And it was important to them that we shine a light on what Tesla has done.

My theme in my closing argument was about Tesla's choices and Tesla's words. And to your point as to why they've been successful, I think it's in part because there are two Teslas. There's Tesla in the showroom and then there's Tesla in the courtroom. And Tesla in the showroom tells you that they've invented the greatest full self-driving car the world has ever seen. Mr. Musk has been peddling to consumers and investors for more than a decade that the cars are fully self-driving, that the hardware is capable of full autonomy. And those statements were as untrue the day he said them as they remain untrue today. But then they showed up in a courtroom and they say, *No, no, no, this is nothing but a driver assistance feature.*

## "My theme in my closing argument was about Tesla's choices and Tesla's words."

Words matter. Choices matter. … Sometime later today or tomorrow, whenever the clerk finally approves it, all of the admitted trial exhibits are going to be publicly filed on the federal docket in Miami. Documents that only I and the lawyers

involved in this case have seen, which shows Tesla knew about people's constant misuse of their system. They knew how they were misusing it. They knew why they were misusing it. And they knew when they were misusing it — going back a decade. And I would encourage you and anybody else who's been following these to log on to Pacer and to pull those exhibits down because they have never been seen before. And I have been saying for well over a year that the only way that this information was ever going to become public was inside of a courtroom.

And we did that, and the only reason we were able to do that was because the Benavides and Angulo families were courageous enough to stand up to the largest corporation in the world and say, *No, you are not going to settle this in secret. This is going to be shared publicly*. And the jury saw it with a unanimous verdict. They sent a message to Tesla. *Your choices and your words matter. Do better.*

ADVERTISEMENT

**I wanted to ask you about how you presented this case to the jury. And specifically the role that Elon Musk and his words played. You made a very pointed show of bringing in comments from the Tesla CEO. Can you talk a little bit about the role that you think that his past comments about Tesla's Autopilot and about its self-driving capabilities played in this particular trial?**

[Musk's words] were central to it. … The jury is asked about the expectation of an ordinary consumer. What would an ordinary consumer expect this vehicle to do? It didn't actually matter what the driver himself thought. Now, his feelings about this were very consistent with Musk's statements, but [Musk] says these things for a reason. He says this to create this idea in the public's mind that these cars are more than they really are. He makes these comments going back to 2015. *Autonomous driving is a solved problem. They are safer than humans. It will stop for anything. It knows if there's something metal and something dense in front of it, it should stop. It doesn't matter if it's an alien spaceship*, he said. And we played all of those because that aligns with the law.

ADVERTISEMENT

I said, "Look, you may know that Chick-fil-A has a cow running around telling you to eat more chicken and that LiMu the emu and Doug wants you to buy Liberty Mutual insurance. And that Geico has a gecko that peddles its products." I said, "No one knows who Andrew Cathy, Tim Sweeney, and Todd Combs are. They are the CEOs of those companies. And even though no one's heard of them … the decisions they make and the words they speak define what an ordinary consumer thinks of their company and the products they sell." And I said the same is true of Elon Musk and Tesla. They cannot escape the fact that they have represented for a decade that they have invented and made a vehicle to the public that is the greatest, most advanced, Enhanced Autopilot driving vehicle the world has ever seen. And then they show up in court and they go, *Well, there's no vehicle in 2019 that would have ever stopped under this scenario. It's a T intersection. It's a broadside hit. Blah, blah, blah.* Well, that opened the door to me to say, "You cannot make these statements publicly and then use as a defense in trial the fact that the car that you've claimed for a decade you invented doesn't actually exist." The jury saw through it.

**This is a type of technology that is used throughout the auto industry. Other car companies have a variety of ADAS technologies that are out there. What's different about Tesla's approach? And how did that contribute to this crash, in your opinion?**

[GM's] Super Cruise, [Ford's] BlueCruise, right, those were similar vintage-era Level 2 systems. They had driver monitoring systems that actually worked. They use infrared cameras. They had systems that were geofenced. You could only use them on certain roadways that they were designed for. A lot of other systems at the time, I think Infiniti, Nissan, Honda, and somebody else I can't remember right now had a system where if you override the adaptive cruise control, the lane centering shuts off. Because you're either going to use it or you're not. Tesla didn't do any of those things.

That was their choice. And that goes back to the whole thing that makes them the outlier. This was not a car company that got into tech. This was a tech company that got into cars. And their production process was unlike what any other responsible automotive manufacturer has ever done. Rather than ensuring that things were ready for prime time, rather than releasing a finished product, they released a beta product. But they tell you, *We call it beta, but we don't really mean it's beta*. Again, they use words to the point where they become meaningless.

