**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-21940-BLOOM/Torres**

NEIMA BENAVIDES, *as Personal
Representative of the Estate of Naibel
Benavides Leon, deceased*, and
DILLON ANGULO,

      Plaintiffs,

v.

TESLA, INC., a/k/a.
TESLA FLORIDA, INC.,

      Defendant.

_____/

## ORDER ON TESLA'S MOTION TO PRESERVE CONFIDENTIALITY OF CERTAIN TRIAL AND PRE-TRIAL RECORDS THAT CONTAIN TRADE SECRETS

**THIS CAUSE** is before the Court upon Tesla Inc.'s ("Tesla") Motion to Preserve the

Confidentiality of Certain Trial and Pre-trial Records that Contain Trade Secrets ("Motion"), ECF

No. [554]. Plaintiffs Neima Benavides, as Personal Representative of the Estate of Naibel

Benavides Leon, and Dillon Angulo ("Plaintiffs") filed a Response in Opposition, ECF No. [590],

to which Tesla filed a Reply, ECF No. [596]. The Court has reviewed the Motion, the supporting

and opposing briefs, and is otherwise fully advised. For the reasons that follow, Tesla's Motion to

Preserve Confidentiality is granted in part and denied in part.[1]

---

[1] Tesla asserts that its earlier Motion for Continued Confidentiality of Materials Designated Under Confidentiality Protective Order, ECF No. [368], also remains pending. *See* ECF no. [554] at 2. However, because Tesla's instant Motion to Preserve Confidentiality effectively supersedes the issues raised by Tesla in that earlier motion, Tesla's Motion, ECF No. [368], need not be addressed herein, as it is now rendered moot by this Order.

## I.   FACTUAL BACKGROUND

This matter arises from a collision that occurred in Key Largo, Florida. George McGee owned a 2019 Tesla Model S ("Vehicle") "equipped with automatic driving features, one of which Tesla termed 'Autopilot,' that could navigate without driver input." ECF No. [205] at 3. On April 25, 2019, McGee was driving the Vehicle when it hit a parked Chevrolet Tahoe, which then struck Decedent Naibel Benavides Leon and Plaintiff Dillon Angulo, killing Benavides Leon and causing significant injuries to Angulo. *See id.* at 3-4.

### A.  Protective Order and Pretrial Exhibits

During the discovery period, the parties requested, and the Court entered a Confidentiality Protective Order ("Protective Order"). ECF No. [126]. The Protective Order allowed for discovery material to be designated as "Confidential" if the party producing the materials believed in good faith that the materials contained:

> confidential or sensitive non-public internal proprietary business; (ii) marketing; (iii) financial; (iv) technical information unrelated to Autopilot technology; (v) non-public communications with United States and foreign patent offices; (vi) non-public communications with United States or foreign regulatory agencies; (vii) financial information . . . and; (viii) design, development, and testing materials related to the design and development of Tesla vehicles unrelated to the Autopilot technology.

ECF No. [126] at 2-3.

Discovery material was permitted to be labeled "Highly Confidential" if the information included "highly sensitive competitive business, technical, and/or proprietary information that warrant[ed] the highest level of confidentiality[.]" *Id.* at 3. Under the Protective Order, only certain specified groups of people were permitted to access the materials labeled Confidential or Highly Confidential. *See id.* at 8-11.[2] Given the limited access to the specified materials, the parties filed

---

[2] The following individuals were permitted to access the materials identified in the Protective Order: (1) the Court; (2) the parties and their respective counsel; (3) other attorneys in other pending lawsuits against

a number of briefs and exhibits under seal that they determined contained either Confidential or Highly Confidential information. While the parties have agreed to unseal many of those pretrial filings, *see* ECF Nos. [600], there are still several entries that remain under seal. *See* ECF Nos. [285], [297]; [305]; [306]; [307]; [308]; [318]; [347]; and [368].

### B.  Trial Procedures for Trade Secrets Introduced During Trial

In anticipation of the trial, Tesla also requested that the Court enter an order setting a procedure for limiting public access to confidential information the parties might introduce at trial. After highlighting the country's long-standing tradition of an open courtroom and the strong presumption in favor of the same, the Court set out a detailed procedure for temporarily closing the courtroom when evidence involving Tesla's trade secrets was likely to be presented. Those procedures were as follows:

> No later than 6:00 P.M. on July 13, 2025, Tesla shall notify the Court of the specific testimony and exhibits it anticipates will be introduced on the first day of trial that contain trade secrets that should not be disclosed to the public. Tesla shall also explain how disclosure of the specific evidence or testimony would be harmful. The Court will determine whether the identified evidence warrants temporary closure of the courtroom before the start of Plaintiffs' case-in-chief. If the Court deems any evidence or testimony should not be presented to the public, the Court and the parties will adhere to the following procedure.
>
> i.     The parties shall identify and inform the Court of any individuals they agree should not be excluded from the courtroom during the closed portions of the proceedings.
>
> ii.    The parties shall reserve the presentation of any trade secret information or testimony until the end of a witness's examination. Prior to the presentation of the trade secret information, the Court will take a brief recess so that the public can be asked to leave the courtroom outside the presence of the jury. The Court will then bring