> ### "This was not a car company that got into tech. This was a tech company that got into cars."

**I'm sure you've been online and you've seen some reactions to this verdict. I've seen a few from Tesla's fan base, which is quite substantive. And they talk about how the technology in [George] McGee's vehicle, Autopilot, is an outdated system — it hasn't been updated since 2019 — whereas most of the current system, Full Self-Driving or FSD, is supposed to be measurably better. Do they have a point? Or is it beside the point for the outcome of this jury?**

ADVERTISEMENT

For the outcome of this jury, it is beside the point. We could not introduce evidence about 2023 and 2024 and later developments. But I got news for the fan base. It's not better. They've actually eliminated radar. They've got cameras only. It doesn't work. Everyone who knows anything and who's been following and paying attention in autonomous vehicle development for the last decade knows that the holy trinity of safety is lidar, radar, and cameras. You cannot create a camera-based-only system that is going to be better than a human driver. It's not possible. It's not done. They sure as heck haven't done it. And their fusion system … continues to fail. You will see internal documents produced by Tesla where they determine that in 6 percent of the crashes that they received information on in 2019, they themselves determined that Autopilot was at fault.

It's so stupid, but my point is, it's not better. It's a three-legged stool. If you take one of the legs out, the other two fall down. Like I said, I'll tip my hat to Waymo. I'll tip my hat to those guys. They geofence. They three-dimensionally map, they tie in infrastructure, they use lidar, they use radar, they use cameras. Are they perfect? No. And that's the other thing I want to be really clear about. We are not anti-autonomous vehicle technology. We are not anti-progress. To the contrary, we think this stuff can and will save lives. It just has to be done the right way. And Tesla's done it the wrong way. And this unanimous jury who sat for three weeks listening to 40-plus hours a week of testimony and evidence felt the same way.

**Can you talk about what the trial revealed about how Tesla handles its Autopilot data, and also how it interacts with law enforcement when incidents arise and they need access to that data?**

The docket should be fully unsealed in about three weeks. The court has ordered that and has given Tesla an opportunity to file a brief about anything specifically they want to keep under wraps. I am confident that the motion that we brought for sanctions against them for withholding evidence for four years will become fully unsealed. It would be irresponsible for me to say more than what they've said, but suffice it to say, there is more to that story, and it will be set out.

But to that end, I can say that Tesla has a system of gathering data. They receive it immediately after crashes. And it is a very fair, I would say almost generous, statement to say that they're not always forthright with that information. And it's in part because people just don't understand it. Law enforcement doesn't understand it. Government investigators don't understand it. Through this case, we actually understood it better than even Tesla's lawyers did. Now, the in-house people knew. And again, I can't say whose decision it was to delete the data. But somebody at

Tesla knew that if this information on the heels, six weeks later after the Jeremy Banner crash occurred in Deerfield Beach, Florida, that having another Autopilot fatality, that they knew that law enforcement wanted to share with federal investigators, they knew that would be bad for business. Why they did it? Only they can answer that question.

## "I am confident that the motion that we brought for sanctions against them for withholding evidence for four years will become fully unsealed."

**Tesla right now is trying to roll out a robotaxi service in a number of cities. What would you say to people who are interested in this, curious about trying out these vehicles, to regulators who are weighing whether to approve Tesla's requests?**

I would say that this verdict hopefully sends a very clear message to Tesla. That they need to do better. They need to elevate people's lives and people's safety over greed and profits. That's what I told the jury in closing argument, that this was not only just an opportunity. I know that jury instruction talks about punishing Tesla and deterring bad conduct. But I told them really this was an opportunity for them to help Tesla, because when a company gets to a point where they're elevating profits and greed over people's lives and safety, then that is a company that has lost its way. That is a company that needs to have its course corrected. What I hope, through their efforts at developing a Level 4 system, is that Tesla will receive this message for what it was. It's an opportunity and a teachable moment to be better.

ADVERTISEMENT

The problem is … it's my understanding that it is a camera-only-based system. That's a problem. Right, the megapixels on the cameras, on a 2025 Tesla, if they're anything like what they're putting on the robotaxi, have a lower megapixel resolution than my iPhone. The human eye is 250 megapixels. Be better. There's a reason why responsible manufacturers are doing this differently. And again, is it hubris? Is it greed? I don't know. I don't know what this motivation is to double down and just try to do it the way that, *Oh, we can do it this way and no one else can*. I struggle with that. I'm just a lawyer. What do I know? But engineers, people who have spent decades, careers, lifetimes studying this stuff, have reached the same conclusions. So my hope is that they pause. They look at what they're doing and they find ways to do it better. To do it safer.