---

Tesla, involving the same alleged defect; (4) mediators, discovery referees and other individuals engaged or consulted for the purposes of settlement; (5) litigation support services; (6) experts and consults retained by the parties in connection with this action; (7) employees or persons who created, authored, received, reviewed, were the custodian of, identified in Confidential Information, or are reasonably believed to have knowledge of the matters in the Confidential Information; and (8) persons authorized to receive High Confidential information or persons that the parties or the Court have otherwise determined are permitted to access the materials.

the jury back into the courtroom to hear the trade secret testimony. During that time, the Court will provide an opportunity for direct examination, cross-examination, and redirect examination on the limited trade secret issues relevant to the witness's testimony. Once the parties have finished presenting the trade secret information involving the witness, the public will be permitted to return to the courtroom.

For the remaining days of the trial, Tesla shall identify any trade secret information and make its request for temporary closures of the courtroom the afternoon before the anticipated evidence or testimony is expected to be introduced. At that time, the parties shall also inform the Court of any individuals they agree should not be excluded from the courtroom during the next day's closed proceedings.

To ensure that Tesla is able to provide sufficient justification for any potential courtroom closures, any filings regarding a request to close the courtroom may be filed under seal. Additionally, all proceedings regarding a request to close the courtroom shall be closed to the public.

At the close of trial, the Court will confer with the parties to reexamine whether any sealed portions of the transcript and any sealed filings may be placed on the public record.

ECF No. [459] at 3-5.

Despite requesting that the Court implement formal procedures to preserve the confidentiality of certain trade secrets introduced at trial, Tesla never sought to close the courtroom or to preemptively seal any exhibits or transcripts during the entirety of the three-week trial. Accordingly, all the evidence was introduced and published in open court for the Court, the jury, and the attending public.

### C. Tesla's Request to Keep Certain Records and Evidence Under Seal

Tesla now seeks to preserve the confidentiality of certain evidence submitted before and during the trial. Specifically, Tesla seeks to keep the following exhibits under seal:

1. Tesla's Moving Objects Manual (Trial Ex. D-318)

2. Excerpts of Tesla's "Theory of Operation HW2.5 Model S" (Trial Ex. P-14)

3. Excerpts of Tesla's Response to NHTSA Inquiries (Trial Ex. P-15, P-18, ECF No. [368-11])

    4.  The "Confluence Page Titled 'Warning Sequence'" (Trial Ex. P-116)

    5.  Tesla's June 15, 2018, Quarterly Update to NHTSA (Trial Ex. P-23)

    6.  2020 AP Safety Goals and Related Testimony of E. Rubio-Blanco (Trial Ex. P-94, ECF No. [268-8], ECF No. [285-4])

    7.  Declaration of Alan Moore and Appendices (ECF Nos. [285-2], [347-1], and [368-8])

    8.  Declaration of David Shoemaker (ECF No. [297-4])

    9.  Declaration of Oleg Drokin (ECF No. [285-1], ECF No. [368-4])

    10. Excerpt of Notes from Alan Moore's Expert File (ECF No. [608])[3]

    11. Alan Moore's Second Supplemental Declaration (ECF No. [306])

    12. Emails Containing Product Privacy Signals (ECF No. [268-10])

ECF No. [554] at 5-7.

       Tesla contends the records identified contain valuable and confidential trade secrets which, if unsealed, would cause Tesla substantial economic and competitive harm. *See id.* at 1. Plaintiffs respond that the Tesla waived confidentiality as to exhibits admitted at trial and the remaining sealed records do not contain trade secrets. *See* ECF No. [590]. Therefore, the entirety of the docket, including all trial exhibits, should be unsealed.

## II.  DISCUSSION

       The Court finds that the most effective means of resolving the instant Motion is to bifurcate Tesla's request to keep certain pre-trial filings sealed from its request to keep certain exhibits and testimony introduced at trial under seal.

---

[3] The exhibit was previously filed at ECF No. [318] but the specific page in question was refiled at ECF No. [608].