That's what this verdict was about: sending a message that you cannot use our public roadways as your personal laboratory to test production vehicles. And then when you discover that an incident occurs, that you make an incremental change. That's what their corporate representative said. And as I said a couple of times publicly and told the jury, an incident to the families impacted is known as a funeral. These are people's lives that you're playing with. So my hope is that they really think about their approach. I hope that consumers demand that they rethink their approach. I hope that analysts looking at the impact of this verdict and potential verdicts in the future tell them that they need to do better. Because I think that's the only way that we're going to ever see it really change. It seems likely that there will need to be more of these types of verdicts before we do see some change, either from the company or from the way that the market views the company.

## "Is it hubris? Is it greed? I don't know."

**Now that we have this verdict, I'm curious to know what you think it's going to mean for future cases pending against Tesla?**

Round two, *Maldonado v. Tesla*, Alameda State Superior Court, 75 days from today. Tesla's going to find out. I'm the plaintiff's lawyer in that case. And I am not limited in California to a 3x multiplier on punitives. If I had asked that jury in Florida for a billion dollars, they would have given it to me. But I couldn't ask them for that. Florida law says punitives can only be three times compensatories. I asked for $104 million in compensatories. They gave me $129 [million].

I got to tell you something, as a trial lawyer, to get $25 million over your ask is unheard of. They would have given me anything I asked for, not because it was me, but because of the facts. The facts are a stubborn thing. And we get to tell those same facts with a better Autopilot defect theory. And I get to not only juxtapose Musk's lies in that case, but I juxtapose them with the testimony that I didn't have in Miami. I've only had this case for a year. I worked the Maldonado case from the beginning. And in that case, I have testimony from all of the senior Autopilot leadership: Sterling Anderson, CJ Moore, Andrej Karpathy. And I show them those same quotes that were played to that jury in Miami. I said, "When Mr. Musk said those things, was that a true statement about production vehicles at Tesla?" To a person, they answer: Absolutely not.

He not only betrayed the public, he betrayed his own engineers. Betrayal is the most powerful human emotion there is, especially when it comes to rendering a verdict and holding a company account. That's what round two is going to look like in 75 days. That should be very interesting.

27 COMMENTS

**Follow topics and authors** from this story to see more like this in your personalized homepage feed and to receive email updates.

ANDREW J. HAWKINS   AUTONOMOUS CARS   ELECTRIC CARS   ELON MUSK   LAW   POLICY   TECH   TESLA   TRANSPORTATION

# EXHIBIT 2

Profile | Litigators

# From Miami Roots to Landmark Tesla Verdict: Brett Schreiber's Journey as a Leading Trial Lawyer

Former Florida native and the son of a longtime Broward prosecutor, Schreiber talks Tesla, courtroom strategy and advice on the future of litigation.

September 15, 2025 at 04:19 PM | By  Lisa Willis



**Brett Schreiber of Singleton Schreiber, lead trial counsel for plaintiffs Dillon Angulo & Naibel Benavides. Courtersy photo**

Brett Schreiber, lead counsel at Singleton Schreiber in San Diego, has built a reputation as one of the nation's foremost trial lawyers in personal injury and wrongful death.

As head of the firm's practice group, Schreiber has secured numerous multimillion-dollar verdicts and settlements in cases ranging from automobile accidents and defective products to medical malpractice and dangerous roadways.

One of those cases brought him back to his native South Florida recently, landing him in the international legal spotlight in *Benavides v. Tesla* with a $243 million jury verdict for his clients.

It was a full-circle moment for the rising attorney.

"I grew up in the 305," Schreiber said, referencing the area code slang for the Miami area. "I was excited to have the opportunity to come back to Florida to try the case."

After Schreiber's opening and closing statements and all the evidence and testimony in between, the Florida federal jurors found Tesla 33% responsible for the 2019 crash that killed a 22-year-old woman and severely injured her boyfriend.

The Californian's journey began in Broward and Miami-Dade, where he grew up in a family steeped in public service. His father, Alan Schreiber, was the legendary Broward public defender who preceded Howard Finkelstein, who ruled the office in Miami for decades.

"He was a good kid. Funny and bright," Finkelstein recalls. "Just like his old man in that way."

Brett recalls, "When I was 4, when I was 8, when I was 12, when I was 16, we would go on the campaign show of South Florida politics. We spent our weekends during campaign season doing literature jobs, shaking hands and kissing babies and asking people to vote for my dad." Al Schreiber held office from 1977 to 2005 and was affectionately known as "Big Al" and "Bossman." He died in 2021 at 77.

But as he matured, young Schreiber had other plans.

"If I stayed in South Florida, with my dad having been in elected office for nearly 30, 40 years at that point, I was going to be Al Schreiber's kid—and there was nothing wrong with that," Brett Schreiber said. "But it was not the path I wanted to take."