### A. Trial Evidence Tesla Seeks to Keep Under Seal

### i. Exhibits Introduced at Trial Without Reservation

Regarding the testimony and exhibits introduced at trial, Tesla did not have a presumptive expectation of confidentiality. As the Court made clear prior to the start of trial, "'[a]bsent some exceptional circumstances, trials are *public proceedings*.'" ECF No. [459] at 2 (emphasis added) (quoting *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570 (11th Cir. 1985) (additional level of quotations and citations omitted)). Not only are the judicial proceedings presumptively open to the public, so are the judicial records[4] submitted during those proceedings. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1166 (11th Cir. 2019) ("The media and public presumptively have a right to access judicial records.") (citing *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (per curiam)). The right to "access, inspect, and copy judicial records is 'a right grounded in the democratic process' and [is] an essential component of our system of justice.'" *Pettaway v. Barber*, 645 F. Supp. 3d 1269, 1275 (M.D. Ala. 2022) (quoting *Chicago Trib. Co.*, 263 F.3d at 1309, 1311). "Access to public and judicial records protects 'the citizen's desire to keep a watchful eye on the workings of public agencies[.]'" *Comm'r, Alabama Dep't of Corr.*, 918

---

[4] "Documents become judicial records when they are incorporated or integrated into a court's adjudicatory proceedings, such as when the documents are attached to and relied upon in conjunction with a dispositive motion." *Pettaway v. Barber*, 645 F. Supp. 3d 1269, 1278 (M.D. Ala. 2022) (citing *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1166 (11th Cir. 2019); *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013)); *see also Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, 755 (E.D. Va. 2018) ("Judicial records include, at minimum, documents in evidence at a public jury trial and trial transcripts.").

F.3d at 1166 (quoting *Nixon*, 435 U.S. at 597-98). Accordingly, courts should ensure judicial records remain available to the public unless confidentiality of those records preserves "higher values," and the sealing of the records is narrowly tailored to serve that interest. *United States v. Farmer*, 110 F. Supp. 3d 1355, 1358 n.2 (S.D. Ga. 2015) (citing *United States v. Bradley*, No. 405-CR-059, 2007 WL 1703232, at *1 (S.D. Ga. June 11, 2007)); *see Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985).

As Tesla correctly points out, protecting a party's trade secrets is often one of those "higher values" that may warrant a narrowly tailored sealing of judicial records, or even the closing of the courthouse doors. *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (citing *Nixon*, 435 U.S. at 598; Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 464–74 (1991)). Nonetheless, in recognition of the fact that the right of public access is not absolute, particularly in cases involving trade secrets, the Court set out a clear and specific procedure in advance of trial. Tesla was required to show that certain evidence to be introduced contained trade secrets that would cause Tesla competitive harm were such materials to be disclosed to the public. During the course of the three-week trial, Tesla never sought to close the courtroom, and on only one occasion did Tesla assert that particular evidence shown to the jury contained trade secrets.[5]

Regarding the unchallenged exhibits, the Court finds that Tesla conceded or otherwise waived any argument that the evidence admitted at trial contained trade secrets by allowing that evidence to remain unsealed and shown to the public during the trial. *See, e.g.*, *Littlejohn v. Bic Corp.*, 851 F.2d 673, 680 (3d Cir. 1988) ("It is well established that the release of information in

---

[5] On the eighth day of trial, Tesla explained to the Court that while it was not requesting to close the courtroom that day, it would eventually seek to seal two exhibits relied upon during David Shoemaker and Eloy Rubio-Blanco's depositions. Tesla, however, did not specify which exhibits it would ultimately seek to seal. ECF No. [581] at 10-11.

open court 'is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use.'") (quoting *National Polymer Products v. Borg-Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981)); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 583 (E.D. Va. 2009) (same).

Tesla argues that its failure to take prophylactic measures to preserve the confidentiality of the trade secrets admitted during the trial should not bar it from seeking to seal those records after the fact. According to Tesla, the Court's pre-trial procedures only outlined the process for closing the courtroom itself; they did not specify how trial exhibits, transcripts, or witness testimony introduced at trial should be treated at the conclusion of the case. *See* ECF No. [554] at 3. However, Tesla's argument is unpersuasive. First, the reason the Court did not specify procedures for sealing evidence admitted at trial is that when the Court closes the courtroom, the trial transcripts, the exhibits, and the records are also necessarily sealed. If those documents remained unsealed, it would defeat the purpose of closing the courtroom in the first place. Accordingly, specifying procedures for a preliminary sealing of trial exhibits and testimony would be redundant and conflict with Tesla's representation that there was no need to preclude the public from examining such evidence during the trial.

When the evidence introduced at trial was published to the jury, it was simultaneously shown to the public. Tesla does not argue that the confidentiality of the evidence has somehow changed from the time of trial until now. Therefore, if the exhibits and testimony did not need to be kept from the public during the trial, the Court finds there is no need to keep the records confidential now and that a *post hoc* sealing of the records would be inequitable to those individuals who were not in attendance during those proceedings.[6] As such, the exhibits that Tesla

---

[6] The Court also finds that it would undermine the principle of public proceedings to only allow citizens in attendance to examine records that would be otherwise unavailable were the Court to seal the exhibits now.

waived confidentiality to (Trial Exhibits D-318, P-15, P-18, P-20, P-23, and P-116) are to be unsealed.