After earning his undergraduate degree at Florida State and working as a legislative intern and lobbyist in the Florida Senate, Schreiber set his sights westward for law school. He married his Nova High School prom date and packed the car. "We knew we wanted to go west. We both found programs that we could get into here and so we landed in San Diego 25 years ago and have never looked back," he said.

## A Rapid Rise in the Courtroom

Schreiber's courtroom prowess was evident early. "I tried my first serious injury case to verdict in my second year of practice," he noted. Before founding Singleton Schreiber, he was a partner at Thorsnes Bartolotta McGuire, a prominent San Diego plaintiffs firm. His diverse legal experience included serving as a legislative intern in the Florida Senate, working as a lobbyist, clerking with a boutique South Florida law firm concentrating on criminal defense, civil litigation and family law, and interning with the San Diego Public Defenders' Office.

Over the years, Schreiber has become known for taking on complex, high-stakes cases. "I was never just a run-of-the-mill car crash lawyer. Those cases are fine. I've handled them. But I was always drawn to cases that were a bit more challenging," he explained.

Schreiber's most recent—and perhaps most consequential—case, where he served as lead counsel, was a wrongful death lawsuit against Tesla, stemming from a 2019 crash involving the company's Autopilot system that killed Naibel Benavides and injured Dillon Angulo in the Florida Keys. The Miami-Dade jury ruled in favor of the plaintiffs. The verdict is now under appeal.

To Schreiber, the case was about more than individual justice. "It wasn't just about one person. It was truly an opportunity to push for safer products, for safer roads, really just to make safer communities," he said.

## Seeking Out Your Practice Specialty

Not long before he started his own firm, the attorney became very curious about the future of self-driving cars and the potential litigation it would lead to.

"It's interesting how we find areas of specialization, and also how marketing works in a very nonlinear way," Schreiber said. "It was actually 10 years ago I was intrigued by this idea of autonomous vehicles, when I read an article one day back in 2015, where it showed this Google car that had been pulled over in Menlo Park, and there was a cop standing outside the window holding his ticket book, and no one in the driver's seat. So it begs the question ... who's responsible? So I just started studying the issue more."

Schreiber said that led him to emphasize the importance of digital evidence in modern litigation: "The world is digitized, right? All of the data on these cars ... It's a computer talking to a computer. And what we've learned from that is nothing, nothing is ever deleted."

Schreiber's team uncovered that Tesla had withheld critical crash data for years. "We were able to show that Tesla had data on how and why the crash occurred for four and a half years, and yet they told us, they told federal investigators, they told [National Highway Traffic Safety Administration], they told the Florida Highway Patrol, they told the magistrate, the district court that they didn't have it, and we were able to ultimately prove that was not true," he recounted.

This led to what Schreiber believes is "probably one of the largest sanction awards levied in the history of the American civil justice system because of their withholding of data." It was also the first Tesla lawsuit to make it to a jury.

Although Tesla CEO Elon Musk was not a party to the case, his influence loomed large, the attorney suggested. "I had never had the CEO of the manufacturer, outside live-tweeting and

misrepresenting and overhyping what the vehicle could do," Schreiber said, noting that Musk's public persona was a significant factor during jury selection.

## Advice for the Now and Next Generation

Schreiber went head-to-head and toe-to-toe with Tesla's legal machines. NLJ 500-ranked Bowman and Brooke tapped defense lead counsel Joel H. Smith out of South Carolina to lead the case.

Schreiber's advice to Big Law is clear: "When you are dealing in the world, living in the world of digital evidence, which we all are, it is not something that you can ignore … you need to understand this stuff at a deep level if you're going to do the work."

Don't take no for an answer, he advised. "If you are a defense lawyer representing an entity that's developing these newer vehicles, which, again, are all just computers talking to each other, and someone tells you, 'Oh no, we don't have that data,' ask again. Dig deeper, ask harder questions, because chances are, it exists somewhere."

He said one of the reasons they got the result in Florida that they did was the story of the cover-up. "It was ultimately brought into evidence," Schreiber said.

Other advice for trial lawyers going up against Big Law firms is to develop a deep understanding of digital evidence: "Nothing is ever deleted," and to always dig deeper when data is in question.

To young lawyers, he offered encouragement: "Trust your instincts … don't ever give up. Don't be afraid of failure, but be terrified of regret."

**Page printed from:**

**NOT FOR REPRINT**

© 2025 ALM Global, LLC, All Rights Reserved. Request academic re-use from www.copyright.com. All other uses, submit a request to asset-and-logo-licensing@alm.com. For more information visit Asset & Logo Licensing.