### ii.  Intent to Preserve Confidentiality as to Two Particular Trial Exhibits

While Tesla waived confidentiality for nearly all the exhibits introduced at trial, there are two exhibits that warrant further scrutiny. Tesla contends that on the eighth day of trial,[7] it raised concerns that certain trial exhibits contained trade secrets that should be sealed at the conclusion of trial. *See* ECF No. [596] at 5. To support this argument, Tesla points to the following discussion with the Court on July 23, 2025, where counsel for Tesla stated:

> If I could make one clarification, though. There are two exhibits that will be part of the designated [Shoemaker and Rubio-Blanco] testimony that we don't have objections to. We don't object to those exhibits being part of the testimony to be played back in the open courtroom. But I just wanted to make you aware that those exhibits were produced by Tesla as highly confidential attorneys' eyes only, and we do intend to take appropriate steps after the trial to maintain the confidential status of those documents. [W]e're not asking the courtroom to be closed, but afterwards I'm confident we're going to have an issue to raise with you about those. So I just didn't want that to come as a surprise because we're talking about these issues now.

ECF No. [581] at 10-11.

The Court is persuaded that Tesla's representation during trial that it intended to keep those two exhibits under seal ensured that Tesla did not waive confidentiality as to those exhibits. However, following a review of the record and the trial transcripts, the Court was left uncertain as to which two exhibits Tesla sought to seal. Accordingly, the Court ordered Tesla to identify and submit under seal the two exhibits it was referencing on July 23, 2025. On January 16, 2026, Tesla provided the Court with the following two exhibits:

---

*See e.g., Littlejohn*, 851 F.2d at 678 ("Access means more than the ability to attend open court proceedings; it also encompasses the right of the public to inspect and to copy judicial records.").

[7] The eighth day of trial was July 23, 2025. *See* ECF No. [581].

    1. 2020 AP Safety Goals (P-94)

    2. Excerpts of "Theory of Operation HW2.5 Model S" (P-14)

ECF No. [610].

However, Tesla's representation to the Court that the 2020 AP Safety Goals and the Theory of Operation HW2.5 Model S contain trade secrets that warrant continued confidentiality is not the end of the inquiry. "The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it)." *A.L. v. Walt Disney Parks & Resorts US, Inc*., No. 614CV1544ORL22GJK, 2020 WL 1138254, at *1 (M.D. Fla. Mar. 9, 2020) (quoting *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1363 (N.D. Ga. Feb. 15, 2002)).

While the public has a right to inspect and copy judicial records, including trial exhibits, that right is not absolute and may be overcome by an adequate showing that "a party's privacy and proprietary interest in the information [outweighs] the interest of the public in accessing the information." *Romero*, 480 F.3d at 1245-1246. Accordingly, the Court must analyze both trial exhibits to determine whether they indeed contain trade secrets warranting continued confidentiality and whether Tesla's need for continued confidentiality is outweighed by the public's interest in accessing the confidential information.

    **a. 2020 AP Safety Goals (P-94)**

The Court is unpersuaded that the 2020 AP Safety Goals report contains trade secrets warranting the continued confidentiality of the information contained therein. According to Tesla, the document titled "2020 AP Safety Goals" is a report that "summarizes Tesla's assessment of information it has received from the field regarding collisions." ECF No. [554-1] at 5. The report

"identifies information Tesla was tracking for purposes of product improvements and methods related thereto." *Id.*

As an initial matter, the 2020 AP Safety Goals Report is approximately six years old and largely provides basic charts and data on the various types of crashes involving Tesla vehicles from 2019. ECF No. [285-4] at 54. Although the report also incorporates potential recommendations for improvement, Tesla fails to establish that those recommendations contain valuable information that would provide other vehicle manufacturers a competitive edge were those competitors to access the report now.[8]

While Tesla may prefer to keep its internal crash report confidential, the Court is unpersuaded that the report contains valuable trade secrets, and it should therefore be unsealed. *McDonald v. Grimsley*, No. CV 1:23-00464-TFM-N, 2024 WL 5256498, at *3 (S.D. Ala. Sept. 13, 2024) ("[T]he mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access.") (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)).[9]

### b. Excerpts of "Theory of Operation HW2.5 Model S" (P-14)

Although the AP Safety Goals Report does not contain trade secrets, the Court finds that the Theory of Operation HW2.5 Model S does. Tesla explains that this exhibit is a document relied upon by Tesla service technicians and engineers, which contains "non-public information about Autopilot hardware and, more generally, how Autopilot operates." ECF No. [554] at 5. While Plaintiffs argue that the information in the Theory of Operation HW2.5 Model S document "does

---

[8] Moreover, the 2020 AP Safety Goals Report was introduced at trial, thereby undermining Tesla's argument that the exhibit contains trade secrets worthy of continued confidentiality.

[9] To the extent Tesla is also seeking to seal Eloy Rubio-Blanco's related trial testimony, *see* ECF No. [554] at 6, that request is also denied.

not include information as to the 'technical capabilities or parameters' of Autopilot," the Court

disagrees. ECF No. [590] at 8. A review of the Theory of Operation document shows that it

includes detailed information not only about how Autopilot functions, but also how certain

hardware components interact with one another and how to troubleshoot certain malfunctions. The

Court therefore finds the Theory of Operation HW2.5 Model S contains proprietary trade secrets,[10]

and that Tesla's need to keep this information confidential outweighs the public desire for such

information, particularly given the plethora of other evidence and information that has already

been previously disclosed over the course of this case.

### B. Pre-Trial Exhibits

The Court now turns to the pre-trial exhibits that were filed under seal and were not

introduced as evidence at trial. Although Tesla originally provided those purportedly confidential

records[11] under the good faith belief that the records would remain under seal during discovery

unless Plaintiffs or a third-party challenged the designation of such materials, *see* ECF No. [126]

at 7-8,[12] the presumption of confidentiality was extinguished once the parties incorporated and

relied upon the purportedly confidential materials in their pre-trial motions. *In re Denture Cream*

---

[10] The Court also notes that it is unclear whether the excerpts from the Theory of Operation HW2.5 Models were referred to or shown at trial, making it less likely that the continued confidentiality of the document would unfairly prejudice individuals who were not present during the trial. *See* ECF No. [610]

[11] "[T]he mere fact that a [p]arty designates a document as either 'confidential,' for 'attorney's eyes only' or as containing 'trade secrets' pursuant to a confidentiality agreement does not, in and of itself, mean that those documents are, in fact, confidential." *In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD, 2013 WL 214672, at *4 (S.D. Fla. Jan. 18, 2013) (citing *In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1362 (N.D. Ga. 2002) ("[C]alling a document confidential does not make it so in the eyes of the court; these consensual protective orders merely delay the inevitable moment when the court will be called upon to determine whether Rule 26(c) protection is deserved")).

[12] "[T]he common-law right of access to judicial proceedings does not apply to discovery materials, 'as these materials are neither public documents nor judicial records.'" *In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD, 2013 WL 214672, at *6 (S.D. Fla. Jan. 18, 2013) (quoting *Chicago Tribune Co.*, 263 F.3d at 1311).

*Prods. Liab. Litig.*, No. 09-2051-MD, 2013 WL 214672, at *6 (S.D. Fla. Jan. 18, 2013)
("[D]iscovery material filed in connection with pretrial motions that require judicial resolution of
the merits is subject to the common-law right [of access].") (citing *Chicago Tribune Co., v.
Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001)). However, as previously
mentioned, "even when the right of public access attaches, it is 'not absolute.'" *Callahan v. United
Network for Organ Sharing*, 17 F.4th 1356, 1363 (11th Cir. 2021) (quoting *Nixon*, 435 U.S. at
598). The Court still must exercise its sound discretion[13] and evaluate "whether good cause exists
to prevent such access, balancing 'the asserted right of access against the other party's interest in
keeping the information confidential.'" *Id.* (quoting *Romero v. Drummond Co., Inc.*, 480 F. 3d.
1234, 1246 (11th Cir. 2007)); *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 61 (11th Cir. 2013)
(explaining that the decision whether to unseal documents is left to the district court's "sound
discretion").

    While the Eleventh Circuit has not provided specific factors for district courts to take into
account when deciding whether to unseal judicial records, courts typically will consider "a number
of important questions, including 'whether allowing access would impair court functions or harm
legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of
the information, whether there will be an opportunity to respond to the information, whether the
information concerns public officials or public concerns, and the availability of a less onerous
alternative to sealing the documents.'" *Callahan*, 17 F.4th at 1363 (quoting *Romero*, 480 F.3d at
1246); *see also F.T.C.*, 713 F.3d at 61 (listing "several relevant factors to consider, including
whether the records are sought for such illegitimate purposes as to promote public scandal or gain
unfair commercial advantage, and whether access is likely to promote public understanding of

---

[13] *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013)

historically significant events" (alteration adopted, quotation marks omitted)). Accordingly, concerns about the release of trade secrets, may overcome "the public interest in access to judicial documents." *Callahan*, 17 F.4th at 1363; *see also Romero*, 480 F.3d at 1246 ("A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information."); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) ("The publication of materials that could result in infringement upon trade secrets has long been considered a factor that would overcome this strong presumption [of public access].").

Tesla argues that it has established good cause to keep the remaining sealed pre-trial exhibits confidential because those filings contain "proprietary, highly confidential trade secrets" that, if disclosed, would cause undue harm to Tesla's legitimate business interests. ECF No. [554] at 5. Plaintiffs, on the other hand, contend that the exhibits in question do not contain trade secrets that warrant continued confidentiality, and even if the exhibits do contain trade secrets, Tesla's interest in keeping that information confidential does not outweigh the public's interest in accessing the full record. ECF No. [590] at 6, 12.

The Court agrees with Tesla that the presence of trade secrets in judicial records may serve as a legitimate basis for sealing records from the public. *See, e.g.*, *Advanced Magnet Lab, Inc. v. Meinke*, No. 6:20-cv-712-Orl-37EJK, 2020 WL 13199850, at *2 (M.D. Fla. 22, 2020) ("Courts in this District have recognized the importance of filing trade secrets under seal when the movant has adequately demonstrated that the information is indeed a trade secret." (collecting cases)). However, simply because Tesla has asserted that sealed records contain confidential trade secrets does not make it so. The Court has an independent obligation to determine whether the records contain genuine trade secrets that warrant keeping the filings under seal.

A party arguing that a document should be sealed [or remained sealed] because it contains trade secret information must show that the information meets the

14

commonly accepted criteria of trade secrets, including that the party consistently treated the documents as closely guarded secrets, the information represents substantial value to the party, the information is valuable to the party's competitors, and it derives value by virtue of the effort of its creation and lack of dissemination.

*Day v. Barnett Outdoors, LLC*, No. 8:16-CV-2480-T-27MAP, 2017 WL 10275971, at *3 (M.D. Fla. Aug. 23, 2017). Accordingly, the Court examines each of the remaining sealed pretrial filings to determine whether they constitute genuine trade secrets.

### iii. Response to Question 5(b) (Bates BENAVIDES-0003119-24) ECF No. [368-11]

Turning first to the exhibit at ECF No. [368-11], the Court agrees with Tesla that the exhibit "provides detailed information related to how Autopilot and/or Automatic Emergency Braking operate," including specific vehicle limitations Tesla has implemented. ECF No. [554] at 5. While Plaintiffs contend this NHTSA record does not contain trade secrets and the only reason it is "given 'confidential' status under the federal regulations is so that the documents are not subject to production under a FOIA request," the Court finds Tesla's discussion of the limits and controls Tesla places on its vehicles, along with how these various controls interact with one another, is precisely the type of confidential information that constitutes a trade secret. ECF No. [590] at 9. Given that Tesla has diligently worked to preserve the confidentiality of this information, Tesla's NHTSA Response to Question 5(b), ECF No. [368-11], shall remain under seal.[14]

### iv. Deposition Testimony of E. Rubio-Blanco Related to 2020 AP Safety Goals (ECF No. [285-4])

Next, the Court considers whether portions of Eloy Rubio-Blanco's deposition testimony discussing Tesla's 2020 AP Safety Goals Report involves trade secrets. According to Tesla, the

---

[14] While the Court recognizes that a record may still be unsealed, even if it is a trade secret, the Court does not find that the public's desire for this technical information outweighs Tesla's compelling interest in preserving its trade secrets, given that this is a limited document that does little to help the public understand and follow the proceedings.

"2020 AP Safety Goals" report "summarizes Tesla's assessment of information it has received from the field regarding collisions." ECF No. [554-1] at 5. The report identifies information Tesla was tracking for purposes of product improvements and methods related thereto." *Id.* Accordingly, since Rubio-Blanco discussed the report during portions of his deposition, Tesla maintains that those portions of the deposition should remain sealed. *See id.* at 6. The Court finds that the portions of Rubio-Blanco's deposition identified by Tesla do not contain trade secrets.

The Court has already concluded earlier in this Opinion that the 2020 AP Safety Goals Report is a six-year-old report concerning generic crash data that does not amount to a trade secret. Accordingly, Rubio-Blanco's high-level overview discussion of the 2020 AP Safety Goals Report also does not implicate trade secrets.

Indeed, during his deposition, Rubio-Blanco vaguely discusses what kind of roads Autopilot was designed for and the fact that Tesla previously conducted analysis of its Autopilot at-fault cases using telemetry data in combination with manual labeling of the accidents. *See* ECF No. [285-4] at 50-81, 137-140. Nothing about that testimony explains any unique or specialized technology Tesla used or proprietary details about how Autopilot functions. Therefore, Rubio-Blanco's deposition testimony will be unsealed.

### v. Declaration and Appendices of Alan Moore (December 24, 2024) (ECF Nos. [285-2], [347-1], and [368-8])

Tesla asserts that certain portions of Plaintiffs' Expert Alan Moore's December 24, 2024 Declaration should remain sealed. Tesla asserts that the Declaration should be sealed because it "describes the design and operation of Autopilot's vision and object detection and response functions, and related data parameters in specific detail." ECF No. [554] at 6. Plaintiffs respond that Moore's opinions are based on his own review of the data Plaintiffs obtained from the Vehicle's ECU and MCU. *See* ECF No. [590] at 10. Accordingly, the Declaration and appendices

contain Moore's own conclusion based on his review of the data and, therefore, do not amount to trade secrets. *See id.*

The Court agrees with Plaintiffs that Moore's December 2024 Declaration does not contain trade secrets. Moore's December 24, 2024 Declaration does not disclose any proprietary or confidential technical information about Tesla's vehicles or Autopilot. The Declaration merely provides Moore's own interpretation and analysis of data provided by Tesla and obtained from the Vehicle. Given that the Declaration does not disclose any formulas or technical processes for capturing the data, the Court does not find that Tesla has a proprietary interest in a record created by Plaintiffs' expert. Accordingly, the Court will unseal Moore's December 24, 2024 Declaration.

With respect to the appendices attached to the Declaration, however, the Court finds that those should remain sealed. The appendices contain the contents of the CAN and log data provided by Tesla, as well as the data later extracted from the Vehicle. The data includes what appears to be metadata or code from the Vehicle that Tesla would reasonably have a proprietary interest in keeping confidential and has sought to keep confidential. *See* ECF No. [285-2] at 16-20; *see also* ECF No. [368] at 10. Moreover, the Court does not find there is a particularly compelling need for the public to access this data, given that the public may be fully apprised of the relevant information as it relates to this case by reviewing Moore's analysis of the data contained in the December 24, 2024 Declaration. Therefore, the Court will keep the Appendices of Moore's December 24, 2024 Declaration sealed.

### vi. Declaration of David Shoemaker—December 27, 2024 (ECF No. [297-4])

Tesla argues that David Shoemaker's Declaration "discusses the transfer and storage of Autopilot Snapshot data, as well as how such information relates to the creation and use of augmented videos" and, therefore, should remain sealed. ECF No. [554] at 6-7. Plaintiffs respond that Shoemaker testified publicly during trial about the very same issues contained in his

Declaration. ECF No. [590] at 10. Moreover, to the extent the Declaration involves technical information, Plaintiffs argue that the information is general non-proprietary information about methods of transmitting data and saving data on servers, which is not unique to Tesla. *Id.*

David Shoemaker's Declaration does not contain information that would constitute a trade secret. While Shoemaker explains that, in the event of a crash, Tesla vehicles collect that crash data on their ECU and send the information to Tesla's headquarters, that is hardly a trade secret. As Plaintiffs point out, this information is publicly available in Tesla's owner's manual on its website.[15] *See* ECF No. [590] at 10. While Shoemaker also provides additional details about how Tesla looked up the data on its servers, he discussed those processes in detail in open court at trial. *See* ECF No. [581] at 174-201; *see also Littlejohn*, 851 F.2d at 680 ("It is well established that the release of information in open court 'is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use.'") (citations omitted). As such, Shoemaker's Declaration shall be unsealed.

### vii. Declaration of Oleg Drokin—December 2, 2024 (ECF No. [285-1], ECF No. [368-4])

Tesla explains that the Drokin (Plaintiffs' expert) Declaration should be sealed because it contains a discussion about how he extracted Autopilot Snapshot data from the Vehicle's ECU, how the data was stored, and even the contents of the data. ECF No. [554] at 7. Tesla, however, offers no reason why Plaintiffs' expert's method of extraction constitutes proprietary information. Moreover, as Plaintiffs point out, Drokin recovered and recreated the data himself, through a manner not utilized by Tesla. Drokin's description of how he used an original method to recreate an augmented video certainly does not constitute a trade secret, particularly where Drokin never

---

[15] *See also* Tesla, *Customer Privacy Notice*, https://www.tesla.com/legal/privacy#data-sharing (last accessed on January 7, 2026).

disclosed any source code.  To the extent that the Declaration discusses the type of information that Tesla captures, the Court does not find that such information, particularly information from 2018, would give competitors such an advantage that it warrants the continued confidentiality of the Declaration. Accordingly, Drokin's Declaration will be unsealed.

### viii.    Alan Moore's Notes from Expert File (ECF No. [608])[16]

Tesla next argues that one page of Alan Moore's notes[17] should remain under seal because it contains a detailed description of CAN data. ECF No. [554] at 7. Plaintiffs respond that "Moore repeatedly discussed what this CAN data showed at trial." ECF No. [590] at 11. Therefore, since "Tesla did not object or request a trade secret designation" at the time, Plaintiffs argue there is no basis to keep Moore's notes on the CAN data sealed. *Id.* Additionally, Plaintiffs argue that Tesla has "failed to explain how data showing the car's steering angle, steering torque, and radar measurements ha[s] 'independent value.'" *Id.*

The Court finds that the one page of Moore's notes that Tesla identified does not contain trade secrets warranting continued confidentiality. While Moore's notes provide his process for analyzing the CAN data as well as limited interpretations of the data, Moore's notes do not contain the data itself. *See* ECF No. [608]. Tesla does not have a legitimate proprietary interest in Moore's interpretation of the CAN data. Consequently, Moore's notes do not contain information that would constitute a trade secret[18] and must therefore be unsealed.

---

[16] The exhibit was previously filed at ECF No. [318] but the specific page in question was refiled at ECF No. [608].

[17] The page Tesla seeks to have sealed is filed at ECF No. [318] at 603.

[18] The only other information on the page is a generic crash report, which does not contain any unique or proprietary information about Tesla or its vehicles. ECF No. [608].

### ix.  Alan Moore's Second Supplemental Declaration—January 15, 2025 (ECF No. [306])

According to Tesla, the Second Supplemental Declaration of Alan Moore should remain sealed because it "describe[s] information recovered from the Vehicle's ECU with specific information logs that demonstrate how Tesla logs data." ECF No. [554] at 7.

Just as the Court found that Moore's original Declaration did not contain trade secrets, the Court does not find anything in Moore's Second Supplemental Declaration that would amount to a trade secret. The mere fact that the Declaration discusses the removal of log data and mentions how Tesla logs data is stored does not render the information contained therein a trade secret. *Pliteq, Inc. v. Mostafa*, No. 23-CV-24868, 2024 WL 4217176, at *3 (S.D. Fla. Sept. 4, 2024) (finding that a chart simply containing computer file data was not a trade secret because although "that data may be related to documents that contain trade secrets, the cold data itself is too far removed from the trade secret information to provide the 'rigorous justification' required to support filing [the exhibit] under seal.") (citing *Perez-Guerrero v. U.S. Atty. Gen.*, 717 F.3d 1224, 1234 (11th Cir. 2013); *AbbVie Prods.*, 713 F.3d at 62 (requiring "good cause to deny the public the right to access the document")).  Moreover, the log data and how the log data was stored on Tesla's vehicles and servers were discussed extensively at trial. Accordingly, because Tesla has not consistently treated the information as a closely held secret, the Court will not permit Moore's Second Supplemental Declaration to remain under seal.

### x.  Email Containing Product Privacy Signals (ECF No. [268-10]).

While Tesla previously argued an email containing product privacy signals should also remain sealed, ECF No. [554] at 7, the parties have since agreed to unseal that exhibit. *See* ECF Nos. [599], [600]. Consequently, the question of continued confidentiality concerning product privacy signals is moot.

Case No. 21-cv-21940-BLOOM/Torres

### III.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Tesla's Motion to Preserve Confidentiality of Certain Trial and Pre-Trial Records that Contain Trade Secrets, **ECF No. [554]**, is **GRANTED in part and DENIED in part.**

    a.  The Motion is **GRANTED** to the extent Tesla seeks to keep Plaintiffs' Trial Exhibit 14— Excerpts of "Theory of Operation HW2.5 Model S" (P-14) under seal, but **DENIED** to the extent Tesla seeks to keep any other trial exhibits under seal.

    b.  The Motion is further **GRANTED** to the extent Tesla seeks to keep certain pretrial filings and exhibits that were not submitted at trial under seal. Specifically, the Clerk of Court is **ORDERED** to keep the following pretrial exhibits **UNDER SEAL**:

        i.    **ECF No. [285-2] (pages 12-23 ONLY)**

        ii.   **ECF No. [347-1] (pages 12-23 ONLY)**

        iii.  **ECF No. [368-8] (pages 13-24 ONLY)**

        iv.   **ECF No. [368-11].**

    c.  The Motion is **DENIED** to the extent Tesla seeks to keep any other pretrial filings or exhibits under seal.

2.  In light of the Court's Order, all docket entries and exhibits in this case are to be **UNSEALED EXCEPT** for the following exhibits and docket entries, which are to remain **SEALED:**

    a.  **ECF No. [285-2] (pages 12-23 ONLY)[19]**

    b.  **ECF No. [347-1] (pages 12-23 ONLY)[20]**

    c.  **ECF No. [368-8] (pages 13-24 ONLY)[21]**

    d.  **ECF No. [368-11]**

    e.  **Plaintiffs' Trial Exhibit 14—Excerpts of "Theory of Operation HW2.5 Model S" (P-14).**

3. Tesla's Motion for the Continued Confidentiality of Materials Designated Under Confidentiality Protective Order, **ECF No. [368]**, not previously ruled upon, is **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 22, 2025.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

[19] Pages 1-11 of ECF No. [285-2] are to be unsealed.

[20] Pages 1-11 of ECF No. [347-1] are to be unsealed.

[21] Pages 1-12 of ECF No. [368-8] are to be unsealed.